AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | | |
|---|---|---|
| ISAIAH ANDREWS<br>*Plaintiff*<br>v.<br>CITY OF CLEVELAND, et al.<br>*Defendant* | ) | Civil Action No. Case No. 1:22-CV-00250 |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: RONALD ADRINE

(*Name of person to whom this subpoena is directed*)

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Roetzel & Andress<br>1375 E. Ninth Street, Suite 100, Cleveland Ohio 44114 | Date and Time:<br>12/06/2022 1:00 pm |
|---|---|

The deposition will be recorded by this method: Stenography and video.

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/21/2022

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR [signature]

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing (*name of party*) Leo Allen, J. Reid Yoder, David Hicks, J. Francis McCaffrey, John Kaminski, who issues or requests this subpoena, are:

Stephen W. Funk, Roetzel & Andress, 222 S. Main St., Akron, Ohio 44308, sfunk@ralaw.com, (330) 849-6602.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

PENGAD 800-631-6989 EXHIBIT 1 12/6/22

STATE OF OHIO )
) SS: **AFFIDAVIT OF RONALD B. ADRINE**
CUYAHOGA COUNTY )

I, Ronald B. Adrine, being duly sworn, hereby deposes and says as follows:

1. I am a duly licensed attorney in the State of Ohio since November 3, 1973, with no discipline.
2. In 1975, I was employed as an Assistant County Prosecuting Attorney under elected Cuyahoga County Prosecutor John T. Corrigan.
3. I was co-trial counsel with Assistant Prosecuting Attorney Charles Laurie in the *State of Ohio v. Isaiah Andrews*, case number CR-17902 before Judge Francis E. Sweeney.
4. The matter proceeded to trial on or about March 3, 1975.
5. The matter concluded on or about March 12, 1975, resulting in a conviction against Mr. Andrews for the homicide of his wife R.A..
6. During the last twelve (12) months, I was contacted by attorney Marcus Sidoti who brought to my attention the existence of evidence that suggested the possibility of an alternate suspect in this case, one Willie Watts, along with additional information related to the observations of several of the witnesses and their statements regarding the investigation.
7. I have now reviewed all of the following: the police investigation file including information regarding Willie Watts; additional statements of Linda Cloud and Betty Worthy; the Coroner's file which included supplemental information related to the Willie Watts investigation and Willie Watts's Cleveland Police arrest file.
8. During the pendency of the investigation and during preparation and the trial of the case against Mr. Andrews, it is my present recollection that I was never made aware of the fact that anyone other than the defendant was investigated, arrested or seriously considered as a potential suspect in this homicide, that recollection specifically includes

PENGAD 800-631-6989 EXHIBIT 2

EXHIBIT A

Willie Watts; nor do I recall ever being given the opportunity by law enforcement to review the information which I now reference as it relates to the investigation and arrest of Willie Watts.

9. Although more than 40 years have expired since I prosecuted this case, and my recollection of the specifics are not as clear now as they would have been then, I aver, without hesitation or fear of contradiction, that, consistent with my habitual trial preparation process, I would have requested the entire investigative file developed by the investigating officers and any other information that they might have been privy to that would have assisted in an appropriate assessment of the inculpatory or exculpatory nature of the evidence relating to the defendant, prior to the trial of Isaiah Andrews.

10. I was instructed when first hired by Cuyahoga Prosecuting Attorney John T. Corrigan, that my job was not to secure convictions but, rather, to seek a just result in every case that I handled on behalf of his office.

11. I consistently adhered to that admonition during my tenure as an Assistant Cuyahoga County Prosecuting Attorney and I am, therefore, prepared to state under oath that had I been made aware of the information now in my possession, before, during or after the time of Mr. Andrew's trial, I would have been duty-bound to disclose that information to defense counsel whenever I was made aware of its existence.

FURTHER AFFIANT SAYETH NAUGHT.

Ronald B. Adrine

Ronald B. Adrine

SWORN TO BEFORE ME and subscribed in my presence this 7th day of July 2021.

NOTARY PUBLIC

OSC # 0077476
my commission has no expiration
ORC § 147

EXHIBIT A

| THE STATE OF OHIO<br>VS.<br><br>ISLAH AMDREWS | A TRUE BILL INDICTMENT FOR<br><br>AGGRAVATED MURDER R.C. 2901.01 |
|---|---|

| DATE OF OFFENSE | THE TERM OF | CASE NO. |
|---|---|---|
| September 18, 1974 | JANUARY OF 1975 | 17202 |

The State of Ohio, } SS.
CUYAHOGA COUNTY }

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully and purposely and with prior calculation and design, caused the death of another, to-wit: Regina Andrews

FILED
JAN 2 . 1975
EMIL J. MASGAY
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

[signature]
Foreman of the Grand Jury

John T. Corrigan
Prosecuting Attorney.

EXHIBIT
3
PENGAD 800-631-6989

68935
File statements

# CASE PROCEDURE SHEET

VICTIM: REGINA ANDREWS FILE 203 COMPLAINT #: 51777

OFFICERS ASSIGNED: DET. HUBBARD #1673 DET. ROWELL #1606

SUSPECT: ISAIAH ANDREWS ADDRESS 3301 EUCLID AVE. #133 CPD M-11503

DATE OF BIRTH: 4-20-38 SEX MALE RACE BLACK OTHER:

STATEMENT YES PROSECUTOR E. CHANDLER CHARGE: AGGRAVATED MURDER

WITNESSES:

NAME: BETTY WORTHY ADDRESS: 3301 EUCLID AVE. STATEMENT YES

NAME: Linda Cloud ADDRESS: 3301 Euclid #131 STATEMENT YES

NAME: ADDRESS: STATEMENT

NAME: ADDRESS: STATEMENT

NAME: ADDRESS: STATEMENT:

# COURT PROCEDURE

STATE of OHIO vs ISAIAH ANDREWS CHARGE: AGGRAVATED MURDER

PRELIMINARY HEARING: DATE 9-24-74 TIME: 9:00AM OFFICERS: HUBBARD & ROWELL

JUDGE: MATIA PROS: DEF ATTY: None - None

REMARKS: Cont 9-30-74 Bond $50,000 10-5-74
Judge Matia Prosecutor Cables — Cont.

DATE BOUND OVER: BAIL: TRANSCRIPT MADE

DATE PRESENTED TO GRAND JURY: 10-29-74 OFFICERS: Hubbard 1673

TRIAL INFORMATION: FINAL DISPOSITION: 1-15-75 Hubbard 1673

Cont. 10-16-74 — $50,000

Att. James Kersey Ret.

This case cont until Oct 21, 1974

EXHIBIT 4
PENGAD 800-631-6989

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME: HOMICIDE

DATE OF THIS REPORT: 12-17-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 Euclid Ave. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE / TYPE OF PLACE: FOUND 300yds. So. of Arlington 100yds. West of Forest Hills Swimming Pool — ZONE: 603

TIME OF OCCURRENCE: FOUND AT 3:00 PM — DATE OF OCCURRENCE: SEPTEMBER 10th.,1974 — DAY OF WEEK: WEDNESDAY

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF 1 PAGE REPORT. FOLLOW-UP REPORT XXXX

While assigned to car 9240 this date, I attended Cuyahoga County Common Pleas Court at Lakeside Court House, Judge Jaffe, Room #12, in the case of the State Of Ohio vs ISIAH ANDREWS who was charged with Aggravated Murder of the above named victim.

This case was NOLLED at this time do to the fact that the witnesses for the prosecution failed to show up for this hearing and today was the 90th. day from the day that the suspect was arrested.

The County Prosecutor in this case was JOE GIBSON and he contacted J.T CORRIGAN about this matter. We were advised to have this case nolled at this time, and then try to locate the witnesses. He also said that after we locate the witnesses in this case, to notify him and he would set up another hearing with the Grand Jury and have it set for trial the next day.

We have located one of the witnesses and she stated that she had been threaten but she would appear when ever we needed her. She further stated that she might be able to locate or other witness for us and she would contact our office if she did locate her. Prosecutor GIBSON was notified of the locating of the witness.

EXHIBIT 5
PENGAD 800-631-6989

COF C71 – 10

INVESTIGATING OFFICERS: W. HUBBARD DET.#1673 (signature: William Hubbard)

PLATOON: DAYS — CAR: 9240 — APPROVED BY: (signature: Walter Dugan, Sgt)

WEATHER: ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____

☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____ COMPLETED ____

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

SUBJECT or CRIME HOMICIDE,ARREST &CLEAN-UP DATE OF THIS REPORT DEC. 3 1,1974

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| VICTIM | ADDRESS | PHONE | | | | |
| REGINA ANDREWS | 3301 Euclid Ave. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE / TYPE OF PLACE / ZONE
Found XX300yds.So. of Arlington 100yds. West of Forest Hills Swimming Pool 603

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| Found at 3:00 PM | September 18th.,1974 | Wednesday |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF 1 PAGE REPORT. FOLLOW-UP REPORT XXX

While assigned to car 9240 this date, and in company with Detective ROWELL #1606, we further investigated the above homicide.

We met with county prosecutor JOSEPH GIBSON who was assigned to this case when it first went to trial, and learned from him that J.T CORRIGAN of or County prosecutors office wanted us to contact him in regards to this case. We then went to J.T CORRIGANS office in regards to this case. J.T CORRIGAN then called MR. MILLER of his office and instructed him to set the case up to be heard by the Grand Jury on their first meeting of 1975. At this time the new addresses a nd phone numbers were given to MR. MILLER. We also requested that the addresses and phone numbers not be given to anyone of these witnesses, do to the fact that they might be contacted and scared off again befor the trial.

The arrested male in connection with this homicide is one ISAIAH ANDREWS who was also arrested in connection with a bank robbery

Both witnesses, BETTY WORTHY & LINDA CLOUD were contacted today and they both stated that they would be available when needed.

9-19-74
12 ?
I.D. Body
Check

EXHIBIT 6
PENGAD 800-631-6989

HUBBARD ROWELL

COF C71-10

INVESTIGATING OFFICERS: William Hubbard Det. #1627 | PLATOON: DAYS | CAR: 9240 | APPROVED BY: Walter Dugan, Sgt

WEATHER ☐ CLEAR ☐ RAIN ☐ CLOUDY ☐ SNOW TEMP ___ ° WIND ___ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER ☐ TIME ASSIGNED ___ COMPLETED ___

C OF C. FORM 71-1

# POLICE DEPARTMENT

CLEVELAND, OHIO

DEPARTMENTAL INFORMATION

DIST. ZONE HOMICIDE UNIT DEC.28 19 7

EXAMINED BY RANK 19

FROM PETER COMODECA,SGT. TO RALPH JOYCE,LIEUT.

SUBJECT DETAIL ESTABLISHED AT 1212 LAKESIDE RE:ISAIAH ANDREWS CPD#m-11503

COPIES TO WANTED AGGRAVATED MURDER & BANK ROBBERY.

---

Sir:

Assigned as Sgt.in charge of the Homicide Unit this date Dec.28,1974 received information from DETS.ROWELL #1606 & HUBBARD#1673 that the above mentioned suspect was trying to find a witness in the Homicide of REGINA ANDREWS And do her personal harm.

Learned this witness to be BETTY WORTHY WFS35(dob,7-4-39) and caused her to be brought to our office after I learned she was prepared to leave town du to her fear of ANDREWS.I then explained to this female that unless she cooper ated with us she would be in constant danger from ANDREWS as she is our main witness in the above Homicide.This case has been Nolled in Criminal Court as we could not ocate WORTHY because she was hiding from us because of her fear but now she is willing to testify and this case will be brought back into the Grand Jury.

I then had BETTY WORTHY conveyed to the HOLIDAY INN located at 1212 Lake-side Room 1019 where DETS.STAIMPEL#388 & SAVAGE#1181 were detailed in room with her.DETS.HOWELL#1915 & MOON#1889 of the Robbery Squad were detailed i lobby until 6:00PM.where they were relieved by DETS.TONNE,JACKSON & KINSEY the Robbery Squad.FBI Agents MIKE KAHOE & BILL O'BRIEN were also notified and took up positio s in the area.This detail will last till 4:00AM when DETS. BEAVERS & BANKHEAD will relieve DETS.STAIMPEL & SAVAGE and FBI will ~~try~~ try to detail men to assist our men.At 7:00AM.request DAY SGT.send two more men to assist BEAVERS & BANKHEAD if nothing has happened at this time.

Also learned that the following friends of BETTY WOTHY have been contact by suspect ANDREWS and he is willing to pay them $300 to $400.00 just to lea where she is staying.

LANA BEICIE
1861 E.93rd ST(HOME) 791-5683
2929 Prospect(BUSINESS) 241-8864

ADAM WOOD
COLONIAL APTS ROOM 235
391-2500Ext.235

RADIO & DETECTIVE BUREAU NOTIIFED OF THIS DETAIL ALONG WITH CAPT.KUTINA & LT ~~BEZKK~~ DEKA & LT.JOYCE.

RESPECTFULLY REQUEST THAT MONDAY MORNING DEC.30,1974 IF THIS DETAIL IS STILL IN EFFECT THAT PROSECUTOR JOHN CORRIGAN BE APPRAISED OF THE FACTS AND ASCER IF THE PROSECUTORS OFFICE CAN SEND THIS FEMALE SOMEWHERE WHERE SHE CAN BE SA AS THE HOMICIDE UNIT HAS NOT ENOUGH PERSONEL TO MAINTAIN THIS DETAIL FOR AN GREAT LENGTH OF TIME.

Respectfully,

Sgt.

PENGAD 800-631-6989 EXHIBIT 7

1/20/2021 Page 24
Cuyahoga County Prosecutor's Office 5093894 205104 V980816-24 PKG1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

THE STATE OF OHIO, )
) SS: **SWEENEY, J.**
COUNTY OF CUYAHOGA. )

**IN THE COURT OF COMMON PLEAS**

**(CRIMINAL BRANCH)**

THE STATE OF OHIO, )
Plaintiff, )
vs. ) No. CR-17902
ISAIAH ANDREWS, )
Defendant. )

--- o0o ---

**DEFENDANT'S TRANSCRIPT OF PROCEEDINGS**

--- o0o ---

APPEARANCES:

On behalf of the State of Ohio:

JOHN T. CORRIGAN, PROSECUTING ATTORNEY, by
CHARLES R. LAURIE, ASST. PROSECUTING ATTORNEY, and
RONALD ADRINE, ASST. PROSECUTING ATTORNEY.

On behalf of the Defendant:

WILLIAM SUMMERS, ESQ., and
JOHN HYLAND, ESQ.

Dominic A. Coccia, CSR and
Louis R. Rennillo
Official Court Reporters
Cuyahoga County, Ohio



EXHIBIT 8
PENGAD 800-631-6989

# I N D E X


| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| **Motion** | | | | |
| WILFRED M. GILL | 32 | 35 | 41 | 47 |

- - - oOo - - -

| State of Ohio | | | | |
|---|---|---|---|---|
| ELIZABETH BALRAJ | 89-110 | 109-112 | 126 | 132 |
| BARBARA CAMPBELL | 138 | 154 | 167 | 169 |
| SAMUEL R. GERBER | 172 | 179 | 196 | -- |
| LINDA CLOUD | 200 | 254 | 263 | 267 |
| BETTY WORTHY | 209 | 272 | -- | -- |
| REGINALD MASON | 295 | 308 | 334 | 336 |
| MARY JANE OSTENDORF | 337 | 378 | -- | -- |
| JESSIE BYOUS | 398 | -- | -- | -- |
| LEO ALLEN | 403 | 419 | -- | -- |
| WILLIAM HUBBARD | 426 | 508 | 523 | -- |

- - - oOo - - -

| Defendant | | | | |
|---|---|---|---|---|
| MARTIN PRENGLER | 531 | 544 | -- | -- |
| SAM MUSKAL | 547 | 561 | -- | -- |
| ROBERT RUGGERI | 570 | 574 | 584 | 586 |
| ELIZABETH BALRAJ | 588 | 605 | 617 | -- |
| LESTER ADELSON | 620 | 636 | -- | -- |
| WILLIAM HUBBARD | 641 | 642 | -- | -- |

- - - oOo - - -

CHARGE OF THE COURT, page 652.


- - - oOo - - -

# INDEX (Continued)

## EXHIBITS


| Motion | Marked | Received |
|---|---|---|
| 1, Special Progress Report, | 41 | 49 |

- - - oOo - - -

State of Ohio

| | Marked | Received |
|---|---|---|
| 1 through 5, photographs, | 95 | 526 |
| 6 through 13, photographs, | 148 | 526 |
| 14, pegnoir and nightgown | 151 | 527 |
| 15, pillow | 151 | 527 |
| 16, hand towel | 151 | 527 |
| 17, caftan | 151 | 527 |
| 18 through 21, bedding | 151 | 527 |
| 22, pillow case | 221 | 528 |
| 23 through 27, photographs, | 306 | 528 |
| 28 through 44, photographs, | 434 | 528 |
| 45 through 48, photographs, | 446 | 528 |
| 49, statement of Isaiah Andrews, | 578 | 529 |

- - - oOo - - -

Defendant

| | Marked | Received |
|---|---|---|
| A, tag | 165 | 645 |
| B, coroner's verdict | 184 | xx |
| C, statement of Linda Cloud | 254 | xx |
| D, statement of Betty Worthy | 273 | xx |


- - - oOo - - -

# I N D E X (Continued)

The following exhibits, because of their nature and size, and which were offered and received in evidence, are being held in the custody of the Prosecutor's office and will be produced at the request of the Court or counsel at any further hearing of this cause:

State exhibit 14, pegnoir and nightgown;

State exhibit 15, pillow;

State exhibit 16, hand towel;

State exhibit 17, caftan;

State exhibits 18 through 21, bedding;

State exhibit 22, pillow case; and,

State exhibits 44 through 48, newspapers.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

THEREUPON The State of Ohio, further to maintain the issues on its part to be maintained, called as a witness, BETTY WORTHY, who, being first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. LAURIE:

Q Be seated, speak up and give us your full name and spell the last name?

A My name is Betty Worthy, W-o-r-t-h-y.

Q Miss Worthy, I am about to ask you a number of questions. Please relax as best you can and speak as loud as you can so we can hear you all the way back in the courtroom. Can you do that, ma'am?

A Yes, sir, sure.

Q Now, you say your name is Betty Worthy and, Betty, getting right down to the point, I will direct you to the date of September 18, 1974. On that particular day, were you working anywhere?

A I was working at the Colonial House Motel.

Q And where is that?

A 3301 Euclid.

Q Is that in the City of Cleveland?

A Yes, sir, it is.

EXHIBIT 9
PENGAD 800-631-6989

~~Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903 ZA / Confirmation Nbr. 1342887 / CLJK1~~

Q Cuyahoga County, State of Ohio?
A Yes, sir.
Q All right. What type of work did you do there?
A I was doing maid service at that time.
Q How long had you been so employed on September 18, 1974?
A Oh, about two months.
Q Generally, what would be your duties as maid service?
A To make sure the rooms are clean and make sure the other maids get their jobs done and have the rooms that are assigned to them done before they left.
Q Were there other persons working in a like capacity or were you the only one working in that capacity?
A No, there was another lady by the name of Mary?
Q Mary?
A I don't know her last name.
Q All right. And, Miss Worthy, in your employment that you had for about two months on that date, did you come to know some of the tenants in the establishment?
A I know mostly everybody that was living there.
Q All right. Before I get to who you may have referred to as living there at the time, may I ask you what was the procedure or the policy of that particular hotel insofar as linens were concerned or service for the patrons?

A Well, on the regular -- if they wanted room service, we would make them up daily. If not, we did not touch their rooms and, of course, there was a lot of overnight stays. We went in and changed them.

Q Some short stays, too?

A Right.

Q And you indicated that some were there on a permanent basis?

A Right.

Q Tell us whether or not some of those people did they get laundry or linen service or do their own?

A Like I said most of them get linen service and some do their own.

Q I see. Now, among others was there a Linda Cloud living there at the time?

A Yes, sir, there was.

Q Where did she live, if you recall, the suite number?

A 131.

Q And do you recall who she made her home there with?

A Her son?

Q Her son?

A Right.

Q Now, are these rooms at this motel uniform in size and style or whatever? Are they different or --

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A They have sleeping rooms and efficiency suites and bedrooms and front rooms and kitchens combined with a bath.

Q I see. Now, are they in a certain place, geographically on the premises of the motel or are they scattered?

A The efficiencies are in the back. There are some on the right-hand side and some on the left-hand side. There are no efficiencies in the front part of the hotel.

Q All right. If I may skip a little bit, besides yourself were there other employees working on or about September 18th at the motel?

A Yes, sir, there was.

Q For example, were there some clerks?

A Yes.

Q I mean, room clerks?

A No, no room clerks whatsoever.

Q I mean room clerks, the man that stands up --

A You mean the desk clerk?

Yes, there was.

Q How many of those clerks were there?

A When I went on duty, the only one --

Q Incidentally, what hours were you on duty on September 18th?

A From 9:00 until 9:00 at night.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q Morning to night?

A Yes.

Q What hours would that clerk have the day you went on?

A He had the night shift, from 11:00 at night until 7:00 in the morning or until the other morning desk clerk came in to relieve him.

Q 7:00 o'clock would be the relief clerk?

A Originally, but at that time the clerk was working almost 13 hours a day because there was only two clerks and originally there was three.

Q All right. Then, who was working on September 18th, during the morning hours in and about noon time of that day?

A Oh, noon time?

Q Well, 11:00 o'clock or --

A Chuck.

Q Chuck who?

A I don't know the last name.

Q Calloway?

A Yes, sir.

Q If you recall, what time did he come to work that day or night?

A I do know he got there. It was around 10:00 o'clock.

Q In the morning?

A Yes.

Q All right. Now, in the event that some tenants, permanent tenants, at least, or any tenants would lose their key, what is the procedure of getting another key, if there is one?

A Well, if you lose your key, all you have to do is go up to the end and ask for another one, but it costs you another $2 deposit.

Q Do they have a master key?

A Yes. I would have a key to every room.

Q The clerk runs out of keys and there is always a master key?

A Yes.

Q That could open the room, if need be?

A Yes.

Q All right. Now, will you explain as best you can to the jury how you would handle the linen problem of this hotel for cleanliness or washing or whatever, what is the procedure with the tenant and so forth so far as getting laundry. Would it be sent out?

A Yes, to a laundry.

Q Now, when you send laundry out, tell us what, if anything you usually develop from this procedure?

What was had at that time?

A Well, at that time we were having problems getting

linens back from different hotels and motels, otherwise, we get linen from the Holiday Inn or Howard Johnson and stuff like that which wasn't our linen.

Q Would this be a condition of the business there at or about that time when they would get linen belonging to somebody else and somebody else would get yours?

A It is not unusual.

Q All right. When a person or -- withdraw that.

Now, getting back to Miss Cloud, was she a temporary or permanent tenant there?

A On a permanent basis.

Q All right. Do you recall who lived just north of Miss Cloud's apartment?

A You mean alongside?

Q Well, next door?

A Mr. and Mrs. Andrews.

Q When did you first learn that they lived there, keeping in mind the date of September 18th?

A It was either a week or a couple of days before they got married.

Q Do you recall when they got married?

A No. All I remember is Mr. Andrews coming, renting the apartment stating he was getting married.

Q I see. As best you can recall, how many days or weeks was that before September 18th?

A I can't recall.

Q Well, can you give us your best estimate, a few weeks, months or six months or --

MR. SUMMERS: Objection.

MR. LAURIE: I am asking for her best recollection. If she can't remember, all right.

THE COURT: She may answer if she can give us an estimated answer.

Q How long had they been living there?

A Before September?

Q Yes, before this situation.

A Oh, I would say about three weeks.

THE COURT: All right. Your answer was three weeks, ma'am?

A Yes, sir.

Q Did you get to know Mr. and Mrs. Andrews at that time?

A Just by saying hello when I seen her.

Q All right. Did you notice any particular habits or moods of living there that she may have had or did you observe any?

A She was a very quiet woman, didn't associate with nobody and never opened her door. If she did, she had a chain latch on.

Q Do you know this of your own knowledge?

A Yes.

Q Did you have an occasion to go to her door and learn this?

A Yes, sir.

Q Incidentally, the man that you referred to as Mr. Andrews, her husband who came there and registered a room and said he was going to get married and live there, is he in the courtroom today?

A Yes, sir, he is.

Q Can you point him out to the jury, please?

First, second or third chair or fourth man on that side of the room?

A Third man.

Q Third man. Without a tie, with a shirt.

A The black man.

MR. LAURIE: May the record reflect that the witness has identified the defendant, Isaiah Andrews in this case?

THE COURT: The record may so indicate.

Q Now, what arrangements did Mrs. Andrews or Mr. Andrews make about the service that they desired in this motel for linen and whatever?

A Well, one day I went to Mrs. Andrews' door to do the

room up and this is how I first got talking to her. She said she didn't want maid service. She told me she would do her own and I noticed that there was no maid service for this room down in the office.

Q What if any linen supplies did you give her if she requested any?

A There was only one time she requested an extra bedspread.

Q What was the complement of bedding supplied to her?

A You mean, what was in the room at that time?

Q Yes.

A Well, in their apartment, it is an efficiency, there is a double bed and there is two pillows to that bed.

There is a couch, you can call it a hideaway bed. It opens up into a bed and two pillows are issued to that bed, too.

Q And you say she requested an additional bedspread?

A Right.

Q What was she doing with that?

A She said she wanted to throw it over a couch.

Q All right. What kind of bedspread did you have at the time on September 18th at this hotel or motel?

A At the Colonial House the bedspreads never changed. They have been the same way for years, but they are bedspreads which are gold, green, beige and sometimes pink and

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

blue but they got little fuzzy balls on them, like.

Q This is the uniform type bedspread?

A Yes.

Q All suites have them?

A Right. Unless you have your own linen.

Q She had her own linen?

A No, not for bedspreads.

Q You gave her linen?

A Right, because there was a gold bedspread on the bed when she went in.

Q What did you give her?

A I gave her a beige one or brown, you can call it. I call it beige.

Q All right. How about white sheets, did you ever give her white sheets?

A No, but I never got the ones back from when she moved in there, anyhow. Otherwise, the day she moved in the apartment, the linen was still in there. What she done with it, I don't know. I never asked.

Q There was some linen there?

A Yes, it was all fully equipped when you move in.

Q She brought some in?

A I know she did.

Q Are you talking about what you observed?

A Yes, sir.

MR. SUMMERS: Objection.

THE COURT: Overruled.

Q Were you in the room?

A Many times before they moved in there.

Q All right. Now, did I understand you to say that some of these efficiency suites had two pillow cases with a hideaway bed and some had one?

A Yes, I did say that.

Q All right. Regina had one pillow, was it a hideaway bed?

A As far as I know, there was one pillow in there, but we checked and there was no pillow after.

Q We will get to that a little later.

Now, handing you what has been marked as State's Exhibit 21, I will ask you to look at the exhibit, the pattern part of it and I will ask you if you can identify this exhibit?

A It is one of the bedspreads at the Colonial House.

I am not saying that that is the one, but it is one like the one I gave her that day when she asked me for one.

Q Handing you what has been marked as State's Exhibit 16, can you identify this exhibit?

A On the pillow, we have pillows that resemble ones like this, but lots of times your pillows with the

lines going this way (indicating) so that I am not too sure.

Q All right. Now, let me ask you:

Did any of the linen have any laundry tags on them that you know of?

A Some of our linen did. Some of it did not. Most of it was new linen. We didn't have the chance to put our tags because I didn't have time to take and iron it on. It is an iron-on patch.

Q Tell us whether or not there was any linen with the tag of a Holiday Inn in the Akron area that you know of?

A We got linens from Holiday Inn.

Q You don't know which area?

A No.

Q All right. Let's go on, then.

How about pillow cases, did your hotel have any pillow cases that reflect Howard Johnson or Holiday Inn pillow cases?

A Yes, sir, very seldom we get them.

(Thereupon pillow case was marked as State's Exhibit 22.)

Q Handing you what has been marked for the purpose of identification as State's Exhibit 22, can you identify this particular pillow case and/or that marking on it?

A I have seen this marking before at the hotel in

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

all our pillow cases which are white, anyhow.

Q There is the mark that we refer to as the Howard Johnson Motor Lodge stamp on there?

A Yes.

Q Do you have pillow cases with those stamps?

A We get some from another laundry.

Q But you receive them on your premises?

A Right.

Q In your association or contact as an employee, and seeing Mrs. Andrews on the premises, could you tell us, did she wear anything unusual by way of clothing, or can you tell us anything about her clothing?

A Usually, most of the time when I see Mrs. Andrews she was in a Muslim outfit. I never seen her in regular street clothes.

Q All right. Without telling me anything she may have said to you, but did you have some conversation with her? Yes or no, did you have any conversation with her about Muslim clothing?

A Yes, I did.

Q Just that much.

All right. Now, on September 18th, 1974, approximately at 11:00 o'clock on that particular morning, do you recall your whereabouts?

A Yes, I do.

1/20/2021 Page 247
Cuyahoga County Prosecutor's Office 5093894 205104 V980851G-247 PKG1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q I am sorry. I am skipping, but let me go back to a couple of more comments here.

Showing you what has been marked for the purpose of identification as State's Exhibit 18, can you identify this exhibit as being one like it or something like it?

A We have them. This is a mattress pad. We carry this at the hotel to put on all the beds.

Q How about State's Exhibits 19 and 20, can you tell us anything about these items?

A Just that we have white sheets.

Q All right. Now, going back to the 11:00 o'clock time on September 18th, do you recall your whereabouts on the premises?

A Yes, I do.

Q Where were you?

A At 11:00 o'clock on September 18th I went to wake up Mrs. Cloud because she was supposed to go to the bank, and as I used to have a pass key to go in to tell her that she was late going to the bank, jokingly, I told her it was 12:00, but it was 11:00 at that time.

Q Now, are there any other doors or openings to these efficiency suites, either Miss Cloud's or Mrs. Andrews' suite, other than the one that goes into the aisleway between the two sets of suites?

A No.

Q Just the one door?

A Only one entrance to the room.

Q How long did you stay at the Cloud door to give her this information about 11:00 o'clock?

A Just about a few seconds. That is all.

Q All right. Then, where did you go?

A I walked across the corridor to talk to Mary the other maid.

Q All right. Now, what if anything appeared in front of Miss Cloud's door and Mrs. Andrews' door by way of structural material, if any? What, other than a walk, what else appears there?

A A guard rail.

Q All right. That and that guard rail is guarding what?

A The driveway down into the lower garage.

Q All right. And the lower garage, does that go all the way down to the Euclid side or to the Chester Street?

A Yes, but at that time the back part of the garage was not open.

Q It was closed?

A It is closed.

Q If somebody is parked along -- incidentally, how do the customers park at this particular place, the ones that did park there?

A They would have to park in a straight line.
Q Parallel to the curb?
A Unless they went to the back and then they could park more parallel back there.
Q All right. Now, the morning you went to Miss Cloud's apartment -- may we use the diagram, Judge?
THE COURT: Yes, you may.
Q What is the main street that faces the hotel? The hotel faces what main street there?
A Euclid.
Q Then, what is the street just north of it?
A Chester.
Q Is the motel between the two?
A Right. It goes like this.
Q What was the number of the suite of Miss Cloud?
A 131.
Q And the next door number for the defendant's address was what?
A 133.
Q And you say in front of these two suites and others there appears a guard rail?
A Only up to 135, there is a guard rail.
Q What is the next number? 135?
A Right.
Q And there is a guard rail that

A There is a little walk with the guard rail next to it.
Q All right. Would this be a fair, rough idea?
A Yes.
Q The walkway is the dark part and the curly part at the time is the guard rail that comes up a couple, three feet?
A Yes.
Q And on the other side is there a guard rail?
A Yes.
Q Is this a fair description, rough description of the other side?
A Yes, sir.
Q What is on the north side?
A Another guard rail.
Q Now, pardon me.
Now, when you say there is a ramp, does it go up or down that ramp?
A Down.
Q And that is down this way?
A Right.
Q That goes down?
A Right.
Q All right. Now, across from 133, are there some other rooms or suites there?

A Yes, sir, there is other rooms.

Q Do you recall the numbers approximately on the opposite side of 133, where 135 --

A Well, the odd numbers are on one side and the even on the other.

Q About what number would you say this apartment would be across from 133?

A Let's see. Across, probably 132, 133, that would be 136.

I believe it would be 136 and 138 going down.

Q This way?

A Yes.

Q 136 or the other way?

A No, going down this way, because 132 is right across from Miss Cloud's room.

Q 132?

A Yes.

Q Then, this is six, or whatever, I don't know.

A Let's see, 134.

Q Is there a 138 somewhere in there?

A 138, way down at the end.

Q Well, anyway, on the morning, what we really want to know is, when you came down to call Mrs. Cloud, from where did you come?

A From the office.

Q Up front?

A Yes.

Q And you went down to her room?

A Right.

Q You knocked on the door?

A I knocked on the door. Then, I opened it with a pass key.

Q And you had some conversation, just yes or no?

A Yes.

Q Then, where did you go?

A I walked across the corridor to talk to Mary.

Q Where did you go in relation -- forget the numbers, in relation to these two room, geographically, where did you go. We know this is 131. There is no doubt about it?

A Just past 134 a little bit, standing in the doorway.

Q In this area?

A Right there.

Q You were standing there?

A Right.

Q About what time would that be?

A That was, oh, about a minute after 11:00.

Q Who if anybody was with you?

A Mary, the other maid.

Q Now, she was on the -- was that on the walkway or on the driveway portion?

A I was on the driveway portion. She was on the walkway with the laundry cart.

Q What did you do there with her, if anything?

A We were standing, talking, just jibber-jabbing, not really talking about nothing.

Q All right. What if anything, did you observe other than talking to your fellow maid?

A Just standing in the doorway.

Q Which door are you referring to?

A 133.

Q You say at the doorway?

A Yes.

Q Is the door approximately in the middle of the suite?

A Right in the middle.

Q There is a window on one side or the other?

A A window on the right-hand side there.

Q This side?

A Yes.

Q All right.

A The bay window.

Q Now, where was Mr. Andrews, the defendant in this case physically when he was talking to Mrs. Andrews?

A Outside the door.

Q On the walk?

A Yes.

Q Was the door open?

A Yes, sir, it was.

Q Did you see Mrs. Andrews at this time? Was she still alive at 11:01?

A Yes, she was.

Q Where was she?

A Standing in the doorway, just back a little ways in the door, not too close to the door.

Q But in the doorway portion?

A Yes.

Q Was the door open?

A Yes, sir, it was open.

Q Does it open from the inside in?

A Yes, you have got to pull it in.

Q The door opens in?

A Yes.

Q That would be from left to right, would that be a fair statement?

A Yes, sir, left to this way when you open the door.

Q You open up against the wall?

A Right.

Q Now, was she in the doorway enough for you to see if she was -- how she was dressed?

A In a blue nightgown.

Q Did you notice any kind of clothing on her?

A No, I didn't.

Q All right. Now, handing you what has been marked for the purpose of identification as State's Exhibit 14, can you identify this item, ma'am?

A It looks like a blue nightgown, Mrs. Andrews had on the day she was standing in the doorway.

Q All right. You say they were talking to each other or can you describe it as best you can?

A They were talking.

Q What did you observe?

A It appeared like they was talking about -- but I didn't pay any attention to what they were talking about, because I was talking to Mary at that time.

Q About how long would you say they stood in front of that door talking to each other?

A About 10 minutes.

Q In front of the door?

A Yes.

Q They were talking that long?

A I would say about. I am not sure of the time.

Q Well, then, after they were talking, what happened next?

A Mr. Andrews went inside and the door slammed.

Q Explain to us exactly how that happened?

You say you saw him go in?

1/20/2021 Page 256
Cuyahoga County Prosecutor's Office 5093894 205104 V980816-256 PKG1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A Yes, me and the other lady seen him go in.

Q Who closed the door?

A Mr. Andrews.

Q How did he close the door?

A With a bang.

Q Then, what did you hear?

A Mary and I just looked at one another and all of a sudden, whoever it was, they turned up their record player or it got awful loud.

Q Did you ever hear that record player, TV played that loud in the suite before that night?

A Not in Mr. Andrews' apartment, no.

Q How long after he came in did that music get turned off or up, whatever it was?

A I would say about ten minutes.

Q You mean ten minutes after he was in there or when he walked in. How soon did you hear the music come up?

A A few seconds later.

Q All right. Now, that would be about 11:10?

A About that.

Q 11:10 A.M.?

A Yes, sir.

Q Are you sure you saw the defendant go in and slam the door and the music come up?

A Positive.

Q Then, were you still outside at 11:10?

A Still standing there, talking.

Q How long would you say that you heard that music continuing in a loud tone before anything else you noticed?

A I would say about ten minutes.

Q He went in at 11:10 or 11:00 and approximately at 11:20, the music stopped, right?

A Yes.

Q Then, what did you hear or see?

A Then Mr. Andrews come out of the apartment and he walked to his car.

Q Where was his car?

A Parked right by 131, because that was the start of the ramp. It was facing down the ramp.

Q Starting here?

A Yes.

Q What direction was the car parked, the front, or where was the headlights pointing to?

A Towards Chester.

Q This way?

A Yes.

Q All right. And you say about 11:20 he came out after the music stopped and what direction did he go?

A He come right out his apartment and walked down the walkway to his car.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q To his car. What if anything did you do when you got to the car?

A Opened the trunk?

Q The trunk was open?

A Yes, sir, right.

Q When he came out of the door tell us whether or not you and him caught each other's eye or not at this point?

A I looked and he glanced over at me.

Q Was anything said between you?

A No.

Q After he, the defendant opened this trunk door, at approximately 11:20, where did he go?

A Back to his room.

Q The same route or another route?

A Same route.

Q Back to his room?

A Yes.

Q Then, what did he do when he got to the front of his door?

A He stood there for a second and glanced over towards me and the other lady, Mary, and we looked at him, but I didn't pay attention to him that much.

Q Did you hear any activity at this point?

A No. It was really quiet.

Q Quiet, now?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A Yes.

Q Where did he go after he looked at you, when he got back in front of his door?

A Inside the apartment.

Q He went back in and were you still outside when he went back in?

A We were still staying there, talking?

Q How long would you say it took him from the 11:20 to open the trunk and go back in?

A No more than two seconds. It ain't that far of a walk.

Q Let's say about 11:21 or shortly after that.

Now, when he went back in did you hear anything unusual at that time when he went back in?

A No, nothing.

Q All right. Were you still in the same location?

A Right. We didn't move our location. Mary and I were still standing there talking.

Q Then, what next if anything did you hear after he went in about 11:21 -- rather, how long did he stay in between -- you seen him again?

A Just a few seconds. He wasn't in there long.

Q He opened the car and went to the door and went in?

A Right.

Q Now, how long did he stay in after he opened the trunk

door.

Q A very short time?

A Real short.

Q All right. Then, a couple of minutes or --

A A couple of minutes.

Q All right. 11:23, out again.

A Right.

Q Now, tell the ladies and gentlemen of the jury, what you may have observed the defendant do as he was coming out, as best you can recall, and look at the jury and look at them and testify.

A At that time Mr. Andrews come back out of the apartment carrying a -- I call it a bag, you know, a gray object, and he put it in the trunk of his car and I said something to Mary the maid.

Q Wait a minute.

A I was still watching Andrews.

Q As you were going along --

MR. SUMMERS: Objection.

MR. LAURIE: I merely --

THE COURT: Overruled.

You may qualify the question.

Q I am giving you an opportunity to completely tell the jury what you saw.

MR. SUMMERS: Judge, objection to

the editorializing.

THE COURT: Just ask her a question.

Q Describe how he walked, what he carried, the description, so I won't have to interrupt you again. That is all I want you to do.

MR. SUMMERS: Objection.

THE COURT: Overruled.

A He was carrying an object, a bag about this long (indicating) about this big around and he had it over his shoulder and it appeared to be heavy. He took and put it in the trunk of his car. When he put it in the trunk of the car, it came down and come back up and he shut the trunk of the car and walked back to his apartment.

Q All right. So, he was out of the house with a bundle about 11:23, would that be a fair estimate?

A Yes.

Q You say the bag was this long, and you were stretching your arms out?

A Yes.

Q That is the distance of your arms?

A Yes.

Q Right. Is that approximately the size you saw the bag and then you made a circle, would you do that again?

A That is the round one, whatever it was in there.

MR. LAURIE: May the record reflect that she made a circle of about 15 inches, Judge?

THE COURT: It may reflect the arms were fully extended and then a round circle in front of the body.

Q Now, how do you know that it appeared to be heavy? Can you describe the defendant as he was walking with his bundle over his shoulders?

A The way he carried it over his shoulders, he was stooped down.

Q Was he straight or what position was he in when he was carrying it?

A He was straight, but yet you could see what appeared to be heavy. Let's put it that way.

Q When he came out with a bundle, tell us whether or not you caught his eyes then or not?

A I was looking at him but he was not looking my way.

Q Then, he dropped it in the trunk and the car bounced up and down and then what happened?

A It went down and come up.

Q Where did he go then?

A Back to the apartment because the door was still open.

Q All right. Now, what if anything were you doing after he came out with the bundle? Did you remain there

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

or go anywhere during the time he was --

A No. At that time I had Cloud's little boy with me. She was going to the bank and he was going to spend the day with me.

I walked over towards Chester and come down past, say, 135, and I was coming back from 133.

Q Follow me and correct me.

You said you were going towards Chester around the ramp area?

A Yes.

Q And to this walk here?

A Right.

Q And you said you were going, then, towards the Euclid area in front of the defendant's room?

A Right.

Q Was the door open when you got to that point?

A The door was still open.

Q Where was the defendant?

A Coming towards the room.

Q Tell us where he was in relation to the doorway when you got to the door area?

A Just about near the door.

Q When you were -- well, withdraw that.

When he took the bundle out, he left the door open?

A Yes, it was open.

Q He had not reached the door yet when you got out there?

A No.

Q And when you go to the door, did you have an occasion to look at this room?

A Yes, I did look in.

Q What if anything unusual did you see in that room at that time?

A Just that the bed was not made up.

Q What do you mean it wasn't made up?

Can you explain to the jury?

A Just the mattress, there was no linen on the bed whatsoever.

Q Not even a seat?

A No, not even a seat.

Q Then, after making this observation as to the door of the defendant's suite, where did you go? Did you go by the defendant across or past him?

A I passed him.

Q Did he say anything to you?

A No. Like I say, I very seldom talked to Mr. Andrews.

Q There wasn't any contact at all between you and him either by eyes or otherwise at this point when you past?

A I just glanced at him but I didn't pay no attention, because, like I say, I very seldom talked to him.

Q When he got to the door, what if anything, did he do?

A Shut the door.

Q Then, what happened?

A He didn't actually shut it. He, more or less, like was standing there talking to Mrs. Andrews because he was standing there and his mouth was moving and, like I say, I didn't pay attention because, you know --

Q Did you see Mrs. Andrews anywhere in this room when you went by that door?

A No.

Q Could you see the whole premises when that door was open?

A No, I could not see the couch nor the kitchen area.

Q Was she in any bedroom area?

A No, not that I could see.

Q Was she on the bed at all or near the bed at all?

A No.

Q All right. You say you saw the defendant move his lips in front of the door and then what did he do?

A Closed the door.

Q Well, was he inside or outside when he closed the door?

A Outside the door.

Q Then, what happened?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A He walked back to his car, got in the car, drove down and left.

Q He drove down the ramp or back down?

A Down the ramp.

Q Went down the ramp?

A Yes.

Q Did you see him turn around and come out or not?

A Yes, I did.

Q Where were you when he turned around and was coming out?

A He was standing near -- let's see, if I am not mistaken I was standing near 131 talking to LaMont to tell him to stay out of the way of the cars. He was out there playing.

Q All right. Did you see the defendant or Mrs. Andrews that day?

A No, I seen Mr. Andrews later on but not during the day.

Q All right. And after he left, did you go along with your work then?

A Yes, I continued with my work. Like I say, I stayed with the porter that day because the linen was being stole and the owner asked me to see if it was one of the people living there or one of the employees picking up linen and it was disappearing, you know.

Q About what time was it that day that you saw Mr. Andrews again?

A Oh, that day, it was close to -- close to five o'clock because Mary gets off at five.

Q Where was it that you saw him?

A In the office.

Q Were you in the office, too?

A Yes, sir. I was standing there talking to the clerk.

Q Was Mr. Andrews talking to the clerk?

A Yes. He did come in and say something to the clerk, but I did not pay attention to what he said.

Q You didn't hear it?

A No.

Q How long did he stay there, do you know?

A Just a few seconds.

Q It was about five o'clock, you say?

A Yes, sir, right.

Q Then, did you see where he went, then?

A Back to his room to change clothes.

Q How do you know that?

A Because I heard him tell Chuck that he was going to his room.

Q Okay. Then, what kind of clothes did he have on? Did he say he was going to change, do you recall?

A Mr. Andrews in the daytime had a brown outfit on, brown coat, shirt. He always dressed very neatly. All his colors always matched.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q When you say brown coat --

A A suit like you have on.

Q He had a brown outfit on?

A Yes.

Q He had a neat outfit on that day?

A Yes, sir, very neat.

Q You said he was going in at five o'clock to change, is that what you said?

A Yes.

Q Did you see him change his clothes?

A No, I seen him afterwards, though.

Q And when he left the room, did you notice anything unusual about his clothing he was wearing when he left the room?

A The next time I seen him he come back up to the office.

Q I am going back to when you first saw Mr. Andrews with the bundle coming out of the room at about 11:23, did anything unusual appear about his clothing?

A No. Like I say, he was always -- he always appeared neat and clean.

Q I see. Could you see whether he took off his jacket or not when he went inside about 11:10?

MR. SUMMERS: Objection.

THE COURT: Overruled. The answer may stand.

A No.

Q Now --

THE COURT: Now, Mr. Laurie, we are going to take our afternoon recess at this point.

Ladies and gentlemen, this will be a very short recess. Be back in about 10 or 12 minutes.

(Thereupon recess was had.)

BY MR. LAURIE:

Q Miss Worthy, I believe you were at the point where you saw the defendant later that evening in the office and he was going in to change his clothes or whatever. That was about five o'clock.

Again, to get back to where we left off, did you see him after that?

A Yes. He came back up to the office.

Q Did he have a change of clothes on then?

A Yes, sir, he did.

Q Do you recall what he changed into then?

A A green corduroy outfit.

Q Did you ever see anybody wearing a white suit that went in the Andrews suite at any time with a white men's suit?

A One time, but I did not pay attention.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q I see. Do you recall who had that suit on?

A No, I never knew the gentleman.

Q Did you ever meet any relatives of Mr. Andrews?

A No.

Q Then, did you hear any conversation after Mr. Andrews came back to the office the second time?

A Yes. He was standing at the desk and he made a statement quoting Mr. Andrews. He said he was worried about his wife and I asked why and he said she went downtown shopping and has not returned home.

At that time I told Mr. Andrews, I said, "You know, your TV or radio was very loud today".

And quoting Mr. Andrews, he said, "That was my wife playing it."

After that it got silent and then I told him, I said, "Why don't you call downtown to the vice unit," because the hotel at that time we did have a couple of prostitutes living there and the vice were picking up girls and I said that maybe she got arrested for pros and at that time Chuck the desk clerk called the police department for Mr. Andrews and reported her missing.

Q Did Mr. Andrews get the phone in his hand at any time and do his own calling?

A No, because from the office you have got to use the house phone. The only one to dial the phone is the clerk

behind the desk It is a switchboard.

Q What if anything did Mr. Andrews do at that time or say, if you recall?

A Nothing. He called the police and talked to them on the phone.

Q I see. About what time was this, approximately?

A At that time, 5:30.

Q What happened then?

A Mr. -- after he talked to the police Mr. Andrews left.

Q Where did he go?

A I don't know. I didn't pay attention to him.

Q Did you ever see him in and around the premises that night?

A Later on that evening.

Q About what time did you see him again?

A I don't recall that time because I was -- I left the premises myself. I know it was before 11:00 though.

Q Before 11:00?

A Right.

Q You saw him somewhere else?

A No, no. I went down to Sam's Bar for a while.

Q Where did you see the defendant again later that evening?

A Standing near Mrs. Cloud's room. I asked him if he

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

heard anything about his wife and at that time he said no.

Q That was around 11:00 P.M.?

A Yes.

Q Was his car there?

A Yes, his car was there.

Q Did he ever leave to go anywhere, to go look for his wife, to your knowledge?

MR. SUMMERS: Objection.

THE COURT: You may answer.

A Not to my knowledge.

Q The car was there all the time since?

A I didn't see Mr. Andrews leave after he left the office after 5:30. I did not see where he went to.

Q But you saw Mr. Andrews back on the premises about 5:00 o'clock you said?

A Yes.

Q Once you saw him go out, he came back about 5:00 o'clock?

A Yes.

Q From 5:00 to about 11:00, was his car ever moved from where he had parked it?

A I don't know. I did not pay attention to where he went to once he left the office at 5:30, after he called the police. I didn't pay attention to where he was going.

I talked to Chuck about the noise in the room, that it was unusual.

Q All right. Do you know how many keys the Andrews had for their apartment when they first obtained their apartment?

A Two.

Q All right. Did you see Mr. Andrews the defendant at all after 11:00 P.M.?

A It was a little like when I first came home, it was just before 11:00. I seen him. I asked him if he heard anything about his wife and he said no.

Then, a little later, a while later, I went down to see him again. That is when I learned that they found Mrs. Andrews dead.

Q Dead. Where did you learn that from?

A Mr. Andrews told me.

Q Could you describe his attitude when he told you?

MR. SUMMERS: Objection.

THE COURT: She can describe how she appeared.

Q Describe how he appeared when he told you his wife was found dead?

A I asked him did he hear anything. He said, "Yes. Dead."

Q How did he appear?

A Very calm.

Q Where was he when he said that?

A Standing in between Mrs. Cloud and his apartment with some other people.

Q Did you recognize the other people?

A No, I did not.

Q How many ladies were there, do you remember?

A Two.

Q Had you seen them before?

A No.

Q Any males there besides the ladies?

A No, not that I can recall.

Q Then, what did you do after you had the short talk with him?

A I went in and was talking to Mrs. Cloud.

Q Did you see the defendant again after that?

A Not until the next day.

Q Where was that at?

A In the office again.

Q Incidentally, did you live there, too?

A Yes, I did stay there.

Q That is why, when you said you came home, you lived there?

A I live in apartment 267, upstairs.

Q All right. Where did you see him the next day, in the

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

office?

A Not in the office.

Q Where? What time of the morning was it, now, on the 19th?

A I don't recall that time.

Q What was transpiring? Is there anything you recall about that meeting?

A I was talking to the detective around the office and in the office at that time because they come to talk to Mr. Andrews and he wasn't home because his car wasn't there and they were talking to me when he drove up and stopped in the office.

Q And did he say anything to you?

A No.

Q How did the defendant appear? Can you describe his demeanor or appearance the next morning?

A Calm and very cool.

Q And did you happen to go into the suite with the officer the next day or not?

A Yes, I did.

Q What was the purpose of that entry?

A To see if there was any linen missing.

Q How did you find the bed at that time when you went in?

A At the time, it was made.

Q Did you look for additional linen?

A Yes, I checked for the extra bedspread and a pillow that was not on the hideaway bed.

Q Were they there?

A No

Q Were they missing?

A Yes, they were.

Q Did you give them the extra items earlier in their tenancy there in the apartment?

MR. SUMMERS: Objection.

THE COURT: Overruled.

A As I stated, when you asked me before, yes, I did.

Q And the bedspread that was missing, again, looking at this one, what if anything did you say about the missing bedspread?

A Nothing but it is ours.

MR. LAURIE: That is it. Thank you.

THE COURT: Gentlemen, approach the bench, please.

(Thereupon discussion was had between Court and counsel and off the record.)

THE COURT: Ladies and gentlemen of the jury, there has been a request by defense counsel which has been granted by the Court that they

be allowed to recall Miss Linda Cloud, the witness before this witness, to ask her a few questions on cross-examination. Now, this request has been granted. So, I am going to allow that to take place now, so that we will save the full cross-examination of this witness after we are through with Miss Cloud.

At this time, Miss Worthy, if you would sit down, please and have Miss Cloud come in.

--- oOo ---

THEREUPON The State of Ohio, further to maintain the issues on its part to be maintained, called as a witness LINDA CLOUD, who, being first duly sworn, was examined and testified as follows:

THE COURT: Speak up as loudly as you can and give us your full name and spell it.

THE WITNESS: My name is Linda Cloud.

DIRECT EXAMINATION

BY MR. ADRINE:

Q How old are you?
A I am 20.
Q Beg pardon?
A I am 20.
Q Are you presently employed?
A No.
Q Do you have any children?
A I have a son.
Q Are you receiving any assistance from the County?
A Yes, sir, I am on A.D.C.
Q Ma'am, are you familiar with the Colonial House Motel?
A Yes, sir.
Q How are you familiar with it?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

EXHIBIT 10
PENGAD 800-631-6989

A I used to live there.

Q Okay. What period of time did you live there?

A From July to November.

Q Did you stay in one suite during that whole period of time?

A Yes, sir.

Q What suite was that?

A 131.

Q Now, do you know who was staying in suite 133?

MR. SUMMERS: Objection.

THE COURT: What period of time are we talking about?

MR. ADRINE: Thank you, your Honor.

Q In September, 1974, do you know who was staying in 133?

A September.

Q Let's move it up a little bit, around September 18th, September 17th, 18th, do you know who was staying there at 133?

A Yes. Well, I know the young girl that stayed there.

Well, what it was, I didn't really know her. I spoke to her a couple of times.

Q Okay. Do you know whether or not she was married or single?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A Yes, she was married.

Q Do you know her first name?

A Regina.

Q Do you know her husband's first name?

A No.

Q And her last name, do you know that?

A Yes, sir.

Q What is her last name?

A Andrews.

Q Now, I want you to tell me, was the Colonial House Motel your permanent residence there as of September 17th or 18th?

A Yes, sir, it was.

Q 1974?

A Yes.

Q And on September 17th, were you home most of the evening?

A Yes, I was.

Q And could you give us the chronology or time span beginning early evening of September 17th and tell us what you did?

A Well, I watched television and received a couple of phone calls, and at about 6:00 my boy friend came over and we had dinner and about 8:00 o'clock, I received another phone call and about at 8:30.

Q Okay. What time did you come back, or did you come back?

A I came back at about ten minutes to 9:00.

Q Were you still in the company of your boy friend at that time?

A No.

Q Now, do you remember whether or not September 17th was a warm evening?

A Yes, it was warm because I didn't wear a jacket out.

Q All right.

A Except for this.

Q Now, a warm evening at that hotel, I know things are close, did you keep your door open or closed?

A Well, open.

Q On September 17th, was your door open?

A Yes, sir, it was.

Q Now, if you recall, how long did you stay up that evening?

A I stayed up until about -- until about 4:00 the morning of September 18th.

Q All right. Now, did there come a time during the course of that evening into the next morning when you saw your next door neighbor, the Andrews?

A Yes, sir.

Q About what time did that occur?

A Between 1:00 and 1:30.

Q Now, do you recall what brought your attention to them?

A Well, earlier that evening, I had seen a white -- I know her husband, and as I was coming back in at a quarter to nine, I seen a dude in a white suit enter her room and, like I went into the house, and, like, you know, I didn't pay no attention to it, you know, and I couldn't tell you what time her husband came home, but I do know that when he came home the dude in the white suit was still there, okay, and between 1:00 and 1:30, him and his wife left.

Q Left their apartment?

A Yes, sir, they did.

Q Did you see them leave?

A Yes, sir.

Q What did they do when they left?

A They got into the car.

Q Where was the car parked, do you know?

A It was parked on the -- coming from the entrance, it was parked on the left-hand side.

Q Was it close or far?

A It was about two cars out.

Q Two cars out? This is back towards the Euclid entrance?

A No, this is more towards the Chester -- coming from Chester.

Q On the ramp?
A Yes.
Q Okay. Now, did there come a time when you came out of your apartment?
A Yes, sir.
Q Was this around 1:30?
A Yes, sir.
Q What did you do when you came out of your apartment?
A I walked to the sidewalk and there is a pole there right by my door and I stood there. As he slowed down to, obviously, turn around, he stopped halfway between --

THE COURT: Ladies and gentlemen, if you are having any trouble hearing, raise your hand so I know you are having trouble. You are leaning forward. So, let me know. Speak up.

THE WITNESS: I am sorry. I came out of the apartment and I stood by the pole that is there by my door and halfway in between the ramp and my door he stopped his car and he got out and he went over to his wife's side and he opened the door and he told her --

MR. SUMMERS: Objection.

THE COURT: Overruled. She may answer.

THE WITNESS: He opened the door

1/20/2021 Page 230
Cuyahoga County Prosecutor's Office 5093894 205104 V980816-230 PKG1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

and he told her --

Q We need the exact words.

A The exact words.

Well, he said, "Bitch, you know I am going to kill you, don't you?"

He walked back over to his side, got in and went down and came back out.

Q Okay. When you say he came back out, you mean he turned the car around?

A He went all the way down to the ramp.

Q In the garage portion?

A Yes, sir, and he turned around and came back out going towards Euclid.

Q Did he leave the motel at that time?

A Yes, he did.

Q Now, after he left the motel, what if anything did you do?

A Well, I went back into my apartment and I watched television and about 4:00 o'clock, I went to bed.

Q Now, what time did you get up later that morning or did you get up later that morning?

A I had left the message at the desk to wake me up at 11:00 o'clock because I had to go to the bank and, like, they called at 11:00 o'clock and told me that it was 11:00 o'clock, but I didn't get up. I stayed in bed and I --

a girl friend of mine who worked there came and knocked on my door.

Q What was the friend's name?

A Betty Worthy.

Q Now, what if anything, did Betty Worthy say to you?

A Well, she told me it was 12:00 o'clock, which it wasn't. It was only 11:00.

Q As the result of the pronouncement, what did you do?

A Well, I got out of bed and I got my clothing together and I got the baby dressed and fed and I left. I left out. I left the baby with Betty.

Q Now, when you got up, did you shower?

A Yes.

Q Did you turn on your TV?

A Yes.

Q Was your baby awake?

A Yes.

Q What time approximately did you leave?

A I would say I left about a quarter to 12:00.

Q Now, the person that you saw on the ramp in the earlier morning hours of September 18, 1974, is that the man in the courtroom today?

A Yes.

Q Would you point him out for the Judge and jury?

A Yes, right there.

MR. ADRINE: Your Honor, I would like the record to reflect that the witness has identified the defendant?

THE COURT: The record may so indicate.

Q Do you recall what kind of clothing Regina Andrews had on that early morning of September 18th?

A She had on a green, sort of Muslim outfit with a turban and long dress and I believe it had some sort of flowers in it.

MR. ADRINE: No further questions, your Honor.

THE COURT: Mr. Summers.

MR. SUMMERS: One moment, your Honor.

No questions of this witness, your Honor.

THE COURT: All right. You may step down.

MR. LAURIE: The State will call Betty Worthy.

--- o0o ---

THE COURT: Miss Cloud, you are still under oath. Defense counsel has a few questions which the Court is going to allow him to ask you on cross-examination.

Their request has been granted. So, remember, you are still under oath.

MR. SUMMERS: Thank you, your Honor.

Your Honor, I am handing the court reporter to be marked Defendant's Exhibit C, this piece of paper.

MR. LAURIE: Objection.

(Thereupon document was marked as Defendant's Exhibit C.)

CROSS-EXAMINATION OF LINDA CLOUD

BY MR. SUMMERS:

Q Miss Cloud, did there come a time since the 18th day of September, when you were in fact, questioned by the police?

A By someone I thought was the police who told me that they were.

Q Miss Cloud, you have talked to nobody else about this case?

A No.

Electronically Filed 03/30/2018 18:10 / MOTION / CR-75-017903-ZA / Confirmation Nbr. 1342887 / CLJK1

PENGAD 800-631-6989 EXHIBIT 11

Q All right. Do you know Detective Ernest Rowell or Detective William Hubbard of the Cleveland Police Department Homicide Unit?
A Yes, I know them.
Q And you never talked to them?
A Yes, I talked to them.
Q You did talk to the police, then?
A Yes, I did talk to the police.
Q And you told them what you knew about this case, didn't you?
A Yes.
Q And they asked you if you would please come with them, and did they ever tell you that you were under arrest?
A No.
Q Did they talk to you down at the Central Police Station and take you to a room on the third floor and ask you to give a statement as to what you knew, all that you knew about this, the involvement of Mr. and Mrs. Andrews so that it could be typed and signed as a written statement?
A Yes, sir, they did.
Q And you told them everything you knew, didn't you?
A No, I didn't.
Q You did not?
A No.
Q All right. Did you tell them, ma'am, that you --

Electronically Filed 03/30/2018 18:107 MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

excuse me.

Showing you what has been marked as Defendant's Exhibit C, is that your statement?

A It is.

Q And is it signed by you?

A It is.

Q Okay. Is it not a fact that in your statement, your original statement, you said, the very last thing is, "Have you read the above and is it true?"

And you answered, "Yes," didn't you?

A Yes.

Q In your own writing, and you told them, Miss Cloud, did you not, that you heard the TV next door?

A I told them that I heard the television next door.

Q Did you tell that to the police?

A On what date?

Q On the 18th when you were questioned or the 19th?

A No, I didn't tell them I heard the television next door. It is not in there.

Q You did not tell them, "On Wednesday, September 18, 1974, about 11:00 A.M. I got up. I was awakened by the maid Betty. We sat and talked. I heard the TV from next door. I didn't think she was home, because he took her out the night before. Then I got dressed and left out."

You didn't say that?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017003-ZA / Confirmation Nbr. 1342887 / CLJK1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A That I heard the television?

Q Yes, ma'am. You did not say that?

A I didn't hear the television.

Q All right. Then, you were asked, were you not, if you had ever seen another man in that apartment, weren't you, other than Mr. Andrews?

MR. LAURIE: Objection to this procedure. We are going far afield from the limited purpose of the inconsistency.

THE COURT: The purpose was explained to defense counsel, and I believe at this point you have gone far enough.

MR. SUMMERS: Thank you, Judge.

Q Did you tell the police that you saw a light skinned man other than Isaiah Andrews in that apartment?

A Yes.

Q Did you tell them that?

A Yes.

Q Did you describe him for the police?

A Yes, I did.

Q How did you describe him?

A As a -- just about -- I am not too good on height, you know, but he was -- I am not too good on how tall a person is, you know, but his partner stood about his height, you know.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q His what?
A His height.
Q Detective Hubbard's partner, the one with him?
A Yes.
Q You said his partner -- who are we talking about now? You are talking about a man you saw -- you saw a man going in the Andrews apartment and you are comparing him in size to Detective Rowell, about the same size as Detective Rowell?
A Yes, sir. He is light skinned, medium size afro and I wouldn't call him heavy set, but a little over --
Q Husky?
A Yes, husky would be a better word for it.
Q Muscular?
A Yes, sir.
Q Were you not asked whether or not you had seen him there or when was the last time you had seen him there?
A I don't remember if I was asked that.
Q Would it refresh your recollection if I told you that you said "Last Tuesday, September 17, 1974, I seen him go in to her apartment about ten minutes to nine in the evening. I was on my way back to my apartment and I saw him slip in. He knocked and he opened the door and he squeezed in because she didn't open far enough for him to get in."
A That is what I said.

MR. LAURIE: Judge, I am going to object.

THE COURT: Approach the bench, gentlemen.

MR. LAURIE: This is not the original agreement.

(Thereupon discussion was had between Court and counsel and off the record.)

Q You said, did you not, that that was the only time you had seen that man, is that correct?

A I said that that was the only time I seen him on the 17th of September.

Q At 9:00 o'clock that night?

A I didn't say that in the statement.

Q How many times had you seen him there?

A A few times before then.

Q But you said that the last time that you had seen him there was that night at 9:00 o'clock, is that right?

A Yes.

Q Did you tell the police anything different?

A No. What I told him was that on the Thursday that Betty let him into my apartment I wasn't at home and she said she talked to him.

Q She let the dude in the white suit into your apartment?

A Yes.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903 ZA / Confirmation Nbr. 1342887 / CLJK1

Q When you weren't home, Betty did that?

A Yes.

Q Was that a friend of yours?

A No, but Betty's.

Q Yes. Why would Betty let somebody who you didn't even know and who you saw enter an apartment in kind of a strange way, unlock with your pass key your apartment and allow the man to come in?

A Why did she do it?

Q Yes.

A She explained it to me.

Q She told you why?

A Yes, she told me why.

Q Why was that?

A Do I have to tell you?

MR. LAURIE: Objection. First of all, it is hearsay.

THE COURT: Sustained.

Q Without telling us the reason that she let the man in there, was it for any immoral purpose?

A Immoral?

MR. LAURIE: Objection. Objection.

THE COURT: Sustained.

Q Did you not tell the police that the man came back on

Thursday?

A Did I tell them that?

Q Yes.

A Yes, I told them that.

Q But you didn't tell us here in the courtroom?

A No.

THE COURT: Is there an answer to that question?

THE WITNESS: No, I didn't tell it in the courtroom.

Q All right. Let me ask you one other thing here.

You told us about this battle or, really, argument where somebody is telling somebody that they are going to kill them, "Bitch, I am going to kill you."

A I didn't say there was a battle. I told you he made a statement. I didn't say nothing about no battle.

Q All right. There was a loud, heated argument, isn't that correct?

A No. I didn't say there was an argument.

I told you he made a statement to her.

Q A very matter of fact statement like I am going to kill you?

A That is exactly what he told her.

Q And you made a statement to the police department that you were -- did you not, that you were watching TV and

you heard the defendant call to his wife to get dressed, is that not true?

A Yes.

Q And further that 15 minutes later they came out and she was wearing a Muslim outfit, that is what you testified to, so far?

A Yes, sir.

Q And then you told the police who are investigating her death he had his car parked by the pole outside in the drive, they took off and turned around and took off, and after they left, the man that went in about ten minutes to nine, came out and left and then you went to bed about 4:00 A.M. and didn't observe anything else?

You never told the police in this written statement about him threatening to kill her. You didn't tell them when it was recorded so that you could sign and say this is what you are telling, that you are telling everything you did know about it?

A No, I didn't.

Q You were asked further, were you not, whether you had heard them in a heated argument and you said, "No arguments where he screamed and hollered, just arguing like everyone."

You didn't tell them that too, did you?

MR. LAURIE: Objection. He is quoting direct testimony which is in error.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903 ZA / Confirmation Nbr. 1342887 / CLJK1

THE COURT: Sustained. I believe the cross-examination was covered to the extent it was allowed.

MR. SUMMERS: That was the last sentence, your Honor. I have nothing further.

THE COURT: Mr. Laurie, any questions based upon his limited cross-examination?

MR. LAURIE: Yes, Judge.

I think my associate does have some questions, Judge.

THE COURT: Fine.

REDIRECT EXAMINATION

BY MR. ADRINE:

Q You made some omissions in your statement, things you left out?

A Yes.

Q Did you have a reason for leaving those things out?

A Yes, sir, I did.

Q Would you explain to the jury what your reasons were?

A The reason I left out what I said that he said to his wife was that one of the policemen --

Q Are you sure it was a policemen?

A Well, I was told at the time it was a policeman when I had went to a former address.

MR. SUMMERS: Objection.

Hearsay.

THE COURT: Approach the bench, please, counsel.

(Thereupon discussion was had between Court and counsel and off the record.)

Q Do you recall when you spoke to the individual that you took for a policeman?

A Yes, I recall.

Q How soon after the death of Regina Andrews was that?

A I think it was about -- I don't think it was no more than six or seven days.

THE COURT: Was it prior to the written statement that Mr. Summers questioned you on? Was it before this statement was given?

THE WITNESS: Before I gave that statement?

Q Yes.

A Yes, it was before that.

THE COURT: It was before the written statement Mr. Summers questioned you about?

THE WITNESS: Yes.

MR. ADRINE: Ma'am, can you tell us what kind of --

THE COURT: It is being allowed.

Did you tell the police the conversation you heard?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Just tell us why you did not tell the police about the conversation you heard between the defendant and the wife the night before it took place? Do you understand the question?

THE WITNESS: Yes, I understand.

THE COURT: Tell us.

THE WITNESS: Can I tell them all ways?

THE COURT: Yes.

THE WITNESS: What happened was that there was a man trying to get in touch with me, a Mr. J.C. Williams, and like he had been going over to my former address, questioning my landlady, asking her what time did I usually come over, or did I call her and all these things.

So, like when I called the man on the phone, I wanted to find out why he following me around in a blue Cadillac.

Okay. So, I called him on the phone and he told me that a Mr. Ruggeri wants to see me about Mr. Andrews right there, and I told him, "Hey, I ain't got nothing to say to nobody."

Then, he said, "Well, you are going to have to talk to this man," and then he told me, "I know what you look like. I know how old your son is. I know

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

where you live."

MR. SUMMERS: I object to hearsay.

THE WITNESS: That ain't hearsay.

THE COURT: Overruled.

A This ain't hearsay. Hearsay.

THE COURT: You may continue, madam.

Q Go ahead, please.

A The man called me a whore, which I didn't --

Q You mean a prostitute?

A That is what he called me, a whore.

Q Are you under the impression that Mr. Williams is a police officer?

A Yes, I was.

Q Now, you went to the police station on the 27th of September, or thereabouts, is that correct?

A Yes.

Q To make a statement?

A Yes.

Q Now, while you were there, did you tell the police about this incident with Mr. Williams?

A I mentioned it because I went over to my mother's house and she told me they were trying to get in touch.

Q Now, at what point did you mention it to the police when you went to make a statement?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1



A About what Mr. Williams had said?

Q Yes.

A It wasn't until I had seen them for a second time. That date, I couldn't tell you.

Q So, it wasn't the same day you made your statement?

A No, it wasn't.

Q All right. Now, when was the first time that you had told the police about the additional information that you had?

A The same day I made my statement.

Q What was the reason again for not telling the police?

A Because some man called himself a policeman and called me a whore which I didn't appreciate.

Q Did you hold that against the police department?

A I did.

MR. ADRINE: Thank you, no further questions.

THE COURT: Any questions, Mr. Summers?

MR. SUMMERS: Just briefly.

RECROSS-EXAMINATION

BY MR. SUMMERS:

Q This statement is dated September 27th, is that correct?

1/20/2021 Page 292

Cuyahoga County Prosecutor's Office 5093894 205104 V980851G-292 PKG1



Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A That is correct.

Q And that is the date you gave that statement, isn't it?

A Yes, sir, it is.

Q And there is no doubt in your mind that -- Your Honor, may we approach the bench one minute?

(Thereupon discussion was had between Court and counsel and off the record.)

Q There is no question in your mind that Mr. J.C. Williams, who held himself out to be a police officer upset you in the way that you described and had talked to you on how many occasions prior to your making the statement?

A Just one. I only spoke to the man one time.

Q And there is no doubt in your mind that that happened prior to the 27th day of September?

That is why you were mad and you didn't put it in the statement, isn't it?

A Yes, sir.

Q And also, even in spite of being as mad as you were at what you thought to be a police officer, Mr. Williams, and by the way, he did tell you that Mr. Ruggeri wanted to talk to you?

A He did.

Q Did he tell you that Mr. Ruggeri was an attorney?

A Yes.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

Q But you didn't tell him anything about their representing the defendant in this matter, did he?

A No.

Q He didn't tell you that?

A You mean did he tell me that he was representing this man right here?

Q Yes.

A Yes, he did.

Q So, you knew that he was representing the defendant, isn't that correct, Mr. Williams?

A No. He told me Mr. Ruggeri was representing him.

Q And that he was the detective involved in it?

A Yes.

Q And that is it?

A Isn't that a policeman? Detective.

Q I am asking you, didn't he tell you that he was a private detective?

A Ain't that a policeman?

Q Ma'am, you talked to Mr. J.C. Williams prior to the 27th day of September and he mentioned that Mr. Robert Ruggeri was working for Isaiah Andrews and he called you a whore and you were mad and wouldn't tell members of the Cleveland Police Department anything germane to this issue, is that correct?

A Yes.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1



Q And that was because you were mad at the police department?

A I wouldn't say mad at the police department. I don't appreciate what the man said.

Q But even in spite of being as mad as you were, you still told the police orally that day about the threat, right?

A Yes, I did.

Q But you didn't put it in your written statement and they didn't go back and have you put an additional written statement in, did they?

A No.

MR. SUMMERS: Nothing further.

MR. ADRINE: You may step down.

THE COURT: We will continue the trial of this case tomorrow morning, gentlemen.

Ladies and gentlemen of the jury, we are going to recess at this time for the afternoon. Remember the more evidence you hear, the more important it becomes not to discuss this case. Don't let anyone talk about the case in your presence.

More importantly, do not talk at home with the folks you live with about any aspect of the case whatsoever.

Recess until 9:30.

1/20/2021 Page 295

Cuyahoga County Prosecutor's Office 5093894 205104 V980516-295 PKG1



Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

(Thereupon an adjournment was taken to Friday, March 7, 1975, at 9:30 A.M., at which time the following proceedings were had:)

--- oOo ---

FRIDAY MORNING SESSION, MARCH 7, 1975.

THE COURT: Please, be seated. Good morning, ladies and gentlemen.

Take the stand. You are still under oath from yesterday, Mrs. Worthy.

MR. SUMMERS: Thank you, your Honor.

CROSS-EXAMINATION OF BETTY WORTHY

BY MR. SUMMERS:

Q Mrs. Worthy, you are familiar with the Andrews and saw them on several occasions while they were living there, didn't you?

A Yes, I have.

Q And did you have occasion to know what Mr. Andrews was doing for a living?

A He told us two different things he was doing.

Q Did you ever see him with, carrying clothing of any type?

A Yes, I have.

Q And did he not inform you that he was a clothing salesman?

A No, he did not.

Q He didn't tell you that?

EXHIBIT
12
PENGAD 800-631-6989

Electronically Filed 03/30/20[illegible] / MOTION / CR [illegible] / Confirmation Nbr. 1342887 / CLJK1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A No, he did not.

Q But you saw him on more than one occasion carrying men's clothing?

A Right.

MR. SUMMERS: Excuse me, your Honor.

I ask that this be marked.

(Thereupon Defendant's Exhibit D and D-1 was marked for purposes of identification.)

Q Ma'am, you testified, did you not, that you saw Mrs. Andrews that day when you say that they were standing in the doorway, you saw her dressed in a blue nightgown, did you not tell us that?

A Yes.

Q Did you tell the police that?

A Yes, I did.

Q And did you make a written statement?

A I made a written statement. I seen her standing in the doorway. I did not tell them that I seen her standing in a blue gown.

Q You did not tell him that?

A No.

Q You made the statement after you identified her, didn't you?

A I never seen her body.

Q You did not go to the Morgue?

A I went to the Morgue to identify the linen, but I did not see Mrs. Andrews' body.

Q You did not see the body?

A No.

Q But you did see the blue nightgown there?

A No, I did not.

I seen it when she was standing in the doorway when I made my statement to the police, I made it at that time, vaguely, what I could remember.

Q Did you see the blue nightgown at the Morgue?

A No.

Q You just saw the bed clothing?

A Just the bed clothing.

Q You say you made your statement just vaguely from what you could remember on the 21st?

A Yes.

Q Is that correct?

A Yes.

Q But you are telling us that that statement would not cover what you are testifying to today?

A No. Because at that time I did not know Mrs. Andrews was dead and I couldn't remember everything at that time anyhow.

Q But you can remember it today?

A Yes, I could remember today and it is the truth.

Q And you did give your written statement on the 21st day of September, did you not?

A Yes, I did.

Q And you told him everything you could remember at that time, but you couldn't remember as well then as you can remember today, that is what you are telling us, right?

A Right.

Q You were asked where Mr. Andrews was on direct examination and you told the jury that he was standing outside of his room, talking into the room to his wife, who was in the doorway, that is how you saw them both, is that correct?

A Yes, it is.

Q And you also, is it not a fact, that in your written statement to the police that you told them that they were both standing inside the room?

A No, I told them that Mr. Andrews was standing outside the door. Mrs. Andrews was standing inside the door.

Q If I told you that your statement said, "The door of this room was open and I could see Mrs. Andrews and Mr. Andrews standing in Room No. 133 and they were talking and this is their room," that would not be your written statement, correct?

A If it is on the statement, it is my statement.

Q But you remember today better that he was on the outside?

A No. He was still standing on the outside of that room talking to Mrs. Andrews.

Q He wasn't in the room?

A No. He was standing near the door.

Q So you were mistaken here in this written statement?

A No, I was not mistaken.

Q I am showing you what has been marked for purposes identification as Defendant's Exhibit D and D-1. I am calling your attention to this. Would you read this?

A "The door of this room was open. I could see Mr. and Mrs. Andrews standing in the room of 138."

Q Which was changed to 133?

A Right.

"And they were talking. And this is the room --"

Q "And this is their room"?

A Right.

Q And you told the police in your written statement that they were talking inside the room, is that not correct?

A Mr. Andrews was standing --

Q Would you please answer my question, ma'am?

A Yes.

Q You told the police that?

A Yes.

Q Further you told the police, is it not true, that you testified here in Court that when the television went up you never heard it so loud, is that not true?

A That is true.

Q And you did not put that in your statement, did you?

A No, I did not.

Q And is it not further true that when you were on the stand yesterday, you told how he came out of the room carrying such a heavy burden that when he put it in the trunk he had to bend down to put it in the trunk of the automobile so noticeably and obviously went down and came back up, didn't you tell us that?

A I said --

Q Didn't you tell us that?

A Yes, I said the automobile --

MR. SUMMERS: Judge, may I ask that the witness be instructed to answer the questions?

THE COURT: What you say she said is not correct.

She may correct you.

A I did not say he was slumped over. He came to the car with a heavy object on his back. I didn't say slumped over. The trunk of the car went down and came back up.

Q You told the police that?

A Not in my statement.

Q You did not put that in your statement?
A No.
Q You didn't remember that then, but you remembered that yesterday?
A I remembered that a couple of days ago.
Like, hey, I couldn't remember anything at that time and I didn't think nothing of Mr. and Mrs. Andrews arguing.
Q Until a couple of days ago?
A I remember the night he told us his wife was found dead.
Q He told the police that?
A His wife was --
Q You didn't know?
A I didn't want to be bothered with the trial anyhow.
Q Yesterday on your direct examination, ma'am, you told this jury that you had two conversations around eleven o'clock that evening with Mr. Andrews, did you not?
A I seen Mr. Andrews when I come back, which was about 11:00 and a little after 11:00.
Q Then, we are pretty much in agreement on that that is what you told the jury?
A Yes.
Q You told the jury the first time you saw him he indicated to you that he did not know anything about his wife, correct?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A Correct. This is what he told me.

Q You indicated to this jury then that you saw him a short time later and he very coldly and passively informed you that she was dead?

A He told me that they found his wife dead.

Q And he told you very coldly?

A Very coldly, impassionately, which he is always cold and impassionate.

MR. SUMMERS: I would ask that that be stricken.

THE COURT: The record may so indicate the comments be stricken.

Q When you made your statement that was another thing you just -- either didn't remember or did not want to tell the police, is that correct?

A At that time, I didn't think nothing of the situation, what was going on until after I learned of her death.

Q You saw no significance in the fact that at 11:00 o'clock he passively told you he knew nothing about her and within a matter of minutes he passively told you that, oh, yes, she was found dead, correct?

A At that time I didn't talk to no police. I didn't talk to the police for a couple of days after.

Q Is it not a fact that at 10:15 on the morning of the 21st day of September, 1974, you made a written statement to

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

the police department?

A Yes.

Q Do you remember better yesterday and today in your testimony than you did on the 21st day of September?

A No. On the 21st day of September, I didn't want to get involved.

Q You didn't tell all that you know?

A No.

Q When did you decide to tell all that you know?

A When I stopped and realized what really happened.

Q What did you do?

A What did I do?

Q As a result of your change of mind, your change of heart, what did you decide to do?

A To go tell the detectives everything I really know.

Q When did you do that?

A I don't remember.

Q Would you give us a month?

A No, not a month, no.

Q Well, was it September, October, November, January, February or March?

A It was about a week or two weeks afterwards.

Q After your statement or after she was found dead?

A After the statement.

Q You called the police and you voluntarily said I have

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

more things to tell you and you went down and told them, is that right?

A No. Detective Hubbard came over to the hotel one day, still investigating the crime and I told him that I would like to talk to him and Detective Rowell.

Q And did you do so, is that correct?

A Right, I did.

Q They took another written statement to supplement the things that you had forgotten?

A No, they did not take another written statement.

Q Did you ask to amend your written statement to show this thing, there was a down and up movement in the automobile or he had told you just, after he told you he didn't know, and he did tell you he knew and that it was passive and cold?

A No.

Q You told us yesterday that he came out, carrying a large object and it was covered with some plastic?

A Yes, I did.

Q Do you recall the color of the plastic?

A Gray.

Q And what color is his automobile?

A Almost like a greenish color.

Q It wouldn't be gray?

A You could call it greenish gray if you want.

Q Thank you.

Now, when you saw this garbage bag, that is all you could see him carrying something in that bag, but only the bag, is that correct?

A That is correct. I could not see in the bag.

Q This was the kind of bag that lines a garbage can, right?

A Yes. You can use it for that.

Q Did you see it again, that liner?

A No.

Q You didn't see it at the County Morgue?

A No.

Q You weren't asked to identify that, were you?

A No, I was not.

Q You told us first, ma'am, did you not, that you walked by the door and you looked in and you saw, you did not see Mrs. Andrews however, you could not see the entire room, you told us that, didn't you?

A Yes.

Q You told us further that you saw that the bed was, had absolutely no clothing on it, is that correct?

A That is correct.

Q And you told the police this?

A No.

Q Why didn't you tell the police that?

A Because at that time I did not think much of the situation, what was going on.

Q When you talked to them on the 21st was there any doubt in your mind that Mrs. Andrews was dead?

A Yes, I knew she was dead then.

Q And you had already been to the Morgue, hadn't you, to identify bloody sheets, bloody pillows, bloody bedspread, you saw a lot of blood on that, didn't you?

A On the linens, yes.

Q And you talked to the police about what had happened prior to making your statement, isn't that true?

A What do you mean talked to the police prior?

Q You had some conversations with Detective Hubbard and Rowell, didn't you?

Prior to making a written statement you talked to them and they took you down to 21st and you made your statement?

A They had asked me if I would go down and make a statement.

Q You never discussed it prior to putting it into writing?

A They asked me what happened, if I knew anything because at that time, like I said, there was another lady standing with me and we told them what we had seen and they asked me if I would make a statement and I said, "Yes, I

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

would."

Q You told them everything you could remember?

A Not at that time.

Q You were asked the last question on your statement, "Have you read your statement of two pages and is it the truth?" did you not?

A Yes, I did.

Q Were you not asked also whether or not you wished to add anything further?

A Yes, I was.

Q What was your answer?

A No, at that time.

Q Did you not answer, ma'am,"Just that I seen Mrs. Andrews in her room between 11:00 A.M. and 12:00 noon on September 18th and I have not seen her come out of this room since that time," did you not say that?

A Yes.

Q But you didn't say that, not at this time?

A No.

Q You did not think it was -- in spite of the fact that you had identified bloody clothes, been told she had died a rather violent death, been told Mr. Andrews was arrested for the crime, been to the County Morgue, talked to by police officers and decided that you would make a written statement, while in that statement room, you decided

Cuyahoga County Prosecutor's Office 5093894 205104 V9808516-310 PKG1 1/20/2021 Page 310

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

I wish -- do I have to give my employment address

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A Yes.

MR. LAURIE: Wait a minute. Objection.

THE COURT: Overruled. She may answer.

A Yes, I am.

Q So you are receiving welfare, is that correct?

MR. LAURIE: Objection. Immaterial to the case.

MR. SUMMERS: If it please the Court --

THE COURT: Overruled.

A Yes.

Q Is it not a fact that you receive your Welfare check at the Colonial Motel?

A Yes.

Q Is it not a fact you are working and telling the Welfare Department that you are not working?

MR. LAURIE: Objection.

THE COURT: Overruled. Approach the bench, please, gentlemen.

(Discussion had between Court and counsel off the record and out of the hearing of the jury.)

THE COURT: Ladies and gentlemen,

1/20/2021 Page 313
Cuyahoga County Prosecutor's Office 5093894 205104 V980816-313 PKG1

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

may tend to incriminate her.

Mr. Laurie, you may advise your witness as to that fact.

MR. LAURIE: Mrs. Worthy, besides being a prosecutor in this case, I think in a sense of fairness, that the few questions that may develop at this point in regards to you receiving public aid and/or working at the same time may be an incriminating situation if you would give that answer. You are entitled to know this. I am telling you this as an attorney. You have a right to be counselled by an attorney when some other lawyer asks you questions that may tend to incriminate you if you give the truthful answer. You have no duty to self-incriminate yourself. If you are violating any law, it is up to the authorities to develop it without your participating and incriminating yourself.

Do you understand that?

MRS. WORTHY: Yes, I do.

MR. LAURIE: So, if the questions are asked of you pertaining to this public aid, and/or working at the same time, if you feel that that situation may incriminate you, if you give the truthful answer, I suggest you relate to the Court and to

the jury that you refuse to answer that on the basis that it may tend to incriminate me and then let the Court decide whether in fact you should answer or not. Then if the Court instructs you you must answer, obviously you must follow the Court's instruction and then we will deal with that situation later, so long as you have established your right to refuse to answer under the Constitution. Is that clear in your mind, Mrs. Worthy?

MRS. WORTHY: Yes, it is.

THE COURT: And that answer may be given to on any question that involves any type of crime. Do you understand?

Not only the development that Mr. Summers is now on, welfare, if he attempts to go into other areas you may also use the same answer that, the answer to that question may tend to incriminate me and I refuse to answer.

Do you understand fully?

MRS. WORTHY: Yes, I do.

THE COURT: If you have any question as to your rights at any time you would indicate that to the Court and we will discuss further before you give any answers; do you understand?

MRS. WORTHY: Yes.

Electronically Filed 03/30/2018 18:10 / MOT... CR ... ZA / Confirmation Nbr. 1342887 / CLJK1



Cuyahoga County Prosecutor's Office 5093894 205104 V9808516-314 PKG1 1/20/2021 Page 314

MR. SUMMERS: Thank you, Judge.

(Thereupon the following proceedings were had within the hearing of the jury:)

THE COURT: Is there a question before the witness at this time?

THE REPORTER: Yes.

(Question read.)

THE WITNESS: I refuse to answer on the grounds I might incriminate myself.

BY MR. SUMMERS:

Q Is it a fact that you are working full time at the Colonial Motel?

A I didn't understand that question.

THE COURT: What period of time?

MR. SUMMERS: In the month of September, 1974.

A I was working at the Colonial Motel but I was not getting paid.

Q You were not being paid?

A No, I was not.

Q You were doing it out of the goodness of your heart?

A Yes, I was.

Q Okay. And how long did you do this out of the goodness of your heart? How many months?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

A About four weeks. I lived there about two months.
Q Is it not a fact that you have been telling the Welfare Department for quite some time that you were not working and receiving any help and still drawing down the welfare checks, not just recently?
A No, that is not true.
Q By the way, ma'am, do you have any children?
A Yes, I do.
Q How many children do you have?
A I have seven children altogether.
Q Are they all with you?
A No, they are not.
Q How many of them are with you?
A None of my children are with me.
Q None of your children are with you?
A No. They are with my husband.
Q So, in fact, you are not receiving any aid to dependent children?
A No.
Q You are just merely receiving welfare?
A For myself, right.
Q And you are working as a barmaid, is that correct? Yes or no.
A I am helping out as a barmaid.
Q And you testified, did you not, that you still to this

day receive your county assistance, welfare check at the Colonial Motel, is that not true?

MR. LAURIE: Objection.

THE COURT: The admonition that the Court has given you --

A I refuse to answer on the grounds that it would incriminate myself.

Q Did you not tell us previously that you were receiving the check there?

A Yes.

Q But you refuse to answer that at this time?

A Yes.

Q Because it may tend to incriminate you?

A Yes, sir.

Q Mrs. Worthy, do you know who killed Regina Andrews?

A Do I know who killed her?

No, I do not.

Q You have no idea who killed her?

A No, I do not.

Q And everything you told this jury is the truth?

A Yes, it is the truth.

Q And there is no puffing in it? You didn't add anything to your testimony?

A No, I did not.

Q Nothing whatsoever?

Electronically Filed 03/30/20 ... / Confirmation Nbr. 1342887 / CLJK1

A No.

Q You didn't tell any lies either, did you?

A No.

Q And you haven't told any lies to the Welfare Department, have you?

MR. LAURIE: Objection.

A I refuse to answer on the grounds it will incriminate myself.

THE COURT: Sustained.

MR. SUMMERS: Thank you, Mrs. Worthy.

THE COURT: Anything further, Mr. Laurie?

MR. LAURIE: That is all. Thank you.

THE COURT: You may step down.

(Witness excused.)

THE COURT: Next witness.

MR. LAURIE: Judge, the next witness is down the hall.

Can you bear with us about 30 seconds?

THE COURT: Yes.

MR. ADRINE: Your Honor, the State would like to call Reginald Mason.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

IN THE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | THE HON. FRANCIS SWEENEY |
| Plaintiff | ) | |
| -vs- | ) | MOTION FOR BILL OF PARTICULARS |
| ISAIAH ANDREWS | ) | |
| Defendant | ) | |

File

The Defendant, ISAIAH ANDREWS, moves this Court for an order requiring the State of Ohio to furnish a bill of particulars setting forth specifically the nature of the offense charged in the indictment returned in the above matter pursuant to the provisions of §2941.07 of the Revised Code, said bill of particulars to cont[ain] the following:

A detailed statement of the particular acts, conduct, methods, manner or means by which the State claims the Defendant committed the alleged acts.

Defendant says that said indictment is vague, indefinite, uncertain and insufficient, in general terms and conclusions; that he is unable from a reading of said indictment to reasonably know the nature and cause of the charge against him; he is unable to prepare an intelligent defense thereto, and in order that this Defendant may be fairly informed of what the State claims and with what crime, if any, he is charged, and so that this Defendant will be protected in his Constitutional rights, the prosecuting attorney should be required to particularize as follows:

The day, time, and location of the particular incident alleged herein; what act or acts were specifically performed

LAW OFFICES OF
Summers, Schneider, Burke & Hildebrand
CLEVELAND, OHIO

EXHIBIT
13
PENGAD 800-631-6989

by this Defendant; how this Defendant participated in the alleged crime, and the names and addresses of persons who claim to have seen this Defendant participating in this alleged offense whatsoever.

Respectfully submitted,

WILLIAM L. SUMMERS
Attorney for Defendant
Summers, Schneider, Burke & Hildebrand
1020 Northern Ohio Bank Building
Cleveland, Ohio 44113
696-0727

SERVICE

A copy of the foregoing motion was mailed this 30th day of January, 1975, to JOHN T. CORRIGAN, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

WILLIAM L. SUMMERS

LAW OFFICES OF
Summers, Schneider
Burke & Hildebrand
1020 NORTHERN OHIO
BANK BUILDING
CLEVELAND OHIO 44113
696-0727
CABLE ADDRESS SUMBERNOR

bs

STATE OF OHIO )
( SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

FILED
FEB 27 1 59 PM '75
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

CASE NO. CR 17902
Judge Sweeney

POSTED

THE STATE OF OHIO

Plaintiff

vs.

ISAIAH ANDREWS,

Defendant.

BILL OF PARTICULARS

* * *

Responding to the request of the defendant, Isaiah Andrews, for a Bill of Particulars, the Prosecuting Attorney says that the State of Ohio will prove on the trial of the above entitled case, the following:

That on or about the 18th day of September, 1974, between the hours of 11:00 A.M. and 2:00 P.M., and in the vicinity of the Colonial House Motel, 3301 Euclid Ave., Cleve., O., Cuyahoga County, the defendant, Isiah Andrews unlawfully and purposely and with prior calculation and design, caused the death of another, to-wit: Regina Andrews, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

See Response to Request for Discovery for further information.

The Prosecuting Attorney says further that under the law governing Indictments and Bills of Particulars, the Prosecuting Attorney is not required to disclose through a Bill of Particulars the other evidentiary matters requested in the defendant's Motion for a Bill of Particulars.

[signature]
Assistant Prosecuting Attorney

## SERVICE

A copy of the foregoing Bill of Particulars has been mailed this 27th day of February, 1975 to William L. Summers, Attorney for the defendant, 1370 Ontario Ave., Cleve., O. 44113.

[signature]
Assistant Prosecuting Attorney

EXHIBIT 14
PENGAD 800-631-6989

STATE OF OHIO (
COUNTY OF CUYAHOGA )

FILED
FEB 27 2 00 PM '75
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

Judge Sweeney

THE STATE OF OHIO,
Plaintiff
vs.
ISAIAH ANDREWS
Defendant

DEMAND FOR DISCOVERY BY THE STATE OF OHIO
CRIMINAL RULE 16 (A)

Now comes the State of Ohio by and through John T. Corrigan, the Prosecuting Attorney, and, in response to the defendant's written demand for discovery, pursuant to Criminal Rule 16 (A) hereby makes written demand of ISAIAH ANDREWS, the defendant, for the discovery of the following items:

1. All photographs, papers, books, documents, tangible objects, or copies or portions thereof, available to or within the possession, custody or control of the defendant and which the defendant intends to introduce in evidence at trial.
2. All results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, available to or within the possession or control of the defendant, and which the defendant intends to introduce in evidence at the trial, or which was prepared by a witness whom the defendant intends to call at the time of the trial, when such results or reports relate to his testimony.

All names and addresses of witnesses that the defendant intends to call at the trial.

Respectfully submitted,

JOHN T. CORRIGAN,
PROSECUTING ATTORNEY
CUYAHOGA COUNTY, OHIO

SERVICE

A copy of the foregoing Demand for Discovery has been mailed this 27th day of February, 1975, to William Summers Attorney for the Defendant, 1020 Northern Ohio Bank Bldg., Cleve.,O.

JOHN T. CORRIGAN,
PROSECUTING ATTORNEY

By [signature]
Assistant Prosecuting Attorney

EXHIBIT
15
PENGAD 800-631-6989

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

THE STATE OF OHIO, )
) SS: **SWEENEY, J.**
COUNTY OF CUYAHOGA. )

IN THE COURT OF COMMON PLEAS

(CRIMINAL BRANCH)

| | | |
|---|---|---|
| THE STATE OF OHIO, Plaintiff, | ) | |
| vs. | ) | No. CR-17902 |
| ISAIAH ANDREWS, Defendant. | ) | |

--- o0o ---

DEFENDANT'S TRANSCRIPT OF PROCEEDINGS

--- o0o ---

APPEARANCES:

On behalf of the State of Ohio:

JOHN T. CORRIGAN, PROSECUTING ATTORNEY, by
CHARLES R. LAURIE, ASST. PROSECUTING ATTORNEY, and
RONALD ADRINE, ASST. PROSECUTING ATTORNEY.

On behalf of the Defendant:

WILLIAM SUMMERS, ESQ., and
JOHN HYLAND, ESQ.

Dominic A. Coccia, CSR and
Louis R. Rennillo
Official Court Reporters
Cuyahoga County, Ohio

EXHIBIT 16

# I N D E X


| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Motion | | | | |
| WILFRED M. GILL | 32 | 35 | 41 | 47 |

- - - oOo - - -

| State of Ohio | | | | |
|---|---|---|---|---|
| ELIZABETH BALRAJ | 89-110 | 109-112 | 126 | 132 |
| BARBARA CAMPBELL | 138 | 154 | 167 | 169 |
| SAMUEL R. GERBER | 172 | 179 | 196 | -- |
| LINDA CLOUD | 200 | 254 | 263 | 267 |
| BETTY WORTHY | 209 | 272 | -- | -- |
| REGINALD MASON | 295 | 308 | 334 | 336 |
| MARY JANE OSTENDORF | 337 | 378 | -- | -- |
| JESSIE BYOUS | 398 | -- | -- | -- |
| LEO ALLEN | 403 | 419 | -- | -- |
| WILLIAM HUBBARD | 426 | 508 | 523 | -- |

- - - oOo - - -

| Defendant | | | | |
|---|---|---|---|---|
| MARTIN PRENGLER | 531 | 544 | -- | -- |
| SAM MUSKAL | 547 | 561 | -- | -- |
| ROBERT RUGGERI | 570 | 574 | 584 | 586 |
| ELIZABETH BALRAJ | 588 | 605 | 617 | -- |
| LESTER ADELSON | 620 | 636 | -- | -- |
| WILLIAM HUBBARD | 641 | 642 | -- | -- |

- - - oOo - - -

CHARGE OF THE COURT, page 652.


- - - oOo - - -

## I N D E X (Continued)

EXHIBITS

| Motion | Marked | Received |
|---|---|---|
| 1, Special Progress Report, | 41 | 49 |

- - - oOo - - -

State of Ohio

| | | |
|---|---|---|
| 1 through 5, photographs, | 95 | 526 |
| 6 through 13, photographs, | 148 | 526 |
| 14, pegnoir and nightgown | 151 | 527 |
| 15, pillow | 151 | 527 |
| 16, hand towel | 151 | 527 |
| 17, caftan | 151 | 527 |
| 18 through 21, bedding | 151 | 527 |
| 22, pillow case | 221 | 528 |
| 23 through 27, photographs, | 306 | 528 |
| 28 through 44, photographs, | 434 | 528 |
| 45 through 48, photographs, | 446 | 528 |
| 49, statement of Isaiah Andrews, | 578 | 529 |

- - - oOo - - -

Defendant

| | | |
|---|---|---|
| A, tag | 165 | 645 |
| B, coroner's verdict | 184 | xx |
| C, statement of Linda Cloud | 254 | xx |
| D, statement of Betty Worthy | 273 | xx |

- - - oOo - - -

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

INDEX (Continued)

The following exhibits, because of their nature and size, and which were offered and received in evidence, are being held in the custody of the Prosecutor's office and will be produced at the request of the Court or counsel at any further hearing of this cause:

State exhibit 14, pegnoir and nightgown;

State exhibit 15, pillow;

State exhibit 16, hand towel;

State exhibit 17, caftan;

State exhibits 18 through 21, bedding;

State exhibit 22, pillow case; and,

State exhibits 44 through 48, newspapers.

THE STATE OF OHIO, )
) SS: SWEENEY, J.
COUNTY OF CUYAHOGA. )

IN THE COURT OF COMMON PLEAS

(CRIMINAL BRANCH)

THE STATE OF OHIO, )
)
Plaintiff, )
)
vs. ) No. CR-17902
)
ISAIAH ANDREWS, )
)
Defendant. )

--- o0o ---

DEFENDANT'S TRANSCRIPT OF PROCEEDINGS

--- o0o ---

BE IT REMEMBERED, That at the January, A.D. 1975 Term of said Court, to-wit, commencing on Monday, the 3rd day of March, 1975, this case came on to be heard before the Honorable Francis E. Sweeney, one of the Judges of said Court and a jury of twelve in Courtroom No. 1, upon the indictment heretofore filed herein.

(Thereupon the following proceedings were had:)

(MONDAY MORNING SESSION, MARCH 3, 1975.)

(Thereupon the following proceedings were had in the chambers of the Court:)

THE COURT: Let the record show that the defense has made requests upon the prosecuting attorney for names and addresses of the witnesses that he anticipates calling to testify in this case.

Mr. Laurie on behalf of The State of Ohio contends of all the witnesses that he does intend to produce, namely five in number, he feels he cannot reveal the name or the addresses due to some threats or coercion having been used against them already or if they are revealed now that they will be, prior to testifying, will be threatened or caused some concern in testifying. Is that correct, Mr. Laurie?

MR. LAURIE: Yes, sir.

THE COURT: What exactly --

MR. LAURIE: Judge, we have interviewed some of the lay witnesses in this case, vital witnesses, and they have informed us, at least my impression is that at least two out of the four or five that are being withheld, that they directly received many threatening calls in regards to this particular case and that so much that it was

brought to the attention of the authorities and it is my understanding on -- I was not the original prosecutor in this case, but it is my understanding that through our office and the police department that the threats were so severe and so dangerous that the State had to put up, as it were, one of the witnesses in a motel room, secreted somewhere under constant guard, day and night -- am I right -- and this was done for a considerable length of time and that since then we have had difficulty in trying to find these witnesses and this is one of the reasons, I believe, that prompted the prosecution to withhold the names because witnesses were in fear of their life.

We have done some extensive searching and used a great amount of hours finding these people and we have used all the means possible to have them come down voluntarily with the assurance that they would be protected, their physical being would be protected and under these circumstances they did finally show up.

Again, recently we learned of these threats from them and one of them in particular of the two that were contacted by somebody or some person or persons at the conclusion of my interview in passing

she said it was getting to be where she would have to hide herself or secret herself and place herself into places where she could not be found, but notwithstanding that, she did get a letter addressed to her, and she gave it to me and she said she was so scared and angry about the situation that she was starting to tear up the envelope and she, fortunately, saved it and gave it to me and I will give it -- the envelope is torn, it is addressed to the young lady and I hope that the Court only would see the envelope because of the name involved and the piece of paper-- the Court may see that it was written to her and it could be given to counsel now to review also and it says, "Testify, you die," and that piece of paper could be kept to verify what we are saying and under the statute, I understand that any such threats that are made and may be made to the witnesses, that it is exempt from disclosure and doesn't specifically -- the statute doesn't say that all of them have to be certified or threats have to be certified or threats that may be threatened, and under these conditions I feel that if others were not threatened, they may be in view of the totality of the threats made to, at least, a couple of the four or five witnesses.

We respectfully request the Court to allow us not to disclose these witnesses at this time and even if they are called, Judge, further, we suggest that the Court will not permit us or allow us to ask them their addresses, their names, yes, and whatever is necessary, their background minus their address.

MR. SUMMERS: If it please the Court, your Honor, at this time I would ask that the prosecution be ordered to disclose to us information which was requested, timely, better than a month ago, that being the names and addresses of all witnesses.

Your Honor, if I were given that information at that time, I would request a continuance to go out and seek these people to talk to them myself in company with Mr. Hyland.

I am also moving the Court at this time that it has come to my attention that Mr. J.C. Williams was assigned to this matter the first time of the indictment and I would ask that he, a private investigator be assigned to give me the information that he has got, so, hopefully, it can be of help to the defendant at this time.

Your Honor, my having this information, Mr. Hyland having this information and our investi-

gator having this information does not, ipso facto, mean that the defendant or any of his relatives would have this information.

I can certify to this Court, your Honor, the following:

Number one, that the letter could not have come from the County Jail by the defendant having written it because they are only allowed to use pencil. They are not allowed to use anything other than a pencil and I believe that is written in some type of marker, felt tip arrangement and that is a letter that Mr. Laurie obviously does not dispute because it did not come from the defendant, Mr. Andrews which was written to Mr. Marino. It is written in ink and the rules all over the walls down there is that no one is allowed to have a pen. If you look at the stuff coming out of the County Jail--

MR. LAURIE: When you are through, I have rebuttal.

MR. SUMMERS: All right. Fine. Now, may I ask, this correspondence, was it received -- do you know approximately what day and month?

MR. LAURIE: There is a stamp on the portion of the envelope that would reflect when it was mailed.

THE COURT: The envelope reflects that it was -- there is a stamp on it which says February 25, 1975, Fremont, Ohio.

It is March 3rd, same year.

MR. LAURIE: Are you through yet?

MR. SUMMERS: So, then, this had not been mailed, evidently prior to the prosecution receiving my demand for discovery which was -- I filed it on the 30th day of January, this having been written on the 25th day of February, I would just like to point that out.

I do not intend to, if there is an allegation, I do not intend to, if the Court would so choose, make this information, if it were given or known to the defendant, I have had one contact by an outside individual that is his brother who was a businessman and called to ask when it was going to trial. I don't believe he contacted Mr. Hyland. He called me once. I told him the date was March 3rd and that is the last that I have heard.

I have had no contact from any other individuals concerned about this man. I did, in fact, check with the Muslim community he allegedly had some contact with and in fact, he does, but they are not participating in any way in his defense.

MR. LAURIE: Judge, in rebuttal, to what counsel has said, first of all, I would agree with them that this case had assigned to it another team of lawyers, very able defense lawyers and also a very able and busy investigator in criminal matters. I would assume, I don't know, but I would assume that when the new team of lawyers came in, that they were diligent enough to make inquiry of the old team and whatever investigators there were that they would have got some information without my help, even, and the fact that the -- we have the information, I could also state that that investigator assigned to the case in December did contact at least one or more of the lay witnesses that I referred to. This is why we are trying to keep them in hiding, because their whereabouts were known at one time. Their names were known.

Now, as far as the jail, this defendant, allegedly, maybe by virtue of his comments could not and did not make this particular letter. That is without any merit, because, as we know, there are many things going in and out of the jail that aren't supposed to, and even if it is written all over the walls that they cannot do this or that, things have certainly been mailed and other more

important things have gone in and out of the jail regardless and whether or not he did it or not, I am not about to say that he did at this time, he, the defendant.

THE COURT: Okay. All right. The motion for the production of the names and addresses of the witnesses will be withheld by the prosecuting attorney.

The Court is convinced that there is some harm that may come to the witnesses should their names and addresses be given and I have marked the letter that one of the witnesses got as a motion exhibit and it will go in the record.

Then, the ruling of this motion, the Court does this relying upon the Ohio Rules of Criminal Procedures, Rule 16, Discovery and Inspection Subsection E and the Court will also grant the motion of the prosecuting attorney that the address of the witness not be publicized when they are called to testify but their names, of course, will be given.

The motion to have an investigator appointed by the Court to the defense attorneys will be granted, and Mr. J.C. Williams will be appointed investigator in this matter.

Any other motions?

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

MR. SUMMERS: Yes. I move at this time to be allowed to voir dire each witness, perhaps out of the hearing of the jury, Mr. Hyland and myself and Mr. Laurie could tell the names so we would know which ones we are talking about and we would be allowed to voir dire them prior to the testimony to see if they have been threatened.

THE COURT: I will allow a voir dire of the witnesses as to the information for this motion on their threats or coercion as far as they are concerned, not necessarily prior to their testimony, because I think their testimony on this matter could be given at any time, before, during or after.

MR. SUMMERS: Fine, your Honor. At any time will be fine.

THE COURT: Anything else, now?

If not, call the jury.

MR. SUMMERS: Your Honor, I would like to add for the record there was also filed in this matter a Bill of Particulars, a request for a Bill of Particulars which has not been complied with at this time.

Number two, I would suggest that the record

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1



Cuyahoga County Prosecutor's Office 5093894 205104 V9808516-37 PKG1 1/20/2021 Page 37

reflect the fact that this morning I was given the name of a certain witness that Mr. Jessie Byous of 11616 Durant was the individual that found the body and that there are certain other professional witnesses being police officers and I have been told Dr. Balraj will represent the Coron'ers office and they will be -- will there be anyone from Miss Cowan's office?

MR. LAURIE: Barbara Campbell will be available.

MR. SUMMERS: I have been given, then, this information this morning and I believe there will be police testimony by Detective Hicks and/or Detective Allen.

MR. LAURIE: I think I sent you a list of those.

MR. SUMMERS: No.

MR. LAURIE: Well, it certainly went out. Whether you got them, I don't know, but I have filed your request for the Bill of Particulars and the usual form of discovery and we give out all witnesses except four or five.

MR. SUMMERS: Well, perhaps you

have a copy of the Bill of Particulars?

MR. LAURIE: Maybe we do and furthermore I answered that as soon as I got the file for this particular case.

Now, in addition to that, I did give you, orally, this morning before we went on the record, all the witnesses, everything that I recall, the oral statements and a written statement of the defendant.

MR. SUMMERS: I have not as yet been served with a copy of the Bill of Particulars and would move to dismiss at this time for lack of compliance.

THE COURT: That motion will be overruled.

MR. LAURIE: Judge, in response --

THE COURT: Let the record also show there was a lengthy discussion between counsel for the State and counsel for the defense prior to going on the record about many other facets of the evidence that they have in their file and intend to produce at the time of trial concerning, not only written and oral statements, but other evidentiary facts presented to the defense.

MR. LAURIE: In addition to that,

I found my copy of the form that you should have received for the motion of discovery and I am giving you my copy now and also when I find in my file anything else, I will keep looking, I must have a copy of the Bill of Particulars purportedly mailed out.

THE COURT: At this time there are no motions to suppress the written statement of the defendant, is that correct, Mr. Summers?

MR. SUMMERS: No, but I would ask leave of the Court to make that motion orally at any time when the evidence of such be given, oral testimony. I would ask that a voir dire of that be done prior to any introduction.

I would also move at this time, your Honor, for a motion in limine to -- is that the Bill of Particulars, Charlie?

MR. LAURIE: Here is a copy of the Bill of Particulars filed February 27th at 2:00 P.M., along with the discovery forms and I am handing both of them to you now.

MR. SUMMERS: I have just received this now, a copy of the motion for the Bill of Particulars and a copy of the response to the motion for the Bill of Particulars and we now move in

limine to limit the prosecutor's cross-examination of the defendant should he choose to exercise his constitutional right to take the stand, that he not be questioned as to any prior allegations of criminal conduct in relation to any alleged murder that he was involved in while in the Marine Corps since this is not in violation of the State or Federal statute, it is a violation of the uniform code of military justice which does not come under the --

MR. LAURIE: I distinctly object to that and see no basis for that kind of an argument. We have two forms of government in this country, maybe three. There is the Federal, State and the local level and the incident of the murder is certainly a Federal charge and I strongly suggest to the Court that the Court allow us under the law to proceed accordingly, according to law as prior convictions are concerned.

THE COURT: The motion in liminie to preclude the prosecution from asking the defendant as to prior involvement with any criminal activities will be overruled.

Now, I want the Deputy Marshal seated next to him up here in the chair, right behind the

defendant.

MR. SUMMERS: Let me make some other observations for the record. I think the Court will recall that the defendant, the first time he came to Court was not only in handcuffs but also in shackles. I would say, further, your Honor, that the defendant has been isolated in the County Jail due to their worry about him, although it wasn't the first time which I think would go towards the writing of this type of communication.

Number two, I would ask the Court to more specifically specify for the record the information that was given to us prior to trial in the suggestions we have just alluded to, that a great deal of information was given to counsel, just so the record is clear.

I was told certain things that I had tacitly undercovered, which were verified, there having been in two basic areas, evidence which could exculpate or tend to exculpate the defendant which was that scientific investigation team from the Cleveland Police Department which did in fact make a thorough investigation of the room where the people were staying and number three, that they

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

made a thorough investigation of the trunk of the man's automobile and that they found absolutely no traces of blood from this crime.

That was confirmed for me. I was told that there had been oral statements made by the defendant to Officer Hicks and/or Allen of the Homicide Unit and basically what the content of those was related to me and the possibility that there are some inconsistencies in them that was relayed to me, and that further something was said to a non-disclosed witness who it has been certified harm would come to if the name and address were to be given.

I might add that it is my understanding from talking to Mr. Laurie that this information was all given in the prior trial and that a complete letter of discovery was given to previous counsel.

MR. LAURIE: I didn't tell you that. I said I assumed you might have gotten the discovery at an earlier date when this case was assigned to another team of lawyers. I don't know whether they did or not.

Now, furthermore, I didn't tell you that the police officers made a thorough investigation. Whoever told you that, I don't want to be held

responsible for whoever made that statement to you. My statement to you about the police department insofar as the room and car is concerned, we have no information at this time that there was any significant findings of blood stains, whatever, that you inquired about in the room because to my information the police didn't get in the room until the next day and into the car the next day, many hours transpiring after the killing, but even on the basis of that, I did a little late work myself and asked the officers to conduct and to re-evaluate that which they already did, which I do not know of any results as of this moment, and when I find out, I will tell you one way or another.

MR. SUMMERS: Was there or was there not a thorough examination of the room?

MR. LAURIE: I told you I don't know. There was an examination made of the room by virtue of the fact that the police walked in and made some observations.

MR. SUMMERS: S.I.U.?

MR. LAURIE: I don't know if S.I.U. was there. They might have been there, too, but when you say thorough examination, I am not prepared to give you that kind of a statement now.

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

I do know the police went in there many hours after the alleged killing and found nothing of value.

There was a palm print which was found on a newspaper near the body. That palm print, I don't know whether they tied it in or not at this time. I am talking about my case this time. I am not talking about what happened in the past with other lawyers.

I have ordered the police department to re-examine and re-evaluate and look and find if there is anything in there. If there isn't anything, to let me know, that is as far as prints, and when I find that out, I will tell you.

MR. SUMMERS: Your Honor, I would then say, other than that, that is all the information that was given to us in our off the record discussions here this morning.

THE COURT: Call the jury.

(Thereupon further proceedings were had in the presence of the panel as follows:)

(Thereupon a panel of jurors was duly sworn.)

(Thereupon the impaneling of a jury was commenced.)

Electronically Filed 03/30/2018 18:10 / MOTION / CR 98 370393 / Confirmation Nbr. 1342887 / CLJK1



Cuyahoga County Prosecutor's Office 5093894 205104 V9808516-45 PKG1 1/20/2021 Page 45

MR. LAURIE: Judge, it is about 12:00 o'clock. I am a little dry. I still have an overlapping cold.

THE COURT: All right. Ladies and gentlemen of the panel, we will recess now for the noon hour and reconvene this afternoon at 1:30.

Do not discuss this case among yourselves or with anyone else. Don't let anyone talk about the case in your presence.

Will be back as close to 1:30 as we can.

(Thereupon an adjournment was taken to 1:30 P.M., Monday, March 3, 1975, at which time the following proceedings were had:)

--- o0o ---

Electronically Filed 03/30/2018 18:10 / MOTION / CR 75 017903-ZA / Confirmation Nbr. 1342887 / CLJK1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISAIAH ANDREWS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CLEVELAND, *et al.*,<br><br>Defendants. | ) | CASE NO. 1:22-cv-00250<br><br>JUDGE JAMES GWIN |

**DECLARATION OF ANTHONY T. MIRANDA**

I, ANTHONY T. MIRANDA, hereby submit the following Declaration, under penalty of perjury, based upon my personal knowledge of the following facts:

1. I am an Assistant Prosecuting Attorney for the Cuyahoga County Prosecuting Attorney, and one of the attorneys who represented the State of Ohio in certain post-conviction proceedings that took place from April 2018 through October 2021 in the criminal proceeding, *State of Ohio v. Isaiah Andrews*, Case No. CR-75-017902.

2. On April 4, 2018, Brian Howe of the Ohio Innocence Project filed a Notice of Appearance and Motion for DNA Testing on behalf of Defendant Isaiah Andrews in Case No. CR-75-017902. According to the docket of the Cuyahoga County Clerk of Courts, this April 4, 2018, filing was the first filing in Case No. CR-75-017902 since 1999.

3. Upon the filing of this Motion, I was assigned to the case and proceeded to retrieve the Cuyahoga County Prosecutor's archived file for Case No. CR-75-017902, which had been previously scanned and electronically stored by the Cuyahoga County Prosecutor's Office sometime prior to 2018 ("the Prosecutor's Archived File"). I then uploaded the Prosecutor's Archived File into the Cuyahoga County Prosecutor's Justice Matters database on April 11, 2018.

EXHIBIT 17
PENGAD 800-631-6989

4. A true and correct copy of the Prosecutor's Archived File that I personally retrieved and uploaded into the Justice Matters database on April 11, 2018, is attached to this Declaration and has been Bates-stamped 000001-000622. The Prosecutor's Archived File has not been redacted, but has been produced in its entirety in the manner in which the original file was scanned and electronically stored by the Cuyahoga County Prosecutor's Office prior to 2018.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 31st day of May, 2022.

ANTHONY T. MIRANDA

Feb. 20, 1975

Isaiah Andrews
1560 East 21st Street
Cuyahoga County Jail
Cleveland, Ohio 44114

Dear Mr. Marino:

Sir, the following questions and pieces of information may have some bearing on my case. However your office can ascertain whether they do or not.

Mr. Harter or Harder was an elder member of the Universal Negro Improvement Association (UNIA) who resided at 2200 E. 40th Street in room next to office. He was the treasurer of the UNIA.

He was, I believe, shot in the back of the head some time between Sept. 18 1974 and Dec. 16, 1975. Was his murderer ever found?

Michel Perry was also a member of the UNIA; and I believe he too was killed by a shot or shots in the head and gas thrown on his body and set aflame some time between Sept. 18, 1974 and Dec. 16, 1974. His body was found in the park.

Was his murder ever solved?
He was the photographer at my wedding; and he attended community college.
The following are some people whom you might want to have interviewed as to what part or other positions the above mentioned two dead men had in the UNIA.
Rudy, a man about 40 odd years who works at community college. He is about 5'9" or 5'-11", weighs about 250 pounds, dark complextion.
Joe Davis, 5'-7" or 5'-8", medium built owns a white 1971 ford 500 gallaxy.
Cotton was the Mason family payer and he also acted as the attorny for the UNIA.
I believe he might be able to furnish you with a complete member listing.
Thinking back, I remember my wife saying: "While she was in Africa, she and one other girl

had some tribal markings made on their bodies. On my wife they were located around the solar plexus area.

The about things kept coming to me strongly so I thought I would put them on paper. I hope they can help you, sir.

My I see a set of the photos of my wifes body and see the coroner report. There is something in my lower mind which my be clarified by them. It almost comes forward but not quite.

Sincerely,

Isaiah Andrews

0000004

ORIGINAL

URT No. CR 17902 ... nolled all facts to this file

CRITICAL COMMON PLEAS COURT, CUYAHOGA COUNTY

Writ for 1-24-75 1:30 pm

68935 Agg. Murd.

Sweeney

The State of Ohio / See CR 16694 / CR 17903

vs

JOHN T. CORRIGAN, Prosecuting Attorney

3-31-75 Gave 8 photos to Wilma Sheard Court Reporter

IAH ANDREWS.

| | Indicted | Arraigned |
|---|---|---|
| | 1-21-75 | 1-24-75 |
| | | |
| | | |
| | | |
| | | |

ARGE Agg. Murder

Crime 9-18-74 on WEDNESDAY

Arrest 9-19-74

N/B B 100000

Note: Dominic ~~Refinished this all Statement~~ ~~WKR~~

Evidence returned To prop. rm. 3/12/75 RBA

Trial Date ______ Ass't. Prosecutor ______

osition ______

ney Summers & Hyland

Jury trial - 3-3-75 to 3-12-75

Witnesses

STATE OF OHIO

VS.

ISIAH ANDREWS B-M-36
3301 Euclid Ave.
Cleveland,Ohio

Mike Gorier / H. MAYES / FBI. 522-1400 Ex 271 / J.C. WILLIAMS 696-1268 / WK V.A. Hosp. / " BARKWOOD 6300 ...

12-31-74 Witnesses addresses not to be given out under any circumstances. JTC

| | |
|---|---|
| Co.Coroner | RE: Regina Andrews (9-18-74) |
| Betty Marie Worthy | 2344 Prospect Avenue ~~1853 E.93 St.Side Doors Apartment #3 44106~~ |
| Det.Rowell #1606 | Homicide |
| Det.Hubbard #1673 | " |
| Mary Ostendorf | 1853 Page Ave. 44112 |
| ,ary L.Mason | 640 E.107 St. 44108 |
| Reginald Mason | " " " " " |
| Linda Cloud | 1918 EAST 86th Street ~~13614 Glenside Ave.#8 44110 Phone No.249-2280~~ |
| John Scott | 1669 CARLYON ~~Ave.~~ Rd. E. Cleve 681-1590 |

EDDIE WOLFE

TRIAL 3-3-75 Com.

JOHN T. CORRIGAN

UNITED STATES PENITENTIARY
MARION, ILLINOIS

SPECIAL PROGRESS REPORT

Committed Name ANDREWS, Isaiah Reg. No. 78842-132 Date January, 1973

Goals: (continued)

leadership in the Black Muslim movement, where he continues to demonstrate his extreme racial views.

Institutional Adjustment: Andrews was originally committed on 6/19/58 to the Disciplinary Barracks at Portsmith, New Hampshire. On 4/30/59, he was transferred to Lewisburg for service of sentence. He remained at Lewisburg for approximately two years, where he worked in the Industries Tailor Shop and received a satisfactory job rating. He also enrolled in evening classes in the educational Department and reportedly made satisfactory progress. However, he was considered to be a management problem in that over a two year period, he received five disciplinary reports, the most serious incident being assault on another inmate, which involved racial overtones. In view of this fact, he was transferred from Lewisburg to Leavenworth for closer controls. At Leavenworth, he quickly assumed leadership of the Muslim group in which he continued to preach racial hatred. He was placed in Segregation, where he remained until transferring to Alcatraz on 9/7/61, for a closer period of supervision. At Alcatraz, he made a borderline adjustment and was transferred to Atlanta on 1/16/63, when Alcatraz closed. No information is available regarding his adjustment at Atlanta until November, 1963, when he was certified as a psychotic patient and transferred to the Medical Center in Springfield, Missouri, on 12/19/63. At Springfield, he was diagnosed as a schizoid personality pattern with paranoid traits. The further impression that the diagnosis of schizophrenia/paranoia made at Atlanta was erronious in that Andrews was not in need of psychiatric treatment, although he was in need of close supervision and control measures. He was then transferred from Springfield to Leavenworth on 1/20/65. At Leavenworth, he was assigned to the Shoe Factory, where he reportedly was a good worker, although he continued to be a serious management problem in other areas in regard to his Muslim activities. Andrews was finally transferred to Marion on 3/30/72 for a period of closer supervision and due to the fact there was a power struggle for leadership of the Muslim movement at Leavenworth. At Marion, Andrews is assigned to the Industry Furniture Factory as a spot welder and brazer. His detail supervisor indicates he is a good worker, completes his assigned tasks with little supervision and maintains a good attitude and interest toward his work. In the unit, Andrews is also making a good adjustment and his unit officer indicates he appears to be a well-adjusted individual. Andrews is very active in the Muslim movement at this institution, although to date, none of the extreme racial hatred he has demonstrated at other institutions has surfaced. In summary, during the approximately nine months he has been confined at Marion, he has been making a good adjustment, although he has experienced extreme disciplinary problems at other institutions while serving the major portion of this sentence.

000006 (4)

BUREAU OF PRISONS

UNITED STATES PENITENTIARY
MARION, ILLINOIS

SPECIAL PROGRESS REPORT

Committed Name ANDREWS, Isaiah Reg. No. 78642-132 Date January, 1973

Physical and Mental Health: Andrews is currently enjoying satisfactory health.

RELEASE RESOURCES AND PLANS

Pre-Release Resources: No pre-release programming is anticipated for Andrews in view of the seriousness of his offense and length of sentence.

Post Release Resources: Andrews is very noncommittal concerning his future plans, other than he anticipates residing in Chicago, Illinois, where he will work and live with the Nation of Islam. He indicates he will seek employment with the Nation of Islam for approximately three to four months, at which time he anticipates opening a business of his own which he states will deal with "Kung Fu" self defense shops. He indicates Kung Fu is different from Karate in that Kung Fu has a philosophy attached to it in regard to self-defense, teaching one to maim, rather than kill. He also indicates he has approximately $100 in a savings account.

Post Commitment Plans:

A. Residence--with the Nation of Islam in Chicago, Illinois (pending)
B. Employer--with the Nation of Islam in Chicago, Illinois (pending)
C. Advisor--requests USPO to act as advisor.

EVALUATION OF RELEASE READINESS

Probable Community Adjustment: Andrews has now served approximately 14 1/2 years of a 35 year sentence for Murder. He is a military prisoner and his original sentence was Life and has now been reduced to 35 years. Andrews' adjustment during the service of this sentence has been less than satisfactory during the major portion of his sentence and his current attitude continues to reflect extreme racial hatred. In the past, he has been characterized as having a severe character disorder with feelings of persecution. He reportedly views things in a concrete manner and lacks the ability to deal with stressful situations. He has reinforced this position throughout the years and it is extremely doubtful that his racial attitudes or feelings will ever change. His original offense was a very serious one and given his attitude of racial hatred over the past 14 years, the possibility of him being a physical threat to the community is a very likely one.

Recommendation: In view of the above factors, it is recommended that Andrews case be continued with a Special Progress Report scheduled for January, 1974. A one year continuance is recommended in view of his relatively stable adjustment over the past eight months. It is further recommended that Andrews receive favorable military clemency at this time in the amount of a 5-year reduction in sentence.

CLK:ac
12/18/72

UNITED STATES DEPARTMENT OF JUSTICE

MASTER

000007

UNITED STATES PENITENTIARY
LEAVENWORTH, KANSAS

SPECIAL PROGRESS REPORT

Committed Name ANDREWS, Isaiah Reg. No. 78842-132 Date 12-9-71

BRING UP-TO-DATE FOR MILITARY AUTHORITIES

Since the last report, Andrews continues to make an unsatisfactory adjustment at this institution. He continues to be classified as close custody, and has spent the most part of the year confined in the institution Control Unit. He is deeply committed and involved in the Black Muslim activities. Most of his difficulties seem to center around this association, and the pattern has been established in that each time he is released from the Control Unit, he quickly becomes involved in situations revolving around racial agitation and militancy. As noted on last year's report, Andrews appeared before a Parole Examiner on June 10, 1970 at which time he was continued with a progress report requested in January 1973. His current mandatory release date is October 31, 1981. There are no detainers lodged against him at this time.

During the period March 30, 1971 to October 20, 1971, Andrews was in the general population of the institution. During this time he worked in Industries Clothing factory. During this period of time, he received 2 misconduct reports. On April 14, 1971, he received a misconduct report for delaying a count and willfull disobedience of an order. For this offense, he was reprimanded and warned and received a suspended 90-day sentence in the Control Unit. On October 17, 1971, Andrews received another report for conducting military type close order drill during a Muslim religious service. When informed that he had violated the rules of the institution, he stated that as long as he did this type of thing as part of his religion, it was perfectly legal. He was informed that it was not and this practice would stop. He said he would continue doing it as it was part of his religious beliefs. For this offense, he was placed in the institution Control Unit, and has resided there since. Andrews' latest misconduct report occurred on November 22, 1971. During a routine shakedown of Andrews' cell, legal material was found that belonged to another inmate. For this offense, he was continued in the Control Unit.

As is reflected by the misconduct reports outlined above, it appears that Andrews is becoming much more militant in his beliefs and attitude. As is evidenced by his prior record, Andrews is quite capable of acts of extreme violence when he is provoked.

Andrews continues to maintain his community ties by corresponding with his father, who resides in Florida. He also corresponds with a sister. He has not received any visits since his arrival at this institution.

There is no significant medical or psychiatric information to add to the previous report.

RESIDENCE: Newton, New Jersey USPO: Newark, New Jersey

COMMITTEE ACTION: Recommend transfer to USP, Marion, Illinois.

MILITARY RECOMMENDATION:

CLEMENCY RECOMMENDATION: Not recommended due to his extreme racial views.

RESTORATION TO DUTY: Not recommended due to the nature of his offense and his unsatisfactory institution adjustment.

RED:rjs
12-10-71

(2)

UNITED STATES PENITENTIARY
MARION, ILLINOIS

SPECIAL PROGRESS REPORT

Committed Name ANDREWS, Isaiah Reg. No. 78842-132 Date January, 1973

Offender's Explanation: (continued)

blood co... g from the Sergeant's chest. He felt relieved after the shooting and walked to the office of the Lieutenant and told him what had happened. When Andrews was interviewed regarding the preparation of this report, he declined to make any further statement regarding the offense, other than stating to the effect that he stopped talking about the charge approximately ten years ago.

Co-Defendants: None.

BACKGROUND

Prior Record: There is no official information regarding any prior arrest record for Andrews, although he admits that he was arrested on two occasions in New Jersey for tampering with a parking meter and riding in a stolen auto. He indicates he received six months' probation on the latter charge. There were two instances of company punishment, one for failure to be at his appointed place of duty and the second for losing his liberty card and disobeying a company order. He received extra duty and restriction for these offenses. He also received a Special Court Martial for using disrespectful language and disobeying a lawful order, for which he was confined to hard labor for two months.

Detainers: None.

Past History: Andrews is one of 13 children in which his parents separated when he was approximately five years old. Following the parental separation, he was primarily reared by his mother and indications are that he received adequate home discipline and the economic situation in the family was considered to be average, until he was about 10 years old. Thereafter, the family was primarily supported by welfare and his mother and older brothers also worked to support the family. Apparently, at this time, discipline in the home became lax and Andrews joined a street gang. He completed ten grades of schooling at the age of 17, although he failed three grades, because of lack of application. Overall, his school adjustment was considered to be poor. There is no record of civilian work experience prior to entering the service. Andrews indicates he enlisted in the Air Force on 4/20/55, after quitting school and was discharged on 4/18/56, with a general discharge by reason of inadaptability. (unverified). On 8/9/56, he enlisted in the Marine Corps and remained in that capacity up until the current offense. He has never been married.

INSTITUTIONAL PROGRESS

Goals: No treatment goals were established for Andrews in view of his lack of motivation. Andrews has managed to keep himself deeply involved in the Black Muslim movement in a number of institutions that he has been confined to on this sentence. He has not been interested in participating in any other institutional programs. He has maintained a position of

Date: January, 1973

000009

(1)

UNITED STATES DEPARTMENT OF JUSTICE
BUREAU OF PRISONS

UNITED STATES PENITENTIARY
MARION, ILLINOIS 62959
Institution

PROGRESS REPORT

IRH______ PR X______ ANNUAL REPORT TO BUREAU______

Name: ANDREWS, Isaiah Reg. No.: 78842-132

Offense: Murder (Military) Age: 34

Sentence: 35 Years Began: 5/2/58 Months Served: 185

Days ECT: 280 Days FGT: 0 Tentative Release: 1/24/81

Last Board Action & Date: 6/10/70 - Continue with Progress Report in January, 1973
Military Clemency Review date is January, 1973

CURRENT OFFENSE

Official Version: On 1/10/58, while serving in the United States Marine Corps and stationed at Camp Lejeune, North Carolina, Andrews committed an act of premeditated murder against a Sergeant Paul E. Grant by shooting him with his rifle.

Offender's Explanation: At the time of this offense, Andrews' original statement was that he was stationed at Camp Lejeune, North Carolina. He stated that he was being assigned to another company because he was on the boxing team. While assembling his gear, he was told by Sergeant Grant to empty a trash can. He told the Sergeant that he didn't have time, that he was being reassigned. The Sergeant insisted. Andrews stated, "Ah, f___ it." The Sergeant thought that he said, "you" instead of "it." He was placed on report for disrespect. He did empty the trash can. Andrews was awarded a Special Court Martial. Shortly thereafter, he was again called down to the Company Commander's Office, where he was questioned again about a previous Special Court Martial for the same type offense and for which he received two months' confinement at hard labor. He was led to believe that the previous court martial was irregular, because the witnesses had testified falsely. Nevertheless, he was going to get another Special Court Martial. He figured that the same thing (falsely accused) was happening to him again. He was very emotionally upset and angry at Sergeant Grant. He does not recall too much of what happened after that. He remembers going to the quarters of Sergeant Grant. The Sergeant was half-facing subject, when Andrews uttered something about lying and fired a loaded .30 caliber M-1 rifle at Sergeant Grant, striking him in the chest. The Sergeant cried out, clutched his chest and fell forward. He remembers seeing

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY OHIO

THE STATE OF OHIO

PLAINTIFF,

-VS-

[illegible]

DEFENDANT.

CASE NO. [illegible]

* * * * * * * * * * * *

PETITION FOR POST CONVICTION RELIEF

PURSUANT TO

OHIO REVISED CODE 2953.21

COUNSEL FOR PLAINTIFF
[illegible]
[illegible] County Prosecutor
[illegible]
[illegible]
[illegible], Ohio [illegible]

[illegible]
[illegible]
[illegible]
P.O. Box [illegible]
[illegible], Ohio [illegible]

* * * *

[illegible] COURT OF [illegible]

[illegible] COUNTY, OHIO

[illegible] OF OHIO

[illegible],

-V-

[illegible]

[illegible].

CASE NO. C [illegible]

[illegible] FOR [illegible] PURSUANT TO OHIO [illegible]

* * * * * * * * * *

[illegible] Honorable Court [illegible] United States [illegible] Ohio Constitution, [illegible]

[illegible]

Respectfully [illegible],

______________________________

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

(1) [illegible]

(2) [illegible]

(3) [illegible]

(4) [illegible] was denied the effective assistance of [illegible] the Sixth Amendment of the United States Constitution [illegible] § 10 of the Ohio Constitution, [illegible] through the Fourteenth Amendment, [illegible] and [illegible] prejudicial to the Defendant [illegible] trial, and thus, denied defendant [illegible] of his [illegible].

(5) [illegible] has denied the effective assistance [illegible] the Sixth Amendment of the United States Constitution [illegible] § 10 of the Ohio Constitution, by [illegible] with defendant to enter a plea of guilty, [illegible] binding himself to the defendant [illegible] State's prosecution on the [illegible].

[illegible] been held, that [illegible] judicial [illegible] [illegible] the judgment of conviction [illegible] of such Constitutional violations.

[illegible] does not claim to be an [illegible], [illegible] for this Honorable Court to [illegible] to be such, however, as in the instant case [illegible] violations, which, if proven, would [illegible] and [illegible] the formerly entered Judgment and [illegible] obtained in violation of the defendant's rights [illegible] of the United States, which is applicable to the [illegible] Fourteenth Amendment and for violations of [illegible] by the Ohio Constitution, Article I § 10.

Wherefore, [illegible] that this Honorable Court, [illegible] Ohio [illegible] Code. [illegible] et seq., vacate and set aside the Judgment [illegible] entered on the above numbered [illegible], [illegible] defendant's motion for an evidentiary hearing in order [illegible] with an opportunity to prove such facts, [illegible] herein.

[illegible] this Honorable Court accordingly.

Respectfully submitted,

[illegible]
- [illegible] -

PRAYER FOR RELIEF

WHEREFORE THIS, That this Honorable Court, [illegible] as an alternative to vacating and setting aside the Judgment and Conviction, to conduct [illegible] evidentiary hearing on the [illegible] [illegible], pursuant to R.C. 2953.21 (E).

Defendant prays this Honorable Court accordingly,

Respectfully submitted,

---

[illegible] - Pro Se

IN THE [illegible] COURT OF [illegible]
[illegible] COUNTY OHIO

| | | |
|---|---|---|
| STATE OF OHIO<br>PLAINTIFF,<br>-VS-<br>[illegible]<br>DEFENDANT. | } | CASE NO. [illegible]<br>MOTION FOR AN [illegible] HEARING |

* * * * * * * * * * *

Now comes, [illegible], defendant herein, and [illegible] this Honorable Court, as an alternative to [illegible] Conviction [illegible] in the above styled matter, [illegible] " [illegible] " evidentiary hearing on the [illegible] Conviction Relief", on the grounds which [illegible] than an examination of the records, files, [illegible] petition, in order to provide defendant with an opportunity to [illegible] the facts, allegations and contentions made in said petition.

A Memorandum in Support follows hereafter [illegible].

Respectfully submitted,

[illegible]

MEMORANDUM IN SUPPORT

In support of the instant Motion for an Evidentiary Hearing, defendant submits that when facts are alleged, which, if proven, [illegible] require the Court to grant the relief sought, yet, the records [illegible] petition do not fully refute the allegations, [illegible] holding of an evidentiary hearing [illegible] by law. [illegible]: State v. [illegible], 10 Ohio St. 2d 175 (1967); State v. [illegible], [illegible] Ohio St. 2d [illegible] (1975); State v. [illegible], 42 Ohio St. 2d [illegible] (1975) [illegible] [illegible], [illegible] N.E.2d 397 (196[illegible]), [illegible]:

> "... a petition for post-conviction [illegible] under this section, alleges [illegible], and the record of the original [illegible] not fully refute the allegations, the [illegible] is entitled to an evidentiary hearing [illegible] he is provided the opportunity [illegible]."

[illegible]

Furthermore, where a defendant [illegible] [illegible] Ohio St. [illegible] ( [illegible] ).

Further, defendant [illegible] C.A. [illegible] ( [illegible] ). [illegible] C.A. [illegible] ( 1977 ), [illegible] C.A. [illegible] ( 1977 ) [illegible] C.A. [illegible] ( 1977 ); [illegible] C.A. [illegible] 79[illegible] ( 1977 ); [illegible] C.A. [illegible] C.A. [illegible] ( [illegible] ). [illegible] [illegible].

[illegible] Court [illegible] 7[illegible] ( [illegible] ); [illegible] Court [illegible].

## CONCLUSION

WHEREFORE, defendant [illegible] Court, [illegible] U.S.C. [illegible] ( [illegible] ).

Defendant [illegible] Court [illegible].

Respectfully submitted,

[illegible]

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 153 of 768. PageID #: 1888



IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY OHIO

THE STATE OF OHIO,

PLAINTIFF

-vs-

ISAIAH ANDREWS,

DEFENDANT.

CASE NO. [illegible]

MOTION TO PROCEED IN FORMA PAUPERIS AND AFFIDAVIT OF INDIGENCY.

* * * * * * * * * * * * *

Comes now, the above named defendant and respectfully [illegible] this Honorable Court for an Order granting the above [illegible] pauperis [illegible] cost of prosecuting said cause of action.

Respectfully submitted,

*Isaiah Andrews*

ISAIAH ANDREWS [illegible] - [illegible]

THE STATE OF OHIO )
SS
COUNTY OF [illegible] )

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, defendant in the [illegible] [illegible] [illegible] being duly sworn [illegible] [illegible] [illegible] [illegible] [illegible] which [illegible] cost of prosecuting [illegible] .

*Isaiah Andrews*

ISAIAH ANDREWS - AFFIANT

Sworn to before me and Subscribed in my presence, this *19* day of *May* 1972.

*[signature]*

NOTARY PUBLIC [illegible]

( NOTARY SEAL )

[illegible] Andrea
1560 E. 21 St.
Cuyahoga County
Jail, Cleveland, O.
44[illegible]

CLEVELAND, OH 441
AM
26 FEB
1975

KEEP
FILE
[illegible]
8-1792

[illegible] Marino
Cuyahoga Co. Court of Common
Pleas 1 Lakeside Ave.
[illegible] 44114

STATE OF OHIO )
) SS
COUNTY OF [illegible] )

AFFIDAVIT OF [illegible]

I, [illegible], Defendant in the foregoing [illegible] [illegible] being duly [illegible] and [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible], State of Ohio.

Further, affiant sayeth naught.

Isaiah Andrews

[illegible] ANDREWS - [illegible]

SWORN to before me this 19 May [illegible] and subscribed in my presence [illegible] 19[illegible].

( NOTARY SEAL )

[illegible]

NOTARY PUBLIC SIGNATURE

CERTIFICATE OF SERVICE

I, [illegible] Andrews, defendant in this cause of action, [illegible] Certify that a true copy of [illegible] has been forwarded, via U.S. [illegible] to: John T. Corrigan, Cuyahoga County Prosecutor, [illegible] Justice Center, [illegible] Ontario Street, Cleveland, Ohio [illegible], this [illegible] day of [illegible] 19[illegible].

Isaiah Andrews

[illegible]
# [illegible]
Southern Ohio Correctional Facility
P.O. Box [illegible]
Lucasville, Ohio [illegible]

STATE OF OHIO -vs- ISIAH ANDREWS CR-17902

EXCERPTS OF TESTIMONY OF DR. LESTER ADELSON

Monday, March 10, 1975.

DIRECT EXAMINATION

BY MR. SUMMERS:

* * * * * * * * * *

Q Doctor, if I told you this body had been undressed prior to its being examined, for rigor, which is a common practice, is it not?

A Yes. You can examine a body for rigor when it is dressed. You can flex somebody's leg wearing a pair of trousers or slacks.

Q If I told you that this time interval was in a Coroner's office and that this is the time interval between the time the body was undressed and then looked at and rigor determined and the body was then put in the crypt, and stayed there all night, and there is no night work done on the body --

A No.

Q It is not consistent with a great deal of movement in your bodies?

A No. Once it is put in the crypt, it remains there until future study.

Q If it was taken out later that night for identification, the body wouldn't be thrown around?

A I would hope not.

Q It is a very careful and conscientious movement of the body to have identification?

A Yes.

Q So it is not consistent there was enough physical activity between the time the body was undressed and put in the crypt until the next morning when the body was autopsied, it is not consistent that there was enough physical activity to break the rigor?

A I don't know how much was broken incidence to the undressing.

Q I gave you the constant that the rigor was determined after undressing.

A Then, I cannot -- I have no reasonable explanation how one can have rigor, a completely rigid body at 5:00 P.M. on day one and put in a 38 degree crypt and to have rigor completely absent 15 hours later. It just -- the facts don't harmonize with biology.

MR. SUMMERS: Thank you, Doctor.

* * * * * * * *

CC-1-C

022

# PRECIPE
# CRIMINAL CASE

No. CR 17902 [illegible] Sweeney Rm.

THE STATE OF OHIO, Plaintiff

vs.

ISIAH ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
|---|---|
| 621-5610 | |
| CO. CORONER | RE: Regina Andrews 9-18-74. |
| DET. HUBBARD #1673<br>DET. ROWELL #1606 | Homicide<br>" |
| DET. HICKS #901 | " |
| DET. ALLEN #83 | Det. Bureau |
| DET. MC KIBBEN | Homicide |
| PTL. SOBOCINSKI #2157 | C.PD. 587-6576 |
| PTL. JAMES PETRICK #2287 | " |
| BARBARA CAMPBELL | Co. Coroner's Office |
| Re: Regina Andrews 9-18-74. | |
| | |
| | |
| | |
| | |

To appear on the 3rd day of March 1975 at 9:00 o'clock A M., to testify on behalf of PLAINTIFF—DEFENDANT.

JOHN T.CORRIGAN Attorney for STATE OF OHIO

## COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 34620

State of Ohio

PLAINTIFF - APPELLEE

-vs-

Isiah Andrews

DEFENDANT - APPELLANT

APPEAL FROM

COMMON PLEAS COURT

No. Cr. 17902

## JOURNAL ENTRY

DATE MAR 1 8 1976

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed. Each assignment of error was reviewed and upon review the following disposition made:

Defendant-appellant, Isiah Andrews, appeals from a judgment entered by the trial court after a jury found him guilty of one count of aggravated murder, Revised Code 2903.01

The defendant was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial House Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw the defendant appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

0000024

| | | |
|---|---|---|
| SUBJECT or CRIME [illegible] | DATE OF THIS REPORT [illegible] | COMPLAINT NO. [illegible] |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| Regina Adams | | | | | | |
| **VICTIM** | **ADDRESS** | **PHONE** | | | | |
| [illegible] | | | | [illegible] | [illegible] | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| [illegible] | [illegible] | [illegible] |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| [illegible] | [illegible] | [illegible] |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 3 OF 6 PAGE REPORT

FOLLOW-UP REPORT ☐

Handwritten across the form: [illegible signature] # 68852; Josiah Coleman [illegible] 11/7/? [illegible]

[illegible]

[illegible] 651, [illegible]

[illegible]

[illegible]

[illegible]

1) [illegible]

2) [illegible]

3) [illegible]

4) [illegible]

5) [illegible]

6) [illegible]

Handwritten: [illegible] 3, 1974 CR 1620 [illegible]

[illegible] [illegible signature]

COF C71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | [illegible] | [illegible] | |

WEATHER ☒ CLEAR ☐ RAIN ☐ CLOUDY ☐ SNOW TEMP [illegible] ° WIND [illegible]

☐ A. I. U. ☐ REQUESTED ☒ ON SCENE
☒ S. I. U. ☐ NOT REQUESTED

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED [illegible]
COMPLETED [illegible]

# COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 34620

State of Ohio

PLAINTIFF - APPELLEE

-vs-

Isiah Andrews

DEFENDANT - APPELLANT

APPEAL FROM

COMMON PLEAS COURT

No. Cr. 17902

## JOURNAL ENTRY

DATE MAR 18 1976

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed. Each assignment of error was reviewed and upon review the following disposition made:

Defendant-appellant, Isiah Andrews, appeals from a judgment entered by the trial court after a jury found him guilty of one count of aggravated murder, Revised Code 2903.01

The defendant was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial House Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw the defendant appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning

of September 18, she saw the defendant and his wife leave their room and get into their car, at which time she overheard the defendant tell his wife,"Bitch, you know I am going to kill you, don't you."

Betty Worth testified that she was working as a maid at the Colonial House Hotel on September 18, 1974 when, at about 11:00 a.m., she saw the defendant talking to his wife in the doorway of their room. Worth stated that she saw the defendant slam the door and go inside the room, whereupon a record player in the room was turned up very loud. Worth stated that approximately ten minutes later the record player was turned off and the defendant came out of his room, went to his car and opened its trunk; that the defendant then returned to his room and within a few minutes left carrying a large heavy object over his shoulder which he placed in the trunk of his car. Worth testified that she walked past the defendant's room and saw that the bed was stripped of all linen.

Regina Andrews body was found in Forest Hills Park in the afternoon of September 18, 1974 wrapped in bedroom linen. The linen was identified by Betty Worth as being the same type used in the Colonial House Hotel.

The jury found the defendant guilty of aggravated murder.

Defendant assigns the following as error:

I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda warnings.

III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

to the defendant before he made the statement.

We reject the defendant's argument. The police are required to give Miranda warnings only after a defendant is taken into custody. As the United States Supreme Court stated "...we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed...." Miranda v. Arizona (1966), 384 U.S. 436, 478. Here the defendant was not in custody and Miranda warnings were not required.

III.

We find the third assignment of error to be without merit.

The Ohio Supreme Court, in State v. Nolton, announced the following rule on when the court must give a jury an instruction on a lesser included offense:

> "..., if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, then a charge on the lesser included offense is both warranted and required, ...." Nolton (1964), 19 Ohio St. 2d 133, 135.

The record before us contains no facts from which the jury could find that the defendant was guilty of the lesser included offense of voluntary manslaughter.[3/] There is no evidence that the defendant was "under extreme emotional stress brought on by serious provocation."

The court properly instructed the jury.

IV.

In the fourth assignment of error the defendant argues that the prosecution presented

---

3/ R.C. §2903.03 reads in part:
"Voluntary manslaughter.
"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

no evidence from which the jury could find that the defendant had killed his wife with "prior calculation and design," an element of the offense of aggravated murder, R.C. 2903.01, and that the court erred in allowing the charge of aggravated murder to go to the jury.

There is evidence in the record from which the jury could find that the defendant had killed purposefully after devising a plan or scheme to kill.[4/]

We find this assignment of error to be without merit.

V.

We find the fifth assignment of error to be without merit.

Under R.C. 2945.37 an examination into the sanity of a defendant is required only after a reputable physician certifies that the defendant is insane, or the grand jury finds the defendant to be insane. The record before us reveals neither a physician's certificate of insanity nor a finding by the grand jury of insanity. The trial court acted properly in not ordering a complete psychological examination.

Affirmed.

---

4/ The evidence on which the jury could depend and rely in finding that the defendant had killed his wife with prior calculation and design include: the threat against the deceased's life made by the defendant on the morning of September 18; the turning up of the record player in the defendant's apartment moments after the deceased was last seen alive; and the disposing of a large object by the defendant shortly after the deceased was last seen alive.

RECEIVED FOR FILING

MAR 18 1976

GERALD E. FUERST
BY Peggy Imgard D.C.

It is ordered that appellee(s) recover of appellant(s) its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

JACKSON, C.J.,

MANOS, J.,

SILBERT, J., CONCUR

(Silbert, J., retired judge of the 8th appellate district, sitting by assignment).

Leo A. Jackson
PRESIDING JUDGE
LEO A. JACKSON

For plaintiff appellee: John T. Corrigan
For defendant appellant: Peter H. Hull

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is a[illegible]n announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicat[illegible]e journalization, at which time it will become the judgment and order of the court and time period for review will begin to r[illegible]n.

000030

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

SUBJECT or CRIME [illegible]

DATE OF THIS REPORT [illegible]

COMPLAINT NO. 91777

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| [illegible] | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | [illegible] | [illegible] |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 3 OF 4 PAGE REPORT.

FOLLOW-UP REPORT ☐

7) [illegible]

8) [illegible]

9) [illegible]

10) [illegible]

[illegible]

1) [illegible]

2) [illegible]

[illegible]

1) [illegible]

2) [illegible]

3) [illegible]

4) [illegible]

5) [illegible]

[illegible]

[illegible]

[illegible]

[illegible]

COFC 71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | [illegible] | [illegible] | |

WEATHER ☒ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP 61 ° WIND 8 [illegible]

☐ A. I. U. ☒ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM:

☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ______

COMPLETED ______

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 167 of 768. PageID #: 1902

000031

# SUPPLEMENTARY REPORT

**CLEVELAND POLICE DEPARTMENT**

COMPLAINT NO. 51777

SUBJECT or CRIME: DEAD BODY/ [illegible] [illegible]

DATE OF THIS REPORT: [illegible] 10, 197[illegible]

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| [illegible] | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | SEPT. 10, 1974 | [illegible] |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 3 OF 8 PAGE REPORT.

FOLLOW-UP REPORT ☐

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

COF C 71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | | | |

WEATHER ☒ CLEAR ☐ RAIN ☐ CLOUDY ☐ SNOW TEMP 61 ° WIND 0 D.

☐ A. I. U. ☒ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☒ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED.

COMPLETED

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000032

SUBJECT or CRIME

DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM | ADDRESS [illegible] | PHONE | | | | |

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 6 OF 6 PAGE REPORT.

FOLLOW-UP REPORT ☐

[illegible]

[illegible]

[illegible]

[illegible]

COF C 71 – 10

INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____
COMPLETED ____

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/23/23 169 of 768. PageID #: 1904

000003

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME: DEAD BODY / SUSPECTED HOMICIDE

DATE OF THIS REPORT: 9-19-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS (nee Mason) | 3301 EUCLID AVE #133 | 391-2900 | 24 | F | B | M |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| 300 yds South of Arlington Ave- 100 yds West of Forest Hills Swim Pool | | C03 |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| Found at 3:00 P.M. | September 18, 1974 | Wednesday |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

This date assigned to car 9240 in company with DET. ALLEN 633, further investigated this crime.

Received a call from SGT SNELL, of Third District Desk and he informed us that a Black female was at the desk now and wanted to see the body that was found this afternoon, for might be possibly her daughter.

Went to the Third Dist. desk and there met with a Black Female who identified herself as one MARY L. MASON B-F-41, of 640 East 107th St. (761-9801) she was accompanied by her son REGINALD MASON B-M-19, same address and a couple of other friends of the family. MRS. MASON informed us that her daughter REGINA B-F-24, was missing from her Hotel Room since this morning. She said that REGINA is married to ISIAH ANDREWS and they have been living at the COLONIAL HOTEL since there marriage August 24, 1974. When asked where her husband was at, MRS. MASON stated back at the hotel.

Accompanied the MASONS to the Coroners Office and there the body was was viewed by REGINALD, and at which time he positively identified the victim as his sister.

<u>UNIDENTIFIED FOUND...NOW POSITIVELY IDENTIFIED:</u>

REGINA ANDREWS (nee Mason) B-F-24-M, dob 7-23-50, resides at 3301 Euclid Ave, Colonial Hotel(391-2900) Room 133. She lives with her husband ISIAH ANDREWS.

Left the Coroners Office and proceeded to 3301 Euclid Ave, and there went to room 133 and met with a Black Male who identified himself as one ISIAH ANDREWS B-M-36-M, dob 4-20-38, No Record SIU, No Wants. We informed him that his mother-in-law had just identified his wife as the victim of a possible homicide. We then questioned ISIAH as to what might have happened to his wife and he stated that he left the motel at 8:00 A.M. this morning and went to JAY VEE'S Clothing Store to pick-up a couple of suits and when he left his wife was in the motel room wearing LIGHT BLUE and WHITE [illegible]. He returned at about 10:30 A.M. and found the TV on and his wife gone. He stated she was going to go downtown and do some shopping, and he never thought about anything, until about 6:00 P.M. this evening when she wasn't home, he came

COFC 71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| DET HICKS 1901    DET ALLEN 633 | 2nd Sec | 9240 | |

WEATHER: [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP 0 WIND    [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER    TIME ASSIGNED    COMPLETED

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 170 of 768. PageID #: 1905

000034

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

SUBJECT or CRIME: SUSPECTED HOMICIDE | DATE OF THIS REPORT: 9-19-74 | COMPLAINT NO. 51777

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |
| **VICTIM** | **ADDRESS** | **PHONE** | | | | |
| REGINA ANDREWS (nee MASON) | 3301 Euclid Ave #233 | 391-2500 | 24 | F | B | M |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | | |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 2 OF 3 PAGE REPORT. FOLLOW-UP REPORT [ ]

called MRS MASON. She further stated he called the Hospitals and called Missing Person, but found nothing. MR ANDREWS informed us that he is self-employed FASHION DESIGNER and also works as a salesman for the N.G. WHITING FIRM COMPANY.

Returned to the Homicide Office while typing this report received a call from the suspect WILLIE WATTS, who stated that he heard we wanted to talk to him about something. We told him we wanted to ask him a few questions about an incident. WILLIE stated he would be home and for us to come out. We proceeded to 12325 Castlewood in company with Car 614 Ptls BLOUNT #1919 and LAND #2091 and Car 615 Ptls Anderson 2476 and [illegible] #625. On our arrival met with MRS. WATTS who was upset, and she stated he had just taken her car and left. He told her he was going to get a friend of his by the name of RONALD, who would tell us that WILLIE was with him today and is not involved in anything. We waited in the home for about 20-minutes but WILLIE never returned. MRS. WATTS informed us that her car is a 1968 DODGE DART LICENSE MJ 945 and is BROWN in color. MRS WATTS also told us her son had hi clothes packed and was getting ready to go back to the Army.......

We left the WATTS residence and toured the area for about 40 minutes checking to see if WILLIE would return, but he did not. It is believed that WILLIE called this Office in front of his Mother to try and impress her he had nothing to do with this crime and then she let him take the car on the pretense that he was going to get his friend and return home. She gave him the car and he left to avoid being arrested.......

...NOTE While at the Colonial Motel we also interviewed the night clerk one ADAM WOLF W-M-44, of 3301 Euclid Ave #235 (391-2500). WOLF informed us he works from 11:00 AM to 11:00 PM. He stated he knew the ANDREWS, but he didn't notice anything unusual today. We showed the photo of WILLIE WATTS, to ascertain if he might have been around this morning, but WOLF stated he didn't recall seeing this male. WOLF then informed us that CHARLES GALLOWAY W-M, relieves him at 11:00 A.M. and maybe he could gives some information as to seeing MRS. ANDREWS leave this morning.......

COF C71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| DET HIGGS #901 DET ALLEN #83 | nites | 9240 | |

WEATHER [ ] CLEAR [ ] RAIN [ ] CLOUDY [ ] SNOW TEMP ____ WIND ____ | [ ] A. I. U. [ ] S. I. U. | [ ] REQUESTED [ ] NOT REQUESTED | [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED ____ COMPLETED ____

000085

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

| SUBJECT or CRIME | DEAD BODY (SUSPECTED HOMICIDE) | DATE OF THIS REPORT | 9-19-74 | COMPLAINT NO. | 51777 |
|---|---|---|---|---|---|

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| [illegible] (nee [illegible]) | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | N | M |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | | |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 3 OF 3 PAGE REPORT. FOLLOW-UP REPORT [illegible]

At 3:05 A.M. received a call from Car 614 [illegible] #1919 and [illegible] 2091 with information that the auto of [illegible] had returned and the suspect was now in the house.

In Company with [illegible] and [illegible] on Car 9239 and the forementioned officers caused the arrest of the below [illegible].

[illegible]: [illegible] B-M-27-M, resides at 12325 [illegible] AVE. DOB 9-17-47, C.B. 141061.

This male was arrested in the home in presence of his [illegible], his uncle [illegible] and his girlfriend [illegible], and at which time the suspect was advised of his [illegible] by this officer.

The suspect was conveyed to Central Prison Unit by Car 9239. [illegible] about this crime this suspect states he didn't do anything and [illegible] to state where he was all day.

C OF C 71 – 10

| INVESTIGATING OFFICERS | | PLATOON | CAR | APPROVED BY |
|---|---|---|---|---|
| [illegible] #901 | DET. [illegible] #83 | [illegible] | 9240 | |

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____

COMPLETED ____

000036

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME: HOMICIDE

DATE OF THIS REPORT: 9-19-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA RUSSELL | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE: FOUND 300 YDS. SO. OF ... LAKE ... AVE. & ... ST. ... | TYPE OF PLACE | ZONE: 603

TIME OF OCCURRENCE: FOUND AT 3:00 PM | DATE OF OCCURRENCE: SEPTEMBER 18, 1974 | DAY OF WEEK: WEDNESDAY

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 1 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

Assigned to car 9237 with DETECTIVE HUBBARD further investigated the above crime.

At the Jail interviewed the arrested WILLIE M. WATTS who told us the following story: On Tuesday, September 17, 1974 at about 10:30 PM he registered at the Howard Johnson Hotel at University Circle, at the time he was in company with LILLY ... MURPHY 22 N F S, DOB 7-16-52, 6315 QUIMBY AVE. 361-4521 and DONALD ..., 12325 CHESTERFIELD AVE. 541-8294. They riding in a 1971 Cadillac 4 door sedan. This auto is suppose to be the property of Donald's brother FRED ... Unable to check this today. Watts went on to say that he and Lilly stayed in the room for a couple of hours then Donald returned with the following people: ..., 12925 Chestorfield Ave., ... 20 ... and JEAN ... 15 N F S DOB 4-5-59, both of 6316 Quimby Ave. All stayed until about 3:30 AM, September 18, 1974, then the latter four left. Watts and Lilly stayed until about 8:00 AM then Lilly called her mother; MARY MURRAY (MURPHY) 40 B F ... DOB 8-17-34 also of 6316 Quimby Ave. This is the mother of Jean also. Mrs. Murphy then drove to the Hotel and picked up her daughter and Watts, this was at approximately 10:30 AM. We later talked with the females listed above and all coobarated the story of Watts. We are attempting to set up a Polygraph examination for Willie M. Watts for the morning of September 20, 1974. We now feel that this male is not involved.

At 3301 Euclid Ave. the Colonial Hotel we interviewed the following: BETTY MURPHY 35 N F M DOB 7-4-39 who lives in apartment #267. She told us that she has known the victim since she moved into the building in August, 1974. That she has never known the victim to go anywhere on a bus or by herself. Further that she has never known the victim to have any friends in her apartment. She also stated that the victim and her husband have been making preparations to move to a new place somewhere out on Euclid Ave. Mrs. Murphy also told us that she saw the victim talking with the husband at about 11:00 AM Wednesday, after this the husband left and did not return until about

RUSSELL HUBBARD CONTINUED ON PAGE TWO

COF C 71-10

INVESTIGATING OFFICERS | PLATOON: DAYS | CAR: 9237 | APPROVED BY

WEATHER [ ] CLEAR [ ] RAIN [ ] CLOUDY [ ] SNOW TEMP ____ ° WIND ____ [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER TIME ASSIGNED. COMPLETED

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000037

COMPLAINT NO. 51777

SUBJECT or CRIME

DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM R. GINA ANDREWS | ADDRESS | PHONE | | | | |

ADDRESS OF OCCURRENCE — TYPE OF PLACE — ZONE

TIME OF OCCURRENCE — DATE OF OCCURRENCE — DAY OF WEEK

SECURED BY — ADDRESS — PHONE — TIME — DAY — DATE

DISCOVERED BY — ADDRESS — PHONE — TIME — DAY — DATE

PAGE 2 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

4:00 PM. We also interviewed, MARY SMITH 64 B F W D 9-20-10, 3376 E. 128 ST. 283-7406 who stated she also saw the husband talking to the victim and that later she and Mrs. Worthy heard the TV in the victims room playing very loud. Also, CHARLES G[illegible] 36 W M S, 3595 E. 65 ST. 883-5407, Desk Clerk at the motel who stated that the victims husband came into the office and got a key to his room at about 12:00 Noon, later he came back and gave the clerk two keys. Also HILDA CLOUD 20 B F M DOB 8-26-54 aptl #131, this apt. is next door to the victims apartment. Mrs. Cloud stated that she did not hear any noise in the victims apartment on Wednesday, she was home at about 12;00 Noon. She further said that she saw the victim get into Mr. Andrews auto at about 2:30 AM, Wednesday Morning.

We questioned ISAIAH ANDREWS 36 B M MID. DOB 4-20-38, 3301 Euclid Ave. Apt # 133. He stated that he left home at 7:40 AM, Wednesday, went to 1375 W. 6th St. Jay Vee's Clothing Store and picked up some clothing. He stayed at this store for about two hours he then went to E. 40 and Woodland Ave. Fishers Food Warehouse and attempted to sell fish to them, he talked with Mr. Sinatra, Meat Buyer. From there he went to the Muslim Temple #18 on Holton Ave. at E. 92 st. arriving at about 11:30 AM and staying until approximately 12:00 Noon. at About 12:30 PM he went home, he was unable to get in, so he left immediately and went back to Jay Vee's Clothing. He stayed until about 1:30 PM and went to E. 105 and St. Clair, McDonald's Rest. At about 2:00 PM he went back to Temple #18. At about 3:00 PM he went to the Farmers Market, then went home at 4:00 PM. His wife was still not there so he called her mother (Unable to contact her at this time) and told her that she was missing. He then went to the Police Department at Central Station and inquired about his wife, with negative results. He returned home and stayed until contacted by detectives.

We checked at Fisher Foods and talked with H[illegible] [illegible] 43 [illegible] 3330 Bradford Ave. Clev. Hgts. 932-7061 and learned from him that Mr. Andrews had been in to see him at about 11:30 AM, Wednesday and stayed for about 10 Minutes. We interviewed [illegible] 60 [illegible] B

ROWELL HUBBARD CONT ON PAGE THREE

COF C71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | DAYS | 9237 | [signature] |

WEATHER [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP ____ ° WIND ____ [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED

COMPLETED

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CASE NO. CR 17902

STATE OF OHIO )
Plaintiff-Respondent )
vs. )
ISAIAH ANDREWS )
Defendant-Petitioner )

MOTION FOR SUMMARY JUGDMENT

Now comes John T. Corrigan, Prosecuting Attorney of Cuyahoga County, and respectfully moves this Court, pursuant to Civil Rule 56, for an order dismissing the complaint for post-conviction relief and for entry of summary judgment in favor of the State of Ohio.

This Motion for Summary Judgment is made on the ground that there is no genuine issue as to any material fact and that the moving party, the State, is entitled to judgment as a matter of law as shown by the pleadings, the attached brief, and the attached affidavits, and for other reasons more fully stated in the attached brief.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent
The Justice Center
1200 Ontario
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Motion for Summary Judgment has been mailed this 22nd day of June, 1978, to Mr. Isaiah Andrews, Defendant-Petitioner, #141-345, Southern Ohio Correctional Facility, P.O. Box 45699, Lucasville, Ohio, 45699.

[signature]
Assistant Prosecuting Attorney

BRIEF

On January 12, 1975, the Cuyahoga County Grand Jury, in the State of Ohio, indicted the defendant-petitioner for one count of aggravated murder, Ohio Revised Code, Section 2901.01. The petitioner plead not guilty at his arraignment on January 24, 1975. A jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975. On March 12, 1975 the jury found the petitioner guilty as charged and the court sentenced him to life imprisonment. From that verdict and judgment the petitioner appealed to the Eighth District Court of Appeals. On March 18, 1976 that Court affirmed the judgment of the trial court. The Ohio Supreme Court, on September 24, 1976, denied petitioner's Motion for Leave to Appeal. A petition for post-conviction relief is presently pending before this Honorable Court.

Matters which have been or should have been raised on direct appeal may be considered in post-conviction proceedings. State v. Perry, 10 Ohio St. 2d 175 (1967); State v. Duling, 21 Ohio St. 2d 13 (1970); State v. Wallace, Cuyahoga County, C.A. #35522, March 10, 1977. Allegations in the instant petition which are related to Rule 11 of the Ohio Rules of Criminal Procedure and to matters of record may not be considered in this post-conviction hearing.

The record clearly indicates that counsel zealously, earnestly, and intelligently represented the petitioner at all stages of the proceedings. Petitioner had effective counsel and substantial justice was done. State v. Lytle, 48 Ohio St. 2d 391 (1976).

In the instant case no substantive grounds for relief exist under the post-conviction statute and there has been no denial or infringement of constitutional or statutory rights rendering the judgment void or voidable under either the Ohio Constitution or the United States Constitution. See State v. Perry, supra; State v. Duling, supra; State v. Milanovich, 42 Ohio St. 2d 46 (1975); State v. Brown, 41 Ohio App. 2d 181 (1974).

CONCLUSION

Based on the facts of this case, the applicable law, the record of proceedings, and the attached affidavits, it is clear that the petitioner was afforded effective assistance of counsel. The State, therefore, respectfully requests that this Honorable Court dismiss this petition for post-conviction relief without a hearing. State v. Milanovich, supra at 50; State v. Mishelek, 42 Ohio St. 2d 140 (1975); State v. Hester, supra; State v. Myers, Cuyahoga County, C.A. #36370, July 7, 1977.

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes William L. Summers, the affiant herein, first being duly sworn deposes and states the following:

1) That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2) That the defendant was indicted on January 21, 1975, on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3) That affiant fully and properly investigated all charges against the defendant prior to trial;

4) That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5) That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the State;

6) That affiant fully informed the defendant of all facts and evidence related to the charge;

7) That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8) That affiant at no time attempted to coerce the defendant to plead guilty;

9) That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975.

10) That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

William L. Summers
WILLIAM L. SUMMERS

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to me and subscribed in my presence this 21 day of June, 1978.

NOTARY PUBLIC

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes JOHN HYLAND, the affiant herein, first being duly sworn deposes and states the following:

1. That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2. That the defendant was indicted on January 21, 1975 on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3. That affiant fully and properly investigated all charges against the defendant prior to trial;

4. That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5. That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the state;

6. That affiant fully informed the defendant of all facts and evidence related to the charge;

7. That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8. That affiant at no time attempted to coerce the defendant to plead guilty;

9. That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975;

10. That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

[signature]
JOHN HYLAND

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to before me and subscribed in my presence this 22nd day of June, 1978.

[signature]
NOTARY PUBLIC

JOSEPH J. NAEGELE, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 R. C.

COURT OF COMMON PLEAS, CUYAHOGA COUNTY, OHIO

State of Ohio, )

Plaintiff-Respondant, )

) Case No. CR-17902

-VS- )

) MEMORANDUM CONTRA TO STATE'S MOTION FOR SUMMARY JUDGEMENT

Isaiah Andrews, )

Defendant-Petitioner. )

Comes Isaiah Andrews, defendant-petitioner herein and for his "Memorandum Contra to State's Motion for Summary Judgement" states, that his case is sufficiently stated in his Petition for Post-conviction Relief and therefore relies on said Petition to withstand motion for summary judgement, and in support thereof, defendant-petitioner has attached hereto the affidavits of J. C. Willaims, and, Theadore Hamza.

WHEREFORE, defendant-petitioner prays that the relief requested in his Petition for Post-Conviction Relief be granted. Justice requires no less.

Dated: July 8, 1978

Respectfully submitted,

/s/ Isaiah Andrews
Isaiah Andrews, Defendant-Petitioner
P.O. Box 45699
Lucasville, Ohio 45699

Certificate of Service

A copy of the foregoing has been served on George J. Sadd, Assistant Prosecuting Attorney, The Justice Center, 1200 Ontario, Cleveland, Ohio 44113 via regular U.S. mail on the 7 day of 8 1978

STATE OF OHIO )
CUYAHOGA COUNTY) SS: AFFIDAVIT OF J.C. WILLIAMS

I, J.C. Williams. a Investigator of J.C. Williams, Investigaying Agency Inc., which is now locaed at 316 Marion Bldg. 1276 West 3rd, Cleveland, Ohio 44113. I was appointed by the Court to investigate on behalf of Isaiah Andrews, Case No. CR17902 between Sept. 20,1974 and December 16.1974.

That I did make an investigation and a written report of the investigation which I turned over to Mr. Andrews' Attorney, A Mr. Robert A. Ruggeri The above mentioned investigatigation took place between Sept. 20,1974 and and December 16,1974. During this investigation I interviewed Mr. Andrews on serval occassions, on one such interveiw I informed Mr. Anderws that the police had found a bloody palm print on a newspaper near his wife's body, I also informed Mr. Andrews that the Coroners report showed hiswife had had sexual relations prior to death. I informed Mr. Andrews that upon me investigating his claime of having been at Fisher's Warehouse between 10:45 and 11:30 on Sept. 18,1974. ''I discovered the page of Fisher's Log Book dated September 18, 1974 had been torned out''During my investigation I received a Statement from Miss Betty Worthy which I also placed in my written report. I informed Mr. Andrews that It was my opion that the Clerks of Collonial House Motel was responcible for the death of Mrs. Regina Andrews, and that Clerk Eddy Wolffe in particular in my opion was directly responsible for Mrs. Regina Andrews' Murder. All the above mentioned took place between the dates of Sept. 18,1974 and December 16,1974.

After Mr. Andrews was reindicted, I was again appointed by Court to investigate the case of State of Ohio v. Isaiah Andrews, Case No. CR 17902. My second appointment of investigator took place between Jan. 1,1975 and Feb.29,1975. I again investigated and made a written report , this I turned over over to Mr. Andrews' attorney, a Mr. William Summers. I turned over a list of witnesses to Mr. Summers and the information of the palm print and Coroners' report.

______________________________

J.C. WILLIAMS, Investigator-Affiant

After reading the above affidavit, I affix my signature.

Sworn to and Subcribed in my presence a Notary Public this____day of______197 .

Sea l:

______________________________

Notary's Signature

STATE OF OHIO )
CUYAHOGA COUNTY ) SS:

AFFIDAVIT OF THEADORE HAMZA

I, THEADORE HAMZA, was Minister of Muhammad Masque of Islam No.18, 2813 E. 92 Street between the dates of September 18, 1974 and December 16,1974. I had the chance to be interviewed by investigator J.C. Williams on behalf of Isaiah Andrews, at which time I personnly paid Mr. Williams the sum of one Thousand(1,000) Dollars to investigate Mr. Andrews case. After Mr. Williams investigation he made a report which he turned a copy over to me.

After reading the above, I affix my signature as it being ttue to the best of my knowledge.

______________________________
THEADORE HAMZA

Sworn to before me a Netary Public this ___day Of ____197 .
and Subcribed in my presence.

Sea l:

______________________________
Nota ry Public's Signature

xam ndrews
141-345
P.O. Box 45699
Lucasville, Ohio
45699







Mr. George J. Sadd
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario, Cleveland, Ohio
44113

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 34620

STATE OF OHIO )

Plaintiff-Appellee )

vs. )

ISAIAH ANDREWS )

Defendant-Appellant )

MOTION FOR EXTENSION OF TIME TO FILE BRIEF OF APPELLEE

Now comes John T. Corrigan, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests a thirty day extension of time to file the brief of Appellee in the above entitled case for the reason that due to the great volume of trial work we have been unable to prepare within the time alloted under the rules.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY
RONALD B. ADRINE
Assistant Prosecuting Attorney

Attorneys for Plaintiff-Appellee
Criminal Courts Building
1560 East 21st Street
Cleveland, Ohio 44114

SERVICE

A copy of the foregoing Motion for Extension of Time to File Brief of Appellee has been mailed this 29 day of July, 1975, to Robert L. Miller, White, Milano, Jurek & Miller, 1310 Standard Building, Cleveland, Ohio, 44113, and Peter Hull, Engineers Building, Cleveland, Ohio, 44113, Attorneys for Defendant-Appellant.

Assistant Prosecuting Attorney

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 34620

STATE OF OHIO )

Plaintiff-Appellee )

vs. )

ISAIAH ANDREWS )

Defendant-Appellant )

MOTION FOR EXTENSION OF TIME TO FILE BRIEF OF APPELLEE

Now comes John T. Corrigan, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests a thirty day extension of time to file the Brief of Appellee in the above entitled case for the reason that due to the great volume of trial work we have been unable to prepare within the time alloted under the rules.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: Ronald B. Adrine
RONALD B. ADRINE
Assistant Prosecuting Attorney

Attorneys for Plaintiff-Appellee
Criminal Courts Building
1560 East 21st Street
Cleveland, Ohio 44114

SERVICE

A copy of the foregoing Motion for Extension of Time to File Brief of Appellee has been mailed this 2d day of July, 1975, to Robert L. Miller, White, Milano, Jurek & Miller, 1310 Standard Building, Cleveland, Ohio, 44113, and Peter Hull, Engineers Building, Cleveland, Ohio, 44113, Attorneys for Defendant-Appellant.

Ronald B. Adrine
Assistant Prosecuting Attorney

## TABLE OF CONTENTS


History of the Case .................................... 1

Statement of Facts ...................................... 2

Law and Argument: 2-5

As to Assignment of Error No. 1 ........................ 2-3
As to Assignment of Error No. 2 ........................ 3-4
As to Assignment of Error No. 3 ........................ 4-5

Conclusion .............................................. 5


## TABLE OF AUTHORITIES


Cases:

State v. Perry, 10 Ohio St. 2d 175 (syllabus 3) ............ 3

Rules:

Rule 56, Ohio Rules of Civil Procedure ..................... 2,3

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 39712

STATE OF OHIO )

Plaintiff-Appellee )

vs. ) BRIEF OF APPELLEE

ISAIAH ANDREWS )

Defendant-Appellant )

## HISTORY OF THE CASE

On January 11, 1975, Isaiah Andrews, hereinafter appellant, was indicted by the Grand Jury of the State of Ohio, Cuyahoga County, for aggravated murder, pursuant to Ohio Revised Code, Section 2903.01 in Case No. CR 17902. Appellant was arraigned on January 24, 1975, and a plea of not guilty was entered. On March 3, 1975, appellant was referred to the Psychiatric Clinic, pursuant to Ohio Revised Code, Section 2935.37. On March 5, 1975, appellant was found sane to stand trial. On March 12, 1975, the jury returned a verdict of guilty to the charge in the indictment, and appellant was sentenced to life imprisonment.

The Court of Appeals affirmed the judgment of the trial court on March 18, 1976 (See, Journal Entry, No. 34620). On June 13, 1978, the appellant filed a petition for post-conviction relief, in Case No. CR 17902. The State answered appellant's motion by filing a Motion for Summary Judgment, pursuant to Civil Rule 56. The State's Motion for Summary Judgment was granted. From the denial of post-conviction relief, the appellant now appeals.

## STATEMENT OF FACTS

The appellant was arrested on September 19, 1974, and charged with the stabbing death of his wife, Regina Andrews. At trial, Linda Cloud testified that she lived in the Colonial House Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974, at 9:00 p.m., she saw Regina Andrews and an unidentified man enter the Andrews' room and that some time later, she saw the appellant appear and enter the room. Cloud further testified that she overheard the defendant tell his wife, "Bitch, you know I am going to kill you, don't you".

Betty Worth testified that she was working in the Colonial House Hotel as a maid on September 18, 1974 when she saw the defendant talking to his wife in the doorway of their room. Appellant then entered, whereupon the volume of the record player was turned up. Ten minutes later the record player was turned down and appellant came out of his room, carrying a large, heavy object over his shoulder, which he placed in the trunk of his car. Worth testified that there was no linen on the bed in appellant's room. Regina Andrews was found in Forest Hills Park on September 18, 1974, wrapped in bedroom linen. Betty Worth identified the linen as being of the same type as that used in the Colonial House Hotel.

The jury found the appellant guilty of aggravated murder.

## LAW AND ARGUMENT

> Assignment of Error No. 1: The Court below committed reversible error in its failure to make a finding of fact and conclusion of law in denying appellant's petition to vacate judgment.

In response to appellant's petition to vacate, the State of Ohio moved, under Civil Rule 56, for summary judgment. The State's motion contained two affidavits from appellant's counsel, wherein they negate the allegations of appellant. When the Honorable Francis Sweeney considered the matter, he had before him all pertinent information including the Motion for Summary Judgment

and the attached affidavits. Although the Judge is required, pursuant to Ohio Revised Code, Section 2953.21, to issue findings of fact and conclusions of law, the Judge failed to do this in the present case. Since he granted the State's Motion for Summary Judgment, findings of fact and conclusions of law are not required to be recorded in a Rule 56 motion. Appellant urges that the Judge's failure to issue the appropriate findings of fact and conclusions of law is grounds for reversible error. We point out that if this Court of Appeals is satisfied that there was error present in the Judge's failure to issue findings of fact and conclusions of law pursuant to Ohio Revised Code, Section 2953.21, the appropriate remedy is for the Court of Appeals to remand the cause to the trial court so that the necessary findings are made.

Alternately, the State urges and contends that if the trial court failed to issue findings of fact and conclusions of law as prescribed in 2953.21, then appellant is barred from raising this issue on appeal, since there was no valid final judgment upon which to base an appeal.

> Assignment of Error No. 2: The Court below committed reversible error in the granting of summary judgment where there was material issues of facts and law in dispute.

Appellant contends that there were material issues in dispute which should have precluded the trial court from granting summary judgment. Specifically, his petition alleges that his counsel failed to call certain witnesses, file pre-trial motions and failed to make known to the Court a bloody palm print found at the scene of the crime.

In State v. Perry, 10 Ohio St. 2d 175, the court held that:

> "Where a petition for post-conviction relief . . . does allege facts which if proved, would entitle the prisoner to relief, but the files and records of the case negate the existence of facts sufficient to entitle the prisoner to relief, the trial court may so find and summarily dismiss the petition. . ." (syllabus 3)

In the case at bar, the files and records before the Court did, in fact, negate the defendant's allegations. The affidavits of appellant's counsel negate each and every allegation of appellant, and, therefore, the Court was correct in granting summary judgment for the State.

Also, specifically with respect to the bloody palm print allegedly in the possession of the prosecutor, Perry, supra, holds that:

> "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by defendant at trial which resulted in that judgment of conviction, or an appeal from that judgment." (emphasis added)

The issue of the bloody palm print could have been raised by appellant at trial or on direct appeal and, therefore, as between the State of Ohio and this appellant, the issue is res judicata and cannot be raised in post-conviction proceedings.

> Assignment of Error No. 3: The Court below committed reversible error in its failure to conduct an evidentiary hearing where appellant had alleged facts, outside the record, which, if proven, would have constituted the relief he sought.

This assignment of error is substantially the same as the preceding one and Perry, supra is, therefore, dispositive of the issue. To reiterate the holding:

> "Where a petition for post-conviction relief filed by counsel for a prisoner does allege facts which, if proven would entitle the prisoner to relief, but the files and records of the case negate the existence of facts sufficient to entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition. . ."

In the instant case, there was no evidentiary hearing required because the facts that were alleged by counsel for appellant were negated by the State's affidavits. This fact allowed the trial court to use its discretion and dismiss the petition. The Court was well within its province, therefore, in granting summary judgment for the State, and dismissing the petition for

post-conviction relief.

Incorporated in this assignment of error and assignment of error #2 is the appellant's fourth contention that the Court erred in dismissing the petition for post-conviction relief on the strength of affidavits. The issue is not whether the documents were affidavits, but whether documents negated the appellant's assertions so as to give the Court the power to summarily dismiss the petition. The affidavits were part of the record and did negate all of appellant's assertions. Therefore, under the authority of Perry, supra, this contention has no merit.

CONCLUSION

The State of Ohio respectfully submits that:

(1) No findings of fact and conclusions of law are required when a trial court grants the State's motion for summary judgment; and

(2) No hearing was required since the record reveals that no constitutional violation occurred and the trial court, based on the record and affidavits before him, properly denied the request for an evidentiary hearing.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Brief of Appellee has been mailed this 21st day of August, 1978, to Isaiah Andrews, Defendant-Appellant, #141-345, Southern Ohio Correctional Facility, Post Office Box 45699, Lucasville, Ohio, 45699.

[signature]
Assistant Prosecuting Attorney

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT
COUNTY OF CUYAHOGA

GERALD E. FUERST, CLERK OF COURTS

State of Ohio

APPELLee

-vs-

Isaiah Andrews

APPELLant

COURT OF APPEALS NO. 39712

LOWER COURT NO. C.P. 17902 Cr.

MOTION NO. 41159

DATE AUG 25 1978

## JOURNAL ENTRY

Motion by appellant for leave to proceed on appeal in forma pauperis, for complete transcript of proceedings and for appointment of counsel to be taxed as costs granted. A. Albert Perelman, attorney-at-law, 1243 Engineers Bldg., Cleveland, Ohio 44114, is appointed counsel. Record to be filed by October 4, 1978. Exc.

RECEIVED FOR FILING

AUG 25 1978

GERALD E. FUERST
By A. Theil Dep.

PATTON, P.J.,

CORRIGAN, C. J.,

PARRINO, J., CONCUR

John T. Patton

PRESIDING JUDGE

JOHN T. PATTON

CC 89-1 C of A

Judge Francis Sweeney.

The following cases which were heard by you were ruled upon by The Court of Appeals on 2-28-80, 19__.

Case numbers are Court of Appeals numbers. Any reasons given by the Appellate Court will appear on the attached sheet.

| CASE NO. | NAME AND RULING |
|---|---|
| C.A.#39712<br>C.P.#CR-17902 | State of Ohio v. Isaiah Andrews - Affirmed in part, modified in part, and reversed in part and remanded. Exc. See Journal Entry and Opinion.<br><br>Have Pros. submit find of fact + conclusion of law per Ct. of Appeals — |

# COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 39712

State of Ohio

PLAINTIFF - APPELLEE

-vs-

Isaiah Andrews

DEFENDANT - APPELLANT

DATE FEB 28 1980

APPEAL FROM

COMMON PLEAS COURT

No. 17902 Cr.

JOURNAL ENTRY AND OPINION

DAY, J.:

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed/ in part, modified in part, and reversed in part. Each assignment of error was reviewed and upon review the following disposition made:

This is an appeal from the granting of the State's motion for summary judgment.

Appellant, Isaiah Andrews, in January, 1975, was charged with aggravated murder (R.C. §2901.01). A jury trial was held in March, 1975. Appellant was represented by two court appointed attorneys. The jury found appellant guilty. His conviction was affirmed on appeal.[1/]

---

1/ State v. Andrews, unreported (Case No. 34620, 8th Appellate District, 1976).

On June 13, 1978, appellant, pro se, filed a petition for post-conviction relief and a motion for an evidentiary hearing. The prosecutor subsequently filed a motion for summary judgment attaching affidavits from both trial counsel. On July 17, 1978, without a hearing, the lower court granted the motion for summary judgment and dismissed appellant's petition. The court did not file findings of fact and conclusions of law.

Appellant filed a pro se notice of appeal and raised four assignments of error. Two additional assignments of error were raised by counsel appointed for the appeal of the granting of summary judgment. These assignments of error are labeled and set out in the margin.2/

---

2/ Appellant's assignments of error:

Assignment of Error No. I:

"The Court Below Committed Reversible Error In Its Failure To Make A Finding Of Fact and Conclusion Of Law In Denying Appellant's Petition To Vacate Judgment."

Assignment of Error No. II:

"The Court Below Committed Reversible Error In The Granting of Summary Judgment Where There Was[sic] Material Issues Of Facts and Law in Dispute."

Assignment of Error No. III:

"The Court Below Committed Reversible Error In Its Failure To Conduct An Evidentiary Hearing Where Appellant Had Alleged Facts, Outside The Record, Which, If Proven, Would Have Constituted The Relief He Sought."

Assignment of Error No. IV:

"The Court Below Committed Reversible Error In Denying Appellants[sic] Petition To Vacate On The Submittace[sic] Of Affidavits."

Appellant's supplemental assignments of error:

Assignment of Error No. I:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO MAKE FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE STATE OF OHIO."

Assignment of Error No. II:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, WHEN ON THE FACE OF APPELLANT'S COMPLAINT, THERE APPEARED ALLEGATIONS THAT THERE WAS A DENIAL AND/OR INFRINGEMENT OF HIS RIGHTS SO AS TO RENDER THE JUDGMENT VOID OR VOIDABLE BOTH UNDER THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA AND THE STATE OF OHIO."

I.

Appellant's petition contained five allegations pertaining to trial counsel's ineffectiveness as grounds for relief. In sum, these allegations were (1) counsel's failure to subpoena witnesses favorable to appellant; (2) failure to investigate relevant evidence of appellant's innocence; (3) failure to file "proper motions for discovery of exculpatory evidence which was in possession of the State"; (4) failure to subpoena documents, reports, and records pertinent to appellant's innocence; and (5) "counsel's continuous pleading with defendant to enter a plea of guilty".

R.C. §2953.21(C) provides:

> "(C) Before granting a hearing the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including but not limited to the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript. Such court reporter's transcript if ordered and certified by the court shall be taxed as court costs. If the court dismisses the petition it shall make and file findings of fact and conclusions of law with respect to such dismissal." (Emphasis added.)

To justify a hearing on petition for post-conviction relief, the petition must allege facts which, if proven, would entitle the prisoner to the remedy, State v. Perry (1967), 10 Ohio St. 2d 175, 178; State v. Vaughn (1966), 7 Ohio App. 2d 154, 155. But even when the petition alleges substantive grounds for relief and relies upon evidence outside the record the petitioner is not necessarily entitled to an evidentiary hearing, State v. Milanovich (1975), 42 Ohio St. 2d 46, 50. For either party may introduce evidential matters from outside the record in support of a motion for summary judgment, Milanovich, id.; State v.

Mishelek (1975), 42 Ohio St. 2d 140, 141 (n. 1); R.C. §2953.21(D). Where a motion for summary judgment has been made and the court can conclude "on the face of the record" that no genuine issue of material fact exists and from such evidence it is apparent that "reasonable minds can come to but one conclusion", such conclusion being adverse to the party moved against, then the motion should be granted, Milanovich, supra at 51; R.C. §2953.21(D).[3/]

The instant claims for post-conviction relief did not quicken a need for a hearing to consider evidence.

The State's summary judgment motion included the affidavits of both trial counsel for the defendant. These stated in part:

> "3. That affiant fully and properly investigated all charges against the defendant prior to trial;
>
> "4. That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;
>
> "5. That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the state;
>
> "6. That affiant fully informed the defendant of all facts and evidence related to the charge;
>
> "7. That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;
>
> "8. That affiant at no time attempted to coerce the defendant to plead guilty;. . . ."

Appellant's reponse, in opposition to summary judgment, included an unsigned affidavit of J. C. Williams, a court appointed investigator, which stated he had given appellant's trial counsel a list and written report of witnesses and a report of the existence of a bloody palm print (exculpatory evidence).

However, the exclusion of that affidavit from consideration was mandated. For an unsworn affidavit (in the present case it was not

---

3/ See Civil Rule 56(C).

even signed) has no evidential value, see Citizens Ins. Co. v. Burkes (1978), 56 Ohio App. 2d 88, 95-96. The remaining "affidavit" was evidentially insubstantial being only an affidavit by a minister that he had hired the investigator. This document was also unsworn and unsigned.

Assignments of Error Nos. II, III, IV, and II (Supp.) are not well taken.

II.

The lower court did not file findings of fact and conclusions of law. In considering R.C. §2953.21(C), the Ohio Supreme Court has consistently held that where the court dismisses a petition for post-conviction relief it must make findings of fact and conclusions of law with respect to such dismissals, State v. Lester (1975), 41 Ohio St. 2d 51, 55; State v. Hester (1976), 45 Ohio St. 2d 71, 73-74.

Upon examining the applicable civil rules, it is apparent that Civ. Rule 52 exempts motions granted pursuant to Rule 56 from the necessity of findings of fact and conclusions of law. However, the exemption does not apply to a motion directed against a petition for post-conviction remedy pursuant to Revised Code §2953.21. For the post-conviction remedy statute independently of Civ. Rule 52 requires findings of fact and conclusions of law whether or not a hearing is held on the petition.

Assignments of Error I and I (Supp.) relating to the issue of the failure to make findings of fact and conclusions of law are well taken.

Accordingly, and for this reason only, the judgment is reversed and the case remanded for the single purpose of issuing findings of fact and conclusions of law.

Affirmed in part, modified in part, and remanded for further proceedings in accordance with this opinion.

It is ordered that appellee(s) recover of appellant(s) its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

STILLMAN, P.J.,

PRYATEL, J., CONCUR

JUDGE
JACK G. DAY

For plaintiff-appellee: John T. Corrigan
For defendant-appellant: A. Albert Perelman of McCafferty, Perelman & Holtz; Isaiah Andrews, #141-345, Southern Ohio Correctional Facility, P. O. Box 45699, Lucasville, Ohio 45699

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | NUMBER: 39712 |
| PLAINTIFF-APPELLEE | : | |
| vs. | : | SUPPLEMENTAL BRIEF OF APPELLANT |
| ISAIAH ANDREWS | : | |
| DEFENDANT-APPELLANT | : | |

. . .

OCT 12 '78 AM

McCAFFERTY, PERELMAN & HOLTZ
Attorneys for Defendant-Appellant
Of Counsel: A. Albert Perelman
Suite 1248 - Engineers Building
Cleveland, Ohio 44114
771-0270

ISAIAH ANDREWS
DEFENDANT-APPELLANT
#141-345
Southern Ohio Correctional Facility
Post Office Box 45699
Lucasville, Ohio 45699

JOHN T. CORRIGAN, Prosecuting Attorney for Cuyahoga County, Ohio

GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario
Cleveland, Ohio 44113

TABLE OF CONTENTS

PAGES

List of Cases....................................ii

Assignments of Error.................................1

Law and Argument:

As to First Assignment of Error.....................2 and 3
As to Second Assignment of Error....................3, 4 and 5

Service.........................................6

## LIST OF CASES

PAGES

Application of Landeros, 154 Fed. Supp. 183..............4

Brady vs. Maryland, 373 U.S. 83..........................4

Jackson vs. Wainwright, 390 F. 2nd, 288..................4

McMullen vs. Maxwell, (July 21, 1965) 3 Ohio St. 2nd, 160.............................................4

State vs. Brown, 41 O. App. 2nd, 181.....................3

State vs. Milanovich, 42 Ohio St. 2nd, 46 (April 2, 1975)...................................................3

State vs. Perry, 10 Ohio St. 2nd, 175 (May 3, 1967)......2, 5

United States ex rel. Almeida vs. Baldi, 195 F. 2nd, 815, 33 ALR 2nd, 1407..................................4

## TABLE OF AUTHORITIES

O.R.C. 2953.21 (C)....................................2,3

ASSIGNMENTS OF ERROR

**FIRST ASSIGNMENT OF ERROR:** THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO MAKE FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE STATE OF OHIO.

**SECOND ASSIGNMENT OF ERROR:** THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, WHEN ON THE FACE OF APPELLANT'S COMPLAINT, THERE APPEARED ALLEGATIONS THAT THERE WAS A DENIAL AND/OR INFRINGEMENT OF HIS RIGHTS SO AS TO RENDER THE JUDGMENT VOID OR VOIDABLE BOTH UNDER THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA AND THE STATE OF OHIO.

## LAW AND ARGUMENT

Appointed counsel for appellant will attempt, by supplementing appellant's brief, pro se, to both amplify and highlight the factual issues as provided by both statute and case law.

> First Assignment of Error. The Trial Court committed prejudicial error in failing to make findings of facts and conclusions of law in granting the Motion for Summary Judgment of the State of Ohio.

In one of the earliest cases involving both the interpretation and construction of Section 2953.21 (C) et seq. of the Ohio Revised Code, as it relates to the case at bar, the Supreme Court of Ohio in the case of State vs. Perry, 10 Ohio St. 2nd, 175 (May 3, 1967), laid down the following rule of law which is hereinafter set forth in the third syllabus thereof:

> "Where a petition for postconviction relief filed by counsel for a prisoner does allege facts which, if proved, would entitle the prisoner to relief, but the files and records of the case negative the existence of facts sufficient to entitle the prisoner to relief, the trial court may so find and summarily dismiss the petition; but, in such an instance, the finding of the court should specify the portions of the files and records which negative the existence of alleged facts that would otherwise entitle the prisoner to relief."

Examination of R.C. 2953.21 (C) reveals the following: "If the court dismisses the petition it shall make and file findings of facts

and conclusions of law." (Underlining by writer hereof.) See also cases of State vs. Milanovich, 42 Ohio St. 2nd, 46 (April 2, 1975) and State vs. Brown, 41 O. App. 2nd, 181.

The premise of appellant is that the trial court in the first instance committed prejudicial error in failing to make findings of fact and conclusions of law, warranting a remand to the trial court for a hearing on the petition and/or the inclusion of findings of facts and conclusions of law.

> Second Assignment of Error. The Trial Court committed prejudicial error in sustaining appellee's Motion for Summary Judgment, when on the face of appellant's complaint, there appeared allegations that there was a denial and/or infringement of his rights so as to render the judgment void or voidable both under the Constitutions of the United States of America and the State of Ohio.

The premise of this assignment of error is that the prosecutor failed to disclose evidence, specifically a bloody palm print, which was found either at the place where the body was discovered or within the room where the alleged act was committed. Further, that although defendant's counsel had moved under Rule 16 for a disclosure of such evidence, said bloody palm print was not disclosed.

The premise of the appellant, who has not had occasion to observe this palm print, is that under the circumstances of this most serious charge and under which he was both indicted and convicted and deprived of his liberty, that it was most material and could have afforded a link in establishing that another was responsible for the homicide.

In a somewhat recent case, the court, in the matter of Jackson vs. Wainwright, 390 F. 2nd, 288, had occasion to point out that a weakness in the adversary system of administering justice is the possibility of unfairness, sometimes arising from the prosecution's superior resources and special access to information and witnesses. The failure to so disclose has been held to be violative of due process. See Brady vs. Maryland, 373 U.S. 83; United States ex rel. Almeida vs. Baldi, 195 F. 2nd, 815, 33 ALR 2nd, 1407.

With regard to the duty to disclose, the Supreme Court of Ohio, in the matter of McMullen vs. Maxwell, (July 21, 1965), 3 Ohio St. 2nd, 160, adopted the rule in Application of Landeros, 154 Fed. Supp. 183, that non-disclosure in order to amount to a denial of due process, the evidence must be vital and material to the issue of guilt or penalty.

Defendant's premise is that evidence found at the scene of the crime should have been made available to his counsel and its probative value and materiality was for both court and jury.

Since the McMullen decision of 1965, Ohio, effective July 1, 1973, has both promulgated and legislated Rules of Criminal Procedure. Both the purpose and construction of the rules are intended to provide for the just determination of every criminal proceeding and construed and applied to secure the fair, impartial and sure administration of justice.

Under the discovery and inspection section thereof, Rule 16, the provisions thereof provide for great latitude and aid in the preparation of a defense. And with the exception of Sections 2, 3 and 4, documents,

examinations, witnesses and evidence favorable or unfavorable to the defendant, are discoverable.

The State of Ohio argues that the Perry case bars a person who has been convicted from raising any matter that was raised or could have been raised at the trial or on appeal from said conviction. For the defendant to have been able to raise such question relative to the palm print, which was in the possession of the state, defendant would had to have knowledge of the existence of such material item. Morever, to effectively waive a right, one at least, minimally, must have knowledge of that which he is waiving.

Defendant's premise is that the prosecutor, in failing to make the bloody palm print available to his counsel, deprived him of a significant tool in his defense, and violated his rights under the 14th Amendment to the Constitution of the United States of America and circumvented both the intention and purpose of Rule 16 of the Ohio Rules of Criminal Procedure, all of which warrants a reversal and a hearing thereon in the trial court.

Respectfully submitted,

[signature]

McCAFFERTY, PERELMAN & HOLTZ
COUNSEL FOR DEFENDANT-APPELLANT
OF COUNSEL: A. ALBERT PERELMAN
Suite 1248 - Engineers Building
Cleveland, Ohio 44114
771-0270

SERVICE

Copies of the foregoing Supplemental Brief of Appellant have been mailed this 10th day of ______, 1978, to John T. Corrigan, Prosecuting Attorney of Cuyahoga County, Ohio, George J. Sadd, Assistant Prosecuting Attorney, Counsel for Plaintiff-Appellee, The Justice Center, 1200 Ontario, Cleveland, Ohio, 44113 and ISAIAH ANDREWS, Defendant-Appellant, #141-345, Southern Ohio Correctional Facility, Post Office Box 45699, Lucasville, Ohio, 45699.

McCAFFERTY, PERELMAN & HOLTZ
Attorneys for Defendant-Appellant
Of Counsel: A. Albert Perelman

SEP 29 '78

IN THE COURT OF APPEALS
EIGHTH APPELLATE DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NUMBER: 39712 |
| PLAINTIFF-APPELLEE | : | |
| vs. | : | <u>MOTION TO TRANSFER RECORD FROM 34620</u> |
| ISAIAH ANDREWS | : | |
| DEFENDANT-APPELLANT | : | |

.......

JOHN T. CORRIGAN,
Prosecuting Attorney of
Cuyahoga County, Ohio

GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

McCAFFERTY, PERELMAN & HOLTZ
Attorneys for Defendant-Appellant
OF COUNSEL: A. ALBERT PERELMAN
Suite 1248 - Engineers Building
Cleveland, Ohio 44114
771-0270

SERVICE

A copy of the foregoing Motion has been mailed this 26 day of [handwritten], 1978, to George J. Sadd, Assistant Prosecuting Attorney, Attorney for Plaintiff-Appellee, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113, by regular post.

[signature]
McCAFFERTY, PERELMAN & HOLTZ
COUNSEL FOR DEFENDANT-APPELLANT
OF COUNSEL: A. ALBERT PERELMAN

*McCafferty, Perelman & Holtz*

*Attorneys and Counselors at Law*
*Suite 1248 - Engineers Building*
*Cleveland, Ohio 44114*

*216 771-0270*

*Owen J. McCafferty*
*A. Albert Perelman*
*Theodore S. Holtz*

*Associate Counsel*
*Alfia Miano Bourne*
*Tina G. Bazney*

September 26, 1978

Mr. George J. Sadd
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

Re: State of Ohio vs.
Isaiah Andrews
Case No. 39712

Dear Mr. Sadd:

Enclosed, herewith, please find copy of Motion to Transfer Record from 34620 which I have filed in the Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio this date, and which I am forwarding to you for your file purposes.

Very truly yours,

McCAFFERTY, PERELMAN & HOLTZ

BY: [signature]
A. ALBERT PERELMAN

AAP:mkb

Enc. 1

OCT 2? 78

**COURT OF APPEALS OF OHIO, EIGHTH DISTRICT**
**COUNTY OF CUYAHOGA**

**GERALD E. FUERST, CLERK OF COURTS**

State of Ohio

APPELLee

COURT OF APPEALS NO. 39712

-VS-

Isaiah Andrews

LOWER COURT NO. C.P. 17902 Cr.

APPELLant

MOTION NO. 41447

DATE OCT 19 1978

## JOURNAL ENTRY

Motion by appellant to transfer the record from Case No. 34620 to 39712 is granted. (Case No. 34620, State v. Isaiah Andrews was affirmed by this court on March 18, 1976 and the panel was Jackson, C. J., Manos, J., and Silbert, J.)

RECEIVED FOR FILING

OCT 19 1978

GERALD E. FUERST

JACKSON, P. J.,

PARRINO, J.,

KRENZLER, J., CONCUR

PRESIDING JUDGE

LEO A. JACKSON

CC 89-1 C of A

IN THE COURT OF APPEALS
FOR CUYAHOGA COUNTY
EIGHTH JUDICIAL DISTRICT OF OHIO
CASE NO. 34620

STATE OF OHIO )
)
Appellee )
)
vs. )
)
ISAIAH ANDREWS )
)
Appellant )

BRIEF OF APPELLANT

FILED
COURT OF APPEALS
JUN 19 1975
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

JOHN T. CORRIGAN
Cuyahoga County Prosecutor
1560 East 21st Street
Cleveland, Ohio 44114

Attorney for Appellee

ROBERT L. MILLER
White, Milano, Jurek and Miller
1310 Standard Building
Cleveland, Ohio 44113

PETER HULL
Engineers Building
Cleveland, Ohio 44113

Attorneys for Appellant

TABLE OF CONTENTS


| | PAGE |
|---|---|
| TABLE OF AUTHORITIES | i |
| STATEMENT OF FACTS | 1 |
| ASSIGNMENTS OF ERROR | 2 |
| ARGUMENT AND LAW | 3 |
| I. ASSIGNMENT OF ERROR NO. 1 | 3 |
| II. ASSIGNMENT OF ERROR NO. 2 | 6 |
| III. ASSIGNMENT OF ERROR NO. 3 | 8 |
| IV. ASSIGNMENT OF ERROR NO. 4 | 11 |
| V. ASSIGNMENT OF ERROR NO. 5 | 12 |
| CONCLUSION | 14 |
| PROOF OF SERVICE | 14 |

## TABLE OF AUTHORITIES


CASES — PAGE

United States v. Consolidated Laundries Corporation, 291 F. 2d 563 (1961)............ 4

United States v. Zborowski, 271 F 2d 661 (1959)........................ 4

United States v. Padrone, 406 F. 2d 560 (1969)........................ 5

United States v. Kelly, 420 F. 2d 26 (1969)............................ 5

Miranda v. Arizona, 384 U. S. 436 (1966)............................... 6

State v. Anderson, 428 P. 2d 672 (1967)................................ 7

People v. Glover, 276 N. Y. S. 2d 461 (1966)........................... 7

People v. Paulin, 308 N. Y. S. 2d 883 (1969)........................... 7

Tudor v. State, 113 O. S. 377, 149 NE 326............................. 8

State v. Fox, 31 O. S. 2d 64........................................... 9

State v. Nolton, 19 O. S. 2d 133....................................... 9

## STATEMENT OF FACTS

On September 18, 1974, Jessie Byons found the body of Regina Andrews at Forest Hills Park in the City of Cleveland (T-398). The Deputy Coroner determined her death was caused by multiple stab wounds of the neck (Def. Exhibit B). Regina Andrews was last seen alive on September 18, at 11:00 a. m., in the company of her husband, Isaiah Andrews, the Defendant-appellant, at their marital dwelling, the Colonial Motel. Their apartment in the Motel consisted of one room with only one entrance. A witness testified she had seen a dude in a white suit who was not the defendant enter the marital dwelling of the Andrews at about 9:30 p. m. on September 17, the evening before the killing. The dude in the white suit and Regina were alone in the apartment together until 1:30 a. m. on the 18th of September when Isaiah Andrews returned (T-203). The couple then left their apartment and were next seen at about 11:00 a. m. by another witness who testified the couple was standing in the doorway to their apartment, when suddenly and without warning, Isaiah Andrews became furious again and slammed the door to the apartment. The prosecution contended that it was at this point the murder took place. The defendant was seen at about 11:10 loading something in his trunk which the prosecution contended was the body of Regina Andrews (T-237).

Isaiah Andrews was found guilty of Aggravated Murder by a jury and it is that verdict and the judgment thereon from which this Appeal is taken.

## ASSIGNMENTS OF ERROR

I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda Warnings.

III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

IV. The trial court erred by not removing aggravated murder from the consideration of the jury both at the end of the State's evidence and again at the end of all the evidence.

V. The trial court erred by not ordering a complete psychological examination of the defendant where the evidence tended to show the defendant had previously been diagnosed insane.

## ARGUMENT AND LAW

I. THE TRIAL COURT ERRED BY NOT ORDERING DISCLOSURE OF INFORMATION REQUESTED BY THE DEFENSE IN ITS DEMAND FOR DISCOVERY, AND BY NOT DISMISSING FOR A FAILURE TO RESPOND TO THE DISCOVERY REQUEST AND THE MOTION FOR A BILL OF PARTICULARS.

On behalf of the defendant, counsel in the within matter filed a motion for a bill of particulars, and a request for discovery pursuant to Rule 16 of the Ohio Rules of Criminal Procedure. This is evident from the following segments of the transcript:

> MR. SUMMERS: If it please the Court, your Honor, at this time I would ask that the prosecution be ordered to disclose to us information which was requested, timely, better than a month ago, that being the names and addresses of all witnesses.
>
> . . .
>
> I have not as yet been served with a copy of the Bill of Particulars and would move to dismiss at this time for lack of compliance.
>
> Transcript, p. 9, 16.

The Court refused to order disclosure of information, and further refused to dismiss the charges against defendant. Appellant contends that this constitutes reversible error.

Rule 16 (E) (3) supports the allegation as advanced by appellant:

> (3) FAILURE TO COMPLY. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. (emphasis supplied).

The purpose of the Discovery Rule is to prevent surprises, enable defense counsel to prepare an appropriate and valid defense, and assist counsel in evaluating the possibilities of entering a plea of guilty. Here, the failure to disclose necessary information served to totally negate the principles underlying the Rule, and operated to deprive appellant of the fair trial to which he is guaranteed under the Constitution.

The case styled United States v. Consolidated Laundries Corporation, 291 F. 2d 563 (1961), touched upon the Government's failure to produce certain documents for examination by the defense. The Court, determining this to be reversible error, stated:

> This failure to produce deprived the defendants of evidence which would have been helpful to them on points which the findings show were of great importance in determining their guilt.
>
> 291 F. 2d at 570.

This situation is analogous to the case at hand. The failure to disclose information which would have been helpful to the defendant operated as a distinct denial of due process of law.

This principle is further amplified upon by the following quote from United States v. Zborowski, 271 F. 2d 661 (1959):

> The prosecutor must be vigilant to see to it that full disclosure is made at trial of whatever may be in his possession which bears in any material degree on the charge for which a defendant is tried. In the long run it is more important that the government disclose the truth so that justice may be done than that some advantage might accrue to the prosecution toward ensuring a conviction.
>
> 271 F. 2d at 668.

The purpose of our legal system is to seek justice and protect the rights of the state, as well as the defendant. The zeal of prosecutorial authorities in gaining a conviction should not permit them to run rampant over the rights of a defendant.

Finally, both United States v. Padrone, 406 F. 2d 560 (1969), and United States v. Kelly, 420 F. 2d 26 (1969), reached similar results. The Court in each instance ruled that a failure to comply with requests and orders for discovery was detrimental to the defense of serious criminal charges. In view of the prejudicial error committed, these judgments were reversed. A similar decision is requested by appellant herein.

II. TESTIMONY OF A POLICE OFFICER REGARDING A STATEMENT OF THE DEFENDANT SHOULD NOT HAVE BEEN PERMITTED DUE TO A LACK OF APPROPRIATE MIRANDA WARNINGS.

Leo Allen, a detective in the homicide unit of the Cleveland Police Department, was called as a witness on behalf of the State. He testified that in the early hours of September 19, 1974, he went to the morgue with members of the deceased's family to identify the body. He then proceeded to the defendant's apartment. At this point in the testimony (Tr., 412), defense counsel objected to Detective Allen testifying about his conversation with defendant, on the grounds that defendant had not been given the Miranda warnings. The Court overruled the objection (Tr., 417), and refused to allow a voir dire examination of the detective.

Miranda v. Arizona, 384, U.S. 436 (1966), established that a suspect must be advised of his right to remain silent, the fact that a statement may be used against him, and that he is entitled to an attorney. These warnings must be given when "custodial interrogation" begins. This term is defined as questioning initiated after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Appellant contends that the questioning by Detective Allen occurred after a deprivation of freedom of action, and that the trial court erred by not permitting the requested voir dire examination.

Detective Allen had just come from the morgue and was in the company of relatives of the deceased. These relatives suspected the defendant of wrongful conduct and conveyed their beliefs to the detective. Thus, his appearance at the defendant's apartment was designed not merely to seek general information, but to ascertain the details of defendant's involvement in the crime.

This certainly can be construed as custodial interrogation.

In State v. Anderson, 428 P. 2d 672, (1967), the defendant, a suspect in a murder case, was interrogated in her home by law enforcement officials. The Court ruled that the statement was inadmissible by reason of the lack of Miranda warnings.

The case styled People v. Glover, 276 N. Y. S. 2d 461 (1966), lends further insight into the definition of custodial interrogation. The Court here stated:

> Moreover, whatever else Miranda may have intended "custody" to mean, this much is apparent - police questioning of a person wherever detained, upon whom suspicion has already focused, appears ruled to be "custodial interrogation".
>
> 276 N. Y. S. 2d at 466.

In the instant case, suspicion had already focused on the defendant. How else can the detective explain his presence at the apartment and the questions which were propounded. In further support is the case of People v. Paulin, 308 N. Y. S. 2d 883 (1969).

The defendant herein was being interrogated by a police officer in his own residence. Whether he was free to leave or whether he was under the custody of the officer, and thereby deprived of his freedom, is certainly a question that should have been dealt with by the trial court. The failure to conduct a voir dire examination and subsequent testimony by the Detective operated as reversible error.

III. THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY ON THE LAW OF VOLUNTARY MANSLAUGHTER.

The trial court instructed the jury on Aggravated Murder and Murder, but refused the defendant's requested instruction on Manslaughter. The failure to so instruct prevented Isaiah Andrews from having a fair trial.

In the case of Tudor v. State, 113 O. S. 377, 149 NE 326, the Court held that upon the trial of an indictment for murder, the court should charge the jury as to manslaughter where the evidence in the case would sustain a conviction of manslaughter. Applying the Tudor standard to the present case it is clear the trial court should have charged the jury on the law of manslaughter. There was evidence that Isaiah Andrews was under extreme emotional stress at the time of the killing brought on by finding his wife with another man.

The only possible motive for the defendant to kill his wife which could reasonably be drawn from the evidence was that he was furious over finding his wife with the dude in the while suit. The prosecution suggested no other possible motive. Manslaughter is defined as:

> "No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

The evidence presented in the case certainly could have sustained a conviction of manslaughter and under the Tudor formula the trial court should have given the jury the instruction on Manslaughter.

More recently the Ohio Supreme Court has held; "..., if the trier could reasonably find against the state and for the accused upon one or more of the

elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction of the lesser included offense, then a charge on the lesser included offense is both warranted and required, not only for the benefit of the State, but for the benefit of the accused." State v. Fox, 31 O.S. 2d, 64 and State v. Nolton, 19 O.S. 2d, 135. When the rule of the Fox case is applied to the facts in this case it is clear the trial court should have instructed the jury on manslaughter. The trier could reasonably have found the defendant did not have the requisite culpable mental state for Murder or Aggravated Murder, but did have the requisite mental state for Manslaughter.

The culpable mental state for murder and aggravated murder is "purposely". It is defined by 2901.22 (A) O.R.C. as:

> "A person acts purposely when it is his specific intention to cause a certain result, ..."

The culpable mental state for manslaughter is defined by 2901.22 (B) O.R.C. as:

> "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

The jury in the present case could reasonably have found the act of stabbing was done knowingly in a fit of temper and at the same time could have reasonable doubt as to whether or not the defendant had a specific intention to kill his wife.

It should also be pointed out that manslaughter includes instances where there is an intentional killing upon a sudden quarrel as was the circumstances in the present case. It is apparent from the record the evidence could have sustained

a verdict of manslaughter and that the trier of fact could reasonably have rejected Aggravated Murder and Murder.

IV. THE TRIAL COURT ERRED BY NOT REMOVING AGGRAVATED MURDER FROM THE CONSIDERATION OF THE JURY BOTH AT THE END OF THE STATE'S EVIDENCE AND AGAIN AT THE END OF ALL THE EVIDENCE.

The State presented no evidence of prior calculation and design. Two of the essential elements of Aggravated Murder are prior calculation and design. ( O. R. C. 2903. 01). There was evidence presented that the defendant had threatened his wife earlier that day. This evidence didn't amount to prior calculation and design and it was prejudicial error for the court to allow the jury to consider Aggravated Murder. The evidence supported the theory that the killing was the result of a moment of extreme emotional passion and not the result of rational calculation and design.

Rule 29 (A) of the Ohio Rules of Criminal Procedure requires a judgment of acquittal if the evidence is not sufficient to sustain a conviction. The evidence presented in the instant case was clearly insufficient to sustain a conviction of Aggravated Murder. Allowing the jury to consider Aggravated Murder amounts to prejudicial error preventing the defendant from a fair trial.

V. THE TRIAL COURT ERRED BY NOT ORDERING A COMPLETE PSYCHOLOGICAL EXAMINATION OF THE DEFENDANT WHERE THE EVIDENCE TENDED TO SHOW THE DEFENDANT HAD PREVIOUSLY BEEN DIAGNOSED INSANE.

The record reflects through the testimony of Dr. Gill and the motion exhibit that the defendant had been diagnosed as psychotic by competant United States Government psychiatrists. In the motion exhibit of the defendant's record with the United States Marines, there is a suggestion the defendant had been unable to recollect a crime he had been charged with. The record further reflects that counsel for the defense brought to the Court's attention the fact the defendant's brother felt the defendant was insane. Based on this information, the trial court should have ordered an extensive evaluation to determine the psychological status of the defendant at the time the crime was committed and at the time of trial.

Even though an examination was conducted at the time of the trial by Dr. Gill, it was at best a cursory examination consisting of an interview with the defendant for a period of less than an hour. No other tests of any kind were administered. Dr. Gill gave his opinion based solely on this interview. It is the contention of the defendant's counsel at this time that the amount of information available to Dr. Gill was insufficient upon which to base an opinion of the sanity of Isaiah Andrews. It is also defendant's contention that a full examination should have been ordered to determine the sanity of Isaiah Andrews at the time of trial. The examination should have been a complete one so that the opinion could have been based on more factual data than one short interview. Ohio Revised Code Section 2945.37 provides for such an examination. Since the defendant denied the

crime, it is possible he had a memory lapse similar to the one he had regarding the crime he committed when he was a marine. Without complete psychological evaluation there can be no reliable opinion as to the sanity of Isaiah Andrews both at the time of the killing and at the time of trial.

## CONCLUSION

Appellant has herein presented five assignments of error in support of the within appeal. The first concerns a lack of compliance on the part of the prosecutor regarding a demand for discovery and motion for Bill of Particulars. The second deals with certain testimony elicited from a police officer which was inadmissible due to a failure to give appropriate Miranda warnings.

The third and fourth errors revolve around the degree of proof presented at the trial to support the verdict and charge. The final error concerns the sanity of appellant and the examination by the court to determine his ability to stand trial. In view of the foregoing, appellant respectfully requests a reversal of his conviction.

Respectfully submitted,

ROBERT L. MILLER
White, Milano, Jurek and Miller
1310 Standard Building
Cleveland, Ohio 44113

PETER HULL
Engineers Building
Cleveland, Ohio 44113

## PROOF OF SERVICE

A copy of the foregoing Brief has been mailed this ____ day of June, 1975, to John T. Corrigan, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

## TABLE OF CONTENTS

Statement of Facts .......................................... 1-4

Law and Argument: 4-11

As to Assignment of Error No. 1 ........................ 4-6
As to Assignment of Error No. 2 ........................ 6-8
As to Assignment of Error No. 3 ........................ 8-9
As to Assignment of Error No. 4 ........................ 9-10
As to Assignment of Error No. 5 ........................ 10-11

Conclusion .................................................. 11

Appendix -- Ohio Revised Code, Section 2945.37

## TABLE OF AUTHORITIES

Cases:

Bandy v. State, 131 N.E. 499 (1921) at 504 ................. 9

Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966) .... 7,8

People v. Glover, 276 N.Y.S. 2d 461 ........................ 8

State v. Allen, 73 O.L.Abs. 398, 133 N.E. 2d 167 (1956) .... 8,9

State v. Brown, 102 O. App. 113 (1956) ..................... 10

State v. Gossett, 26 Ohio Misc. 163 (1970) ................. 9

State v. Jamison, 9 O. App. 2d 227, 223 N.E. 2d 904 (1967) .. 10

State v. Kuchmak, 159 Ohio St. 363, 112 N.E. 2d 371 (1953) .. 9

State v. Rogers, 64 O. App. 39, 27 N.E. 2d 791 (1938) ...... 9

Rules:

Ohio Rule of Criminal Procedure 16 ........................ 5,6

Statutes:

Ohio Revised Code, Section 2945.37 ........................ 10

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 34620

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Appellee | ) | |
| vs. | ) | BRIEF OF APPELLEE |
| ISAIAH ANDREWS | ) | |
| Defendant-Appellant | ) | |

STATEMENT OF FACTS

Linda Cloud was the next door neighbor of Regina Mason Andrews and her husband of less than one month, the defendant, Isaiah Andrews. They all resided at the Colonial House Motel located at 3301 Euclid Avenue in the City of Cleveland, Cuyahoga County, Ohio. Ms. Cloud occupied suite #131 and the Andrews lived in suite #133.

On September 17, 1974, after a short outing with her boyfriend, Ms. Cloud returned to her room at the Colonial House at approximately 8:50 P.M., where she and her infant son spent the rest of the night. She testified that she stayed up until 4:00 a.m. watching t.v. on the morning of July 18, 1974, and because of the warmth of the night, she left the door to her apartment open. Shortly after her return, she saw an unidentified male in a white suit enter the Andrews' apartment. At an unspecified time later, the defendant was seen to enter suite #133 and, after a short interval, the man in the white suit was seen leaving the apartment. At 1:00 a.m. or 1:30 a.m. Ms. Cloud observed the defendant and his wife leave their apartment and watched them as they started to drive away. She saw the defendant, who was driving, stop the car, get out, walk around to the passenger side of the vehicle where his wife sat, and open the door. At this point, she testified, she heard the defendant say,

Hills Park, located some 5 miles from the Colonial House Motel. The body was discovered by Jesse Byous at 3:00 P.M. on September 18, 1974, when he investigated what he thought to be a bundle of rags laying in the park. This was approximately 3 1/2 hours after she was last seen alive and in the company of her husband, the defendant-appellant. Mr. Byous caused the police to be called. The police arrived and examined the bundle that the body was found encased in and the immediate area for evidence. The body was found to be wrapped in a bedspread, two sheets, a house coat, a shorty nightgown, a pillow, a mattress cover, and a towel. Bloody newspaper was found in the near vicinity. The body was conveyed to the Coroner's Office where it was revealed that Regina Andrews died as a result of seven wounds inflicted by a sharp object to the neck region of her body. There were also abrasions on her lips which the Coroner's Office stated were caused by a blow from a blunt object, like a fist. The clothing found on the body, which had been pushed up around the neck of the deceased, was discovered to have defects which showed that some of Mrs. Andrews' wounds were inflicted through the bunched up cloth.

An identification was not immediately made on the body of Regina Andrews. It was not until late on the night of September 18, 1974, that Regina's mother, other members of her family and a family friend became alarmed at Regina's uncharacteristic absence and her husband's seeming lack of concern. They proceeded to inquire at the Cleveland Police Department and were eventually conveyed to the Cuyahoga County Morgue, where Reginald Mason identified the body of his sister, Regina. The bedspread that was found with the body was shown to Betty Worthy who identified it as being of the type used at the Colonial House Motel and identical to the missing extra bedspread which she had given to Mrs. Andrews.

After Regina Andrews' body had been identified, Det. Leo Allen of the

"Bitch you know I'm going to kill you, don't you?" He then proceeded to return to the driver's seat and leave the premises. Ms. Cloud further testified that after she retired at 4:00 a.m., on September 18, 1974, she did not get up again until 11:00 a.m. that morning when she was awaken by Betty Worthy, a part-time maid at the motel.

Betty Worthy testified that after she woke Linda Cloud up on September 18, 1974, at approximately 11:00 a.m., she crossed the motel's courtyard and began carrying on a conversation with one of the other maids. During this conversation she happened to observe the defendant and his wife standing in the doorway of their apartment talking to one another. After about 10 minutes she saw the defendant re-enter the apartment and slam the door. At this point she testified that either a record player or a television set in the apartment was turned up to peak volume, where it remained for about 10 minutes. When the volume went down the defendant-appellant was seen to leave the apartment, go to his car and open the trunk. He then returned to the apartment and when he next emerged he was carrying a large, apparently heavy bundle, wrapped in plastic, slung across his shoulder. When this bundle was dropped in the trunk of his auto, the car was seen to bounce under its weight. Ms. Worthy testified that she saw the defendant-appellant return to the doorway of his apartment and stand there as if speaking to someone inside, but at this time she neither saw nor heard his wife. She did, however, get a look inside the apartment before the defendant-appellant closed the door. She noted that the bed was completely devoid of linen. She further testified that when she later entered the apartment in the company of police officers, certain items of linen which she knew to be assigned to room #133, in particular a bedspread and a pillow, were missing.

Regina M. Andrews' body was found in a bush-covered area of Forest

Cleveland Police Department Homicide Unit went to the Colonial House Motel to notify the defendant-appellant of her death. He was surprised at the lack of emotion displayed by the defendant-appellant at the news. He inquired as to Mr. Andrews' whereabouts on September 18, 1974. Andrews told him that he left his apartment before 8:00 a.m. that morning but returned at 10:30 a.m. to find his wife gone and the television going. Det. Allen then concluded his conversation with Mr. Andrews and left the motel.

The next day, September 19, 1974, Det. William Hubbard of the Homicide Unit of the Cleveland Police Department conducted a follow-up investigation of this crime. He interviewed Mr. Andrews twice on that date. The first time Andrews told him that he had left his apartment before 8:00 a.m. but had forgotten his key and was unable to get back into his apartment until 4:00 P.M. Det. Hubbard and his partner then interviewed the other witnesses, after which they returned to question Andrews again. Upon receiving the same answers, Det. Hubbard advised the defendant-appellant of his constitutional rights and placed him under arrest.

This cause came to be heard in the Cuyahoga County Court of Common Pleas on March 3, 1975, before the Honorable Judge Francis E. Sweeney. The trial lasted until March 12, 1975, at which time the jury found the defendant guilty of aggravated murder. From that verdict and the judgment of the trial court the defendant ~~has~~ appealed. [illegible]

LAW AND ARGUMENT

> Assignment of Error No. 1: The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

The record in this regard clearly indicates that the prosecution complied both with the defense's motion for a bill of particulars and its

request for discovery. In proceedings held in the Court's chambers immediately prior to the commencement of this matter, the following exchange was had between Mr. Laurie, representing the State of Ohio, and Mr. Summers, representing the defendant:

> "MR. LAURIE: Here is a copy of the Bill of Particulars filed February 27th at 2:00 P.M., along with the discovery forms and I am handing both of them to you now.
>
> MR. SUMMERS: I have just received this now, a copy of the motion for the Bill of Particulars and a copy of the response to the motion for the Bill of Particulars..." (R. 17)

The record also reflects that further discussion concerning these matters were had out of the hearing of the jury, following the presentation of opening statements of counsel. At that time Mr. Summers made the following comments:

> "MR. SUMMERS: ...it is my understanding that the response for demand for discovery was served on me and I received it at the noon break, Monday afternoon and also for the record at that time I received copies of the Bill of Particulars that had been requested and received copies of the response to my demand for discovery which had been filed, which Mr. Laurie had said on record he had done and I did receive them on Monday afternoon." (R. 82)

The Monday referred to by Mr. Summers is March 3, 1975.

The only conclusion that can be drawn from the record in this regard is that the prosecution gave the defense everything it was entitled to receive under Criminal Rule 16. The only items that were withheld from the defense were the names and addresses of the civilian witnesses which the prosecution intended to present at trial. This was done in accordance with Criminal Rule 16(B)(1)(e), which reads, in pertinent part:

> "...Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies to the court that to do so may subject the witness or others to physical or substantial economic harm or coercion."

The prosecuting attorney did, in fact, make such a certification to the court (see record pages 6-9).

In ruling on the prosecution's motion that it not be required to disclose the names and addresses of its civilian witnesses, the court relied on Criminal Rule 16(E) (R. 13), which provides for the following:

> "Protective orders
>
> Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate. Upon motion by a party the court may permit a party to make such a showing, or part of such showing, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such a showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal."

In the instant case, the prosecuting attorney did move to make part of his showing, which part was in written form, to the judge alone (see page 8 of the transcript). This writing, which was a threatening letter received by one of the civilian witnesses, was sealed, marked Motion Exhibit A, and appears as part of the record at page 680 of the transcript. Thus, all procedures prescribed by the rules were followed, both by the prosecution and the trial court, in this instance, and the trial court did not err in overruling the defense motion for disclosure and dismissal at this juncture in the proceedings.

> <u>Assignment of Error No. 2</u>: Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda warnings.

Det. Leo Allen of the Cleveland Police Department Homicide Unit, testified at trial for the prosecution concerning, inter alia, oral statements made to him by the defendant-appellant at the time that he informed defendant-appellant that his wife's body had just been identified

at the Cuyahoga County Morgue. The officer testified that, at the time the defendant-appellant made the complained of oral statements, there was no evidence, to his knowledge, to link the defendant-appellant to the crime. There is no evidence in the transcript that the defendant-appellant was placed under arrest at this time or that he was in any way restrained of his liberty. In the landmark case of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), the U.S. Supreme Court stated:

> "...the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444

The keys words in the foregoing quote are "custodial interrogation", which the court goes on to define as follows:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444

Applying this definition to the facts at bar, it is readily apparent that Det. Allen had not taken the defendant into custody at the time that the defendant made the oral statements. Thus, it was not necessary that the defendant be apprised of the warnings required by Miranda.

The interview conducted by Det. Allen was entirely investigative in nature and was carried out before any legitimate suspicion had focused on the defendant. The Miranda decision takes specific note of such investigative procedures:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime... Such investigations may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding." 384 U.S. at 477

> "...Any statement given freely and voluntarily without

> "Sec. 2945.74, R.C., does not require, in the face of no evidence that instruction be given as to all included offenses." 133 N.E. 2d at 170

The defense implied that the defendant had come home on the evening prior to his wife's death and found her in a compromising position with another man. It further implied that this event may have caused the defendant to fly into a rage and kill her some 9 to 10 hours later. There was, however, no evidence presented to the trier of the facts in support of the implications raised by the defense. In the absence thereof, it would have been error for the trial court to instruct the jury on the law of voluntary manslaughter. See Bandy v. State, 131 N.E. 499 (1921) at 504; State v. Kuchmak, 159 Ohio St. 363, 112 N.E. 2d 371 (1953); State v. Rogers, 64 O. App. 39, 27 N.E. 2d 791 (1938).

> Assignment of Error No. 4: The trial court erred by not removing aggravated murder from the consideration of the jury both at the end of the State's evidence and again at the end of all the evidence.

The prosecution in the case at bar presented evidence that the defendant-appellant threatened his wife's life not more than 13 1/2 hours before she was found dead. Evidence was submitted that he was the last person to be seen with her alive. It was shown that her body, along with a substantial amount of bedding from their apartment, was found 3 1/2 hours after they were last seen together. It was ddisplayed that the defendant-appellant, in two inconsistent statements to the police, denied in detail being at his apartment at the crucial time that eyewitness testimony had him carrying a bundle therefrom. The defendant-appellant was described by witnesses as unconcerned at his wife's disappearance and unmoved by her death. This circumstantial evidence combined to exclude every reasonable hypothesis except that of the defendant-appellant's guilt. State v. Gossett, 26 Ohio Misc. 163 (1970).

There was evidence presented by the State as to every essential

> any compelling influences is, of course, admissible in evidence." 384 U.S. at 478

By way of further explanation of the term "custody", the case of People v. Glover, 276 N.Y.S. 2d 461, presents this test:

> "...in the absence of avowed intention (more often than not), a finding of 'custody' depends on the subjective intention of the police officers. This in turn depends at times on how much knowledge the police possess (not always reflected on the record) and, at others, on whether the course of police interrogation appears to be routine investigation or questioning aimed at eliciting a confession or admission." 276 N.Y.S. 2d at 465

A complete reading of this record concerning the interview of the defendant conducted by Det. Allen (R. 411-412,417-420) produces no evidence that the officer attempted, at any time, to elicit either a confession or an admission. In view of the totality of the circumstances surrounding the oral statements made to Det. Allen, it is obvious that they were admissible in evidence and the trial court properly so ruled.

> Assignment of Error No. 3: The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

The trial court in the instant case, after hearing all of the testimony and seeing all of the exhibits, found that there was "no evidence to meet any one of the elements of voluntary manslaughter..." (R. 647). Under those circumstances, it was unnecessary for the trial court to include in its instructions to the jury a charge on voluntary manslaughter.

The law in Ohio on this matter is well stated in the case of State v. Allen, 73 O.L.Abs. 398, 133 N.E. 2d 167 (1956). In that case the court made the following pronouncements:

> "Where there is, as here, no evidence of manslaughter in the trial of an indictment for murder in the first degree, it is not incumbent upon the judge to give to the jury an instruction on such subject." 133 N.E. 2d at 170

element of the crime of aggravated murder. It would, therefore, have constituted error for the trial court to have removed aggravated murder from the jury's consideration. State v. Brown, 102 O. App. 113 (1956).

> Assignment of Error No. 5: The trial court erred by not ordering a complete psychological examination of the defendant where the evidence tended to show the defendant had previously been diagnosed insane.

Ohio Revised Code, Section 2945.37, provides the procedure to be followed when raising the issue of the insanity of the defendant before the trial court. The portions pertinent here read:

> "If the attorney for a person accused of crime whose cause is pending in the court of common pleas, before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court,...the court shall proceed to examine into the question of the sanity of said person." (emphasis added)

It should be noted that the Legislature, in drafting this section, chose to phrase it in the conjunctive. Therefore, not only must the defendant's attorney suggest to the court that the defendant is insane at some point during the pendency of his cause before the court of common pleas, but there must also be presented to the court a certificate from a reputable physician attesting to the defendant's infirm state of mind. When both of these requirements have been met, it becomes mandatory that the trial court conduct an investigation into the present state of the defendant's mental health. State v. Jamison, 9 O. App. 2d 227, 223 N.E. 2d 904 (1967).

In the present case, while the defendant's attorney did suggest to the court that the defendant might possibly be suffering from a mental disease, no certificate from a reputable physician to the effect that he was not then sane was ever presented to the court. It follows, then, that the defense should not now be heard to complain about the lack of a complete psychological examination. This is all the more true when it is discerned

that the trial court did order an investigation into the defendant's mental health (R. 29). At the request of the defense, the defendant was referred to the Cuyahoga County Psychiatric Clinic in order that a determination could be made as to his sanity (R. 25). It is unconscionable that the defense should be allowed to complain because the results of the tests which it requested did not suit its purpose.

## CONCLUSION

The appellant has failed to present to this Court any grounds upon which to base a reversal of the verdict and/or judgment of the trial court. It has been shown that the prosecution presented the appellant with everything he was entitled by law to receive by way of demand for discovery and Bill of Particulars. Statements which appellant made to a police officer prior to his arrest have proven to have been voluntarily given and not the results of custodial interrogation. The appellant's trial produced no evidence that would have justified the trial court in instructing the jury on the law of voluntary manslaughter. And, to the contrary, evidence was presented on every essential element of aggravated murder. Finally, although the issue was not properly raised before the trial court, a hearing was had concerning the appellant's sanity and he was found to be sane.

Considering the foregoing it is obvious that, based on the law and the facts of this case, the judgment of the trial court should be sustained.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: Ronald B. Adrine
RONALD B. ADRINE
Assistant Prosecuting Attorney

Attorneys for Plaintiff-Appellee
Criminal Courts Building
1560 East 21st Street
Cleveland, Ohio 44114

SERVICE

Copies of the foregoing Brief of Appellee have been mailed this 5th day of August, 1975, to Robert L. Miller, WHITE, MILANO, JUREK & MILLER, 1310 Standard Building, Cleveland, Ohio, 44113, and Peter Hull, Engineers Building, Cleveland, Ohio, 44113, Attorneys for Defendant-Appellant.

Assistant Prosecuting Attorney

# APPENDIX

Ohio Revised Code, Section 2945.37

"2945.37 Inquiry into insanity of defendant

If the attorney for a person accused of crime whose cause is pending in the court of common pleas, before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. If three fourths of such jury agree upon a verdict, such verdict may be returned as the verdict of the jury. If there is a jury trial and three fourths of the jury do not agree, another jury may be impaneled to try such question."

[redacted]

0001

# COURT OF COMM [redacted]

CASE NO. ______ DATE Mar 3 -

PLTF. ______ (VS.) DEFT. ______

ATTY. FOR PLTF. Laurie & Adrine ATTY. FOR DEFT. [illegible]

| | SEAT NUMBER | NAME | ADDRESS | OCCUPATION AND NAME OF EMPLOYER (IF MARRIED GIVE HUSBAND'S OCCUPATION AND NAME OF EMPLOYER) |
|---|---|---|---|---|
| 1 | | | - Lynd. | |
| 2 | | | - Clev. 13-12-10 | |
| 3 | — | | One State Plaza | |
| 4 | | 35 yrs ago on jury, [illegible] | | |
| 5 | | 1950 or 51 on jury [illegible] | Clev. 16 yrs | - 6 yrs |
| 6 | | 4 yrs ago [illegible] | 14-18-20-24-25 . Clev. | 25 yrs |
| 7 | | 1960 Jury - [illegible] | . Clev. 22-35 | 22 yrs abt. 24 yrs |
| 8 | | | | aid 6 yrs |
| 9 | | ~~[illegible] civil~~ | | 28 yrs UAW - 28 yrs |
| 10 | | | Lk | Clev. [illegible] |
| 11 | | | 3 yrs. 10 yrs | John Adams |
| 12 | | | 16-9 [illegible] 3 yrs | [illegible] |

000109

| | | | | |
|---|---|---|---|---|
| ~~13~~ 9 | | | | |
| ~~14~~ | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

March 5, 1975

RE: [illegible] ANDREWS
Docket No. [illegible]
Referred under: 2945.37

Hon. Francis E. Sweeney
Lakeside Court House
Cleveland, Ohio 44113

SUMMARY

Defendant was referred to the clinic for examination under R.C. 2945.37, Insanity Suggested. He is charged with Murder.

This is a 36 year old male, who states he was arrested on September 19, but released from custody on December [illegible], 1974. He was then rearrested on December 29, 1974.

He understands he is charged with Murder of his wife, to whom he claims he was married only 24 days. He adds that his wife was beaten and stabbed to death. Her body was found in the park. He does discuss it to some extent, indicating, of course, he is innocent.

Andrews was very cooperative during the interview. He indicated he had been only in one hospital and that was at the medical center in Springfield, Missouri. He claims he was there 13 months, but found not to be psychotic and transferred to Leavenworth. He admitted there have been problems resulting from his religious attitudes and that these have caused some trouble in penal institutions.

He describes his health as good.

He was tested for competency and fully understands the charges against him, is capable of consulting with his attorney in preparing a defense. He is also aware of courtroom procedure.

OPINION: We can find nothing to indicate that this man is presently psychotic. He is very much taken up with the Islamic religion. There is only one instance that he relates where he became involved with an altercation in jail. This, however, he claims was a result of an argument.

In our opinion, the defendant is presently sane and able to proceed with trial.

Wilfrid M. Gill, M.D.

WMG/mk

[illegible]

Left 20718 to J.V.
Back Home 12 - 12:30 [illegible]
[illegible]

[illegible]
Left some time - Back some 12 am
[illegible]
[illegible] back at about 7 [illegible]

[illegible]
Left some time - back home at
10:30 found T.V. on [illegible]
was going to do some [illegible]

[illegible]

Check
Left some time - [illegible]
12 noon [illegible]
[illegible] back 4pm - got key [illegible]
[illegible]
an additional key [illegible]

771-3770
wk 75

Betty Worthy
Called - good
w IT - saw
Def talks w/ vict at
about 11-12 Am monday
of murder - def denies
this
Worthy has no reason to
lie.

1853 [illegible]
East Cleveland Ohio
November 7 1974

M. T. Corrigan
County Prosecutor
1560 E 21
Cleveland Ohio

Re: Isaiah Andrews
cr 16694 - J. Jaffe
11-8-74 NG B# 100,000

Dear Mr Corrigan,

The purpose of this letter is to inform you of words spoken to me by the defendant in the murder of Regina Brown Andrews on the evening of the murder — September 13 1974.

If you wish to inquire further about this statement testimony you can contact me at the above address.

Sincerely,
[illegible]

Advised Atz Hubbard to contact this woman
11-14-74

Dr. Gerber - also a witness to be called

Dr. Gerber will be subpoened by us to be brought in also if need be.

STATE OF OHIO (
: FILED
COUNTY OF CUYAHOGA )

FEB 27 2 00 PM '75

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

Judge Sweeney

THE STATE OF OHIO,

Plaintiff )

vs.

ISAIAH ANDREWS

Defendant )

DEMAND FOR DISCOVERY BY THE STATE OF OHIO
CRIMINAL RULE 16 (A)

Now comes the State of Ohio by and through John T. Corrigan, the Prosecuting Attorney, and, in response to the defendant's written demand for discovery, pursuant to Criminal Rule 16 (A) hereby makes written demand of ISAIAH ANDREWS, the defendant, for the discovery of the following items:

1. All photographs, papers, books, documents, tangible objects, or copies or portions thereof, available to or within the possession, custody or control of the defendant and which the defendant intends to introduce in evidence at the trial.
2. All results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, available to or within the possession or control of the defendant, and which the defendant intends to introduce in evidence at the trial, or which was prepared by a witness whom the defendant intends to call at the time of the trial, when such results or reports relate to his testimony.

All names and addresses of witnesses that the defendant intends to call at the trial.

Respectfully submitted,

JOHN T. CORRIGAN,
PROSECUTING ATTORNEY
CUYAHOGA COUNTY, OHIO

SERVICE

A copy of the foregoing Demand for Discovery has been mailed this 27th day of February, 1975, to William Summers Attorney for the Defendant, 1020 Northern Ohio Bank Bldg., Cleve., O.

JOHN T. CORRIGAN,
PROSECUTING ATTORNEY

By ______________________
Assistant Prosecuting Attorney

CC-I-C

J. Sweeney
Rm 1

000116

# PRECIPE
# CRIMINAL CASE

No. CR 17902

THE STATE OF OHIO, Plaintiff

vs.

ISIAH ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
|---|---|
| County Coroner | RE: REGINA ANDREWS (9-18-74) |
| Betty Marie Worthy | 2344 Prospect Ave. Cleve., O. |
| Det. Rowell #1606 | CPD - Homocide Unit |
| " Hubbard #1673 | " " " |
| Linda Cloud | 1918 East 86th St. Cleve, O. |
| ° Mary Ostendorf | 1853 Page Ave. Cleve., O. |
| ✓ Mary Smith | 3376 E. 128 St. Cleve., O. |
| ✓ Charles Galloway | 3597 E. 65 St. Cleve., O. |
| ✓ Jesse Byons | 11616 Durant Cleve, 44108 |
| ✓ Det. McKibben X | C.P.D. - Homocide |
| Barbara Campbell X | Coroner's Office |
| re Regina Andrews (9-18-74) | Call In |

To appear on the 3 day of MARCH 1975

at 9:00 o'clock M., to testify on ~~behalf of~~

PLAINTIFF—~~DEFENDANT.~~

Attorney for [illegible]

X Ptl. SOBOCINSKI - #2157 - CPD.
X " James PETRICK # 2287 " "

CC-1-C

2/26/75

# PRECIPE
# CRIMINAL CASE

No. CR 17902 Jdg. Sweeney Rm. 1

THE STATE OF OHIO, Plaintiff

vs.

ISIAH ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
|---|---|
| X CO. CORONER | Re: Regina Andrews 9-18-74. |
| ✓ BETTY MARIE WORTHY | 2344 Prospect Avenue Cleveland, Ohio |
| X DET. ROWELL #1606<br>X DET. HUBBARD #1673 | Homicide<br>" |
| MARY OSTENDORF | 1853 Page Avenue Cleveland, Ohio 44112 |
| MARY L. MASON | 640 E. 107th Street Cleveland, Ohio 44108 |
| ✓ ~~Reginald Mason~~<br>REGINALD MASON | " " |
| LINDA CLOUD | 1918 E. 86th Street Cleveland, Ohio |
| JOHN SCOTT | 1669 Carlyon Avenue East Cleveland, Ohio |
| X Det Hicks #901 - CPD | |
| X Det Allen #83 - CPD | |
| (also ~~get 510 ...~~) | |
| ~~Vee's salesman on ck~~ ck of 600.00 NSF of ... given by Df. | |

BEFORE YOU REPORT, PLEASE CALL 521-5800, EXT. 301, 302, OR 771-4060 SO AS TO FIX THE EXACT TIME.

ASST. CNTY. PROSECUTORS CHARLES LAURIE, PATRICK LAZZARO, JAMES CARNEY

To appear on the 3rd day of March 1975

~~at o'clock M.~~ to testify on behalf of PLAINTIFF—DEFENDANT.

JOHN T. CORRIGAN Attorney for STATE OF OHIO

000117

RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16

STATE OF OHIO
vs.
Isiah Andrews

No. CR 17902

The Prosecuting Attorney will permit the defendant at a time prior to trial and at the convenience of the defense counsel to inspect and copy or photograph:

(a) (X) Statement of the defendant or co-defendant.

(X) Defendant made (~~did not make~~) a written statement.

( ) Co-defendant(s) made (did not make) a written statement.

(X) Defendant made (~~did not~~ make) an oral statement.

( ) Co-defendant(s) made (did not make) an oral statement.

( ) Recorded testimony of the defendant or a co-defendant before the Grand Jury.

(X) No Grand Jury Testimony.

(b) ( ) A copy of the defendant's prior criminal record which is available to or within the possession, custody or control of the State is as follows:

( ) None available in Prosecutor's File. other than a murder conviction while in U S Marine

(c) Prior to trial and at the convenience of defense counsel the Prosecutor will permit inspection, copying and photographing of the items listed in Rule 16 C.

(d) Prior to trial and at the convenience of defense counsel the Prosecutor will permit inspection, copying and photographing of the items listed in Rule 16 D.

(e) All witnesses the Prosecuting Attorney intends to call at trial together with any record of prior felony convictions of any such witnesses:

There are other witness which are not subject to disclosure because under the total facts in this case, will subject them to physical harm or coercion See: Rule 16 (B)(e)

(f) Before trial and at the convenience of defense counsel, the Prosecuting Attorney will disclose to counsel for the defendant, all evidence known to the Prosecuting Attorney, favorable to the defendant which is material either to guilt or punishment.

John T. Corrigan
Prosecuting Attorney

Dated: 9-18-74
Copy to:

11 AM to 2 PM Colonial House Motel 3301 Euclid Cleve.

IN THE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | THE HON. FRANCIS SWEENEY |
| Plaintiff | ) | |
| -vs- | ) | RESPONSE TO DEMAND FOR DISCOVERY BY THE STATE OF OHIO UNDER RULE 16 |
| ISAIAH ANDREWS | ) | |
| Defendant | ) | |

***

Now comes the Defendant in response to the State's written demand for discovery and states as follows:

(1) Prior to trial and at the convenience of the prosecutor, defense counsel will permit inspection, copying and photographing of the Items listed in Rule 16 C(1)(a).

(2) Prior to trial and at the convenience of the prosecutor, defense counsel will permit inspection, copying and photographing of the items listed in Rule 16 (C)(1)(b).

(3) Should there be the necessity of calling any witnesses at the trial of this matter, defense counsel will notify the prosecutor as soon as possible.

Jesse Worthy 8103 Quincy Ave.
H. Howard 795-2576 . temple # 18 Cleve. Ohio
Charles Galloway
Mary Mason 1853 Page Ave.
Mary Ostendorf 11624 Stratmore
Leroy Andrews 3306 Euclid Ave.
Martin Hengler + Mr. Sam Muskin 1375 W 6th St
Henry Montgomery 1375 W 6th St
Roland Williams 2700 E 40th St
Henry Alexander
Herman Sinatra

William L. Summers

WILLIAM L. SUMMERS + John P. Hyland
Attorney for Defendant
1020 Northern Ohio Bank Bldg.
Cleveland, Ohio 44113
696-0727

SERVICE

A copy of the foregoing response was mailed this ____ day of March, 1975, to JOHN T. CORRIGAN, Cuyahoga County Prosecutor, or personally delivered to his representative.

WILLIAM L. SUMMERS

CC-1-C

2/27/75 000121

# PRECIPE
# CRIMINAL CASE

No. CR 17902 Jdg. Sweeney Rm. 1

THE STATE OF OHIO, Plaintiff

vs.

ISIAH ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
| --- | --- |
| CHARLES GALLOWAY | 3597 E. 65th Street Cleveland, Ohio |
| P E R S O N A L | S E R V I C E |

To appear on the 3rd day of March 1975 at 9:00 o'clock A M., to testify on behalf of PLAINTIFF—DEFENDANT.

JOHN T. CORRIGAN Attorney for STATE OF OHIO

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

IN RE: ISIAH ANDREWS

and

MR. ROBERT G. WAGNER
UNITED STATES MARSHAL
NORTHERN DISTRICT OF OHIO

APPLICATION FOR
WRIT OF HABEAS CORPUS

John T. Corrigan, Prosecuting Attorney for Cuyahoga County, says that Isiah Andrews is charged in Case No. CR 17902 on docket of Criminal Courts of Cuyahoga County, for the crime of Aggravated Murder, Ohio Revised Code R.C. 2901.01 ________, and is being held by the Sheriff of Cuyahoga County and Robert G. Wagner, United States Marshal for the Northern District of Ohio.

We therefore pray that Robert G. Wagner, United States Marshal, or his designate bring the body of Isiah Andrews before the Honorable Judge David T. Matia of Cuyahoga County Common Pleas Court for the purpose of Arraignment on the 24th day of January, 19 75 at 9:00 A.M. and for further proceedings under the State Law.

John T. Corrigan
Prosecuting Attorney

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

John T. Corrigan, being first duly sworn, says that the facts stated and matters contained in the foregoing are true.

John T. Corrigan
Prosecuting Attorney

SWORN to before me and subscribed in my presence this 23rd day of January, 19 75.

Patricia A. Costello
Notary Public

... COSTELLO
... County
... 23, 1976

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN THE COURT OF COMMON PLEAS
CRIMINAL COURTS

CASE NO. CR 17902

IN RE: ISIAH ANDREWS

and

MR. ROBERT G. WAGNER
UNITED STATES MARSHAL
NORTHERN DISTRICT OF OHIO

ORDER GRANTING
WRIT OF HABEAS CORPUS

On the application of John T. Corrigan, Prosecuting Attorney for Cuyahoga County, upon his filing the petition herein a writ of habeas corpus is granted as prayed for in the petition, returnable forthwith.

JUDGE, Court of Common Pleas
Cuyahoga County

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

IN RE: ISIAH ANDREWS

WRIT OF HABEAS CORPUS

TO: MR. ROBERT G. WAGNER, UNITED STATES MARSHAL, NORTHERN DISTRICT OF OHIO, AND
RALPH KREIGER, SHERIFF, CUYAHOGA COUNTY, OHIO

We command you that the body of Isiah Andrews ______ in your custody detained as it is said, by whatsoever name the said Isiah Andrews may be known or called, you safely have before the Honorable David T. Matia, Judge of the Court of Common Pleas of Cuyahoga County, or in case of his absence or disability before some other Judge of said court at the Cuyahoga County Common Pleas Court on the 24th day of January, 19 75, at 9:00 A.M., to do and receive what our said judge shall then and there consider, concerning h im in that behalf; and that you have then and there this writ.

IN WITNESS HEREOF, I, William P. Yarmesch Deputy Clerk of our said Court of Common Pleas have hereunto set my hand and affixed the seal of said court, this ______ day of January, 19 75.

EMIL J. MASGAY, CLERK
COURT OF COMMON PLEAS

By ______________________
Deputy Clerk

RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16

Judge Sweeney

STATE OF OHIO
vs.
ISAIAH ANDREWS

No. CR 17902

The Prosecuting Attorney will permit the defendant at a time prior to trial and at the convenience of the defense counsel to inspect and copy or photograph:

(a) (xx Statement of the defendant or co-defendant.

(xx Defendant made (~~did not make~~) a written statement.

( ) Co-defendant(s) made (did not make) a written statement.

(xx Defendant made (~~did not make~~) an oral statement.

( ) Co-defendant(s) made (did not make) an oral statement.

( ) Recorded testimony of the defendant or a co-defendant before the Grand Jury.

(xx No Grand Jury Testimony.

(b) ( ) A copy of the defendant's prior criminal record which is available to or within the possession, custody or control of the State is as follows:

( ) None available in Prosecutor's File. OTHER THAN A MURDER CONVICTION WHILE IN U.S. MARINES

(c) Prior to trial and at the convenience of defense counsel the Prosecutor will permit inspection, copying and photographing of the items listed in Rule 16 C.

(d) Prior to trial and at the convenience of defense counsel the Prosecutor will permit inspection, copying and photographing of the items listed in Rule 16 D.

(e) All witnesses the Prosecuting Attorney intends to call at trial together with any record of prior felony convictions of any such witnesses:

County Coroner - re: Regina Andrews 9/18/74
Det. Hubbard # 1673, Det. Rowell # 1606, Det. Hicks # 901 - Homicide
Det. Allen # 83, Det. McKibben - Homicide
Ptl. Sobocinski # 2157, Ptl. James Petrick # 2287 - C.P.D.
Barbara Campbell, Co. Coroner's Office, re: Regina Andrews 9/18/74

THERE ARE OTHER WITNESSES WHICH ARE NOT SUBJECT TO DISCLOSURE BECAUSE UNDER THE TOTAL FACTS IN THIS CASE, WILL SUBJECT THEM TO PHYSICAL HARM OR COERCION -- SEE RULE 16 (B) (E)

(f) Before trial and at the convenience of defense counsel, the Prosecuting Attorney will disclose to counsel for the defendant, all evidence known to the Prosecuting Attorney, favorable to the defendant which is material either to guilt or punishment.

John T. Corrigan
Prosecuting Attorney

Dated: 2/27/75
Copy to: William L. Sumers, Atty. for defendant
1020 Northern Ohio Bank Bldg., Cleve., O. 44113.

RIGOR 6-8 hrs

5:05 PM - at MORGUE - D.O.A. -
rigor incomplete
(X) time of death est. 9-12 AM

---

Bloody Palm-print on
P.D. newspaper on scene
where body found.

- readable + comparable?

- Defendants?

- palm print too smeared
to be compared.
per SFU 2-20-75

Lowmanned stabwound - stab wounds - 7 - all fatal

- 4 small surface wounds on abdomen

- small cut on rt. hand.

abrasions on upper & lower lips

SPERM - sperm in vaginal area VERY WEAK - INACTIVE

RIGOR - up to 6 hrs - sperm life

- 6 8 hrs - rigor

FOOD 400 MILLILITER - part. digested 13 oz.

large meal

3-5 hrs for food to exit stomach

- all clothes & garments blood soaked (wet)

- body clean & well groomed
(- consistent w/ deceased saying they showered
after having sex. intercourse.

- Ladon ① NIGHTY knee. length
②PEVOIR
2 sheets - KNIFE WOUND IN SHEETS ③ CAFTAN ROBE

all having blood stains

1 w/ quilt
1 bed spread
1 pillow
1 w/ pillowcase
1 terry cloth towel

defects in clothing correspond w/ job marks in nighty

Colacurcio Notes

✓ R. Ruggeri wk 621-7593
Hm 321-2616

✓ Chuck Galloway ~~371-2500~~ — 883-5407
3597 E 65
Cleve, O.
~~Gabbard Ave~~

came to wk at noon in Def's letter use Def key to phone

✓ Reginald Mason 681-7314
SYNTHETICS PRODUCTS 531-6010
19805 55 St.

Lt Corrigan 404

Betty Marie Worthy 881-8455-MADRIGAL Bar
2344 Prospect Ave. ~~[illegible]~~
NO PHONE
1779 E 89 Apt 5

10 A.M. FAIRMORN.

✓ Mary Oetendorf 268-5648
1853 Page Ave

✓ Mary L. Mason ~~681-7314~~

Linda Cloud NO PHONE CK w/ relief office
1918 E. 86 St.
Cloud + Worthy

✓ John Scott
1669 Carlyon Ave.
E. Cleve. ~~681-1590~~ NOT IN SERVICE IN 216 area

✓ ADAM (EDDIE?) WOLF

✓ MRS. LANE aunt of deceased 231-7718

(X) ✓ MARY SMITH 283-7406
3376 E 128
4-23-39 5'2" 100's

andrews arrested with = RUTH SAMS (BEEMER)
270 W. Jackson St.
Painesville
Jimmie Beemer 497 E 112 St

✓ FBI agent KIRK Def girlfriend in Painesville
532-1400

Aug 7.

IN THE COURT OF APPEALS
EIGHT APPELLATE DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ISAIAH ANDR[illegible] | Appellant, | CASE NO. ________. |
| | | MOTION FOR LEAVE TO PROCEED ON APPEAL AND AFFIDAVIT OF INDIGENCY |
| STAT[illegible] | Appellee. | |

[illegible]aiah Andrews, appellant herein, a pauper in the Court [illegible]spectfully moves the Court for leave to proceed on this [illegible] forma pauperis for reasons that he is an indigent person, [illegible] cash, bonds, stocks, securities, property, or anything of [illegible] to offer as costs and fee's in the filing of this appeal [illegible]s sworn to below.

Therefore, Appellant moves that he be allowed to proceed in forma pauperis on this appeal submitted herewith.

Respectfully requested,

Isaiah Andrews
Isaiah Andrews

STATE OF OHIO )
) SS.
COUNTY OF SCIOTO )

I, Isaiah Andrews, appellant herein, being first duly cautioned and sworn on my oath depose and say that all said in the above Motion For Leave To Proceed on Appeal in Forma Pauperis is true and I hereby affix and subscribe my signature to the truth thereof.

Isaiah Andrews
Isaiah Andrews-Affiant

SWORN to and SUBSCRIBED to in my presence this 4 day of August, 19[illegible].

Paul N. Adams
PAUL N. ADAMS
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES MAY 23, 1983
Notary Public

Adam Wolf – desk clerk at Colonial Motel
- no longer works there
- no forwarding address
- no home address in file
- Could not contact this witness who was on duty at clerk's office at motel on day this event occurred.

John Scott – lived at motel at time this event occurred.
- Could not contact this witness

Mrs. Lane – aunt of deceased.
Hm 231-7718

- call this witness's ~~home~~ home numerous times – no answer
- could not contact this witness.

(*) Mary Smith

- called witness 2-19-75 –
- witness recalls seeing def & victim alive ~~[illegible]~~ presumably on date of murder – doesn't remember dates too well – but is positive that she & Worthy saw def talking to wife around 11 AM on date in question. – SEEMS LIKE GOOD WIT.

DEF. MUST BE LYING – this wit. too honest & no reason to lie.

RUTH SAMS
- maiden name BEEMER
270 W. Jackson St.
Painesville, O.

- PER F.B.I. AGENT KIRK 522-1400

- supposed to be a girl friend of Def- possibly while he was married to VICT.

- could not contact -
Def. met this girl through this girl's sister JUANITA BEEMER, 497 E. 117 St., Cleve.

- see if police can check these 2 people out to see if Def. told them anything about the crime or his wife.

MARY L. MASON - mother of VICT.
- supposedly went to GHANA AFRICA to live
- could not contact this WIT.

MARY OSTENDORF

- call this WIT. 2-19-75 + 2-20-75
2-19-75 - wit. was home but refused to talk to me; agreed to come down to office to talk - friend of WIT. talked on phone.

2-20-75 - [illegible] called wit. again - not home but person who answered would not give any info.
- Do not think this WIT. intends to keep appointment to ~~[illegible]~~ talk w/me on Fri., 10 AM 2-21-75.
- all persons at above witness address very uncooperative & reluctant to give any info.

- this WIT. intimidated

– Call Ruggeri for Background on this case
WK 621-7593
Hm 321-2616

CHUCK GALLOWAY – worked at Colonial Motel – came to work at noon; Def. came in to use phone sometime after noon – late in day; thinks def is nice guy never any trouble from either him or his wife.
3597 E. 65 St.
Cleve., O. 883-5407

REGINALD MASON
WK – Synthetic Products 531-6010
Hm 681-7364
– was not able to contact this witness at home or at work.

BETTY MARIE WORTHY
– NO PHONE – phone co. has no listing
– COULD ~~NOT~~ CONTACT
WK 771-3770 7Am to 5Pm
– called me 2-20-75 – good memory & will be good witness

LINDA CLOUD
– NO-PHONE – phone co. has no listing –
– COULD NOT CONTACT.

Lead Lt. Corrigan – Hotels & CKS. – Call phone company – phone co. has no listing on either WORTHY or CLOUD

cA

000134

Cuyahoga County Common Pleas

| THE STATE OF OHIO<br>VS.<br>Isiah Andrews | A TRUE BILL INDICTMENT FOR<br>Agg Murder<br>CODE # 7-00 R.C. # 2903.01 |
|---|---|

| DATE OF OFFENSE | THE TERM OF | CASE NO. |
|---|---|---|
| 9 18 74 | | CR- |

PROSECUTING WITNESS ST

VALUE

PROPERTY

REMARKS Vic: Regina Andrews

| COUNT FOR | DATE | CODE # |
|---|---|---|
| | | R.C. # |

PROSECUTING WITNESS

VALUE

PROPERTY

REMARKS

| COUNT FOR | DATE | CODE # |
|---|---|---|
| | | R.C. # |

PROSECUTING WITNESS

VALUE

PROPERTY

REMARKS

GRAND JURY PROSECUTOR ........ [signature] ........

OCT 12 '78

# McCafferty, Perelman & Holtz

Attorneys and Counselors at Law
Suite 1248 · Engineers Building
Cleveland, Ohio 44114

216 771-0270

Owen J. McCafferty
A. Albert Perelman
Theodore S. Holtz

Associate Counsel
Alfia Miano Bourne
Tina G. Buzney

ATTORNEY
NTY

October 10, 1978

John T. Corrigan
Prosecuting Attorney
Cuyahoga County
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

ATTENTION: GEORGE J. SADD, ASSISTANT PROSECUTING ATTORNEY

Re: State of Ohio vs.
Isaiah Andrews
39712

Dear Mr. Sadd:

Enclosed, herewith, please find Supplemental Brief of Appellant which I have filed in the Court of Appeals, Eighth Judicial District of Ohio, Cuyahoga County, this date and which I am forwarding to you for your reference purposes.

Very truly yours,

McCAFFERTY, PERELMAN & HOLTZ

BY: [signature]
A. ALBERT PERELMAN

AAP:mkb

Enc. 1

000136

17802

2676

NO.________________

IN THE SUPREME COURT OF OHIO

Appeal from
The Court of Appeals for Cuyahoga County, Ohio

Case No. 34630

STATE OF OHIO

Plaintiff - Appellee

vs.

ISAIAH ANDREWS

Defendant - Appellant

MEMORANDUM IN SUPPORT OF JURISDICTION

JOHN T. CORRIGAN
Cuyahoga County Prosecutor
1560 East 21st Street
Cleveland, Ohio 44114

Attorney for Appellee

PETER HULL
Engineers Building
Cleveland, Ohio 44114

ROBERT L. MILLER
White, Milano, Jurek & Miller
1310 Standard Building
Cleveland, Ohio 44113

Attorneys for Appellant

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . .x

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . .1

WHY LEAVE TO APPEAL SHOULD BE GRANTED . . . . . . . . . . . . . . . . .2

PROPOSITIONS OF LAW:

Proposition of Law No. 1 . . . . . . . . . . . . . . . . . . . . . .2

Where a defendant has previously been declared insane, and sufficient evidence thereby exists to support a finding of his insanity, the trial court must order a complete pyschological examination of said defendant.

Proposition of Law No. 2 . . . . . . . . . . . . . . . . . . . . . .3

Where a police officer questions a person upon whom suspicion has already been focused and fails to give the Miranda warnings, the admission of testimony of such questioning is error.

Authorities cited in support of Proposition of Law No. 2:

Miranda v. Arizona, 384 U.S. 436 (1966). . . . . . . . . . . .4

People v. Glover, 276 N.Y.S. 2d 461 (1966) . . . . . . . . . .4

State v. Anderson, 428 P. 2d 672 (1967). . . . . . . . . . . .5

Proposition of Law No. 3 . . . . . . . . . . . . . . . . . . . . . .5

Where the evidence presented by the State fails to establish the requisite elements for aggravated murder but will support a charge of voluntary manslaughter, it is error for the trial court to leave for the jury's consideration aggravated murder and to fail to instruct the jury as to voluntary manslaughter.

Authorities cited in support of Proposition of Law No. 3:

O.R.C. §2903.01. . . . . . . . . . . . . . . . . . . . . . . .5

Tudor v. State, 113 O.S. 377, 149 N.E. 326 (1925). . . . . . .6

TABLE OF CONTENTS (Cont.)

O.R.C. §2903.03. . . . . . . . . . . . . . . . . . . . . . . .6

State v. Fox, 31 O.S. 2d 64 (1972) . . . . . . . . . . . . . .7

State v. Nolton, 19 O.S. 2d 135 (1969) . . . . . . . . . . . .7

O.R.C. §2901.22 (A). . . . . . . . . . . . . . . . . . . . . .7

O.R.C. §2901.22 (B). . . . . . . . . . . . . . . . . . . . . .7

State v. McDaniel, 103 App. 163, 144 N.E. (1d) 683 (1956). .7

Ohio Rules of Criminal Procedure Rule 29(A). . . . . . . . .8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . .9

SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

APPENDIX:

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . 10

ASSIGNMENTS OF ERROR . . . . . . . . . . . . . . . . . . . . 11

JOURNAL ENTRY OF COURT OF APPEALS. . . . . . . . . . . . . . 12

JOURNAL ENTRY OF COURT OF COMMON PLEAS . . . . . . . . . . . 13

TABLE OF AUTHORITIES

Cases Cited — Page

Miranda v. Arizona, 384 U.S. 436 (1966) — 4

People v. Glover, 276 N.Y.S. 2d 461 (1966) — 4

State v. Anderson, 428 P. 2d 672 (1967) — 5

State v. Fox, 31 O.S. 2d 64 (1972) — 7

State v. McDaniel, 103 App. 163, 144 N.E. (1d) 683 (1956) — 7

State v. Nolton, 19 O.S. 2d 135 (1969) — 7

Tudor v. State, 113 O.S. 377, 149 N.E. 326 (1925) — 6

Texts

Ohio Revised Code §2901.22(A) — 7

Ohio Revised Code §2901.22(B) — 7

Ohio Revised Code §2903.01 — 5

Ohio Revised Code §2903.03 — 6

Ohio Rules of Criminal Procedure Tule 29(A) — 8

NO. ________

IN THE SUPREME COURT OF OHIO

---

Appeal from
The Court of Appeal for Cuyahoga County, Ohio

Case No. 34620

---

STATE OF OHIO

Plaintiff - Appellee

vs.

ISAIAH ANDREWS

Defendant - Appellant

---

# MEMORANDUM IN SUPPORT OF JURISDICTION

## STATEMENT OF FACTS

Appellant was indicted for aggravated murder, R.C. 2901.01, by the Cuyahoga County Grand Jury. The indictment stemmed from the death of one Regina Andrews, the wife of the Appellant. The death of Mrs. Andrews resulted from multiple stab wounds in the neck.

Testimony at the trial established that appellant and his spouse resided at the Colonial Motel, in Cleveland, Ohio. Their premises consisted of a one-room apartment with only one entrance. A witness for the State testified that he saw Mr. and Mrs. Andrews in the doorway to their apartment at about

11:00 a.m. on September 18, 1974.

At this point, the couple entered the apartment, with appellant slamming the door. The State alleged that appellant then killed his wife in their room at the hotel. Approximately ten minutes later, appellant was seen exiting the room by himself carrying a large bundle which was placed in the truck of his car. The prosecution attempted to infer that this bundle was the body of appellant's wife. Regina's body was found later that night in Forest Hills Park.

The jury deliberated and found appellant guilty of aggravated murder. He was sentenced to life imprisonment in the Ohio Penitentiary. Said conviction was affirmed by the Court of Appeals, and appellant has now caused the within appeal to be perfected in the Supreme Court of Ohio.

WHY LEAVE TO APPEAL SHOULD BE GRANTED

1. Where a defendant has previously been declared insane, and sufficient evidence thereby exists to support a finding of insanity, the trial court must order a complete psychological examination of said defendant.

As indicated during the trial, appellant had at one point in his life been diagnosed as psychotic by psychiatrists employed by the United States government. This diagnosis was the result of an incident which occurred while appellant was a member of the U.S. Marine Corps. He had been charged with a crime, but had been unable to remember the details surrounding said crime.

In addition to this prior medical history, it was also established that appellant's own brother felt that he was plagued with severe mental problems. In view of the foregoing, a thorough examination should have been ordered by the

trial court. The sanity of appellant at the time of the commission of the alleged crime, as well as at the time of trial, should have been firmly established.

While Dr. Gill, the Court psychiatrist, briefly interviewed appellant, this was not a sufficient examination upon which to base a medical opinion. The appellant should have undergone numerous tests, and should have been examined by other psychiatrists to corroborate the findings of Dr. Gill.

The appellant denied any participation or involvement in the demise of his wife. It is possible to assume that perhaps he did commit the crime, but was unable to remember doing so, just as he had when he was a Marine. Therefore, he may have been insane at the time of the alleged crime. And it is also possible that his lack of memory at the time of trial would render him incompentent and legally insane. In view of the foregoing, the Court erred by not ordering a complete mental examination of appellant.

2. Where a police officer questions a person upon whom suspicion has already been focused and fails to give the Miranda warnings, the admission of testimony of such questioning is error.

Leo Allen, a detective in the homicide unit of the Cleveland Police Department, was called as a witness on behalf of the State. He testified that in the early hours of September 19, 1974, he went to the morgue with members of the deceased's family to identify the body. He then proceeded to the appellant's apartment. At this point in the testimony (Tr.,412), defense counsel objected to Detective Allen testifying about his conversation with appellant, on the grounds that appellant had not been given the Miranda warnings. The Court overruled the objection (Tr.,417), and

refused to allow a voir dire examination of the detective.

Miranda v. Arizona, 384 U.S. 436 (1966), established that a suspect must be advised of his right to remain silent, the fact that a statement may be used against him, and that he is entitled to an attorney. These warnings are to be given when "custodial interrogation" begins. This term has been defined as questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. The questioning in the present case clearly falls within the defining limits of this term.

The appellant was interrogated by a police officer in his own residence. There was but one means of entrance to the appellant's one-room home. Appellant contends that the questioning by Detective Allen occurred after a deprivation of freedom of action and that the trial court erred by not permitting the requested voir dire examination.

The meaning of the term "custodial interrogation" has been further clarified in People v. Glover, 276 N.Y.S. 2d 461 (1966). In Glover the court held:

> "Moreover, whatever Miranda may have intended "custody" to mean, this much is apparent--police questioning of a person wherever detained, upon whom suspicion has already focused, appears ruled to be "custodial interrogation."
>
> 276 N.YS. 2d at 466.

The questioning of the present appellant clearly falls within the limits of this clarification of the term "custodial interrogation". Detective Allen had just come from the morgue where he had been in the company of the deceased's relatives. Those relatives suspected the appellant of wrongful conduct and conveyed their beliefs to the detective. Thus

Detective Allen's appearnce at appellant's residence was designed not merely to seek general information, but to ascertain the details of appellant's involvement in the crime. Therefore, appellant can be classified as a person upon whom suspicion had already focused within the meaning of "custodial interrogation". How else can Detective Allen explain his presence at the apartment and the questions which were propounded.

In further support of this persuasive interpretation of the term "custodial interrogation" is State v. Anderson, 428 P. 2d 672 (1967). In Anderson, the defendant, a suspect in a murder case, was interrogated in her home by law enforcement officials. The court held that the statement was inadmissable by reason of the lack of Miranda warnings.

The appellant herein was interrogated in his own home by a police officer who failed to give him the Miranda warnings. Whether he was free to leave or whether he was under the custody of the officer, and thereby deprived of his freedom, was certainly a question that should have been dealt with by the trial court. The failure to conduct a voir dire examination and subsequent testimony by Detective Allen operated as reversible error.

3. Where the evidence presented by the State fails to establish the requisite elements for aggravated murder but will support a charge of voluntary manslaughter, it is error for the trial court to leave for the jury's consideration aggravated murder and to fail to instruct the jury as to voluntary manslaughter.

The State presented no evidence of prior calculative and design as required to sustain a conviction of aggravated murder. (O.R.C. §2903.01).

Testimony indicated that the appellant, earlier that day, threatened his wife. However, this testimony does not indicate a prior calculation and design. Thus, allowing the jury to consider this charge was prejudicial error.

The trial court erroneously refused to instruct the jury as to voluntary manslaughter as requested by the appellant. In Tudor v. State, 113 O.S. 377, 149 N.E. 326 (1925), the court held that upon the trial of an indictment for murder the jury should be instructed as to manslaughter where the evidence in the case would sustain a conviction of manslaughter. Applying the Tudor standard to the present case, it is clear that the jury should have been instructed as to manslaughter.

Manslaughter is defined as:

> No person while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another.
>
> (O.R.C. §2903.03).

The requisite element that the appellant was "under extreme emotional stress" is clearly established from the testimony. The testimony indicated that the appellant had found his wife with the unidentified man in their single-room home (T-203). The evidence presented in the case certainly could have sustained a conviction of manslaughter and under the Tudor standard the trial court should have given the jury the instruction on manslaughter.

More recently the Ohio Supreme Court held; "... if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused

on the remaining elements, which by themselves would sustain a conviction of the lesser included offense, then a charge on the lesser included offense is both warranted and required, not only for the benefit of the State, but for the benefit of the accused." State v. Fox, 31 O.S. 2d 64 (1972), and State v. Nolton, 19 O.S. 2d 135 (1969). Applying the Fox standard to the present case, it is clear that the trial court should have instructed the jury on manslaughter. The trier could reasonably have found that the appellant did not have the requisite culpable mental state for murder or aggravated murder, but did have the requisite mental state for manslaughter.

The culpable mental state for murder and aggravated murder is "purposely". It is defined by §2901.22 (A) O.R.C. as,

> "A person acts purposely where it is his specific intention to cause a certain result,..."

The culpable mental state for manslaughter is defined in §2901.22(B) O.R.C. as:

> "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

The jury in the present case could reasonably have found the act of stabbing was done knowingly in a fit of temper and at the same time could have reasonable doubt as to whether or not the appellant had a specific intention to kill his wife.

Furthermore, manslaughter includes instances where there is an intentional killing upon a sudden quarrel. In State v. McDaniel 103 App. 163, 144 N.E. (ld) 683 (1956) the court held that where the killing was done during a sudden quarrel, the offense charged is voluntary manslaughter.

In the present case, it is apparent from the testimony of the events prior to the alleged killing, that the defendant and deceased were involved in a quarrel. Immediately prior to the alleged murder the defendant-appellant slammed shut the door (T-237). It is apparent from the record the evidence could have sustained a verdict for manslaughter and that the trier of fact could reasonably have rejected aggravated murder and murder.

Rule 29(A) of the Ohio Rules of Criminal Procedure requires a judgment of acquittal if the evidence is not sufficient to sustain a conviction. The evidence presented in the instant case was clearly insufficient to sustain a conviction of aggravated murder. Allowing the jury to consider aggravated murder amounted to prejudicial error preventing the appellant from a fair trial.

## CONCLUSION

The within memorandum is based upon three propositions of law. The first centers around, the likely insanity of appellant and the Court's failure to order a mental examination. The second proposition concerns a statement which should not have been admitted into evidence due to a lack of appropriate Miranda warnings. The final proposition deals with the error of the trial court in its charge regarding the crime of aggravated murder.

In view of the foregoing, appellant respectfully requests that this Honorable Court grant him leave to appeal.

PETER HULL and ROBERT L. MILLER
Engineers Building
Cleveland, Ohio 44114

## SERVICE

A copy of the foregoing memorandum has been mailed this ___ day of May, 1976, to John T. Corrigan, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

PETER HULL and ROBERT L. MILLER
Attorneys for Appellant

FILED
COURT OF APPEALS
APR 2_ 1976
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF APPEALS
FOR CUYAHOGA COUNTY
EIGHTH JUDICIAL DISTRICT OF OHIO
CASE NO. 34620

STATE OF OHIO )
)
Appellee )
)
vs. )
)
ISAIAH ANDREWS )
)
Appellant )

NOTICE OF APPEAL

Now comes the appellant and hereby appeals to the Supreme Court of Ohio from the judgment entered in this action by the Court of Appeals of Ohio, Eighth District on March 29, 1976.

ROBERT L. MILLER and PETER HULL
1310 Standard Building
Cleveland, Ohio 44113
(216) 696-6996

SERVICE

A copy of the foregoing notice has been mailed this ____ day of April, 1976, to John T. Corrigan, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

ROBERT L. MILLER and PETER HULL
Attorneys for Appellant

ASSIGNMENTS OF ERROR

I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda Warnings.

III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

IV. The trial court erred by not removing aggravated murder from the considera-tion of the jury both at the end of the State's evidence and again at the end of all the evidence.

V. The trial court erred by not ordering a complete psychological examination of the defendant where the evidence tended to show the defendant had previously been diagnosed insane.

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 34620

State of Ohio

PLAINTIFF - APPELLEE

-vs-

Isiah Andrews

DEFENDANT - APPELLANT

APPEAL FROM

COMMON PLEAS COURT

No. Cr. 17902

JOURNAL ENTRY

DATE MAR 18 1976

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed. Each assignment of error was reviewed and upon review the following disposition made:

Defendant-appellant, Isiah Andrews, appeals from a judgment entered by the trial court after a jury found him guilty of one count of aggravated murder, Revised Code 2903.01

The defendant was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial House Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw the defendant appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning

of September 18, she saw the defendant and his wife leave their room and get into their car, at which time she overheard the defendant tell his wife,"Bitch, you know I am going to kill you, don't you."

Betty Worth testified that she was working as a maid at the Colonial House Hotel on September 18, 1974 when, at about 11:00 a.m., she saw the defendant talking to his wife in the doorway of their room. Worth stated that she saw the defendant slam the door and go inside the room, whereupon a record player in the room was turned up very loud. Worth stated that approximately ten minutes later the record player was turned off and the defendant came out of his room, went to his car and opened its trunk; that the defendant then returned to his room and within a few minutes left carrying a large heavy object over his shoulder which he placed in the trunk of his car. Worth testified that she walked past the defendant's room and saw that the bed was stripped of all linen.

Regina Andrews body was found in Forest Hills Park in the afternoon of September 18, 1974 wrapped in bedroom linen. The linen was identified by Betty Worth as being the same type used in the Colonial House Hotel.

The jury found the defendant guilty of aggravated murder.

Defendant assigns the following as error:

I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda warnings.

III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

IV. The trial court erred by not removing aggravated murder from the consideration of the jury both at the end of the State's evidence and again at the end of all the evidence.

V. The trial court erred by not ordering a complete psychological examination of the defendant where the evidence tended to show the defendant had previously been diagnosed insane.

I.

The defendant's first argument under this assignment of error is that the court erred in failing to grant the defendant's motion for discovery of the addresses of all witnesses. The record reveals that the prosecution moved for a protective order under Ohio Criminal Rule 16(E),[1/] requesting that the names and addresses of certain witnesses not be disclosed because of threats made to those witnesses.[2/] We find that the procedure of Rule 16(E) was followed and that the motion for a protective order was properly granted.

The second argument under this assignment of error is that the prosecution failed to provide a Bill of Particulars upon written request, as required by Criminal Rule 7(E). The record reveals that a Bill of Particulars was filed with the court on February 27, 1975, seven days before trial.

The first assignment of error is without merit.

II.

We find the second assignment of error to be without merit.

Detective Leo Allen of the Cleveland Police Department testified as to the oral statement made by the defendant to him during Detective Allen's investigation of the murder of Mrs. Andrews. The defendant argues that the oral statement should not have been admitted into evidence because the Miranda warnings were not given

---

1/ Ohio Criminal Rule 16(E) reads in part:
"(E) Regulation of discovery.
"(1) Protective orders. Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate...."

2/ The threatening letter read: "testify you die."

to the defendant before he made the statement.

We reject the defendant's argument. The police are required to give Miranda warnings only after a defendant is taken into custody. As the United States Supreme Court stated "...we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed...." Miranda v. Arizona (1966), 384 U.S. 436, 478. Here the defendant was not in custody and Miranda warnings were not required.

III.

We find the third assignment of error to be without merit.

The Ohio Supreme Court, in State v. Nolton, announced the following rule on when the court must give a jury an instruction on a lesser included offense:

> "..., if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, then a charge on the lesser included offense is both warranted and required, ...." Nolton (1964), 19 Ohio St. 2d 133, 135.

The record before us contains no facts from which the jury could find that the defendant was guilty of the lesser included offense of voluntary manslaughter.[3/] There is no evidence that the defendant was "under extreme emotional stress brought on by serious provocation."

The court properly instructed the jury.

IV.

In the fourth assignment of error the defendant argues that the prosecution presented

3/ R.C. §2903.03 reads in part:
"Voluntary manslaughter.
"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

no evidence from which the jury could find that the defendant had killed his wife with "prior calculation and design," an element of the offense of aggravated murder, R.C. 2903.01, and that the court erred in allowing the charge of aggravated murder to go to the jury.

There is evidence in the record from which the jury could find that the defendant had killed purposefully after devising a plan or scheme to kill.[4/]

We find this assignment of error to be without merit.

V.

We find the fifth assignment of error to be without merit.

Under R.C. 2945.37 an examination into the sanity of a defendant is required only after a reputable physician certifies that the defendant is insane, or the grand jury finds the defendant to be insane. The record before us reveals neither a physician's certificate of insanity nor a finding by the grand jury of insanity. The trial court acted properly in not ordering a complete psychological examination.

Affirmed.

4/ The evidence on which the jury could depend and rely in finding that the defendant had killed his wife with prior calculation and design include: the threat against the deceased's life made by the defendant on the morning of September 18; the turning up of the record player in the defendant's apartment moments after the deceased was last seen alive; and the disposing of a large object by the defendant shortly after the deceased was last seen alive.

RECEIVED FOR FILING

MAR 18 1976

GERALD E. FUERST
By [signature]

It is ordered that appellee(s) recover of appellant(s) its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

JACKSON, C. J.,

MANOS, J.,

SILBERT, J., CONCUR.
(Silbert, J., retired judge of the 8th appellate district, sitting by assignment).

[signature]
PRESIDING JUDGE
LEO A. JACKSON

For plaintiff appellee: John T. Corrigan
For defendant appellant: Peter H. Hull

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

va
3/13
C of C 124 B

MAR 18 1975
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

JUDGE

VOL 248 PG 903

POSTED

STATE OF OHIO, } SS.
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS

JANUARY TERM, 19 75

TO-WIT: March 12, 1975, 19

STATE OF OHIO PLAINTIFF

vs.

Islah Andrews DEFENDANT

NO. CR-17902

INDICTMENT
Aggr. Murder

JOURNAL ENTRY

This day again comes the Prosecuting Attorney on behalf of the State and defendant, Islah Andrews was brought into Court, represented by counsel.

Now comes the Jury, conducted into Court by the Bailiff and returned the following verdict in writing, to-wit: " We, the Jury in this case being duly impaneled and sworn, do find the defendant, Islah Andrews guilty of Aggravated Murder, RC. 2901.01, as charged in the indictment."

Thereupon, the Court informed the defendant of the verdict of the Jury and inquired of him if he had anything to say why judgment should not be pronounced and he having nothing but what he had already said and showing no good and sufficient cause why judgment should not be pronounced.

It is, therefore, ordered and adjudged by the Court that defendant, Islah Andrews be imprisoned and confined in the Chillicothe Correctional Institution, Chillicothe, Ohio, for LIFE, according to law, and he is to pay the costs of this prosecution for which execution is awarded.

Defendant is to be transferred to said Institution Forthwith.

Francis E. Sweeney, Judge
va
3/13

RECEIVED FOR FILING
MAR 18 1975
GERALD E. FUERST
By

C of C 133

JUDGE

VOL 248 PG 903

NO. __________

IN THE SUPREME COURT OF OHIO

APPEAL FROM
THE COURT OF APPEALS FOR CUYAHOGA COUNTY, OHIO

STATE OF OHIO

Plaintiff-Appellee

-vs-

ISAIAH ANDREWS

Defendant-Appellant

MEMORANDUM OPPOSING JURISDICTION

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

RONALD B. ADRINE
Assistant Prosecuting Attorney

Attorneys for Plaintiff-Appellee
Criminal Courts Building
1560 East 21st Street
Cleveland, Ohio 44114

PETER HULL
Engineers Building
Cleveland, Ohio 44114

ROBERT L. MILLER
White, Milano, Jurek & Miller
1310 Standard Building
Cleveland, Ohio 44113

Attorneys for Defendant-Appellant

TABLE OF CONTENTS

Statement of Facts .................................... 1-4

Law and Argument: 5-9

Proposition of Law No. I .............................. 5-6

Where the defense fails to comply with the applicable statute relative to raising the issue of the sanity or insanity of the defendant, the trial court is under no compunction to order a complete psychological examination of the defendant to resolve that issue.

Authorities cited in support of Proposition of Law No. I:

Ohio Revised Code, Section 2945.37 ............... 5
State v. Jamison, 9 O. App. 2d 227, 223 N.E. 2d 904 (1967) ................................. 5

Proposition of Law No. II ............................. 6-8

Where a police officer, during the investigation phase of his inquiry, questions an individual upon whom no legitimate suspicion has focused and who has not been subjected to custodial interrogation, it is not necessary that said individual be given the Miranda warnings and any statements that he makes under such circumstances may be used against him at a subsequent trial.

Authorities cited in support of Proposition of Law No. II:

Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), at 444, 477, 478 .................... 6,7
People v. Glover, 276 N.Y.S. 2d 461, at 465 ...... 7

Proposition of Law No. III ............................ 8-9

Where the evidence presented by the State establishes all of the requisite elements of aggravated murder, but not those of voluntary manslaughter, it is not error for the trial court to allow the jury to deliberate on the charge of aggravated murder and refuse to allow the consideration by them of the lesser but included charge of voluntary manslaughter.

Authorities cited in support of Proposition of Law No. III:

State v. Allen, 73 O.L.Abs. 398, 133 N.E. 2d 167 (1956), at.170 .......................... 8
Bandy v. State, 131 N.E. 499 (1921), at 504 ...... 9
State v. Kuchmak, 159 Ohio St. 363, 112 N.E. 2d 371 (1953) ................................. 9
State v. Rogers, 64 O. App. 39, 27 N.E. 2d 791 (1938) .................................... 9
State v. Gossett, 26 Ohio Misc. 163 (1970) ....... 9
State v. Brown, 102 O. App. 113 (1956) ........... 9

Conclusion ............................................ 9-10

# TABLE OF AUTHORITIES

Cases:


Bandy v. State, 131 N.E. 499 (1921), at 504 .................. 9

Miranda v. Airzona, 384 U.S. 436, 86 S. Ct. 1602 (1966), at 444, 477, 478 .......................................... 6,7

People v. Glover, 276 N.Y.S. 2d 461, at 465 .................. 7

State v. Allen, 73 O.L.Abs. 398, 133 N.E. 2d 167 (1956), at 170 .................................................. 8

State v. Brown, 102 O. App. 113 (1956) ...................... 9

State v. Gossett, 26 Ohio Misc. 163 (1970) .................. 9

State v. Jamison, 9 O. App. 2d 227, 223 N.E. 2d 904 (1967) .. 5

State v. Kuchmak, 159 Ohio St. 363, 112 N.E. 2d 371 (1953) .. 9

State v. Rogers, 64 O. App. 39, 27 N.E. 2d 791 (1938) ....... 9


Statutes:


Ohio Revised Code, Section 2945.37 .......................... 5

NO.

---

IN THE SUPREME COURT OF OHIO

---

APPEAL FROM
THE COURT OF APPEALS FOR CUYAHOGA COUNTY, OHIO

---

STATE OF OHIO

Plaintiff-Appellee

-vs-

ISAIAH ANDREWS

Defendant-Appellant

---

MEMORANDUM OPPOSING JURISDICTION

---

## STATEMENT OF FACTS

Linda Cloud was the next door neighbor of Regina Mason Andrews and her husband of less than one month, the defendant, Isaiah Andrews. They all resided at the Colonial House Motel located at 3301 Euclid Avenue in the City of Cleveland, Cuyahoga County, Ohio. Ms. Cloud occupied suite #131 and the Andrews lived in suite #133.

On September 17, 1974, after a short outing with her boyfriend, Ms. Cloud returned to her room at the Colonial House at approximately 8:50 P.M., where she and her infant son spent the rest of the night. She testified that she stayed up until 4:00 a.m. watching t.v. on the morning of July 18, 1974, and because of the warmth of the night, she left the door to her apartment open. Shortly after her return, she saw an unidentified

male in a white suit enter the Andrews' apartment. At an unspecified time later, the defendant was seen to enter suite #133 and, after a short interval, the man in the white suit was seen leaving the apartment. At 1:00 or 1:30 a.m. Ms. Cloud observed the defendant and his wife leaving their apartment and watched them as they started to drive away. She saw the defendant, who was driving, stop the car, get out, walk around to the passenger side of the vehicle where his wife sat, and open the door. At this point, she testified she heard the defendant say, "Bitch you know I'm going to kill you, don't you?" He then proceeded to return to the driver's seat and leave the premises. Ms. Cloud further testified that after she retired at 4:00 a.m. on September 18, 1974, she did not get up again until 11:00 a.m. that morning when she was awaken by Betty Worthy, a part-time maid at the motel.

Betty Worthy testified that after she woke Linda Cloud up on September 18, 1974, at approximately 11:00 a.m., she crossed the motel's courtyard and began carrying on a conversation with one of the other maids. During this conversation she happened to observe the defendant and his wife standing in the doorway of their apartment talking to one another. After about 10 minutes she saw the defendant re-enter the apartment and slam the door. At this point she testified that either a record player or a television set in the apartment was turned up to peak volume, where it remained for about 10 minutes. When the volume went down the defendant-appellant was seen to leave the apartment, go to his car and open the trunk. He then returned to the apartment and when he next emerged he was carrying a large, apparently heavy bundle, wrapped in plastic, slung across his shoulder. When this bundle was dropped in the trunk of his auto, the car was seen to bounce under its weight. Ms. Worthy testified that she saw the defendant-appellant return to the doorway of his apartment and stand there as if speaking to someone inside, but at this time she neither saw nor heard

his wife. She did, however, get a look inside the apartment before the defendant-appellant closed the door. She noted that the bed was completely devoid of linen. She further testified that when she later entered the apartment in the company of police officers, certain items of linen which she knew to be assigned to room #133, in particular a bedspread and a pillow, were missing.

Regina M. Andrews' body was found in a bush-covered area of Forest Hills Park, located some 5 miles from the Colonial House Motel. The body was discovered by Jesse Byous at 3:00 P.M. on September 18, 1974, when he investigated what he thought to be a bundle of rags laying in the park. This was approximately 3 1/2 hours after she was last seen alive and in the company of her husband, the defendant-appellant. Mr. Byous caused the police to be called. The police arrived and examined the bundle that the body was found encased in and the immediate area for evidence. The body was found to be wrapped in a bedspread, two sheets, a house coat, a shorty nightgown, a pillow, a mattress cover and a towel. Bloody newspaper was found in the near vicinity. The body was conveyed to the Coroner's Office where it was revealed that Regina Andrews died as a result of seven wounds inflicted by a sharp object to the neck region of her body. There were also abrasions on her lips which the Coroner's Office stated were caused by a blow from a blunt object, like a fist. The clothing found on the body, which had been pushed up around the neck of the deceased, were discovered to have defects which showed that some of Mrs. Andrews' wounds were inflicted through the bunched up cloth.

An identification was not immediately made on the body of Regina Andrews. It was not until late on the night of September 18, 1974, that Regina's mother, other members of her family and a family friend became alarmed at Regina's uncharacteristic absence and her husband's seeming lack of concern. They proceeded to inquire at the Cleveland Police Department

and were eventually conveyed to the Cuyahoga County Morgue, where Reginald Mason identified the body of his sister, Regina. The bedspread that was found with the body was shown to Betty Worthy who identified it as being of the type used at the Colonial House Motel and identical to the missing extra bedspread which she had given to Mrs. Andrews.

After Regina Andrews' body had been identified, Det. Leo Allen of the Cleveland Police Department Homicide Unit went to the Colonial House Motel to notify the defendant-appellant of her death. He was surprised at the lack of emotion displayed by the defendant-appellant at the news. He inquired as to Mr. Andrews' whereabouts on September 18, 1974. Andrews told him that he left his apartment before 8:00 a.m. that mroning but returned at 10:30 a.m. to find his wife gone and the television going. Det. Allen then concluded his conversation with Mr. Andrews and left the motel.

The next day, September 19, 1974, Det. William Hubbard of the Homicide Unit of the Cleveland Police Department conducted a follow-up investigation of this crime. He interviewed Mr. Andrews twice on that date. The first time Andrews told him that he had left his apartment before 8:00 a.m. but had forgotten his key and was unable to get back into his apartment until 4:00 P.M. Det. Hubbard and his partner then interviewed the other witnesses, after which they returned to question Andrews again. Upon receiving the same answers, Det. Hubbard advised the defendant-appellant of his constitutional rights and placed him under arrest.

This cause came on to be heard in the Cuyahoga County Court of Common Pleas on March 3, 1975, before the Honorable Judge Francis E. Sweeney. The trial lasted until March 12, 1975, at which time the jury found the defendant guilty of aggravated murder. From that verdict and the judgment of the trial court the defendant appealed to the Court of Appeals, and on March 18, 1976 that Court affirmed the judgment of the trial court.

## LAW AND ARGUMENT

### PROPOSITION OF LAW NO. I

WHERE THE DEFENSE FAILS TO COMPLY WITH THE APPLICABLE STATUTE RELATIVE TO RAISING THE ISSUE OF THE SANITY OR INSANITY OF THE DEFENDANT, THE TRIAL COURT IS UNDER NO COMPUNCTION TO ORDER A COMPLETE PSYCHOLOGICAL EXAMINATION OF THE DEFENDANT TO RESOLVE THAT ISSUE.

Ohio Revised Code, Section 2945.37 provides the procedure to be followed when raising the issue of the insanity of the defendant before the trial court. The portions pertinent here read:

> "If the attorney for a person accused of crime whose cause is pending in the court of common pleas, before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court,...the court shall proceed to examine into the question of the sanity of said person." (emphasis added)

It should be noted that the Legislature, in drafting this section, chose to phrase it in the conjunctive. Therefore, not only must the defendant's attorney suggest to the court that the defendant is insane at some point during the pendency of his cause before the Court of Common Pleas, but there must also be presented to the court a certificate from a reputable physician attesting to the defendant's infirm state of mind. When both of these requirements have been met, it becomes mandatory that the trial court conduct an investigation into the present state of the defendant's mental health. State v. Jamison, 9 O. App. 2d 227, 223 N.E. 2d 904 (1967).

In the present case, while the defendant's attorney did suggest to the court that the defendant might possibly be suffering from a mental disease, no certificate from a reputable physician to the effect that he was not then sane was ever presented to the court. It follows, then, that the defense should not now be heard to complain about the lack of a complete psychological examination. This is all the more true when it is discerned

that the trial court did order an investigation into the defendant's mental health (R. 29). At the request of the defense, the defendant was referred to the Cuyahoga County Psychiatric Clinic in order that a determination could be made as to his sanity (R. 25). It is unconscionable that the defense should be allowed to complain because the results of the tests which it requested did not suit its purpose.

PROPOSITION OF LAW NO. II

WHERE A POLICE OFFICER, DURING THE INVESTIGATION PHASE OF HIS INQUIRY, QUESTIONS AN INDIVIDUAL UPON WHOM NO LEGITIMATE SUSPICION HAS FOCUSED AND WHO HAS NOT BEEN SUBJECTED TO CUSTODIAL INTERROGATION, IT IS NOT NECESSARY THAT SAID INDIVIDUAL BE GIVEN THE MIRANDA WARNINGS AND ANY STATEMENTS THAT HE MAKES UNDER SUCH CIRCUMSTANCES MAY BE USED AGAINST HIM AT A SUBSEQUENT TRIAL.

Det. Leo Allen of the Cleveland Police Department Homicide Unit, testified at trial for the prosecution concerning, inter alia, oral statements made to him by the defendant-appellant at the time that he informed defendant-appellant that his wife's body had just been identified at the Cuyahoga County Morgue. The officer testified that, at the time the defendant-appellant made the complained of oral statements, there was no evidence, to his knowledge, to link the defendant-appellant to the crime. There is no evidence in the transcript that the defendant-appellant was placed under arrest at this time or that he was in any way restrained of his liberty. In the landmark case of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), the U.S. Supreme Court stated:

> "...the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstartes the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444.

The key words in the foregoing quote are "custodial interrogation", which the court goes on to define as follows:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

Applying this definition to the facts at bar, it is readily apparent that Det. Allen had not taken the defendant into custody at the time that the defendant made the oral statements. Thus, it was not necessary that the defendant be apprised of the warnings required by Miranda.

The interview conducted by Det. Allen was entirely investigative in nature and was carried out before any legitimate suspicion had focused on the defendant. The Miranda decision takes specific note of such investigative procedures:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime... Such investigations may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding." 384 U.S. at 477
>
> "...Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." 384 U.S. at 478

By way of further explanation of the term "custody", the case of People v. Glover, 276 N.Y.S. 2d 461, presents this test:

> "...in the absence of avowed intention (more often than not), a finding of 'custody' depends on the subjective intention of the police officers. This in turn depends at times on how much knowledge the police possess (not always reflected on the record) and, at others, on whether the course of police interrogation appears to be routine investigation or questioning aimed at eliciting a confession or admission." 276 N.Y.S. 2d at 465.

A complete reading of this record concerning the interview of the defendant conducted by Det. Allen (R. 411-412,417-420) produces no evidence that the officer attempted, at any time, to elicit either a confession or an admission. In view of the totality of the circumstances surrounding the oral statements made to Det. Allen, it is obvious that they were admissible

in evidence and the trial court properly so ruled.

PROPOSITION OF LAW NO. III

WHERE THE EVIDENCE PRESENTED BY THE STATE ESTABLISHES ALL OF THE REQUISITE ELEMENTS OF AGGRAVATED MURDER, BUT NOT THOSE OF VOLUNTARY MANSLAUGHTER, IT IS NOT ERROR FOR THE TRIAL COURT TO ALLOW THE JURY TO DELIBERATE ON THE CHARGE OF AGGRAVATED MURDER AND REFUSE TO ALLOW THE CONSIDERATION BY THEM OF THE LESSER BUT INCLUDED CHARGE OF VOLUNTARY MANSLAUGHTER.

The trial court in the instant case, after hearing all of the testimony and seeing all of the exhibits, found that there was "no evidence to meet any one of the elements of voluntary manslaughter..." (R. 647). Under those circumstances, it was unnecessary for the trial court to include in its instructions to the jury a charge on voluntary manslaughter.

The law in Ohio on this matter is well stated in the case of State v. Allen, 73 O.L.Abs. 398, 133 N.E. 2d 167 (1956). In that case the court made the following pronouncements:

> "Where there is, as here, no evidence of manslaughter in the trial of an indictment for murder in the first degree, it is not incumbent upon the judge to give to the jury an instruction on such subject." 133 N.E. 2d at 170.
>
> "Sec. 2945.74, R.C., does not require, in the face of no evidence that instruction be given as to all included offenses." 133 N.E. 2d at 170

The defense implied that the defendant had come home on the evening prior to his wife's death and found her in a compromising position with another man. It further implied that this event may have caused the defendant to fly into a rage and kill her some 9 to 10 hours later. There was, however, no evidence presented to the trier of the facts in support of the implications raised by the defense. In the absence thereof, it would have been error for the trial court to instruct the jury on the law of

voluntary manslaughter. See, Bandy v. State, 131 N.E. 499 (1921) at 504; State v. Kuchmak, 159 Ohio St. 363, 112 N.E. 2d 371 (1953); State v. Rogers, 64 O. App. 39, 27 N.E. 2d 791 (1938).

The prosecution in the case at bar presented evidence that the defendant-appellant threatened his wife's life not more than 13 1/2 hours before she was found dead. Evidence was submitted that he was the last person to be seen with her alive. It was shown that her body, along with a substantial amount of bedding from their apartment, was found 3 1/2 hours after they were last seen together. It was displayed that the defendant-appellant, in two inconsistent statements to the police, denied in detail being at his apartment at the crucial time that eye witness testimony had him carrying a bundle therefrom. The defendant-appellant was described by witnesses as unconcerned at his wife's disappearance and unmoved by her death. This circumstantial evidence combined to exclude every reasonable hypothesis except that of the defendant-appellant's guilt. State v. Gossett, 26 Ohio Misc. 163 (1970).

There was evidence presented by the State as to every essential element of the crime of aggravated murder. It would, therefore, have constituted error for the trial court to have removed aggravated murder from the jury's consideration. State v. Brown, 102 O. App. 113 (1956).

## CONCLUSION

All of the propositions of law upon which the appellant relies have been properly examined and rejected by the court of original jurisdiction and the Court of Appeals. No showing of error has been made to dispute the findings of those lower courts. Nor has any novel development been advanced.

It is, therefore, the position of the appellee that appellant's request that he be granted leave to appeal should be denied.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
RONALD B. ADRINE
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
Criminal Courts Building
1560 East 21st Street
Cleveland, Ohio 44114

SERVICE

A copy of the foregoing Memorandum Opposing Jurisdiction has been mailed this 23rd day of June, 1976, to Peter Hull, Engineers Building, Cleveland, Ohio, 44114, and Robert L. Miller, White, Milano, Jurek & Miller, 1310 Standard Building, Cleveland, Ohio, 44113, Attorneys for Defendant-Appellant.

[signature]
Assistant Prosecuting Attorney

FILE

68935

| STATE OF OHIO VS | CRIME | DATE OF CRIME | DATE OF ARREST |
|---|---|---|---|
| ISIAH ANDREWS | AGG MURDER | 9-18-74 | 9-23-74 |

The below named persons made statement in connection with above case.

COMPLAINANT

Coroner's Office

STATE OF OHIO
(REGINA ANDREWS dec)

WITNESSES

BETTY MARIE WORTHY ✓

OFFICERS

✓ DET. ROWELL 1606
✓ DET. HUBBARD 1673

Check one of the three below.

| DEFENDANT | ADMITS | DENIES | REFUSES |
|---|---|---|---|
| | | XXXX | |

WANTED

71-2093

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CASE NO. CR 17902

STATE OF OHIO )
Plaintiff-Respondent )
vs. )
ISAIAH ANDREWS )
Defendant-Petitioner )

MOTION FOR SUMMARY JUGDMENT

Now comes John T. Corrigan, Prosecuting Attorney of Cuyahoga County, and respectfully moves this Court, pursuant to Civil Rule 56, for an order dismissing the complaint for post-conviction relief and for entry of summary judgment in favor of the State of Ohio.

This Motion for Summary Judgment is made on the ground that there is no genuine issue as to any material fact and that the moving party, the State, is entitled to judgment as a matter of law as shown by the pleadings, the attached brief, and the attached affidavits, and for other reasons more fully stated in the attached brief.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: ______________________
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent
The Justice Center
1200 Ontario
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Motion for Summary Judgment has been mailed this 22nd day of June, 1978, to Mr. Isaiah Andrews, Defendant-Petitioner, #141-345, Southern Ohio Correctional Facility, P.O. Box 45699, Lucasville, Ohio, 45699.

______________________
Assistant Prosecuting Attorney

BRIEF

On January 12, 1975, the Cuyahoga County Grand Jury, in the State of Ohio, indicted the defendant-petitioner for one count of aggravated murder, Ohio Revised Code, Section 2901.01. The petitioner plead not guilty at his arraignment on January 24, 1975. A jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975. On March 12, 1975 the jury found the petitioner guilty as charged and the court sentenced him to life imprisonment. From that verdict and judgment the petitioner appealed to the Eighth District Court of Appeals. On March 18, 1976 that Court affirmed the judgment of the trial court. The Ohio Supreme Court, on September 24, 1976, denied petitioner's Motion for Leave to Appeal. A petition for post-conviction relief is presently pending before this Honorable Court.

Matters which have been or should have been raised on direct appeal may be considered in post-conviction proceedings. State v. Perry, 10 Ohio St. 2d 175 (1967); State v. Duling, 21 Ohio St. 2d 13 (1970); State v. Wallace, Cuyahoga County, C.A. #35522, March 10, 1977. Allegations in the instant petition which are related to Rule 11 of the Ohio Rules of Criminal Procedure and to matters of record may not be considered in this post-conviction hearing.

The record clearly indicates that counsel zealously, earnestly, and intelligently represented the petitioner at all stages of the proceedings. Petitioner had effective counsel and substantial justice was done. State v. Lytle, 48 Ohio St. 2d 391 (1976).

In the instant case no substantive grounds for relief exist under the post-conviction statute and there has been no denial or infringement of constitutional or statutory rights rendering the judgment void or voidable under either the Ohio Constitution or the United States Constitution. See State v. Perry, supra; State v. Duling, supra; State v. Milanovich, 42 Ohio St. 2d 46 (1975); State v. Brown, 41 Ohio App. 2d 181 (1974).

CONCLUSION

Based on the facts of this case, the applicable law, the record of proceedings, and the attached affidavits, it is clear that the petitioner was afforded effective assistance of counsel. The State, therefore, respectfully requests that this Honorable Court dismiss this petition for post-conviction relief without a hearing. State v. Milanovich, supra at 50; State v. Mishelek, 42 Ohio St. 2d 140 (1975); State v. Hester, supra; State v. Myers, Cuyahoga County, C.A. #36370, July 7, 1977.

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes William L. Summers, the affiant herein, first being duly sworn deposes and states the following:

1) That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2) That the defendant was indicted on January 21, 1975, on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3) That affiant fully and properly investigated all charges against the defendant prior to trial;

4) That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5) That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the State;

6) That affiant fully informed the defendant of all facts and evidence related to the charge;

7) That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8) That affiant at no time attempted to coerce the defendant to plead guilty;

9) That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975.

10) That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

William L. Summers
WILLIAM L. SUMMERS

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to me and subscribed in my presence this 21 day of June, 1978.

NOTARY PUBLIC

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes JOHN HYLAND, the affiant herein, first being duly sworn deposes and states the following:

1. That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2. That the defendant was indicted on January 21, 1975 on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3. That affiant fully and properly investigated all charges against the defendant prior to trial;

4. That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5. That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the state;

6. That affiant fully informed the defendant of all facts and evidence related to the charge;

7. That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8. That affiant at no time attempted to coerce the defendant to plead guilty;

9. That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975;

10. That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

John P. Hyland
JOHN HYLAND

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to before me and subscribed in my presence this 22nd day of June, 1978.

Joseph J. Naegele
NOTARY PUBLIC

JOSEPH J. NAEGELE, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 R. C.

WLS:mo 1 and 2 cc 3-21-75

IN THE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | THE HON. FRANCIS SWEENEY |
| Plaintiff | ) | |
| -vs- | ) | NOTICE OF APPEAL |
| ISAIAH ANDREWS | ) | |
| Defendant | ) | |

***

Now comes the Defendant and hereby gives notice of appeal to the Court of Appeals from sentence and judgment of the Common Pleas Court of Cuyahoga County, on questions of law and fact in the above-entitled cause, entered by said trial court on March 12, 1975.

WILLIAM L. SUMMERS and JOHN HYLAND
Attorneys for Defendant
SUMMERS, POTTS, BURKE & HILDEBRAND
1020 Northern Ohio Bank Building
Cleveland, Ohio 44113
696-0727

SERVICE

A copy of the foregoing notice was mailed this ____ day of March, 1975, to JOHN T. CORRIGAN, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

WILLIAM L. SUMMERS

Sweeney

IN THE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | THE HON. FRANCIS E. SWEENEY |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | PRECIPE FOR TRANSFER |
| | ) | |
| ISAIAH ANDREWS | ) | |
| | ) | |
| Defendant | ) | |

***

TO THE CLERK OF THE COURT OF COMMON PLEAS:

Please prepare and file with the Sixth Circuit Court of Appeals, together with the papers originally filed in the above-entitled matter, a trasncript of the docket and journal entries.

Respectfully submitted,

WILLIAM L. SUMMERS and JOHN HYLAND
Attorneys for Defendant
SUMMERS, POTTS, BURKE & HILDEBRAND
1020 Northern Ohio Bank Bldg.
Cleveland, Ohio 44113
696-0727

IN THE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | THE HON. FRANCIS SWEENEY |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | MOTION TO APPOINT ATTORNEYS ON APPEAL AND |
| | ) | MOTION FOR STATE-FURNISHED TRANSCRIPT |
| ISAIAH ANDREWS | ) | |
| | ) | |
| Defendant | ) | |

***

Now comes the Defendant, ISAIAH ANDREWS, and respectfully requests this Court for an order appointing WILLIAM L. SUMMERS and JOHN HYLAND as attorneys to represent him on his appeal. This Defendant also respectfully requests this Court for an order requiring this State to supply the Defendant with a copy of the transcript as taken herein, for the purposes of said appeal, the costs of which are to be taxed to the costs of this action. The reasons for this request are:

(1) That the Defendant is now presently and will be until he is released from confinement, totally and completely without funds with which to pay either counsel for this appeal or for the purchase of the transcript.

WHEREFORE, Defendant requests this Honorable Court to grant an order appointing counsel for his appeal, and allowing costs of the transcript to be taxed as costs herein.

WILLIAM L. SUMMERS and JOHN HYLAND
Attorneys for Defendant
BY: WILLIAM L. SUMMERS
SUMMERS, POTTS, BURKE & HILLEBRAND
1020 Northern Ohio Bank Bldg.
Cleveland, Ohio 44113
696-0727

SERVICE

A copy of the foregoing motion was mailed this ______ day of March, 1975, to JOHN T. CORRIGAN, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

WILLIAM L. SUMMERS

CORONER'S OFFICE, CUYAHOGA COUNTY, OHIO

2121 Adelbert Road, Cleveland, Ohio

THE STATE OF OHIO
CUYAHOGA COUNTY } ss.

**REPORT OF AUTOPSY**

CASE No. 155306 AUTOPSY No. M-37769

I, S. R. GERBER, M.D., Coroner of Cuyahoga County, Ohio, Certify that at 9:50 A.M. on the 19th day of , 1974 in accordance with Section 313 13 of the Revised Code, of the State of Ohio, an autopsy was made or caused to be made on the body of:

NAME Regina S. Andrews STREET 640 East 107th Street also 3301 Euclid Avenue

CITY Cleveland COUNTY Cuyahoga STATE Ohio

Occupation Laboratory technician Nativity American Marital Status Married

and the following is a true and correct report of autopsy to the best of my knowledge and belief:

Sex Female Age 24 Color Colored

Complexion Brown Eyes Brown Hair Black

Teeth Good Weight 112# Height 56"

**MARKS AND WOUNDS:**

Multiple stab wounds of anterior neck.
Incised wounds of abdomen and right hand.
Abrasions of lips.
Scars of chest and right thigh
(See autopsy protocol for details of Marks and Wounds)

**ANATOMIC DIAGNOSES:**

1. Stab wounds (7) of anterior neck with transection of right common carotid artery and penetration of left common carotid artery:
   a) Massive cervical soft tissue hemorrhages.

2. Incised wounds (5) of abdomen and right hand.

3. Abrasions of lips.

4. Scars of chest.

5. Scar of right thigh.

**CAUSE OF DEATH:** STAB WOUNDS (7) OF ANTERIOR NECK WITH TRANSECTION OF RIGHT COMMON CAROTID ARTERY, AND PENETRATION OF LEFT COMMON CAROTID ARTERY, AND MASSIVE CERVICAL SOFT TISSUE HEMORRHAGE. EXSANGUINATION.
HOMICIDE

[signature], M.D.
Cuyahoga County Coroner

CR2

CORONER'S OFFICE, CUYAHOGA COUNTY, OHIO
2121 ADELBERT ROAD, CLEVELAND, OHIO

THE STATE OF OHIO
CUYAHOGA COUNTY } ss.

REPORT OF LABORATORY FINDINGS

CASE NO. 155306 AUTOPSY NO. M-37769

NAME Regina S. Andrews

Blood group: O Rh (D) positive.

Blood: alcohol--0.00%. Barbiturate--negative.

Bile: morphine--negative.

Gastric content: organic bases--negative.

[signature] M.D.
Cuyahoga County Coroner

CR 2-L

000183

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ISAIAH ANDREWS, | ) | |
| Defendant-Appellant, | ) | Case No. Cr. 17902 |
| -vs- | ) | |
| STATE OF OHIO, | ) | Motion For Transmission Of The Record |
| Plaintiff-Appellee. | ) | |

TO THE CLERK OF THE ABOVE NAMED COURT:

Please prepare and transcribe and transmits the record in the above named case to the Clerk of Court for the Cuyahoga County Court of Appeals for purposes of appeal taken thereon.

The record in question is those pleadings and motions and judgments contained within the file purs uant to the Petition To Vacate Judgment which was filed on June 13, 1978. Pleae transmit all the file relevant thereto to the Court above. Ohio Rules of Appellate Procedure, Rule 10 (B).

Respectfully requested,

Isaiah Andrews
# 141-345
P.O. Box 45699
Lucasville, Ohio 45699

000184

# FELONY ARREST
CLEVELAND POLICE DEPARTMENT

68935

or Bur. DB

| | | | | | |
|---|---|---|---|---|---|
| ME | ISIAH ANDREWS | ALIAS | | Comp.# | 51777 |
| ME ADDRESS | 3301 EUCLID | | | WT. CK.# | 32300 32865 |
| USINESS ADDRESS | NONE | | | C.P.D. # | M 11503 |
| D.O.B. 4-20-38 | City LESSEY | State | GA. | Case # | |
| Race C | Sex M | Married | YES | Cont. Date | |
| Height 5'11" | Weight 165 | Hair BK | Eyes BN | Amt. of Bond | |
| Occupation | LABORER | Soc. Soc # | 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 | Disposition | |
| Arrested At: | 3301 EUCLID #133 9-19-74 | Time | 12:50P M | | |
| Arrested By: | COWELL 1606 HUBBARD 1673 | | | Accident | Make of Auto |
| | | | | Lic. # | State |
| Date Charged | 9-23-74 | Time | 11:50 A M. | Dr. Lic. # | State |
| Booked By: (Name) | SIMS | # | 1032 | Rel. on Bond | Time M |
| | | | | Remarks - Photo | |

OFFENSE: AGGRAVATED MURDER(2903.01A  Warrant YES

Detail of Offense:
ON 9-18-74 ISIAH ANDREWS STABBED AND KILLED HIS WIFE REGINA ANDREWS AT 3301 EUCLID AND REMOVED HER BODY TO FOREST HILLS PARK

C OF C 71 - 128 REV.

000185

| SUBJECT OR CRIME | CENSUS TRACT | OCCURRED IN ZONE | REPORTING DATE | COMPLAINT NO |
|---|---|---|---|---|
| UNIDENTIFIED COLORED FEMALE, NOW IDENTIFIED | | 603 | 9-17-74 | 51777 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |
| **VICTIM** | **ADDRESS** | **PHONE** | | | | |
| REGINA ANDREWS (nee Mason) | 3301 EUCLID AVE #133 | 391-2500 | 24 | F | B | M |
| **REPORTED BY** | **ADDRESS** | **PHONE** | | | | |
| DET HICKS #901. | | | | | | |

ADDRESS OF OCCURRENCE: 300 yds South of Arlington Ave. - 100 yds West of Forest Hills Swimming Pool

TYPE OF PLACE:

TIME OF OCCURRENCE: Found at 3:00 P.M.   DATE OF OCCURRENCE: SEPTEMBER 18, 1974   DAY OF WEEK: WEDNESDAY

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

ADDITIONAL

FROM: UNIDENTIFIED COLORED FEMALE

TO: IDENTIFIED

The below victim was positively identified at the Coroners Office at 12:25 A.M. by victims brother REGINALD MASON.

VICTIM IDENTIFED AS    REGINAL ANDREWS (nee MASON) B-F-24-M
3301 Euclid Ave (Colonial Motel Apt 133)

Also present at the time victim was identified was her mother MRS. MARY L. MASON B-F-41 of 640 East 107th ST.

.......ADDITIONAL.......

| INVESTIGATING OFFICERS | CAR | ASSIGNMENT RECEIVED | OTHER |
|---|---|---|---|
| DET. HICKS #901    DET ALLEN #83 | 9240 | AT 12:30 PM | RADIO ☐ PHONE ☐ |

ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE

OFFICER MAKING REPORT | TAKEN BY | TIME | DATE

TELETYPED BY | TIME | DATE | TELETYPE NO

CLEVELAND POLICE DEPARTMENT    C OF C 71-R C-1    ORIGINAL INVESTIGATION REPORT

EXTRA COPY

000186

| SUBJECT OR CRIME | CENSUS TRACT | OCCURRED IN ZONE | REPORTING DATE | COMPLAINT NO |
|---|---|---|---|---|
| CANCELLATION OF AUTO WANTED HOMICIDE | | 603 | 9-19-74 | 51777 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 EUCLID AVE.#133 | 391-2500 | 24 | F | B | M |

| REPORTED BY | ADDRESS | PHONE |
|---|---|---|
| DET. WILLIAM HUBBARD #1673 | | |

ADDRESS OF OCCURRENCE / TYPE OF PLACE: 300yds. south of Arlington,100yds.west of Forest Hills Swimming Pool

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| FOUND AT 3:00 PM | SEPTEMBER 18th.,1974 | WEDNESDAY |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

CANCELLATION OF WANTED AUTO CANCELLATION OF WANTED AUTO

THE BELOW AUTO IS NO LONGER WANTED BY T HE HOMICIDE UNIT IN CONNEC-TION WITH THE ABOVE HOMICIDE,WILLIE WATTS the wanted male was arrested.

A BLUE COLORED AUTO BEARING OHIO LICENSE PLATES FY 9944.

CANCELLATION OF AUTO WANTED

HUBBARD ROWELL

| INVESTIGATING OFFICERS | CAR | ASSIGNMENT RECEIVED | OTHER |
|---|---|---|---|
| DET. W. HUBBARD #1673 DET. R. ROWELL 1606 | 923 F | AT ____ M | RADIO ☐ PHONE ☐ |

| ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE |
|---|---|---|---|
| | | [signature] | |

| OFFICER MAKING REPORT | TAKEN BY | TIME | DATE |
|---|---|---|---|
| William Hubbard [signature] | | | |

| TELETYPED BY | TIME | DATE | TELETYPE NO |
|---|---|---|---|
| | | | |

CLEVELAND POLICE DEPARTMENT C OF C 71-R C-1 ORIGINAL INVESTIGATION REPORT

000187

| SUBJECT OR CRIME | CANCEL SUSPECTED WANTED C/4 DEAD BODY FOUND HOMICIDE. | CENSUS TRACT | OCCURRED IN ZONE 603 | REPORTING DATE 9-19-74 | COMPLAINT NO 51777 |
|---|---|---|---|---|---|

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM REGINA ANDREWS | ADDRESS 3301 EUCLID AVE #133 | PHONE 391-2500 | 24 | F | B | M |
| REPORTED BY DET HICKS #901 | ADDRESS | PHONE | | | | |

ADDRESS OF OCCURRENCE: 300 yds South of ArlingtonAve - 100 yds West of Forest Hills Swimming Pool &

TYPE OF PLACE:

TIME OF OCCURRENCE: Found at 3:00 P.M. DATE OF OCCURRENCE: SEPTEMBER 18, 1974 DAY OF WEEK: WEDNESDAY

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

CANCEL SUSPECTED WANTED: CANCEL SUSPECTED WANTED:

The below suspected has been arrested and is no longer wanted;

ARRESTED: WILLIE H. WATTS, B-M-27-S, dob 9-17-47, of 12325 CASTLEWOOD AVE. CPD# 14106

Suspect arrested at 3:25 A.M. this date in his home in connection with this crime.

CANCEL SUSPECTED WANTED CANCEL SUSPECTED WANTED

| INVESTIGATING OFFICERS | CAR | ASSIGNMENT RECEIVED | OTHER |
|---|---|---|---|
| DET HICKS #901, DET ALLEN #83 | 9240 | AT 12:30 A M | RADIO ☐ PHONE ☐ |

| ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE |
|---|---|---|---|
| OFFICER MAKING REPORT | TAKEN BY | TIME | DATE |
| TELETYPED BY | TIME | DATE | TELETYPE NO |

CLEVELAND POLICE DEPARTMENT C OF C 71-R C-1 ORIGINAL INVESTIGATION REPORT

EXTRA COPY

000188

| SUBJECT OR CRIME | CENSUS TRACT | OCCURRED IN ZONE | REPORTING DATE | COMPLAINT NO |
|---|---|---|---|---|
| CHANGE OF TITLE<br>DEAD BODY(SUSPECTED HOMICIDE)<br>TO:HOMICIDE | | 603 | 9-19-74 | 51777 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 EUCLID AVE.#133 | 391-2500 | 24 | F | B | M |

| REPORTED BY | ADDRESS | PHONE |
|---|---|---|
| DET.HICKS #901 | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE |
|---|---|
| 300 YARDS SOUTH OF ARLINGTON,100 YARDS WEST OF FOREST HILLS SWIMMING POOL | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| FOUND AT 3:00PM. | SEPT.18,1974 | WEDNESDAY |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

CHANGE OF TITLE-------------DEAD BODY(SUSPECTED HOMICIDE)
NOW TO READ-----------------HOMICIDE.

Received a telephone call from DOCTOR BALRAJ who performed autopsy on above victim and the following are the results of her findings,VICTIM SUFFERED 7 stab wounds of front of neck perforating blood vessels causing bleeding which resulted in her death.DOCTOR BALRAJ officially ruled this a HOMICIDE.

As of this time DOCTOR BALRAJ has not finished her tests for any Sex Assault and this will be available tomorrow.

| INVESTIGATING OFFICERS | CAR | ASSIGNMENT RECEIVED | OTHER |
|---|---|---|---|
| CLARENCE JACKMAN,DET.#1393 | OFFICE | AT 11:55A. M | RADIO ☐ PHONE ☒ |

| ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE |
|---|---|---|---|
| | | | |

| OFFICER MAKING REPORT | TAKEN BY | TIME | DATE |
|---|---|---|---|
| | | | |

| TELETYPED BY | TIME | DATE | TELETYPE NO |
|---|---|---|---|
| | | | |

CLEVELAND POLICE DEPARTMENT C OF C 71-R C-1 ORIGINAL INVESTIGATION REPORT

EXTRA COPY

000189

| SUBJECT OR CRIME | CENSUS TRACT | OCCURRED IN ZONE | REPORTING DATE | COMPLAINT NO. |
|---|---|---|---|---|
| CHANGE OF TITLE HOMICIDE, ARREST & CLEAN-UP | | 603 | 9-23-74 | 5 1 7 7 7 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |
| VICTIM: REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |
| REPORTED BY: DET. HUBBARD #1673 | | | | | | |

ADDRESS OF OCCURRENCE: 300 YDS. SOUTH OF ARLINGTON-100YDS. W.OF SWIMMING POOL
TYPE OF PLACE:

TIME OF OCCURRENCE: FOUND AT 3:00 PM
DATE OF OCCURRENCE: SEPTEMBER 18th.,1974
DAY OF WEEK: WEDNESDAY

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

CHANGE OF TITLE — CLEAN - UP — CHANGE OF TITLE

FROM: HOMICIDE

TO: HOMICIDE, ARREST & CLEAN-UP

THE BELOW NAMED MALE WAS CHARGED THIS DATE WITH AGGRAVATED MURDER (RC-2901.01)BY CITY PROSECUTOR EVERET CHANDLER AFTER REVIEWING ALL OF THE REPORTS AND STATEMENTS IN REGARDS TO THIS HOMICIDE.

ISAIAH ANDREWS-C-M-36-D.O.B 4-20-38 of 3301 EUCLID AVE. #133, PHONE 391-2500, HE IS OUR C.P.D #R-11503.

THIS MALE WILL APPEAR IN POLICE COURT AT 9:00 A.M, SEPTEMBER 24th., 1974.

CLEAN - UP — CLEAN - UP — CLEAN - UP

1606

INVESTIGATING OFFICERS: HUBBARD DET.#1673 E. ROWELL DET.# 9237
ASSIGNMENT RECEIVED AT ____ M
OTHER: RADIO ☐ PHONE ☐

ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE

OFFICER MAKING REPORT: (signature) | TAKEN BY | TIME | DATE

TELETYPED BY | TIME | DATE | TELETYPE NO.

CLEVELAND POLICE DEPARTMENT — C OF C 71-R C-1 — ORIGINAL INVESTIGATION REPORT

EXTRA COPY

Ernie Rowell

I have
seen These.
Hubbard

Scientific Investigation Unit. 9/18/74

RE: Homicide of unidentified colored female. This female found wrapped in bed sheet, blanket, and pillow under her right arm. Assigned this date 9/18/74 with Detective Kane, and Ptlm. Crawford #2423. Investigation made on the scene at Forest hills Municipal Swimming Pool.

Body found at the southerly edge of the parking lot at this location, approximately 200 yards south of Arlington, on the westerly side of the pool.

Below is a drawing of the general area showing the body and the trace evidence that was gathered. This evidence being a pillow case with possible blood stains on same 21 feet north of the body position, and ten Plain Dealer newspapaers found 61 feet east of the body, with blood stains on these papers. These papers approximately 5 feet from each curb of the parking lot.

A total of twenty crime scene expos takem of this area- CS# 20402.




Det. Petrick _______________ #2287

Det. Kane _______________ #748

000192

TELETYPE

| SUBJECT OR CRIME | CENSUS TRACT | OCCURRED | REPORTING | COMPLAINT NO |
|---|---|---|---|---|
| SUSPECT WANTED FOR QUESTIONING DEAD BODY (SUSPECTED HOMICIDE) | | 603 | 9-18-74 | 51777 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| UNIDENTIFIED COLORED FEMALE | | | | F | B | |

| REPORTED BY | ADDRESS | PHONE |
|---|---|---|
| | | |

ADDRESS OF OCCURRENCE: 300 Yds. South of ARLINGTON-100 Yards WEST of FOREST HILL SWIMMING POOL

TYPE OF PLACE:

TIME OF OCCURRENCE: FOUND AT 3:00 PM

DATE OF OCCURRENCE: 9-18-74

DAY OF WEEK: WEDNESDAY

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

SUSPECT WANTED FOR QUESTIONING SUSPECT WANTED FOR QUESTIONING

THE BELOW NAMED MALE IS WANTED FOR QUESTIONING IN CONNECTION WITH THE SUSPECTED HOMICIDE OF AN UNIDENTIFIED COLORED FEMALE WHO WAS FOUND IN FOREST HILLS PARK.

WILLIE B. WATTS-C-M-27-5'10"-150lbs.-Md. Brown Skin-lived at 12325 CASTLEWOOD AVE., HE IS OUR C.P.D #141061.MIGHT BE IN A BLUE COLORED CAR. BEARING OHIO LICENSE FF-9944 (NO LISTING). IF THIS AUTO IS FOUND ALL PERSONS ARE TO BE HELD FOR QUESTIONING.

ALSO LEARNED FROM HIS MOTHER THAT HE IS A.W.O.L FROM THE ARMY.

SUSPECTS WANTED FOR QUESTIONING

Broadcast Requested and All Points Bulletin sent

Sgt D.

| INVESTIGATING OFFICER | CAR | ASSIGNMENT RECEIVED | OTHER |
|---|---|---|---|
| DET. W. HUBBARD#1673 DET.E. ROWELL#1606 | 9236 | AT ____ M | RADIO ☐ PHONE ☐ |

| ALSO INVESTIGATED BY | OTHER UNITS NOTIFIED | APPROVED BY | DATE |
|---|---|---|---|
| | | | |

| OFFICER MAKING REPORT | TAKEN BY | TIME | DATE |
|---|---|---|---|
| [illegible signature] | | | |

| TELETYPED BY | TIME | DATE | TELETYPE NO |
|---|---|---|---|
| | | | |

CLEVELAND POLICE DEPARTMENT C OF C 71-R C.P. ORIGINAL INVESTIGATION REPORT

EXTRA COPY

Mr Adrine,

Hearing in the Ct of Appeals

RE: Isiah Andrews

CR. 17902

C of A. # 34620

Thurs. Feb. 12, 1976 @ 1:30 p.m.

Check Blood
against victim
& suspect.

000195

5599

FORM 60-3

PROP. ROOM

UNIT DIST. S.I.U. DATE 9-18-74 No. 5599

ARTICLE (DESCRIBE) — 3 - PLAIN DEALER

DATED 8-26-74

OWNER — UNKNOWN

USED BY STOLEN BY FOUND BY

AGE

CHARGE HOMICIDE DATE 9-18-74

REMARKS

(IN CONN. WITH) REGINA ANDREWS

~~ARRESTED BY~~ 2423

CONFISCATED BY DET. KANE - PATRICK & PTL CRAWFORD

OFF. IN CHARGE— OVER

EVIDENCE (X) CONFISCATE ( ) RET. TO OWNER ( )

Grand Jury and to you.

4. Betty Worthy

a) Part-time maid at Colonial House Motel. Not on payroll. worked for room + board. Saw Δ + victim standing in doorway of apt. talking at 11:00AM on 9-18-74, after 10 min., saw Δ go in room and ~~[illegible]~~ slam door, heard T.V. get very load (unusual). 10 min later saw Δ come out and opened trunk of his car. Returned to room and brought out large oblong bundle wrapped in plastic. Apparently heavy. Made rear of car bounce when he dropped it in. Saw him stand in door as if talking. No response. She walked past ~~his~~ Δ room and noted that there was no linen on bed. Later told Dets. of missing linen + pillow. Was asked some embarrasing questions, but did not lie. (Admits to Δ about V. [illegible])

5. Reginald Mason

a) Victem's brother. Told of going to Δ's apt. Conversation between Δ + his mother. Strange behavior of Δ. Δ claimed to have showered in the apt. at 12 or 12:30PM on the 18th Sept. [illegible] Bed was completely made. Sister was not Muslim and disliked some of their customs especially the female attire. Went to morgue + I.D. sister's body

6. Mary Orstendorf

a) family friend. Spoke of the kind of person the victem was. [illegible] at 10:30PM, transport to Δ's apt. Comment on strange behavior of Δ. Cool, Calm, Collected. Accusations of mother. Not [illegible] on bed, Clothes in bags. Immaculate Bedroom-tight [illegible] bounce a quarter. Bathroom completely clean and dry as though wiped. Anxity caused by Δ's demeanor (T.V.) particularly when mother started to turn down bed (controlled) Took family to police station + to morgue. On way out Δ spoke to white woman, standing with Black woman. Heard inquiry about victem

7. Jesse Byans

a) Arrived at Forrest Hills park at 2:30PM on 9-18-74, saw bundle when he arrived. Half hour later at 3:00PM went to investigate, found [illegible]

✓43. He stood by the door with his arms crossed the entire time they were there

✓44. At one point the family friend became alarmed at the look in the Δ's eyes when the victem's mother began to fiddle with the bed

✓45. Family friend had earlier sat in a chair that had a pair of men's trousers draped over its back. She accidently leaned back on them and found them to be completely wet.

46. Family found the bedroom and the bathroom areas to be immaculate but the kitchen was a mess. A condition inconsistant with the victem's character

✓47. Family then left and went to the morgue where victem's brother identified her body

✓48. Maid identified bedding as being similar to motel's

50. Bro. talked to Δ next day told him had found wife dead; no emotion

✓51. Stab defects in sheets

Co. Coroner's Office

1. Name

2. Employed? By whom? How long? Title? Duties?

3. Education and special training which qualify you for this position

Miss Campbell

4. Testified before? How many times?

5. Are you here today by subpeona?

6. Were you asked to bring anything with you?

7. ~~Do~~ To whom do those records pertain?

8. Did you personally conduct the ~~investigation~~ examination which resulted in those reports

9. Was your investigation conducted and were these reports prepared in the ordinary course of business at the coroner's office?

10. When were you first called to examin~~ation~~ the articles found with the body of Regina Andrews? Where ~~was it~~ were they when you first saw them?

11. ~~Relate to court what your first observations were~~ and ~~what subsequent~~ examinations and finding you made

12. Relate to the court what tests you made

13. What do these tests consist of

Isiah Andrew

Closing Argument

1. What has evidence been?
2. At 11:00AM on Sept. 18, 1974 at the Colonial House Motel located at 3301 Euclid Ave. in Cleve., O., Δ killed his wife, wrapped her body in the bedding and put her body in the trunk of his car. From there he took it to Forrest Hills park where it was dumped.
3. How have we gone about proving these allegations?
   a) Nine witnesses + 49 exhibits
      1. quality as well as quantity, direct as well as circumstantial.
   b) Let's look at the testimony
      1. Co. Coroner's Office
         a) victim died as result of having left + right carotid arteries severed + nearly severed. Death almost immediately. Eighteen other stab wounds about the abdomen. cut on hand. Bruises on lips consistent with being punched in mouth. Rigor Mortis controversy. (Time of death + "Instant Rigor")
      2. Trace Evidence
         a) match of holes in nightgown with holes in abdomen. All clothes above waist, Caftan bunched around chest and neck. Cuts on either side of top of Caftan consistant with any of the wounds on the victim's neck. Sperm
      3. Linda Cloud
         a) Next door neighbor. Saw Δ the night before murder with victim. Heard him tell her, matter-of-factly, "Bitch, you know I'm going to kill you." Not wishing to get involved and having been insulted by someone who may or may not have been a Cleve. Pd. officer, Linda Cloud held back in her written statement and declined to amend it. However she did agree to tell the complete story to the

8. Det. Allen – First investigating officers.
a) Talked to family in early morning of Sept. 19th. Conveyed some members to morgue to I.D. body. Then went to see Δ. He told them he had left home on 18th before 8:00AM. Returned home ~~before~~ about 10:30 wife not home. He was cool calm and collected at this time, too. When told wife of one month was found dead his reply was "Oh, Really?"

9. Det. Hubbard
a) Saw body at scene where dropped. Interviewed Δ. Third version of where he had been on morning of 18th. Laid out in percise detail. This time left motel at same time but couldn't return to room at 12-12:30PM because he had misplaced key. Knew wife was going shopping. Left premisis didn't return until 4:00 when he got key from room clerk. Written statement conformed to last version. Demeanor at this time was still very cool calm and collected. Δ + victim had sex night before
To Morgue; Problems - Religion, Money, Job
Check

10. Defense Witnesses

Betty unreliable but honest

11. Conclusions
1. Questions that must be asked.
a) How do you resolve the three versions of Defendants story
b) What reason would Betty + Linda have to lie
c) Who stood to gain by the removal of body from room
d) How could Δ remain so calm in face of wife's brutal murder

Extra Padding

12. Witness testimony unrebutted. Victim was seen alive at 11:00AM 9-18-74 at the Colonial House Motel. The last person she was seen with was her husband who ~~now~~ denies that he was with his wife at that time on that date. It is further unrebutted that the Δ threatened his wife's life the night before the actual murder. Thereafter he set out carefully + meticulously planned her demise and the disposal of her body. Attacks have been made on the flanks of the eyewitnesses' credibility, but the defense has been unable to mount ~~an~~ ~~[illegible]~~ a frontal attack on the facts.

Clothes in a hole-filled trunk
News. Paper to cover holes

Isiah Andrews

1. Concerned with the events which lead to the death of Regina Andrews on Sept. 18, 1974 at the Colonial House Motel, suite #133, 3301 Euclid, Clev., Cuy., Oh.
✓ 2. Regina married her husband, the Δ, Isiah Andrews on Aug. 24, 1974 after a whirlwind courtship that began approximately 35 days earlier
✓ 3. The Andrews' brief married life was marked by a number of disagreements. Primarily over religon and money matters.
✓ 4. Δ was a believer in the teachings of the Black Muslim religion, although not officially a member.
✓ 5. He attempted to love his wife adopt his religion, but she rejected much of it.
6. Δ and his wife disagreed about his method of making a living
✓ 7. He quit a job in order to become a self-styled salesman; Sold clothes to the local Black Muslim Community; bought fish from them which he then re-sold to businesses or individuals
8. Δ and his wife disagreed over $70 which he accused her of misusing or mislaying
✓ 9. They argued over a check given to the Δ by ~~his w~~ the victim approx. a week prior to her death.
✓ 10. The Δ attempted to use the check to obtain clothes to be used in his sales business. When he found that there were insufficent funds funds in her account to cover the check, he openly expressed hostility toward her.
✓ 11. In early morning hours of Sept. 18, 1974, at approx. 2:00AM The Andrews next door neighbor who lived in suite #131 was sitting in her room with her door open, watching T.V.
✓ 12. She saw the Δ and the victim leave their apartment and get into the Δ's car.
✓ 13. Due to the ~~way~~ parking situation in the courtyard of the motel it was necessary that the Δ pull his car the ramp into the parking garage in order to have enough room to turn around and head out toward the street.
✓ 14. The neighbor's curiosity got the best of her and she peered out of her doorway and over the rail which guarded the ramp

to the garage

√15. She got to rail just in time to see the Δ stop his car half-way down the ramp, get out of drivers side walk around to the passenger side, open the door and tell his wife "Bitch, you know I'll kill you!" After which he got back in car + they drove off

√16. At that point, the neighbor retreated back into her room, where she eventually went to bed. She did not awaken until 11:00AM the maids for the motel knocked on her door.

√17. The maid who ~~crossed the c~~ woke the Andrews' neighbor then walked accross the courtyard and ~~another~~ struck up a conversation with another maid who was standing in front of room #138

weather Conditions Clear, 61°

√18. While they were talking, this maid noticed the Δ and the victim standing in the doorway of room #133 having a heated discussion

Victim in blue negligée

√19. She saw the Δ come out of the room and slam the door. After a couple of seconds, she saw him return inside.

√20. At that point she heard what she thinks was a T.V. set turned up to near top volume The time was approx. 11: AM [illegible]

√21. Some 10 min. later she saw the Δ come out of room #131 and go to his car, park two rooms away.

√22. She observed him open the trunk of his car and then return to his room

bags in office on demand?

√23. Approximately 10 min. later the maid again saw the Δ leave room #133. This time he was carrying a long oblong bundle encased in a large plastic bag slung across his shoulder.

√24. The bundle appeared heavy to the maid because of the manner in which the Δ carried it.

√ 29A ~~25~~. The maid, walked around to the side of the motel that room 133 was on and as she walked she ~~from where she was standing~~ could see into room #133 because the Δ had left the door ~~it~~ open and was standing in the doorway talking into the room ~~when he brought the bundle out~~. In so looking she saw something odd - the bed was devoid of linen

√29B ~~26~~. She found this odd, also because the Andrews' room didn't recieve maid service, which was an option at the Motel.

√27. The maid saw the Δ carry bundle which he removed from the room, out to the open trunk of his car.

√ 28. She saw the rear of the car bounce from the weight of the package when the Δ dumped it in the trunk

√ 29. The Δ stood and glared at the maid after he closed his trunk and then returned to the doorway of his room.

~~30. The Δ stood outside and spoke into room #133, whose door was still open which the maid thought was odd behavior on his part~~

identify √ bedspread & pillow extra bedspread bedding?

√ 30. The maid found, ~~this~~ his behavior too odd, because the Δ and the victim had never carried on a conversation in this manner before. Plus, she never heard the victim make any response from within the room

√ 31. At approx. 2:30 PM on Sept 18, 1974, Jesse Byous and a friend met at Forrest Hills Park, located at Thornhill & Arlington in the city of Cleveland

32. He noticed a bundle of what he took to be rags when he first arrived.

33. Some 30 minutes later as he prepared to leave the park, he decided to investigate the bundle to see if it contained anything.

34. He discovered the body and called the police

35. Police arrived. Scoured the scene for evidence. Found body wrapped in a bedspread, 2 sheets, a house coat, a shorty nightgown, and a pillow, a mattress cover, and a towel

36. Found close to the body was ~~another~~ a blood stained pillow case

37. Cause of death, seven stab wounds of the neck

√ 38. At about six o'clock p.m. the Δ called the victim's mother and reported to her that she had failed to return home

√ 39. Later that evening the victim's mother was able to obtain a ride from a family friend and she, the friend, the victim's brother, and 2 of her cousins all went to the Colonial Motel, where they confronted the Δ.

√ 40. He informed them that he had not seen his wife since 8:00 AM that he had returned to the room at 12-12:30 PM ~~taken a shower~~ found his wife gone, taken ~~what~~ a shower, and gone back

√ 41. The victim's mother became concerned at the Δ's lack of concern about his missing wife. At one point she accused him of harming her daughter, a charge he never denied

√ 42. The friend of the family was made uneasy by the Δ's behavior.

Cuyahoga County Common Pleas

| THE STATE OF OHIO<br>VS.<br><br>ISIAH ANDREWS | A TRUE BILL INDICTMENT FOR<br><br>AGGRAVATED MURDER R.C. 2901.01 |
|---|---|

| DATE OF OFFENSE | THE TERM OF | CASE NO. |
|---|---|---|
| September 18, 1974 | JANUARY OF 1975 | |

The State of Ohio, } ss.
CUYAHOGA COUNTY }

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, **IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO,** Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully and purposely and with prior calculation and design, caused the death of another, to-wit: Regina Andrews

*Colonial House Motel - 3301 Euclid Ave.*

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

Foreman of the Grand Jury

*John T. Corrigan*
Prosecuting Attorney.

THE REYNOLDS & REYNOLDS CO. DAYTON OHIO LITHO IN U.S.A.

...TMENT - STATE'S COPY

CC-1-C

000205

# PRECIPE
# CRIMINAL CASE

12/11/74

No. CR 16694 Jdg. Jaffe Rm. 12

THE STATE OF OHIO, Plaintiff

vs.

ISIAH ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
|---|---|
| ✓ ~~JESSE BYONS~~ | 11616 Durant Cleveland, Ohio 44108 |
| ~~MARY SMITH~~ | 3376 E. 128th Street Cleveland, Ohio |
| ~~CHAS. GALLOWAY~~ | 3595 E. 65th Street Cleveland, Ohio |

BEFORE YOU REPORT, PLEASE CALL 521-5800, EXT. 301, 302, OR 771-4060 SO AS TO FIX THE EXACT TIME.

ASST. CTNY. PROSECUTORS
JOSEPH GIBSON AND TIMOTHY TAYLOR AND DAVID BORLAND

To appear on the ~~20th~~ 13th day of December 19 74

at ~~o'clock M.,~~ to testify on behalf of PLAINTIFF—DEFENDANT.

JOHN T. CORRIGAN Attorney for STATE OF OHIO

CC-1-C

11/21/74 000206

# PRECIPE
# CRIMINAL CASE

No CR 16694 Jdg. Jaffe Rm. 12

THE STATE OF OHIO, Plaintiff

vs.

ISIAHA ANDREWS Defendant

TO CLERK. Issue Subpoena to Sheriff of Cuyahoga County for the following witnesses, to-wit:

| NAME | ADDRESS |
|---|---|
| ✓ CO. CORONER | RE: Regina ~~Andrews~~ Andrews 9-18-74. |
| ○ BETTY MARIE WORTHY | 3301 Euclid Avenue #267 Cleveland, Ohio 44115 |
| ✓ DET ROWELL #1606 | Homicide |
| ✓ DET. HUBBARD #1673 | " |
| ✓ MARY OSTENDORF | 1853 Page Avenue Cleveland, Ohio |
| ✓ MARY L. MASON | 640 E. 107th Street Cleveland, Ohio |
| ✓ REGINALD MASON | " " |
| | |
| | |
| | |
| | |
| BEFORE YOU REPORT, PLEASE CALL 621-5800, EXT. 301, 302, OR 771-4060 SO ~~AS TO FIX~~ THE EXACT TIME. | ASST. CNTY. PROSECUTORS TIM TAYLOR AND JOSEPH GIBSON AND DOUG GLENN |

To appear on the 16th day of December 19 74

at ________ o'clock ________ M. to testify on behalf of PLAINTIFF—DEFENDANT.

JOHN T. CORRIGAN Attorney for STATE OF OHIO

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000207

SUBJECT or CRIME

DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM RAGINA ANDREWS | ADDRESS | PHONE | | | | |

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 3 OF 3 PAGE REPORT. FOLLOW-UP REPORT ☒

6-16-14, 16202 Tarkington Ave. 587-2496 and ... ... 56 ... ... 5024-18, 10206 Parkgate Ave. 851-1349 and ... ... 1375 W. 6th St. All employees of Jay Vee's Clothing. Learned that The store was opened at 8:50 AM and that I. Andrews came in and bought some clothes, further that he later returned at about 12:30 PM and returned some of the clothes. Further learned that this male came in on Friday, September 13, 1974 and gave the store a check for $600.00, this check bounced and Andrews told Vengg that this could not be because his wife had put the money in the bank. It was later found that she had not put money in the bank.

We contacted SIU and had the victims motel room checked for Blood also check was was the auto of Isaiah Andrews a 1971 Ford Four door, Ohio License DE 4899 with negative results.

We later learned that the victim had asked and received a second BED SPREAD, further that there is always a third pillow in a HIDE-A-BED in the victims apartment. The second spread and pillow are missing from the room. Mr. Andrews stated that when he returned home at 4:00 PM Wednesday the bed was made up and nothing seemed to be wrong or missing from the room.

Andrews and the victim have been married since August 24, 1974, he stated that they have argued about his joining the Muslim faith, the part about her having to wear long skirts and headdress, she also was upset about his quiting his job (He resently quit and started selling clothes and fish for the Muslims).

It would appear that Isaiah Andrews killed his wife in their apartment and carried her to the spot where she was found. Returning home he was able to clean up to the point that SIU was unable to find any evidence of a crime having taken place in the room. It is our opinion that no one else would benefit by moving the body from the motel room after killing the victim but Andrews.

ANDREWS WAS ARRESTED AND HELD FOR INVES. C/W THIS CRIME.

...ELL HUBBARD

COF C71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | DAYS | 9237 | |

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED
COMPLETED

Case: 1:22-cv-00250-JG Doc #: 99-1 Filed: 02/28/23 344 of 768. PageID #: 2078

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000208 COMPLAINT NO.

**SUBJECT or CRIME** DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| [illegible] | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | | |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 2 OF 2 PAGE REPORT. FOLLOW-UP REPORT [X]

With the arrested [illegible] at the [illegible] Zehnders [illegible] on [illegible]day, Sept 17. [illegible] he left [illegible] driving his [illegible] to a 1972 [illegible] color, [illegible] license [illegible] 9994.

[illegible] was released from his arrest [illegible] c/o [illegible] being held by the [illegible] Unit, Det. [illegible].

Learned from Det. [illegible] that when he [illegible] the [illegible] of the victim at the morgue [illegible] that she had [illegible] early Wednesday morning. [illegible] that she died [illegible] between [illegible] Wednesday morning.

It is our belief that [illegible] cover of darkness carried [illegible] to the closest point to [illegible] where [illegible] the [illegible] would [illegible] body. [illegible] to [illegible] his door and pretended to be talking to [illegible] the time [illegible] indicated to establish that his [illegible] still [illegible] at this time.

[illegible] at the Federal Parole Authority [illegible] advised us that [illegible] had a file in [illegible] of [illegible] on activity parole. He was sentenced to life for the murder of [illegible] at Camp LeJeune, North Carolina, January 10, 195[illegible].

[illegible]: Day platoon, pick up [illegible], [illegible] Euclid [illegible]267, at 10:00 AM, Saturday, September 21, 1974 convey her to the Criminal Statement Unit and get her statement.

[illegible] [illegible] C OF C 71 – 10

INVESTIGATING OFFICERS

| PLATOON | CAR | APPROVED BY |
|---|---|---|
| D.X. | 9237 | |

WEATHER [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP ______ ° WIND ______

[ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED
COMPLETED

000209

# SUPPLEMENTARY REPORT
## CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME: HOMICIDE DATE OF THIS REPORT: SEPT. 21,1974

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| 300YDS. SOUTH OF ARLINGTON-100YDS. | WEST OF FOREST HILLS SWIMMING POOL | 603 |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| FOUND AT 3:00 PM | SEPTEMBER 18th.,1974 | WEDNESDAY |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF 1 PAGE REPORT. FOLLOW-UP REPORT XXXX

While assigned to car 9237 this date, alone, I further investigated the above homicide of REGINA ANDREWS.

I went to 3301 Euclid Ave. and there I interviewed a BETTY WORTHY who lives at this address and is also employed as a maid there.She then told me that she had seen the suspect ISAIAH ANDREWS at his apartment on the 18th of September on a Wednesday around 11:00 AM. She said that she now it had to be around 11:00 AM because she had just went back to room #131 to call a MRS. CLOUD whom she was to wake-up at 11:00 A.M. She stated that she had observed him standing in his door way talking with his wife at this time. She stated that he then stepped out side for a second after slamming the door real hard, and he then went back into the apartment.After he re-entered the apartment the T.V became real loud and a short time later MR. ANDREWS came out carrying a plastic bag over his shoulder like what ever was in it was real heavy. He then went to his car and placed this bag in to the trunk of his car, closed the trunk XXXX and then went back in to the house. A few minuets later he appeard in his door way again, and while standing there he appeared to be talking to someone in the room. She said that she noticed that at the same time appeared to be watching her. He then closed the door and left.

NOTE: THIS WAS THE TIME OF DAY THAT ANDREWS SAID THAT HE HAD RETURNED TO HIS APARTMENT BUT HE COULD NOT GET IN BECAUSE SHE WAS NOT AT HOME AND HE DID NOT HAVE A KEY, SO HE LEFT WITHOUT ENTERING THE ROOM.

This female (BETTY WORTHY) was conveyed to the COUNTY MORGUE where she viewed the bedding that was found with the body of REGINA ANDREWS.She then identified the bed spred as belonging to the hotel but she could not say about the sheets & mattress cover. She did state that the pillow looked like one of there pillows, but she was not for sure. She said that she had issued two XXXXXX to MRS. ANDREWS, and there were at least three pillows. A check of this room showed only one bed spred and two pillows.This female was then conveyed to our Statement Unit where a statement was obtained. LINDA CLOUD SAID THAT SHE COULD NOT A STATEMENT UNTIL MONDAY.

I COULD NOT CONSULT THE PROSECUTOR THIS DATE AS IT WAS SATURDAY AND THEY CLOSE AT 12:00 noon.REQUEST HE BE CONTACTED SUNDAY, SEPT. 22,1974.

HUBBARD

C OF C 71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | DAYS | 9237 | |

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER TIME ASSIGNED ____ COMPLETED ____

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 52777

SUBJECT or CRIME [illegible] DATE OF THIS REPORT 9-20-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| [illegible] | 3301 [illegible] Ave. #133 | 391-2500 | 24 | F | [illegible] | M |

ADDRESS OF OCCURRENCE: 300 [illegible] [illegible] Ave. 100 [illegible]
TYPE OF PLACE: [illegible]
ZONE: [illegible]

TIME OF OCCURRENCE: [illegible] 3:00 [illegible]
DATE OF OCCURRENCE: [illegible] 16, 1974
DAY OF WEEK: [illegible]

SECURED BY — ADDRESS — PHONE — TIME — DAY — DATE

DISCOVERED BY — ADDRESS — PHONE — TIME — DAY — DATE

PAGE 1 OF 2 PAGE REPORT. FOLLOW-UP REPORT ☒

Assigned to car 9237 with DETECTIVE [illegible] to further investigate the above crime.

Conveyed the arrested ISAIAH [illegible] to CIU where a polygraph examination was conducted by DETECTIVE [illegible]. After talked with Det. Luckey who informed us that this male lied on almost every questions asked of him. He was asked "Did you kill your wife in your apartment and take her body to Forest Hills Park and leave her" his answer was negative, Det Luckey described the polygraph machines response as being most positive in indicating that he had lied.

We requested that Andrews make a written statement and he agreed. In his statement he told pretty much the same story as he had told us the previous day. Describing his trips around town, telling about which street he turned on etc. We asked him if he thought this type of statement was relevant in so far as his wife having ~~[illegible]~~ been murdered, his answer was positive. Throughout his statement he procrastinated and told many things unrelated to this crime.

We contacted LIEUTENANT [illegible] 41 [illegible], 2013 E. 92 St. 229-2115 [illegible] of Islam and learned from him that I. Andrews is not yet a Muslim and that he did in fact come by temple [illegible] twice yesterday.

Contacted [illegible] of the Colonial Hotel and re-questioned her and learned that at about 11:00 AM, Sept. 16 she saw I. Andrews standing in his doorway talking to someone or something, she is unable to say for sure if he was his wife he was talking to or not. She did say, however, that what ever he was talking to seemed to be wearing a headdress and attire of a Muslim Lady. She will make a statement on Saturday, Sept 21.

Earlier we contacted DONALD [illegible] [illegible] 9-4-49, 12326 Chesterfield Ave. and learned from him that he had in fact been

[illegible] [illegible] DET [illegible]

C OF C 71 - 10

INVESTIGATING OFFICERS

PLATOON: DAYS CAR: 9237 APPROVED BY: [illegible]

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____

☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED
COMPLETED

000211

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO.

SUBJECT or CRIME

DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM | ADDRESS 3301 | PHONE | | | | |

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE 1974 | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 1 OF ____ PAGE REPORT.

FOLLOW-UP REPORT

[illegible]

COFC 71-10

INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____

☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____

COMPLETED ____

Case: 1:22-cv-00250-JG Doc #: 98-E Filed: 02/28/23 348 of 768. PageID #: 2083

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000212

COMPLAINT NO. [illegible]

SUBJECT or CRIME [illegible]

DATE OF THIS REPORT [illegible]

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| [illegible] | 9303 [illegible] | 392-25[illegible] | 24 | | [illegible] | [illegible] |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| [illegible] | [illegible] | [illegible] |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| [illegible] 9:[illegible] | [illegible] 20, 1974 | [illegible] |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF ____ PAGE REPORT.

FOLLOW-UP REPORT [x]

[illegible] to car 9537 [illegible]

[illegible]

[illegible] 4577, [illegible]

[illegible] 9:[illegible] [illegible] 1974 [illegible]

COF C 71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| | [illegible] | 9537 | |

WEATHER [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP ____ ° WIND ____

[ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED ____
COMPLETED ____

# EXHIBITS

STATE'S: 1 — in

| | | |
|---|---|---|
| 1 to 13 (7-13 — in) | . . . . . . . . . . | Photographs |
| 14 | . . . . . . . . . . | Pegnoir and nightgown — in |
| 15 | . . . . . . . . . . | Pillow — in |
| 16 | . . . . . . . . . . | Hand towel — in |
| 17 | . . . . . . . . . . | Kaftan — in |
| 18 to 21 | . . . . . . . | Bedding in |
| 22 | . . . . . . . . . . | Pillow case in |
| ~~23 to 44~~ 23 to 27 — in | . . . . . . . | Photographs |
| ~~45 to 48~~ 25 to 48 | . . . . . . . | Newspaper and bags |
| 49 | | Statement of Def. — in |

DEFENDANT'S:

| | | |
|---|---|---|
| A | . . . . . . . . . . | Laundry tag |
| B | . . . . . . . . . . | Coroner's Verdict |
| C | . . . . . . . . . . | Statement of Linda Cloud |
| D | . . . . . . . . . . | Statement of Betty Worthy |

CR 17902 State of Ohio vs Isiah Andrews Jdg. Sweeney Rm. 1

| | |
|---|---|
| BETTY MARIE WORTHY | 2344 Prospect Avenue<br>Cleveland, Ohio |
| MARY OSTENDORF ✓ | 1853 Page Avenue<br>Cleveland, Ohio 44112 |
| MARY L. MASON | 640 E. 107th Street<br>Cleveland, Ohio |
| REGINALD MASON | " " |
| LINDA CLOUD | 1918 E. 86th Street<br>Cleveland, Ohio |
| JOHN SCOTT | 1669 Carlyon Avenue<br>East Cleveland, Ohio |
| MARY SMITH | 3376 E. 128th Street<br>Cleveland, Ohio |
| CHARLES GALLOWAY | 3597 E. 65th Street<br>Cleveland, Ohio |
| JESSE BYONS | 11616 Durant<br>Cleveland, Ohio 44108 281-55 |

Bailey Meter Co.
Wickliffe, Ohio
John Trino

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT
COUNTY OF CUYAHOGA

GERALD E. FUERST, CLERK OF COURTS

State of Ohio

APPELLee

COURT OF APPEALS NO. 34620

-vs-

Isiah Andrews

LOWER COURT NO. C. P. 17902 Cr.

APPELLant

MOTION NO. 34548

DATE OCT 14 1976

JOURNAL ENTRY

Motion by Robert L. Miller and Peter Hull, assigned counsel for appellant, for compensation and to tax as costs granted. Compensation fixed at Six Hundred Dollars ($600.00) for the appeal. Pursuant to R. C. §2941.51(C) said fees shall be paid by the County. Exc.

RECEIVED FOR FILING

OCT 14 1976

GERALD E. FUERST
BY Peggy Mazurek

PARRINO, P. J.,

DAY, J.,

KRENZLER, J., CONCUR

Thomas J. Parrino
PRESIDING JUDGE

THOMAS J. PARRINO

CC 89-1 C OF A

MAY - 9 '75

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

COUNTY, OHIO

NO. 34620

STATE OF OHIO )

Plaintiff-Appellee )

-vs- ) MOTION FOR EXTENTION OF TIME TO FILE BRIEF AND ASSIGNMENTS OF ERROR

ISIAH ANDREW )

Defendant-Appellant )

Now comes Peter H. Hull and Robert Miller, Attorneys for the Defendant-Appellant and respectfully request a thirty day extension of time to file the Brief of Appellant in the above entitled case for the reason that the transcript was filed late and the increase in workload of counsel for the Appellant.

Respectfully submitted,

Peter H. Hull
Attorney for Appellant
124 Engineer's Bldg.
Cleveland, Ohio 44114

SERVICE

A copy of the foregoing motion was mailed to John T. Corrigan, Prosecuting Attorney, 1560 East 21st Street, Cleveland, Ohio, 44114, this 8th day of May, 1975.

Peter H. Hull
Attorney for Appellant

## COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 34620

State of Ohio

PLAINTIFF - APPELLEE

-vs-

Isiah Andrews

DEFENDANT - APPELLANT

APPEAL FROM

COMMON PLEAS COURT

No. Cr. 17902

## JOURNAL ENTRY

DATE MAR 18 1976

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed. Each assignment of error was reviewed and upon review the following disposition made:

Defendant-appellant, Isiah Andrews, appeals from a judgment entered by the trial court after a jury found him guilty of one count of aggravated murder, Revised Code 2903.01

The defendant was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial House Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw the defendant appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning

2M 3/75

of September 18, she saw the defendant and his wife leave their room and get into their car, at which time she overheard the defendant tell his wife,"Bitch, you know I am going to kill you, don't you."

Betty Worth testified that she was working as a maid at the Colonial House Hotel on September 18, 1974 when, at about 11:00 a.m., she saw the defendant talking to his wife in the doorway of their room. Worth stated that she saw the defendant slam the door and go inside the room, whereupon a record player in the room was turned up very loud. Worth stated that approximately ten minutes later the record player was turned off and the defendant came out of his room, went to his car and opened its trunk; that the defendant then returned to his room and within a few minutes left carrying a large heavy object over his shoulder which he placed in the trunk of his car. Worth testified that she walked past the defendant's room and saw that the bed was stripped of all linen.

Regina Andrews body was found in Forest Hills Park in the afternoon of September 18, 1974 wrapped in bedroom linen. The linen was identified by Betty Worth as being the same type used in the Colonial House Hotel.

The jury found the defendant guilty of aggravated murder.

Defendant assigns the following as error:

> I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.
>
> II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda warnings.
>
> III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

to the defendant before he made the statement.

We reject the defendant's argument. The police are required to give Miranda warnings only after a defendant is taken into custody. As the United States Supreme Court stated "...we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed...." Miranda v. Arizona (1966), 384 U.S. 436, 478. Here the defendant was not in custody and Miranda warnings were not required.

III.

We find the third assignment of error to be without merit.

The Ohio Supreme Court, in State v. Nolton, announced the following rule on when the court must give a jury an instruction on a lesser included offense:

> "..., if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, then a charge on the lesser included offense is both warranted and required, ...." Nolton (1964), 19 Ohio St. 2d 133, 135.

The record before us contains no facts from which the jury could find that the defendant was guilty of the lesser included offense of voluntary manslaughter.[3/] There is no evidence that the defendant was "under extreme emotional stress brought on by serious provocation."

The court properly instructed the jury.

IV.

In the fourth assignment of error the defendant argues that the prosecution presented

---

3/ R.C. §2903.03 reads in part:
"Voluntary manslaughter.
"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

no evidence from which the jury could find that the defendant had killed his wife with "prior calculation and design," an element of the offense of aggravated murder, R.C. 2903.01, and that the court erred in allowing the charge of aggravated murder to go to the jury.

There is evidence in the record from which the jury could find that the defendant had killed purposefully after devising a plan or scheme to kill.[4/]

We find this assignment of error to be without merit.

V.

We find the fifth assignment of error to be without merit.

Under R.C. 2945.37 an examination into the sanity of a defendant is required only after a reputable physician certifies that the defendant is insane, or the grand jury finds the defendant to be insane. The record before us reveals neither a physician's certificate of insanity nor a finding by the grand jury of insanity. The trial court acted properly in not ordering a complete psychological examination.

Affirmed.

---

4/ The evidence on which the jury could depend and rely in finding that the defendant had killed his wife with prior calculation and design include: the threat against the deceased's life made by the defendant on the morning of September 18; the turning up of the record player in the defendant's apartment moments after the deceased was last seen alive; and the disposing of a large object by the defendant shortly after the deceased was last seen alive.

RECEIVED FOR FILING

MAR 18 1976

GERALD E. FUERST
By Peggy [signature]

It is ordered that appellee~~(s)~~ recover of appellant~~(s)~~ its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

JACKSON, C.J.,

MANOS, J.,

SILBERT, J., CONCUR.
(Silbert, J., retired judge of the 8th appellate district, sitting by assignment).

[signature: Leo A. Jackson]
PRESIDING JUDGE
LEO A. JACKSON

For plaintiff appellee: John T. Corrigan
For defendant appellant: Peter H. Hull

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

COUNTY OF CUYAHOGA | COURT OF COMMON PLEAS

STATE OF OHIO | Case No. 17902

State of Ohio | C. of A. 34620

vs

Isiah Andrews | INDICTMENT FOR:

Defendant | Aggr. Murder

---

January 21, 1975:
Indictment for: Aggr. Murder

January 23, 1975:
Cont. to January 24, 1975. Deft. a Fed. Prisoner
Application, Writ, and Order Grantin g Writ of Habeas Corpus filed

January 24, 1975:
Arraignment. Attys. W. Summers, J. Hyland assigned.
Ray Spisak assigned as investigator. Fee not to exceed $500

January 31, 1975:
Motion for Bill of Particulars filed.

February 12, 1975:
Application, Writ, and Order Granting Writ of Habeas Corpus filed

February 26, 1975:
Application, Writ, and Order Granting Writ of Habeas Corpus filed

February 27, 1975:
Bill of Part. filed.
Demand for Discovery by the State filed

March 3, 1975:
Jury impaneled. Deft. ref. to Psych. Clinic per 2945.37.
Deft. indigent, motion for investigator granted and J.C.Williams Appt'd.

March 4, 1975:
Deft. being examined by Dr. Gill, trial resumes March 5, 1975.

March 5, 1975:
Hearing had. Deft. found to be sane and able to stand trial. Sheriff ordered to have two deputies in civilian clothes in attendance at all times during the trial to take care of the Deft.

March 12, 1975:
Verdict guilty Aggr. Murder. Sent. C.C.I. for Life.
Deft. indigent, R. Miller and Peter Hull assigned for Appeal.
Transcript ordered at State expense.

March 24, 1975:
Notice of Appeal filed. Motion to appt. attys. on Appeal and Motion for State furnished Transcript filed. Precipe for Transfer filed.

cont.

STATE VS ISIAH ANDREWS CR 17902 C. of A. 34620 cont.

March 26, 1975:
Notice of Appeal and copy of Docket Sheet to C. of A.

April 22, 1975:
Transcript of Proceedings filed Vol. 1 & 2

May 16, 1975:
Motion for time ext. to file assignments of error and brief granted to June 10, 1975.

June 16, 1975:
Motion for time ext. to file assignments of error and brief granted to July 1, 1975.

July 11, 1975:
Motion to file answer brief granted to August 8, 1975

~~XXXXXX~~
September 4, 1975:
RECORD ON APPEAL

CR17902
000224

FILED
COURT OF APPEALS
APR 6 1976
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF APPEALS
FOR CUYAHOGA COUNTY
EIGHTH JUDICIAL DISTRICT OF OHIO
CASE NO. 34520

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| Appellee | ) | |
| | ) | MOTION FOR DECLARATION OF INDIGENCY AND ASSIGNMENT OF COUNSEL |
| vs. | ) | |
| | ) | |
| ISAIAH ANDREWS | ) | |
| | ) | |
| Appellant | ) | |

JOHN T. CORRIGAN
Cuyahoga County Prosecutor
1560 East 21st Street
Cleveland, Ohio 44114

Attorney for Appellee

ROBERT L. MILLER
White, Milano, Jurek & Miller
1310 Standard Building
Cleveland, Ohio 44113

PETER HULL
Engineers Building
Cleveland, Ohio 44114

Attorneys for Appellant

RECEIVED FOR FILING
APR 6 1976
COUNTY PROSECUTOR'S OFFICE
LAKESIDE

IN THE COURT OF APPEALS
FOR CUYAHOGA COUNTY
EIGHTH JUDICIAL DISTRICT OF OHIO
CASE NO. 34520

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| Appellee | ) | |
| | ) | MOTION FOR DECLARATION OF INDIGENCY AND ASSIGNMENT OF COUNSEL |
| vs. | ) | |
| | ) | |
| ISAIAH ANDREWS | ) | |
| | ) | |
| Appellant | ) | |

Now comes the appellant and requests this Honorable Court to afford him the opportunity to appeal this case to the Supreme Court of Ohio. Appellant requests the Court to appoint Robert L. Miller and Peter Hull as his attorneys, as seen by the affidavit attached hereto and made a part hereof.

Robert L. Miller & Peter Hull

ROBERT L. MILLER and PETER HULL
White, Milano, Jurek & Miller
1310 Standard Building
Cleveland, Ohio 44113

S E R V I C E

A copy of the foregoing motion has been mailed this ___ day of March, 1976, to John T. Corrigan, Cuyahoga County Prosecutor, 1560 East 21st Street, Cleveland, Ohio 44114.

Robert L. Miller & Peter Hull

ROBERT L. MILLER and PETER HULL
Attorneys for Appellant

COUNTY OF CUYAHOGA )
) SS.
STATE OF OHIO )

AFFIDAVIT

ISAIAH ANDREWS, being first duly sworn according to law, deposes and states that he is the defendant-appellant in the within cause of action; that he was convicted of Aggravated Murder in the Court of Common Pleas for which he is currently incarcerated in the Ohio Penitentiary; and that the Court of Appeals of Ohio, Eighth District, affirmed this conviction through its journal entry.

Affiant further states that he desires to appeal his conviction to the Supreme Court of Ohio; that he is without the necessary funds to perfect said appeal; and the he requests that this Honorable Court appoint [illegible] Miller and Peter Hull as his attorneys to perfect the appeal.

Affiant further sayeth naught.

Isaiah [illegible]
ISAIAH ANDREWS

SWORN TO BEFORE ME and subscribed in my presence [illegible]

March, 1976.

NOTARY PUBLIC

Cuyahoga County Common Pleas

| THE STATE OF OHIO VS. DANIEL HASBERRY | A TRUE BILL INDICTMENT FOR AGGRAVATED MURDER R.C. 2903.01 |
|---|---|

| DATE OF OFFENSE | THE TERM OF | CASE NO. |
|---|---|---|
| September 17th, 1977 | SEPTEMBER OF 1977 | |

The State of Ohio, CUYAHOGA COUNTY } SS.

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, **IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO,** Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully and purposely and with prior calculation and design, caused the death of another,

to-wit: Sam Jackson,

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

Foreman of the Grand Jury

John T. Corrigan
Prosecuting Attorney.

INDICTMENT - STATE'S COPY

Times

Police - 10:30

His Points west.

Drive over

Miss Mary Osterdorf Sept - 18 - 1974

( 12:30 )

11 P.M.

- married - only child ...

Return these files to

P. LAZZARO - LAKESIDE.

[illegible] C. Marino

Pat, set the murder case for trial MARCH 3, 1975 - if wits. show try the case, if not, take the plea to robbery.
This guy is guilty but I don't know if we can prove it.
Carmen

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

IN RE: ISIAH ANDREWS

and

MR. ROBERT G. WAGNER
UNITED STATES MARSHAL
NORTHERN DISTRICT OF OHIO

APPLICATION FOR
WRIT OF HABEAS CORPUS

John T. Corrigan, Prosecuting Attorney for Cuyahoga County, says that Isiah Andrews is charged in Case No. CR 17902 on docket of Criminal Courts of Cuyahoga County, for the crime of Aggravated Murder, Ohio Revised Code 2903.01 ________, and is being held by the Sheriff of Cuyahoga County and Robert G. Wagner, United States Marshal for the Northern District of Ohio.

We therefore pray that Robert G. Wagner, United States Marshal, or his designate bring the body of Isiah Andrews before the Honorable Judge Francis Sweeney of Cuyahoga County Common Pleas Court for the purpose of trial on the 3rd day of March, 19 75 at 9:00 A.M. and for further proceedings under the State Law.

RECEIVED FOR FILING
FEB 26 1975
By [signature] CLERK OF COURTS Dep.

[signature: John T. Corrigan]
Prosecuting Attorney

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

John T. Corrigan, being first duly sworn, says that the facts stated and matters contained in the foregoing are true.

[signature: John T. Corrigan]
Prosecuting Attorney

SWORN to before me and subscribed in my presence this 26th day of February, 19 75.

[signature: Patricia A. Costello]
Notary Public
PATRICIA A. COSTELLO

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN RE: ISIAH ANDREWS

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

WRIT OF HABEAS CORPUS

TO: MR. ROBERT G. WAGNER, UNITED STATES MARSHAL, NORTHERN DISTRICT OF OHIO, AND
RALPH KREIGER, SHERIFF, CUYAHOGA COUNTY, OHIO

We command you that the body of Isiah Andrews ______ in your custody detained as it is said, by whatsoever name the said Isiah Andrews may be known or called, you safely have before the Honorable Francis Sweeney, Judge of the Court of Common Pleas of Cuyahoga County, or in case of his absence or disability before some other Judge of said court at the Cuyahoga County Common Pleas Court on the 3rd day of March, 19 75, at 9:00 A.M., to do and receive what our said judge shall then and there consider, concerning h im in that behalf; and that you have then and there this writ.

IN WITNESS HEREOF, I, William P. Yarmcech Deputy Clerk of our said Court of Common Pleas have hereunto set my hand and affixed the seal of said court, this 26th day of February, 19 75.

GERALD E. FUERST
~~EMIL J. MASGAY~~ CLERK
COURT OF COMMON PLEAS

By ______________________
Deputy Clerk

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

IN THE COURT OF COMMON PLEAS
CRIMINAL COURTS

CASE NO. CR 17902

IN RE: ISIAH ANDREWS

and

MR. ROBERT G. WAGNER
UNITED STATES MARSHAL
NORTHERN DISTRICT OF OHIO

ORDER GRANTING
WRIT OF HABEAS CORPUS

On the application of John T. Corrigan, Prosecuting Attorney for Cuyahoga County, upon his filing the petition herein a writ of habeas corpus is granted as prayed for in the petition, returnable forthwith.

JUDGE, Court of Common Pleas
Cuyahoga County

RECEIVED FOR FILING

FEB 26 1975

[illegible]

By ______ Dep.

# THE SUPREME COURT OF THE STATE OF OHIO

*THE STATE OF OHIO,*
*City of Columbus.*

*19 76 TERM*
*To wit:* September 24, 1976

State of Ohio,
Appellee,

*vs.*

Isaiah Andrews,
Appellant.

*No.* 76-603

MOTION FOR LEAVE TO APPEAL FROM THE COURT OF APPEALS

*for* CUYAHOGA *County*

*It is ordered by the Court that this motion is overruled.*

FOR YOUR INFORMATION ONLY NOT FOR FILING

*COSTS:*

*Motion Fee, $20.00, paid by* Affidavit of Poverty

*I, Thomas L. Startzman, Clerk of the Supreme Court of Ohio, certify that the foregoing entry was correctly copied from the Journal of this Court.*

*Witness my hand and the seal of the Court*

*this ........ day of .................. 19 ......*

*.................................... Clerk*

*.................................... Deputy*

000233

Hubbard
587-0570

# County of Cuyahoga

## Cleveland, Ohio

3 - Jay Vess - Ronald Williams - Henry Montgomery

CR 17902 State of Ohio vs Isiah Andrews Jdg. Sweeney Rm. 1

1 ... Baboy

2 Mrs ...

5 BETTY MARIE WORTHY 771-3770 2344 Prospect Avenue Cleveland, Ohio

Due Aug 8 - Ct of Appeals Adrine

**COURT OF APPEALS OF OHIO, EIGHTH DISTRICT, CUYAHOGA COUNTY**

GERALD E. FUERST, ~~EMIL J. MASGAY~~ CLERK OF COURTS

State of Ohio APPELLEE

VS.

Isiah Andrew APPELLANT

COURT OF APPEALS NO. 34620

LOWER COURT NO. C. P. 17902 Cr.

MOTION NO. 30052

DATE JUL 1 1 1975

**JOURNAL ENTRY**

Motion by appellee for extension of time to file answer brief granted to August 8, 1975. Exc.

RECEIVED FOR FILING

JUL 11 1975

GERALD E. FUERST

By Peggy McDonald

KRENZLER, C.J.

Alvin I. Krenzler, Chief Justice

COPIES MAILED TO COUNSEL FOR ALL PARTIES. — COSTS TAXED.

CC 89 C of A

**COURT OF APPEALS OF OHIO, EIGHTH DISTRICT, CUYAHOGA COUNTY**
GERALD E. FUERST
~~EMIL J. MASGAY~~ CLERK OF COURTS

MAY 20 '75

State of Ohio
APPELLEE
vs.
Isiah Andrew
APPELLANT

COURT OF APPEALS NO. 34620

LOWER COURT NO. C. P. 17902-Cr.

MOTION NO. 29449

DATE MAY 16 1975

JOURNAL ENTRY

Motion by appellant for extension of time to file assignments of error and brief granted to June 10, 1975. Exc.

RECEIVED FOR FILING

MAY 16 1975

GERALD E. FUERST
By [signature] Dep.

KRENZLER, C. J.

[signature]
Alvin I. Krenzler, Chief Justice

COPIES MAILED TO COUNSEL FOR ALL PARTIES. — COSTS TAXED.

CC 89 C OF A

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| PLAINTIFF-APPELLEE | : | CASE NO. CR 18648 |
| | : | |
| - vs - | : | HONORABLE: LUCIEN YOUNG |
| | : | |
| NORMA J. MCKINNON | : | NOTICE OF APPEAL |
| | : | |
| DEFENDANT-APPELLANT | : | |

Notice is hereby given that Norma J. McKinnon, defendant, hereby seeks leave to appeal to the Court of Appeals of Cuyahoga County, Ohio, Eighth Appellate District from the final judgment entered in this action on the 18th day of August, 1975.

Norma J. McKinnon

Norma J. McKinnon - Pro se

236

STATE OF OHIO )
( SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL BRANCH

CASE NO. CR 17902

Judge Sweeney

FEB 27 2 00 PM '75

THE STATE OF OHIO
Plaintiff )
vs. )
ISAIAH ANDREWS, )
Defendant. )

BILL OF PARTICULARS

* * *

Responding to the request of the defendant, Isaiah Andrews, for a Bill of Particulars, the Prosecuting Attorney says that the State of Ohio will prove on the trial of the above entitled case, the following:

That on or about the 18th day of September, 1974, between the hours of 11:00 A.M. and 2:00 P.M., and in the vicinity of the Colonial House Motel, 3301 Euclid Ave., Cleve., O., Cuyahoga County, the defendant, Isiah Andrews unlawfully and purposely and with prior calculation and design, caused the death of another, to-wit: Regina Andrews, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

See Response to Request for Discovery for further information.

The Prosecuting Attorney says further that under the law governing Indictments and Bills of Particulars, the Prosecuting Attorney is not required to disclose through a Bill of Particulars the other evidentiary matters requested in the defendant's Motion for a Bill of Particulars.

Assistant Prosecuting Attorney

S E R V I C E

A copy of the foregoing Bill of Particulars has been mailed this 27th day of February, 1975 to William L. Summers, Attorney for the defendant, 1370 Ontario Ave., Cleve., O. 44113.

Assistant Prosecuting Attorney

**COURT OF APPEALS OF OHIO, EIGHTH DISTRICT**
**COUNTY OF CUYAHOGA**

**GERALD E. FUERST, CLERK OF COURTS**

State of Ohio

APPELLee

-VS-

Isaiah Andrews

APPELLant

COURT OF APPEALS NO. 39712

LOWER COURT NO. C.P. 17902 Cr.

MOTION NO. 46278

DATE DEC 17 1979

## JOURNAL ENTRY

Motion by Owen J. McCafferty for compensation is referred to panel that heard case on the merits. Exc.

RECEIVED FOR FILING
DEC 17 1979
GERALD E. FUERST
BY [signature] DEP.

KRENZLER, P.J.,

DAY. J.,

CORRIGAN, J., CONCUR

[signature]
PRESIDING JUDGE

ALVIN I. KRENZLER

Form OPD-E-202 Barrett Brothers, Publishers, Springfield, Ohio

000238

# APPLICATION, ENTRY AND CERTIFICATION
## FOR ASSIGNED COUNSEL FEES

In the Court of Appeals of Cuyahoga County

DEC 20 1979

STATE OF OHIO, Plaintiff

vs.

ISAIAH ANDREWS, Defendant

CASE NO. 39712

## APPLICATION

A. Albert Perelman having been previously appointed counsel for the Defendant moves this Court for an order approving payment of fees and expenses as indicated below and in the attached itemized statement, pursuant to section 2941.51 and 120.33 of the Ohio Revised Code.

Date of Appointment: August 25, 1978

Hours Worked: In Court 1 Hour Out of Court 27 Hours

Legal Fees: $ -0-

Expenses (if any): $ -0-

Total: $ 300.00

## Disposition

DEC 20 1979

O. R. C. Charge Section Number and Name:

| | | | Yes | No |
|---|---|---|---|---|
| a) 2903.01 Aggravated Murder | Pleaded Guilty to Indictment | | | |
| b) | Pleaded Guilty to Lesser Charge | | | |
| c) | Went to Trial | | X | |
| d) | Results | Appeal Found Guilty | | |

OFFENSE CLASSIFICATION (Circle Appropriate Classification For Each Charge) Aggravated Murder

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| a) | F1 | F2 | F3 | F4 | M1 | M2 | M3 | M4 | MM |
| b) | F1 | F2 | F3 | F4 | M1 | M2 | M3 | M4 | MM |
| c) | F1 | F2 | F3 | F4 | M1 | M2 | M3 | M4 | MM |
| d) | F1 | F2 | F3 | F4 | M1 | M2 | M3 | M4 | MM |

THE ESTATE OF A. ALBERT PERELMAN

Owen J. McCafferty

Signature Owen J. McCafferty, for the firm of McCafferty & Perelman

Suite 1248 - Engineers Building

Name and Address

Cleveland, Ohio 44114

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

Social Security Number:

RECEIVED FOR FILING

DEC 20 1979

GERALD E. FUERST, CLERK

BY [signature] DEP.

DEC 20 1979

## ENTRY

The Court finds that counsel performed the legal services set forth on the attached itemized Statement; and that the fees and expenses, set forth on said Statement are reasonable, and are in accordance with the resolution of the Board of County Commissioners of Cuyahoga County, Ohio, relating to payment of assigned counsel.

IT IS THEREFORE, ORDERED that such fees and expenses be, and are hereby approved. It is further ordered that the said amount be, and hereby is, certified by the Court to the County Auditor for payment.

Jack G. Day

DEC 20 1979 Judge

JACK G. DAY, P.J.
PRYATEL, J.,
STILLMAN, J., CONCUR

## CERTIFICATION

The County Auditor in executing this certification attests to the accuracy of the figures contained herein. A subsequent audit by the Ohio Public Defender Commission and/or the Auditor of State which reveals unallowable or excessive costs may result in future adjustments against reimbursement or repayment of audit exceptions to the Ohio Public Defender Commission.

County Number: 18

Check Number:

Check Date:

County Auditor

Form Prescribed by Ohio Public Defender Commission

Aug 7

[illegible]
[illegible]
[illegible]

[illegible],

[illegible]ellant,

-VS-

[illegible],

[illegible]ellee.

[illegible] NO. ______.

[illegible] from the Court [illegible]
[illegible] of [illegible]
County, [illegible]

[illegible]

[illegible]
Assistant Prosecuting Attorney
The Justice Center
[illegible] Ontario
Cleveland, Ohio 44113

Counsel for Appellee

[illegible]
[illegible]
Southern Ohio Correctional [illegible]
[illegible]
[illegible]
Lucasville, Ohio [illegible]

Appellant [illegible]

## TABLE OF CONTENTS


| Description | Page(s) |
|---|---|
| Statement of Facts . . . . . . . . . . . . . . | 1 |
| Assignment of Error Number One . . . . . . . . | 2 |
| Assignment of Error Number Two . . . . . . . | 2 |
| Assignment of Error Number Three . . . . . . | 3,4 |
| Assignment of Error Number Four. . . . . . . | 4 |
| Conclusion . . . . . . . . . . . . . . . . | 5 |
| Service . . . . . . . . . . . . . . . . . . . . | 5 |


## AUTHORITIES CITED


| | |
|---|---|
| Mooney v. Holohan, 294 U.S. 103 (1935) . . . . | 3 |
| Giles v. Maryland, 386 U.S. 66 (1967) . . . . . | 3 |
| Alcorta v. Texas, 355 U.S. 28 (1957) . . . . . | 4 |
| Brady v. Maryland, 373 U.S. 83 (1963) . . . . . | 4 |
| State v. Milanovich, 42 Ohio St. 2d 46 (1975) . | 4 |
| Machibroda v. United States, 368 U.S. 487 (1962) | 4 |


## OTHER AUTHORITIES


| | |
|---|---|
| Ohio Revised Code, Section 2953.21 et seq. . . . . . . | 1,2 |
| Sixth & Fourteenth Amendments, U.S. Constitution . . . . . . . . . . . . . . . . . | 1 |

STATEMENT OF FACTS

This is an appeal from the Denial of Petition To Vacate Judgment filed pursuant to Ohio Revised Code Section 2953.21 et. seq., on June 13, 1978.

On June 22, 1978, appellee filed a Motion For Summary Judgment attaching two affidavits with his motion. Said affidavits from appellant's trial attorney's wherein they deny the allegations which appellant had set forth in his Petition To Vacate; namely, that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States where counsel failed to subpoena certain witnesses made known to him who, had they testified, would have established appellant's innocence and further that appellants counsel was aware that the prosecutors files contained information of a "bloody palm print" found at the scene of the murder and failed to utilize such information or to compel discovery of same and further, that counsel failed to file certain pre-trial motions or to interview potential witnesses.

On July 18, 1978, Judge Francis Sweeney denied appellants Motion For Post Conviction Relief and granted prosecutors Motion For Summary Judgment. Such denial was made <u>via a post-card without an evidentiary hearing being held or without a finding of facts and conclusions of law being rendered as required by the Post Conviction Act</u>.

A timely Notice of Appeal was filed on July ..., 1978, and it is from these proceedings that this appeal is now taken.

[illegible]:

The Court Below Committed Reversible Error In Its Failure To Make A Finding Of Fact And Conclusion Of Law In Denying Appellant's Petition To Vacate Judgment.

The Court's duty to make a finding of facts and conclusions of law in denying applicants for Post Conviction Relief is clearly defined in Ohio Revised Code, Section 2953.21 et seq.

Judge Sweeney has repeatedly been reversed by this Court for his failure to make such findings of facts and conclusions of law and yet he has denied this Appellant's Petition with no such conclusions.

The provisions of Ohio's Post Conviction Act is mandatory and for this reason alone Judge Sweeney's judgment must, once again, be reversed.

[illegible]:

The Court Below Committed Reversible Error In Its Granting of Summary Judgment Where There Are Material Issues of Facts and Law in Dispute.

That there was material issues in dispute is obvious by the use of affidavits from appellant's attorneys. Appellant is saying that his trial counsels failed to call alibi witnesses, subpoena witnesses, file pre-trial motions, and failed to make known to the jury of the "bloody palm print" found at the scene of the crime (which appellant has made known to his counsels in the preliminary stage) and appellants counsels denied such allegation per affidavits. This makes an issue in dispute. Appellant is saying one thing (which is outside the record) and counsel is saying another. Thus the granting of summary judgment was reversible error.

Must be in writing
See 2953.21(C)

[illegible]

The Court Below Committed Reversible Error In Its Failure To Conduct An Evidentiary Hearing Where Appellant Had Alleged Facts, Outside The Record, Which, If Proven, Would Have Constituted The Relief He Sought.

The appellant set forth in his petition to vacate that his counsel failed to discover certain evidence which was in the files of the prosecutor which would have proven appellants innocence. While he diden't specifically set forth what that evidence was because he is a layman at law and not versed in legal matters, he was referring to the "bloody palm print" found at the scene of the crime which the prosecutor knew diden't belong to appellant and failed to disclose this information to appellants counsel.

The docket sheet in this case shows that only a Bill of Particulars was filed by appellants counsel and not discovery as asserted by the prosecutor. A Bill of Particulars merely sets forth the time, place, witnesses, etc., that the prosecutor plans to use and does not compel him to disclose ALL evidence favorable or unfavorable to the accused. It merely sets forth the specifics of the crime.

Appellant asserts that he made known to counsel prior to trial and during trial that the prosecutor had in his files information of a "bloody palm print" found at the scene of the crime which established that it was someone's print other than appellants. Counsel for appellant refused to compel the prosecutor to disclose this information and failed to bring it to the Court's attention that the prosecutor was knowingly, willfully and purposefully withholding evidence favorable to the accused. Mooney v. Holohan, 294 U.S. 103 (1935); Giles v. Maryland, 386 U.S. 66 (1967).

Discovery filed. 2-2-75

not true. no corroboration

See also: Alcorta v. [illegible], 355 U.S. [illegible] (1957) and [illegible] v. [illegible], 373 U.S. [illegible] (1963).

Such a failure does constitute ineffective assistance of counsel, if proven, and would have constituted grounds for relief raised outside the record.

When grounds raised outside the record [illegible] disputed upon the face of the record then an evidentiary hearing is [illegible] by law. State v. Milanovich, 42 Ohio St. 2d 46 (19[illegible]); Machibroda v. United States, 368 U.S. 487 (1962).

Thus, failure of the lower court to hold an evidentiary hearing was reversible error and appellant request [illegible] moves this Court to rule accordingly.

[illegible]:

The Court Below Committed Reversible Error In Denying Appellants Petition To Vacate On The [illegible] Of Affidavits.

When a petition for habeas corpus or petition to [illegible] is filed and raises issues outside the record it can not be disposed of by the use of affidavits, Cf. Machibroda v. United States, supra, and the Court below committed reversible error in disposing of [illegible] Petition To Vacate on the strength of affidavits submitted by the prosecutor.

CONCLUSION

WHEREFORE, for the reasons set forth herein appellant moves the Court to reverse the Judgment of the Court below an issue an ORDER directing that Appellanr be given an evidentiary hearing which will give him an opportunity to prove that:

1) Counsel was ineffective;

2) That Counsel was aware of the "bloody palm print" in the prosecutors file and failed to make discovery or disclosure of it;

3) That counsel was aware of witnesses who could establish appellants innocence and failed to investigate them, interview them , or subpoena them.

Respectfully submitted,

Isaiah Andrews

SERVICE

A copy of the foregoing Appeal Brief was mailed to George J. Sadd, Assistant Prosecuting Attorney, The Justice Center, 1200 Ontario, Cleveland, Ohio 44113, this 4th day of August, 19 .

Isaiah Andrews
A 141-349
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, Ohio 45699

Appellant, Pro Se

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CASE NO. CR 17902

STATE OF OHIO )

Plaintiff-Respondent )

vs. )

ISAIAH ANDREWS )

Defendant-Petitioner )

MOTION FOR SUMMARY JUGDMENT

Now comes John T. Corrigan, Prosecuting Attorney of Cuyahoga County, and respectfully moves this Court, pursuant to Civil Rule 56, for an order dismissing the complaint for post-conviction relief and for entry of summary judgment in favor of the State of Ohio.

This Motion for Summary Judgment is made on the ground that there is no genuine issue as to any material fact and that the moving party, the State, is entitled to judgment as a matter of law as shown by the pleadings, the attached brief, and the attached affidavits, and for other reasons more fully stated in the attached brief.

Respectfully submitted,

JOHN T. CORRIGAN, Prosecuting Attorney of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent
The Justice Center
1200 Ontario
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Motion for Summary Judgment has been mailed this 22nd day of June, 1978, to Mr. Isaiah Andrews, Defendant-Petitioner, #141-345, Southern Ohio Correctional Facility, P.O. Box 45699, Lucasville, Ohio, 45699.

[signature]
Assistant Prosecuting Attorney

BRIEF

On January 12, 1975, the Cuyahoga County Grand Jury, in the State of Ohio, indicted the defendant-petitioner for one count of aggravated murder, Ohio Revised Code, Section 2901.01. The petitioner plead not guilty at his arraignment on January 24, 1975. A jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975. On March 12, 1975 the jury found the petitioner guilty as charged and the court sentenced him to life imprisonment. From that verdict and judgment the petitioner appealed to the Eighth District Court of Appeals. On March 18, 1976 that Court affirmed the judgment of the trial court. The Ohio Supreme Court, on September 24, 1976, denied petitioner's Motion for Leave to Appeal. A petition for post-conviction relief is presently pending before this Honorable Court.

Matters which have been or should have been raised on direct appeal may be considered in post-conviction proceedings. State v. Perry, 10 Ohio St. 2d 175 (1967); State v. Duling, 21 Ohio St. 2d 13 (1970); State v. Wallace, Cuyahoga County, C.A. #35522, March 10, 1977. Allegations in the instant petition which are related to Rule 11 of the Ohio Rules of Criminal Procedure and to matters of record may not be considered in this post-conviction hearing.

The record clearly indicates that counsel zealously, earnestly, and intelligently represented the petitioner at all stages of the proceedings. Petitioner had effective counsel and substantial justice was done. State v. Lytle, 48 Ohio St. 2d 391 (1976).

In the instant case no substantive grounds for relief exist under the post-conviction statute and there has been no denial or infringement of constitutional or statutory rights rendering the judgment void or voidable under either the Ohio Constitution or the United States Constitution. See State v. Perry, supra; State v. Duling, supra; State v. Milanovich, 42 Ohio St. 2d 46 (1975); State v. Brown, 41 Ohio App. 2d 181 (1974).

CONCLUSION

Based on the facts of this case, the applicable law, the record of proceedings, and the attached affidavits, it is clear that the petitioner was afforded effective assistance of counsel. The State, therefore, respectfully requests that this Honorable Court dismiss this petition for post-conviction relief without a hearing. State v. Milanovich, supra at 50; State v. Mishelek, 42 Ohio St. 2d 140 (1975); State v. Hester, supra; State v. Myers, Cuyahoga County, C.A. #36370, July 7, 1977.

JOHN T. CORRIGAN, Prosecuting Attorney
of Cuyahoga County, Ohio

BY: [signature]
GEORGE J. SADD
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes William L. Summers, the affiant herein, first being duly sworn deposes and states the following:

1) That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2) That the defendant was indicted on January 21, 1975, on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3) That affiant fully and properly investigated all charges against the defendant prior to trial;

4) That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5) That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the State;

6) That affiant fully informed the defendant of all facts and evidence related to the charge;

7) That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8) That affiant at no time attempted to coerce the defendant to plead guilty;

9) That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975.

10) That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

[signature]
WILLIAM L. SUMMERS

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to me and subscribed in my presence this 21 day of June, 1978.

[signature]
NOTARY PUBLIC

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

AFFIDAVIT

Now comes JOHN HYLAND, the affiant herein, first being duly sworn deposes and states the following:

1. That affiant was counsel for defendant Isaiah Andrews in Case No. CR 17902 and has personal knowledge of the facts set forth herein;

2. That the defendant was indicted on January 21, 1975 on one count of aggravated murder, Ohio Revised Code, Section 2901.01;

3. That affiant fully and properly investigated all charges against the defendant prior to trial;

4. That affiant subpoenaed all witnesses capable of testifying on the defendant's behalf;

5. That affiant timely filed proper motions for discovery of all exculpatory evidence in possession of the state;

6. That affiant fully informed the defendant of all facts and evidence related to the charge;

7. That affiant subpoenaed all pertinent and material reports, records, and documents prior to trial;

8. That affiant at no time attempted to coerce the defendant to plead guilty;

9. That a jury trial commenced before the Honorable Francis E. Sweeney on March 3, 1975;

10. That the jury found the defendant guilty of aggravated murder on March 12, 1975.

Affiant further sayeth naught.

John P. Hyland

JOHN HYLAND

STATE OF OHIO )
SS.
CUYAHOGA COUNTY )

SWORN to before me and subscribed in my presence this 22nd day of June, 1978.

Joseph J. Naegele

NOTARY PUBLIC

JOSEPH J. NAEGELE, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 R. C.

STATE OF OHIO )
) SS.
CUYAHOGA COUNTY )

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CASE NO. CR 17902

STATE OF OHIO )
Plaintiff-Respondent )
vs. )
ISAIAH ANDREWS )
Defendant-Petitioner )

RECEIVED FOR FILING
APR - 4 1980
GERALD E. FUERST, CLERK
BY [signature] DEP.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Isaiah Andrews, filed a petition for post-conviction relief pursuant to Ohio Revised Code, Section 2953.21. In support of his motion, defendant alleges that:

1. Trial counsel was ineffective in that he failed to subpoena witnesses favorable to appellant;

2. Trial counsel was ineffective in that he failed to investigate relevant evidence of appellant's innocence;

3. Trial counsel was ineffective in that he failed to file proper motions for discovery of exculpatory evidence which was in possession of the State;

4. Trial counsel was ineffective in that he failed to subpoena documents, reports, and records pertinent to appellant's innocence; and

5. Trial counsel was ineffective in that he continuously pleaded with defendant to enter a plea of guilty.

Upon review of the post-conviction petition and the motion for summary judgment filed by the State, this Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. In Case No. CR 17902, defendant was indicted on January 21, 1975, for one count of aggravated murder pursuant to Section 2901.01 of the Ohio Revised Code.

2. Attorneys William L. Summers and John P. Hyland represented defendant in Case No. CR 17902.

3. On March 3, 1975, this matter proceeded to a jury trial before the Honorable Francis E. Sweeney.

4. On March 12, 1975, the jury found defendant guilty of aggravated murder.



VOL 386 PG 408

THE STATE OF OHIO } SS. I, GERALD E. FUERST, CLERK OF THE COURT OF COMMON PLEAS,
Cuyahoga County WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL Vol 386 Pg 408 + 409
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 19th DAY OF MARch A.D. 19 82
GERALD E. FUERST, Clerk
By [signature] Deputy

5. On March 12, 1975, defendant was sentenced to life imprisonment at the Ohio State Penitentiary in Lucasville, Ohio.

CONCLUSIONS OF LAW

This Court finds that no substantial grounds for post-conviction relief exist in this case.

It is true that ineffective assistance of counsel is a proper issue for post-conviction consideration. State v. Hester, 45 Ohio St. 2d 71, 76-77 (1976). However, if the "files and records of the case negative the existence of facts sufficient to entitle the prisoner to relief, the trial court may so find and summarily dismiss the petition. . ." State v. Perry, 10 Ohio 2d 175, Syl. 3 (1967). See also, State v. Milanovich, 42 Ohio St. 2d 46, 50.

Supplementing its motion for summary judgment, the State submitted the affidavits of defense counsel which rebut all of defendant's allegations of ineffective assistance of counsel. Consequently, there are no genuine issues of material fact as to the allegations made by defendant with respect to ineffective assistance of counsel. Accordingly, the State's motion for summary judgment is granted.

Francis E. Sweeney
JUDGE FRANCIS SWEENEY
Court of Common Pleas
Cuyahoga County, Ohio

DATE: 4-3-80

VOL 396 PG 409

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 389 of 768. PageID #: 2124

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000253

COMPLAINT NO. 51777

DEAD BODY

SUBJECT or CRIME SUSPECTED HOMICIDE

DATE OF THIS REPORT 9-19-74

COMPANY OR OWNER CLASS I | ADDRESS | PHONE | AGE | SEX | RACE | M-S

VICTIM REGINA ANDREWS (nee Mason) | ADDRESS 3301 EUCLID AVE #133 | PHONE 391-2500 | AGE 24 | SEX F | RACE B | M-S M

ADDRESS OF OCCURRENCE 300 yds South of Arlington Ave- | TYPE OF PLACE 100 yds West of Forest Hills Swim Pool | ZONE 603

TIME OF OCCURRENCE Found at 3:00 P.M. | DATE OF OCCURRENCE September 18, 1974 | DAY OF WEEK Wednesday

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 1 OF 3 PAGE REPORT. FOLLOW-UP REPORT XXXX

This date assigned to car 9240 in company with DET. ALLEN #83, further investigated this crime.

Received a call from SGT STEEL, of Third District Desk and he informed us that a Balck female was at the desk now and wanted to see the body that was found this afternoon, for might be possiblyher daughter.

Went to the Third Dist. desk and there met with a Black Female who identified herself as one MARY L. MASON B-F-41, of 640 East 107th St. (761-9801) she was accompanied by her son REGINALD MASON B-M-19, same address and a couple of other friends of the family. MRS. MASON informed us that her daughter REGINA B*F*24, was missing from her Motel Room since this morning. Lea rned that REGINA is married to ISIAH ANDREWS and they have been living at the COLONIAL MOTEL since there marriage August 24, 1974. When asked where her husband was at, MRS. MASON stated back at the hotel.

Accompanied the MASONS to the Coroners Office and there the body was was viewed by REGINALD, and at which time he positively identified the victim as his sister.

UNIDENTIFIED BODE...NOW POSITIVELY IDENTIFIED:

REGINA ANDREWS (nee Mason) B-F-24-M, dob 7-23-50, resides at 3301 Euclid Ave, Colonial Motel(391-2500) Room 133. She lives with her husband ISIAH ANDREWS.

Left the Corpners Office and proceeded to 3301 Euclid Ave, and there went to room 133 and met with a Black Male who identified himself as one ISIAH ANDREWS B-M-36-M, dob 4-20-38, No Record SIU, No Wants. We informed him that his mother-in-law had just identified his wife as the victim of a possible homicide. We then questioned ISIAH as to what might have happened to his wife and he stated that he left the motel at 8:00 A.M. this morning and went to JAY VEES Clothing Store to pick-up a couple of suits and when he left his wife was in the motel room wearing LIGHT BLUE and WHITE LINGERIE. He returned at about 10:30 A.M. and found the TV on and his wife gone. He stated she was going to go downtown and do some shopping, and he never thought about anything, until about 6:00 P.M. this evening when she wasn't home, he thne

COFC 71-10

INVESTIGATING OFFICERS DET HICKS #901 DET ALLEN #83 | PLATOON nites | CAR 9240 | APPROVED BY [signature]

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____ COMPLETED ____

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

SUBJECT or CRIME: DEAD BODY SUSPECTED HOMICIDE

DATE OF THIS REPORT: 9-19-74

COMPLAINT NO. 51777

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| CLASS I | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS (nee MASON) | 3301 Euclid Ave #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE: | TYPE OF PLACE: | ZONE:

TIME OF OCCURRENCE: | DATE OF OCCURRENCE: | DAY OF WEEK:

SECURED BY: | ADDRESS: | PHONE: | TIME: | DAY: | DATE:

DISCOVERED BY: | ADDRESS: | PHONE: | TIME: | DAY: | DATE:

PAGE 2 OF 3 PAGE REPORT.

FOLLOW-UP REPORT [XXXXX]

called MRS MASON. SHe further stated he called the Hospitals and called Missing Person, but found nothing. MR ANDREWS informed us that he is self-employed FASHION DESIGNER and also works as a salesman for the H.G. WHITING FISH COMPANY.

Returned to the Homicide Office while typing this report recieved a call from the suspect WILLIE WATTS, who stated that he heard we wanted to talke to him about something. We told him we wanted to ask him a few questions about an incident. WILLIE stated he would be home and for us to come out. We proceeded to 12325 Castlwood in company with Car 614 Ptls BLOUNT #1919 and LARD #2091 and Car 615 Ptls Anderson 2476 and BREMER #625. On our arrival met with MRS. WATTS who was upset, and she stated he had just taken her car and left. He told her he was going to get a friend of his by the name of RONALD, who would tell us that WILLIE was with him today and is not involved in anything. We waited in the home for about 20-minutes but WILLIE never returned. MRS. WATTS informed us that her car is a 1968 DODGE DART LICENSE MW 945 and is BRONZ in color. MRS WATTS also told us her son had his clothes packed and was getting ready to go back to the Army.......

We left the WATTS residence and toured the area for about 40 minutes checking to see if WILLE would return, but he did not. It is believed that WILLIE called this Office in front of his Mother to try and impress her he had nothing to do with this crime and then she let him take the car on the pretense that he was going to get his friend and return home. She gave him the car and he left to avoid being arrested.......

****NOTE While at the Colonial Motel we also interviewed the night clerk one ADAM WOLF W-M-44, of 3301 Euclid Ave #235 (391-2500). WOLF informed us he works from 11:00 AM to 11:00 PM. He stated he knew the ANDREWS, but he didn't notice anything unusual today. We showed the Photo of WILLIE WATTS, to ascertain if he might have been aroundthis morning, but WOLF stated he didn't recall seeing this male. WOLF then informed us that CHARLES GALLOWAY W-M, relieves him at 11:00 A.M. and maybe he could gives some information as to seeing MRS. ANDREWS leave this morning.......

ADAM WOLF

COF C 71 - 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| DET HICKS #901 DET ALLEN #83 | nites | 9240 | |

WEATHER: [ ] CLEAR [ ] RAIN [ ] CLOUDY [ ] SNOW TEMP ___ ° WIND ___

[ ] A. I. U. [ ] REQUESTED [ ] ON SCENE
[ ] S. I. U. [ ] NOT REQUESTED

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED ___
COMPLETED ___

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000255

COMPLAINT NO. 51777

SUBJECT or CRIME: DEAD BODY (SUSPECTED HOMCIDE)

DATE OF THIS REPORT: 9-19-74

COMPANY OR OWNER: CLASS I | ADDRESS | PHONE | AGE | SEX | RACE | M-S

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ADREWS (nee MASON) | 3301 EUCLID AVE #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 3 OF 3 PAGE REPORT. FOLLOW-UP REPORT [XXXXX]

A t 3:05 A.M. received a call from Car 614 Ptls BLOUNT #1919 and LARD #2091 with information that the auto of MRS. WATTS had returned and the suspect was now in the house.

In Company with DET. STANIC and McCAFFERY on Car 9239 and the formentioned Officers caused the Arrest of the below male.

ARRESTED: WILLIE H. WATTS B-M-27-M, resides at 12325 CASTLEWOOD AVE. DOB 9-17-47, CPD# 141061.

This male was arrested in the home in presence of his mother MELBA WATTS, his uncle WALLACE RIDDLE and his girlfriend LORETTA BAKER, and at which time the suspect was advised of his CONSTITUTIONAL RIGHTS by this officer.

The suspect was convyed to Central Prison Unit by Car 9239. When asked about this crime this suspect stated he didn't do anything and had friends to state where he was all day.

[signature] #901

C OF C 71-10

INVESTIGATING OFFICERS: DET HICKS #901 DET. ALLEN #83 | PLATOON: nites | CAR: 9240 | APPROVED BY: [signature]

WEATHER: ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ___ ° WIND ___ | ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER | TIME ASSIGNED ___ COMPLETED ___

000256

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME HOMICIDE, ARREST & CLEAN UP

DATE OF THIS REPORT 9-23-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE / TYPE OF PLACE: 300 YDS. SO. OF ARLINGTON-100 YDS. WEST OF FOREST HILLS SWIM POOL — ZONE 603

TIME OF OCCURRENCE: FOUDN AT 3:00 PM — DATE OF OCCURRENCE: SEPTEMBER 18, 1974 — DAY OF WEEK: WEDNESDAY

SECURED BY — ADDRESS — PHONE — TIME — DAY — DATE

DISCOVERED BY — ADDRESS — PHONE — TIME — DAY — DATE

PAGE 1 OF ___ PAGE REPORT. FOLLOW-UP REPORT XX

Assigned to car 9237 with DETECTIVE HUBBARD further investigated the above crime.

Contacted DOCTOR LESTER ADELSON at the Morgue and learned that DR. GERBER had pronounced the victim DOA at 5:05 PM, September 18, 1974 and at that time Dr. Gerber found that the body was not in complete RIGOR Dr/ Adelson stated that Rigor usually takes 6 to 8 hours, thus, this would indicate to him that the victim was killed between 9:00 AM and 12:00 Noon on September, 18, 1974. Further, according to the wounds that the victim received, she would have died within a few minutes after she was attacked.

Learned from SISTER APRIL HAMZAH 18 B F DOB 8-1-56, 3984 Strandhill Ave. 561-4377, Secretary to GEON HAMZAH, who is director of the MUSLIM SCHOOL at 2813 E. 92 St. that the arrested ISAIAH ANDREWS came into her office at about 11:30 AM, 9-18-74, asked for Mr. Hamzah found that he was not there and left. We were unable to contact Howard Mason, Lieutenant, in charge of the fish sales at this institution to determine if Andrews was selling fish for them, and also to get an exact time that he was seen by Mason at the institution.

Consulted Chief Police Prosecutor, EVERETT CHANDLER, who read the files and statements in this case and issued papers for AGGRAVATED MURDER, RC 2903.01 for ISAIAH ANDREWS. This male was charged and will appear in Police Court at 9:00 AM, September 24, 1974, Tuesday.

ROWELL HUBBARD

C OF C 71-10

INVESTIGATING OFFICERS [signatures] 1606 — PLATOON DAYS — CAR 9237 — APPROVED BY [signature]

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ___ ° WIND ___ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER — TIME ASSIGNED ___ COMPLETED ___

CLASS 1

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000257

COMPLAINT NO. 51777

SUBJECT or CRIME HOMICIDE  DATE OF THIS REPORT 9-20-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |
| VICTIM | ADDRESS | PHONE | | | | |
| REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE: 300 YDS SOUTH OF ARLINGTON AVE. 100 YDS WEST OF FOREST HILLS POOL  ZONE: 603

TIME OF OCCURRENCE: FOUND AT 3:00 PM  DATE OF OCCURRENCE: SEPTEMBER 18, 1974  DAY OF WEEK: WEDNESDAY

SECURED BY  ADDRESS  PHONE  TIME  DAY  DATE

DISCOVERED BY  ADDRESS  PHONE  TIME  DAY  DATE

PAGE 1 OF 2 PAGE REPORT.  FOLLOW-UP REPORT [X]

Assigned to car 9237 with DETECTIVE HUBBARD further investigated the above crime.

Conveyed the arrested ISAIAH ANDREWS to SIU where a polygraph examination was conducted by DETECTIVE LUCKAY. Later talked with Det. Luckay who informed us that this male lied on almost every question asked of him. He was asked "Did you kill your wife in your apartment and take her body to Forest Hills Park and leave her" his answer was negative, Det Luckay described the polygraph machines response as being most positive in indicating that he had lied.

We requested that Andrews make a written statement and he agreed. In his statement he told pretty much the same story as he had told us the previous day. Describing his trips around town, telling about which street he turned on etc. We asked him if he thought this type of statement was relevant in so far as his wife having ~~xxxxxxxx~~ been murdered, his answer was positive. Thru out his statement he procrastinated and told many things unrelated to this crime.

We contacted LIEUTENANT HOWARD 41 B M M, 2813 E. 92 St. 229-2115 Nation of Islam and learned from him that I. Andrews is not yet a Muslim and that he did in fact come by temple #18 twice yesterday.

Contacted BETTY WORTHY of the Colonial Motel and re-questioned her and learned that at about 11:00 AM, Sept. 18 she saw I. Andrews standing in his doorway talking to someone or something, she is unable to say for sure if he was his wife he was talking to or not. She did say, however, that what ever he was talking to seemed to be wearing a headress and attire of a Muslim Lady. She will make a statement on Saturday, Sept 21.

Earlier we contacted DONALD ROBINSON25 B M S DOB 9-4-49, 12326 Chesterfield Ave. and learned from him that he had in fact been

LOWELL HUBBARD  DONT CL. F. GL TWO  COFC 71-10

INVESTIGATING OFFICERS  PLATOON: DAYS  CAR: 9237  APPROVED BY

WEATHER [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW  TEMP ___ WIND ___  [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER  TIME ASSIGNED  COMPLETED

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000258

**SUBJECT or CRIME** | DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| REGINA ANDREWS | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | | |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 2 OF 2 PAGE REPORT. FOLLOW-UP REPORT XX

with the arrested WILLIE H. WATTS at the Howard Johnsons Motel on Tuesday, Sept 17. That he left about 3:00 AM and further that he was driving his brothers auto a 1972 Cadillac Sedan, blue color, Ohio license #FF 9994.

WILLIE H. WATTS was released from his arrest for Invest. c/w Homicide and is now being held by the Fugitive Unit, Det. Borenski.

Learned from Det. McKibben that when he witnessed the undressing of the victim at the morgue she was in a state of rigor that would indicate that she had expired sometime early wednesday morning. Our estimation is that she died sometime between 2:00 AM and 5:00 AM Wednesday morning.

It is our belief that I. Andrews killed his wife during this time and under cover of darkness carried her body to his car, which if parked at the closest point to his room would be approximately 10 yards and there is a 3 foot high partition the entire length of the way which would cover his moving the body. We attempted to contact LINDA CLOUD in apartment #131 who earlier told of having seen Andrews leave in his auto at about 2:30 AM on Wed. Morning but we received no response at her door. We further contend that Andrews saw the maid, Betty Worthy working across from his apt. and stood at his door and pretended to be talking to his wife at about the time she indicated to establish that his wife was still alive at this time.

Opinion

Contacted MR. CORNELIOUS at the Federal Parole Authority and he advised us that Andrews had a file in his office and is now on activity parole. He was sentenced to Life for the murder of Sgt. PAUL GRANT at Camp LeJuene, North Carolina, January 10, 1958.

REQUEST: Day platoon, pick up BETTY WORTHY, 3301 Euclid #267, at 10:00 AM, Saturday, September 21, 1974 convey her to the Criminal Statement Unit and get her statement.

ROWELL HUBBARD

C OF C 71 – 10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| (signatures) | DAYS | 9237 | (signature) |

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT-REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____ COMPLETED ____

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 395 of 768. PageID #: 2130

000259

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 51777

SUBJECT or CRIME: HOMICIDE — DATE OF THIS REPORT: 9-19-74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

ADDRESS OF OCCURRENCE / TYPE OF PLACE / ZONE: FOUND 300 YDS. SO. OF ARLINGTON AVE. & WEST OF FOREST HILLS SWIM POOL — 603

TIME OF OCCURRENCE: FOUND AT 3:00 PM — DATE OF OCCURRENCE: SEPTEMBER 18, 1974 — DAY OF WEEK: WEDNESDAY

SECURED BY — ADDRESS — PHONE — TIME — DAY — DATE

DISCOVERED BY — ADDRESS — PHONE — TIME — DAY — DATE

PAGE 1 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

Assigned to car 9237 with DETECTIVE HUBBARD further investigated the above crime.

At the Jail interviewed the arrested WILLIE H. WATTS who told us the following story: On Tuesday, September 17, 1974 at about 10:30 PM he registered at the Howard Johnson Motel at University Circle, at the time he was in company with LILLY RUTH MURRAY 22 B F S, DOB 7-16-52, 6315 QUIMBY AVE. 361-4521 and DONALD ROBINSON, 12325 CHESTERFIELD AVE. 541-8294. They riding in a 1971 Cadillac 4 door sedan. This auto is suppose to be the property of Donald's brother FLIN ROBINSON. Unable to check this today. Watts went on to say that he and Lilly stayed in the room for a couple of hours then Donald returned with the following people: FLIN ROBINSON, 12325 Chesterfield Ave., LORETTA GROCE 20 B F M and JEAN MURRAY 15 B F S DOB 4-5-59, both of 6316 Quimby Ave. All stayed until about 3:30 AM, September 18, 1974, then the latter four left. Watts and Lilly stayed until about 8:00 AM then Lilly called her mother; MARY MURRAY (DOROTHY) 40 B F M DOB 8-17-34 also of 6316 Quimby Ave. This is the mother of Jean also. Mrs. Murray then drove to the motel and picked up her daughter and Watts, this was at approximately 10:30 AM. We later talked with the females listed above and all coobarated the story of Watts. We are attempting to set up a Polygraph examination for Willie H. Watts for the morning of September 20, 1974. We now feel that this male is not involved.

At 3301 Euclid Ave. the Colonial Motel we interviewed the following: BETTY WORTHY 35 W F M DOB 7-4-39 who lives in apartment #267. She told us that she has known the victim since she moved into the building in August, 1974. That she has never known the victim to go anywhere on a bus or by herself. Further that she has never known the victim to have any friends in her apartment. She also stated that the victim and her husband have been making preparations to move to a new place somewhere out on Euclid Ave. Mrs. Worthy also told us that she saw the victim talking with the husband at about 11:00 AM Wednesday, after this the husband left and did not return until about

ROWELL HUBBARD CONT ON PAGE TWO

COF C71-10

INVESTIGATING OFFICERS: Ernest Rowell 644 — PLATOON: DAYS — CAR: 9237 — APPROVED BY: Walter Deegan Sgt

WEATHER: [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP ____ ° WIND ____ [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER — TIME ASSIGNED ____ COMPLETED ____

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000260777

SUBJECT or CRIME | DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| 0 | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| REGINA ANDREWS | | |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| | | |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| | | |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 2 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

4:00 PM. We also interviewed, MARY SMITH 64 B F DOB 9-20-10, 3376 E. 128 ST. 283-7406 who stated she also saw the husband talking to the victim and that later she and Mrs. Worthy heard the TV in the victims room playing very loud. Also, CHARLES GALLOWAY 36 W M S, 3595 E. 65 ST. 883-5407, Desk Clerk at the motel who stated that the victims husband came into the office and got a key to his room at about 12:00 Noon, later he came back and gave the clerk two keys. Also ~~LINDA CLOUD 20 B F M DOB 8-26-54~~ aptl #131, this apt. is next door to the victims apartment. Mrs. Cloud stated that she did not hear any noise in the victims apartment on Wednesday, she was home at about 12;00 Noon. She further said that she saw the victim get into Mr. Andrews auto at about 2:30 AM, Wednesday Morning.

We questioned ISAIAH ANDREWS 36 B M WID. DOB 4-20-38, 3301 Euclid Ave. Apt # 133. He stated that he left home at 7:40 AM, Wednesday, went to 1375 W. 6th St. Jay Vee's Clothing Store and picked up some clothing. He stayed at this store for about two hours he then went to E. 40 and Woodland Ave. Fishers Food Warehouse and attempted to sell fish to them, he talked with Mr. Sinatra, Meat Buyer. From there he went to the Muslim Temple #18 on Holton Ave. at E. 92 st. arriving at about 11:30 AM and staying until approximately 12:00 Noon. at About 12:30 PM he went home, he was unable to get in, so he left immediately and went back to Jay Vee's Clothing. He stayed until about 1:30 PM and went to E. 105 and St. Clair, McDonald's Rest. At about 2:00 PM he went bact to Temple #18. At about 3:00 PM he went to the Farmers Market, then went home at 4:00 PM. His wife was still not there so he called her mother (Unable to contact her at this time) and told her that she was missing. He then went to the Police Department at Central Station and inquired about his wife, with negative results. He returned home and stayed until contacted by detectives.

We checked at Fisher Foods and talked with HERMAN SINATRA 43 W MM 3330 Bradford Ave. Clev. Hgts. 932-7061 and learned from him that Mr. Andrews had been in to see him at about 11:30 AM, Wednesday and stayed for about 10 Minutes. We interviewed ROLAND WILLIAMS 60 B M M DOB ~~—~~
ROWELL ~~HUBBARD~~

CONT ON PAGE THREE

COF C71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| Ernest Rowell 1606 | DAYS | 9237 | Walter Dugan Sgt |

WEATHER [ ] CLEAR [ ] RAIN [ ] CLOUDY [ ] SNOW TEMP ____ ° WIND ____
[ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER
TIME ASSIGNED ____ COMPLETED ____

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000261 COMPLAINT NO.

SUBJECT or CRIME

DATE OF THIS REPORT

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM REGINA ANDREWS | ADDRESS | PHONE | | | | |

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 3 OF 3 PAGE REPORT. FOLLOW-UP REPORT [X]

8-16-14, 16202 Tarkington Ave. 587-2496 and HENRY MONTGOMERY 56 B M M DOB 5024-18, 10206 Parkgate Ave. 851-1349 and MORTON VENIG W M M, 1375 W. 6th St. All employees of Jay Vee's Clothing. Learned that The store was opened at 8:50 AM and that I. Andrews came in and bought some clothes, further that he later returned at about 12:00 PM and returned some of the clothes. Further learned that this male came in on Friday, September 13, 1974 and gave the store a check for $600.00, this check bounced and ~~the~~ Andrews told Venig that this could not be because his wife had put the money in the bank. I t was later found that she had not put money in the bank.

We contacted SIU and had the victims motel room checked for Blood also check was was the auto of Isaiah Andrews a 1971 Ford Four door, Ohio License DE 4899 with negative results.

We later learned that the victim had asked and received a second BED SPREAD, further that there is always a third pillow in a HIDE-A-BED in the victims apartment. The second spread and pillow are missing from the room. Mrs. Andrews stated that when he returned home at 4:00 PM Wednesday the bed was made up and nothing seemed to be wrong or missing from the room.

Andrews and the victim have been married since August 24, 1974, he stated that they have argured about his joining the Muslim faith, the part about her having to wear long skirts and headdress, she also was upset about his quiting his job (He resently quit and started selling clothes and fish for the Muslims).

It would appear that Isaiah Andrews killed his wife in their apartment and carried her to the spot where she was found. Returning home he was able to clean up to the point that SIU was unable to find any evidence of a crime having taken place in the room. It is our opinion that no one else would benefit by moving the body from the motel room after killing the victim but Andrews.

ANDREWS WAS ARRESTED AND HELD FOR INVES. C/W THIS CRIME.

Why would c [illegible] bounce

ROWELL HUBBARD

COF C 71 - 10)

INVESTIGATING OFFICERS [signature] 1464 | PLATOON DAYS | CAR 9237 | APPROVED BY Walter Dugan Sgt.

WEATHER [ ] CLEAR [ ] CLOUDY [ ] RAIN [ ] SNOW TEMP. ____ WIND ____ [ ] A. I. U. [ ] S. I. U. [ ] REQUESTED [ ] NOT REQUESTED [ ] ON SCENE

ASSIGNMENT RECEIVED FROM: [ ] RADIO [ ] DISTRICT [ ] DET. BUR. [ ] OTHER

TIME ASSIGNED ____ COMPLETED ____

Continued from page two statement of ISAIAH ANDREWS charge of MURDER.

---

Theh I asked my wife to write out one and leave out amount space in blank. She did. The amount of the money that my clothes cost was $695.00. I told him to call up on the check before I filled in the space and he did call up. Her check would not cover the amount. Thskx Then I told him to forget about the clothes, at that time.

Q. On Tuesday Sept 17th,1974, what time did youand your wife retire?
A. About 11.15
Q. Did you leave the building after that?
A. The next morning at about 7.40 A.M. on the 18th.
Q. During the early morning of Wednesday Sept 18th,1974 did you or your wife leave the building?
A. No sir.
Q. Do youknow where Forest Hills Swimming pool is and have you ever been there?
A . The only knowledge Ihave of a ForestHills is that I was looking for an insurance job, I have not been out there to my knowledge.
Q. Have you ever had a loss of memory or fainting spells or blackouts?
A. No. sir.
Q. Have you ever been convicted of a crime ?
a Yes sir. I was in the maine Corps and I killed a fella Marine. That was Jan10th,1958. I served 15 years for it.
Q Would you tell us what the circumstances were in this marines Death?
A. This was over a disagreement over a garbage can and my going to the finals at Boston, I was in the marine Copps Boxing team. We disagreed and he said I called him an M.F. WE went over to the Captains office and he said he was goingto give me Summary Court martial for it. then I went back to the Barracks and I got my M 1, and I went back to this quarters and I told him that we were going back to the Captains Quarters and I toldhim he was going to tellthe truth and at that time He reached in his locker and at that time he was known to keep a 45 there and I pulled the trigger on him.
Q. At your Court martial did you make a statement saying that sh when yousaw the blood coming from the Sergeants chest that you felt relief. ?
A. Notk to my knowledge, that happened a long time ago.
Q. Have you ever been in any mental institutions?
A. Only when the Marines checked me out due to this shooting.
Q. Have you and your wife had any disagreements?
A. Yes we have. We disagreed about me changing jobs.
Q.We also dm disagreed about her not changing into the Muslins habits of changing clothes or wearing of the clothes.
We disagreed about $70.00 from the baazar that was held this month but we found it.
Q. OnSept 19th,1974, Thursday you were aware that your wife was at the morgue, did you go and inquire about it?
A. NoxIxwant I was aware that she was at the morgue and no I didn't go and inquire about her. i went to my mother in laws house.Around 8 o'clock in the morning.
Q. That after noon Thursday, did yougo and sell any clothes?
A. No.
Q. How many bed spreads did you have in your apartment that belonged to the hotel?
A to my knowledge the only one that wasd on the bed.
Q. How many pillows are you aware of having in the apartment.?
a The two thatwas on the bed.
Q . Is there anything else that you like to tell us about this?
A. I want xm the prosecutor to know that the clerk told told him that I came back at 11. o'clock andasked for a key.

continued on page ~~three~~ Four. SIGNED Isaiah Andrews

Ernest Rowell
Wm Wilfiam Wildman, det 1673

000283377

| SUBJECT OR CRIME | TRACT | IN ZONE | DATE |
|---|---|---|---|
| DEAD BODY /SUSPECTED HOMICIDE UNIDENTIFIED | | 615 | 9/18/74 |

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |
| VICTIM UNIDENTIFIED | ADDRESS UNK | PHONE UNK | approx 25 | f | c | unk |
| REPORTED BY PLT. SOBOCINSKI #2157 | ADDRESS | PHONE | | | | |

ADDRESS OF OCCURRENCE FOREST HILLS PARK, — TYPE OF PLACE WOODED AREA,

TIME OF OCCURRENCE approx. 3p — DATE OF OCCURRENCE 9/18/74 — DAY OF WEEK wed

SECURED BY — ADDRESS — PHONE — TIME — DAY — DATE

DISCOVERED BY JESSE BYOUS — ADDRESS 11616 Durrant, — PHONE 3p wed, 9/18/74, DAY — DATE

WHAT OCCURRED? (DETAILED DESCRIPTION OF PROPERTY INVOLVED OR SUSPECTS)

Upon arriving at the scene, was met by JESSE BYOUS, who told us, that while he was parked there, he spotted a bundle, in the wooded area, upon investigating same, a foot came out of the bundle, he then notified, the police. Upon further investigatin ,showed the victim, to be described as a colored femalez ,25yrs 56in. tall, 112lbs, lt.skin, blk hiair,bro. eyes,wearing bed clothing, and was wrapped in a bed spread, . She also had a old scar on the right thigh,1 1/2in. / 1/2in. wide, she had a yellow ring,on the second finger ,right x hand,and two yellow rings, on the ring finger, of her left hand. NOTHING FURTHER AT THIS TIME....

BODY WAS FOUND: 300 yds, south of arlington,ave, in foresthills park, 24ft. off the pavement,in the woods.

CONVEYED: TO THE MORGUE: by zone car, 621, where dr, gerber, pmounced victim D.O.A. at 5;05p, and diagonised abrasions of right x knee, multiple stab wounds of the neck line,and a four stab wounds of the rt. abdomen,....

LINE 341, was notified, of the dead body, Unidentified, h per Plt. Fores, also SIU, was x on the scene, car #151,who took photos and evidence, Det. Kane, Det. Patrich,

INVESTIGATING OFFICERS SOBOCINSKI 2157 — GUNSCH 2354 — CAR 603 — ASSIGNMENT RECEIVED 3;04p M — OTHER — RADIO ☐ PHONE ☐

9134,Mc Kibben,

ALSO INVESTIGATED BY car, 632, sgt. Malorey, — OTHER UNITS NOTIFIED Det.Homicide Det. Kowelski, — APPROVED BY — DATE

Hubbard,9236,

OFFICER MAKING REPORT — TAKEN BY barb.johnson — TIME 7;30p — DATE 9/18/74

TELETYPED BY — TIME — DATE — TELETYPE NO.

CLEVELAND POLICE DEPARTMENT — C OF C 71-R C-1 — ORIGINAL INVESTIGATION REPORT

EXTRA COPY

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000264

| | | | | | | |
|---|---|---|---|---|---|---|
| SUBJECT or CRIME: DEAD BODY/ SUSPECTED HOMICIDE | | DATE OF THIS REPORT: SEPT.18,1974 | | COMPLAINT NO. 51777 | | |
| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
| VICTIM: UNIDENTIFIED BLACK FEMALE | ADDRESS | PHONE | | F | B | |
| ADDRESS OF OCCURRENCE: 300 YARDS SOUTH OF ARLINGTON AVE. | TYPE OF PLACE: 100 YARDS WEST OF FOREST HILL SWIM POOL | | | ZONE: 603 | | |
| TIME OF OCCURRENCE: FOUND AT 3:00 PM | DATE OF OCCURRENCE: SEPT.18,1974 | | | DAY OF WEEK: WEDNESDAY | | |
| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE | |
| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE | |

PAGE 1 OF 4 PAGE REPORT.

Assigned to car 9236 with DETECTIVE HUBBARD received an office assignment from SERGEANT DUGAN to investigate a DEAD BODY at Arlington and Thornhill Ave. Assignment received at 3:15 PM. Arrived at the scene at 3:30 PM and together with CAPTAIN WRONA, and SERGEANT MALLOY on car 651, PATROLMAN SOBOCINSKI #2157 and PATROLMAN GUNSCH #2354 on car 603, DETECTIVE KANE, DETECTIVE PETRICK and DETECTIVE CRAWFORD on car 9151 investigated.

VICTIM..........UNIDENTIFIED BLACK FEMALE.

This female was conveyed to the morgue by PATROLMAN GLASNEY #2444 and PATROLMAN LILLASH #331 on car 621 where she was pronounced DOA by DOCTOR GERBER, COUNTY CORONER at 5:05 PM.

MORGUE..........The undressing of the victim was witnessed by DET. MC KIBBEN on car 9234 and the following was found:

1) One white and blue pillow, make: BLESSED SLEEP, with blood on same.
2) One white sheet was obtained from around the victim's legs containing blood. No markings on this sheet.
3) One brown and yellow prints 3/4 length house coat, with black trim around the neck. This neck lining appeared to contain several stab holes. The brown and yellow print pattern appeared to be in 8 inch by 8 inch blocks with alternating single designs and the adjacent blocks contained four designs. The upper portion of the house coat was soaked with blood.
4) The victim also had a light blue, trimmed in white, lingerie waist length top. Small size, 100 % nylon. The make was MOVIE STAR.
5) Underneath #4 was a blue matching top, which appeared to contain several stab holes of the right side. This also had blood on same. This article was also 100 % nylon, small size and MOVIE STAR make.
6) There was also a white sheet underneath the victims body, containing blood and fetal material on same. This sheet appeared to have several holes in the center.

ROWELL HUBBARD

CONT ON PAGE TWO

C OF C 71-10

| | | | | |
|---|---|---|---|---|
| INVESTIGATING OFFICERS: Ernest Rowell 1606 | | PLATOON: DAYS | CAR: 9236 | APPROVED BY: Walter Dugan, Sergt. |
| WEATHER: ☒ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW | TEMP 61° WIND 8 N. | ☐ A. I. U. ☒ S. I. U. | ☐ REQUESTED ☐ NOT REQUESTED | ☒ ON SCENE |
| ASSIGNMENT RECEIVED FROM: ☒ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER | | TIME ASSIGNED: 3:30 PM | COMPLETED: 10:30 PM | |

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 401 of 768. PageID #: 2136

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

000265

SUBJECT or CRIME: DEAD BODY/ SUSPECTED HOMICIDE

DATE OF THIS REPORT: SEPT.18,1974

COMPLAINT NO. 51777

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE |
|---|---|---|
| UNIDENTIFIED BLACK FEMALE | | |

ADDRESS OF OCCURRENCE: | TYPE OF PLACE: | ZONE:

TIME OF OCCURRENCE: | DATE OF OCCURRENCE: SEPT.18,1974 | DAY OF WEEK: WEDNESDAY

SECURED BY: | ADDRESS: | PHONE: | TIME: | DAY: | DATE:

DISCOVERED BY: | ADDRESS: | PHONE: | TIME: | DAY: | DATE:

PAGE 2 OF 4 PAGE REPORT. FOLLOW-UP REPORT ☐

7) There was also a white pillow case under the back of the victim with blood on it. There were no markings on the pillow case.
8) There was also a tan bed spread underneath the victim, with no markings. A laundry tag was located with the number 167 in pink The spread was MORGAN JONES FULL MADE IN USA.
9) Also under the victim there was a white matress cover with blood on same and extremely worn. There was a tag on the matress cover which was unidentifiable.
10) There was also a white towel underneath the victim with a one inch yellow strip down the center. The victim did not have on a Bra or Panties.

PERSONAL PROPERTY OF THE VICTIM CONSISTED OF THE FOLLOWING:
1) One yellow metal ring on the second finger of the right hand, next to the thumb. The ring appeared to be braided copper or metal.
2) The victim also had two yellow metal rings, of which one contained a white stone. The rings were on the ring finger of the left hand.

PHYSICAL APPEARANCE OF THE VICTIM:
1) All of the victims fingernails and toenails were polished in light pink color.
2) There appears to be an old surgery or unattended cut scar, 1½ inches long and ½ inch wide on the inner portion of the right leg.
3) There also appears to be four stab wounds of the right abdomen.
4) There was an abrasion of the left knee.
5) The victim sustained numerous stab wounds and cut wounds to the front and left and right side of her neck.

THERE WERE NO OUTSTANDING SURGICAL SCARS, MISSING TEETH, OR BIRTH MARKS.

~~XXXXXX~~

CONT ON PAGE THREE

ROWELL HUBBARD

C OF C 71-10

INVESTIGATING OFFICERS: Ernest Rowell 1606 | PLATOON: DAYS | CAR: 9236 | APPROVED BY: Walter Duigan Sgt.

WEATHER: XX CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP 61 ° WIND 8 N | ☐ A. I. U. ☒ S. I. U. | ☐ REQUESTED ☐ NOT REQUESTED | ☒ ON SCENE

ASSIGNMENT RECEIVED FROM: ☒ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER | TIME ASSIGNED | COMPLETED

# CLASS 1 SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000266 51777

SUBJECT OF CRIME: HOMICIDE — DATE OF THIS REPORT: SEPT.21,1974

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| | | | | | | |

| VICTIM | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| REGINA ANDREWS | 3301 EUCLID AVE. #133 | 391-2500 | 24 | F | B | M |

| ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE |
|---|---|---|
| 300YDS. SOUTH OF ARLINGTON-100YDS. WEST OF FOREST HILLS SWIMMING POOL | | 603 |

| TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK |
|---|---|---|
| FOUND AT 3:00 PM | SEPTEMBER 18th.,1974 | WEDNESDAY |

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| | | | | | |

PAGE 1 OF 1 PAGE REPORT. FOLLOW-UP REPORT XXXX

While assigned to car 9237 this date, alone, I further investigated the above homicide of REGINA ANDREWS.

I went to 3301 Euclid Ave. and there I interviewed a BETTY WORTHY who lives at this address and is also employed as a maid there.She then told me that she had seen the suspect ISAIAH ANDREWS at his apartment on the 18th of September on a Wednesday around 11:00 AM. She said that she new it had to be around 11:00 AM because she had just went back to room #131 to call a MRS. CLOUD whom she was to wake-up at 11:00 A.M. She stated that she had observed him standing in his door way talking with his wife at this time. She stated that he then stepped out side for a second after slamming the door real hard, and he then went back into the apartment.After he re-entered the apartment the T.V became real loud and a short time later MR. ANDREWS came out carrying a plastic bag over his shoulder like what ever was in it was real heavy. He then went to his car and placed this bag in to the trunk of his car, closed the trunk XXXX and then went back in to the house. A few minuets later he appear in his door way again, and while standing there he appeared to be talking to someone in the room. She said that she noticed that at the same time appeared to be watching her. He then closed the door and left.

NOTE: THIS WAS THE TIME OD DAY THAT ANDREWS SAID THAT HE HAD RETURNED TO HIS APARTMENT BUT HE COULD NOT GET IN BECAUSE SHE WAS NOT AT HOME AND HE DID NOT HAVE A KEY, SO HE LEFT WITHOUT ENTERING THE ROOM.

This female (BETTY WORTHY) was conveyed to the COUNTY MORGUE where she viewed the bedding that was found with the body of REGINA ANDREWS.She then identified the bed spred as belonging to the hotel but she could not say about the sheets & mattress cover. She did state that the pillow looked like one of there pillows, but she was not for sure. She said that she had issued two pillows to MRS. ANDREWS, and there were at least three pillows. A check of this room showed only one bed spred and two pillows.This female was then conveyed to our Statement Unit where a statement was obtained. LINDA CLOUD SAID THAT SHE COULD NOT A STATEMENT UNTIL MONDAY.

I COULD NOT CONSULT THE PROSECUTOR THIS DATE AS IT BEING SATURDAY AND THEY CLOSE AT 12:00 noon.REQUEST HE BE CONTACTED SUNDAY, SEPT. 22,1974.

HUBBARD

C of C 71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| William Hubbard #1123 (signature) | DAYS | 9237 | (signature) |

WEATHER: ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ____ ° WIND ____ ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER

TIME ASSIGNED ____ COMPLETED ____

CLASS I

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 006267

51777

SUBJECT or CRIME: DEAD BODY/ SUSPECTED HOMICIDE

DATE OF THIS REPORT: 9/18/74

| COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S |
|---|---|---|---|---|---|---|
| VICTIM | ADDRESS | PHONE | | F | C | |
| REGINA ANDREWS | 9301 EUCLID # 133 | | | | | |

ADDRESS OF OCCURRENCE / TYPE OF PLACE: Foresthills Municpal Swimming Pool Parking area. ZONE: 615

TIME OF OCCURRENCE: found at 3:PM — DATE OF OCCURRENCE: 9-18-74 — DAY OF WEEK: WED.

| SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE |
|---|---|---|---|---|---|
| DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE |

PAGE 1 OF 1 PAGE REPORT. FOLLOW-UP REPORT X

BIAT 329
LAB 312

Assigned this date 9/18/74 to 9151, and while in company with Det. Kane, and Ptlm. Crawford #2423 received an assighment from radio to Forest Hills Swimming pool, Arlington and Thornhill. Responded and arrived at 4:00PM

Ten Plain Dealer papers dated Monday august 26,1974 brought in to the SIU office for possible blood typing and fingerprint check.

Processed with Benzine Alcohol, one partial palm print developed photographed and to be known as L.P. # 29187. ~~partial print completely do not identify~~ Bernard J. Thalsdorf Sgt. PRINT NOT SUFFICIENT CLEAR ENOUGH TO COMPARE

Twenty (20) Crime scene expos taken of body and newspapers and general crime scene. To be known as CS# 20402.

VICT BLOOD "C" TYPE "O"

Trace to Forensic Lab- Three Plain Dealer papers found approximately 61 feet from the body easterly, with blood stains on same, for possible typing. Leaves and twigs from under the body with possible blood stains on same. Leaves, twigs, and dirt from ground next to the body. Leaves and twigs from the small tree the body lay under.

TYPE "O" ON NEWSPAPERS

Pillow case found 21 feet from body in northerly direction, with possible blood stains on same. Found next to the curb of the parking lot.

A brown plastic pill bottle with name of Ron Martin found near the head of the body.

Arrested: Willie Watts CPD # 141061

James Petrick #2287

COFC71-10

| INVESTIGATING OFFICERS | PLATOON | CAR | APPROVED BY |
|---|---|---|---|
| Petrick 2287-Kane 748 - Crawford 2423 | 2nd. | 9151 | Bernard J. Thalsdorf Sgt. |

WEATHER: X CLEAR / CLOUDY / RAIN / SNOW — TEMP 60 ° — WIND 8 n. — A.I.U. / S.I.U. X — REQUESTED / NOT REQUESTED — X ON SCENE

ASSIGNMENT RECEIVED FROM: X RADIO / DISTRICT / DET. BUR. / OTHER

TIME ASSIGNED / COMPLETED: 3:50PM 9/18/74

# SUPPLEMENTARY REPORT

CLEVELAND POLICE DEPARTMENT

COMPLAINT NO. 000268

SUBJECT OR CRIME | DATE OF THIS REPORT

COMPANY OR OWNER | ADDRESS | PHONE | AGE | SEX | RACE | M-S

VICTIM UNIDENTIFIED BLACK FEMALE | ADDRESS | PHONE

ADDRESS OF OCCURRENCE | TYPE OF PLACE | ZONE

TIME OF OCCURRENCE | DATE OF OCCURRENCE | DAY OF WEEK

SECURED BY | ADDRESS | PHONE | TIME | DAY | DATE

DISCOVERED BY | ADDRESS | PHONE | TIME | DAY | DATE

PAGE 4 OF 4 PAGE REPORT. FOLLOW-UP REPORT ☐

occupied by two persons. Mr. Kojak stated that Watts said he had just gotten in from the airport and did not have any baggage with him at this time. Mr. Kojak had observed that Watts arrived at the hotel in a BLUE CADILLAC, OHIO LICENSE # FF 9944 and jotted this down on his registration card. Mr. Kojak demanded identifacation from Watts and Watts presented his Ohio Driver License, number CP088092, with the name W. H. WATTS 12325 Castlewood Ave.

We went directly to 12325 Castlewood Ave. an on our arrival we observed PATROLMAN HOWARD #705 and PATROLMAN OLIVER #2484 on car 620 in front of the house. Inside we interviewed MELBA WATTS 47 B F WID. DOB 9-1-27 and learned that she is the mother of the suspect. Mrs. Watts had called the police because of a BURGLARY at her home. She belieeves this was done by her son, Willie. She further stated that Willie is AAWOL from the army and that he had been arrested for cashing bad checks. On 9-16-74 Mrs. Watts had gone to County Jail and bonded Willie out. He was turned over to the Army M.P.'s and she thought he would be sent back to his army base. However, he was released by the army on his own recognigance and was suspose to leave by air on 9-17-74. He does not have a key to the house at 12325 Castlewood. On 9-17-74 Mrs. Watts came home and found that Willie had gotten into the house by opening the upstairs window. He told her that he had missed his plane and could not get into the house. Today she came home and found that the house had been broken into and her MINK STOLE had been taken. There was also other items, a typewriter and TV set was also taken. A key to the front door was taken and she feels sure that this was done by her son.

It is our opinion that this crime was commited by Willie H. Watts, who is apparently attempting to sell his mothers coat and her other valuables to get money to get away from this city.

ROWELL HUBBARD

NO VALUABLES TAKEN FROM BODY OR DEF ROOM.

C OF C 71-10

INVESTIGATING OFFICERS [signature] 1606 | PLATOON DAYS | CAR 9236 | APPROVED BY [signature]

WEATHER ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ SNOW TEMP ° WIND ☐ A. I. U. ☐ S. I. U. ☐ REQUESTED ☐ NOT REQUESTED ☐ ON SCENE

ASSIGNMENT RECEIVED FROM: ☐ RADIO ☐ DISTRICT ☐ DET. BUR. ☐ OTHER TIME ASSIGNED COMPLETED

Scientific Investigation Unit. 9/18/74

RE: Homicide of unidentified colored female. This female found wrapped in bed sheet, blanket, and pillow under her right arm. Assigned this date 9/18/74 with Detective Kane, and Ptlm. Crawford #2423. Investigation made on the scene at Forest hills Municipal Swimming Pool.

Body found at the southerly edge of the parking lot at this location, approximately 200 yards south of Arlington, on the westerly side of the pool.

Below is a drawing of the general area showing the body and the trace evędence that was gathered. This evidence being a pillow case with possible blood stains on same 21 feet north of the body position, and ten Plain Dealer newspapaers found 61 feet east of the body, with blood stains on these papers. These papers approximately 5 feet from each curb of the parking lot.

A total of twenty crime scene expos takem of this area- CS# 20402.




Det. Petrick [signature] #2287

Det. Kane [signature] #748

CORONERS 721-5610

000270

Duplicate file - original file in suite

**COURT No.** 17802 PH **CRIMINAL COMMON PLEAS COURT, CUYAHOGA COUNTY**

**The State of Ohio** **JOHN T. CORRIGAN, Prosecuting Attorney**

**VS**

| | Indicted | Arraigned |
|---|---|---|
| Avarino Andrew | | |
| | | |
| | | |
| | | |
| | | |

**Witnesses**

**CHARGE** Agg murder

**Date Crime**

**Date Arrest**

**Plea**

**Pre-Trial Date** **Ass't. Prosecutor**

**Disposition**

**Attorney**

**Trial**

**Verdict**

**Sentence**

**Judge** **Pros.**

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | CASE NO. CR 17901 |
| ISAIAH ANDREWS, | ) | |
| Defendant-Appellant | ) | |

**MOTION TO DISMISS APPLICATION FOR RECONSIDERATION**

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

GEORGE J. SADD #0005981
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Defendant-Appellant, Pro Se

ISAIAH ANDREWS #A141-345
P.O. Box 788
Mansfield, Ohio 44901

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

STATE OF OHIO, )

Plaintiff-Appellee )

-vs- ) MOTION TO DISMISS APPLICATION FOR RECONSIDERATION

ISAIAH ANDREWS, )

Defendant-Appellant )

Now comes Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests this Honorable Court dismiss the Application for Reconsideration for the reasons stated in the attached brief, made part of this motion.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By ______________________
GEORGE J. SADD #0005981
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7800
Attorneys for Plaintiff-Appellee

SERVICE

A copy of the foregoing was mailed this 14th day of September, 1994, to Isaiah Andrews #A141-345, P.O. Box 788, Mansfield, Ohio 44901.

By ______________________
Assistant Prosecuting Attorney

## BRIEF

## STATEMENT OF THE CASE AND FACTS

On March 12, 1975, the appellant, Isaiah Andrews, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01. The appellant was sentenced to a term of life imprisonment. The Eighth District Appellate Court affirmed appellant's conviction in State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

The appellant filed a Petition for Post-Conviction Relief on April 8, 1992, and a Petition for a Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462), attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the trial court denying appellant's Petition for Post-Conviction Relief. The Eighth Appellate District granted the State's Motion to Dismiss on or about February 25, 1994.

On March 3, 1994, the appellant filed an appeal from the trial court's dismissal, without a hearing, of his Petition for Post-Conviction Relief. This appellate court dismissed sua sponte his appeal on August 9, 1994. The reason for the dismissal was appellant's failure to file a timely notice of appeal pursuant to App. R. 4(A).

The appellant filed an Application for Reconsideration with this Court on August 18, 1994.

LAW AND ARGUMENT

ASSIGNMENT OF ERROR:
THE ERRORS AND OMISSIONS OF THE CLERK OF THE COMMON PLEAS COURT DENIED DEFENDANT ANDREWS PROCEDURAL AND/OR SUBSTANTIVE DUE PROCESS WHICH IS A VIOLATION OF THE DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

In his sole assignment of error, the appellant argues that he mailed a timely notice of appeal to the Clerk of the Common Pleas Court, but that because of an error by the Clerk, the notice was not filed. The appellant continues by arguing that his alleged second notice was sent to the court on time, but that the Clerk of Courts "chose to date stamp his material" after the statutory period. Appellant's claims are unfounded.

As the general rule, the appellant has the burden to demonstrate that a reversible error was committed. Thus, if the error cannot be shown in the record, the appellate courts are required to observe "the presumption of regularity in the proceedings below." See, Yates v. Evatt (1991), 59 U.S.L.W. 4509; and Chapman v. California (1967), 386 U.S. 17, at 23-24. In the present case, the record demonstrates that no such initial notice was filed. The record is dehors of any evidence demonstrating the filing of the alleged initial filing. Moreover, the appellant presents no certification of delivery of the notice, as he did with the one filed on March 3, 1994. The only evidence presented by the appellant is an unsigned form from the Clerk of Courts' office and an affidavit signed by the appellant's case worker.

In his affidavit, made on August 16, 1994, the case worker wrote that the appellant asked him to contact this Honorable Court

in relation to a notice of appeal with which the appellant was having problems. the case worker wrote that such request was made to him on or about February 20, 1994, approximately 25 days after the lower court made its Findings of Fact and Conclusions of Law. The appellant failed to demonstrate that a reversible error was committed. The presumption of regularity in the procedure is maintained by the lack of any evidence in the record and appellant's failure to present any evidence, credible enough as to shift the presumption.

The appellant filed his appeal on March 3, 1994. however, he argues in his second claim that he filed on time, because he delivered his Notice of Appeal on February 28, 1994. In arguendo, assuming that he filed his Notice of Appeal on February 28th, it is still past the statutory period. App. R. 3 establishes, in pertinent part, as follows:

* * *

> (A) Filing the Notice of Appeal. An appeal as of right shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4. * * *

App. R. 4 establishes that a party shall file the Notice of Appeal within 30 days of the later entry of the judgment. The appellant wrongly assumes that the term "thirty days" contained in App. R. 4 is equivalent to a month. The assumption is incorrect. As he recognizes, the last entry of judgment occurred on January 26, 1994. He also argues that he filed his notice on February 28, 1994. Even assuming that the filing took place on the 28th, appellant's filing occurred 33 days after the final judgment was entered. As in the present case, request for a post-conviction

relief is civil in nature. The filing of the Notice of Appeal within the period of time provided by statute is jurisdictional and the failure to file on time is considered to be fatal. See, Peiper v. Burden (1984), 16 Ohio App. 3d 174. The appeal, in the case sub judice, was presented as the result of the dismissal of a post-conviction relief request. Appellant's failure to file within the 30-day period is fatal, and this appellate court lacks jurisdiction to consider his appeal.

CONCLUSION

For the foregoing reasons, the State of Ohio respectfully requests that this Honorable Court strike appellant's Application for Reconsideration.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By [signature]
GEORGE J. SADD #0005981
Assistant Prosecuting Attorney

RECEIVED

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | C.A. No. 66960 |
| Plaintiff-Appellee, | : | C.R. No. 17902 |
| -vs- | : | |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant | : | |

APPLICATION FOR RECONSIDERATION

COMES NOW Defendant-Appellant, Isaiah Andrews, in Pro Se, pursuant to App. Rule 26 and request this Honorable Court to grant him reconsideration of this Court's judgment filed on August 9, 1994.

The reasons for this application for reconsideration are more fully set forthand addressed in the attached memorandum.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

## JURISDICTIONAL STATEMENT

The Court of Appeals retains jurisdiction to reconsider its own judgment unless and until the Ohio Supreme Court grants the motion for leave and accepts jurisdiction over the case. State v. Murphy, 49 Ohio St.3d 206 (1990). See also Ohio Supreme Court Rule II Sect. 2,4. In addition, Article IV Sect. 3(b)(1)(f) of the Ohio Constitution grants Courts of Appeal inherent power "(i)n any cause on review as may be necessary to its complete determination."

Appellant Andrews' appeal to this Court was **Dismissed Sua Sponte** at appellant's cost for alleged failure to file a timely Notice of Appeal which was not the fault of Appellant, rather procedural errors/omissions made by the Clerk of Common Pleas Court. Accordingly, this Court had, and still has, jurisdiction to entertain a motion for reconsideration of its judgment.

Appellant Andrews' application for reconsideration sets forth a colorable claim of errors and/or omissions made by the Clerk of Common Pleas Court which denied him **Procedural and Substantive Due Prcess.** **Rule 36. Clerical Mistakes:** ~~Clerical~~ mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corected by the Court at any time.

When reviewing an application for reconsideration, the Appellate Court must determine "whether the motion call to the attention of the Court an obvious error in its decision or raises an issue for consideration that was either not considered at all or was not fully considered by the Court when they should have been.

Appellant Andrews was denied access to this Court by Common Pleas Clerk's errors and omissions which deprived him of **Procedural** and Substantive Due Process.

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | C.A. No. 66960 |
| Plaintiff-Appellee, | : | C.R. No. 17902 |
| -vs- | : | |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant | : | |

**MEMORANDUM OF LAW AND FACTS IN SUPPORT OF APPLICATION FOR RECONSIDERATION**

Appellant Andrews respectfully request that this Court reconsider its decision as filed by entry date August 9, 1994, and reverse the judgment, or in the alternative, allow him to have a new appeal before this Court with the assistance of Appellate Counsel.

The opinion rendered herein by this Court on August 9, 1994, in State v. Andrews, Case No. 66960, addressed none of the assignments of errors advanced by Appellant, rather it took issue with procedural matters which were outside of Appellant's ability to control, and but for Common Pleas Clerks errors and omissions, which denied Appellant Andrews **Procedural and Substantive Due Process**, the meritorious issues presented in the Appellant's Brief mandated reversal by both the United States Constitution, the Ohio Constitution, and the Revised Code.

The issues presented herein in support of this claim were not advanced on appeal as assignments of errors. An examinatin of all

records and documents will reveal that appellant is by no releYult for presenting this Court a late Notice of Appeal.

me'

**THAT THE ERRORS AND OMISSIONS OF THE CLERK OF COMMON PLEAS COURT DENIED DEFENDANT ANDREWS PROCEDURAL AND/OR SUBSTANTIVE DUE PROCESS WHICH IS A VIOLATION OF DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.**

A. **THE FACTS:**

1. This Court entered its judgment in Appellant's case on ..ust 9, 1994. Please see State v. Andrews, Case No. 66906. The Rules of Appellate Procedure, Rule 26 permits the filing of an application for reconsideration within ten (10) days of entry of judgment.

2. The Court of Common Pleas, Cuyahoga County, per Judge Carl J. Character issued **Findings of Fact and Conclusions of Law** on January 26, 1994. Please see **Exhibit "A"** attached hereafter.

3. On or about February 4, 1994, I mailed a Notice of Appeal to the Clerk of Common Pleas Court, Cuyahoga County.

4. Ten (10) days later, February 14, 1994, I wrote the Clerk of Common Pleas Court, informing him that I had not received my Notice of Appeal back and requested that he check his files under State of Ohio v. Isaiah Andrews, Case No. 17902 and return my Notice of Appeal as soon as possible. The Clerk of Common Pleas Court date stamped this letter as received: February 18, 1994. Please see **Exhibit "B"** attached hereafter.

5. When the Clerk of Common Pleas Court responded to my letter of February 14, 1994, he claimed that he did not have access

to such documentation; that is why he was not able to comply with my request, and at the bottom of the same letter, he appended a hand written note, "Since you filed a Notice of Appeal your entire file was transferred to the above address." Above address in the instant case was the Cuyahoga County Court of Appeals. Please see **Exhibit "C"** attached hereafter.

6. As you learned Ladies and Gentlemen know, the correct procedure when one files a Notice of Appeal with Praecipe and Docketing Statement, the Clerk of Court is suppose to file and date stamp those documents and return them to the sender.

7. When the Clerk of Common Pleas Court failed to follow procedures, I did three things: **first**, I wrote the Chief Judge about the matter; **second**, I had my Unit Case Worker, Mr. Richard Leary call the Eighth Appellate Court, and when he got in touch with the Honorable Judge James Sweeney, Mr. Leary allowed me to talk with him; Judge Sweeney assured me that the Chief Judge had received my letter and that my Notice of Appeal would be forth Comming. Please see attached Affidavit of Richard Leary, **Exhibit "D"**.

8. When the promises of Judge Sweeney did take place, I was forced to file another Notice of Appeal, Praecipe, and Docketing Statement and my Appellant Brief, all of which were Notarized on February 23, 1994, as is attested to by the date of notarization and signing, and I placed those legal documents in the U.S. Mail box in front of the North Inmate Dinning Room on the 23rd of February 1994 with a request for **Certified Receipt Return mail: P**

Please see attached Exhibits "E" and "E-1", which

279 328 cates that the aforementioned legal material was

clear the Eight Appellate Clerk of Court on 2/28/94.

rec he Clerk of Court chose to date stamp this material

uded my Appellant Brier, 3/3/94, eventhough Exhibits "E"

indicates that he recieved this legal material four (4)

r to 3/3/94.

. The computation of time, any period of time prescribed or

d by the Appellate Rules of Procedure, by Local Rules of any

, by an order of Court or by any applicable statute, the day

e act is not included nor is the last day if it is a Saturday,

nday or a legal holiday, in which event the period runs until the end of the next day. In the case sub judice, the 26th of January 1994 did not count against appellant nor did the 26th of February 1994, since the first date was the starting or default and the second date was the last date which fell on a Sunday; because service of both parties was by mail, Appellant had an additional three days to complete the filing of his Notice of Appeal, which gave Appellant until March 1, 1994.

B. ARGUMENT:

In paragraph 5 of The Facts, the Clerk of Court claimed that he did not have access to the referenced documentation and his reason for lack of access at that time is revealed by his appended note, "Since you filed a Notice of Appeal your entire file was transferred to the above address, the Eighth Appellate Court." Logic dictates that if Appellant Andrews had not filed a timely

Notice of Appeal, Praeicpe, and docketing statement, then why was my entire file transferred to the Appellate Court?, as indicated by the Clerk of Court's appended note on **Exhibit "C"**.

Common Pleas Court's Findings were issued on 1/26/94; 2/26/94 was a Sunday; service by both parties was by mail which gave Appellant three (3) additional days to complete his legal business; therefore, Defendant Anmdrews had until the 1st of March to deliver his Notice of Appeal, and since he delivered it on 2/28/94, Defendant Andrews did file a timely Notice of Appeal.

C. **THE LAW:**

The Supreme Court has stated, "It is now established beyond doubt that prisoners have a constitutional right to access to the courts, **Bounds v. Smith**, 430 U.S. 817, 821, 94 S.Ct. 149 (1977) The Courts have cited both the Due Process Clause and the first Amedment as a basis for the right. *Compare* **Procunier v. Martinez**, 416 U.S. 396, 419, 94 S.Ct. 1800 (1974), *with* **Milhouse v. Carison**, 652 F.2d 371 (3d Cir. 1981), and that access must be "adequate, effective, and meaningful. **Bounds v. smith**, id. at 822.

Although early decisions referred to the "constitutionally and statutorily protected availability of the writ of habeas corpus, **Johnson v. Avery**, 393 U.S. 483, 489, 89 S.Ct. 747 (1969); *accord*, Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640 (1941), it is now acknowledged that the right extends to other types of legal proceedings. **Bounds v. Smith**, supra, at 827 ("original actions seeking new trials, release from confinement, or vindication of fundamental rights").

## CONCLUSION

Appellant Andrews has put forth a colorable claim of constitutiona right to **Procedural** and **Substantive Due Process**; therefore, there is substantive grounds for relief under **Criminal Rule 36** and/or **Ohio Rules of Civil Procedure, Rule 60.** After consideration of this application for reconsideration, the suporting Affidavit, all the files and records pertaining to the proceedings in this matter that were originally transmitted to this Honorable Court, the Memorandum of Law, Argument, and Facts in Support of Application for reconsideration, and the Appellant's Brief filed by appellant **pro se** counsel, this Honorable Court should grant reconsideration, reverse the decision of this Court, or in the alternative, appoint appellate counsel, and allow appellant to a have a new appeal wiherein the claims presented by appellant can be considered on their merits by this Court.

Date: 8 / 16 / 94

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Appellant in Pro Se

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Application for Reconsideration been mailed by Certified Receipt Return Mail, postage prepaid, on this 16th day of August, 1994 to the Eighth Appellate Court, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

VERIFICATION OF APPLICATION FOR RECONSIDERATION

STATE OF OHIO, COUNTY OF RICHLAND) SS:

I, Isaiah Andrews, appearing before a Notary Public or the State of Ohio, does hereinafter declare and affirm under the penalty of perjury, that I have read the foregoing Application for Reconsideration and that the information contained therein is true and correct to the best of my belief, and as to those matters which are given on information and belief, I verily believe that they are true and correct.

Isaiah Andrews
Isaiah Andrews

SUBSCRIBED AND SWORN TO BEFORE ME
BY ISAIAH ANDREWS, VOLUNTARILY,
ON THIS 16 DAY OF AUGUST, 1994, A.D.

Richard J. Leary
SIGNATURE OF NOTARY PUBLIC

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998
( SEAL )

STATE OF OHIO )
)
COUNTY OF RICHLAND)

**AFFIDAVIT OF INDIGENCY**

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

[signature]
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 16 day of August 1994 by Isaiah Andrews.

[signature]
Signature of Notary Public
RICHARD J. LEARY,
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

# APPENDIX

1. Appellant's Brief
2. Exhibit "A", Findings of Facts and Conclusions of Law
3. Exhibit "B", Letter requesting return of Notice of Appeal
4. Exhibit "C", Clerk of Courts response to Exhibit "B"
5. Exhibit "D", Affidavit of Unit Case Worker, who called the Eighth Appellate Court
6. Exhibit "E", Certified Receipt Return slips indicating date of that Appellate Brief, Notice of Appeal, Praecipe, and Docketing Statement received by the Eighth Appellate Court

Defendants Copy

000290

RECEIVED
MAR 3 1 53 PM '94

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. 66960 |
| Plaintiff-Respondent | : | |
| -vs- | : | COMMON PLEASE NO. CR 17902 |
| ISAIAH ANDREWS | : | |
| Petitioner-Defendant | : | |

Appealed from the Cuyahoga County Court of Common Pleas

FILED
COURT OF APPEALS
MAR 4 - 1994
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Petitioner-Appellant

Stephanie Tubbs Jones
Cuyahoga County Prosecutor
Crt. Towers, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
Attorney for Plaintiff-Respondent

# TABLE OF CONTENTS

| | Page |
|---|---|
| Assignments of Error .................................... | 1 |
| Statement of the Case .................................... | 1 |
| Statement of Facts .................................... | 1 |
| Argument and Law .................................... | 3 |
| Conclusion .................................... | 4 |
| Affidavit of Indigencey .................................... | 5 |
| Proof of Service .................................... | 6 |

Appendix

1. Notice of Appeal
2. Facts and Findings and Conclusions of Law

# TABLE OF AUTHORITIES


Cases — Pages

State v. Cooperrider, (1983), 4 Ohio St.3d 226........ 4

State v. Jackson, 64 Ohio St.2d 107.................. 5

State v. Jackson, (Oct. 4, 1990), Cuyahoga App. No. 57475, unreported............. 5

State v. Reese, (1982), 8 Ohio App.3d 202............ 5

Statutes

R.C. 2945.73
R.C. 2953.21

## ASSIGNMENTS OF ERROR

I.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.73 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

II.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

## STATEMENT OF THE CASE

Petitioner-Defendant, Isaiah Andrews, was convicted of the aggravated murder of Regina Andrews, a violation of R.C. 2903.01, as charged in the indictment and was sentenced to LIFE according to law.

## STATEMENT OF THE FACTS

1. Under the first indictment, Petitioner-Defendant was prosecuted under **CR 16694**;

2. Petitioner-Defendant was arrested September 18, 1974;

3. he was indicted **October 31, 1974** for aggravated murder;

4. he was arraigned **November 8, 1974** where he pled not guilty;

5. bail was set at $100,000.00;

6. Attorneys Robert Ruggerio, Esq and Daniel P. McDonnell, Esq was assigned to represent Petitioner-Defendant;

7. On the **89th** day of consecutive incarceration in the county jail in lieu of bail, because of speedy trial violation, this case (CR 16694) was **Nolled,** pursuant to **R.C. 2945.73**, in open Court of Judge Harry Jaffe as requested by Prosecutor Gibson, and it is Journalized: Vol. 245, page 310.

8. Petitioner-Defendant was re-arrested on or about December 23, 1974;

9. he was reindicted for the same offense, based on the same facts, **January 21, 1975;**

10. he was arraigned **January 24, 1975** where again he pled not guilty;

11. that bail was again set at $100,000.00;

12. he was at this arraignment assigned attorneys William Summers and John P. Hyland; and

he was tried under **CR 17902** in the Month of **March of 1975.**

**ARGUMENT AND LAW**

er-Defendant, Isaiah Andrews, respectfully disagree .s and **Findings and Conclusions of Law** rendered by the Court: that Petitioner-Defendant's Petition for Post-Relief was barred by res judicata. A claim of ; assistance of counsel based upon evidence dehors the not capable of review on direct appeal and is not barred /inciple of res judicata unless it is raised on direct State v. Cooperrider, (1983), 4 Ohio St.3d 226\

ere is no indication in the record of this case that Isaiah rews raised the issue of ineffective assistance of counsel on direct appeal. Isaiah Andrews claims ineffective assistance for the first time in his motion for post-conviction relief and supports it with evidence outside the record. Therefore, this Court's inquiry should surpass the issue of res judicata. Specifically, as clearly indicated, the Honorable Judge Carl Character's Findings of Facts and Conclusions of Law were totally based upon the facts of this case as found in the record under **CR 17902**, as were the Prosecutor's response. Upon checking the record under **CR 16694**, this Court will find that the facts of this record dehors **CR 17902.**

Where it is clear, as in the case sub judice, that a petition for post-conviction relief is not barred by the principle of res judicata, it is the duty of the trial court to review the motion. If the motion is supported with sufficient operative facts to show that the defense was prejudiced by ineffective assistance of

the defendant is entitled to a hearing. See, e.g.,

counsel son, 64 Ohio St.2d 107. In this case, a hearing was

State

rative facts demonstrative that Isaiah Andrews' trial

war led to investigate his entire record of the Court

s, and thereby omitted to investigate the defense of

al violation which was raised by original trial Attorney

ggerio and **Nolle Prosequi**, pursuant to **R.C. 2945.73**, in

rt for good cause shown by Prosecutor Gibson with the

of the court on December 16, 1974. The failure to

gate all relevant Court documentation which would have

vided a defense which could serve as a basis for acquittal

demonstrates prejudice. See State v. Jackson, (Oct. 4, 1990), Cuyahoga App. No. 57475, unreported; State v. Reese, (1982), 8 Ohio App.3d 202.

## CONCLUSION

If this Court permits trial courts to summarily pass on the operative facts in a petition for post-conviction motions, then it denies every petitioner the due process of a hearing.

**THEREFORE**, this case should be reversed and remanded for a hearing pursuant to **R.C. 2953.21**.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

STATE OF OHIO )
)
COUNTY OF RICHLAND)

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 23 day of February, 1994 by Isaiah Andrews.

Richard J. Leary
Signature of Notary Public

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Petition for Writ of Mandamus has been mailed by Regular U.S. Mail, postage prepaid, on this 23rd day of February, 1994 to the Court of Common Pleas, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

# APPENDIX

1. Notice of Appeal
2. Findings of Facts and Conclusions of Law

IN THE COURT OF COMMON PLEAS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CR 17902 |
| Plaintiff-Respondent | : | |
| -vs- | : | NOTICE OF APPEAL |
| ISAIAH ANDREWS | : | |
| Petitioner-Defenddant | : | |

Appealed from the Cuyahoga County Court of Common Pleas

Please take notice the Petitioner-Defendant, Isaiah Andrews, hereby appeals to the Court of Appeals of Cuyahoga County, Ohio Eighth Appellate District, from the judgment entered by the Court of Common Pleas Cuyahoga County, Ohio in the above entitled cause no the 26th day of January, 1994, wherein the Court of Common Pleas erred in its judgment by ruling that Petitioner-Defendant is barred by res judicata from raising the issues of speedy trial violation and ineffective assistance of trial counsel because: (1) original trial counsel, Robert Ruggerio who was trial counsel until December 16, 1974, Motioned the Common Pleas Court for dismissal of all charges because of speedy trial violations, and the Prosecutor, Gilbson in open Court of the Honorable Judge Harry Jaffe, requested that this case be **Nolled** pursuant to R. C. 2945.73 and was **Nolle Prosequi** for good cause shown, Jr. Vol. 245, Page 310; (2) when Petitioner-Defendant was rearrested six (6) days and indicted and tried in March of 1975, he had been without trial for approximately

15 months; (3) new trial counsels, William Summers, Esq. and John P. Hyland failed to investigate all relevant Court documentation, and thereby overlooked the fact that Petitioner-Defendant's speedy trial rights had been raised on the 89th day of consecutive incarceration in the Cuyahoga County Jail by Attorney Robert Ruggerio and Daniel McDonnell; (4) that when Petitioner-Defendant was tried in March of 1975, his speedy trial rights had been viloated; (5) therefore, Attorneys William Summers and John P. Hyland by their ommission and failure to investigate all relevant Court documentation prejudiced and denied Petitioner-Defendant effective assistance of trial counsel.

The Ohio Supreme Court in State of Ohio v. Hester, 45 Ohio St.2d 71 (Feb. 4, 1976); 341 N.E.2d 304 held in pertinent part:

> "that the doctrine of res judicata did not apply so as to bar consideration of issue with regard to insufficiency of trial counsel, that hearing was required with regard to contention that petitioner was denied effective assistance of counsel in proceeding in which he was convicted of armed robbery and that if trial records does not contain sufficient evidence regarding issue relating to competency of counsel, and evidentary hearing or summary judgment procedure is required in order to determine such issue and that test in determining if accused has had effective assistance*** counsel is whether accused, under all the circumstances in cluding that fact that he had retained counsel, has had a fair trial and substantial justice has been done." **Judgment reversed.**
>
> **Celebrezze, J. filed concurring opinion in which J.J. Corrigan, J. concurred.**

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Petitioner-Appellant

**PROOF OF SERVICE**

A copy of the foregoing Notice of Appeal was mailed this 23rd day of February, 1994, to Stephanie Tubbs Jones, Prosecuting Attorney or Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

Isaiah Andrews

Pro Se Petitioner-Appellant

STATE OF OHIO )
)
COUNTY OF RICHLAND)

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 29 day of February, 1994 by Isaiah Andrews.

Richard J. Leary
Signature of Notary Public
RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

Exhibit "A"

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Exhibit "A-1"

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

Exhibit "A-2"

SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Exhibit "A-3"

RECEIVED FOR FILING

FEB 1 8 1994

GERALD E. FUERST, CLERK
BY [signature] DEP.

February 14, 1994

Clerk of Court
Courts Tower, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

**RE: ISAIAH ANDREWS -VS- STATE OF OHIO CASE NO 17902**

Dear Clerk of Court on January 26, 1994, the Court of Common Pleas made its FINDINGS OF FACT AND CONCLUSIONS OF LAW, and on February 4, 1994, the Mansfield Institutional Mail Office's records show that I mailed a Notice of Appeal to your office.

I have not received my notice of appeal back as to the date of this writing. I would appreciate you checking your files under the above referenced case number and returning my notice of appeal as soon as possible.

Thank you for your time and consideration with this request.

Sincerely,

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Exhibit "B"

COUNTY OF CUYAHOGA



GERALD E. FUERST, CLERK OF COURTS
COURT OF COMMON PLEAS
CRIMINAL DIVISION 2nd. FLOOR
1200 ONTARIO STREET
CLEVELAND, OHIO 44113-1664

February 18, 1994

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, OH. 44901

CONCERNING THE ENCLOSED CORRESPONDENCE, WE ARE UNABLE TO COMPLY WITH YOUR REQUEST AS OUR OFFICE DOES NOT HAVE ACCESS TO SUCH DOCUMENTS OR INFORMATION

(RE:) APPEAL DOCKET PAGES FOR C/A # ______________

-- OR --

THE STATUS OF YOUR APPEAL THAT WAS FILED WITH THE COURT OF APPEALS ON ______________

— or —

Copies of notice of appeal – Case No.:

TO OBTAIN THIS REQUEST, PLEASE CONTACT THE FOLLOWING:

CUYAHOGA COUNTY COURT OF APPEALS
1 LAKESIDE AVENUE (NW)
CLEVELAND, OHIO 44113

Note: Since you filed a Notice of Appeal, your entire file was transferred to the above address.

SINCERELY,
CRIMINAL DIVISION
CORRESPONDENCE DEPARTMENT

Exhibit "C"

6

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | C.A. No. 66960 |
| Plaintiff-Appellee, | : | C.R. No. 17902 |
| -vs- | : | |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant | : | |

STATE OF OHIO )
) SS: AFFIDAVIT OF RICHARD LEARY
COUNTY OF RICHLAND)

I, Richard Leary, being first duly sworn, deposes and say:

1. That I have personal knowledge of the facts stated herein and I am competent to testify as to the truth of the same.

2. That on or about 20th day of February 1994, inmate Isaiah Andrews, who is one of the inmates assigned to Unit #3, requested that i contact the Eighth Appellate District Court because he was having difficulty with getting a Notice of Appeal returned.

3. That I did call the Eighth Appellate District Court and got in contact with the Honorable Judge James Sweeney's secretary, who advised me to call back.

4. That I did call back about a half-hour (1/2) later and got in touch with Judge James Sweeney, and at that time, I allowed inmate Andrews to speak with the judge about his Notice of Appeal.

5. That on the 23rd day of February, I did Notarize both, the Affidavits of Indigency attached to Andrews' Appellant Brief and the Affidavit of Indigency attached to his Notice of Appeal.

AFFIANT FURTHER SAYTH NAUGHT
Done this 16 day of August 1994.

Richard J. Leary
Affiant's Signature

Sworn to and signed in my Presence this 16 day of August, 1994.

Betty J. Hill
Notary Public
Exp. Date: March 31, 1995

Exhibit "D"

000311

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:
CLERK OF COURT
EIGHT APP. DIS. COURT
ONE LAKESIDE AVE
CLEVE, O. 44113

4a. Article Number
P 279 328 151

4b. Service Type
☐ Registered ☐ Insured
☒ Certified ☐ COD
☐ Express Mail ☒ Return Receipt for Merchandise

7. Date of Delivery
1-28-94

5. Signature (Addressee)

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)
Exhibit "E-1"

PS Form 3811, December 1991 ☆U.S. GPO: 1992—323-402 **DOMESTIC RETURN RECEIPT**

Thank you for using Return Receipt Service.

P 279 328 151

**Receipt for Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

| | |
|---|---|
| Sent to 8 Appellate Court | |
| Street and No. | |
| P.O., State and ZIP Code | |
| Postage | $ 52 |
| Certified Fee | 100 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, and Addressee's Address | 100 |
| TOTAL Postage & Fees | $ 252 |
| Postmark or Date 2/28/94 | |

Exhibit "E"

PS Form 3800, June 1991

000312

RECEIVED
AUG 24 12 33 PM '94

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. ________________ |
| Plaintiff-Respondent | : | |
| -vs- | : | CASE NO. CA 66960 |
| ISAIAH ANDREWS | : | |
| Petitioner-Defendant | : | |

NOTICE OF APPEAL

Notice is hereby given that Isaiah Andrews, Appellant in the above-entitled matter, appeals to the Supreme Court of Ohio from the Eighth Appellate District Court of Appeal's decision of August 9, 1994. This legal matter did not originate in the Appellate Court and it involves a Constitutional questions which is relevant to the interpretation of Ohio Statutes and Rules as they apply to Procedural Due Process and Substantive Prosedural Due Process.

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901
(419) 525-4455

Pro Se Appellant

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Notice of Appeal has been mailed by Certified Receipt Return Mail, postage prepaid, on this 19th day of August, 1994 to Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, 1200 Ontario Street/Justice Center, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

STATE OF OHIO )<br>
)<br>
COUNTY OF RICHLAND)

**AFFIDAVIT OF INDIGENCY**

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, AFFIANT SAYETH NAUGHT

Done this day of 8/19/94

Isaiah Andrews<br>
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 19th day of August 1994 by Isaiah Andrews.

Robert J. Drouillard<br>
Signature of Notary Public

ROBERT J. DROUILLARD<br>
NOTARY PUBLIC, STATE OF OHIO<br>
My Commission Expires Sept. 28, 1995

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | |
| -vs- | : | CR NO. 17902 |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant | : | |

# REPLY BRIEF OF APPELLANT

Counsel for Defendant-Appellant

ISAIAH ANDREWS
REG. NO. A141-345
P.O. BOX 788
MANSFIELD, OHIO 44901
(419) 525-4455

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

## TABLE OF CONTENTS

Statement of the Facts....................................1

Law and Argument........................................2-4

As to Assignments of Error No. II......................2-4

Law and Argument........................................4-8

As to Assignment of Error No. I.......................4-8

Affidavit of Indigency.................................. 9

Service..................................................10

## Table of Authorities

CASES: Pages

*Dayton v. Hill* (1970), 21 Ohio St.2d 125, 256 N.E.2d 194..... 3

**State v. Doyle**, 11 App(2d) 97, 228 NE(2d) 863 (Hamilton 1967)...5

**State v. Coatoam**, 45 App(2d) 183, 341 NE(2d) 635 (Lake 1975)... 6

**State v. Cutcher**, 56 OS (2d) 383, 384 NE(2D) 275 (1978).........6

**State v. Eberhardt**, 56 App(2d) 193,
381 NE(2d) 1357 (Cuyahoga 1978)..............................6

*State v. Juliano* (1970), 24 Ohio St.2d 117, 265 N.E.2d 290......4

**State v. Hester**, cited as 341 N.E.2d 304 at 307.................4

*State v. Lester*, 41 Ohio St.2d at page 55, 322 N.E.2d 656....4-7

*State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104......3-4

**State v. Singer**, 50 OS(2d) 103, 362 NE(2d) 1216 (1977)..........5

**State v. Sliver**, 57 OS(2d) 1, 384 NE(2d) 710 (1979).............6

STATUTES:

R.C. 2945.71...............................................5

R.C. 2945.72...............................................5

R.C. 2945.73(B).........................................5-6

R.C. 2945.73(D)............................................6

R.C. 2953.21.............................................2-6

R.C. 2953.21.............................................3-7

R.C. 2945.21.............................................4-8

CONSTITUTIONAL

U.S.C.A. Constitution, Amendments Sixth, Fourteenth.............3

STANDARDS:

A. B. A. Standards relating to Post-Conviction Remedies,
Section 6.1..............................................4

RECEIVED
MAR 28 12 21 PM '94

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | |
| -vs- | : | Reply Brief of Appellant |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant | : | |

## STATEMENT OF FACTS

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992. After patiently waiting for 20 months for the Common Pleas Court to rule on Appellant's Petition, Appellant filed a Petition for Writ of Mandamus on January 3, 1994. The record reveals that *only, and only, then* did the Common Pleas Court and the State's Attorney respond to Appellant's Post-Conviction Petition.

The Eighth Appellate District Court of Appeals, Cuyahoga County, granted the State's Motion to Dismiss Defendant's Petition for Writ of Mandamus because the Common Pleas Court and State's Attorney made it appear that they had already acted upon Appellant's Post-Conviction Petition. Did this wise Court not find it awful peculiar that 20 months had passed and a Writ of Mandamus filed before Defendant received any action on his Petition for Post-Conviction Relief?

Defendant prays this Court does not look upon him as one who would without provocation question a court authority's action; but,

I have already spent nineteen (19) years in prison for the murder of my beloved wife of eighteen (18) days, which I did not murder and could never have committed such a hideous deed. However, once trust is injured as badly as mine has been injured, it is indeed very difficult to trust anyone or anything again.

Presently before this Court is Appellant's appeal from the trial court's dismissal without a hearing of his petition for post-conviction relief.

On page 2 of Appellee's Brief, State's Attorney, Diane Smilanick, side stepped the issues raised by Defendant Isaiah Andrews, and instead created her own issues which addresses the trial court's discretionary powers. The issues before this Court are based on mandates not the discretionary powers of the Trial Court. Sufficient is the fact that defendant has pointed out State's Attorney's error as to what business is before this Court.

Defendant-Appellant, Isaiah Andrews will address assignment of Error two first.

## LAW AND ARGUMENT

ASSIGNMENT OF ERROR II:
**THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THAT UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.**

Appellant's Proposition of law 2 is as follows:

"Where a criminal defendant for the first time raises insufficiency of his trial counsel as a basis for post-conviction relief under **R.C. 2953.21**, *the doctrine of res judicata* is an improper basis for dismissal of the petition."

The doctrine of res judicata does not apply, in proceedings on petitioner's petition for post-conviction relief, so as to bar consideration of issue with regard to insufficiency of trial counsel where such issue had not been previously adjudicated. **R.C. 2953.21; U.S.C.A. Const. Amends. 6, 14.**

A review of the court records will reveal that Defendant-Appellant Isaiah Andrews has never raised the issue of ineffective assistance of counsel except in his petition for post-conviction relief.

The implied prerequisite to stating a cause of action under **R.C. 2953.21** is that petitioner allege grounds to the effect that the judgment is "void or voidable under the Ohio Constitution or the Constitution of the United States." For a history of Ohio's Postcon-viction Remedy Act, *see* ***Dayton v. Hill*** (1970), 21 Ohio St.2d 125, 256 N.E.2d 194; and for a definition of the term "voidable," see *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104.

In his Petition for Post-Conviction Relief, Appellant alleges that the judgment of the Court of Common Pleas was void and that he was denied rights guaranteed under the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. Appellant asserts he was not given effective assistance of counsel for his defense.

The claim of ineffective counsel is not, *ipso facto*, barred by the doctrine of *res judicata*. See *Dayton v. Hill*, *supra*, 21 Ohio St.2d at page 125, 256 N.E.2d at page 194, as follows:

"At the outset, it should be noted that the allegation of denial of counsel (and the admission thereof for purposes of the demurrer) removes from these cases the question of *res judicata*, decided in ***State v. Perry*** (1967), 10 Ohio St.2d 175, 226 N.E.2d 104."

See, also, *State v. Juliano* (1970), 24 Ohio St.2d 117, 265 N.E.2d 290; *State v. Lester*, 41 Ohio St.2d at page 55, 322 N.E.2d 656; and A. B. A. Standards relating to Post-Conviction Remedies, Section 6.1.

In State v. Hester, cited as 341 N.E.2d 304 at 307, the Court Stated in its Syllabus, paragraph two (2): Where the record does not disclose that the issue of competent counsel has been adjudicated, the doctrine of *res judicata* is an improper basis upon which to dismiss an **R.C. 2953.21** petition.

Therefore, Defendant's second proposition of law should be well taken by this Court.

## LAW AND ARGUMENT

**ASSIGNMENT OF ERROR I:**
THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.73 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

Defendant's first Proposition of is as follows:

> "Where the record reveals that the accused has complied with both the Federal and State procedural requirements, the relief sought is mandated by the United States Constitution, the Ohio Constitution, the Ohio Revised Code, and, Case law.

A. <u>Necessity for Motion for Discharge</u>

Defendant Isaiah Andrews has complied with the requirements of both the Constitutional right to a speedy trial and the Ohio Statutory right to a speedy trial. Under Case Number **CR 16694**, in the month of December, 1974, Defendant Isaiah Andrews, pursuant to **R.C. 2945.73(B)**, filed for discharge, and on December 16, 1974 this case was Nolled. **See Journal Entry, Vol. 245, page 310.**

Unlike the constitutional right to a speedy trial, the Ohio statutory right can be asserted with out making an affirmative demand for a speedy trial. Compare <u>State v. Doyle</u>, 11 App(2d) 97, 228 N.E.(2) 863 (Hamilton 1967): "Accused must make demand on court to assert constitutional demand on court to assert constitutional right to speedy trial." with <u>State v. Singer,</u> 50 OS(2d) 103, 362 NE(2d) 1216 (1977): "defendant's failure to object to trial date scheduled beyond time limit under **R.C. 2945.71** not acquiescence in date."

Rather, the burden of insuring that the accused is not denied his right is on the prosecution and the court. <u>State v. Coatoam,</u> 45 App(2d) 183, 341 NE(2d) 635 (Lake 1975). As in the case **sub judice**, the accused need only make a motion for discharge at or prior to commencement of the trial, as provided in **R.C. 2945.73.**

B. <u>Effect of Discharge in Felony Cases</u>

**R.C. 2945.73(B)** provides that the accused must be discharged if he is not brought to trial within the time allowed by **R.C. 2945.71 and R.C. 2945.72**

Under **R.C. 2945.73(D)**, discharge for failure to bring the defendant to trial within the statutory time acts as a total bar to further prosecution for the same conduct. **State v. Cutcher**, 56 OS (2d) 383, 384 NE(2D) 275 (1978); **State v. Sliver,** 57 OS(2d) 1, 384 NE(2d) 710 (1979). In **State v. Eberhardt**, 56 App(2d) 193, 381 NE(2d) 1357 (Cuyahoga 1978): defendant was not brought to trial within the time limit because of a clerical error. Rather than grant defendant's motion for discharge, the trial court entered a nolle prosequi. The Court of Appeals reversed the trial court's denial of the motion for discharge and held that further prosecution was barred despite entry of nolle prosequi.

Defendant, Isaiah Andrews, was discharged after he had filed for a speedy trial and this case nolled under **CR 16694** on December 16, 1974, pursuant to **R.C. 2945.73(B)** which was a bar to further prosecution.

The trial court errored when it failed to consider the complete records of this case which is lodged under both CR16694 and CR17902.

Defendant-Appellant, Isaiah Andrews' position is that **R.C. 2953.21** provides a mandatory requirement as follows: "Before denying Defendant, Isaiah Andrews, a hearing, the trial court was mandatorily required to determine whether there were substantive grounds for relief. In making such a determination:

1) the court is mandated to consider in addition to the petition and supporting affidavits;

2) <u>all</u> the files and records pertaining to the proceedings against the petitioner;

3) including but not limited to the indictment;

4) the court's journal entries;

5) the journalized records of the clerk of curt; and

6) the court reporter's transcript. Such court reporter's transcript if ordered and certified by the court shall be taxed as court cost.

If the court dismisses the petition it shall make and file findings of fact and conclusions of law with respect to such dismissal as is mandated by the procedural requirements of 1) through 6) above.

The holdings in the case of <u>**State v. Lester,**</u> (1975), 41 Ohio St.2d 51, 322 N.E.2d 656, mandates a finding that appellant Isaiah Andrews's first assignment of error be well taken. Therefore, the judgment of the Court of Common Pleas must be revered and this cause remanded to the Court of Common Pleas so that the Court may comply with **R.C. 2953.21 et. seq.**

## CONCLUSION

If this Court permits trial courts to summarily pass on the operative facts in a petition for post-conviction motions, then it denies every petitioner the due process of a hearing.

**THEREFORE**, this case should be reversed and remanded for a hearing pursuant to **R.C. 2953.21**.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

**STATE OF OHIO )**
**)**
**COUNTY OF RICHLAND)**

**AFFIDAVIT OF INDIGENCY**

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs.

I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 22 day of March ~~February~~, 1994 by Isaiah Andrews.

Richard J. Leary
Signature of Notary Public

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

# CERTIFICATE OF SERVICE

I certify that a copy of the attached Petition for Writ of Mandamus has been mailed by Regular U.S. Mail, postage prepaid, on this 22 day of March, 1994 to the Court of Common Pleas, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | CASE NO. CR 17902 |
| ISAIH ANDREWS, | ) | |
| Defendant-Appellant | ) | |

---

# BRIEF OF APPELLEE

---

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Counsel for Defendant-Appellant

ISAIAH ANDREWS #a141-345
P.O. Box 788
Mansfield, Ohio 44901

## TABLE OF CONTENTS

Statement of the Facts . . . . . . . . . . . . . . . . . . . . 1-2

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . 2-4

As to Assignments of Error Nos. I and II . . . . . . . . 2-4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## TABLE OF AUTHORITIES

Cases:

State v. Adams (1980), 62 Ohio St. 2d 151 . . . . . . . . . . . 2

State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . . . 3,4

State v. Mitchell (1988), 53 Ohio App. 3d 117, 119 . . . . . . . 2

State v. Perry (1967), 10 Ohio St. 2d 175 . . . . . . . . . . . 3

State v. Tyler (1990), 50 Ohio St. 3d 24, cert. denied, 110 S. Ct. 3258 . . . . . . . . . . . . . . . . . . . . . . . . . 3

Strickland v. Washington (1984), 466 U.S. 668,687,690,691 . . . 3

Vaughn v. Maxwell (1965), 2 Ohio St. 2d 299 . . . . . . . . . . 3

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

STATE OF OHIO, )
Plaintiff-Appellee )
-vs- ) BRIEF OF APPELLEE
ISAIAH ANDREWS, )
Defendant-Appellant )

STATEMENT OF THE FACTS

Appellant was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01, on March 12, 1975. Appellant was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed Appellant's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992. Appellant filed a Petition for Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462) attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the Court of Common Pleas denying Appellant's Petition for Post-Conviction Relief. The Eighth District Court of Appeals, Cuyahoga county, granted the State's Motion to Dismiss on or about February 25, 1994.

Presently before this court is Appellant's appeal from the trial court's dismissal without a hearing of his Petition for Post-Conviction Relief.

## LAW AND ARGUMENT

ASSIGNMENT OF ERROR NO. I:
THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.75 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

ASSIGNMENT OF ERROR NO. II:
THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

The State addresses Assignments of Error One and Two together because the issues presented are similar.

Upon review of a trial court's denial without a hearing of a Petition for Post-Conviction Relief, the only issue before a reviewing court is whether the trial court abused its discretion in dismissing the petition without a hearing. Absent a showing of abuse of discretion, a reviewing court will not overrule the trial court's finding on a Post-Conviction Petition which is supported by competent and credible evidence. State v. Mitchell (1988), 53 Ohio App. 3d 117, 119. An abuse of discretion connotes more than an error of law or judgment; it implies conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St. 2d 151.

A petitioner must set forth substantive grounds for post-conviction relief in order to be entitled to an evidentiary hearing. In alleging ineffectiveness of trial counsel, a petitioner must demonstrate counsel's deficient performance and resulting prejudice to the defense. Strickland v. Washington (1984), 466 U.S. 668; State v. Tyler (1990), 50 Ohio St. 3d 24, cert. denied, 110 S. Ct. 3258. Counsel is strongly presumed to be competent. Strickland, at 690; Vaughn v. Maxwell (1965), 2 Ohio St. 2d 299. A petitioner must show, in order to demonstrate the deficiency of counsel's conduct, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed Defendant by the Sixth Amendment." Strickland, at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., at 691. A petitioner must show, in order to demonstrate resulting prejudice, that counsel's errors were so serious as to deprive him of a fair trial and that, but for counsel's errors, the result of the trial would have been different.

The Ohio Supreme Court has held that the doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims presented in Appellant's Post-Conviction Petition were or should have been considered on direct appeal and,

therefore, are barred from consideration by the doctrine of res judicata.

Appellant was represented at trial by Attorney John P. Hyland and was represented by Attorney Peter H. Hull on appeal. Defense counsel did not raise the claim of ineffectiveness of trial counsel on direct appeal; and, therefore, State v. Cole, supra, precludes the utilization of post-conviction relief.

## CONCLUSION

Appellant was unable to demonstrate either counsel's deficient performance or resulting prejudice to the defense. He failed to set forth substantive grounds for post-conviction relief, and the trial court properly dismissed his petition without a hearing. R.C. §2953.21(C).

For the foregoing reasons, the State of Ohio respectfully requests that this Honorable Court affirm the trial court's denial of Appellant's Petition for Post-Conviction Relief.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: Diane Smilanick
DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

SERVICE

A copy of the foregoing Brief of Appellee has been mailed this 14th day of March, 1994, to Isaiah Andrews #A141-345, Defendant-Appellant Pro Se, c/o P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick
Assistant Prosecuting Attorney

Prosecutor's Copy



filed 3/4/94

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

CA 66960

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. ~~66~~ 700 |
| Plaintiff-Respondent | : | |
| -vs- | : | COMMON PLEASE NO. CR 17902 |
| ISAIAH ANDREWS | : | |
| Petitioner-Defendant | : | |

---

Appealed from the Cuyahoga County Court
of Common Pleas

---

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Petitioner-Appellant

Stephanie Tubbs Jones
Cuyahoga County Prosecutor
Crt. Towers, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
Attorney for Plaintiff-Respondent

## TABLE OF CONTENTS


| | Page |
|---|---|
| Assignments of Error | 1 |
| Statement of the Case | 1 |
| Statement of Facts | 1 |
| Argument and Law | 3 |
| Conclusion | 4 |
| Affidavit of Indigencey | 5 |
| Proof of Service | 6 |

Appendix

1. Notice of Appeal
2. Facts and Findings and Conclusions of Law

# TABLE OF AUTHORITIES


| Cases | Pages |
|---|---|
| State v. Cooperrider, (1983), 4 Ohio St.3d 226........ | 4 |
| State v. Jackson, 64 Ohio St.2d 107.................... | 5 |
| State v. Jackson, (Oct. 4, 1990), Cuyahoga App. No. 57475, unreported............. | 5 |
| State v. Reese, (1982), 8 Ohio App.3d 202............. | 5 |

Statutes

R.C. 2945.73
R.C. 2953.21

ASSIGNMENTS OF ERROR

I.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.73 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

II.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

STATEMENT OF THE CASE

Petitioner-Defendant, Isaiah Andrews, was convicted of the aggravated murder of Regina Andrews, a violation of R.C. 2903.01, as charged in the indictment and was sentenced to LIFE according to law.

STATEMENT OF THE FACTS

1. Under the first indictment, Petitioner-Defendant was prosecuted under CR 16694;

2. Petitioner-Defendant was arrested September 18, 1974;

3. he was indicted October 31, 1974 for aggravated murder;

4. he was arraigned November 8, 1974 where he pled not guilty;

5. bail was set at $100,000.00;

6. Attorneys Robert Ruggerio, Esq and Daniel P. McDonnell, Esq was assigned to represent Petitioner-Defendant;

7. On the **89th** day of consecutive incarceration in the county jail in lieu of bail, because of speedy trial violation, this case (CR 16694) was **Nolled,** pursuant to **R.C. 2945.73**, in open Court of Judge Harry Jaffe as requested by Prosecutor Gibson, and it is Journalized: Vol. 245, page 310.

8. Petitioner-Defendant was re-arrested on or about December 23, 1974;

9. he was reindicted for the same offense, based on the same facts, **January 21, 1975;**

10. he was arraigned **January 24, 1975** where again he pled not guilty;

11. that bail was again set at $100,000.00;

12. he was at this arraignment assigned attorneys William Summers and John P. Hyland; and

he was tried under **CR 17902** in the Month of **March of 1975.**

## ARGUMENT AND LAW

Petitioner-Defendant, Isaiah Andrews, respectfully disagree with the **Facts and Findings and Conclusions of Law** rendered by the Common Pleas Court: that Petitioner-Defendant's Petition for Post-Conviction Relief was barred by res judicata. A claim of ineffective assistance of counsel based upon evidence dehors the record is not capable of review on direct appeal and is not barred by the principle of res judicata unless it is raised on direct appeal. State v. Cooperrider, (1983), 4 Ohio St.3d 226.

There is no indication in the record of this case that Isaiah Andrews raised the issue of ineffective assistance of counsel on direct appeal. Isaiah Andrews claims ineffective assistance for the first time in his motion for post-conviction relief and supports it with evidence outside the record. Therefore, this Court's inquiry should surpass the issue of res judicata. Specifically, as clearly indicated, the Honorable Judge Carl Character's Findings of Facts and Conclusions of Law were totally based upon the facts of this case as found in the record under **CR 17902**, as were the Prosecutor's response. Upon checking the record under **CR 16694**, this Court will find that the facts of this record dehors **CR 17902**.

Where it is clear, as in the case sub judice, that a petition for post-conviction relief is not barred by the principle of res judicata, it is the duty of the trial court to review the motion. If the motion is supported with sufficient operative facts to show that the defense was prejudiced by ineffective assistance of

counsel, then the defendant is entitled to a hearing. See, e.g., State v. Jackson, 64 Ohio St.2d 107. In this case, a hearing was warranted.

The operative facts demonstrative that Isaiah Andrews' trial counsel failed to investigate his entire record of the Court proceedings, and thereby omitted to investigate the defense of speedy trial violation which was raised by original trial Attorney RoberT Ruggerio and **Nolle Prosequi**, pursuant to **R.C. 2945.73**, in open court for good cause shown by Prosecutor Gibson with the approval of the court on December 16, 1974. The failure to investigate all relevant Court documentation which would have provided a defense which could serve as a basis for acquittal demonstrates prejudice. See State v. Jackson, (Oct. 4, 1990), Cuyahoga App. No. 57475, unreported; State v. Reese, (1982), 8 Ohio App.3d 202

## CONCLUSION

If this Court permits trial courts to summarily pass on the operative facts in a petition for post-conviction motions, then it denies every petitioner the due process of a hearing.

**THEREFORE**, this case should be reversed and remanded for a hearing pursuant to **R.C. 2953.21**.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

STATE OF OHIO )
)
COUNTY OF RICHLAND)

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 23 day of February, 1994 by Isaiah Andrews.

Richard J. Leary
Signature of Notary Public

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Petition for Writ of Mandamus has been mailed by Regular U.S. Mail, postage prepaid, on this ______ day of ________________________, 199__ to the Court of Common Pleas, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

# APPENDIX

1. Notice of Appeal
2. Findings of Facts and Conclusions of Law

IN THE COURT OF COMMON PLEAS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CR 17902 |
| Plaintiff-Respondent | : | |
| -vs- | : | NOTICE OF APPEAL |
| ISAIAH ANDREWS | : | |
| Petitioner-Defenddant | : | |

Appealed from the Cuyahoga County Court
of Common Pleas

Please take notice the Petitioner-Defendant, Isaiah Andrews, hereby appeals to the Court of Appeals of Cuyahoga County, Ohio Eighth Appellate District, from the judgment entered by the Court of Common Pleas Cuyahoga County, Ohio in the above entitled cause no the 26th day of January, 1994, wherein the Court of Common Pleas erred in its judgment by ruling that Petitioner-Defendant is barred by res judicata from raising the issues of speedy trial violation and ineffective assistance of trial counsel because: (1) original trial counsel, Robert Ruggerio who was trial counsel until December 16, 1974, Motioned the Common Pleas Court for dismissal of all charges because of speedy trial violations, and the Prosecutor, Gilbson in open Court of the Honorable Judge Harry Jaffe, requested that this case be Nolled pursuant to R. C. 2945.73 and was Nolle Prosequi for good cause shown, Jr. Vol. 245, Page 310; (2) when Petitioner-Defendant was rearrested six (6) days and indicted and tried in March of 1975, he had been without trial for approximately

15 months; (3) new trial counsels, William Summers, Esq. and John P. Hyland failed to investigate all relevant Court documentation, and thereby overlooked the fact that Petitioner-Defendant's speedy trial rights had been raised on the 89th day of consecutive incarceration in the Cuyahoga County Jail by Attorney Robert Ruggerio and Daniel McDonnell; (4) that when Petitioner-Defendant was tried in March of 1975, his speedy trial rights had been viloated; (5) therefore, Attorneys William Summers and John P. Hyland by their ommission and failure to investigate all relevant Court documentation prejudiced and denied Petitioner-Defendant effective assistance of trial counsel.

The Ohio Supreme Court in State of Ohio v. Hester, 45 Ohio St.2d 71 (Feb. 4, 1976); 341 N.E.2d 304 held in pertinent part:

> "that the doctrine of res judicata did not apply so as to bar consideration of issue with regard to insufficiency of trial counsel, that hearing was required with regard to contention that petitioner was denied effective assistance of counsel in proceeding in which he was convicted of armed robbery and that if trial records does not contain sufficient evidence regarding issue relating to competency of counsel, and evidentary hearing or summary judgment procedure is required in order to determine such issue and that test in determining if accused has had effective assistance*** counsel is whether accused, under all the circumstances in cluding that fact that he had retained counsel, has had a fair trial and substantial justice has been done." **Judgment reversed.**
>
> **Celebrezze, J. filed concurring opinion in which J.J. Corrigan, J. concurred.**

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Petitioner-Appellant

**PROOF OF SERVICE**

A copy of the foregoing Notice of Appeal was mailed this______ day of February, 1994, to Stephanie Tubbs Jones, Prosecuting Attorney or Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

Pro Se Petitioner-Appellant

STATE OF OHIO )
)
COUNTY OF RICHLAND)

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 23 day of February, 1994 by Isaiah Andrews.

Richard J. Leary
Signature of Notary Public

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

000353

Case No: 66960

COMMON PLEAS COURT

STATE OF OHIO VS. ISAIAH ANDREWS

17902

Notice: Complete record of appeal filed on 03/04/1994 in compliance with rule 11(B) Ohio rules of appellate procedure.

Gerald E. Fuerst
Clerk of Courts

~~3/4 Pro Se Brief~~

~~3/24 State's Brief~~

FORM 284 (6/85)

Date: 03/07/94

FROM:

Court of Appeals of Ohio
Eighth Appellate District
One Lakeside Ave.
Cleveland, Ohio 44113

TO:

STEPHANIE T. JONES
CUYAHOGA COUNTY PROS.
8TH FLOOR JUSTICE CENTER
1200 ONTARIO STREET
CLEVELAND, OH 44113

RECEIVED
MAR 30 PM '94

EIGHTH DISTRICT COURT OF APPEALS
LOCAL RULE NO. 4

| | | |
|---|---|---|
| )HIO | : | TRIAL COURT CASE NO |
| | : | CR-17902 |
| ntiff-Appellee, | | |
| | : | DATE OF PRAECIPE 2 /25 / 94 |
| | : | DATE OF FINAL JUDGMENT IN |
| ANDREWS | | TRIAL COURT 1 / 26 / 94 |
| | : | DATE OF FILING OF NOTICE |
| Defendant-Appellant. | : | OF APPEAL 2 / 25 / 94 |

**PRAECIPE**

**TO THE CLERK OF THE TRIAL COURT:**

Immediately prepare and assemble the orginal papers and exhibits filed in the trial court and a certified copy of the docket and journal entries. In addition, the records in this appeal will include the following:

1. Complete transcript under Appellate Rule 9(B), which should include all the records under CR-16694.
2. Statement of evidence or proceedings under Appellate Rule 9(C).
3. Appellant's Application for Post-Conviction Relief.
4. The Trial Court's Findings and Conclusions of Law, Journalized on January 26, 1994.

**PRO SE COUNSEL CERTIFIES THE FOLLOWING**

( ) The undersigned has directed the court reporter to prepare the required transcripts pursuant ot Local Rule 4.

Isaiah Andrews
Pro Se Appellant Counsel

EIGHTH DISTRICT COURT OF APPEALS
LOCAL RULE NO. 25

| | | |
|---|---|---|
| STATE OF OHIO | : | TRIAL COURT CASE NO. CR-17902 |
| Plainitff-Appellee, | : | DATE OF PRAECIPE 2/25/94 |
| | | DATE OF DOCKETING STATEMENT |
| vs. | : | 2/25/94 |
| ISAIAH ANDREWS | : | |
| Defendant-Appellant. | : | |

A. THIS APPEAL SHOULD BE ASSIGNED TO:
[✓] The accelerated calendar.

---

Assigned to the accelerated calendar for the reason

[✓] Transcript and all other evidentary materials consist of one hundred (100) or fewer pages.

---

B. WAIVER OF ORAL ARGUMENT:
Pursuant ot Local Rule 10, Oral argument is requested by Pro Se Counsel, and will Motion will be filed with Appellant's Brief.

---

C. THE FOLLOWING QUESTIONS APPLY TO ALL CIVIL AND ADMINISTRATIVE APPEALS:

Nature of Case:
Post-Conviction Relief, pursuant to R.C. 2953.21

Yes, the appeal turns on an interpretation and application of a particular cases and/or statutes.

---

Summary of Assignments of Error:

I.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.73 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

II.

THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Isaiah Andrews
Pro. Se Counsel

IN THE COURT OF COMMON PLEAS
EIGHTH JUDICIAL DISTRICT
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| .O | : | CASE NO. CR 17902 |
| iff-Respondent | : | |
| | : | <u>NOTICE OF APPEAL</u> |
| .EWS | : | |
| ioner-Defenddant | : | |

Appealed from the Cuyahoga County Court
of Common Pleas

.ease take notice the Petitioner-Defendant, Isaiah Andrews, .by appeals to the Court of Appeals of Cuyahoga County, Ohio .ighth Appellate District, from the judgment entered by the Court of Common Pleas Cuyahoga County, Ohio in the above entitled cause no the 26th day of January, 1994, wherein the Court of Common Pleas erred in its judgment by ruling that Petitioner-Defendant is barred by <u>res judicata</u> from raising the issues of speedy trial violation and ineffective assistance of trial counsel because: (1) original trial counsel, Robert Ruggerio who was trial counsel until December 16, 1974, Motioned the Common Pleas Court for dismissal of all charges because of speedy trial violations, and the Prosecutor, Gilbson in open Court of the Honorable Judge Harry Jaffe, requested that this case be **Nolled** pursuant to R. C. 2945.73 and was **Nolle Prosequi** for good cause shown, Jr. Vol. 245, Page 310; (2) when Petitioner-Defendant was rearrested six (6) days and indicted and tried in March of 1975, he had been without trial for approximately

15 months; (3) new trial counsels, William Summers, Esq. and John P. Hyland failed to investigate all relevant Court documentation, and thereby overlooked the fact that Petitioner-Defendant's speedy trial rights had been raised on the 89th day of consecutive incarceration in the Cuyahoga County Jail by Attorney Robert Ruggerio and Daniel McDonnell; (4) that when Petitioner-Defendant was tried in March of 1975, his speedy trial rights had been viloated; (5) therefore, Attorneys William Summers and John P. Hyland by their ommission and failure to investigate all relevant Court documentation prejudiced and denied Petitioner-Defendant effective assistance of trial counsel.

The Ohio Supreme Court in State of Ohio v. Hester, 45 Ohio St.2d 71 (Feb. 4, 1976); 341 N.E.2d 304 held in pertinent part:

> "that the doctrine of res judicata did not apply so as to bar consideration of issue with regard to insufficiency of trial counsel, that hearing was required with regard to contention that petitioner was denied effective assistance of counsel in proceeding in which he was convicted of armed robbery and that if trial records does not contain sufficient evidence regarding issue relating to competency of counsel, and evidentary hearing or summary judgment procedure is required in order to determine such issue and that test in determining if accused has had effective assistance*** counsel is whether accused, under all the circumstances in cluding that fact that he had retained counsel, has had a fair trial and substantial justice has been done." Judgment reversed.
>
> Celebrezze, J. filed concurring opinion in which J.J. Corrigan, J. concurred.

Isaiah Andrews
Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Petitioner-Appellant

**PROOF OF SERVICE**

A copy of the foregoing Notice of Appeal was mailed this 25th day of February, 1994, to Stephanie Tubbs Jones, Prosecuting Attorney or Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

Isaiah Andrews

Pro Se Petitioner-Appellant

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I, Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, Affiant sayeth naught.

Isaiah Andrews

Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 25 day of February, 1994 by Isaiah Andrews.

Richard J. Leary

Signature of Notary Public

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66700

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. ISAIAH ANDREWS | ) | |
| Relator | ) | |
| -vs- | ) | CASE NO. CR 17902 |
| COURT OF COMMON PLEAS CUYAHOGA COUNTY, OHIO | ) | |
| Respondent | ) | |

---

MOTION TO DISMISS PETITION FOR WRIT OF MANDAMUS

---

Counsel for Respondent:

DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Relator:

ISAIAH ANDREWS
Serial No. A141-345
Ohio State Reformatory
P.O. Box 788
Mansfield, Ohio 44901

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66700

| | |
|---|---|
| STATE OF OHIO, EX REL. ISAIAH ANDREWS<br><br>Relator<br><br>-vs-<br><br>COURT OF COMMON PLEAS CUYAHOGA COUNTY<br><br>Respondent | **MOTION TO DISMISS PETITION FOR WRIT OF MANDAMUS** |

Now comes Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests that this court dismiss the application for mandamus relief for the reasons more fully stated in the attached brief, made part of this motion.

Respectfully submitted,

STEPHANIE TUBBS JONES,
Cuyahoga County Prosecutor

BY: [signature]
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Respondent
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Motion to Dismiss Petition for Writ of Mandamus was mailed this 27th day of January, 1994, to Isaiah Andrews, Relator, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901.

[signature]
Assistant Prosecuting Attorney

# BRIEF

## STATEMENT OF THE FACTS

On March 12, 1975, relator was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. 2903.01. Relator was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed relator's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported. On April 8, 1992, relator filed a Petition for Post-Conviction Relief. On January 3, 1994, relator filed a Petition for Writ of Mandamus.

## LAW AND ARGUMENT

Relator complains that his post-conviction petition has not been ruled on by respondent. Relator's contention is erroneous.

On January 26, 1994, respondent acted and denied the Petition for Post-Conviction Relief (see Exhibit A). As such, the request for mandamus relief is currently moot.

## CONCLUSION

The Petition for Writ of Mandamus should be denied.

Respectfully submitted,

STEPHANIE TUBBS JONES,
Cuyahoga County Prosecutor

BY: _______________________
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Respondent

EXHIBIT A

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

**SERVICE**

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

## SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

## SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CXNI 017902 0017707 B
CASE: 017902 ID. DEF: 0017707-ISIAH ANDREWS

JUDGE: 010-F E SWEENEY
DATE: 07-13-78 TIME: 08:31::36 DESCRIPTOR: MFIL-MOTION FILED PGH:
BOOK: 00 PAGE: 0000
MEMORANDUM CONTRA TO STATE'S MOTION FOR SUMMARY JUDGEMENT W/AFFIDAVIT OF THEADORE HAMZA W/AFFIDAVIT OF J.C.WILLIAMS

JUDGE: 010-F E SWEENEY
DATE: 07-17-78 TIME: 08:48::15 DESCRIPTOR: MTN -MOTION PGH:
BOOK: 01 PAGE: 0157
DEFT'S MOTION FOR POST CONVICTION RELIEF IS DENIED. PROSECUTOR'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.

JUDGE: 010-F E SWEENEY
DATE: 07-17-78 TIME: 10:15::59 DESCRIPTOR: MDIS-MOTION DISPOSED PGH:
BOOK: 00 PAGE: 0000
DEFTS MTN DENIED. PROS. MTN GRANTED.

KEYS: PFK1=1ST PAGE; PFK2=LAST PAGE; PA1=NEXT PAGE

1ST CASE of Level 1 printed in FULL format.

State of Ohio, PLAINTIFF-APPELLEE v. Isiah Andrews,
DEFENDANT-APPELLANT
State v. Andrews

No. 34620
* PURSUANT TO RULE 2(G) OF THE OHIO SUPREME COURT RULES FOR THE REPORTING OF OPINIONS, UNPUBLISHED OPINIONS MAY BE CITED SUBJECT TO CERTAIN RESTRAINTS, LIMITATIONS, AND EXCEPTIONS.

Court of Appeals of Ohio, Eighth Appellate District, Cuyahoga County

Slip Opinion

March 18, 1976

PRIOR HISTORY:

APPEAL FROM COMMON PLEAS COURT, No. Cr. 17902

DISPOSITION: Affirmed

COUNSEL: For Plaintiff Appellee: John T. Corrigan

For Defendant Appellant: Peter H. Hull

JUDGES: JACKSON, C.J., MANOS, J., SILBERT, J., CONCUR. (Silbert, J., retired judge of the 8th appellate district, sitting by assignment).

OPINION: JOURNAL ENTRY

This cause came on to be heard upon the pleadings and the transcript of the evidence and the record in the Common Pleas Court, and was argued by counsel for the parties; and upon consideration, the court finds no error prejudicial to the appellant and therefore the judgment of the Common Pleas Court is affirmed. Each assignment of error was reviewed and upon review the following disposition made:

Defendant-appellant, Isiah Andrews, appeals from a judgment entered by the trial court after a jury found him guilty of one court of aggravated murder, Revised Code 2903.01

The defendant was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial Hotel next door to where the defendant and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw the defendant appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning of September 18, she saw the defendant and his wife leave their room and get into their car, at which time she overheard the defendant tell his wife, "Bitch, you know I am going to kill you, don't you."

Betty Worth testified that she was working as a maid at the Colonial House Hotel on September 18, 1974 when, at about 11:00 a.m., she saw the defendant talking to his wife in the doorway of their room. Worth stated that she saw the defendant slam the door and go inside the room, whereupon a record player in the room was turned up very loud. Worth stated that approximately ten minutes later the record player was turned off and the defendant came out of his room, went to his car and opened its trunk; that the defendant then returned to his room and within a few minutes left carrying a large heavy object over his shoulder which he placed in the trunk of his car. Worth testified that she walked past the defendant's room and saw that the bed was stripped of all linen.

Regina Andrews body was found in Forest Hills Park in the afternoon of September 18, 1974 wrapped in bedroom linen. The linen was identified by Betty Worth as being the same type used in the Colonial House Hotel.

The jury found the defendant guilty of aggravated murder.

Defendant assigns the following as error:

I. The trial court erred by not ordering disclosure of information requested by the defense in its demand for discovery, and by not dismissing for a failure to respond to the discovery request and the motion for a Bill of Particulars.

II. Testimony of a police officer regarding a statement of the defendant should not have been permitted due to a lack of appropriate Miranda warnings.

III. The trial court erred by refusing to instruct the jury on the law of voluntary manslaughter.

IV. The trial court erred by not removing aggravated murder from the consideration of the jury both at the end of the State's evidence and against at the end of all the evidence.

V. The trial court erred by not ordering a complete psychological examination of the defendant where the evidence tended to show the defendant had previously been diagnosed insane.

I.

The defendant's first argument under this assignment of error is that the court erred in failing to grant the defendant's motion for discovery of the addresses of all witnesses. The record reveals that the prosecution moved for a protective order under Ohio Criminal Rule 16(E), n1 requesting that the names and addresses of certain witnesses not be disclosed because of threats made to those witnesses. n2 We find that the procedure of Rule 16(E) was followed and that the motion for a protective order was properly granted.

n1 Ohio Criminal Rule 16(E) reads in part:

"(E) Regulation of discovery.

"(1) Protective orders. Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate. . . ."

LEXIS·NEXIS LEXIS·NEXIS LEXIS·NEXIS
Services of Mead Data Central, Inc.

000379

Case No: 66960

STATE OF OHIO VS. ISAIAH ANDREWS

MOTION BY APPELLANT FOR RECONSIDERATION IS GRANTED PURSUANT TO APP.R. 4(A), CIV.R. 58(B). THE APPEAL IS READY FOR CALENDARING.

MATIA, J., D., P.J.

NUGENT, J., D., CONCUR

Date: 09/13/1994 17902

FORM 284 (6/85)

FROM:

Court of Appeals of Ohio
Eighth Appellate District
One Lakeside Ave.
Cleveland, Ohio 44113

TO:

DIANE SMILANICK
ASST. COUNTY PROSECUTOR
8TH FL. JUSTICE CENTER
1200 ONTARIO STREET
CLEVELAND, OH 44113

17902

Case No: 66960
STATE OF OHIO VS. ISAIAH ANDREWS

MOTION BY APPELLEE TO DISMISS APPLICATION FOR RECONSIDERATION DENIED AS MOOT. SEE ENTRY 54875 DATED 9/13/94.

NAHRA, J., P.J.

PATTON, J., J., CONCUR

FORM 284 (6/85)

Date: 09/20/1994

FROM:

Court of Appeals of Ohio
Eighth Appellate District
One Lakeside Ave.
Cleveland, Ohio 44113

TO:

DIANE SMILANICK
ASST. COUNTY PROSECUTOR
8TH FL. JUSTICE CENTER
1200 ONTARIO STREET
CLEVELAND, OH 44113

Slip Opinion

n2 The threatening letter read: "testify you die."

The second argument under this assignment of error is that the prosecution failed to provide a Bill of Particulars upon written request, as required by Criminal Rule 7(E). The record reveals that a Bill of Particulars was filed with the court on February 27, 1975, seven days before trial.

The first assignment of error is without merit.

II.

We find the second assignment of error to be without merit.

Detective Leo Allen of the Cleveland Police Department testified as to the oral statement made by the defendant to him during Detective Allen's investigation of the murder of Mrs. Andrews. The defendant argues that the oral statement should not have been admitted into evidence because the Miranda warnings were not given to the defendant before he made the statement.

We reject the defendant's argument. The police are required to give Miranda warnings only after a defendant is taken into custody. As the United States Supreme Court stated ". . . we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed. . . " Miranda v. Arizona (1966), 384 U.S. 436, 478. Here the defendant was not in custody and Miranda warnings were not required.

III.

We find the third assignment of error to be without merit.

The Ohio Supreme Court, in State v. Nolton, announced the following rule on when the court must give a jury an instruction on a lesser included offense:

". . ., if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, then a charge on the lesser included offense is both warranted and required, . . . ." Nolton (1964), 19 Ohio St. 2d 133, 135.

The record before us contains no facts from which the jury could find that the defendant was guilty of the lesser included offense of voluntary manslaughter. n3 There is no evidence that the defendant was "under extreme emotional stress brought on by serious provocation."

n3 R.C. § 2903.03 reads in part:

"Voluntary manslaughter.

"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

The court properly instructed the jury.

IV.

In the fourth assignment of error the defendant argues that the prosecution presented no evidence from which the jury could find that the defendant had killed his wife with "prior calculation and design," an element of the offense of aggravated murder, R.C. 2903.01, and that the court erred in allowing the charge of aggravated murder to go to the jury.

There is evidence in the record from which the jury could find that the defendant had killed purposefully after devising a plan or scheme to kill. n4

n4 The evidence on which the jury could depend and rely in finding that the defendant had killed his wife with prior calculation and design include: the threat against the deceased's life made by the defendant on the morning of September 18; the turning up of the record player in the defendant's apartment moments after the deceased was last seen alive; and the disposing of a large object by the defendant shortly after the deceased was last seen alive.

We find this assignment of error to be without merit.

V.

We find the fifth assignment of error to be without merit.

Under R.C. 2945.37 an examination into the sanity of a defendant is required only after a reputable physician certifies that the defendant is insane, or the grand jury finds the defendant to be insane. The record before us reveals neither a physician's certificate of insanity nor a finding by the grand jury of insanity. The trial court acted properly in not ordering complete psychological examination.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rule of Appellate Procedure. Exceptions.
N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

17902

T OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

GERALD E. FUERST, CLERK OF COURTS

| | | |
|---|---|---|
| STATE O, EX REL. ISAIAH ANDREWS | : | |
| Plaintiff-Relator | : | PETITION FOR WRIT OF MANDAMUS |
| | : | CASE NO. 66700 |
| COMMON PLEAS, | : | MOTION NO. 48462 |
| Defendant-Respondent | : | |
| OF ANNOUNCEMENT ECISION | : | FEBRUARY 25, 1994 |
| UDGMENT | : | DISMISSED. |
| DATE OF JOURNALIZATION | : | ______________________ |

APPEARANCES:

For plaintiff-relator:

Isaiah Andrews, Pro Se
Serial No. A141-345
Mansfield Correctional Institute
P.O. Box 788
Mansfield, Ohio 44901

For defendant-respondent:

Diane Smilanick
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT
COUNTY OF CUYAHOGA

GERALD E. FUERST, CLERK OF COURTS

S/O EX REL., ISAIAH ANDREWS

Relator — COURT OF APPEALS NO. 66700

-VS-

ORIGINAL ACTION

COURT OF COMMON PLEAS

Respondent — MOTION NO. 48462

Date 02/25/1994

Journal Entry

RELATOR REQUESTS THAT THIS COURT COMPEL RESPONDENT JUDGE TO ISSUE A DECISION WITH RESPECT TO THE APPLICATION FOR POSTCONVICTION RELIEF FILED BY RELATOR IN STATE V. ANDREWS, CUYAHOGA COUNTY COURT OF COMMON PLEAS CASE NO. CR-17902 IN APRIL, 1992.

RESPONDENT HAS FILED A MOTION TO DISMISS (MOTION NO. 48462) ATTACHED TO WHICH IS A COPY OF THE FINDINGS OF FACT AND CONCLUSIONS OF LAW ISSUED BY RESPONDENT AND RECEIVED FOR FILING BY THE CLERK ON JANUARY 26, 1994. RELATOR HAS NOT OPPOSED THE MOTION.

ACCORDINGLY, RESPONDENT'S MOTION TO DISMISS IS GRANTED. RESPONDENT TO PAY COSTS.

WRIT DISMISSED.

RECEIVED FOR FILING
FEB 25 1994
GERALD E. FUERST, CLERK
By [signature] Dep.

JOHN T. PATTON, J., CONCURS

[signature]
Presiding Judge
JOSEPH J. NAHRA, CJ

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66700

| | | |
|---|---|---|
| EX REL. | ) | |
| | ) | |
| STATE ISAI tor | ) | |
| | ) | CASE NO. CR 17902 |
| ION PLEAS | ) | |
| NTY, OHIO | ) | |
| espondent | ) | |

OTION TO DISMISS PETITION FOR WRIT OF MANDAMUS

Counsel for Respondent:

DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Relator:

ISAIAH ANDREWS
Serial No. A141-345
Ohio State Reformatory
P.O. Box 788
Mansfield, Ohio 44901

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66700

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. ISAIAH ANDREWS<br><br>Relator<br><br>-vs-<br><br>COURT OF COMMON PLEAS CUYAHOGA COUNTY<br><br>Respondent | ) | **MOTION TO DISMISS PETITION FOR WRIT OF MANDAMUS** |

Now comes Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests that this court dismiss the application for mandamus relief for the reasons more fully stated in the attached brief, made part of this motion.

Respectfully submitted,

STEPHANIE TUBBS JONES,
Cuyahoga County Prosecutor

BY: ______________________
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Respondent
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

SERVICE

A copy of the foregoing Motion to Dismiss Petition for Writ of Mandamus was mailed this 27th day of January, 1994, to Isaiah Andrews, Relator, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901.

______________________
Assistant Prosecuting Attorney

# BRIEF

## STATEMENT OF THE FACTS

On March 12, 1975, relator was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. 2903.01. Relator was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed relator's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported. On April 8, 1992, relator filed a Petition for Post-Conviction Relief. On January 3, 1994, relator filed a Petition for Writ of Mandamus.

## LAW AND ARGUMENT

Relator complains that his post-conviction petition has not been ruled on by respondent. Relator's contention is erroneous.

On January 26, 1994, respondent acted and denied the Petition for Post-Conviction Relief (see Exhibit A). As such, the request for mandamus relief is currently moot.

## CONCLUSION

The Petition for Writ of Mandamus should be denied.

Respectfully submitted,

STEPHANIE TUBBS JONES,
Cuyahoga County Prosecutor

BY: [signature]
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Respondent

EXHIBIT A

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

Attorney Peter H. Hull on appeal. Since defense counsel on direct appeal of defendant-petitioner's convictions did not raise the claim of ineffectiveness of trial counsel, State v. Cole, supra, precludes the utilization of post-conviction relief.

Accordingly, the court finds there are no substantial grounds for relief set forth in the Petition for Post-Conviction Relief, and in accordance with R.C. 2953.21, the Petition for Post-Conviction Relief is denied.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

1/26/94, 1994.

SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Isaiah Andrews | CR 12902

al Attorney - John Hyland

75 - Brief of appellant

6-75 - Filed our brief

8-76 - Judgmt. affirmed

26-76 - memo in sup. of juris

-24-76 - filed our memo oppos. juris

1-24-76 OSC motion overruled

~~7-18~~

10-13-78 - Pet. for post-con relief

6-23-78 - our m. for sum. judgmt.

7-18-78 - Δ's m for pc r is denied

~~8-25-78~~

8-7-78 - appellant's brief

8-25-78 - our brief filed

2-28-80 - Judgmt. reversed & case remanded for issuing f of f & c of law

4-3-80 - f of f & c of law signed by J Sweeney

5-8-92 - n. of appeal OSC

6-26-92 - OSC - dism'd cause motion for leave to appeal is dism.

1-3-94 - rec'd writ

? [4-8-92] application for post c r vacating & setting aside j & sentence filed

4-9-92 - application for delay reconsideration

4-27-92 - motion for delayed reconsideration Δ's denied.

? [4-27-92] motion for enlargement of time to file an application for reconsideration is denied

= file findings of fact & conclusion of law

State v Cole - diff. counsel

- speedy trial - should have been raised at trial

12/29/74 – [illegible]
1/21/75 – Jail
1/24/75 – arrested
3/3/75 – Cont
3/4/75 – Jail
3/5/75 – Trial

3/12/75 – Jury Verdict –

Case 016694
9/19/74 – arrested
9/19/74 – jail
~~10~~ 9/30/74 – con't
10/5/74 – con't
10/16/74 – ~~Jail~~ con't
10/21/74 – Jail
10/31/74 – indicted
11/8/74 – arraigned
12/16/74 – case nolle

✓ S v Adams
✓ S v. Andrews
✓ S v. Mitchell
✓ Struckland v Wash
✓ S v Tyler
Vaughn v Maxwell

000395

# ...RANCE AND EXECUTION CRIMINAL DOCKET

) Judge Carney CR ( 17902 )

| Co-Deft. See Pg. No. | Same Deft. Case No. | State of Ohio vs. | Co-Deft. See Pg. No. | Same Deft. Case No. |
|---|---|---|---|---|
| | | Carl Andrews<br>C of A No ~~10960~~<br>C of A 34620 | C/A 39712 | |

1-30-75 Capias McGettrick, J 247-22

Certified Mail Receipt No. 630342 Returned.
Failure of Service on Deft. Unclaimed
Notice to Prosecutor.

9-8-75 Amended entry, Deft. to serve from 9AM Wed. to 9AM Fri. until remainder of the balance of time is served. All other conditions remain. Carney, J 259-688

5-28-76 Probation Extended to 6-5-77 Fuerst, J. 276-653

5-30-77 Deft discharged from Probation at req of Prob. Dept. Carney J 307-539 307-887

2-9-7? - L. Foster 100-173-27 ... 3-23-79 ... 100 - 497-1

Transcript:
Charge:
Muny Ct:
Bail: $
Surety:

Indictment for: 1-21-75
Aggr. Murder
Jr. Pg.

Capias Issued:
Capias Returned:

ARRAIGNMENT: 1-24-75
Plea: NG
Bail: 10,000 Pre-Trial
Atty. Assgn: W. Summers, Hyland
Judge Matia Filed: Jr. 246 Pg. 778

Bond: $ CP#
Surety:
Date:
Jr. Pg.

BFC Filed:
Appear on:
Judge:
Jr. Pg.

BFC Vacated:
Judge: Filed:
Jr. Pg.

ON TRIAL 3-5-75
Jury (Sworn) Waived
3-6-75 3-11-75 248-904
3-7-75
3-10-75
Judge Sweeney Filed: Jr. 248 Pg. 689

CHANGE OF PLEA
To:
Ref. to:
Judge Filed:
Jr. Pg.

DISPOSITION: 3-12-75
Verdict guilty Aggr. Murd. Sent. Chillicothe for life.
Judge Sweeney Filed: Jr. 248 Pg. 903
Atty. Fee Allowed: $2600.00 (Brown $100)
Judge Sweeney, Gorman Filed: 3-25-75 Jr. 250 Pg. 396
Spellacy

1-23-75 Cont. to 1-24-75. Deft a Fed. Prisoner Matia, J 246-779

1-24-75 Ray Spears assgd. as investigator. Fee not to exceed 500 Matia, J 246-780

1-23-75 Writ of habeas Corpus 245-806
order granting writ. Matia 245-807
application for writ 245-808

Certified Mail Receipt No. 130341 Returned.
Failure of Service on Deft. Moved, left no address
Notice to Prosecutor.

1-31-75 Motion for Bill of Part. filed

2-12-75 application for writ of HC 246-815
Writ of HC 246-816
order granting writ of HC McGettrick 246-817

2-26-75 Application for writ of HC 247-543
writ of HC 247-544
order granting writ of HC Brown J 247 pg 545

3-13-75 Deptd Chillicothe

CONTINUED ON PAGE (Bal. 7.65)

CONTINUED ON PAGE 4 0 508

TAXED COSTS

| Amount | | Amount |
|---|---|---|
| 18.95 | Bond Forf. Judg. | 2.00 |
| 20.70 | Fine | 150.00 |
| | Atty. Fee | 263.65 |
| | | 413.65 |
| 24.00 | | |

| | Amount | | Amount |
|---|---|---|---|
| Clerk Masgay | 32.55 | Bond Forf. Judg. | |
| Sheriff | 45.25 | Fine | |
| Clerk Mun. Ct. | | Atty. Fee | 2600.00 |
| Bailiff | | 4608.70 | 458.80 |
| Witness Mun. Ct. | | 31.65 C of A | 3,058.80 |
| Witness C.P. | | 4640.35 Folios | 280.00 |
| Off. Ct. Stenog. | 56.00 | | 3338.80 |
| Jurors | 325.00 | Transcript | 1246.50 |
| | | | 4585.30 |
| | | Transcript | 23.40 |
| | | | 4608.70 |

COSTS PAID

| From | Amount | Cash Book |
|---|---|---|
| Foster | 25.00 | 84-64-11 |
| Foster | 40.60 | 55 ... 90-16 |
| | 75.00 | 90-367-24 |
| | 25.00 | 90-416-12 |
| | 25.00 | 91-179-2 |
| | 25.00 | 91-183-1 |
| | 25.00 | 91-270-27 |
| | 25.60 | 91-273-33 |
| | 20.00 | 94-107-36 |
| | 50.00 | 94-174-27 |
| | 20.00 | 95-145-3 |
| | 20.00 | 95-480-2 |

9 ... 97-352-42

| Date | Rec'd From | Amount | Cash Book |
|---|---|---|---|
| 6-5-75 | State of Ohio | 482.20 | 80-79-20 |
| 3-3-76 | " " " | 2500.00 | 84-85-25 |

CRIMINAL DOCKET

CONTINUED FROM CASE NO. 17902

THE STATE OF OHIO vs. Isaiah Andrews

Indictment for:

2-27-75 Bill of Part filed. Demand for Discovery by the State filed

3-3-75 Jury being impaneled. Deft ref to Psych clinic per 2945.37. Deft indigent, motion for investigator granted and J.C. Williams appt'd.
Sweeney, J 248-688

3-4-75 Deft being examined by Dr. Sell, trial to resume 3-5-75.
Sweeney, J 248-865

3-5-75 Hearing had, Deft found to be sane and able to stand trial. Sheriff ordered to have two deputies in civilian clothes in attendance at all times during the trial to take care of Deft.
Sweeney, J

3-12-75 Deft indigent, R. Miller and Peter Hull assign'd for appeal. Transcript ordered at State's expense.
Sweeney, J 250-196

3-24-75 Notice of appeal filed
Motion to appoint atty's on appeal and motion for State furnished Transcript filed. Praecipe for Transfer filed

3-26-75 Notice of Appeal + Copy of Docket Sheet to C of A

3-18-75
Dominic A. Coccia allowed $280.00
Sweeney 249-810

4-22-75 Transcript of Proceedings filed
Vol's 1+2

4-21-75
Dominic A. Coccia crt rep. allowed $1,246.50.
Sweeney 251-760

5-16-75
Mot for time ext to file assignments of error & brief granted to 6-10-75
Krenzler 252-952

6-16-75
Mot for time ext to file assignment of error & brief granted to 7-1-75.
Krenzler 255-58

7-11-75 Motion by appellee for ext. of time to file answer brief granted to Aug. 8, 1975
Krenzler 256-329

12.90

# APPEARANCE AND EXECUTION

000397

PG. NO. 50

CONTINUED FROM CASE NO. 17902

THE STATE OF OHIO vs. Isiah Andrews

Indictment for:

9-4-75 Record on appeal

3-18-76

Judg of Common Pleas is affirmed. Mandate issued (checked 4-7-76)

Jackson 272-220

4-22-76 Motion for declaration of indigency & for assg of counsel etc.

Corrigan, P.J. 273-756

9-24-76 Mot. for leave to appeal from 1 of A is overruled

Oh. Sup. Ct. 283-646

6-13-78 Petition for Post Conviction Relief Filed

6-12-78 Petition for Post Conviction Relief Pursuant to Ohio Revised Code 2953.21 Filed

6-12-78 Motion for an Evidentiary Hearing. Filed

6-12-78 Motion to Proceed in Forma Pauperis and Affidavit of Indigence Filed

6-22-78 Motion for Summary Judgment Filed Pros

7-13-78 Motion for Summary Judgement Filed

7-17-78 Deft. motion for Post Conviction Relief denied. Pros. motion for Summary judgment granted. 330-696

J. Sweeney, J

7/27/78 N/A Pro. Affidavit & Motion for Leave to proceed on appeal filed. Copy of Docket Sheet to Ct of A.

8-8-78 Motion for Transmission of The Record Filed

9-13-78 Record On appeal JCS

10/19/78 - Motion to transfer the record from case no. 34620 to 39712 is granted. (Case no. 34620 State vs. Isaiah Andrews was affirmed by this court on 3/18/76 & the panel was Jackson, C.J., Manos, J. & Silbert, J.) 337-248

12/17/79 Motion by Owen J. McCafferty for compensation is referred to panel that heard case on the merits. 376-957

CONTIN

THE ST

Indictme

9-2-75

9-8-75

of De

10-7-

10-7-7

10-7-7

11-28-75

12-19-7 assign

1-30-7

2-6-76

2-25-76 execute

R. McK

4-12-

11-4-76 reverse deft Jack

12-3-

1-7-77

Jung

1-26 Jung

UTION CRIMINAL DOCKET



CONTINUED FROM CASE NO. 17902

THE STATE OF OHIO vs. Isaiah Andrews

Indictment for:

3/10/80 Appeal from Common Pleas is in part modified, in part, & reversed & in part affirmed. 386-61-67

4-3-80 Findings of Fact and Conclusions of Law filed with the Clerk this date.
F. Sweeney J 386-408-409
386-996

c fa 39712 costs 35.35

4-8-92 application for post conviction relief, vacating & setting aside judgement & sent. filed. (MCI R-141-345)

4-9-92 Application for Delay Reconsideration, Affidavit of Indigency, Motion for ~~Ex~~ Enlargement of Time to File An Application for Reconsideration,

~~4-9~~ 4-21-92 Motion for Delayed Reconsideration is denied. M 5-11-92 (MCI) 5-11-92 1113-473

4-27-92 Motion to File an application for Reconsideration is denied M 5-11-92 (MCI) 5-11-92 1113-474

6-26-92 Motion for Leave to Appeal is Dismissed M 8-7-92 (MCI) 8-6-92 1135-631

```
CXDK 017902 0017707   ANDREWS              ,ISIAH        DOB-04/20/38 MALE     BLACK
12/29/74 ARREST CLEVELAND    *CASE CLOSED* JUDGE FRANCIS E SWEENEY
12/29/74 JAIL                *DEFN          ATTY  JOHN P HYLAND
01/21/75 INDICTED ORIGINAL
01/24/75 ARRAIGNED                     2903.01    AGGRAVATED MURDER         01
03/03/75 CONTINUANCE
03/04/75 JAIL
03/05/75 TRIAL
SWEENEY            03/03/75 REFERRED TO PSY CLINIC
                   03/12/75 JURY VERD/G CCI FOR LIFE
                   03/12/75 ORC2903.01 ,DISP.FND GLTY -JURY
OTHER CASES 016694 017903   OTHER DEFN.
KEYS: ENTER=NXT DEF; PF3=NOTES;
```

000400

17902

LETTER OF TRANSMITTAL

GERALD E. FUERST
Clerk of Courts

AL CHESNIK
Deputy Clerk

George J. Sadd, Esq.
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, OH 44113

January 7, 1994

RE: STATE OF OHIO EX REL., ISIAIH ANDREWS vs. COURT OF COMMON PLEAS, C.A. NO. 66700

Dear Mr. Sadd:

Enclosed is a copy of the above captioned case which has been filed in the Ohio Court of Appeals, Eighth District on:

JANUARY 3, 1994 ____________.

xxxx ____ Assumedly your office will be filing a responsive pleading in this case, if not, please advise the Court at 443-6391.

__________ This is to notify you that a hearing has been set for

____________________ at ____________________.

Assumedly uour office will be representing the Respondent, if not, please advise the Court.

Very truly yours,

GERALD E. FUERST
CLERK OF COURTS

Received by:

Al Chesnik (signature)
Al Chesnik, Deputy

______________________
Signature

______________________
Date and Time

IN THE COURT OF APPEALS
EIGHTH APPELLATE DISTRICT
CUYAHOGA COUNTY, OHIO

WRIT

STATE OF OHIO, ex rel. :
ISAIAH ANDREWS
REG. NO. A141-345 :
ManCI
POST OFFICE BOX 788 :

Relator, : 066700

-vs- : CASE NO.__________

COURT OF COMMON PLEAS : PETITION FOR WRIT OF MANDAMUS
CUYAHOGA COUNTUY

Respondent. :

FILED
COURT OF APPEALS
JAN 3 - 1994
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

**PITITION FOR WRIT OF MANDAMUS**

1. Relator, Isaiah Andrews, is currently incarcerated at the Mansfield Correctional Institution ("ManCI) in Mansfield, Ohio. The Relator was convicted of aggravated murder and sentenced to 15 to Life. Relator filed this action pursuant to, and this Court has jurisdiction under, Section [3], Article IV of the Ohio Constitution, and R.C. 2731.02.

2. Respondent Common Pleas Court is a subdivision of the legal system of the State of Ohio. Although Judicial discretion cannot be controlled by mandamus, the writ may issue to compel exercise of such discretion.

3. The purpose of Post-conviction Remedy Act is to correct denial of constitutional rights of an accused. R.C., Section 2953.21 et seq.

4. Because of prejudice which would rsult to accused by delay if accused's grounds for post-conviction relief are well taken, courts should take prompt action upon such petitions. R.C. Section 2953.21 et seq.

5. Petitioner filed his petition for post-conviction relief in April of 1992, approximately 20 months ago. Please see attached Application For Post-conviction Relief, Vacating and Setting Aside the Judgment and Sentence, pursuant to the Ohio Revised Code, section 2953.21 et seq., Exhibit "A"; and Memorandum in support of petition for Post-conviction Relief, Exhibit "B". Delay of 20 months without action on petition for post-conviction relief is excessive and petitioner is entitled to writ of mandamus to compel

determination on the petition. **State ex rel. Turpin v. Court of Common Pleas, 8 OS2d 1, 37 OO2d 40, 220 N.E.2d 670.**

6. Petitioner filed his petition under the Post-conviction Remedy Act in April 1992. In spite of petitioner's requests and inquirey about the delay, the court has failed to rule on such petition; the petition has now been pending for some 20 months. As pointed out in **State, ex rel. Victoratos v. Thomas, 175 Ohio St. 220, 193 N.E.2d 83,** although judical discretion cannot be controlled by mandamus, the writ may issue to compel the exercise of such discretion.

7. Inview of the nature of the Post-conviction Remedy Act, the purpose of which is to correct the denial of constitutional rights of an accused, and the prejudice which would result to the accused by delay if his grounds for relief were well taken, it would appear that prompt action on such petition should be taken by the court. The delay in the instant case in acting on the petition is more excessive than **State ex rel. Turpin v. Court of Common Pleas, 8 OS2d 1, 37 OO2d 40, 220 N.E.2d 670, Syllabus by the Court [2-4].**

8. Such a Writ of Mandamus is required for the reasons, among others, that Relator has no plain and adequate remedy in the ordinary course of the law. The result of Respondent's aforesaid delay is that Relator has been severely prejudiced, and, in the absence of such a Writ, Relator will continue to be severly prdjudiced.

**WHEREFORE**, Relator prays for a peremptory writ of Mandamus pursuant to R.C. 2731.06 compelling Respondent forthwith: To grant petitioner an evidentiary hearing to determine the issues of (a) ineffective assistance of trial counsel and (b) speedy trial violation. R.C. Section 2953.21(C); U.S.C.A. Cont. Amends. 6, 14.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Counsel for Relator

STATE OF OHIO )
) SS
COUNTY OF RICHLAND)

I, Isaiah Andrews, a citizen ofthe United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say:

1. That i am without the necessary funds with which to pay for the costs of this action;

2. I am without any possession, real or personal or sufficient value in with which to offer as security for such costs; and

3. That I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, this 28 day of December, 1993.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Petition for Writ of Mandamus has been mailed by Regular U.S. Mail, postage prepaid, on this 28th day of December, 1993 to the Court of Common Pleas, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

STATE OF OHIO,

Plaintiff-Respondent, :

-vs- : CASE NO. CR-17902

ISAIAH ANDREWS,

Defendant-Petitioner, :

APPLICATION FOR POST CONVICTION RELIEF, VACTING AND SETTING ASIDE THE JUDGMENT AND SENTENCE PURSUANT TO THE OHIO REVISED CODE SECTION 2953.21 ET SEQ.

COMES NOW, defendant-petitioner, Isaiah Andrews, in Pro Se and requests this Honorable Court to enter appropriate orders, setting aside the judgment and sentence, pursuant to section 2953.21 et seq. as imposed in the above entitled case, for the reasons set forth hereinafter, but expressly not limited thereto:

1. Petitioner Isaiah Andrews is confined and incarcerated in the Mansfield Correctional Institution at Mansfield, Ohio, which is a facility of the Ohio Department of Rehabilitation and Correction in Columbus, Ohio.

2. The restraints of petitioner Andrews is pursuant to sentence and judgment as entered in this criminal cause by the Honorable Judge F. Sweeny of the Cuyahoga County Court of Common Pleas; further restraint is by the warden of the Mansfield Correctional Facility, at Mansfield, Ohio.



Exhibit "A"

3. Petitioner Andrews' application for post-conviction relief is premised upon the provisions of the Ohio Post Conviction statute, O.R.C. Section 2953.21 et seq. and allegations of fact s and law on the record contending that the judgment and sentence on the aggravated murder in this cause of action was secured in violation of the petitioner's constitutional rights under the Ohio Constitution and the United States Constitution, Sixth and Fourteenth Amendments.

4. Prior to the present application for post-conviction relief, the following litigation was filed in this cause which directly attacked the judgment and sentence as imposed in this cause:

a) Direct appeal to the Court of Appeals, Eighth Appellate District, Case No. 34620. Andrews' conviction was affirmed by that Court in the Court's Journal Entry and Opinion (272-220) March 18, 1975.

b) Appeal to the Supreme Court of Ohio; September 24, 1976 for motion for leave to appeal is overruled; Journal Entry (283-646).

c) Application for Post-Conviction Relief filed June 13, 1978; Judge F. Sweeney granted prosecution summary judgment; Court of Appeals reversed summary judgment and requested that Common Pleas Court find facts and conclusions of law. Appointed Post-Conviction counsel died; I discovered Attorndy McCafferty's death two years later. All my communications for information went unanswered. Last Journal Entry 12/17/79 (376-957).

5. The issues litigated in this application for post-conviction relief have not been fully determined or at issue in any other particular judicial determination in relationship to the judgment and sentence herein related to the aggravated murder offense.

6. The judgment and sentence as imposed by the trial court in this cause is subject to collateral attack upon the grounds as shown hereafter, but expressly not limited thereto.

I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. DEFENDANT HAD BEEN HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT.

II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

7. The facts that support each of these of these issues are presented in the arguments and law that is set forth in the memorandum of law which is attached and submitted herewith. The facts and law will be discussed in depth as to the issue it is presented with legal argument in support of each of these claims.

8. Defendant-petitioner Andrews has not other plain, adequate and proper remedy available to him to present these claims other t han by application for post-conviction relief in this court. The issues raised and presented herein by petitioner are not time barred, collaterally estopped or subject to <u>res judicata</u> as there has never been, or could have been, a full and fair determination on the constitutional issues presented because the defendant was denied effective assistance of counsel at trial and on his appeal of right.

9. This court, in reviewing the claims/issues herein, mist hold the defendant Andrews to less stringent standards than formal pleadings drafted by an attorney; it must be determined if Mr. Andrews can prove any facts in support of his claims which would entitle him to relief for the constitutional violations presented herein. Moreover, defendant Andrews submits that his conviction is voidable under either the Ohio Constitution and the Constitution of the United States on the basis of the constitutional claims presented herein; therefore, he is entitled to the relief requested;

WHEREFORE, it is requested that this Court enter appropriate Orders as follows, but expressly not limited thereto:

10. Due to defendant Andrews' indigency, he request that COUNSEL be appointed to represent him in all further proceedings before this Court in this matter;

11. That the State be issued an ORDER TO SHOW CAUSE and that the SHOW CAUSE be returnable on a day certain, if any, why relief as requested by Mr. Andrews should not be granted.

12. That this court place this matter upon the calander for de nova hearing, with the presence of all parties hereto, including the defendant, whereupon relevant evidence, and arguments may be presented in support of the claim presented here.

13. That this Court issue a writ of habeas corpus ad testificandum directed to the Warden of the Mansfield Correctional Facility at Manfsfield, Ohio, for the purpose of the DEfendant, on a day certain, to appear before this Court at a hearing in this cause.

14. For such further appropriate relief that is warranted on the facts in this matter as law and justice require.

Date: April 1, 1992, at Mansfield, Ohio.

RESPECTIFULLY SUBMITTED,

Isaiah Andrews
ISAIAH ANDREWS
REG. NO. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Petitioner in Pro Se

VERIFICATION OF APPLICATION

STATE OF OHIO, COUNTY OF RICHLAND ) SS

The petitioner Andrews, Isaiah, appearing before a Notary Public of the State of Ohio, does hereinafter declare and affirm under the penalty of perjury that I have read the foregoing Application for Post-Conviction Relief and that the information contained therein is true and correct to the best of my knowledge and belief, and as to those matters which are given on information and belief, I verily believe that they are true and correct.

Isaiah Andrews
ISAIAH ANDREWS

Subscribed and sworn to before me

by Isaiah Andrews, voluntarily,

on this 1st day of April, 1992

Richard J. Leary
NOTARY PUBLIC

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I, ISAIAH ANDREWS, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, This 1st day of April, 1992.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CASE NO. CR-17902

(JUDGE:______________________)

STATE OF OHIO

Plaintiff :

-vs- : MEMORANDUM IN SUPPORT OF PETITION FOR POST-CONVICTION RELIEF

ISAIAH ANDREWS :

Defendant :

* * *

The Defendant is before this Court upon a petition for post-conviction relief. Defendant alleges that he was denied the constitutional right of a speedy trial and the effective assistance of counsel and that both denials amounts to a denial of due process. The defendant was confind in the county jail for this offense for a period in excess of 90 days, contrary to the provisions of Revised Code, Sections 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudical to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. The defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

MEMORANDUM OF ARGUMENTS
FACTS AND LAW

ARGUMENT I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. THAT DEFENDANT WAS HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT; THAT PROPER EVALUATION IS: 90 x 3 (+) 69 x 3, TOTAL = 477 DAYS OR APPROXIMATELY 15 MONTHS.

Exhibit "B"

A. SUPPORTING FACTS:

Before and at trial, in the case sub judice there was ample evidence in the court records tending to indicate that the defendant's constitutional right to a speedy trial was in violation. The court records, upon diligent investigation by trial counsel and after trial by appellate counsel, would have revealed that defendant was arrested for this offense on September 18, 1974; that he was indicted October 31, 1974 under CR-16694; that he was held in the Cuyahoga County Jail on the first indictment from September 18, 1974 until December 16, 1974; that delay of trial premised on prosecutor's action: on December 16, 1974, Prosecutor, Gibson, advised the Court, "all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him. For good cause shown, this case Nolle Prosequi."

Affiant states that he was arrested a second time on or about December 27, 1974 for bank robbery and placed in Cuyahoga County Jail; that he was reindicted again for the same charge which was dismissed (Nolle Prosequi) on December 16, 1974 under a new case number (CR-17902); that reindictment occured January 21, 1975; that affiant was arrigned January 24, 1975; that writs of habeas corpus were granted federal agents to take affiant to the federal building on January 23, 1975, February 13, 1975, and February 26, 1975; that affiant went to trial on March 5, 1975; that affiant was found Guilty on March 12, 1975 and sentenced to life.

At trial, defense counsel did not at any time raise the issue of speedy trial violation; he neither broached the speedy trial issue by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72.

B. THE LAW:

The Ohio Appeals Court clearly indicated the correct method of tolling (calculation of) time spent in jail waiting trial under bail in State v. Stephens, 52 Ohio App.2d 361; 6 Ohio Op.3d 404, 370 N.E.2d 759 (1977). The Court held in points (4) and (5) of the opinion, that: (4) where a nolle prosequi or a dismissal premissed on on fault of prosecution has been entered on indictment and accused is reindicted, proper method of computing time under statute pertaining to time within which trial must be held is to include the time incarcerated pending trial under reindictment, (5) dismissal of charges pursuant to statute, which provides that charge shall be dismissed if accused is not accorded preliminary hearing within time required by certain other statutory provisions, was proper.

In the Court Syllabus, the Court restated the standard which the United States Supreme Court set for judging whether a defendant has been deprived of his constitutional right to a speedy trial: "The United States Supreme Court in Baker v. Wingo (1972, 407b U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, identified some of the factors which courts should consider in determing whether a defendant has been deprived of his constitutional right to a speedy trial. The following four factors were identified: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., at 530, 92 S.Ct. at 2192. In assessing four factors, the court stated: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of the right of speedy trial." Id., at 533, 92 S.Ct. at 2193.

The Court went on to say in paragraph (2) of its syllabus: "We construe the above language to mean that evidence suggestive of a deprivation is not required for each of the four elements, but that evidence supportive of a deprivation is required for at lease more than one of the four elements. Accor, State v. Davis (1976), 46 Ohio State 2d 444, 349 N.E.2d 315."

In the case of Defendant, Andrews, the evidence establish the fact that length of delay from the first arrest to the date of trial from which this matter arises was approximately 15 months. The reason for the delay after December 16, 1974 at which time Defendant was ready to proceed, was the dismissal of charges under the first indictment for want of prosecution, and approximately six and one-half months delay for the trial under reindictment, which trial did not take place until March 5, 1975; that total time defendant spent in county jail was approximately 15 months; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto:

a. date of first arrest - September 18, 1974;
b. first trial date December 16, 1974;
c. dismissal of indictment premised on want of prosecution;
d. and fact that indictment on January 21, 1975, was a reindictment of indictment dismissed on December 16, 1974;
e. Second trial date - March 5, 1975.

ARGUMENT II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

A. SUPPORTING FACTS:

At no time prior to trial norduring trial did trial counsel move for a dismissal of charges based on the recorded facts, defendant's length of time in jail awaiting trial. If trial counsel had diligently investigated all relevant documentation, The defendant's court records would have revealed that on March 5, 1975 that defendant's length of time in the county jail was at that time (468 days) was approximately 15 months according to Revise Code, Section 2945.71, paragraph (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days...

An investigation of all relevant court records and an application of the law would have brought trial counsel to the conclusion that:

| | | | |
|---|---|---|---|
| a. | length of delay under first indictment was | 90 x 3 | =270 days |
| b. | length of delay under second indictment | 66 x 3 | =198 days |
| | TOTAL TIME IN JAIL | | =468 days |

c. reason for delay was prosecutor's want of prosecution.

d. the failure to bring the defendant to trial prior to March 5, 1975 so prejudiced the right of the defendant to be afforded a speedy trial that it was violative of his U.S. and Ohio Constitutional rights thereto.

Trial counsel's and appeal counsel's deficient performance prejudiced the defendant.

B. THE LAW:

The test established by the United States Supreme Court for determining whether a defendant was denied the effective assistance of counsel is articulated in Strickland v. Washington, 466 U.S. 668 and ask: "*** whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial be relied on as having produced a just result." Id. 686. The defendant must bear the burden of showing that counsel's performance was deficient and that such deficient performance prejudiced the defendant. Id, at 687

The Court of Appeals has noted that the standard in Ohio is "nearly identical" to the two prong test announced in Strickland declaring:

> The test in Ohio is "whether the accused, under all the circumstances *** had a fair trial and substantial justice was done." (citation omitted). In applying this test, the court must determine whether an essential duty owed by defense counsel has been substantially violated and whether such violation prejudiced the defense.

State v. Blagajevic, 21 Ohio App.3d 297, 299 (1985)

The second progn of the Strickland test asks whether defense "counsel's errors were so serious as to deprive the defendant of a fair trial (and) a trial whose result is unreliable." Strickland, Supra, at 687

Andrews trial counsel provided ineffective assistance by failing to move for a dismissal of charge because of speedy trial violations. Reasonable counsel would have objected to going to trial since there was ample documentation on which to base the legal objection and legal remedy to substantiate the objection.

Defense counse did not at any time raise the issue of speedy trial violation by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. Because of trial counsel's deficient performance the defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, United States Constitution. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed 1.

In Matire v Wainwright, 811 F.2d 1430, 1435 (CA 11, 1987), the Court of Appeals found that:

"To Make a successful claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficicient performance prejudice his defense. Strocl;amd v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed 674 (1984). Counsel's performance is deficient only if it fall below the wide range of competence demanded of attorneys criminal cases, Id. at 688, 104 S.Ct. at 2065. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct at 2068. The standard for ineffective assistance is the same for trial and appellate counsel. Peoples v. Bowen 791 F.2d 861 (11th Cir.), cert. denied ___U.S.___, 107 S.Ct. 597, 93 L.Ed.2d 597 (1976)

## CONCLUSION

Defendant, Andrews, Has put forth a colorable claim of denial of constitutional right to a speedy trial and the denial of effective assistance of trial; therefore, there is a substantive grounds for relief. After consideration of this Application for Post-Conviction Relief, all files and records pertaining to the proceedings in this matter, and the Memorandum In Support of Petition for Post-Conviction Relief, this Honorable Court should grant the relief herein requested.

Date: April 1, 1992

Respectfully submitted,

Isaiah Andrews
ISAIAH ANDREWS
Reg. No. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Defendant In Pro Se

CERFICATE OF SERVICE

I certify that a copy of the foregoing Application For Post-Conviction has been mailed, regular U.S. Postage, prepaid, on this day 1st of April, 1992, to Stephanie Tubbs-Jones, Prosecutor, Cuyahoga County, Ohio, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
ISAIAH ANDREWS

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I, ISAIAH ANDREWS, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, This 1st day of April, 1992.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE
RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

To Wit: September, 1995 Term

CASE NO. CR 17902

STATE OF OHIO )

Plaintiff-Respondent )

-vs- ) JOURNAL ENTRY

ISAIAH ANDREWS )

Defendant-Petitioner )

Defendant-petitioner's "Memorandum of Law in Support of Petition to Vacate or Set Aside Sentence" is liberally construed as a Petition to Vacate or Set Aside Sentence, filed pursuant to R.C. 2953.21. It raises the same issue raised in his first Petition under a theory of Due Process/Equal Protection. As this is a successive petition on the same grounds as the first petition, it is dismissed under the authority of R.C. 2953.23 and *State ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91.

THE CLERK OF COURTS IS ORDERED to serve a copy of this Journal Entry on Isaiah Andres, # A141-345, P.O. Box 788, Mansfield, Ohio 44901, and on Stephanie Tubbs Jones, Cuyahoga County Prosecutor, 1200 Ontario Street, Cleveland, Ohio 44113.

Dated: 9/28/95

CARL J. CHARACTER
Judge, Court of Common Pleas
Cuyahoga County, Ohio

THE STATE OF OHIO } ss I, GERALD E. FUERST, CLERK OF
Cuyahoga County } THE COURT OF COMMON PLEAS WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL CR 17902 Journal Entry
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 29
DAY OF Sept. A.D. 1995.
GERALD E. FUERST, Clerk
By [signature] Deputy

FILED
SEP 29 1995
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

COURT No.: 17902

CRIMINAL COMMON PLEAS COURT, CUYAHOGA COUNTY

JUDGE: ______

STEPHANIE TUBBS JONES, Prosecuting Attorney

APPEALS FILE

The State of Ohio
vs

| | Arrested | Indicted | Arraigned | Plea | Bond | Attorney | Capias |
|---|---|---|---|---|---|---|---|
| A ISAIAH ANDREWS | | | | | | | |
| B | | | | | | | |
| C | | | | | | | |
| D | | | | | | | |
| E | | | | | | | |

Charge: ______

Date of crime: ______

Pre-Trial Data: Date ______

Prosecutor ______

Disposition ______

Trial Data: Date ______

Prosecutor ______

Verdict ______

| Sentence | |
|---|---|
| A | |
| B | |
| C | |
| D | |
| E | |

000424

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 69702

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | CASE NO. CR 17902 |
| ISAIAH ANDREWS, | ) | |
| Defendant-Appellant | ) | |

# BRIEF OF APPELLEE

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

**DIANE SMILANICK** (#0019987)
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7800

Defendant-Appellant, Pro Se

**ISAIAH ANDREWS** #A141-345
P.O. Box 788
Mansfield, Ohio 44901

## TABLE OF CONTENTS

Statement of the Case and Facts . . . . . . . . . . . . . . . . . 1

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . 2

As to Assignment of Error No. I: . . . . . . . . . . . . . . 2
As to Assignment of Error No. II: . . . . . . . . . . . . . . 2

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appendix:

R.C. §2953.23

## TABLE OF AUTHORITIES

Cases:

State, ex rel. Workman v. McGrath (1988), 40 Ohio St. 3d 91 . 3

Statute:

R.C. §2953.23 . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNT

NO. 69702

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | **BRIEF OF APPELLEE** |
| ISAIAH ANDREWS, | ) | |
| Defendant-Appellant | ) | |

**STATEMENT OF THE CASE AND FACTS**

Isaiah Andrews, appellant hereinafter, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01, on March 12, 1975. Appellant was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed appellant's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992. Appellant filed a Petition for Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462) attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the Court of Common Pleas denying appellant's Petition for Post-Conviction Relief. The Eighth District Court of Appeals, Cuyahoga County, granted the State's Motion to Dismiss on or about February 25, 1994.

Appellant filed a Petition to Vacate or Set Aside Sentence on July 7, 1995. The trial court dismissed appellant's Petition on September 28, 1995.

Presently before this Court is appellant's appeal of the dismissal of his Petition to Vacate and/or Set Aside Sentence.

**LAW AND ARGUMENT**

> **ASSIGNMENT OF ERROR NO. I:**
> WHERE THE FINDINGS OF THE COURT, THAT "THE PETITION AND THE FILES AND RECORDS OF THE CASE SATISFACTORILY SHOW THAT THE PRISONER IS ENTITLED TO NO RELIEF," IS CONTRARY TO LAW, IT CONSTITUTES AN ABUSE OF DISCRETION, AND CONSTITUTES ERROR PREJUDICIAL TO THE PRISONER.

> **ASSIGNMENT OF ERROR NO. II:**
> APPELLANT IS PRESENTLY UNCONSTITUTIONALLY IMPRISONED OR RESTRAINED OF HIS LIBERTY; APPELLANT IS IN THE CUSTODY OF CARL ANDERSON, THE WARDEN OF (MANCI); AND THAT THE DETENTION IS ILLEGAL BECAUSE THE SENTENCING COURT WAS WITHOUT JURISDICTION TO RETRY AND SENTENCE APPELLANT TO A LIFE SENTENCE, PRONOUNCED BY JUDGE FRANCIS F. SWEENEY, COMMON PLEAS COURT, CUYAHOGA COUNTY, OHIO ON MARCH 12, 1975, FOR THE CONVICTION OF AGGRAVATED MURDER, A VIOLATION OF R.C. §2903.01.

The State of Ohio will address Assignments of Error No. 1 and No. II together as they relate to similar issues and principles of law.

Appellant argues that the trial court erred in dismissing his Petition for Post-Conviction Relief. Appellant also argues that he is presently being unconstitutionally imprisoned. Appellant's arguments are incorrect and meritless.

Appellant has filed two Petitions for Post-Conviction Relief. The same grounds for relief have been alleged in both petitions. A trial court may strike a successive petition without issuing

Findings of Fact and Conclusions of Law when a petitioner has filed a second or successive Petition for Post-Conviction Relief alleging the same grounds as an earlier petition. R.C. §2953.23; State, ex rel. Workman v. McGrath (1988), 40 Ohio St. 3d 91.

Appellant argues that the Journal Entry Judge Carl Character issued, dismissing his Petition, was not proper. Appellant's argument is incorrect. Judge Character correctly dismissed appellant's Petition without holding an evidentiary hearing because the Petition alleged the same grounds as an earlier Petition. McGrath, supra.

**CONCLUSION**

Appellant was unable to set forth substantive grounds for post-conviction relief, and the trial court properly dismissed his Petition without a hearing.

For the foregoing reasons, the State of Ohio respectfully requests that this trial court affirm the trial court's denial of appellant's Petition for Post-Conviction Relief.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: Diane Smilanick
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

**SERVICE**

A copy of the foregoing Brief of Appellee has been mailed this 11th day of December, 1995, to Isaiah Andrews #A141-345, Defendant-Appellant Pro Se, c/o P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick
Assistant Prosecuting Attorney

**2953.23 Second or successive petitions; order; appeal**

(A) Whether a hearing is or is not held, the court may, in its discretion and for good cause shown, entertain a second petition or successive petitions for similar relief on behalf of the petitioner based upon the same facts or on newly discovered evidence.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 69702

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| PLAINTIFF-APPELLEE | : | JOURNAL ENTRY |
| v. | : | AND |
| ISAIAH ANDREWS | : | OPINION |
| DEFENDANT-APPELLANT | : | |

| | |
|---|---|
| DATE OF ANNOUNCEMENT OF DECISION: | JUNE 13, 1996 |
| CHARACTER OF PROCEEDING: | Civil appeal from Common Pleas Court, No. CR-17902. |
| JUDGMENT: | AFFIRMED. |
| DATE OF JOURNALIZATION: | ______________________ |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | Stephanie Tubbs Jones, Esq.<br>Cuyahoga County Prosecutor<br>Diane Smilanick, Esq.<br>Assistant County Prosecutor<br>Justice Center - 8th Floor<br>1200 Ontario Street<br>Cleveland, OH 44113 |
| For Defendant-Appellant: | Isaiah Andrews, pro se<br>A141-345<br>P.O. Box 788<br>Mansfield, OH 44901 |

DAVID T. MATIA, J.:

Isaiah Andrews, defendant-appellant, appeals from the decision of the Cuyahoga County Court of Common Pleas granting the State of Ohio's, plaintiff-appellee's, motion to dismiss. Defendant-appellant raises two assignments of error for review. This court, finding no error, affirms the decision of the trial court.

I. STATEMENT OF FACTS

Isaiah Andrews, defendant-appellant, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. 2903.01, on March 12, 1975. Defendant-appellant was sentenced to a term of life imprisonment. This court affirmed defendant-appellant's conviction in *State v. Andrews* (March, 18, 1976), Cuyahoga App. No. 34620, unreported.

A number of post-conviction motions were subsequently filed by defendant-appellant including a petition for post-conviction relief. In this petition, which was filed on April 8, 1992, defendant-appellant alleged a violation of his right to a speedy trial and ineffective assistance of counsel. On January 3, 1994, defendant-appellant filed a petition for writ of mandamus with this court to compel the trial court to rule on his petition for post-conviction relief.

On January 26, 1994, the trial court denied defendant-appellant's petition for post-conviction relief without a hearing. The state filed a motion to dismiss defendant-appellant's petition for writ of mandamus attached to which was a copy of the findings of fact and conclusions of law issued by the trial court denying

defendant-appellant's petition for post-conviction relief. This court dismissed the writ on February 25, 1994.

On June 28, 1995, defendant-appellant filed a petition to vacate or set aside sentence based upon the theory of Due Process/Equal Protection. The trial court dismissed defendant-appellant's petition on September 28, 1995. Defendant-appellant appeals this dismissal.

## II. FIRST AND SECOND ASSIGNMENTS OF ERROR

Since Isaiah Andrews', defendant-appellant's, first and second assignments of error contain similar issues of law and fact, we will consider them concurrently.

> I. WHERE THE FINDINGS OF THE COURT, THAT "THE PETITION AND THE FILES AND RECORDS OF THE CASE SATISFACTORILY SHOW THAT THE PRISONER IS ENTITLED TO NO RELIEF," IS CONTRARY TO LAW, IT CONSTITUTES AND ABUSE OF DISCRETION, AND CONSTITUTES ERROR PREJUDICIAL TO THE PRISONER.
>
> II. APPELLANT IS PRESENTLY UNCONSTITUTIONALLY IMPRISONED OR RESTRAINED OF HIS LIBERTY; APPELLANT IS IN THE CUSTODY OF CARL ANDERSON, THE WARDEN OF (MANCI); AND THAT THE DETENTION IS ILLEGAL BECAUSE THE SENTENCING COURT WAS WITHOUT JURISDICTION TO RETRY AND SENTENCE APPELLANT TO A LIFE SENTENCE, PRONOUNCED BY JUDGE FRANCIS F. SWEENEY, COMMON PLEAS COURT, CUYAHOGA COUNTY, OHIO ON MARCH 12, 1975, FOR THE CONVICTION OF AGGRAVATED MURDER, A VIOLATION OF R.C. 2903.01.

### A. ISSUE RAISED: WHETHER THE TRIAL COURT ERRED IN DISMISSING DEFENDANT-APPELLANT'S MOTION TO DISMISS.

Defendant-appellant argues the trial court committed prejudicial error in dismissing his petition to vacate or set aside sentence.

Specifically, defendant-appellant argues the trial court is mandated by R.C. 2953.23(A) to consider the merits of his Due Process/Equal Protection claim. The trial court therefore abused its discretion when it merely adopted the state's suggested journal entry with said review.

Defendant-appellant's first and second assignments of error are not well taken.

**B. STANDARD OF REVIEW: RES JUDICATA AND R.C. 2953.23.**

*Res judicata*, also known as "claim preclusion" is the doctrine under which a final judgment on the merits bars a party from bringing another lawsuit based upon the same claim. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, paragraph one of syllabus. *Res judicata* extends to bar not only claims which actually were litigated, but "every question which might properly have been litigated." *Stromberg v. Bratenahl Bd. of Edn.* (1980), 64 Ohio St.2d 98.

"Res judicata prohibits an appellant from raising, by way of a motion for post-conviction relief, any issue which could have been raised at trial or through direct appeal when the appellate counsel is different from trial counsel." *State v. Rios* (April 15, 1993), Cuyahoga App. No. 63509, unreported at 5.

Moreover, "a trial court is not required to file findings of fact and conclusions of law when declining to entertain a second or successive petition for post-conviction relief which alleges the same grounds as earlier petitions." *State, ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91.

**C. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING DEFENDANT-APPELLANT'S PETITION TO VACATE OR SET ASIDE SENTENCE.**

In the case *sub judice*, defendant-appellant's claimed Due Process/Equal Protection violations are based upon or stem from his previously argued right to speedy trial and are therefore barred by the doctrine of *res judicata*. *Stromberg, supra*. Moreover, even if defendant-appellant's "unlawful restraint" argument is separate and distinct from his prior post-conviction arguments, it was an issue that could have been raised through direct appeal. See *Rios, supra*.

Finally, since the trial court properly determined that defendant-appellant's claims had previously been raised in his first petition for post-conviction relief, the trial court was not required to file findings of fact and conclusions of law as proof to defendant-appellant that it did in fact consider the merits of his claim. *State ex rel Workman, supra*.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

ANNOUNCEMENT OF DECISION
RECEIVED

JUN 13 1996

GERALD E. FUERST, CLERK
BY ______ DEP.

SPELLACY, C.J. and

NAHRA, J., CONCUR.

DAVID T. MATIA
JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 69702

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| PLAINTIFF-APPELLEE | : | JOURNAL ENTRY |
| v. | : | AND |
| ISAIAH ANDREWS | : | OPINION |
| DEFENDANT-APPELLANT | : | |

| | |
|---|---|
| DATE OF ANNOUNCEMENT OF DECISION: | JUNE 13, 1996 |
| CHARACTER OF PROCEEDING: | Civil appeal from Common Pleas Court, No. CR-17902. |
| JUDGMENT: | AFFIRMED. |
| DATE OF JOURNALIZATION: | ______________ |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | Stephanie Tubbs Jones, Esq.<br>Cuyahoga County Prosecutor<br>Diane Smilanick, Esq.<br>Assistant County Prosecutor<br>Justice Center - 8th Floor<br>1200 Ontario Street<br>Cleveland, OH 44113 |
| For Defendant-Appellant: | Isaiah Andrews, pro se<br>A141-345<br>P.O. Box 788<br>Mansfield, OH 44901 |

DAVID T. MATIA, J.:

Isaiah Andrews, defendant-appellant, appeals from the decision of the Cuyahoga County Court of Common Pleas granting the State of Ohio's, plaintiff-appellee's, motion to dismiss. Defendant-appellant raises two assignments of error for review. This court, finding no error, affirms the decision of the trial court.

I. **STATEMENT OF FACTS**

Isaiah Andrews, defendant-appellant, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. 2903.01, on March 12, 1975. Defendant-appellant was sentenced to a term of life imprisonment. This court affirmed defendant-appellant's conviction in *State v. Andrews* (March, 18, 1976), Cuyahoga App. No. 34620, unreported.

A number of post-conviction motions were subsequently filed by defendant-appellant including a petition for post-conviction relief. In this petition, which was filed on April 8, 1992, defendant-appellant alleged a violation of his right to a speedy trial and ineffective assistance of counsel. On January 3, 1994, defendant-appellant filed a petition for writ of mandamus with this court to compel the trial court to rule on his petition for post-conviction relief.

On January 26, 1994, the trial court denied defendant-appellant's petition for post-conviction relief without a hearing. The state filed a motion to dismiss defendant-appellant's petition for writ of mandamus attached to which was a copy of the findings of fact and conclusions of law issued by the trial court denying

defendant-appellant's petition for post-conviction relief. This court dismissed the writ on February 25, 1994.

On June 28, 1995, defendant-appellant filed a petition to vacate or set aside sentence based upon the theory of Due Process/Equal Protection. The trial court dismissed defendant-appellant's petition on September 28, 1995. Defendant-appellant appeals this dismissal.

## II. FIRST AND SECOND ASSIGNMENTS OF ERROR

Since Isaiah Andrews', defendant-appellant's, first and second assignments of error contain similar issues of law and fact, we will consider them concurrently.

> I. WHERE THE FINDINGS OF THE COURT, THAT "THE PETITION AND THE FILES AND RECORDS OF THE CASE SATISFACTORILY SHOW THAT THE PRISONER IS ENTITLED TO NO RELIEF," IS CONTRARY TO LAW, IT CONSTITUTES AND ABUSE OF DISCRETION, AND CONSTITUTES ERROR PREJUDICIAL TO THE PRISONER.
>
> II. APPELLANT IS PRESENTLY UNCONSTITUTIONALLY IMPRISONED OR RESTRAINED OF HIS LIBERTY; APPELLANT IS IN THE CUSTODY OF CARL ANDERSON, THE WARDEN OF (MANCI); AND THAT THE DETENTION IS ILLEGAL BECAUSE THE SENTENCING COURT WAS WITHOUT JURISDICTION TO RETRY AND SENTENCE APPELLANT TO A LIFE SENTENCE, PRONOUNCED BY JUDGE FRANCIS F. SWEENEY, COMMON PLEAS COURT, CUYAHOGA COUNTY, OHIO ON MARCH 12, 1975, FOR THE CONVICTION OF AGGRAVATED MURDER, A VIOLATION OF R.C. 2903.01.

### A. ISSUE RAISED: WHETHER THE TRIAL COURT ERRED IN DISMISSING DEFENDANT-APPELLANT'S MOTION TO DISMISS.

Defendant-appellant argues the trial court committed prejudicial error in dismissing his petition to vacate or set aside sentence.

Specifically, defendant-appellant argues the trial court is mandated by R.C. 2953.23(A) to consider the merits of his Due Process/Equal Protection claim. The trial court therefore abused its discretion when it merely adopted the state's suggested journal entry with said review.

Defendant-appellant's first and second assignments of error are not well taken.

**B. STANDARD OF REVIEW: RES JUDICATA AND R.C. 2953.23.**

*Res judicata*, also known as "claim preclusion" is the doctrine under which a final judgment on the merits bars a party from bringing another lawsuit based upon the same claim. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, paragraph one of syllabus. *Res judicata* extends to bar not only claims which actually were litigated, but "every question which might properly have been litigated." *Stromberg v. Bratenahl Bd. of Edn.* (1980), 64 Ohio St.2d 98.

"Res judicata prohibits an appellant from raising, by way of a motion for post-conviction relief, any issue which could have been raised at trial or through direct appeal when the appellate counsel is different from trial counsel." *State v. Rios* (April 15, 1993), Cuyahoga App. No. 63509, unreported at 5.

Moreover, "a trial court is not required to file findings of fact and conclusions of law when declining to entertain a second or successive petition for post-conviction relief which alleges the same grounds as earlier petitions." *State, ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91.

**C. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING DEFENDANT-APPELLANT'S PETITION TO VACATE OR SET ASIDE SENTENCE.**

In the case *sub judice,* defendant-appellant's claimed Due Process/Equal Protection violations are based upon or stem from his previously argued right to speedy trial and are therefore barred by the doctrine of *res judicata. Stromberg, supra.* Moreover, even if defendant-appellant's "unlawful restraint" argument is separate and distinct from his prior post-conviction arguments, it was an issue that could have been raised through direct appeal. See *Rios, supra.*

Finally, since the trial court properly determined that defendant-appellant's claims had previously been raised in his first petition for post-conviction relief, the trial court was not required to file findings of fact and conclusions of law as proof to defendant-appellant that it did in fact consider the merits of his claim. *State ex rel Workman, supra.*

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

ANNOUNCEMENT OF DECISION
RECEIVED

JUN 13 1996

GERALD E. FUERST, CLERK
BY _______ DEP.

SPELLACY, C.J. and
NAHRA, J., CONCUR.

DAVID T. MATIA
JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 69702

STATE OF OHIO, )

Plaintiff-Appellee )

-vs- ) CASE NO. CR 17902

ISAIAH ANDREWS, )

Defendant-Appellant )

# BRIEF OF APPELLEE

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

**DIANE SMILANICK** (#0019987)
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7800

Defendant-Appellant, Pro Se

**ISAIAH ANDREWS** #A141-345
P.O. Box 788
Mansfield, Ohio 44901

## TABLE OF CONTENTS

Statement of the Case and Facts . . . . . . . . . . . . . . . . 1

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . 2

As to Assignment of Error No. I: . . . . . . . . . . . . . 2
As to Assignment of Error No. II: . . . . . . . . . . . . . 2

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appendix:

R.C. §2953.23

## TABLE OF AUTHORITIES

Cases:

<u>State, ex rel. Workman v. McGrath</u> (1988), 40 Ohio St. 3d 91 . 3

Statute:

R.C. §2953.23 . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNT

NO. 69702

STATE OF OHIO, )

Plaintiff-Appellee )

-vs- ) **BRIEF OF APPELLEE**

ISAIAH ANDREWS, )

Defendant-Appellant )

## STATEMENT OF THE CASE AND FACTS

Isaiah Andrews, appellant hereinafter, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01, on March 12, 1975. Appellant was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed appellant's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992. Appellant filed a Petition for Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462) attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the Court of Common Pleas denying appellant's Petition for Post-Conviction Relief. The Eighth District Court of Appeals, Cuyahoga County, granted the State's Motion to Dismiss on or about February 25, 1994.

Appellant filed a Petition to Vacate or Set Aside Sentence on July 7, 1995. The trial court dismissed appellant's Petition on September 28, 1995.

Presently before this Court is appellant's appeal of the dismissal of his Petition to Vacate and/or Set Aside Sentence.

**LAW AND ARGUMENT**

> **ASSIGNMENT OF ERROR NO. I:**
> WHERE THE FINDINGS OF THE COURT, THAT "THE PETITION AND THE FILES AND RECORDS OF THE CASE SATISFACTORILY SHOW THAT THE PRISONER IS ENTITLED TO NO RELIEF," IS CONTRARY TO LAW, IT CONSTITUTES AN ABUSE OF DISCRETION, AND CONSTITUTES ERROR PREJUDICIAL TO THE PRISONER.
>
> **ASSIGNMENT OF ERROR NO. II:**
> APPELLANT IS PRESENTLY UNCONSTITUTIONALLY IMPRISONED OR RESTRAINED OF HIS LIBERTY; APPELLANT IS IN THE CUSTODY OF CARL ANDERSON, THE WARDEN OF (MANCI); AND THAT THE DETENTION IS ILLEGAL BECAUSE THE SENTENCING COURT WAS WITHOUT JURISDICTION TO RETRY AND SENTENCE APPELLANT TO A LIFE SENTENCE, PRONOUNCED BY JUDGE FRANCIS F. SWEENEY, COMMON PLEAS COURT, CUYAHOGA COUNTY, OHIO ON MARCH 12, 1975, FOR THE CONVICTION OF AGGRAVATED MURDER, A VIOLATION OF R.C. §2903.01.

The State of Ohio will address Assignments of Error No. 1 and No. II together as they relate to similar issues and principles of law.

Appellant argues that the trial court erred in dismissing his Petition for Post-Conviction Relief. Appellant also argues that he is presently being unconstitutionally imprisoned. Appellant's arguments are incorrect and meritless.

Appellant has filed two Petitions for Post-Conviction Relief. The same grounds for relief have been alleged in both petitions. A trial court may strike a successive petition without issuing

Findings of Fact and Conclusions of Law when a petitioner has filed a second or successive Petition for Post-Conviction Relief alleging the same grounds as an earlier petition. R.C. §2953.23; State, ex rel. Workman v. McGrath (1988), 40 Ohio St. 3d 91.

Appellant argues that the Journal Entry Judge Carl Character issued, dismissing his Petition, was not proper. Appellant's argument is incorrect. Judge Character correctly dismissed appellant's Petition without holding an evidentiary hearing because the Petition alleged the same grounds as an earlier Petition. McGrath, supra.

**CONCLUSION**

Appellant was unable to set forth substantive grounds for post-conviction relief, and the trial court properly dismissed his Petition without a hearing.

For the foregoing reasons, the State of Ohio respectfully requests that this trial court affirm the trial court's denial of appellant's Petition for Post-Conviction Relief.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: [signature]
DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

**SERVICE**

A copy of the foregoing Brief of Appellee has been mailed this 11th day of December, 1995, to Isaiah Andrews #A141-345, Defendant-Appellant Pro Se, c/o P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick
Assistant Prosecuting Attorney

**2953.23 Second or successive petitions; order; appeal**

(A) Whether a hearing is or is not held, the court may, in its discretion and for good cause shown, entertain a second petition or successive petitions for similar relief on behalf of the petitioner based upon the same facts or on newly discovered evidence.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

No. 069702

RECEIVED
NOV 15 1 30 PM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

STATE OF OHIO, )

Plaintiff-Appellee )

-vs- ) CASE NO. CR 17902

ISAIAH ANDREWS, )

Defendant-Appellant )

# BRIEF OF APPELLANT

STEPHANIE TUBBS JONES
Cuyahoga County prosecutor

DAINE SMILANICK #0019987
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Counsel for Plaintiff-Appellant

ISAIAH ANDREWS
Reg. No. A141-345
P.O. BOX 788
Mansfield, Ohio 44901

Appellant Pro Se Counsel

TABLE OF CONTENTS

PAGE

ASSIGNMENT OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND LAW . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . 12

APPENDIX:

1. Notice of Appeal

2. Journal Entry of Case No. CR 16694, Vol. 245 PG 310

3. Judgment Entry of CR 16694

# TABLES OF AUTHORITIES

CASES PAGE

Blackledge v Perry, 417 U.S. 21, 40 L.E.2d 628, 94 S.Ct. 2098 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Golib, 99 Ohio App. 88, 58 OO 172, 130 N.E.2d 855 . . . . 11

Guam v Dergurgur, 800 F.2d 1470 (9th Cir. 1986) . . . . . . . . . 10

Lee v Jennings Transfer Co. (1967), 237 N.E.2d 918, 14 Ohio App.2d 221, 43 OO2d 453 . . . . . . . . . . . . . . . . . . . 9

Native Village of Noatak v Hoffman, 872 F.2d 1384, 1390 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Porter v Green (1965), 4 Ohio App.2d 336, 33 OO2d 394, 312 N.E.2d 618 . . . . . . . . . . . . . . . . . . . . . . . . . 6

San Antonio Independence School Dist. v Rodrequez, 411 U.S. 1, 26 L.E.2d 16, 93 S.Ct. 1278 (1973) . . . . . . . . . . . . . . 10

Sinclair v Sinclair (1955), 129 N.E.2d 311, 98 Ohio App. 308, 57 OO 347 . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

State v Dixon (1984), 14 Ohio App.3d 396, 14 OBR 513, 471 N.E.2d 864 . . . . . . . . . . . . . . . . . . . . . . . . . 11

State v Stephens (1977), 52 Ohio App.2d 361, 6 O.O.3d 404, 370 N.E.2d 756 . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v Allen 957 F.2d 1160 (6th Cir. 1992) . . . . . . . 11

STATUTES PAGE

R.C. 2941.33 . . . . . . . . . . . . . . . . . . . . . . . . . 2,8

R.C. 2945.71 . . . . . . . . . . . . . . . . . . . . . . . . . 7

R.C. 2945.71(C)(2) . . . . . . . . . . . . . . . . . . . . . 1,2,8,9

R.C. 2945.73 . . . . . . . . . . . . . . . . . . . . . . . . . 7

R.C. 2945.73(A) . . . . . . . . . . . . . . . . . . . . . 1,2,8,9

R.C. 2945.73(B) . . . . . . . . . . . . . . . . . . . . . . . 1,8

TABLES OF AUTHORITIES CONT.

STATUTES PAGE

R.C. 2945.73 (D) . . . . . . . . . . . . . . . . . . . . . . . . 2,3

R.C. 2953.21 (A) . . . . . . . . . . . . . . . . . . . . . . . . 5,6

R.C. 2953.21 (C) . . . . . . . . . . . . . . . . . . . . . . . . 3

RULES

Criminal Rules 48(A) . . . . . . . . . . . . . . . . . . . . 2,3,8,9

CONSTITUTIONAL

United States Constitution, Amend. V . . . . . . . . . . . 9
United States Constitution, Amend. VI . . . . . . . . . . 9
United States Constitution, Amend. XIV . . . . . . . . . . 9

OHIO CONSTITUTION

Article I, Section 10 . . . . . . . . . . . . . . . . . . . . 9

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

No. 069702

STATE OF OHIO )

Plaintiff-Appellee )

-vs- ) BRIEF OF APPELLANT

ISAIAH ANDREWS )

STATEMENT OF THE FACTS

Appellant is unlawfully incarcerated or restrained of his liberty because the trial court was without jurisdiction with which to try and impose sentence.

1. Appellant, in Case No. CR 16694, was arrested on September 17, 1974;

2. Appellant resided in the Cuyahoga County Jail for 90 consecutive days in liue of bail;

3. The Honorable Judge Harry Jaffe set the trial date for December 16, 1974, and this fact is recorded in CR 16694, Vol. 243 PG 262;

4. On December 16, 1974, the date set for trial, Appellant in compliance with R.C. §2945.73(B), Motioned for Dismissal of charges to protect hs Sixth Amendment rights to a speedy trial, because on the date set for trial: 12/16/74, he had been denied both his substantive Constitutional and Statutory rights to a speedy trial, which are guaranteed by the Sixth Amendment to the United States Constitution, art I, §10 of the Ohio Constitution, and mandated by R.C. §2945.71(C)(2) and 2945.73(A);

5. On the date set for trial: 12/16/74, Prosecutor Gibson

in open court and for good cause shown Nolle Prosequi Case No. CR 16694, and this fact can be found in Vo. 245 PG 310;

6. Since the State had allowed the time mandatory time period within which it had to try appellant to expire, after apppellant resided in the Cuyahoga County Jail for 90 consecutive days in liue of bail, the dismissal of the criminal proceedings for want of prosecution was a bar to reindictment because the dismissal was constitutionally compelled by the Sixth Amendment to the United States Constitution, and it was Statutorily compelled by the substantive rights appellant is given under R.C. § 2945.71(C)(2) and R.C. § 2945.73(A);

7. A court may only enter a nolle prosequi for good cause shown, Ohio Revised Code § 2941.33;

8. A nolle prosequi entered in open court at the request, as in the case at bar, of prosecuting attorney raises a presumption of good cause in conformity with the statute.

9. Appellant was released on December 16, 1974;

10. When the State, six (6) days later, after appellant's release from the Cuyahoga County Jail, rearrested him and reindicted him on the same charge, based on the same conduct, it was without legal authority to do so, State's conduct was barred by R.C. §2945.73(D) and Criminal Rule 48(A), and this conduct by the State denied appellant equal protection and due process of law;

11. When the Common Pleas Court of Cuyahoga, Ohio, tried and sentenced appellant in Case No. CR 17902, it was without jurisdiction and legal authority to do so, which conduct by

the Common Pleas Court denied this appellant equal protection and due process of law of both the Federal and State laws.

12. Appellant filed his first postconviction relief petition on April 8, 1992, alleging the denial of SPEEDY TRIAL rights and INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL in Case No. CR 17902;

13. On June 8, 1995, appellant filed a Petition To Vacate Or Set Aside Sentence with an Evidentiary Hearing Requested, alleging that appellant is unlawfully incarcerated or retrained of his liberty because he was denied equal protection and due process of law under Fifth and Fourteen Amendments to the United States Constitution, R.C. 2945.73(D) and Criminal Rule 48(A).

On June 28, 1995, Assistant Prosecuting Attorney, Diane Smilanick Motion to Dismiss Petition To Vacate or Set Aside Sentence;

15. On June 30, 1995, Appellant Motion For Summary Judgement;

16. And on July 13, 1995, Assistance Prosecuting Attorney, Karen L. Johnson, Proposed a Journal Entry, alleging that appellant raised the same issues in his first and second petitions;

17. On September 1, 1995, appellant Motion To Issue Findings of Facts and Conclusions of Law; and

18. On September 28, 1995, Judge Character adopted the prosecuting attorney's Proposed Journal Entry.

Presently before this Court is Appellant's appeal from the Common Pleas Court's dismissal without a hearing nor a finding of facts and conclusions of law.

## LAW AND ARGUMENT

ASSIGNMENT OF ERROR NO. I;
WHERE THE FINDINGS OF THE COURT, THAT "THE PETITION AND THE FILES AND RECORDS OF THE CASE SATISFACTORILY SHOW THAT THE PRISONER IS ENTITLED TO NO RELIEF," IS CONTRARY TO LAW, IT CONSTITUTES AN ABUSE OF DISCRETION, AND CONSTITUTES ERROR PREJUDICIAL TO THE PRISONER.

ASSIGNMENT OF ERROR NO. II:
APPELLANT IS PRESENTLY UNCONSTITUTIONALLY IMPRISONED OR RESTRAINED OF HIS LIBERTY; APPELLANT IS IN THE CUSTODY OF CARL ANDERSON, THE WARDEN OF (MANCI); AND THAT THE DETENTION IS ILLEGAL BECAUSE THE SENTENCING COURT WAS WITHOUT JURISDICTION TO RETRY AND SENTENCE APPELLANT TO A LIFE SENTENCE, PRONOUNCED BY JUDGE FRANCIS F. SWEENEY, COMMON PLEAS COURT, CUYAHOGA COUNTY, OHIO, ON MARCH 12, 1975, FOR THE CONVICTION OF AGGRAVATED MURDER, A VIOLATION OF R.C. § 2903.01

The Appellant address Assignments of Error One and Two together because the facts and documents upon both rely are the same.

Judge Carl Character is a learned Judge, an expert in both thesubstantive and procedural laws of this state, and expected to follow legal mandates. R.C. §2953.21(C) required him to look at the issue or claim raised along with the records, journal entries, and transcripts in this case, but in the case at bar Judge Carl Character failed or ommitted to follow the mandates of R.C. § 2953.21(C) when he adopted the suggested jour-

nal entry of the prosecuting attorney, which alleged that the appellant raised the same issue in appellant's first and second petitions.

For the record, the issues appellant raised in his first postconviction petition were:

SPEEDY TRIAL VIOLATION and

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL in case CR 17902.

The facts are the same in both petitions, and this is allowed by R.C. §2953.23(A). A person learned ing the substantive and procedural laws of this state could hardly confuse the issue of SPEEDY TRIAL VIOLATION and INEFFECTIVE ASSISTANCE OF COUNSEL with UNLAWFUL RESTRAINT.

When appellant in his petition to vacate or set aside sentence with evidentiary request, alleged that he was unlawfully restrained of his liberty, then the Common Pleas Court was mandated by R.C. §2953.23(A) to inquire into appellant's allegations to determined if appellant's allegations had merit; and if so, then what operative facts, evidentiary documents, and legal authorities did appellant employ to substantiate his allegations: that he is unlawfully incarcerated or restrained of his liberty.

If Judge Carl Character had followed the postconviction remedy mandates, then the records, journal entries, and transcripts would have revealed the the facts contained in the Statement of Facts in this brief, pages 1 through page 3.

The actions of the Common Pleas Court was unreasonable, arbitrary, and indicates an unconscionable attitude on the court's part.

From the facts present in this brief along with a review of the records of CR 16694 and CR 17902 and the Journal Entries of these court records, the findings of the Common Pleas Court will be found to be contrary to law, and the court's findings or decision constitutes an abuse of discretion, and constitutes error prejudicial to the appellant. Porter v. Green (1965) 4 OApp2d 336, 33 002d 394, 312 NE2d 618. Where the findings ofthe court, that "the petition and the files and the records of the case satisfactorily show that the prisoner is entitled to no relief," is contrary to law, it constitutes an abuse of discret-ion, and constitutes error prejudical to the prisoner.

Appellant has shown that when the Common Pleas Court did not follow the mandates of R.C. §2953.23(A), but instead adopted the suggested journal of Assistant Prosecuting Attorney, Karen L. Johnson, dated July 13, 1995, that this court's action constituted abuse of discretion; that it was unreasonable, arbitrary or un-conscionable attitude on the part of the court. Lee v. Jennings Transfer Co. (1967) 237 NE2d 918, 14 Ohio App2d 221, 43 002d 452.

Appellant adopts the following definition of the phrase "abuse of discretion": Abuse of discretion does not mean bad motive, wrong purpose, or intentional wrong on part of trial court, but it means exercise of discretion to end or purpose not justified by, and clearly against reason and evidence. Sinclair v. Sinclair, (1955) 129 NE2d 311, 98 Ohio App. 308, 57 00 347.

Appellant has clearly demonstrated that he is unlawfully

restrained of his liberty and that the Common Pleas court in CR 17902 was without jurisdiction and legal authority to sentence him to imprisonment, and that nothing which has transpired since CR 16694 was nolle prosequi because it was constitutionally compelled and statutorily compelled, has legal authority. And it must plainly appear to reasonable men that an injustice has taken place and the court of common pleas had an opportunity to inquire into the matter, and was impowered to do so by R.C. 2953.23(A). But even more unconsicnable is the fact that a citizen alleges unlawful restraint, and the authority with the power to look into this serious matter adopts a point of view rather than follow the mandates which govern these matters. Sinclari v. Sinclair, ((1955) 129 NE2d 311, 98 Ohio App. 303 57 00 347. For action of trial court to constitute reversible error on ground that action is an abuse of discretion, the action must plainly appear to effect an injustice to appellant.

Appellant has plainly demonstrated that an abuse of discretion has taken place, and for that reason this Court should find the petition and the files and the records of this case satisfactorily show that the appellant is entitled to relief, and that the decision of the court of common pleas is contrary to law, and that it constitutes an abuse of discretion, and constitutes error prejudicial to the appellant.

As to issue two:

Appellant, like all citizens of Ohio, have substantive rights under R.C. §2945.71 to R.C. §2945.73 when accused of a criminal offense.

The reindictment, trial, and sentencing of Appellant after a nolle prosequi which was constitutionally compelled and statutorily compelled because the state had allowed the statutory time limit within which it had to try appellant to run out amounts to nothing less than unlawful restrant or unlawful incarceration since the sentencing court was without jurisdiction.

Appellant spent 90 consecutive days in the Cuyahoga County Jail in liue of bail, and his trial date was set for 12/16/74, CR 16694, Vol 243 PG 262: on that date pursuant to Criminal Rule 48(A), R.C. §2945.71(C)(2), R.C. §2945.73(A), and R.C. §2941.33, after appellant pursuant to R.C. §2945.73(B) filed for dismissal of charges, the state nolle prosequi CR 16694, CR 16694, Vol. 245 PG 310:

> "Now comes the Prosecuting Attorney on behalf of the State and defendant, Isaiah Andrews was brought into Court, respresented by counsel.
> Prosecutor, Gibson, advises Court that all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him.
> For good cause shown, this case Nolle prosequi."

And Appellant was released from the Cuyahoga Cuonty Jail on December 16, 1974. Approximately six (6) days later, after appellant's release on December 16, 1974, he was unlawfully rearrested, indicted, tried, and sentenced in Case No. CR 17902 for the same conduct he had been indicted in Case No. CR 16694, which was nolle prosequi on December 16, 1974 because it was constitutionally compelled, because it was statutorily compelled by the Sixth Amendment to the United States Constitution, art I

§10 of the Ohio Constitution, R.C. §2945.71(C)(2), R.C. §2945.73(A), and therefore the State was barred by Criminal Rule 48(A), R.C. §2945.73(D), the Fifth and Fourteenth Amendments to the United States Constitution from denying appellant equal protection and due process of law of both federal and state law because the sentencing court was without jurisdiction.

CRIMINAL RULE 48(A) Dismissal by the State: "The State may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate.

To protect appellant's Sixth Amendment Rights, appellant on December 16, 1974, the day set for trial, motioned for dismissal of charges, and the dismissal was with prejudice because it was constitutionally compelled and statutorily compelled; appellant was thereafter immuned from further prosection based on the same conduct.

Appellant's unlawful restraint is a violation of his Fourteenth Amendment rights secured under the United States Constitution, which states in pertinent part:

> "No state shall make or enforce any law which shall abridge the privileges or immunities of a citizen of the United States; nor shall any state deprive of life, liberty, or property, without due process of law: nor deny to any person within its jurisdiction the equal protection of the laws.

United States Constitution, Amendment XIV/

Appellant's unlawful restraint is also a deprivation of his Fifth Amendment rights to the United States Constitution which states in pertinent part:

"..., nor be deprived of life, liberty, or property, without due process of law..."

United States Constitution, Amendment V.

Native Village of Noatak v. Hoffman, 872 F2d 1384, 1390 (9th Cir. 1989); San Antonio Independent School District v. Rodriguez, 411 US 1, 26 LEd2d 16, 93 SCt. 1278 (1973): once the government has given a right or something of value to a person they cannot take it away or dilute on grounds violative of the Fourteenth Amendment.

Appellant's unlawful restraint is State's wilful disregard for both State and Federal laws; which conduct by the State has substantially interfered with Appellant's liberty; the Appellant is painfully awere of this unlawful restraint and has suffered great harm both mentally and physically as a result of this illegal restraint; which restraint is total; that to enforce this unlawful restraint, the State exercised force through cuffs, shackles, cells, and the expressed and implied threat of deadly force; and that the State acted without legal justification. Rather this unlawful restraint of Appellant is because Appellant exercised his rights under the Ohio Statutory law and his United States Constitutional rights secured under the Sixth Amendment to the United States Constitution. Guam v. Dergurgur, 800 F2d 1470 (9th Cir. 1986); Blackledge v. Perry, 417 US 21, 40 LE2d 628, 94 SCt. 2098 (1974):

It is unconstitutional deprivation of due process for government to penalize person merely because he has exercised protective statutory or constitutional right; US v. Allen, 957 F2d 1160 (6th Cir. 1992):

Prosecutors decision in determining which cases to prosecute cannot be based on defendant's race, sex, religion, or exercise of statutory or constitutional right.

In the case at bar, it was after term of CR 16694 and without jurisdiction or legal authority that the trial court under Judge Francis F. Sweeney in Case No. CR 17902 set aside the Court of Common Pleas ORDER of the honorable Judge Harry Jaffe who presided in the case at bar in Case No. CR 16694. In re Golib, 99 App 88, 58 00 172, 130 NE2d 855: After term a court may not set aside its order of nolle prosequi and resinstate the indictment. State v. Stephens (1977), 52 App2d 361, 6 003d 404, 370 NE2d 756; State v. Dixon (2984), 14 App3d 396, 14 OBR 513, 471 NE2d 864. A dismissal of nolle prosequi with prejudice pursuant to Criminal Rule 48(A) may only be entered where there is a deprivation of a defendant's constitutional or statutory rights, the violation of which would in and of itself, bar further prosecution.

## CONCLUSION

Appellant, Isaiah Andrews, has presented this Honorable Court with a plain case which demonstrates that Appellant is unlawfully restrained of his libery because the sentencing court was without jurisdiction or legal authority to imprison

Appellant; that Appellant's unlawful restraint denies him equal protection and due process of law of both State and Federal law; and that Appellant has shown that the Common Pleas Court has abused its discretion and thereby prejudiced Appellant; for foregoing reason, the Common Pleas Court's final decision should be reversed and the issues remanded back to that Court, or this Court should release Appellant since he is unlawfully restrained of his liberty.

Respectfully submitted,

*Isaiah Andrews*

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

PROOF OF SERVICE

Appellant certifies that a true copy of his Appellant's Brief with attached documents has been mailed this *8-h* day of *November*, 1995, to Prosecuting Attorney Stephanie Tubbs Jones, Cuyahoga County, Ohio, 1200 Ontario Street, The Justice Center, Cleveland, Ohio 44113.

By: *Isaiah Andrews*

ISAIAH ANDREWS
REG. No. A141-345
P.O. BOX 788
MANSFIELD, OHIO 44901

APPENDIX

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Appellee, | ) | Case No. CR 17902 |
| -vs- | ) | NOTICE OF APPEAL |
| ISAIASH ANDREWS | ) | |
| Defendant-Appellant. | ) | **069702** |

Please take notice that Isaiah Andrews, Defendant-Appellant, hereby appeals to the Court of Appeals, Eighth Judicial District of Ohio, Cuyahoga County, from the judgment entered by the Court of Common Pleas, Cuyahoga County, Ohio, in the above-entitled cause on the 28th day of September, 1995.

Date: 10 / 11 / 95

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

FILED
COURT OF APPEALS
OCT 19 1995
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

To Wit: September, 1995 Term

CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Respondent | ) | |
| -vs- | ) | JOURNAL ENTRY |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Defendant-petitioner's "Memorandum of Law in Support of Petition to Vacate or Set Aside Sentence" is liberally construed as a Petition to Vacate or Set Aside Sentence, filed pursuant to R.C. 2953.21. It raises the same issue raised in his first Petition under a theory of Due Process/Equal Protection. As this is a successive petition on the same grounds as the first petition, it is dismissed under the authority of R.C. 2953.23 and *State ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91.

THE CLERK OF COURTS IS ORDERED to serve a copy of this Journal Entry on Isaiah Andres, # A141-345, P.O. Box 788, Mansfield, Ohio 44901, and on Stephanie Tubbs Jones, Cuyahoga County Prosecutor, 1200 Ontario Street, Cleveland, Ohio 44113.

Dated: 9/28/95

[signature]
CARL J. CHARACTER
Judge, Court of Common Pleas
Cuyahoga County, Ohio

THE STATE OF OHIO } ss I, GERALD E. FUERST, CLERK OF
Cuyahoga County } THE COURT OF COMMON PLEAS WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL CR 17902 Journal Entry
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 29
DAY OF Sept A.D. 1995.
GERALD E. FUERST, Clerk
By [signature] Deputy

FILED
SEP 29 1995
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

CCI M 9/29/95

THE STATE OF OHIO
Cuyahoga County } SS. I, GERALD E. FUERST, CLERK OF THE COURT OF COMMON PLEAS WITHIN AND FOR SAID COUNTY.

HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL Criminal Journal Entry CR-016694
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 10
DAY OF March A.D. 1992
GERALD E. FUERST, Clerk
By [signature] Deputy

STATE OF OHIO, CUYAHOGA COUNTY } SS.

IN THE COURT OF COMMON PLEAS
SEPTEMBER TERM, 19 74
TO-WIT: December 16, 1974, 19

STATE OF OHIO PLAINTIFF
vs.
Isiah Andrews DEFENDANT

NO. CR-16694
INDICTMENT Aggr. Murder

JOURNAL ENTRY

Now comes the Prosecuting Attorney on behalf of the State and defendant, Isiah Andrews was brought into Court, represented by counsel.

Prosecutor, Gibson, advises Court that all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him.

For good cause shown, this case Nolle Prosequi.

Harry Jaffe, Judge

va
1/8

RECEIVED FOR FILING
JAN 17 1975
B. J. MASSAY, CLERK
BY [signature] DEPT.

JUDGE [signature: Harry Jaffe]

CorC 133

Exhibit "A"

VOL 245 PG 310

000471

Case No: 69702
COMMON PLEAS COURT
STATE OF OHIO VS. ISAIAH ANDREWS

Notice: Complete record of appeal filed on 10/20/1995 in compliance with rule 11(B) Ohio rules of appellate procedure.

Gerald E. Fuerst
Clerk of Courts

FORM 284 (6/85)

Date: 10/20/95 CR 17902
11-9

FROM:

Court of Appeals of Ohio
Eighth Appellate District
One Lakeside Ave.
Cleveland, Ohio 44113

TO:

STEPHANIE T. JONES
CUYAHOGA COUNTY PROS.
8TH FLOOR JUSTICE CENTER
1200 ONTARIO STREET
CLEVELAND, OH 44113

17902 Smilanil

Case No: 69702

Date: 11/20/1995

STATE OF OHIO VS. ISAIAH ANDREWS

FORM 284 (6/85)

MOTION BY APPELLANT FOR LEAVE TO PROCEED IN FORMA PAUPERIS IS GRANTED.

MATIA, J., O., P.J.

SWEENEY, J., J., CONCUR

FROM:

Court of Appeals of Ohio
Eighth Appellate District
One Lakeside Ave.
Cleveland, Ohio 44113

TO:

STEPHANIE T. JONES
CUYAHOGA COUNTY PROS.
8TH FLOOR JUSTICE CENTER
1200 ONTARIO STREET
CLEVELAND, OH 44113

000472

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

RECEIVED
OCT 13 10 59 AM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Appellee, | ) | Case No. CR 17902 |
| -vs- | ) | NOTICE OF APPEAL |
| ISAIASH ANDREWS | ) | |
| Defendant-Appellant. | ) | |

Please take notice that Isaiah Andrews, Defendant-Appellant, hereby appeals to the Court of Appeals, Eighth Judicial District of Ohio, Cuyahoga County, from the judgment entered by the Court of Common Pleas, Cuyahoga County, Ohio, in the above-entitled cause on the 28th day of September, 1995.

Date: 10 / 11 / 95

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Appellee, | ) | Trial Court Case No. CR 17902 |
| -vs- | ) | |
| ISAIAH ANDREWS | ) | Date of Praecipe: 10/ 11/ 95 |
| Defendant-Appellant. | ) | Date of Final Judgment In Trial Court: 9/ 28/ 95 |
| | ) | |
| | ) | Date of Filing Notice of Appeal 10/ 11/ 95 |

PRAECIPE

TO THE CLERK OF THE TRIAL COURT:

IMMEDIATELY PREPARE AND ASSEMBLE THE ORGINAL PAPERS AND EXHIBITS FILED IN THE TRIAL COURT IN CR 16694 AND CR 17902 AND A CERTIFIED COPY OF THE DOCKET AND JOURNAL ENTRIES. IN ADDITION, THE RECORDS ON THIS APPEAL WILL INCLUDE THE FOLLOWING:

1. Complete transcript of CR 16694 and CR 17902 under Appellate Rule 9(B).

2. Under CR 16694, Journal Docket Entry Vol. 245 PG 310.

COUNSEL (APPELLANT IN PRO SE) CERTIFIES THE FOLLOWING:

The court reporter has previously prepared (transcribed) the trial transcripts of the proceedings in this cause under both CR 16694 and CR 17902, and said transcripts are on file with the Clerk of Courts, for Cuyahoga County, Ohio.

Isaiah Andrews
Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Appellant In Pro Se

IN THE COURT OF APPEALS
EITHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | ) | Trial Court Case No. 17902 |
| Plaintiff-Appellee, | ) | |
| -vs- | ) | Date of Praecipe: 10/ 11/ 95 |
| ISAIAH ANDREWS | ) | Date of Docketing Statement: 10/ 11/ 95 |
| Defendant-Appellant. | ) | |

DOCKETING STATEMENT

1. THIS APPEAL SHOULD BE ASSIGNED TO:

The regular calendar, with full briefing for the reasons that: the transcripts are more than one hundred pages; the brief will exceed fifteen pages necessary to argue the issues adequately, and the appeal concers unique issues of law wihch will be of substantial value in the determination of similar cases.

2. WAIVER OF ORAL ARGUMENTS:

The undersigned party will not waive oral arguments.

Isaiah Andrews
Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Appellant In pro Se

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Appellee, | ) | Court of Appeals No. ______ |
| -vs- | ) | Trial Court No. CR 17902 |
| ISAIAH ANDREWS | ) | |
| Defendant-Appellant. | ) | |

MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

COMES NOW, the defendant-appellant, Isaiah Andrews, and hereby moves this Honorable Court to dispense with the docketing fees and request leave to proceed in forma pauperis for the reasons stated in the attached affidavit of indigency.

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

STATE OF OHIO )
) SS
COUNTY OF RICHLAND)

AFFIDAVIT OF INDIGENCY

I, Isaiah Andrews, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, Affiant Sayeth Naught.

Isaiah Andrews
Signature of Affiant

Sworn to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, this 12th day of October, 1995.

Carl O. Giles
Notary Public's Signature
CARL O. GILES
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires May 16, 1997

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Notice of Appeal, Praecipe, Docketing Statement, Motion For Leave To proceed In Forma Pauperis, Affidavit of Indigency, and Certificate of Service, has been forwarded to Stephanie Tubbs Jones, Prosecuting Attorney, Cuyahoga County, Ohio, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, Attorney for Plaintiff-Appellee, by Certified receipt Return Mail, postage prepaid, on this 12th day of October, 1995.

Isaiah Andrews

Isaiah Andrews

RECEIVED
OCT 4 2 16 PM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

To Wit: September, 1995 Term

CASE NO. CR 17902

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| Plaintiff-Respondent | ) | |
| -vs- | ) | JOURNAL ENTRY |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Defendant-petitioner's "Memorandum of Law in Support of Petition to Vacate or Set Aside Sentence" is liberally construed as a Petition to Vacate or Set Aside Sentence, filed pursuant to R.C. 2953.21. It raises the same issue raised in his first Petition under a theory of Due Process/Equal Protection. As this is a successive petition on the same grounds as the first petition, it is dismissed under the authority of R.C. 2953.23 and *State ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91.

THE CLERK OF COURTS IS ORDERED to serve a copy of this Journal Entry on Isaiah Andres, # A141-345, P.O. Box 788, Mansfield, Ohio 44901, and on Stephanie Tubbs Jones, Cuyahoga County Prosecutor, 1200 Ontario Street, Cleveland, Ohio 44113.

Dated: 9/28/95

CARL J. CHARACTER
Judge, Court of Common Pleas
Cuyahoga County, Ohio

THE STATE OF OHIO } ss I, GERALD E. FUERST, CLERK OF THE COURT OF COMMON PLEAS
Cuyahoga County } WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL CR 17902 Journal Entry
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 29
DAY OF Sept. A.D. 1995.
GERALD E. FUERST, Clerk
By [signature] Deputy

FILED
SEP 29 1995
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

CCI M 9/29/95

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

RECEIVED
SEP 5 10 14 AM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CR 179027 |
| Plaintiff-Respondent | : | JUDGE ____________ |
| VS. | : | |
| ISAIAH ANDREWS | : | MOTION TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| Defendant-Petitioner | : | |

STEPHANIE TUBBS JONES
Prosecuting Attorney
County of cuyahoga
Courts Tower Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

ISAIAH ANDREWS
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Defendant-Petitioner Pro Se

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CR 17902 |
| Plaintiff-Respondent | : | JUDGE________________ |
| vs. | : | |
| ISAIAH ANDREWS | : | MOTION TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| Defendant-Petitioner | : | |

Now comes the petitioner, Isaiah Andrews, and motions this Honorable Court to issue findings of fact and conclusions of law pursuant to R.C. 2953.21 et. seq. for the reasons set forth in the brief attachedhereto.

Respectfully submitted,

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

SERVICE

A copy of the foregoing Motion To Issue Findings Of Fact And Conclusions Of Law has been mailed this 25th day of August, 1995, to Stephanie Tubbs Jones, Cuyahoga County prosecutor, Attorney for Plaintiff-Respondent, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

## BRIEF

Isaiah Andrews, Petitioner hereinafter, has filed a Petition To Vacate Or Set Aside Sentence, on July 7, 1995 Petitioner filed a Motion For Summary Judgment.

Petitioner is now requesting that this Honorable Court Issue Findings Of Fact and Conclusions of Law. Petitioner's authority for this request is: State ex rel Brown v. Court (1986) 23 OS3d 46, 23 OBR 122, 491 NE2d 303.

## CONCLUSION

Defendant-Petitioner request this Honorable Court to Issue Findings of Fact and Conclusions of Law so that he may proceed with the pursuit of his lawful freedom from unlawful incarceration.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews

Petitioner In Pro Se

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | **MOTION TO DISMISS PETITION TO VACATE OR SET ASIDE SENTENCE** |
| ISAIH ANDREWS, | ) | |
| Defendant-Petitioner | ) | |

Now comes Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests this Honorable Court to dismiss without a hearing the Petition to Vacate or Set Aside Sentence for the reasons set forth in the brief attached hereto.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: Diane Smilanick
DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Respondent
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

**SERVICE**

A copy of the foregoing Motion to Dismiss has been mailed this 28th day of June, 1995, to Isaiah Andrews #A141-345, Petitioner Pro Se, c/o P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick
Assistant Prosecuting Attorney

petition. R.C. §2953.23; State, ex rel. Workman v. McGrath (1988), 40 Ohio St. 3d 91.

**CONCLUSION**

The State of Ohio respectfully requests this Honorable Court to dismiss the Petition to Vacate or Set Aside Sentence, without a hearing, for the above stated reasons.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: Diane Smilanick
DIANE SMILANICK #0019987
Assistant Prosecuting Attorney

Karen

RECEIVED
JUL 5 11 07 AM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | MOTION FOR SUMMARY JUDGMENT |
| ISAIAH ANDREWS, | ) | |
| Defendant-Petitioner | ) | |

Now comes Isaiah Andrews, Defendant-Petitioner, and respectfully request this Honorable Court to enter summary judgment in his favor pursuant to Civ. R. 56(A) and 56(C) for the reasons set forth in the brief attached hereto.

Respectfully submitted,

Isaiah Andrews
Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

SERVICE

A copy of the foregoing Motion for Summary Judgment has been mailed this 30th day of June, 1995, to Stephanie Tubbs Jones, Cuyahoga County Prosecutor, Attorney for Plaintiff-Respondent, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

## BRIEF

## STATEMENT OF THE CASE AND FACTS

Isaiah Andrews, Petitioner hereinafter, was first arrested On September 18, 1974; after being indicted under CR 16694 for one Count of Aggravated Murder, R.C. §2903.01; Petitioner's Attorney, Robert Ruggeri, prior to trial and after Petitioner had resided in the Cuyahoga County Jail for 89 days, Motioned for Dismissal of charges; Prosecuting Attorney Gibson on December 16, 1974 in Case No. CR 16694 nolle Prosequi as follows:

> Now comes the Prosecuting Attorney on behalf of the State and defendant, Isaiah Andrews was brought into Court respresented by counsel.
>
> Prosecutor, Gibson, advises Court that all witnesses have been subpoenaed, but that the essential witness is unable to be located, even thuogh diligent effort has been made to locate him.
>
> For good cause shown, this case Nolle Prosequi.

This Nolle Prosequi was Journalized in Vol. 245 PG 310 and signed by the Honorable Judge, Harry Jaffe.

Approximately 6 days after Petitioner's December 16, 1974 discharge from the Cuyaohga County Jail, State's Attorney, Charles R. Laurie, Jr., had Petitioner reindicted under CR 17902 based upon the same conduct, which reindictment denied Petitioner equal protection of both state and federal law and also denied him due process of both state and federal law.

Petitioner was held another 66 days before being tried on March 5, 1975 and found guilty on March 12, 1975.

Petitioner filed a Petition for Post-Conviction Relief on April 8, 1992, wherein he raised the following two issues:

I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

II. SPEEDY TRIAL VIOLATION

Presently before this Court is a Petition to Vacate or Set Aside Sentence with a request for an Evidentiary Hearing.

## LAW AND ARGUMENT

State's Attorney erroneously alleges that Petitioner's second Petition for Post-Conviction Relief raises the same grounds as Petitioner's first Post-Conviction Relief. In his first Petition for Post-Conviction Relief, Petitioner raised Ineffective assistance of trial counsel and speedy trial violation. Petitioner in his Petition to Vacate or Set Aside Sentence raises the following issue:

> PETITIONER IS UNLAWFULLY INCARCERATED BECAUSE HE HE WAS DENIED EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, R.C. 1945.73(D), R.C. 1941.33, AND CRIMINAL RULE 48(A).

This Honorable Court will find after it compares the issues raised in Petitioner's first Post-Conviction and the issue raised in Petitioner's Petition to Vacate or Set Aside Sentence are not the same issues and that the issue before this Court is supported by evidence which dehors the record of RC 17902.

Revised Code §2953.23 permits a court to accept filing of a second or sucessive petitions for similar relief based on the same facts.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is nogenuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ. R. 56(C).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 3q7, 325, 106 S.Ct. 2548, 2554 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Civ. R. 56(E). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256, 106 S.Ct. at 2513 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Xoep., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

"(T)he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 245-48, 106 S.Ct. at 2510.

Under the second indictment of Petitioner, the trial Court lacked jurisdiction because reindictment after Nolle Prosequi under Criminal Rule 48(A), R.C. 2945.73(B), and R.C. 2941.33, based upon the same conduct is prohibited under Ohio law, which indictment denied Petitioner equal protection of Federal and State laws. The second indictment was after term and in violation of established law: In re Golib, 99 App 88, 58 OO 173, 130 NE2d 855: After term a court may not set aside its order of nolle prosequi and reinstate the indictment.

Whether Petitioner is unlawfully incarcerated is a material fact to his Fifth and Fourteenth claim and Petitioner has produced affirmative evidence the negates Respondent's charge that Petitioner raises the same grounds or issues. Celotex, 377 U.S. at 325. Respondent has responded only with mere bare allegation of same grounds which is clearly not the case. Bare allegations by the non-moving party will not suffice to avoid summary judgment; they must be supported by sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence that the Respondent is entitled to a verdict." Mitchell v. Toledo HospitaL, 964 F. 2d 577, 581-582 (6th Cir. 1992) (quoting Liberty Lobby, 477 U.S. At 252).

Accordingly, because Respondent has not produced sufficient facts nor evidence for a jury to conclude that Petitioner raises the same grounds or issues, which would be barred by res judicata, and the Respondent would have raised that doctrine as an issue to bar a hearing, summary judgment is appropriate.

## CONCLUSION

Defendant-Petitioner respectfully requests this Honorable Court not to dismiss the Petition to Vacate or Set Aside Sentence without a hearing, but instead grant Petitioner Summary Judgment for the above stated reasons.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews

Petitioner In Pro Se

RECEIVED FOR FILING
JUN 14 1995
GERALD E. FUERST, CLERK
BY ______ DEP.

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | CASE NO. CR 17902 |
| Plaintiff-Respondent | : | JUDGE ____________ |
| -vs- | : | |
| ISAIAH ANDREWS | : | MEMORANDUM OF LAW IN SUPPORT OF PETITION TO VACATE OR SET ASIDE SENTENCE |
| Defendant-Petitioner. | | |

EVIDENTIARY HEARING REQUESTED

RECEIVED
JUN 15 1995
PROSECUTING ATTORNEY
CUYAHOGA COUNTY
CLEVELAND, OHIO

STEPHANIE TUBBS JONES
Prosecuting Attorney
County of Cuyahoga
Courts Tower Justice Center
1200 Ontario street
Cleveland, Ohio 44113

ISAIAH ANDREWS
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Defendant-Petitioner In *Pro Se*

RECEIVED FOR FILING

JUN 14 1995

GERALD E. FUERST, CLERK
BY________________DEP.

## THE ISSUE

PETITIONER IS UNLAWFULLY INCARCERATED BECAUSE HE WAS DENIED EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, R.C. 2945.73(D), R.C. 2941.33, AND CRIMINAL RULE 48(A).

A. THE FACTS:

1. Petitioner was arrested September 18, 1974 and indicted for Aggravated Murder, a violation of R.C. 2901.01 under Case No. CR 16694;

2. Petitioner was held in jail in liue of bail from September 18, 1974 to December 16, 1974;

3. Prior to trial Petitioner's Attorney, Robert Ruggeri motioned for dismissal of charges;

4. On Dedember 16, 1974, in the Court Room of the Honorable Judge Harry Jaffe, State's Attorney, Prosecutor, Gibson stated the following Journal Entry which can be found under Case No. CR 16694, Vol. 245 PG 310;

> Now comes the Prosecuting Attorney on behalf of the State and defendant, Isaiah Andrews was brought into Court, represented by counsel.
> Prosecutor, Gibson, advises Court that all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him.
> For good cause shown, this case Nolle Prosequi.

Please see attached Jounal Entry under Case No. CR 16694, and

Petitioner was released on December 16, 1974.

5. Approximately 6 days later, after Petitioner's release on Dedember 16, 1974, he was re-arrested and indicted under CR 17902 for the same conduct he had been indicted under CR 16694;

6. Petitioner was held for another 66 days before being tried and unlawfully sentenced.

7. Petitioner's attorney under CR 17902 was John P. Hyland; and

8. Petitioner's attorney on Appeal was Peter H. Hull.

B. THE LAW:

The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law. United States Constitution V Amend.

Petitioner Andrews after the State's Attorney, in open Court and for good cause shown, nolle prosequi Casé No. CR 16694, was immuned from further prosecution for the same conduct. Petitioner's incarceration is in direct violation of the Fourteenth Amendment to the United States Constitution, which states in pertinent part:

> No state shall make or enforde any law which sahll abridge the privileges or immunities of citizens of the United States; nor shall any state deprive of life, liberty, or property, without due process of law: nor deny to any person within its jurisdict-ion the equal protection of the laws.

United States Constitution, Amendment XIV.

The reindictment, prosecution, and incarceration of this Petitioner has deprived him of due process of law and equal protection of Ohio's laws and Federal Laws. Native Village of Noatak v. Hoffman, 872 F2d 1384, 1390 (9th Cir. 1989); San Antonio Independent School District v. Rodriguez, 411 US 1, 26 LE2d 16, 93 SCt. 1278 (1973). Once the government has given a right or simething of value to a person they cannot take it away or dilute it on grounds violative of the Fourteenth Amendment.

Petitioner strongly feels that he was reindicted, prosecuted, and incarcerated because he exercised his rights under Ohio Statutory Law and his constitutional right under the Six Amendment to the United States Constitution. Guam v. Dergurgur, 800 F2d 1470 (9th Cir. 1986); Blackledge v. Perry, 417 US 21, 40 LE2d 628, 94 SCt 2098 (1974: It is unconstitutional deprivation of due process for government to penalize persons merely because he has exercised protected statutory or constitutional right; US v. Allen, 954 F2d 1160 (6th Cir. 1992): Prosecutors decision in determining which case to prosecute cannot be based on defendant's race, sex, religion, or exercise of statutory or constitutional right; US v. Young 955 F2d 99 (1st Cir. 1992)..

Reindictment, after nolle prosequi under Criminal Rule 48(A), R.C. 2945.73(B), and R.C. 2941.33, based upon same conduct is prohibited under Ohio law and denied Petitioner equal protection of Ohio laws.

In accordance with R.C. 2945.73(B), upon motion made at or prior to the commencement of trial, a person charged with an offense shall be dis-

charged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code, Petitioner's attorney, Robert Reggeri, made a motion for dismissal because Petitioner was not brought to trial within the time required hy sections 2945.71 and 2945.72. This fact dehors CR 17902 and is Journalized under CR 16694, Vol. 245 PG 310, dated December 16, 1974.

On December 16, 1974, Petitioner was discharged pursuant to R.C. 2945.73 (B), and according to R.C. 2945.73(D), which states in pertinent part:

> "...When an an accused is discharged pursuant to division (B) or (C) of this section, such discharge is a bar to any further criminal proceedings against him based on the same conduct."

Petitioner's incarceration is also inviolation with legislative intent; In pertinent part the Committee Comment to H 511:

> This section states the effect of a failure to bring an accused to preliminary hearing or trial within the time allowed by section 2945.71 as extended pursuant to section 2945.72. Failure to bring a person accused of felony to preliminary hearing within the proper time requires that the case be dismissed as on a nolle prosequi. Failure to being an accused to trial (for misdemeanor or felony) within the proper time requires that the case against him be dismissed with prejudice to the state as to any furture prosecutions based on the same conduct..."

State v. Eberhardt (1978) 56 OApp2d 193, 10 003d 197, 381 NE2d 1357, Where an accused has been incarcerated since his arrest and due clerical error or the statutory time period for bring him to trial has been allowed to espire and where nine of the provisions of RC Section 2945.72 is appliable to extend the time for trial, then pursuant to R.C. 2945.73 the accused is, as a matter of law, entitled to be discharged and any further criminal proceedings asainst him based upon the same conduct are barred.

It was in open court on good cause shown by Prosecutor Gibson, State's Attorney that this case, Under RC 16694, was nolle prosequi in accordance with statutes. Sanders v. State, 365 FSupp 1251, 70 002d 418 (S.D) Under Ohio law a nolle prosequi entered in accordance with statute completely terminates a prosecution; Douglas v. Allen (1973), 56 OS 156, 46 NE 707 The fact that a nolle prosequi is entered by order of the court imports that such order was made for good cause and in open court.

The Common Pleas Court and State's Attorney, Prosecutor Gibson, granted Petitioner's Motion to Dismiss with prejudice because it was apparent that

the Petitioner had been denied both his constitutional and statutory right, the violation of which would in itself, bar prosecution. Please see attached hereafter Journal Entry under CR 16694, Vol. 245, PG 310.

State v. Sutton (1979), 64 OApp2d 105, 18 003d 83, 411 NE2d 818:"Criminal Rule 48(B) does not provide for the dismissal of an indictment with prejudice, and a court has inherent power to dismiss with prejudice only where it is apparent that the defendant has been denied either a constitutional or statu tory right, the violation of which in itself, bar prosecution.."

In the case at bar, it was after Term of CR 16694 that the Trial Court under Judge Francis F. Sweeney set aside the Court of Common Pleas ORDER of the Honorable Judge Harry Jaffe who presided in the case at bar under CR 16-694. In re Golib, 99 App 88, 58 00 173, 130 NE2d 855: After term a court may not set aside its order of nolle prosequi and reinstate the indictment.

Prosecutor Gibson, State's Attorney, affirmatively consented to the nolle prosequi, as is evidenced by CR 16694, Journalized at Vol. 245 PG 310. Cleveland v. Mosquito, 10 OApp3d 239, 10 OBR 334, 461 NE2d 924.

RULE 48 Dismissal

(A) Dismissal by the state. The State may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate.

In the case at bar, the dismissal was constitutionally compelled; the dismissal was statutorily compelled and the statute requires a dismissal under that statute be with prejudice. State v. Stephens (1977) 52 App2d 361, 6 003d 404, 370 NE2d 756. In a criminal proceeding, a dismissal for want of prosecution is not a bar to reindictment unless one of the following occurs: the dismissal is constitutionally compelled; the dismissal is statutorily compelled and the statute requires a dismissal under that statute to be with prejudice; or the entry of dismissal specifically provides that the dismissal is with prejudice; State v. Dixon (1984), 14 (App3d 396, 14 OBR 513, 471 NE2d 864. A dismissal of nolle with prejudice pursuant to Criminal Rule 48(A) may only be entered where there is a deprivation of a defendant's constitutional or statutory rights, the violation of which would, in and of itself, bar further prosecution.

## CONCLUSION

Defendant-Petitioner has presented sufficient operative facts to demonstrate that he is unlawfully incarcerated because he was denied equal protection of both Federal and State lsws; that he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, R.C. 2945.71, R.C. 2945.72, R.C. 2945.73, R.C. 2941.33, and Criminal Rule 48(A). A miscarriage of justice has occured to the extent the infringement of Andrews' rights render the judgment void or voidable.

Accordingly, this court should grant Andrews' request Petition To Vacate or Set Aside Sentence.

Respectfully submitted,

Isaiah Andrews

ISAIAH ANDREWS
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Defendant-Petitioner
In Pro Se

000497

RECEIVED FOR FILING

JUN 14 1995

GERALD E. FUERST, CLERK
BY ______ DEP.

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I Isaiah Andrews, a citizen of the United States and Affiant in this action, after first being cautioned and sworn on my oath, say that I am without the necessary funds with which to pay the Court costs and Attorney fees in this case and that I am without any possessions, real or personal of sufficient value to offer as security for such costs. I further depose and say that this action is not frivolous or malicious, but that I have a good and justifiable cause for this action.

FURTHER, AFFIANT SAYETH NAUGHT.

Isaiah Andrews
Signature of Affiant

SWORN to and SUBSCRIBED in my presence, A Notary Public for the County of Richland, State of Ohio this 8th day of June, 1995, by Isaiah Andrews.

Mary Miner
Signature of Notary Public

MARY K. MINER
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 20, 1997

PROOF OF SERVICE

I certify that a true copy of the foregoing Memorandum In Support of Petition To Vacate Or Set Aside Sentence was mailed by certified receipt return mail this _______ day of ________________, 1995, to one Gerald E. Fuerst, Clerk of Courts, Court of Common Pleas, County of Cuyahoga, Courts Tower, Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews
PRO Se Defendant-Petitioner

000499

THE STATE OF OHIO, Cuyahoga County } SS. I, GERALD E. FUERST, CLERK OF THE COURT OF COMMON PLEAS WITHIN AND FOR SAID COUNTY.

HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL Criminal Journal Entry CR-0166694

NOW ON FILE IN MY OFFICE.

WITNESS MY HAND AND SEAL OF SAID COURT THIS 10 DAY OF March A.D. 1992

GERALD E. FUERST, Clerk

By [signature] Deputy

STATE OF OHIO, CUYAHOGA COUNTY } SS.

IN THE COURT OF COMMON PLEAS

SEPTEMBER TERM, 1974

TO-WIT: December 16, 1974

STATE OF OHIO PLAINTIFF

vs.

Isiah Andrews DEFENDANT

NO. CR-16694

INDICTMENT Aggr. Murder

JOURNAL ENTRY

Now comes the Prosecuting Attorney on behalf of the State and defendant, Isiah Andrews was brought into Court, represented by counsel.

Prosecutor, Gibson, advises Court that all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him.

For good cause shown, this case Nolle Prosequi.

Harry Jaffe, Judge

va
1/8

RECEIVED FOR FILING
JAN 17 1975
E. J. MASSAY, CLERK
BY [signature] DEP.

JUDGE Harry Jaffe

CorC 133

VOL 245 PG 310

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, Plaintiff-Respondent | CASE NO. CR 17902 |
| -vs- | JUDGE CARL CHARACTER |
| ISAIAH ANDREWS, Defendant-Petitioner | **PROPOSED JOURNAL ENTRY** |

Now comes Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, Ohio, and respectfully requests that this Honorable Court adopt the attached journal entry dismissing Defendant-Petitioner's application for post-conviction relief filed June 14, 1995.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By Karen L. Johnson
KAREN L. JOHNSON #0025937
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730
Attorneys for Plaintiff-Respondent

SERVICE

A copy of the foregoing has been mailed this 13th day of July, 1995, to Isaiah Andrews #A141-345, c/o P.O. Box 788, Mansfield, Ohio 44901.

By Karen L. Johnson
Assistant Prosecuting Attorney

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | To-wit: May, 1995 Term |
| -vs- | ) | **JOURNAL ENTRY** |
| ISAIAH ANDREWS, | ) | |
| Defendant-Petitioner | ) | |

Defendant-petitioner's "Memorandum of Law in Support of Petition to Vacate or Set Aside Sentence" is liberally construed as a Petition to Vacate or Set Aside Sentence, filed pursuant to R.C. §2953.21. As this is a second petition, it is dismissed on the authority of R.C. §2953.23 and State, ex rel. Workman v. McGrath (1988), 40 Ohio St. 3d 91.

THE CLERK OF COURTS IS ORDERED TO SERVE a copy of this Journal Entry on Isaiah Andrews, #A141-345, P.O. Box 788, Mansfield, Ohio, 44901, and on Stephanie Tubbs Jones, Cuyahoga County Prosecutor, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

IT IS SO ORDERED.

Dated: ____________________

____________________
CARL J. CHARACTER
Judge, Court of Common Pleas
Cuyahoga County, Ohio

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR 17902 |
| Plaintiff-Respondent | ) | JUDGE CARL J. CHARACTER |
| -vs- | ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ISAIAH ANDREWS | ) | |
| Defendant-Petitioner | ) | |

Upon review of the files and records in this case, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On March 12, 1975, defendant-petitioner was found guilty, at the conclusion of a jury trial, of one count of Aggravated Murder (R.C. 2903.01), in Case No. CR 17902.

2. On March 12, 1975, defendant-petitioner was sentenced to a term of life imprisonment.

3. Defendant-petitioner was represented at trial by Attorney John P. Hyland.

4. The Eighth District Court of Appeals, Cuyahoga County, affirmed defendant-petitioner's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

5. On April 8, 1992, defendant-petitioner filed a Petition for Post-Conviction Relief, alleging a violation of his right to a speedy trial and ineffective assistance of trial counsel.

## CONCLUSIONS OF LAW

After an examination of the entire proceedings and all the documents connected therewith, the Petition for Post-Conviction Relief, and all the files and records pertaining to the proceedings, the court finds that no substantial grounds for post-conviction relief exist.

Defendant-petitioner alleges two claims in his post-conviction petition: a violation of his constitutional right to a speedy trial, and ineffective assistance of trial counsel. These claims could have been raised at trial or on direct appeal.

The Ohio Supreme Court has held that a doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims in the present petition have been or should have been considered on direct appeal, and therefore, are barred from consideration by the doctrine of res judicata.

Defendant-petitioner must submit quality evidentiary documents that demonstrate his claims in a Petition for Post-Conviction Relief. Where such quality documentation is not submitted, or like here, it is totally inadequate to substantiate a substantive ground for relief, the petition should be dismissed. State v. Kapper (1983), 5 Ohio St. 3d 36.

Defendant-petitioner was represented at trial by Attorney John P. Hyland. Defendant-petitioner was represented by

## SERVICE

A copy of the foregoing Findings of Fact and Conclusions of Law was mailed this 26th day of January, 1994, to Isaiah Andrews, Serial No. A141-345, Ohio State Reformatory, P.O. Box 788, Mansfield, Ohio, 44901; and Stephanie Tubbs Jones, Prosecuting Attorney of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio, 44113.

CARL J. CHARACTER, JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

STATE OF OHIO,

Plaintiff-Respondent, :

-vs- : CASE NO. CR-17902

ISAIAH ANDREWS,

Defendant-Petitioner, :

APPLICATION FOR POST CONVICTION RELIEF, VACTING AND SETTING ASIDE THE JUDGMENT AND SENTENCE PURSUANT TO THE OHIO REVISED CODE SECTION 2953.21 ET SEQ.

COMES NOW, defendant-petitioner, Isaiah Andrews, in Pro Se and requests this Honorable Court to enter appropriate orders, setting aside the judgment and sentence, pursuant to section 2953.21 et seq. as imposed in the above entitled case, for the reasons set forth hereinafter, but expressly not limited thereto:

1. Petitioner Isaiah Andrews is confined and incarcerated in the Mansfield Correctional Institution at Mansfield, Ohio, which is a facility of the Ohio Department of Rehabilitation and Correction in Columbus, Ohio.

2. The restraints of petitioner Andrews is pursuant to sentence and judgment as entered in this criminal cause by the Honorable Judge F. Sweeny of the Cuyahoga County Court of Common Pleas; further restraint is by the warden of the Mansfield Correctional Facility, at Mansfield, Ohio.



Exhibit "A"

3. Petitioner Andrews' application for post-conviction relief is premised upon the provisions of the Ohio Post Conviction statute, O.R.C. Section 2953.21 et seq. and allegations of fact s and law on the record contending that the judgment and sentence on the aggravated murder in this cause of action was secured in violation of the petitioner's constitutional rights under the Ohio Constitution and the United States Constitution, Sixth and Fourteenth Amendments.

4. Prior to the present application for post-conviction relief, the following litigation was filed in this cause which directly attacked the judgment and sentence as imposed in this cause:

a) Direct appeal to the Court of Appeals, Eighth Appellate District, Case No. 34620. Andrews' conviction was affirmed by that Court in the Court's Journal Entry and Opinion (272-220) March 18, 1975.

b) Appeal to the Supreme Court of Ohio; September 24, 1976 for motion for leave to appeal is overruled; Journal Entry (283-646).

c) Application for Post-Conviction Relief filed June 13, 1978; Judge F. Sweeney granted prosecution summary judgment; Court of Appeals reversed summary judgment and requested that Common Pleas Court find facts and conclusions of law. Appointed Post-Conviction counsel died; I discovered Attorndy McCafferty's death two years later. All my communications for information went unanswered. Last Journal Entry 12/17/79 (376-957).

5. The issues litigated in this application for post-conviction relief have not been fully determined or at issue in any other particular judicial determination in relationship to the judgment and sentence herein related to the aggravated murder offense.

6. The judgment and sentence as imposed by the trial court in this cause is subject to collateral attack upon the grounds as shown hereafter, but expressly not limited thereto.

I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. DEFENDANT HAD BEEN HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT.

II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

7. The facts that support each of these of these issues are presented in the arguments and law that is set forth in the memorandum of law which is attached and submitted herewith. The facts and law will be discussed in depth as to the issue it is presented with legal argument in support of each of these claims.

8. Defendant-petitioner Andrews has not other plain, adequate and proper remedy available to him to present these claims other t han by application for post-conviction relief in this court. The issues raised and presented herein by petitioner are not time barred, collaterally estopped or subject to res judicata as there has never been, or could have been, a full and fair determination on the constitutional issues presented because the defendant was denied effective assistance of counsel at trial and on his appeal of right.

9. This court, in reviewing the claims/issues herein, mist hold the defendant Andrews to less stringent standards than formal pleadings drafted by an attorney; it must be determined if Mr. Andrews can prove any facts in support of his claims which would entitle him to relief for the constitutional violations presented herein. Moreover, defendant Andrews submits that his conviction is voidable under either the Ohio Constitution and the Constitution of the United States on the basis of the constitutional claims presented herein; therefore, he is entitled to the relief requested;

WHEREFORE, it is requested that this Court enter appropriate Orders as follows, but expressly not limited thereto:

10. Due to defendant Andrews' indigency, he request that COUNSEL be appointed to represent him in all further proceedings before this Court in this matter;

11. That the State be issued an ORDER TO SHOW CAUSE and that the SHOW CAUSE be returnable on a day certain, if any, why relief as requested by Mr. Andrews should not be granted.

12. That this court place this matter upon the calander for de nova hearing, with the presence of all parties hereto, including the defendant, whereupon relevant evidence, and arguments may be presented in support of the claim presented here.

13. That this Court issue a writ of habeas corpus ad testificandum directed to the Warden of the Mansfield Correctional Facility at Manfsfield, Ohio, for the purpose of the DEfendant, on a day certain, to appear before this Court at a hearing in this cause.

14. For such further appropriate relief that is warranted on the facts in this matter as law and justice require.

Date: April 1, 1992, at Mansfield, Ohio.

RESPECTIFULLY SUBMITTED,

Isaiah Andrews

ISAIAH ANDREWS
REG. NO. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Petitioner in Pro Se

VERIFICATION OF APPLICATION

STATE OF OHIO, COUNTY OF RICHLAND ) SS

The petitioner Andrews, Isaiah, appearing before a Notary Public of the State of Ohio, does hereinafter declare and affirm under the penalty of perjury that I have read the foregoing Application for Post-Conviction Relief and that the information contained therein is true and correct to the best of my knowledge and belief, and as to those matters which are given on information and belief, I verily believe that they are true and correct.

Isaiah Andrews
ISAIAH ANDREWS

Subscribed and sworn to before me

by Isaiah Andrews, voluntarily,

on this 1st day of April, 1992

Richard J. Leary
NOTARY PUBLIC

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I, ISAIAH ANDREWS, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, This 1st day of April, 1992.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CASE NO. CR-17902

(JUDGE:____________________)

STATE OF OHIO

Plaintiff :

-vs- : **MEMORANDUM IN SUPPORT OF PETITION FOR POST-CONVICTION RELIEF**

ISAIAH ANDREWS :

Defendant :

* * *

The Defendant is before this Court upon a petition for post-conviction relief. Defendant alleges that he was denied the constitutional right of a speedy trial and the effective assistance of counsel and that both denials amounts to a denial of due process. The defendant was confind in the county jail for this offense for a period in excess of 90 days, contrary to the provisions of Revised Code, Sections 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudical to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. The defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

## MEMORANDUM OF ARGUMENTS FACTS AND LAW

ARGUMENT I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. THAT DEFENDANT WAS HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT; THAT PROPER EVALUATION IS: 90 x 3 (+) 69 x 3, TOTAL = 477 DAYS OR APPROXIMATELY 15 MONTHS.

Exhibit "B"

A. SUPPORTING FACTS:

Before and at trial, in the case sub judice there was ample evidence in the court records tending to indicate that the defendant's constitutional right to a speedy trial was in violation. The court records, upon diligent investigation by trial counsel and after trial by appellate counsel, would have revealed that defendant was arrested for this offense on September 18, 1974; that he was indicted October 31, 1974 under CR-16694; that he was held in the Cuyahoga County Jail on the first indictment from September 18, 1974 until December 16, 1974; that delay of trial premised on prosecutor's action: on December 16, 1974, Prosecutor, Gibson, advised the Court, "all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him. For good cause shown, this case Nolle Prosequi."

Affiant states that he was arrested a second time on or about December 27, 1974 for bank robbery and placed in Cuyahoga County Jail; that he was reindicted again for the same charge which was dismissed (Nolle Prosequi) on December 16, 1974 under a new case number (CR-17902); that reindictment occured January 21, 1975; that affiant was arrigned January 24, 1975; that writs of habeas corpus were granted federal agents to take affiant to the federal building on January 23, 1975, February 13, 1975, and February 26, 1975; that affiant went to trial on March 5, 1975; that affiant was found Guilty on March 12, 1975 and sentenced to life.

At trial, defense counsel did not at any time raise the issue of speedy trial violation; he neither broached the speedy trial issue by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72.

B. THE LAW:

The Ohio Appeals Court clearly indicated the correct method of tolling (calculation of) time spent in jail waiting trial under bail in State v. Stephens, 52 Ohio App.2d 361; 6 Ohio Op.3d 404, 370 N.E.2d 759 (1977). The Court held in points (4) and (5) of the opinion, that: (4) where a nolle prosequi or a dismissal premissed on on fault of prosecution has been entered on indictment and accused is reindicted, proper method of computing time under statute pertaining to time within which trial must be held is to include the time incarcerated pending trial under reindictment, (5) dismissal of charges pursuant to statute, which provides that charge shall be dismissed if accused is not accorded preliminary hearing within time required by certain other statutory provisions, was proper.

In the Court Syllabus, the Court restated the standard which the United States Supreme Court set for judging whether a defendant has been deprived of his constitutional right to a speedy trial: "The United States Supreme Court in Baker v. Wingo (1972, 407b U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, identified some of the factors which courts should consider in determing whether a defendant has been deprived of his constitutional right to a speedy trial. The following four factors were identified: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., at 530, 92 S.Ct. at 2192. In assessing four factors, the court stated: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of the right of speedy trial." Id., at 533, 92 S.Ct. at 2193.

The Court went on to say in paragraph (2) of its syllabus: "We construe the above language to mean that evidence suggestive of a deprivation is not required for each of the four elements, but that evidence supportive of a deprivation is required for at lease more than one of the four elements. Accor, State v. Davis (1976), 46 Ohio State 2d 444, 349 N.E.2d 315."

In the case of Defendant, Andrews, the evidence establish the fact that length of delay from the first arrest to the date of trial from which this matter arises was approximately 15 months. The reason for the delay after December 16, 1974 at which time Defendant was ready to proceed, was the dismissal of charges under the first indictment for want of prosecution, and approximately six and one-half months delay for the trial under reindictment, which trial did not take place until March 5, 1975; that total time defendant spent in county jail was approximately 15 months; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto:

a. date of first arrest - September 18, 1974;
b. first trial date December 16, 1974;
c. dismissal of indictment premised on want of prosecution;
d. and fact that indictment on January 21, 1975, was a reindictment of indictment dismissed on December 16, 1974;
e. Second trial date - March 5, 1975.

ARGUMENT II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

A. SUPPORTING FACTS:

At no time prior to trial norduring trial did trial counsel move for a dismissal of charges based on the recorded facts, defendant's length of time in jail awaiting trial. If trial counsel had diligently investigated all relevant documentation, The defendant's court records would have revealed that on March 5, 1975 that defendant's length of time in the county jail was at that time (468 days) was approximately 15 months according to Revise Code, Section 2945.71, paragraph (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days...

An investigation of all relevant court records and an application of the law would have brought trial counsel to the conclusion that:

| | | | |
|---|---|---|---|
| a. | length of delay under first indictment was | 90 x 3 | =270 days |
| b. | length of delay under second indictment | 66 x 3 | =198 days |
| | TOTAL TIME IN JAIL | | =468 days |

c. reason for delay was prosecutor's want of prosecution.
d. the failure to bring the defendant to trial prior to March 5, 1975 so prejudiced the right of the defendant to be afforded a speedy trial that it was violative of his U.S. and Ohio Constitutional rights thereto.

Trial counsel's and appeal counsel's deficient performance prejudiced the defendant.

B. THE LAW:

The test established by the United States Supreme Court for determining whether a defendant was denied the effective assistance of counsel is articulated in Strickland v. Washington, 466 U.S. 668 and ask: "*** whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial be relied on as having produced a just result." Id. 686. The defendant must bear the burden of showing that counsel's performance was deficient and that such deficient performance prejudiced the defendant. Id, at 687

The Court of Appeals has noted that the standard in Ohio is "nearly identical" to the two prong test announced in Strickland declaring:

> The test in Ohio is "whether the accused, under all the circumstances *** had a fair trial and substantial justice was done." (citation omitted). In applying this test, the court must determine whether an essential duty owed by defense counsel has been substantially violated and whether such violation prejudiced the defense.

State v. Blagajevic, 21 Ohio App.3d 297, 299 (1985)

The second progn of the Strickland test asks whether defense "counsel's errors were so serious as to deprive the defendant of a fair trial (and) a trial whose result is unreliable." Strickland, Supra, at 687

Andrews trial counsel provided ineffective assistance by failing to move for a dismissal of charge because of speedy trial violations. Reasonable counsel would have objected to going to trial since there was ample documentation on which to base the legal objection and legal remedy to substantiate the objection.

Defense counse did not at any time raise the issue of speedy trial violation by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. Because of trial counsel's deficient performance the defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, United States Constitution. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed 1.

In Matire v Wainwright, 811 F.2d 1430, 1435 (CA 11, 1987), the Court of Appeals found that:

"To Make a successful claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficicient performance prejudice his defense. Strocl;amd v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed 674 (1984). Counsel's performance is deficient only if it fall below the wide range of competence demanded of attorneys criminal cases, Id. at 688, 104 S.Ct. at 2065. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct at 2068. The standard for ineffective assistance is the same for trial and appellate counsel. Peoples v. Bowen 791 F.2d 861 (11th Cir.), cert. denied ___U.S.___, 107 S.Ct. 597, 93 L.Ed.2d 597 (1976)

## CONCLUSION

Defendant, Andrews, Has put forth a colorable claim of denial of constitutional right to a speedy trial and the denial of effective assistance of trial; therefore, there is a substantive grounds for relief. After consideration of this Application for Post-Conviction Relief, all files and records pertaining to the proceedings in this matter, and the Memorandum In Support of Petition for Post-Conviction Relief, this Honorable Court should grant the relief herein requested.

Date: April 1, 1992

Respectfully submitted,

Isaiah Andrews
ISAIAH ANDREWS
Reg. No. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Defendant In Pro Se

IN THE COURT OF APPEALS
EIGHTH APPELLATE DISTRICT
CUYAHOGA COUNTY, OHIO

WRIT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel.<br>ISAIAH ANDREWS<br>REG. NO. A141-345<br>ManCI<br>POST OFFICE BOX 788 | : | |
| Relator, | : | 066700 |
| -vs- | : | CASE NO.__________ |
| COURT OF COMMON PLEAS<br>CUYAHOGA COUNTUY | : | PETITION FOR WRIT OF MANDAMUS |
| Respondent. | : | |

FILED
COURT OF APPEALS
JAN 3 - 1994
GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY, OHIO

## PITITION FOR WRIT OF MANDAMUS

1. Relator, Isaiah Andrews, is currently incarcerated at the Mansfield Correctional Institution ("ManCI) in Mansfield, Ohio. The Relator was convicted of aggravated murder and sentenced to 15 to Life. Relator filed this action pursuant to, and this Court has jurisdiction under, Section [3], Article IV of the Ohio Constitution, and R.C. 2731.02.

2. Respondent Common Pleas Court is a subdivision of the legal system of the State of Ohio. Although Judicial discretion cannot be controlled by mandamus, the writ may issue to compel exercise of such discretion.

3. The purpose of Post-conviction Remedy Act is to correct denial of constitutional rights of an accused. R.C., Section 2953.21 et seq.

4. Because of prejudice which would rsult to accused by delay if accused's grounds for post-conviction relief are well taken, courts should take prompt action upon such petitions. R.C. Section 2953.21 et seq.

5. Petitioner filed his petition for post-conviction relief in April of 1992, approximately 20 months ago. Please see attached Application For Post-conviction Relief, Vacating and Setting Aside the Judgment and Sentence, pursuant to the Ohio Revised Code, section 2953.21 et seq., **Exhibit "A"**; and Memorandum in support of petition for Post-conviction Relief, **Exhibit "B"**. Delay of 20 months without action on petition for post-conviction relief is excessive and petitioner is entitled to writ of mandamus to compel

determination on the petition. **State ex rel. Turpin v. Court of Common Pleas, 8 OS2d 1, 37 OO2d 40, 220 N.E.2d 670.**

6. Petitioner filed his petition under the Post-conviction Remedy Act in April 1992. In spite of petitioner's requests and inquirey about the delay, the court has failed to rule on such petition; the petition has now been pending for some 20 months. As pointed out in **State, ex rel. Victoratos v. Thomas, 175 Ohio St. 220, 193 N.E.2d 83,** although judical discretion cannot be controlled by mandamus, the writ may issue to compel the exercise of such discretion.

7. Inview of the nature of the Post-conviction Remedy Act, the purpose of which is to correct the denial of constitutional rights of an accused, and the prejudice which would result to the accused by delay if his grounds for relief were well taken, it would appear that prompt action on such petition should be taken by the court. The delay in the instant case in acting on the petition is more excessive than **State ex rel. Turpin v. Court of Common Pleas, 8 OS2d 1, 37 OO2d 40, 220 N.E.2d 670, Syllabus by the Court [2-4].**

8. Such a Writ of Mandamus is required for the reasons, among others, that Relator has no plain and adequate remedy in the ordinary course of the law. The result of Respondent's aforesaid delay is that Relator has been severely prejudiced, and, in the absence of such a writ, Relator will continue to be severly prdjudiced.

**WHEREFORE**, Relator prays for a peremptory writ of Mandamus pursuant to R.C. 2731.06 compelling Respondent forthwith: To grant petitioner an evidentiary hearing to determine the issues of (a) ineffective assistance of trial counsel and (b) speedy trial violation. R.C. Section 2953.21(C); U.S.C.A. Cont. Amends. 6, 14.

Respectfully submitted,

Isaiah Andrews

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

Pro Se Counsel for Relator

STATE OF OHIO )
) SS
COUNTY OF RICHLAND)

I, Isaiah Andrews, a citizen ofthe United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say:

1. That i am without the necessary funds with which to pay for the costs of this action;

2. I am without any possession, real or personal or sufficient value in with which to offer as security for such costs; and

3. That I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, this 28 day of December, 1993.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 2, 1998

**CERTIFICATE OF SERVICE**

I certify that a copy of the attached Petition for Writ of Mandamus has been mailed by Regular U.S. Mail, postage prepaid, on this 28th day of December, 1993 to the Court of Common Pleas, Cuyahoga County, Ohio, the Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
Isaiah Andrews

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | | |
| Plaintiff-Respondent, | : | |
| -vs- | : | CASE NO. CR-17902 |
| ISAIAH ANDREWS, | | APPLICATION FOR POST CONVICTION RELIEF, VACTING AND SETTING ASIDE THE JUDGMENT AND SENTENCE PURSUANT TO THE OHIO REVISED CODE SECTION 2953.21 ET SEQ. |
| Defendant-Petitioner, | : | |
| | : | |
| | : | |

COMES NOW, defendant-petitioner, Isaiah Andrews, in Pro Se and requests this Honorable Court to enter appropriate orders, setting aside the judgment and sentence, pursuant to section 2953.21 et seq. as imposed in the above entitled case, for the reasons set forth hereinafter, but expressly not limited thereto:

1. Petitioner Isaiah Andrews is confined and incarcerated in the Mansfield Correctional Institution at Mansfield, Ohio, which is a facility of the Ohio Department of Rehabilitation and Correction in Columbus, Ohio.

2. The restraints of petitioner Andrews is pursuant to sentence and judgment as entered in this criminal cause by the Honorable Judge F. Sweeny of the Cuyahoga County Court of Common Pleas; further restraint is by the warden of the Mansfield Correctional Facility, at Mansfield, Ohio.



Exhibit "A"

3. Petitioner Andrews' application for post-conviction relief is premised upon the provisions of the Ohio Post Conviction statute, O.R.C. Section 2953.21 et seq. and allegations of fact s and law on the record contending that the judgment and sentence on the aggravated murder in this cause of action was secured in violation of the petitioner's constitutional rights under the Ohio Constitution and the United States Constitution, Sixth and Fourteenth Amendments.

4. Prior to the present application for post-conviction relief, the following litigation was filed in this cause which directly attacked the judgment and sentence as imposed in this cause:

a) Direct appeal to the Court of Appeals, Eighth Appellate District, Case No. 34620. Andrews' conviction was affirmed by that Court in the Court's Journal Entry and Opinion (272-220) March 18, 1975.

b) Appeal to the Supreme Court of Ohio; September 24, 1976 for motion for leave to appeal is overruled; Journal Entry (283-646).

c) Application for Post-Conviction Relief filed June 13, 1978; Judge F. Sweeney granted prosecution summary judgment; Court of Appeals reversed summary judgment and requested that Common Pleas Court find facts and conclusions of law. Appointed Post-Conviction counsel died; I discovered Attorndy McCafferty's death two years later. All my communications for information went unanswered. Last Journal Entry 12/17/79 (376-957).

5. The issues litigated in this application for post-conviction relief have not been fully determined or at issue in any other particular judicial determination in relationship to the judgment and sentence herein related to the aggravated murder offense.

6. The judgment and sentence as imposed by the trial court in this cause is subject to collateral attack upon the grounds as shown hereafter, but expressly not limited thereto.

I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. DEFENDANT HAD BEEN HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT.

II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

7. The facts that support each of these of these issues are presented in the arguments and law that is set forth in the memorandum of law which is attached and submitted herewith. The facts and law will be discussed in depth as to the issue it is presented with legal argument in support of each of these claims.

8. Defendant-petitioner Andrews has not other plain, adequate and proper remedy available to him to present these claims other t han by application for post-conviction relief in this court. The issues raised and presented herein by petitioner are not time barred, collaterally estopped or subject to res judicata as there has never been, or could have been, a full and fair determination on the constitutional issues presented because the defendant was denied effective assistance of counsel at trial and on his appeal of right.

9. This court, in reviewing the claims/issues herein, mist hold the defendant Andrews to less stringent standards than formal pleadings drafted by an attorney; it must be determined if Mr. Andrews can prove any facts in support of his claims which would entitle him to relief for the constitutional violations presented herein. Moreover, defendant Andrews submits that his conviction is voidable under either the Ohio Constitution and the Constitution of the United States on the basis of the constitutional claims presented herein; therefore, he is entitled to the relief requested;

WHEREFORE, it is requested that this Court enter appropriate Orders as follows, but expressly not limited thereto:

10. Due to defendant Andrews' indigency, he request that COUNSEL be appointed to represent him in all further proceedings before this Court in this matter;

11. That the State be issued an ORDER TO SHOW CAUSE and that the SHOW CAUSE be returnable on a day certain, if any, why relief as requested by Mr. Andrews should not be granted.

12. That this court place this matter upon the calander for de nova hearing, with the presence of all parties hereto, including the defendant, whereupon relevant evidence, and arguments may be presented in support of the claim presented here.

13. That this Court issue a writ of habeas corpus ad testificandum directed to the Warden of the Mansfield Correctional Facility at Manfsfield, Ohio, for the purpose of the DEfendant, on a day certain, to appear before this Court at a hearing in this cause.

14. For such further appropriate relief that is warranted on the facts in this matter as law and justice require.

Date: April 1, 1992, at Mansfield, Ohio.

RESPECTIFULLY SUBMITTED,

Isaiah Andrews

ISAIAH ANDREWS
REG. NO. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Petitioner in Pro Se

VERIFICATION OF APPLICATION

STATE OF OHIO, COUNTY OF RICHLAND ) SS

The petitioner Andrews, Isaiah, appearing before a Notary Public of the State of Ohio, does hereinafter declare and affirm under the penalty of perjury that I have read the foregoing Application for Post-Conviction Relief and that the information contained therein is true and correct to the best of my knowledge and belief, and as to those matters which are given on information and belief, I verily believe that they are true and correct.

Isaiah Andrews

ISAIAH ANDREWS

Subscribed and sworn to before me

by Isaiah Andrews, voluntarily,

on this 1st day of April, 1992

Richard J. Leary

NOTARY PUBLIC

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

STATE OF OHIO )
) SS AFFIDAVIT OF INDIGENCY
COUNTY OF RICHLAND)

I, ISAIAH ANDREWS, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, This 1st day of April, 1992.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CASE NO. CR-17902

(JUDGE:____________________)

STATE OF OHIO

Plaintiff :

-vs- :

ISAIAH ANDREWS :

Defendant :

MEMORANDUM IN SUPPORT OF PETITION FOR POST-CONVICTION RELIEF

* * *

The Defendant is before this Court upon a petition for post-conviction relief. Defendant alleges that he was denied the constitutional right of a speedy trial and the effective assistance of counsel and that both denials amounts to a denial of due process. The defendant was confind in the county jail for this offense for a period in excess of 90 days, contrary to the provisions of Revised Code, Sections 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudical to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. The defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

MEMORANDUM OF ARGUMENTS
FACTS AND LAW

ARGUMENT I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF A SPEEDY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AND THE OHIO CONSTITUTION. THAT DEFENDANT WAS HELD IN JAIL 90 DAYS UNDER THE FIRST INDICTMENT, AND HE WAS HELD IN JAIL 69 DAYS UNDER THE SECOND INDICTMENT; THAT PROPER EVALUATION IS: 90 x 3 (+) 69 x 3, TOTAL = 477 DAYS OR APPROXIMATELY 15 MONTHS.

Exhibit "B"

A. SUPPORTING FACTS:

Before and at trial, in the case sub judice there was ample evidence in the court records tending to indicate that the defendant's constitutional right to a speedy trial was in violation. The court records, upon diligent investigation by trial counsel and after trial by appellate counsel, would have revealed that defendant was arrested for this offense on September 18, 1974; that he was indicted October 31, 1974 under CR-16694; that he was held in the Cuyahoga County Jail on the first indictment from September 18, 1974 until December 16, 1974; that delay of trial premised on prosecutor's action: on December 16, 1974, Prosecutor, Gibson, advised the Court, "all witnesses have been subpoenaed, but that the essential witness is unable to be located, even though diligent effort has been made to locate him. For good cause shown, this case Nolle Prosequi."

Affiant states that he was arrested a second time on or about December 27, 1974 for bank robbery and placed in Cuyahoga County Jail; that he was reindicted again for the same charge which was dismissed (Nolle Prosequi) on December 16, 1974 under a new case number (CR-17902); that reindictment occured January 21, 1975; that affiant was arrigned January 24, 1975; that writs of habeas corpus were granted federal agents to take affiant to the federal building on January 23, 1975, February 13, 1975, and February 26, 1975; that affiant went to trial on March 5, 1975; that affiant was found Guilty on March 12, 1975 and sentenced to life.

At trial, defense counsel did not at any time raise the issue of speedy trial violation; he neither broached the speedy trial issue by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72.

B. THE LAW:

The Ohio Appeals Court clearly indicated the correct method of tolling (calculation of) time spent in jail waiting trial under bail in State v. Stephens, 52 Ohio App.2d 361; 6 Ohio Op.3d 404, 370 N.E.2d 759 (1977). The Court held in points (4) and (5) of the opinion, that: (4) where a nolle prosequi or a dismissal premissed on on fault of prosecution has been entered on indictment and accused is reindicted, proper method of computing time under statute pertaining to time within which trial must be held is to include the time incarcerated pending trial under reindictment, (5) dismissal of charges pursuant to statute, which provides that charge shall be dismissed if accused is not accorded preliminary hearing within time required by certain other statutory provisions, was proper.

In the Court Syllabus, the Court restated the standard which the United States Supreme Court set for judging whether a defendant has been deprived of his constitutional right to a speedy trial: "The United States Supreme Court in Baker v. Wingo (1972, 407b U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, identified some of the factors which courts should consider in determing whether a defendant has been deprived of his constitutional right to a speedy trial. The following four factors were identified: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., at 530, 92 S.Ct. at 2192. In assessing four factors, the court stated: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of the right of speedy trial." Id., at 533, 92 S.Ct. at 2193.

The Court went on to say in paragraph (2) of its syllabus: "We construe the above language to mean that evidence suggestive of a deprivation is not required for each of the four elements, but that evidence supportive of a deprivation is required for at lease more than one of the four elements. Accor, State v. Davis (1976), 46 Ohio State 2d 444, 349 N.E.2d 315."

In the case of Defendant, Andrews, the evidence establish the fact that length of delay from the first arrest to the date of trial from which this matter arises was approximately 15 months. The reason for the delay after December 16, 1974 at which time Defendant was ready to proceed, was the dismissal of charges under the first indictment for want of prosecution, and approximately six and one-half months delay for the trial under reindictment, which trial did not take place until March 5, 1975; that total time defendant spent in county jail was approximately 15 months; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto:

a. date of first arrest - September 18, 1974;
b. first trial date December 16, 1974;
c. dismissal of indictment premised on want of prosecution;
d. and fact that indictment on January 21, 1975, was a reindictment of indictment dismissed on December 16, 1974;
e. Second trial date - March 5, 1975.

ARGUMENT II. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A DISMISSAL OF CHARGE ON THE GROUNDS OF SPEEDY TRIAL VIOLATION WHICH WAS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT UNDER U.S. AND OHIO CONSTITUTIONAL RIGHT THERETO.

A. SUPPORTING FACTS:

At no time prior to trial norduring trial did trial counsel move for a dismissal of charges based on the recorded facts, defendant's length of time in jail awaiting trial. If trial counsel had diligently investigated all relevant documentation, The defendant's court records would have revealed that on March 5, 1975 that defendant's length of time in the county jail was at that time (468 days) was approximately 15 months according to Revise Code, Section 2945.71, paragraph (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days...

An investigation of all relevant court records and an application of the law would have brought trial counsel to the conclusion that:

a. length of delay under first indictment was 90 x 3 =270 days
b. length of delay under second indictment 66 x 3 =198 days
TOTAL TIME IN JAIL =468 days
c. reason for delay was prosecutor's want of prosecution.
d. the failure to bring the defendant to trial prior to March 5, 1975 so prejudiced the right of the defendant to be afforded a speedy trial that it was violative of his U.S. and Ohio Constitutional rights thereto.

Trial counsel's and appeal counsel's deficient performance prejudiced the defendant.

B. THE LAW:

The test established by the United States Supreme Court for determining whether a defendant was denied the effective assistance of counsel is articulated in Strickland v. Washington, 466 U.S. 668 and ask: "*** whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial be relied on as having produced a just result." Id. 686. The defendant must bear the burden of showing that counsel's performance was deficient and that such deficient performance prejudiced the defendant. Id, at 687

The Court of Appeals has noted that the standard in Ohio is "nearly identical" to the two prong test announced in Strickland declaring:

> The test in Ohio is "whether the accused, under all the circumstances *** had a fair trial and substantial justice was done." (citation omitted). In applying this test, the court must determine whether an essential duty owed by defense counsel has been substantially violated and whether such violation prejudiced the defense.

State v. Blagajevic, 21 Ohio App.3d 297, 299 (1985)

The second progn of the Strickland test asks whether defense "counsel's errors were so serious as to deprive the defendant of a fair trial (and) a trial whose result is unreliable." Strickland, Supra, at 687

Andrews trial counsel provided ineffective assistance by failing to move for a dismissal of charge because of speedy trial violations. Reasonable counsel would have objected to going to trial since there was ample documentation on which to base the legal objection and legal remedy to substantiate the objection.

Defense counse did not at any time raise the issue of speedy trial violation by oral nor written motion to dismiss on the grounds that defendant had been confined in jail for this offense for a period in excess of 90 days, contrary to the provisions of Revise Code, Section 2945.71 and 2945.72; that failure to bring the defendant to trial prior to March 5, 1975 was so prejudice to the right of defendant to be afforded a speedy trial that it was a violation of his U.S. and Ohio Constitutional rights thereto. Because of trial counsel's deficient performance the defendant was denied his right to a speedy trial under Amendments Six and Fourteenth, United States Constitution. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed 1.

In Matire v Wainwright, 811 F.2d 1430, 1435 (CA 11, 1987), the Court of Appeals found that:

"To Make a successful claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficicient performance prejudice his defense. Strocl;amd v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed 674 (1984). Counsel's performance is deficient only if it fall below the wide range of competence demanded of attorneys criminal cases, Id. at 688, 104 S.Ct. at 2065. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct at 2068. The standard for ineffective assistance is the same for trial and appellate counsel. Peoples v. Bowen 791 F.2d 861 (11th Cir.), cert. denied ___U.S.___, 107 S.Ct. 597, 93 L.Ed.2d 597 (1976)

## CONCLUSION

Defendant, Andrews, Has put forth a colorable claim of denial of constitutional right to a speedy trial and the denial of effective assistance of trial; therefore, there is a substantive grounds for relief. After consideration of this Application for Post-Conviction Relief, all files and records pertaining to the proceedings in this matter, and the Memorandum In Support of Petition for Post-Conviction Relief, this Honorable Court should grant the relief herein requested.

Date: April 1, 1992

Respectfully submitted,

Isaiah Andrews

ISAIAH ANDREWS
Reg. No. A-141-345
P.O. Box 1368
Mansfield, Ohio 44901

Defendant In Pro Se

CERFICATE OF SERVICE

I certify that a copy of the foregoing Application For Post-Conviction has been mailed, regular U.S. Postage, prepaid, on this day 1st of April, 1992, to Stephanie Tubbs-Jones, Prosecutor, Cuyahoga County, Ohio, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews
ISAIAH ANDREWS

STATE OF OHIO )

) SS AFFIDAVIT OF INDIGENCY

COUNTY OF RICHLAND)

I, ISAIAH ANDREWS, a citizen of the United States and affiant herein, after being first duly sworn and cautioned on my oath as is required by law, does hereby depose and say: That I am without the necessary funds with which to pay for the costs of this action and that I am without any possession, real or personal of sufficient value in with which to offer as security for such costs, and that I am a true indigent and pauper within the meaning of the law.

Further, affiant sayeth naught.

Isaiah Andrews
Signature of Affiant

SWORN to before and SUBSCRIBED in my presence, A Notary Public in and for the County of Richland, State of Ohio, This 1st day of April, 1992.

Richard J. Leary
NOTARY PUBLIC'S SIGNATURE

RICHARD J. LEARY
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 1, 1993

NO. 95-582

IN THE SUPREME COURT OF OHIO

APPEAL FROM
THE COURT OF APPEALS FOR CUYAHOGA COUNTY, OHIO

CASE NO. CA 66960

STATE OF OHIO

Plaintiff-Appellee

-vs-

ISAIAH ANDREWS

Defendant-Appellant

**MEMORANDUM OPPOSING JURISDICTION**

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

DIANE SMILANICK (#0019987)
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7800
Attorneys for Plaintiff-Appellee

ISAIAH ANDREWS #A141-345
P.O. Box 788
Mansfield, ohio 44901
Defendant-Appellant, Pro Se

# TABLE OF CONTENTS


Statement of the Case and the Facts . . . . . . . . . . . . . . . . . 1

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . 2

**PROPOSITION OF LAW NO. I:** . . . . . . . . . . . . . . . . . . 2
RES JUDICATA IS A PROPER GROUND FOR GRANTING A MOTION TO DISMISS A POST-CONVICTION PETITION.

Authorities cited in support of Proposition of Law No. I:
State v. Jenkins (1987), 42 Ohio App. 3d 97 . . . . . . . . 2
State v. Milanovich (1975), 42 Ohio St. 2d 46 . . . . . . . 2
State v. Perry (1967), 10 Ohio St. 2d 175 . . . . . . . . . 2,3
State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . 3
State v Mitchell (1988), 53 Ohio App. 3d 117, 119 . . . . . 3
State v. Adams (1980), 62 Oiho St. 2d 151 . . . . . . . . . 3

**PROPOSITION OF LAW NO. II:** . . . . . . . . . . . . . . . . . 4
TO SHOW THAT A DEFENDANT HAS BEEN DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND THAT HE HAS BEEN PREJUDICED BY COUNSEL'S DEFICIENT PERFORMANCE, THE DEFENDANT MUST PROVE THAT THERE EXISTS A REASONABLE PROBABILITY THAT, WERE IT NOT FOR COUNSEL'S ERRORS, THE RESULT WOULD HAVE BEEN DIFFERENT.

Authorities cited in support of Proposition of Law No. II:
Levitts v. Lucey (1985), 469 U.S. 387 . . . . . . . . . . . 4
Strickland v. Washington (1984), 466 U.S. 688 . . . . . . 4,5
State v. Bradley (1989), 42 Ohio St. 3d 135 . . . . . . . . 5
Jones v. Barnes (1983), 463 U.S. 745 . . . . . . . . . . . 5
State v. Carpenter (6/30/94), Cuy. App. No. 65722. unreported . . . . . . . . . . . . . . . . . . . . . . . . 6
State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . 7
R.C. §2953.21 . . . . . . . . . . . . . . . . . . . . . . . 7
State v. Murnahan (1992), 63 Ohio St. 3d 60 . . . . . . . . 7

Why Leave To Appeal Should Not Be Granted . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Appendices:

R.C. §2953.21 . . . . . . . . . . . . . . . . . . . . . . . 10

State v. Carpenter (6/30/94), Cuy. App. No. 65722, unrep. . 11

## TABLE OF AUTHORITIES

Cases:

Jones v. Barnes (1983), 463 U.S. 745 . . . . . . . . . . . . . . 5

Levitts v. Lucey (1985), 469 U.S. 387 . . . . . . . . . . . . . . 4

State v. Adams (1980), 62 Ohio St. 2d 151 . . . . . . . . . . . . 3

State v. Bradley (1989), 42 Ohio St. 3d 135 . . . . . . . . . . . 5

State v. Carpenter (June 30, 1994), Cuy. App. No. 65722, unreported . . . . . . . . . . . . . . . . . . . . . . . . . 6

State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . . . 3,7

State v. Jenkins (1987),42 Ohio App. 3d 97 . . . . . . . . . . . 2

State v. Milanovich (1975), 42 Ohio St. 2d 46 . . . . . . . . . . 2

State v. Mitchell (1988), 53 Ohio App. 3d 117, 119 . . . . . . . 3

State v. Murnahan (1992), 63 Ohio St. 3d 60 . . . . . . . . . . . 7

State v. Perry (1967), 10 Ohio St. 2d 175 . . . . . . . . . . . 2,3

Strickland v. Washington (1984), 466 U.S. 688 . . . . . . . . . 4,5

Statute:

R.C. §2953.21 . . . . . . . . . . . . . . . . . . . . . . . 7

NO. 95-582

IN THE SUPREME COURT OF OHIO

APPEAL FROM
THE COURT OF APPEALS FOR CUYAHOGA COUNTY, OHIO

CASE NO. CA 66960

STATE OF OHIO

Plaintiff-Appellee

-vs-

ISAIAH ANDREWS

Defendant-Appellant

**MEMORANDUM OPPOSING JURISDICTION**

## STATEMENT OF THE CASE AND THE FACTS

Appellant, Isaiah Andrews, on March 12, 1975, was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01. Appellant was sentenced to a term of life imprisonment. The Eighth District Appellate Court affirmed Appellant's conviction in State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992, and a Petition for a Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462), attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the trial court denying Appellant's Petition for Post-Conviction Relief. The Eighth Appellate District granted the State's Motion to Dismiss on or about February 25, 1994.

Appellant filed an appeal from the trial court's dismissal, without a hearing, of his Petition for Post-Conviction Relief, on March 3, 1994. The Eighth District Court of Appeals affirmed the trial court's decision. State v. Andrews (Feb. 23, 1995), Cuy. App. No. 66960, unreported.

Presently before this Court is a Memorandum In Support of Jurisdiction.

## LAW AND ARGUMENT

PROPOSITION OF LAW NO. I:
**RES JUDICATA** IS A PROPER GROUND FOR GRANTING A MOTION TO DISMISS A POST-CONVICTION PETITION.

Appellant argues that the trial court committed reversible error when it ruled that the doctrine of res judicata barred the issue of a speedy trial. Appellant is incorrect and his argument is meritless.

This Court and the Eighth District Court of Appeals have long recognized that a Petition for Post-Conviction Relief may be dismissed on the grounds of res judicata. State v. Jenkins (1987),42 Ohio App. 3d 97; State v. Milanovich (1975), 42 Ohio St. 2d 46; State v. Perry (1967), 10 Ohio St. 2d 175. It is a logical

step to expect the State of Ohio to dismiss asserting the bar of res judicata. Issues which have been or could have been raised and fully litigated, before the judgment of conviction or on direct appeal without resort to evidence dehors the record, are barred from consideration in post-conviction proceedings by the doctrine of res judicata. State v. Cole (1982), 2 Ohio St. 3d 112; State v. Perry, supra. The issue of speedy trial could have been raised on direct appeal but was not, and is therefore barred by the doctrine of res judicata, Cole, supra; Perry, supra.

The only issue before a reviewing court is whether the trial court abused its discretion in dismissing a petition without a hearing upon review of a trial court's denial without a hearing of a Petition for Post-Conviction Relief. Absent a showing of abuse of discretion, a reviewing court will not overrule the trial court's findings on a post-conviction petition which is supported by competent and credible evidence. State v. Mitchell (1988), 53 Ohio App. 3d 117, 119. An abuse of discretion connotes more than an error of law or judgment; it implies conduct that is arbitrary, capricious, unreasonable or unconscionable. State v. Adams (1980), 62 Ohio St. 2d 151. Appellant has not shown any abuse of discretion of the trial court's decision.

This Court need not take jurisdiction of this Proposition of Law.

PROPOSITION OF LAW NO. II:
TO SHOW THAT A DEFENDANT HAS BEEN DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND THAT HE HAS BEEN PREJUDICED BY COUNSEL'S DEFICIENT PERFORMANCE, THE DEFENDANT MUST PROVE THAT THERE EXISTS A REASONABLE PROBABILITY THAT, WERE IT NOT FOR COUNSEL'S ERRORS, THE RESULT WOULD HAVE BEEN DIFFERENT.

Appellant argues that he was denied effective assistance of counsel. Appellant is incorrect and his argument is meritless.

Appellant has not demonstrated a genuine issue of ineffective assistance of counsel. Appellant must show that his attorney made unprofessional errors that prejudiced the defense, in order to establish a claim of ineffective assistance of counsel. Levitts v. Lucey (1985), 469 U.S. 387. Appellant's trial counsel must be examined in light of a two-prong test which was established in Strickland v. Washington (1984), 466 U.S. 688. The two-prong test of Strickland requires the following analyses: 1) Did the performance of counsel constitute a substantial violation of any essential duties owed to defendant; and 2) Was defendant materially prejudiced as a result of counsel's claimed ineffectiveness. "Prejudice" means that there is a reasonable probability that, but for counsel's mistakes, the outcome of the trial would have been different. Strickland, supra.

A court must presume that a properly licensed attorney has executed his legal duties in an ethical and competent manner in conjunction with the Strickland test. A court must accord deference to defense counsel's decisions as made prior to and during the course of any legal proceedings and cannot examine the

strategic decisions of trial or appellate counsel through hindsight. Strickland, supra.

A defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different in order to show that a defendant had been prejudiced by counsel's deficient performance. State v. Bradley (1989), 42 Ohio St. 3d 135. The court held in Bradley:

> * * * there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Bradley, supra, at 143.

An appellate attorney need not raise every non-frivolous claim proposed by his client. Jones v. Barnes (1983), 463 U.S. 745.

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues * * * There can hardly be any question about the importance of having the appellant advocate examine the record with a view to selecting the most promising issues for review. * * * For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would deserve the very goal of vigorous and effective advocacy * * *. Nothing in the Constitution requires such a standard. Id. at 751-754.

Appellant's claim of ineffective assistance of trial counsel was a matter that could have been addressed on Appellant's direct appeal, since Appellant was represented by new appellate counsel. The issue is now barred by the doctrine of res judicata. This issue was recently decided by the Eighth District Court of Appeals in affirming the denial of a post-conviction petition without a hearing in State v. Carpenter (June 30, 1994), Cuy. App. No. 65722, unreported.

> R.C. §2953.21 does not require a trial court to hold a hearing on a post-conviction relief petition unless that court has determined that substantive grounds for relief exist.
>
> * * *
>
> The Ohio Supreme Court's decision in State v. Cole [(1982), 2 Ohio St. 3d 112] applies to our review of the ineffective assistance of counsel claim, as well. Appellant claims that the same attorneys represented him on appeal and at trial. Therefore, the fact that the issue of ineffective assistance of trial counsel was never raised on direct appeal does not hinder his ability to raise it in this post-conviction proceeding, under Cole. However, this set of facts is actually analogous to those in Cole. Appellant was represented by Paul Mancino on direct appeal from his convictions. Mancino was not his trial counsel. Appellant did not raise ineffective assistance of trial counsel on appeal, but the issue could have been determined without resort to evidence outside of the record. The issue of the trial counsel's competency regarding the investigation and discovery process undertaken to find the allegedly suppressed evidence can be determined from the record. The record shows that appellant's trial counsel filed extensive and detailed motions for discovery. Furthermore, the trial counsel's failure to object to jury instructions was also an issue which could

have been raised without resorting to evidence outside of the record.

> In Cole, as in the case at bar, the trial court denied the post-conviction relief petition without a hearing. The trial court's ruling in Cole was affirmed by both the appellate court and the Ohio Supreme Court. The Hamilton County Court of Appeals also followed the reasoning on State v. Cole when it held that a:
>
> "Claim of ineffective assistance of counsel presented in postconviction petition may be dismissed under the doctrine of res judicata where petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and issue could fairly have been determined without evidence dehors the record."
>
> State v. Sowell (1991), 73 Ohio App. 3d 672, at paragraph nine of the syllabus. We are bound to follow the law as set forth in Cole and affirm the trial court's ruling as to the claim of ineffective assistance of trial counsel.

Appellant was represented at trial by Attorney John P. Hyland and was represented by Attorney Peter H. Hull on appeal. Defense counsel did not raise the claim of ineffectiveness of trial counsel on direct appeal; and therefore, State v. Cole, supra, precludes the utilization of post-conviction relief.

The claim of ineffectiveness of appellate counsel cannot be raised in post-conviction proceedings, as Appellant attempts, pursuant to R.C. §2953.21. State v. Murnahan (1992), 63 Ohio St. 3d 60, paragraph one of the syllabus:

> "Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. §2953.21."

This Court need not take jurisdiction over this Proposition of Law.

WHY LEAVE TO APPEAL SHOULD NOT BE GRANTED

Leave to appeal should not be granted by this Court. Res judicata is a proper ground for post-conviction relief. A trial court does not commit error when it does not grant an evidentiary hearing on a post-conviction petition when the evidence and documents presented are not of a substantive nature. The trial court correctly dismissed Appellant's petition without a hearing, and it had the proper grounds to do so.

Appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result would have been different, in order to show that one has been denied effective assistance of counsel. Appellant has not demonstrated that he was denied the effective assistance of counsel.

CONCLUSION

Appellant has offered no constitutional issue or question of great public interest to this Court. The proceedings in the court below were fair and consistent. Further review of this matter should be denied.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: ______________________
DIANE SMILANICK #0019987
Assistant Prosecuting Attorney

## SERVICE

A copy of the foregoing Memorandum Opposing Jurisdiction has been mailed this 30th day of March, 1995, to Isaiah Andrews #A141-345, Defendant-Appellant Pro Se, co P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick

DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

### § 2953.21 Petition to vacate or set aside sentence.

(A) Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in the court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file such supporting affidavit and other documentary evidence as will support his claim for relief.

(B) The clerk of the court in which the petition is filed shall docket the petition and bring it promptly to the attention of such court. A copy of the petition need not be served by the petitioner on the prosecuting attorney. The clerk of the court in which the petition is filed immediately shall forward a copy of the petition to the prosecuting attorney of that county.

(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. Such court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

(D) Within ten days after the docketing of the petition, or within such further time as the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to such judgment shall appear on the face of the record.

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues, hold the hearing, and make and file written findings of fact and conclusions of law upon entering judgment.

(F) At any time before the answer or motion is filed, the petitioner may amend his petition with or without leave or prejudice to the proceedings. The petitioner may amend his petition with leave of court at any time thereafter.

(G) If the court finds grounds for granting relief, it shall enter a judgment that vacates and sets aside the judgment in question, and, in the case of a prisoner in custody, shall discharge or resentence him or grant a new trial as may appear appropriate. The court also may make supplementary orders to the relief granted, concerning such matters as rearraignment, retrial, custody, and bail.

(H) Upon the filing of a petition pursuant to this section by a prisoner in a state penal or reformatory institution who has received the death penalty, the court may stay execution of the judgment challenged by the petition. 

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 65722

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-appellee | : | JOURNAL ENTRY AND OPINION |
| -vs- | : | |
| DANNY CARPENTER, *PRO SE* | : | |
| Defendant-appellant | : | |

DATE OF ANNOUNCEMENT OF DECISION: JUNE 30, 1994

CHARACTER OF PROCEEDING: Civil appeal from Court of Common Pleas Case No. 194365

JUDGMENT: Affirmed.

DATE OF JOURNALIZATION: ____________________

APPEARANCES:

For Plaintiff-Appellee:

STEPHANIE TUBBS JONES, ESQ.
CUYAHOGA COUNTY PROSECUTOR
BY: ELAINE WELSH, ESQ.
ASSISTANT COUNTY PROSECUTOR
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

For Defendant-Appellant:

DANNY CARPENTER, *PRO SE*
No. A183-441
1150 North Main Street
P.O. Box 1368
Mansfield, Ohio 44901

DYKE, J.:

Appellant appeals from the decision of the trial court to deny his petition for post-conviction relief pursuant to R.C. 2953.21. Appellant was indicted for offenses which took place on October 4, 1984. The offenses charged included three aggravated robberies, seven felonious assaults and one aggravated murder. Each count contained violence and firearm specifications. On February 8, 1985, the jury found appellant guilty of the three aggravated robberies, six felonious assaults and murder, the lesser included offense of the aggravated murder charge. The jury also found appellant guilty on each of the firearm specifications.

Three felonious assault counts were merged at sentencing with the allied offenses of robbery. The trial court sentenced appellant to three years of actual incarceration on each of the remaining seven firearm specifications. To run consecutively to the twenty-one years of actual incarceration was a term of fifteen years to life on the murder conviction and a term of ten to twenty-five years for the first count of aggravated robbery. All other sentences were to run concurrently to the latter two terms.

On March 5, 1992 appellant filed a petition to vacate or set aside his sentence with the trial court. He asserted claims of prosecutorial misconduct for failing to reveal exculpatory evidence, ineffective assistance of counsel and improper jury instructions. Attached to his petition were five separate affidavits by appellant attesting to the fact that he did not have

in his possession for purposes of preparing his defense two written statements, a set of photographs, Scientific Investigation Unit reports regarding the gun, a receipt for the gun, and evidence that he had been drinking. Appellant also stated in an affidavit that the trial judge failed to instruct the jury that appellant's mere presence was insufficient to prove his intent as an accomplice. Also attached to appellant's petition were two other affidavits, one by his sister-in-law and one by an acquaintance. Both women attested to the fact that appellant was drunk on the night the offenses were committed.

The State filed a motion to dismiss on March 26, 1992. On the 27th appellant filed a petition asking the court for an *in camera* inspection of the grand jury proceedings. On April 2nd, appellant filed another request for an *in camera* inspection of one of the statements which he complains was not provided to him at trial. After appellant filed, then withdrew, a motion for a stay in proceedings, the trial court issued its findings of fact and conclusions of law without a hearing, June 2, 1993.

The court found no substantive grounds for the post-conviction relief claims. The court found no basis for the claim of ineffective assistance of counsel. The court further found that the claims of prosecutorial misconduct were barred by *res judicata*. Finally, the court concluded that appellant's claims of ineffective assistance of appellate counsel and error in instructing the jury were not cognizable bases for relief in post-conviction petitions.

Appellant filed his notice of appeal on June 18th, asserting five assignments of error.

I

THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT'S CLAIMS BASED ON ALLEGED PROSECUTORIAL MISCONDUCT BARRED BY THE DOCTRINE OF *RES JUDICATA*.

Appellant argues that the trial court should not have found the claims of prosecutorial misconduct barred by *res judicata*. Appellant asserts that the claims regarding the prosecution's withholding of material evidence were not brought up on direct appeal because the evidence of such misconduct was outside of the record.

The suppression of exculpatory evidence by the prosecution is "a constitutional denial of due process only where the evidence is sufficiently exculpatory that it could create a reasonable doubt as to guilt." *State v. Walden* (1984), 19 Ohio App.3d 141, 149. The court in *Walden* found that the assertions verified by the defendant's petition set forth a constitutional violation and thus, the trial court erred in denying the post-conviction relief petition without a hearing. The evidence allegedly suppressed by the prosecution in *Walden* supported the defendant's theory of self-defense in that it tended to prove that the victim had been harassing the defendant.

The evidence allegedly suppressed in this instance does not rise to constitutional significance. Appellant complains that several written statements were suppressed by the police. He

asserts that one statement contains a co-defendant's confession that he took part in the robberies and that the third party to the crime spree always kept the gun in his car under the seat. Even accepting appellant's assertion as true, we do not see how these assertions would create a reasonable doubt as to appellant's guilt.

The other statement contained a discrepancy in testimony where a witness admits at one point that he did not see appellant shoot the victim, then states at another point, referring to appellant, "He was also the one who was the one that shot the gun." Because this witness was at the scene where the evidence indicates that appellant shot the gun several times at more than one person, we find that this statement is merely ambiguous and not sufficient to create a reasonable doubt as to appellant's guilt.

The photographs of one of the co-defendant's clothing and hands did not create any doubt as to appellant's guilt. Nor did the alleged evidence of appellant's drinking create any reasonable doubt. As to the Scientific Investigation Unit's report which appellant asserts was not provided, appellant's affidavit does not tend to show how this missing report would add any reasonable doubt to appellant's guilt if included in the evidence. Finally, the receipt proving ownership of the gun was clearly not probative of guilt or innocence.

Clearly, the evidence alluded to in appellant's affidavits is not material under the standard enunciated in *State v. Johnston* (1988), 39 Ohio St.3d 48, at paragraph five of the syllabus:

> In determining whether the prosecution improperly suppressed evidence favorable to the accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. (*United States v. Bagley* [1984], 473 U.S. 667, followed.)

Appellant attempts to bootstrap his claim of prosecutorial misconduct onto his assertion of ineffective assistance of counsel in the argument supporting this assignment of error. Citing *State v. Cole* (1982), 2 Ohio St.3d 112, appellant argues that where ineffective assistance of counsel claims are based upon evidence outside of the record and appellate counsel is the same as trial counsel, *res judicata* is not a proper basis of dismissal of a post-conviction relief petition.

*Cole* actually stands for the proposition that:

> [T]he allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence and, thus, to justify the trial court's application of the principles of *res judicata*.

*State v. Cole,* at 114.

We find that the trial court properly relied upon the doctrine of *res judicata* to dismiss appellant's petition for post-conviction relief as to the claims of prosecutorial misconduct. The affidavits provided with the post-conviction petition do not constitute credible evidence of material exculpatory evidence withheld by the prosecutor.

Appellant's first assignment of error is overruled.

II

THE TRIAL COURT ERRED WHEN IT DISMISSED THE DEFENDANT-APPELLANT'S PETITION TO VACATE OR SET ASIDE SENTENCE WITHOUT AN EVIDENTIARY HEARING AND FOR FAILURE TO ADVANCE SUBSTANTIVE GROUNDS FOR RELIEF.

Appellant argues that a substantive ground for relief is stated by his petition as supported by his affidavits. We do not find his argument well taken.

R.C. 2953.21 does not require a trial court to hold a hearing on a post-conviction relief petition unless that court has determined that substantive grounds for relief exist.

As to appellant's claim of prosecutorial misconduct, we have already determined that the affidavits did not advance substantive grounds for relief in that the allegedly suppressed evidence was not material. Therefore, the trial court did not err in denying appellant's petition without a hearing on this claim.

Appellant also asserted a claim of ineffective assistance of counsel which the trial court found was not supported by the evidence in the record and was not shown by appellant's petition. We agree with the trial court that appellant has failed to submit sufficient evidence to support his claim.

The Ohio Supreme Court's decision in *State v. Cole* applies to our review of the ineffective assistance of counsel claim, as well. Appellant claims that the same attorneys represented him on appeal and at trial. Therefore, the fact that the issue of ineffective assistance of trial counsel was never raised on direct appeal does

not hinder his ability to raise it in this post-conviction proceeding, under *Cole*. However, this set of facts is actually analogous to those in *Cole*. Appellant was represented by Paul Mancino on direct appeal from his convictions. Mancino was not his trial counsel. Appellant did not raise ineffective assistance of trial counsel on appeal, but the issue could have been determined without resort to evidence outside of the record. The issue of the trial counsel's competency regarding the investigation and discovery process undertaken to find the allegedly suppressed evidence can be determined from the record. The record shows that appellant's trial counsel filed extensive and detailed motions for discovery. Furthermore, the trial counsel's failure to object to jury instructions was also an issue which could have been raised without resorting to evidence outside of the record.

In *Cole*, as in the case at bar, the trial court denied the post-conviction relief petition without a hearing. The trial court's ruling in *Cole* was affirmed by both the appellate court and the Ohio Supreme Court. The Hamilton County Court of Appeals also followed the reasoning of *State v. Cole* when it held that a:

> Claim of ineffective assistance of counsel presented in postconviction petition may be dismissed under the doctrine of res judicata where petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and issue could fairly have been determined without evidence dehors the record.

*State v. Sowell* (1991), 73 Ohio App.3d 672, at paragraph nine of the syllabus. We are bound to follow the law as set forth in *Cole* and affirm the trial court's ruling as to the claim of ineffective

assistance of trial counsel.

Finally, appellant claims that the trial court improperly instructed the jury and that he received ineffective assistance of appellate counsel. The trial court in reviewing appellant's post-conviction relief petition concluded that these two claims were not cognizable in a post-conviction relief proceeding. We agree.

The issue of the trial court's possible error in instructing the jury was not raised on direct appeal but could have been determined. It has also been held that ineffective assistance of appellate counsel is not cognizable in post-conviction relief proceedings. The proper procedure for bringing such a claim is through a motion for delayed reconsideration filed with the appellate court. *State v. Murnahan* (1992), 63 Ohio St.3d 60, at paragraph three of the syllabus.

Upon each of the three claims raised by appellant's petition for post-conviction relief, no substantive grounds for relief were shown to exist. The trial court properly denied the petition without a hearing pursuant to R.C. 2953.21. Appellant's second assignment of error is overruled.

III

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO CONDUCT AN *IN CAMERA* INSPECTION OF A STATEMENT MADE BY CO-DEFENDANT [PEDRO CARABELLO] AND TO ORDER THAT THE ALLEGED SUPPRESSED STATEMENT BE MADE PART OF THE RECORD FOR PURPOSES OF APPEAL IN REFERENCE TO APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.

IV

THE TRIAL COURT ERRED WHEN IT FAILED TO RULE ON APPELLANT'S PETITION FOR *IN CAMERA* INSPECTION AND FOR DISCLOSURE OF RECORD OF GRAND JURY PROCEEDINGS PURSUANT TO CRIMINAL RULE

6(E) AND R.C. 2939.11 AND FOR FAILING TO MAKE THE RECORD OF ANY SUCH PROCEEDINGS A PART OF THE RECORD, UNDER SEAL, FOR PURPOSES OF APPELLATE REVIEW.

Because both of these assignments of error raise a similar issue, they will be discussed together. Appellant argues that the trial court abused its discretion when it failed to rule upon his motions for *in camera* inspections of Carabello's statement and the grand jury proceedings. Appellant's argument is not well taken.

Both of appellant's motions for *in camera* inspections raised issues which could have been raised at trial or on direct appeal. The trial court did not commit an abuse of discretion in failing to rule upon these motions because the issues presented were barred by *res judicata*.

Appellant's third and fourth assignments of error are overruled.

V

THE TRIAL COURT ERRED IN NOT ADDRESSING APPELLANT'S ALLEGED IMPROPER JURY INSTRUCTION CLAIMS.

Appellant's final assignment of error is not well taken. The trial court addressed appellant's claim of improper jury instructions on page three of its findings of fact and conclusions of law. The trial court found that the claim did not present a cognizable basis for relief in a post-conviction petition. The trial court did not err in its finding as this is another claim which would have properly been raised on direct appeal and was reviewable based upon the proceedings in the record.

Appellant's fifth assignment of error is overruled. The trial

court properly denied appellant's post-conviction relief petition without a hearing. The trial court's ruling is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KRUPANSKY, J., AND
PORTER, J., CONCUR

ANN DYKE
JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof, this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

1790? Smilanich

# The Supreme Court of Ohio

1995 TERM

To wit: May 31, 1995

| | | |
|---|---|---|
| State of Ohio,<br>Appellee, | : | Case No. 95-582 |
| v. | : | ENTRY |
| Isaiah Andrews,<br>Appellant. | : | |

Upon consideration of the jurisdictional memoranda filed in this case, the Court declines jurisdiction to hear the case and dismisses the appeal as not involving any substantial constitutional question.

COSTS:

Docket Fee, Affidavit of Indigency filed.

(Cuyahoga County Court of Appeals; No. 66960)

THOMAS J. MOYER
Chief Justice

filed 3/20

RECEIVED
MAR 20 12 21 PM '95
CLERK OF COURT
PROSECUTOR'S OFFICE

IN THE SUPREME COURT OF OHIO

95-582

| | | |
|---|---|---|
| Isaiah Andrews | : | On Appeal from the Cuyahoga County Court of Appeals, Eithth Appellate District |
| Appellant, | : | |
| v. | : | Court of Appeals Case No. 66960 |
| State of Ohio | : | |
| Appellee. | : | |

---

# MEMORANDUM IN SUPPORT OF JURISDICTION OF APPELLANT ISAIAH ANDREWS

---

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901
(419) 526-2000 ext. 3052 or 3054

PRO SE COUNSEL FOR APPELLANT, ISAIAH ANDREWS

Stephanie Tubbs Jones
Cuyahoga County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

COUNSEL FOR APPELLEE, STATE OF OHIO

# TABLE OF CONTENTS


| | Page |
|---|---|
| STATEMENT OF THE CASE AND FACTS........................ | 1 |
| ARGUMENT IN SUPPORT OF PROPOSITION OF LAW.............. | 4 |
| Proposition of Law No. I: The Court of Appeals Committed reversable error by its decision that the doctrine of *res judicata* barred the issue of speedy trial violation based upon evidence dehors the record........................................ | 4 |
| Proposition of Law No. II: The Appeals Court committed reversable error by its decision that the doctrine of *res judicata* barred the issue of ineffective assistance of trial counsel based upon evidence dehors the record.................... | 6 |
| EXPLANATION OF WHY THIS CASE IS A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND INVOLVES A SUBSTANTIAL CONSTITUTIONAL QUESTION................................ | 8 |
| PROOF OF SERVICE....................................... | 11 |
| APPENDIX | Appx. Page |
| Opinion of the Cuyahoga County Court of Appeals (February 23, 1995)................................ | 1 |
| Judgment Entry of the Cuyahoga County Court of Appeals (February 23, 1995)..................... | 1 |

## STATEMENT OF THE CASE AND FACTS

This cause presents two critical issues for the future of Ohio citizens accused of a felony offense: (1) The Court of Appeals committed reversible error when it's decision and journal entry affirmed the trial court's decision that the doctrine of res judicata barred the issue of speedy trial violation based upon evidence dehors the record.

A claim of speedy trial violation based upon evidence dehors the record is not capable of review on direct appeal and is not barred by the principle of res judicata unless it is raised on direct appeal; the record of **CR 16694** dehors **CR 17902.**

(2) The Court of Appeals committed reversible error when it affirmed the trial court's decision that the utilization of post-conviction remedy is precluded by the doctrine of res judicata for the purpose of raising the claim of ineffective assistance of trial counsel. A claim of ineffective assistance of counsel based upon evidence dehors the record is not capable of review on direct appeal and is not barred by the principle of res judicata unless it is raised on direct appeal. **State v. Cooperrider**, (1983), 4 Ohio St.3d 2261; Since it is based on evidence outside the record, the claim of ineffective assistance should be raised in a post-conviction relief proceeding, not on direct appeal. **State v. Gibson**, (1980), 69 OApp2d 91, 23 OO3d 130, 430 NE2d 954.

This case arises from the attempt of appellant Isaiah Andrews via **R.C. § 2953.21** to have his illegal sentence vacated based on the following facts: **First**, appellant was arrested on September 19, 1974; indicted and held in the Cuyahoga County Jail for 88 days, from September 19, 1974 to December 16, 1974 without bail under **CR 16694**; upon motion of appellant to dismiss for speedy trial violation, the State, represented by Prosecutor Gibson in open court and for good cause shown nolle prosequi case number **CR 16694** on December 16, 1974 pursuant to **R.C. § 2941.33, R.C. § 2945. 73(B), and Criminal Rule 48(A).** Under Ohio law, a nolle prosequi entered in accordance with statutes competely terminates a prosecution: **Sander v. State**, 365 FSupp 1251, 70 OO2d 418 (S.D.); **State v. England**, (1982) In a case where there is a lack of a clear showing of delay occasioned by an act of the accused which would extend the time in which he must be brought to trial, the trial court commits reversible error and violates **R.C. § 2945.73(D)** when it vacatges its prior entry discharging the accused on speedy trial grounds. **Second**, on December 23, 1974, the trial court vacated its prior entry discharging appellant on speedy trial grounds; the appellant was reindicted **CR 17902** based on the same conduct for which **RC 16694** was nolle prosequi, despite the prohibition of **R.C. § 2945.73(D)** which states in pertinent part:

". . .When an accused is discharged pursuant to division (B) or (C) of this section, such discharge is a bar to further criminal proceedings against him based on the same conduct."

Under CR 16694, the appellant was held in the County Jail without bail for 88 days, and under CR 17902, the appellant was held for 72 days before he was tried inviolation of Federal and State law, found guilty of a void charge and sentenced to life in imprisonment where he has resided since fighting this unlawful sentence.

Appellant was sentenced on March 12, 1975; appellant's appeal attorney appealed to the Eighth Appellate District Court of Appeals, case No. CA 34620, which Court affirmed the trial court's decision; the Supreme Court of Ohio dismissed for want of prosecution on June 26, 1992, 64 Ohio St.3d 1422.

On April, 1992, appellant Isaiah Andrews filed a petition for post-conviction relief pursuant to **R.C. § 2953.21;** that motion was denied without a hearing, inspite there being evidence which dehored the record of **CR 17902**, on January 26, 1994 under the doctrine of res judicata; appellant appealed the decision of the court of common pleas to the Court of Appeals for the Eighth Appellate District and that Court affirmed on the doctrine of res judicata.

Presently before this Court is appellant's appeal from the Eighth Court of Appeals. In support of its position on these issues, the appellant presents the following argument.

Argument In Support of Proposition of law

Proposition of Law No. I: The Court of Appeals committed reversable error when it's decision and journal entry affirmed the trial court's decision that the doctrine of res judicata barred the issue of speedy trial based upon evidence dehors the record.

A claim of speedy trial violation based upon evidence dehors the record is not capable of review on direct appeal and is not barred by the principle of res judicata unless it is raised on direct appeal; the record of **CR 16694** dehors **CR 17902.**

The trial court pursuant to R.C. 2945.73(B), R.C. 2941.33, and Criminal Rule 48(A) nolle prosequi **CR 16694** on December 16, 1974 because it met the good cause and open court requirements of R.C. Section 2941.33 and Criminal Rule 48(A). The fact that a nolle prosequi is entered by order of the court imports that such order was made for good cause and in open court. Douglas v. Allen, 56 OS 156, 46 NE 707. After term a court may not set aside its order of nolle prosequi and reinstate the indictment: In re Golib, 99 App 88, 58 OO 173, 130 NE2d 855.

In the case at bar, either the trial court did not follow the mandates of R.C. Section 2953.21(C) or it omitted review and consideration of journal entry: Vol. 245, page 310 under CR 16694. In either case, it is reversable error that the Appellate Court affirmed the trial court's decision because

journal entry: Vol. 245, page 310 under CR 16694, dehors CR 17902 and is included in the phrasing of R.C. 2953.21(C):

> "...all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, ..."

If the trial court failed to review and consider all the files and records pertaining to the proceedings against the appellant, then it erred because it failed to follow the mandates of R.C. 2953.21(C); or if the trial court did review and consider all the files and records pertaining to the proceedings against appellant, then it was even a greater error not to apply corrective measures when it discovered that the appellant was illegally incarcerated, and the Appellate Court erred when it affirmed the trial court's decision that res judicata barred appellant from raising speedy trial violations.

As in the case at bar, it was held in State v. England, 8 OApp3d 149, 8 OBR 207, 456 NE2d 544: In a case where there is a lack of clear showing of delay occasioned by an act of the accused which would extend the time in which he must be brought to trial, the trial Court committs reversable error and violates R.C. Section 2945.73(D) when it vacates it prior entry discharging the accused on speedy trial grounds.

Appellant is illegally incarcerated and has been for more than 20 years. Sander v. State, 365 FSupp 1251, 70 OO2d 418 (S.D.): Under Ohio law, a nolle prosequi entered in accordance with statutes completely terminates a prosecution.

Proposition of Law No. II: The Appellate Court committed reversible error when it affirmed the trial court's decision that the utilization of the post-conviction remedy to raise the claim of ineffective assistance of counsel is precluded by the doctrine of res judicata.

A claim of ineffective assistance of counsel based upon evidence dehors the record is not capable of review on direct appeal and is not barred by the principle of res judicata unless it is raised on direct appeal. **State v. Cooperrider**, (1983), 4 Ohio St.3d 2261. The Court held in **State v. Gibson**, (1980), 69 OApp2d 91, 23 003d 130, 430 NE2d 954, Since it is gased on evidence outside the record, the claim of ineffective assistance should be raised in a post-conviction relief proceeding, not on direct appeal.

Appellant directed both the trial court and the Appellate Court's attention to **CR 16694** and journal entry: Vol. 245, page 310 to show that there was evidence which not only dehors **CR 17902 but** also made it void or voidable. There is no indication in the record of this case that appellant raised the issue of ineffective assistance of counsel on direct appeal. Appellant Andrews claimed ineffective assistance of trial counsel for the first time in his motion for post-conviction relief and supported it with evidence outside the record of **CR 17902**, namely **CR 16694** which made CR 17902 void of legal force. Therefore, the trial court and the Appellate Court's inquiry should have surpassed the

issue of of res judicata.

Where it is clear, as in the case at bar, that a petition for post-conviction relief is not barred by the principle of res judicata, it was the duty of the trial court to review the motion; it was grave erro for the Appellate Court to affirm the trial court's bad decision when it had before it clear evidence that appellant is illegally incarcerated by a void disposition, if as in the case sub judice, the motion is supported with sufficient operative facts to show that the defense was prejudiced by the ineffective assistance of trial counsel to the extent of allowing the trial court to illegally vacate its prior nolle prosequi with prejudice and sentence appellant to Life imprisonment, then the appellant is not only intitled to a hearing, he demands release. See e.g., **State v. Jackson**, 64 Ohio St.2d 107. In this case a hearing was warranted.

The operative facts demonstrate that appellant's trial counsel failed to investigate appellant's **entire** files and records ot the proceedings against him, and thereby omitted to discover that the proceedings under **CR 17902** were illegal and void under case number **CR 16694,** the United States Constitution, Amendment VI, the Ohio State Constitution, art I, § 10, R.C. 2945.73(D), and Criminal Rule 48(A).

The failure of trial counsel to investigate all relevant court documentation which would have provided a basis for acquittal demonstrates prejudice. See **State v. Jackson**, (1990) Cuyahoga App. No. 57475, unreported; **State v. Reese**, (1982), 8 Ohio App.3d 202.

## EXPLANATION OF WHY THIS CASE IS A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND INVOLVES A SUBSTANTIAL CONSTITUTIONAL QUESTION

The decision of the court of appeals threatens the structure of Ohio legal system and makes every citizen subject to unlawful inceration without due process of law. By its ruling, the court of appeals undermines legislative intent, ignores the plain meaning of speedy trial and post-conviction statutes. Moreover, the court of appeals' decision establishes the illegal right of trial courts to imprison without due process of law and to ignore established law and procedure. The development of the recording of judicial decisions has been related to the quest for certainty in the law. Those seeking to achieve regularity in the impact of legal rules soon came to realize the value of recording the decisions of particular legal controversies. Such records provide guidance to later tribunals when faced with similar cases, and also aid in preventing further disputes.

Karl Llewellyn formulated the following reasons for the doctrine of precedent:

". . . laziness as to the reworking of a problem once solved; the time and energy saved by routine, especially under any pressure of business; the values of routine as a curb on arbitrariness and as a prop of weakness, inexperience and instability; the social values of predictability; the power of expectations to be become normative . . . that

curious, almost universal sense of justice which urges that all men are properly to be treated alike in like circumstances." Llewellyn, "Case Law", 3 Encyclopaedia of the Social Sciences 249 (1930).

The implications of the decision of the Court of Appeals affect every trial court in Ohio, and touch the lives of tens of thousands of citizens in the state. The public interest in the orderaly operation of the courts is profoundly affected by a holding that the legislative intent of the Revised Code, established case law, and Criminal Rules are not binding on agencies with the power of life and death. Such a rule of law would sabotage the integrity of the legal system in Ohio, and undermine the fundamental principle that the rule of law constrains governments as well as citizens. Similarly, the public interest is affected if the plain meaning of a statute duly adopted by the General assembly can be judicially altered to subvert the legislature's intent that speedy trial statutes are to be literally construded and that the post-conviction statute mandates are to be followed when Appeal and trial courts feel like it undermines the entire legal system of Ohio.

In Sum, this case puts in issue the question of whether there is law, and if so, who must obey it!

This Court must grant jurisdiction to hear the two constitutional issues presented herein and review the erroneous and dangerous decision of the Court of Appeals, who looked the other way while the trial court continued the illegal incarceration and denial of due process of law to an Ohio citizen.

By: Isaiah Andrews
Isaiah Andrews

PRO SE COUNSEL
FOR APPELLANT,
ISAIAH ANDREWS

Proof of Ser vice

I certify that a copy of this Memorandum in Support of Jurisdiction was sent by ordinary U.S. mail to counsel for the appellee, Stephanie Tubbs, Jones, Prosecutor of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

Isaiah Andrews

PRO SE COUNSEL FOR APPELLANT,
ISAIAH ANDREWS

**APPENDIX** **Appx. Page**

Opinion of the Cuyahoga County Court of Appeals (February 23, 1995)................................ 1

Judgment Entry of the Cuyahoga Court of Appeals (February 23, 1995)................................ 1

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO<br>Plaintiff-Appellee<br>-vs-<br>ISAIAH ANDREWS<br>Defendant-Appellant | : | JOURNAL ENTRY<br>AND<br>OPINION |

| | |
|---|---|
| DATE OF ANNOUNCEMENT OF DECISION | FEBRUARY 23, 1995 |
| CHARACTER OF PROCEEDING | Civil appeal from Court of Common Pleas Case No. 17902 |
| JUDGMENT | Affirmed |
| DATE OF JOURNALIZATION | ______________________ |

APPEARANCES:

For Plaintiff-Appellee:

STEPHANIE TUBBS-JONES
Cuyahoga County Prosecutor
DIANE SMILANICK, Assistant
Prosecuting Attorney
1200 Ontario Street
Cleveland, Ohio 44113

For Defendant-Appellant:

ISAIAH ANDREWS, PRO SE
Serial No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

JAMES M. PORTER, J.,

Defendant-appellant Isaiah Andrews, *pro se*, appeals from the trial court's denial of his petition for post-conviction relief without a hearing. Defendant is imprisoned for life since 1975 resulting from a conviction for aggravated murder (R.C. 2903.01) in the stabbing death of his wife. Defendant contends that he was deprived of effective assistance of counsel and tried in violation of the speedy trial act. We find no merit to defendant's appeal and affirm denial of his petition for post-conviction relief on *res judicata* grounds.

Defendant was found guilty by a jury of aggravated murder on March 12, 1975. He was sentenced to life imprisonment. This Court affirmed his conviction. *State v. Andrews* (March 18, 1976), Cuyahoga App. No. 34620, unreported. Defendant's appeal to the Ohio Supreme Court was dismissed for want of prosecution on June 26, 1992, 64 Ohio St.3d 1422.

Defendant filed a petition for post-conviction relief herein on April 8, 1992. That motion was denied without a hearing by the trial court on January 26, 1994, with concurrent findings of fact and conclusions of law supporting the denial. Defendant's timely appeal to this Court ensued.

Defendant also filed a petition for Writ of Mandamus with this Court on January 3, 1994 to compel the trial court to rule on his petition for post-conviction relief. The State filed a motion to dismiss (Motion No. 48462) attached to which was a copy of the

findings of fact and conclusions of law issued by the Court of Common Pleas denying defendant's petition for post-conviction relief. This Court dismissed the writ on February 25, 1994.

Presently before this Court is defendant's appeal from the trial court's dismissal without a hearing of his petition for post-conviction relief. We will address defendant's two assignments of error together as they are interrelated to the issues involved.

I. THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF *RES JUDICATA* BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.75 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

II. THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

The trial court found that defendant's two claims (violation of speedy trial and ineffective assistance of counsel) could have been raised by defendant's original direct appeal, that he had separate trial counsel from appellate counsel and that his claims were *res judicata*. Defendant claims that the trial court deprived him of due process by failing to hold a hearing on the issues asserted and ruling as a matter of law that these claims were barred.

R.C. 2953.21(C) states:

> (C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a

> determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. Such court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

Pursuant to R.C. 2953.21(C), the trial court dismissed defendant's post-conviction petition and issued findings of fact and conclusions of law on each issue raised in the petition.

As the statute makes clear, "[C]ourts are not required to hold a hearing on all post-conviction cases." *State ex rel. Jackson v. McMonagle* (1993), 67 Ohio St.3d 450, 451. This Court recently stated, the tests to be applied in determining the necessity of a hearing in *State v. Pariseau* (Dec. 15, 1994), Cuyahoga App. No. 67496, unreported at 4-5:

> A petition for post-conviction relief will be granted only where the denial or infringement of constitutional rights is so substantial as to render the judgment void or voidable. Relief is not available when the issue has been litigated by appeal or upon a motion for a new trial. *State v. Walden* (1984), 19 Ohio App.3d 141, 156. The doctrine of *res judicata* bars any defense or claimed lack of due process already raised on direct appeal from the judgment of conviction. *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. The claim must depend on factual allegations which cannot be determined by an examination of the files and records of the case. *State v. Milanovich*

(1975), 42 Ohio St.2d 46, paragraph one of the syllabus.

A petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *State v. Jackson* (1980), 64 Ohio St.2d 107. The test to be applied is "whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." *State v. Strutton* (1988), 62 Ohio App.3d 248, 251. A petitioner satisfies his initial burden by submitting evidence outside the record sufficient to avoid dismissal. See *State v. Williams* (1991), 74 Ohio App.3d 686, 692.

Defendant's claims of ineffective assistance of trial counsel and failure to raise the speedy trial issue were matters that could have been addressed on defendant's direct appeal since defendant was represented by new appellate counsel. Accordingly, they are now barred by the doctrine of *res judicata* as found by the trial court. This was recently stated by this Court in affirming the denial of a post-conviction petition without a hearing in *State v. Carpenter* (June 30, 1994), Cuyahoga App. No. 65722, at 7-8, where we stated:

R.C. 2953.21 does not require a trial court to hold a hearing on a post-conviction relief petition unless that court has determined that substantive grounds for relief exist.

* * *

The Ohio Supreme Court's decision in *State v. Cole* [(1982), 2 Ohio St.3d 112] applies to our review of the ineffective assistance of counsel claim, as well. Appellant claims that the same attorneys represented him on appeal

and at trial. Therefore, the fact that the issue of ineffective assistance of trial counsel was never raised on direct appeal does not hinder his ability to raise it in this post-conviction proceeding, under *Cole*. However, this set of facts is actually analogous to those in *Cole*. Appellant was represented by Paul Mancino on direct appeal from his convictions. Mancino was not his trial counsel. Appellant did not raise ineffective assistance of trial counsel on appeal, but the issue could have been determined without resort to evidence outside of the record. The issue of the trial counsel's competency regarding the investigation and discovery process undertaken to find the allegedly suppressed evidence can be determined from the record. The record shows that appellant's trial counsel filed extensive and detailed motions for discovery. Furthermore, the trial counsel's failure to object to jury instructions was also an issue which could have been raised without resorting to evidence outside of the record.

In *Cole*, as in the case at bar, the trial court denied the post-conviction relief petition without a hearing. The trial court's ruling in *Cole* was affirmed by both the appellate court and the Ohio Supreme Court. The Hamilton County Court of Appeals also followed the reasoning of *State v. Cole* when it held that a:

"Claim of ineffective assistance of counsel presented in postconviction petition may be dismissed under the doctrine of res judicata where petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and issue could fairly have been determined without evidence dehors the record."

*State v. Sowell* (1991), 73 Ohio App.3d 672, at paragraph nine of the syllabus. We are bound to follow the law as set forth in *Cole* and affirm the trial court's ruling as to the claim of ineffective assistance of trial counsel.

We have no reason to depart from this recent authority and agree with the trial court's disposition of these post-conviction issues. "*Res judicata* prohibits an appellant from raising, by way of a motion for post-conviction relief, any issue which could have been raised at trial or through a direct appeal when the appellate counsel is different from trial counsel." *State v. Rios* (April 15, 1993), Cuyahoga App. No. 63509, unreported at 5 (citing *Cole* and *Perry, supra*).

The claim of ineffective assistance of appellate counsel cannot be raised in a post-conviction proceeding, as defendant attempts, pursuant to R.C. 2953.21. *State v. Murnahan* (1992), 63 Ohio St.3d 60, paragraph one of syllabus: "Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. 2953.21." Claims of ineffective assistance of appellate counsel must be brought in the Court of Appeals or the Supreme Court. *Id.*, paragraphs two and three of syllabus.

We find defendant's two assignments of error and the issues raised are without merit. They are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

RECEIVED FOR FILING

FEB 23 1995

GERALD E. FUERST, CLERK
BY CW DEP.

HARPER, P.J., and

NUGENT, J., CONCUR.

James M. Porter
JAMES M. PORTER
JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof, this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

RECEIVED
NOV 20 12 21 PM '95
CUYAHOGA COUNTY PROSECUTOR'S OFFICE

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| Isaiah Andrews<br><br>Appellant,<br><br>v.<br><br>State of Ohio<br><br>Appellee. | : | On Appeal from the Cuyahoga County Court of Appeals, Eighth Appellate District<br><br>Court of Appeals Case No. 66960 |

MOTION FOR APPOINTMENT OF COUNSEL FOR APPELLANT ISAIAH ANDREWS

Isaiah Andrews, Appellant, request the Court to appoint him an attorney to prosecute an appeal to the Supreme Court. Appellant's request is based upon Ohio Revised Code Section 2953.02 which states in pertinent part: ". . . A judgment or final order of the court of appeals involving a question arising under the Constitution of the United States or this state may be appealed to the supreme court as a matter of right."

Appellant's request for appointment of counsel is also based upon Ohio Rule of Criminal Procedure 45(A), which states that Counsel shall be appointed to represent a defendant at every step of the proceeding from his initial appearance before a Court, through Appeal as a right.

Motion for Appointment of Counsel for Appellant Isaiah Andrews

Since the Appellant has an appeal as his right under the Ohio Revised Code as above cited, he request that Counsel be appointed to assist him in prosecuting his appeal. In Support of this motion, Appellant offers the attached Affidavit of Indigency, requesting that Counsel be appointed for him.

Respectfully submitted,

Isaiah Andrews

PRO SE COUNSEL FOR
APPELLANT, ISAIAH ANDREWS

PROOF OF SERVICE

I certify that a copy of this Motion for Appointment of Counsel for Appellant Isaiah Andrews was sent by ordinary U.S. mail to counsel for the appellee, Stephanie Tubbs Jones, Prosecutor of Cuyahoga County, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113.

Isaiah Andrews

PRO SE COUNSEL FOR
APPELLANT, ISAIAH ANDREWS

STATE OF OHIO )
) SS: AFFIDAVIT OF INDIGENCY OF APPELLANT,
COUNTY OF RICHLAND) ISAIAH ANDREWS

I, Isaiah Andrews, being first duly sworn according to law, do state the following:

1. I am the Appellant in the post-conviction case of State of Ohio vs. Isaiah Andrews, Court of Appeals Civil Case No. 66960, Lower Court Case Number 17902;

2. I wish to appeal the decision of the Eighth Court of Appeals affirming the denial of a hearing on my post-conviction;

3. I am presently incarcerated at Mansfield Correctional Institution; and

4. I am presently indigent and have no assets or funds whatsoever to pay for legal fees.

FURTHER AFFIANT SAYETH NAUGHT.

Isaiah Andrews
Signature of Affiant

Sworn to and subscribed before me a Notary Public for Richland County, State of Ohio, this 15th day of March, 1995.

MARY K. MINER
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 20, 1997

Mary K. Miner
NOTARY PUBLIC'S SIGNATURE

RECEIVED
MAR 20 12 21 PM '95
CUYAHOGA COUNTY
PROSECUTOR'S OFFICE

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| Isaiah Andrews<br><br>Appellant,<br><br>v.<br><br>State of Ohio<br><br>Appellee. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | On Appeal from the Cuyahoga County Court of Appeals, Eighth Appellate District<br><br>Court of Appeals Case No. 66960 |

AFFIDAVIT OF INDIGENCY OF APPELLANT
ISAIAH ANDREWS

STATE OF OHIO )
) SS:
COUNTY OF RICHLAND)

I, Isaiah Andrews, a citizen of the United States and Affiant herein, after being duly sworn and cautioned on my oath as is required by law, does hereby depose and say:

1. That I am an inmate of Mansfield Correctional Institution, located at P.O. Box 788, Mansfield, Ohio 44901;

2. That I am without the necessary funds with which to pay for the cost of this action;

3. That I am without any possession, real or personal of sufficient value in with which to offer as security for such cost; and

Affidavit of Indigency of Appellant Isaiah Andrews

4. That I am a true indigent and pauper within the meaning of the law.

FURTHER, AFFIANT SAYETH NAUGHT.

Isaiah Andrews
Signature of Affiant

Sworn to before and subscribed in my presence, a notary Public in and for the County of Richland, State of Ohio, this 15th day of March, 1995.

Mary K Miner
NORARY PUBLIC'S SIGNATURE

MARY K. MINER
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires Oct. 20, 1997

RECEIVED

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| Isaiah Andrews | : | |
| | : | |
| Appellant | : | On Appeal from the Cuyahoga County Court of Appeals, Eighth Appellate District |
| v. | : | |
| State of Ohio | : | |
| | : | Court of Appeals Case No. 66960 |
| Appellee. | : | |

NOTICE OF APPEAL OF APPELLANT ISAIAH ANDREWS

Isaiah Andrews
Reg. No. A141-345
P.O. Box 788
Mansfield, Ohio 44901
(419) 526-2000 ext. 3052 or 3054

PRO SE COUNSEL FOR APPELLANT, ISAIAH ANDREWS

Stephanie Tubbs Jones
Cuyahoga County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

COUNSEL FOR APPELLEE, STATE OF OHIO

Notice of Appeal of Appellant Isaiah Andrews

Appellant Isaiah Andrews hereby gives notice of appeal to the Supreme Court of Ohio from the judgment of the Cuyahoga County Court of Appeals, Eighth Appellate District, entered inCourt of Appeals case No. 66960 on February 23, 1995.

This case raises a substantial constitutional question and is one of public or great general interest.

Respectfully submitted,

By: *Isaiah Andrews*
Isaiah Andrews

PRO SE COUNSEL FOR
APPELLANT, ISAIAH ANDREWS

Proof of Service

I certify that a copy of this Notice of Appeal was sent by ordinary U.S. mail to counsel for appellee, Stephanie Tubbs Jones, Cuyahoga County Prosecutor, 1200 Ontario Street, Cleveland, Ohio 44113 on *this March 15*, 1995.

*Isaiah Andrews*
Isaiah Andrews

PRO SE COUNSEL FOR
APPELLANT, ISAIAH ANDREWS

RECEIVED
MAR 20 12 21 PM '95
PROSECUTOR'S OFFICE

March 15, 1995

Stephanie Tubbs Jones
Prosecuting Attorney
Cuyahoga County, Ohio
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

RE: Appellant, Isaiah Andrews v. State of Ohio, Civil Appeal Number 66960

Dear Prosecutor Jones:

You will please find enclosed one copy of appellant's Notice of appeal to the Supreme Court of Ohio; one (1) copy of Appell-ant's Memorandum of Jurisdiction; one copy of appellant's affidavit of indigency, and one (1) copy of appellant's Motion to Appoint Counsel.

Sincerely,

Isaiah Andrews
Isaiah Andrews
Reg. No. A141-345
P.O.Box 788
Mansfield, Ohio 44901

/ia

cc: file
encls. (4)

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | JOURNAL ENTRY |
| -vs- | : | AND |
| | : | OPINION |
| ISAIAH ANDREWS | : | |
| | : | |
| Defendant-Appellant | : | |
| | : | |

| | |
|---|---|
| DATE OF ANNOUNCEMENT OF DECISION | FEBRUARY 23, 1995 |
| CHARACTER OF PROCEEDING | Civil appeal from Court of Common Pleas Case No. 17902 |
| JUDGMENT | Affirmed |
| DATE OF JOURNALIZATION | ____________________ |

APPEARANCES:

For Plaintiff-Appellee:

STEPHANIE TUBBS-JONES
Cuyahoga County Prosecutor
DIANE SMILANICK, Assistant
Prosecuting Attorney
1200 Ontario Street
Cleveland, Ohio 44113

For Defendant-Appellant:

ISAIAH ANDREWS, PRO SE
Serial No. A141-345
P.O. Box 788
Mansfield, Ohio 44901

JAMES M. PORTER, J.,

Defendant-appellant Isaiah Andrews, *pro se*, appeals from the trial court's denial of his petition for post-conviction relief without a hearing. Defendant is imprisoned for life since 1975 resulting from a conviction for aggravated murder (R.C. 2903.01) in the stabbing death of his wife. Defendant contends that he was deprived of effective assistance of counsel and tried in violation of the speedy trial act. We find no merit to defendant's appeal and affirm denial of his petition for post-conviction relief on *res judicata* grounds.

Defendant was found guilty by a jury of aggravated murder on March 12, 1975. He was sentenced to life imprisonment. This Court affirmed his conviction. *State v. Andrews* (March 18, 1976), Cuyahoga App. No. 34620, unreported. Defendant's appeal to the Ohio Supreme Court was dismissed for want of prosecution on June 26, 1992, 64 Ohio St.3d 1422.

Defendant filed a petition for post-conviction relief herein on April 8, 1992. That motion was denied without a hearing by the trial court on January 26, 1994, with concurrent findings of fact and conclusions of law supporting the denial. Defendant's timely appeal to this Court ensued.

Defendant also filed a petition for Writ of Mandamus with this Court on January 3, 1994 to compel the trial court to rule on his petition for post-conviction relief. The State filed a motion to dismiss (Motion No. 48462) attached to which was a copy of the

findings of fact and conclusions of law issued by the Court of Common Pleas denying defendant's petition for post-conviction relief. This Court dismissed the writ on February 25, 1994.

Presently before this Court is defendant's appeal from the trial court's dismissal without a hearing of his petition for post-conviction relief. We will address defendant's two assignments of error together as they are interrelated to the issues involved.

I. THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF *RES JUDICATA* BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.75 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

II. THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

The trial court found that defendant's two claims (violation of speedy trial and ineffective assistance of counsel) could have been raised by defendant's original direct appeal, that he had separate trial counsel from appellate counsel and that his claims were *res judicata*. Defendant claims that the trial court deprived him of due process by failing to hold a hearing on the issues asserted and ruling as a matter of law that these claims were barred.

R.C. 2953.21(C) states:

> (C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a

> determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. Such court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

Pursuant to R.C. 2953.21(C), the trial court dismissed defendant's post-conviction petition and issued findings of fact and conclusions of law on each issue raised in the petition.

As the statute makes clear, "[C]ourts are not required to hold a hearing on all post-conviction cases." *State ex rel. Jackson v. McMonagle* (1993), 67 Ohio St.3d 450, 451. This Court recently stated, the tests to be applied in determining the necessity of a hearing in *State v. Pariseau* (Dec. 15, 1994), Cuyahoga App. No. 67496, unreported at 4-5:

> A petition for post-conviction relief will be granted only where the denial or infringement of constitutional rights is so substantial as to render the judgment void or voidable. Relief is not available when the issue has been litigated by appeal or upon a motion for a new trial. *State v. Walden* (1984), 19 Ohio App.3d 141, 156. The doctrine of *res judicata* bars any defense or claimed lack of due process already raised on direct appeal from the judgment of conviction. *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. The claim must depend on factual allegations which cannot be determined by an examination of the files and records of the case. *State v. Milanovich*

> (1975), 42 Ohio St.2d 46, paragraph one of the syllabus.
>
> A petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *State v. Jackson* (1980), 64 Ohio St.2d 107. The test to be applied is "whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." *State v. Strutton* (1988), 62 Ohio App.3d 248, 251. A petitioner satisfies his initial burden by submitting evidence outside the record sufficient to avoid dismissal. See *State v. Williams* (1991), 74 Ohio App.3d 686, 692.

Defendant's claims of ineffective assistance of trial counsel and failure to raise the speedy trial issue were matters that could have been addressed on defendant's direct appeal since defendant was represented by new appellate counsel. Accordingly, they are now barred by the doctrine of *res judicata* as found by the trial court. This was recently stated by this Court in affirming the denial of a post-conviction petition without a hearing in *State v. Carpenter* (June 30, 1994), Cuyahoga App. No. 65722, at 7-8, where we stated:

> R.C. 2953.21 does not require a trial court to hold a hearing on a post-conviction relief petition unless that court has determined that substantive grounds for relief exist.
>
> * * *
>
> The Ohio Supreme Court's decision in *State v. Cole* [(1982), 2 Ohio St.3d 112] applies to our review of the ineffective assistance of counsel claim, as well. Appellant claims that the same attorneys represented him on appeal

and at trial. Therefore, the fact that the issue of ineffective assistance of trial counsel was never raised on direct appeal does not hinder his ability to raise it in this post-conviction proceeding, under *Cole*. However, this set of facts is actually analogous to those in *Cole*. Appellant was represented by Paul Mancino on direct appeal from his convictions. Mancino was not his trial counsel. Appellant did not raise ineffective assistance of trial counsel on appeal, but the issue could have been determined without resort to evidence outside of the record. The issue of the trial counsel's competency regarding the investigation and discovery process undertaken to find the allegedly suppressed evidence can be determined from the record. The record shows that appellant's trial counsel filed extensive and detailed motions for discovery. Furthermore, the trial counsel's failure to object to jury instructions was also an issue which could have been raised without resorting to evidence outside of the record.

In *Cole*, as in the case at bar, the trial court denied the post-conviction relief petition without a hearing. The trial court's ruling in *Cole* was affirmed by both the appellate court and the Ohio Supreme Court. The Hamilton County Court of Appeals also followed the reasoning of *State v. Cole* when it held that a:

"Claim of ineffective assistance of counsel presented in postconviction petition may be dismissed under the doctrine of res judicata where petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and issue could fairly have been determined without evidence dehors the record."

*State v. Sowell* (1991), 73 Ohio App.3d 672, at paragraph nine of the syllabus. We are bound to follow the law as set forth in *Cole* and affirm the trial court's ruling as to the claim of ineffective assistance of trial counsel.

We have no reason to depart from this recent authority and agree with the trial court's disposition of these post-conviction issues. "*Res judicata* prohibits an appellant from raising, by way of a motion for post-conviction relief, any issue which could have been raised at trial or through a direct appeal when the appellate counsel is different from trial counsel." *State v. Rios* (April 15, 1993), Cuyahoga App. No. 63509, unreported at 5 (citing *Cole* and *Perry, supra*).

The claim of ineffective assistance of appellate counsel cannot be raised in a post-conviction proceeding, as defendant attempts, pursuant to R.C. 2953.21. *State v. Murnahan* (1992), 63 Ohio St.3d 60, paragraph one of syllabus: "Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. 2953.21." Claims of ineffective assistance of appellate counsel must be brought in the Court of Appeals or the Supreme Court. *Id.*, paragraphs two and three of syllabus.

We find defendant's two assignments of error and the issues raised are without merit. They are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

RECEIVED FOR FILING

FEB 23 1995

GERALD E. FUERST, CLERK
BY CMM DEP.

HARPER, P.J., and

NUGENT, J., CONCUR.

James M. Porter
JAMES M. PORTER
JUDGE

N.B. This entry is made pursuant to the third sentence of Rule 22(D), Ohio Rules of Appellate Procedure. This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof, this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | CASE NO. CR 17902 |
| ISAIH ANDREWS, | ) | |
| Defendant-Appellant | ) | |

---

**BRIEF OF APPELLEE**

---

Counsel for Plaintiff-Appellee

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

Counsel for Defendant-Appellant

ISAIAH ANDREWS #a141-345
P.O. Box 788
Mansfield, Ohio 44901

## TABLE OF CONTENTS


Statement of the Facts . . . . . . . . . . . . . . . . . . . . 1-2

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . 2-4

As to Assignments of Error Nos. I and II . . . . . . . . 2-4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


## TABLE OF AUTHORITIES

Cases:


State v. Adams (1980), 62 Ohio St. 2d 151 . . . . . . . . . . . . 2

State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . . . . 3,4

State v. Mitchell (1988), 53 Ohio App. 3d 117, 119 . . . . . . . 2

State v. Perry (1967), 10 Ohio St. 2d 175 . . . . . . . . . . . . 3

State v. Tyler (1990), 50 Ohio St. 3d 24, cert. denied, 110 S. Ct. 3258 . . . . . . . . . . . . . . . . . . . . . . . . 3

Strickland v. Washington (1984), 466 U.S. 668,687,690,691 . . . 3

Vaughn v. Maxwell (1965), 2 Ohio St. 2d 299 . . . . . . . . . . . 3

IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

NO. 66960

STATE OF OHIO, )

Plaintiff-Appellee )

-vs- ) BRIEF OF APPELLEE

ISAIAH ANDREWS, )

Defendant-Appellant )

STATEMENT OF THE FACTS

Appellant was found guilty at the conclusion of a jury trial of one count of Aggravated Murder, R.C. §2903.01, on March 12, 1975. Appellant was sentenced to a term of life imprisonment. The Eighth District Court of Appeals, Cuyahoga County, affirmed Appellant's conviction. State v. Andrews (March 18, 1976), Cuy. App. No. 34620, unreported.

Appellant filed a Petition for Post-Conviction Relief on April 8, 1992. Appellant filed a Petition for Writ of Mandamus on January 3, 1994. The State filed a Motion to Dismiss (Motion No. 48462) attached to which was a copy of the Findings of Fact and Conclusions of Law issued by the Court of Common Pleas denying Appellant's Petition for Post-Conviction Relief. The Eighth District Court of Appeals, Cuyahoga county, granted the State's Motion to Dismiss on or about February 25, 1994.

Presently before this court is Appellant's appeal from the trial court's dismissal without a hearing of his Petition for Post-Conviction Relief.

## LAW AND ARGUMENT

ASSIGNMENT OF ERROR NO. I:
THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE DOCTRINE OF RES JUDICATA BARRED THE ISSUE OF SPEEDY TRIAL EVEN THOUGH PETITIONER-DEFENDANT'S FIRST TRIAL COUNSEL MOTIONED FOR DISMISSAL OF CHARGES, AND THIS CASE WAS NOLLE PROSEQUI PURSUANT TO R.C. 2945.75 ON DECEMBER 16, 1974, JOURNAL ENTRY, VOL. 245, PAGE 310.

motion 105738 2/17 St. v. Fitzhu 410A2d279

ASSIGNMENT OF ERROR NO. II:
THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT PETITIONER-DEFENDANT WAS PRECLUDED THE UTILIZATION OF POST-CONVICTION REMEDY TO RAISE THE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

The State addresses Assignments of Error One and Two together because the issues presented are similar.

Upon review of a trial court's denial without a hearing of a Petition for Post-Conviction Relief, the only issue before a reviewing court is whether the trial court abused its discretion in dismissing the petition without a hearing. Absent a showing of abuse of discretion, a reviewing court will not overrule the trial court's finding on a Post-Conviction Petition which is supported by competent and credible evidence. State v. Mitchell (1988), 53 Ohio App. 3d 117, 119. An abuse of discretion connotes more than an error of law or judgment; it implies conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St. 2d 151.

A petitioner must set forth substantive grounds for post-conviction relief in order to be entitled to an evidentiary hearing. In alleging ineffectiveness of trial counsel, a petitioner must demonstrate counsel's deficient performance and resulting prejudice to the defense. Strickland v. Washington (1984), 466 U.S. 668; State v. Tyler (1990), 50 Ohio St. 3d 24, cert. denied, 110 S. Ct. 3258. Counsel is strongly presumed to be competent. Strickland, at 690; Vaughn v. Maxwell (1965), 2 Ohio St. 2d 299. A petitioner must show, in order to demonstrate the deficiency of counsel's conduct, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed Defendant by the Sixth Amendment." Strickland, at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., at 691. A petitioner must show, in order to demonstrate resulting prejudice, that counsel's errors were so serious as to deprive him of a fair trial and that, but for counsel's errors, the result of the trial would have been different.

The Ohio Supreme Court has held that the doctrine of res judicata bars the assertion of any issue which was raised or which could have been raised at trial or on appeal. State v. Perry (1967), 10 Ohio St. 2d 175; State v. Cole (1982), 2 Ohio St. 3d 112. The claims presented in Appellant's Post-Conviction Petition were or should have been considered on direct appeal and,

therefore, are barred from consideration by the doctrine of res judicata.

Appellant was represented at trial by Attorney John P. Hyland and was represented by Attorney Peter H. Hull on appeal. Defense counsel did not raise the claim of ineffectiveness of trial counsel on direct appeal; and, therefore, State v. Cole, supra, precludes the utilization of post-conviction relief.

## CONCLUSION

Appellant was unable to demonstrate either counsel's deficient performance or resulting prejudice to the defense. He failed to set forth substantive grounds for post-conviction relief, and the trial court properly dismissed his petition without a hearing. R.C. §2953.21(C).

For the foregoing reasons, the State of Ohio respectfully requests that this Honorable Court affirm the trial court's denial of Appellant's Petition for Post-Conviction Relief.

Respectfully submitted,

STEPHANIE TUBBS JONES
Cuyahoga County Prosecutor

By: Diane Smilanick

DIANE SMILANICK #0019987
Assistant Prosecuting Attorney
Attorneys for Plaintiff-Appellee
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7730

SERVICE

A copy of the foregoing Brief of Appellee has been mailed this 14th day of March, 1994, to Isaiah Andrews #A141-345, Defendant-Appellant Pro Se, c/o P.O. Box 788, Mansfield, Ohio 44901.

By: Diane Smilanick
Assistant Prosecuting Attorney



20402-5



20402-1

Document Type (CR1)

CCRD File Scanning Project
File Separation Page
Record Key: 377285
**Criminal Case File**

Case # (CR017902):

Subdivision: (Post Conviction Briefs):

Post Conviction Briefs

Box # (948):

Key: 377285

**William D. Mason**
CUYAHOGA COUNTY PROSECUTOR

August 31, 2009

Cynthia Mausser, Chair
Adult Parole Authority
Ohio Parole Board
Columbus, Ohio 43229

Re: Isiah Andrews: A141345
Cuyahoga County Case No.: CR 17902

Dear Chairman Mausser:

In 1975, this inmate was found guilty of Aggravated Murder for causing the death of his wife, Regina Andrews. He was sentenced to life in prison. This inmate has served 34 years and 5 months of his sentence.

Isiah Andrews was arrested on September 19, 1974 and charged with the stabbing death of his wife, Regina Andrews. At trial Linda Cloud testified that she lived in the Colonial House Hotel next door to where Isiah Andrews and his wife lived. Cloud stated that on September 17, 1974 at 9:00 p.m. she saw Regina Andrews and an unidentified man enter the Andrews room and that sometime later she saw Isiah Andrews appear and also enter the room. Cloud testified that between 1:00 and 1:30 on the morning of September 18, she saw Isiah Andrews and his wife leave their room and get into car, at which time she overheard the defendant tell his wife, "Bitch, you know I am going to kill you, don't you."

Betty Worth testified that she was working as a maid at the Colonial House Hotel on September 18, 1974 when, at about 11:00 a.m., she saw Isiah Andrews talking to his wife in the doorway of their room. Worth stated that she saw Isiah Andrews slam the door and go inside the room, whereupon a record player in the room was turned very loud. Worth stated that approximately ten minutes later the record player was turned off and Isiah Andrews came out of his room, went to his car and opened its trunk; that Isiah Andrews then returned to his room and within a few minutes left carrying a large heavy object over his shoulder which he placed in the trunk of his car. Worth testified that she walked past Isiah Andrews' room and saw that the bed stripped of all linen.

OFFICE OF THE PROSECUTING ATTORNEY
The Justice Center • Courts Tower • 1200 Ontario Street • Cleveland, Ohio 44113
(216) 443-7800 • Fax (216) 443-7601 • e-Mail: MasonCCPO@Aol.com
www.prosecutormason.com

# William D. Mason

CUYAHOGA COUNTY PROSECUTOR

Regina Andrews body was found in Forest Hills Park in the afternoon of September 18, 1974 wrapped in bedroom linen. The linen was identified by Betty Worth as being the same type used in the Colonial House Hotel.

Due to the extremely heinous nature of this crime, the passage of time has not changed the position of this office with regard to the parole consideration of inmate Andrews. This Office can only reiterate the strongest opposition to inmate Andrews' release. His past conduct and history demonstrate a fundamental inability to integrate into a productive role in the community, and indeed, indicates a clear and immediate danger to society if he is released. As such, this inmate should be required to serve his entire sentence as issued by the Cuyahoga Court of Common Pleas.

**It is the position of this office that the defendant should remain incarcerated. Please consider this letter as our office's formal request to receive and be notified of every hearing, central board hearing, and full board hearing, as we want the opportunity to appear and object to this inmate's release. All notifications of dates and time to appear should be made to Assistant Prosecutor Diane Smilanik at the enclosed address.**

Very truly yours,

Katherine E. Mullin
Assistant Prosecuting Attorney
(216) 443-7800

OFFICE OF THE PROSECUTING ATTORNEY
The Justice Center • Courts Tower •· 1200 Ontario Street • Cleveland, Ohio 44113
(216) 443-7800 • Fax (216) 443-7601 • e-Mail: MasonCCPO@Aol.com
www.prosecutormason.com

# Ohio Department of Rehabilitation and Correction

770 West Broad Street
Columbus, Ohio 43222

Ted Strickland, Governor | www.drc.ohio.gov | Terry J. Collins, Director

DATE: AUGUST 10, 2009

TO: CUYAHOGA County Prosecutor
1200 ONTARIO STREET
CLEVELAND , Ohio 441130000

Katy

FROM: Ohio Adult Parole Authority

SUBJECT: NOTICE OF HEARINGS: ANDREWS, ISIAH
Institution Number: A141345
Type of Hearing: CONTINUED/
Time Served: 34 YEARS & 5 MONTHS

The above offender was convicted in your county on the charges listed below and is presently confined at RICHLAND CORRECTIONAL INSTITUTION

The offender is scheduled for hearing before the Parole Board on or after SEPTEMBER, 2009

| COURT CASE NO. | ADMISSION DATE | SENTENCE | SENTENCING JUDGE |
|---|---|---|---|
| CR17902 | 03/13/1975 | 888.88- LIFE | SWEENEY |
| | Crime: AGG MURDER - CC/W | | |

Please direct relevant information & recommendations to CYNTHIA MAUSSER, PAROLE BOARD CHAIR, ADULT PAROLE AUTHORITY , 770 West Broad Street, Columbus, OH 43222

Sent By: SANDRA SHAFER

Records Office Administrative Assistant
RICHLAND CORRECTIONAL INSTITUTION

Document Type (CR1)

CCPO File Scanning Project
File Separation Page
Record Key: 377815
**Criminal Case File**

000621

Case # (CR017902):

Subdivision: (Post Conviction Briefs):

## Post Conviction Briefs

Box # (948):

Key: 377815

Letter typed 8-31-09



# Ohio Department of Rehabilitation and Correction

RECEIVED
SEP 14 2009
APPEALS

770 West Broad Street
Columbus, Ohio 43222

Ted Strickland, Governor www.drc.ohio.gov Terry J. Collins, Director

DATE: AUGUST 10, 2009

TO: CUYAHOGA County Prosecutor
1200 ONTARIO STREET
CLEVELAND , Ohio 441130000

FROM: Ohio Adult Parole Authority

SUBJECT: NOTICE OF HEARINGS: ANDREWS, ISIAH
Institution Number: A141345
Type of Hearing: CONTINUED/
Time Served: 34 YEARS & 6 MONTHS

The above offender was convicted in your county on the charges listed below and is presently confined at RICHLAND CORRECTIONAL INSTITUTION

The offender is scheduled for hearing before the Parole Board on or after SEPTEMBER, 2009

| COURT CASE NO. | ADMISSION DATE | SENTENCE | SENTENCING JUDGE |
|---|---|---|---|
| CR17902 | 03/13/1975 | 888.88- LIFE | SWEENEY |
| | Crime: AGG MURDER - CC/W | | |

Please direct relevant information & recommendations to CYNTHIA MAUSSER, PAROLE BOARD CHAIR, ADULT PAROLE AUTHORITY , 770 West Broad Street, Columbus, OH 43222

Sent By: SANDRA SHAFER

Records Office Administrative Assistant
RICHLAND CORRECTIONAL INSTITUTION

PENGAD 800-631-6989
EXHIBIT
18

skip to main content

Print

# CASE INFORMATION

## CR-75-017902-ZA STATE OF OHIO vs. ISIAH ANDREWS

### Docket Information

| Proceeding Date | Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|---|
| 11/08/2021 | 11/08/2021 | N/A | BN | $4,500.00 BOND REFUNDED TO ALEC BEREZIN | |
| 11/08/2021 | 11/08/2021 | P1 | CS | REFUND BALANCE OF CASE COST DEPOSIT TO ALEC BEREZIN | |
| 11/02/2021 | 11/02/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $10.64: SS 1378563 | |
| 11/02/2021 | 11/02/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $10.64: SS 1378564 | |
| 10/29/2021 | 10/29/2021 | N/A | CS | RC 2743.70 REPARATION FEE | |
| 10/27/2021 | 10/29/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL TERRY GILBERT/ MARCUS SIDOTI/ BRIAN HOWE PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT/ANTHONY MIRANDA PRESENT. COURT REPORTER GREGORY L KOTERBA PRESENT. JURY TRIAL CONTINUES. JURY DELIBERATES. 10/27/2021 CPMXS 10/27/2021 16:22:07 | |
| 10/27/2021 | 10/27/2021 | N/A | CS | COURT REPORTER FEE | |
| 10/27/2021 | 10/29/2021 | N/A | JE | DEFENDANT IN COURT WITH COUNSEL TERRY GILBERT, MARCUS SIDOTI, BRIAN HOWE. PROSECUTING ATTORNEY(S) KRISTIN M. KARKUTT & ANTHONY MIRANDA PRESENT. COURT REPORTER GREGORY L KOTERBA PRESENT. JURY RETURNS A VERDICT OF NOT GUILTY OF AGGRAVATED MURDER 2903.01 - AS CHARGED IN THE INDICTMENT. THIS ENTRY TAKEN BY JUDGE TIMOTHY J MCGINTY. 10/27/2021 CPEDB 10/28/2021 10:56:04 | |
| 10/26/2021 | 11/16/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL MARCUS SIDOTI, TERRY GILBERT, BRIAN HOWE PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT PRESENT. COURT REPORTER GREG KOTERBA PRESENT. STATE'S MOTION FOR GAG ORDER IS GRANTED. THIS ENTRY TAKEN BY JUDGE TIMOTHY J MCGINTY. 10/26/2021 CPJM2 10/26/2021 17:31:11 | |
| 10/25/2021 | 11/16/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL MARCUS SIDOTTI, BRIAN HOWE, TERRY GILBERT PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT PRESENT. COURT REPORTER GREG KOTERBA PRESENT. JURY TRIAL CONTINUES. THIS ENTRY TAKEN BY JUDGE TIMOTHY J MCGINTY. 10/25/2021 CPJM2 10/26/2021 17:31:52 | |
| 10/25/2021 | 10/25/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. | |
| 10/25/2021 | 10/25/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY KRISTIN M. KARKUTT 0078951 STATE'S MOTION FOR WITNESS TESTIMONY VIA LIVE VIDEO CONFERENCING 11/08/2021 - UNKNOWN | |
| 10/24/2021 | 10/24/2021 | P1 | BR | BRIEF STATE'S SUPPLEMENTAL BRIEF REGARDING SIMILAR ACT EVIDENCE AGAINST WILLIE WATTS | |
| 10/22/2021 | 11/16/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL JOHN P HYLAND/ TERRY GILBERT/ MARCUS SIDOTI PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT/ANTHONY MIRANDA PRESENT. COURT REPORTER GREGORY L KOTERBA PRESENT. JURY TRIAL CONTINUES. THIS ENTRY TAKEN BY JUDGE TIMOTHY J MCGINTY. 10/22/2021 CPJM2 10/26/2021 17:34:07 | |
| 10/22/2021 | 11/16/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL MARCUS SIDOTI, TERRY GILBERT, BRIAN HOWE PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT PRESENT. COURT REPORTER GREG KOTERBA PRESENT. STATE'S MOTION TO DISMISS JURY PANEL IS DENIED. THIS ENTRY TAKEN BY JUDGE TIMOTHY J MCGINTY. 10/22/2021 CPJM2 10/26/2021 17:31:23 | |
| 10/21/2021 | 10/21/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY KRISTIN M. | |

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 760 of 768. PageID #: 2495

| | | | | |
|---|---|---|---|---|
| | | | | KARKUTT 0078951 DISMISS JURY PANEL 11/08/2021 - UNKNOWN |
| 10/21/2021 | 10/21/2021 | N/A | JE | DEFENSE ORAL MOTION TO HAVE GPS ANKLE BRACLET REMOVED IS GRANTED WITHOUT OBJECTION OF THE STATE OF OHIO. 10/21/2021 CPMXS 10/21/2021 12:59:15 |
| 10/21/2021 | 10/21/2021 | P1 | MO | MOTION TO DISMISS, FILED. MOTION TO DISMISS JURY PANEL 11/08/2021 - UNKNOWN |
| 10/20/2021 | 10/20/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY ANTHONY THOMAS MIRANDA 0090759 STATE'S MOTION FOR GAG ORDER 11/08/2021 - UNKNOWN |
| 10/20/2021 | 10/20/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY ANNA FARAGLIA 67420 DISMISS JURY PANEL 11/08/2021 - UNKNOWN |
| 10/20/2021 | 10/20/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY BOND CONDITIONS |
| 10/20/2021 | 10/22/2021 | N/A | JE | DEFENDANT IN COURT. COUNSEL JOHN P HYLAND/MARCUS SIDOTI/TERRANCE GILBERT PRESENT. PROSECUTOR(S) KRISTIN M. KARKUTT/ANTHONY MIRANDA PRESENT. COURT REPORTER GREGORY L KOTERBA PRESENT. JURY TRIAL CONTINUES. 10/20/2021 CPMXS 10/21/2021 15:40:07 |
| 10/20/2021 | 10/22/2021 | N/A | JE | JURY IMPANELLED AND SWORN, 12 JURORS AND 4 ALTERNATE(S). CASE PROCEEDS TO TRIAL. JURY TRIAL CONTINUES. 10/20/2021 CPMXS 10/22/2021 11:29:37 |
| 10/20/2021 | 10/20/2021 | N/A | CS | COURT REPORTER FEE |
| 10/20/2021 | 10/20/2021 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 MOTION FOR MODIFICATION OF BOND CONDITIONS 11/08/2021 - UNKNOWN |
| 10/19/2021 | 10/22/2021 | N/A | JE | TRIAL CALLED AND FIRST DAY OF TRIAL COMMENCED. JURY TRIAL CONTINUES. VOIR DIRE BEGINS. 10/19/2021 CPJM2 10/20/2021 16:15:27 |
| 10/19/2021 | 10/19/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 10/19/2021 | 10/20/2021 | N/A | JE | STATE'S MOTION REMOVE EXHIBITS FROM DIRECT APPEAL OF TRANSCRIPT IS GRANTED. 10/19/2021 CPJM2 10/19/2021 12:45:53 |
| 10/18/2021 | 10/18/2021 | N/A | SB | STATE SUBPOENA ISSUED (1378565) |
| 10/18/2021 | 10/18/2021 | N/A | SB | STATE SUBPOENA ISSUED (1378564) |
| 10/18/2021 | 10/18/2021 | N/A | SB | STATE SUBPOENA ISSUED (1378563) |
| 10/07/2021 | 10/08/2021 | N/A | JE | TRIAL REMAINS SET FOR 10/18/2021 AT 09:00 AM. HEARING PREVIOUSLY SET FOR 10/07/2021 AT 12:00PM IS RESET FOR 10/15/2021 AT 09:00AM. AT THE REQUEST OF COURT. REASON FOR CONTINUANCE: COURT IN TRIAL IN CR# 637377 LATOYA CROWDER 10/07/2021 CPMXS 10/08/2021 14:59:53 |
| 09/27/2021 | 09/28/2021 | N/A | JE | TRIAL REMAINS SET FOR 10/18/2021 AT 09:00 AM. HEARING PREVIOUSLY SET IS RESET FOR 10/07/2021 AT 12:00PM. AT THE REQUEST OF COURT. REASON FOR CONTINUANCE: COURT UNAVAILABLE. THIS ENTRY TAKEN BY JUDGE BRENDAN J SHEEHAN. 09/27/2021 CPJM2 09/27/2021 15:32:26 |
| 09/10/2021 | 09/10/2021 | N/A | JE | PRETRIAL PREVIOUSLY SET FOR 09/13/2021 AT 10:00AM IS RESET FOR 09/28/2021 AT 10:30AM. REASON FOR CONTINUANCE: MOTION HEARING RESET DUE TO COURT IN TRIAL ON CV# 935701, ALL PARTIES NOTIFIED OF NEW DATE AND TIME. 09/10/2021 CPMXS 09/10/2021 16:17:35 |
| 08/26/2021 | 08/26/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $57.64: SS 1367729 |
| 08/26/2021 | 08/26/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $57.64: SS 1367728 |
| 08/16/2021 | 08/16/2021 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1367726, IN THE AMOUNT OF $17.00. |
| 08/12/2021 | 08/16/2021 | N/A | JE | PRETRIAL SET FOR 09/13/2021 AT 10:00 AM. REASON FOR CONTINUANCE: MOTION HEARING TO BE SET FOR THIS DATE. TRIAL PREVIOUSLY SET FOR 08/16/2021 AT 09:00AM IS RESET FOR 10/18/2021 AT 09:00AM AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: DEFENSE COUNSEL ENGAGED IN TRIAL IN JUDGE JOHN RUSSO'S COURTROOM. THIS ENTRY TAKEN BY JUDGE BRENDAN J SHEEHAN. 08/12/2021 CPJM2 08/16/2021 15:44:42 |
| 08/09/2021 | 08/09/2021 | N/A | SB | STATE SUBPOENA ISSUED (1367729) |

| | | | | |
|---|---|---|---|---|
| 08/09/2021 | 08/09/2021 | N/A | SB | STATE SUBPOENA ISSUED (1367728) |
| 08/09/2021 | 08/09/2021 | N/A | SB | STATE SUBPOENA ISSUED (1367727) |
| 08/09/2021 | 08/09/2021 | N/A | SB | STATE SUBPOENA ISSUED (1367726) |
| 08/06/2021 | 08/06/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $57.64STATE V. PETRO,4313 |
| 08/06/2021 | 08/06/2021 | P1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $57.64: SS 1364312 |
| 08/02/2021 | 08/02/2021 | D1 | BR | BRIEF IN OPPOSITION, FILED DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO PROHIBIT REFERENCE TO ALTERNATIVE SUSPECT'S OTHER ACTS |
| 07/30/2021 | 08/05/2021 | N/A | JE | DEFENDANT REQUEST TO TRAVEL TO SOLON CENTER FOR THE ARTS DINNER ON 07/30/2021 IS GRANTED. THE ADDRESS IS 6315 SOM CENTER ROAD SOLON, OHIO 44139. TIME PERIOD FOR THE EVENING WOULD BE 4:00 P.M. TO 10:00 P.M. 07/30/2021 CPMXS 07/30/2021 12:44:19 |
| 07/28/2021 | 07/29/2021 | N/A | JE | TRIAL PREVIOUSLY SCHEDULED IS RESCHEDULED FOR 08/16/2021 AT 09:00AM 07/28/2021 CPEMG 07/28/2021 12:06:34 |
| 07/26/2021 | 07/29/2021 | N/A | JE | HEARING PREVIOUSLY SCHEDULED IS RESCHEDULED FOR 08/11/2021 AT 10:00AM. HEARING ON MOTIONS FILED BY PARTIES 07/26/2021 CPEMG 07/28/2021 12:05:42 |
| 07/26/2021 | 07/26/2021 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1364314, IN THE AMOUNT OF $36.50. |
| 07/23/2021 | 07/23/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY LOUIS E. GRUBE 0091337 DEFENDANT'S NOTICE OF ADDITIONAL AUTHORITY |
| 07/23/2021 | 07/23/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY ANTHONY THOMAS MIRANDA 0090759 STATE'S MOTION TO PROHIBIT REFERENCE TO ALTERNATE SUSPECT'S OTHER ACTS 11/08/2021 - UNKNOWN |
| 07/23/2021 | 07/23/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY ANTHONY THOMAS MIRANDA 0090759 PROHIBIT REFERENCE TO DEFENDANT AS A VETERAN OF THE UNITED STATES ARMED FORCES 11/08/2021 - UNKNOWN |
| 07/23/2021 | 07/23/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY ANTHONY THOMAS MIRANDA 0090759 WITNESS TESTIMONY VIA LIVE VIDEO CONFERENCING 11/08/2021 - UNKNOWN |
| 07/23/2021 | 07/23/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY KRISTIN M. KARKUTT 0078951 MOTION TO PROHIBIT REFERENCE TO DEFEND AWS A VETERAN OF THE UNITED STATES ARMED FORCES 11/08/2021 - UNKNOWN |
| 07/23/2021 | 07/23/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 07/23/2021 | 07/23/2021 | N/A | SB | STATE SUBPOENA ISSUED (1364922) |
| 07/23/2021 | 07/23/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 07/23/2021 | 07/23/2021 | D1 | MO | MOTION FOR CONTINUANCE, FILED. MOTION TO CONTINUE 11/08/2021 - UNKNOWN |
| 07/23/2021 | 07/23/2021 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1360903, IN THE AMOUNT OF $7.50. |
| 07/20/2021 | 07/29/2021 | N/A | JE | HEARING TO BE HELD ON 7/26/2021 REGARDING MOTIONS FILED BY PARTIES. 07/20/2021 CPJM2 07/20/2021 16:53:45 |
| 07/20/2021 | 07/29/2021 | N/A | JE | TRIAL DATE OF 7/28/2021 WAS SELECTED BY ADMINISTRATIVE JUDGE. TRIAL SET FOR 07/28/2021 AT 09:00 AM. 07/20/2021 CPJM2 07/20/2021 16:47:47 |
| 07/20/2021 | 07/20/2021 | N/A | SB | STATE SUBPOENA ISSUED (1364314) |
| 07/20/2021 | 07/20/2021 | N/A | SB | STATE SUBPOENA ISSUED (1364313) |
| 07/20/2021 | 07/20/2021 | N/A | SB | STATE SUBPOENA ISSUED (1364312) |
| 07/12/2021 | 07/12/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 07/07/2021 | 07/07/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 NOTICE OF FILING OF EXHIBIT |
| 07/07/2021 | 07/07/2021 | P1 | GP | SUPPLEMENTAL DISCOVERY RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 07/06/2021 | 07/06/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO |

| | | | | |
|---|---|---|---|---|
| | | | | DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE |
| 07/02/2021 | 07/02/2021 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1360902, IN THE AMOUNT OF $7.50. |
| 07/01/2021 | 07/06/2021 | N/A | JE | DEFENDANT'S MOTION TO SHOW CAUSE IS DENIED. 07/01/2021 CPJM2 07/01/2021 17:25:28 |
| 07/01/2021 | 07/06/2021 | N/A | JE | DEFENDANT'S MOTION IN LIMINE RE: INTRODUCTION OF PRIOR TRIAL TESTIMONY IS HELD IN ABEYANCE. 07/01/2021 CPJM2 07/01/2021 17:24:25 |
| 06/30/2021 | 06/30/2021 | D1 | MO | MOTION TO DISMISS, FILED. DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE 11/08/2021 - UNKNOWN |
| 06/30/2021 | 06/30/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 FILING OF EXHIBIT |
| 06/29/2021 | 06/29/2021 | N/A | SB | DEFENSE SUBPOENA ISSUED (1361505) |
| 06/28/2021 | 06/28/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S FIRST MOTION IN LIMINE RE: INTRODUCTION OF PRIOR TRIAL TESTIMONY |
| 06/25/2021 | 06/25/2021 | P1 | GP | STATE'S RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 06/25/2021 | 06/25/2021 | P1 | GP | STATE'S DEMAND FOR DISCOVERY, FILED. |
| 06/25/2021 | 06/25/2021 | P1 | GP | STATE'S DEMAND FOR DISCOVERY, FILED. |
| 06/24/2021 | 06/24/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SHOW CAUSE |
| 06/23/2021 | 06/23/2021 | N/A | SB | STATE SUBPOENA ISSUED (1360903) |
| 06/23/2021 | 06/23/2021 | N/A | SB | STATE SUBPOENA ISSUED (1360902) |
| 06/22/2021 | 06/23/2021 | N/A | JE | FINAL PRETRIAL SET FOR 07/08/2021 AT 10:00 AM . REASON FOR CONTINUANCE: TO REVIEW FOR TRIAL. TRIAL REMAINS SET FOR 07/26/2021 AT 09:00 AM. 06/22/2021 CPJM2 06/22/2021 16:24:11 |
| 06/22/2021 | 06/22/2021 | D1 | GP | WITNESS LIST, FILED |
| 06/21/2021 | 06/21/2021 | D1 | MO | MOTION IN LIMINE, FILED. DEFENDANT'S FIRST MOTION IN LIMINE RE: INTRODUCTION OF PRIOR TRIAL TESTIMONY 11/08/2021 - UNKNOWN |
| 06/21/2021 | 06/21/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 FILING OF EXHIBITS |
| 06/21/2021 | 06/21/2021 | D1 | NT | NOTICE OF MANUAL FILING OF TRIAL TRANSCRIPTS, FILED |
| 06/17/2021 | 06/17/2021 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 MOTION TO SHOW CAUSE 11/08/2021 - UNKNOWN |
| 06/10/2021 | 06/11/2021 | N/A | JE | DEFENDANT'S MOTION REQUEST FOR LATENT PRINT ANALYSIS, ACCESS TO L.P. 29187, SAMPLE PRINT OF WILLIE WATTS AND CPD FILE NUMBER #141061 IS DENIED. 06/10/2021 CPMXS 06/10/2021 13:23:30 |
| 06/03/2021 | 06/03/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SPECIFIC DISCOVERY |
| 05/27/2021 | 05/27/2021 | N/A | JE | DEFENDANT'S MOTION TO PROPERLY PRESERVE AND CATALOG ALL PHYSICAL EVIDENCE FOR EXAMINATION FILED 05/19/2021 IS GRANTED. 05/27/2021 CPMXS 05/27/2021 12:19:23 |
| 05/26/2021 | 05/26/2021 | P1 | BR | REPLY BRIEF FILED STATE'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO PROPERLY PRESERVE AND CATALOG ALL PHYSICAL EVIDENCE FOR EXAMINATION |
| 05/26/2021 | 05/26/2021 | D1 | MO | MOTION FOR DISCOVERY, FILED MOTION FOR SPECIFIC DISCOVERY. ORAL HEARING REQUESTED 11/08/2021 - UNKNOWN |
| 05/20/2021 | 05/20/2021 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1355933, IN THE AMOUNT OF $11.50. |
| 05/19/2021 | 05/19/2021 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 MOTION TO PRESERVE 11/08/2021 - UNKNOWN |
| 05/18/2021 | 05/18/2021 | N/A | SB | DEFENSE SUBPOENA ISSUED (1355933) |
| 05/10/2021 | 05/10/2021 | N/A | SB | DEFENSE SUBPOENA ISSUED (1354634) |
| 04/16/2021 | 04/19/2021 | N/A | JE | DEFENDANT'S MOTION TO MODIFY BOND CONDITIONS FILED 04/14/2021 IS DENIED. 04/16/2021 CPMXS 04/16/2021 12:43:58 |
| 04/16/2021 | 04/16/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED BRIEF IN OPPOSITION TO DEFENDANTS UNOPPOSED MOTION TO MODIFY BOND CONDITIONS |

| | | | | |
|---|---|---|---|---|
| 04/14/2021 | 04/14/2021 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 UNOPPOSED MOTION TO MODIFY BOND CONDITIONS 11/08/2021 - UNKNOWN |
| 02/25/2021 | 02/26/2021 | N/A | JE | MOTION HEARING DATE IS SET FOR 07/08/2021 PRIOR TO TRIAL. PRETRIAL HELD 02/25/2021. PRETRIAL PREVIOUSLY SET IS RESET FOR 07/08/2021 AT 09:00AM. REASON FOR CONTINUANCE: TO COMPLETE DISCOVERY. AND IN AN EFFORT TO REDUCE COMMUNITY SPREAD OF COVID-19 PRETRIAL IS RESET. DEFENSE COUNSEL AND PROSECUTOR TO CONTACT EACH OTHER VIA PHONE FOR PRETRIAL. ALL PARTIES TO CONTINUE TO EXCHANGE DISCOVERY AND PLEA NEGOTIATIONS. PARTIES TO CONTACT THE COURT WITH NEW DATES. TRIAL SET FOR 07/26/2021 AT 09:00 AM. THIS ENTRY TAKEN BY JUDGE KELLY ANN GALLAGHER. 02/25/2021 CPMXS 02/26/2021 11:21:59 |
| 02/24/2021 | 02/24/2021 | P1 | NT | STATE'S NOTICE OF RECEIPT OF DEMAND FOR DISCOVERY FILED |
| 02/22/2021 | 02/23/2021 | N/A | JE | AS THE ABOVE CAPTIONED CASE WAS RECENTLY TRANSFERRED TO JUDGE NANCY MCDONNELL, THE NEXT PRETRIAL DATE SHALL BE HELD VIA TELEPHONE. IN AN EFFORT TO REDUCE THE COMMUNITY SPREAD OF COIVD-19 ALL PARTIES ARE TO PARTICIPATE THROUGH TELEPHONE AND ARE TO CONTINUE TO EXCHANGE DISCOVERY AND DISCUSS PLEA NEGOTIATIONS. THIS ENTRY TAKEN BY JUDGE KELLY ANN GALLAGHER. 02/22/2021 CPJM2 02/23/2021 13:21:53 |
| 02/11/2021 | 02/11/2021 | N/A | JE | CAPTIONED CASE BEING ORIGINALLY ASSIGNED TO JUDGE ANDREW J. SANTOLI (380) AND FOR GOOD CAUSE SHOWN, THIS MATTER IS HEREBY REASSIGNED AND TRANSFERRED TO THE DOCKET OF JUDGE NANCY R MCDONNELL (324) FOR FURTHER PROCEEDINGS ACCORDING TO LAW. |
| 02/08/2021 | 02/08/2021 | N/A | JE | PRETRIAL HELD 02/08/2021. 02/08/2021 CPTL2 02/08/2021 14:57:23 |
| 02/05/2021 | 02/05/2021 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO ATTORNEY KRISTIN M. KARKUTT 0078951 MOTION TO PROHIBIT REFERENCE TO PRIOR RESULTS OF PRIOR TRIAL OR POST CONVICTION MOTIONS 11/08/2021 - UNKNOWN |
| 02/05/2021 | 02/05/2021 | P1 | NT | NOTICE FILED BY P1 STATE OF OHIO ATTORNEY KRISTIN M. KARKUTT 0078951 NOTICE OF INTENT TO INTRODUCE PRIOR TESTIMONY OF DECEASED WITNESSES PURSUANT TO EVID R.804 (B)(1) |
| 01/15/2021 | 01/19/2021 | N/A | JE | DEFENSE COUNSEL MALLORIE THOMAS'S MOTION TO WITHDRAW AS COUNSEL IS GRANTED. 01/15/2021 CPTL2 01/15/2021 11:18:41 |
| 01/14/2021 | 01/14/2021 | D1 | MO | MOTION TO WITHDRAW AS COUNSEL, FILED. MOTION TO WITHDRAW AS COUNSEL 11/08/2021 - UNKNOWN |
| 01/14/2021 | 01/14/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY TERRY H GILBERT 0021948 NOTICE OF APPEARANCE |
| 01/13/2021 | 01/14/2021 | N/A | JE | THE COURT CONCLUDES THAT A CONTINUANCE OF THIS PRETRIAL IS REQUIRED IN THE ADMINISTRATION OF JUSTICE. THE COURT FINDS THAT AS OF MARCH 16, 2020, THERE IS A SERIOUS DANGER POSED BY THE COVID-19 VIRUS AND THAT THE DANGER TO PUBLIC HEALTH IS GOOD CAUSE TO CONTINUE THIS CRIMINAL PRETRIAL AND JURY TRIAL. THIS ORDER CONSIDERS BOTH THE DEFENDANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL. BASED UPON THE COURT'S FINDNG THAT THE SERIOUS DANGER POSED BY THE COVID-19 VIRUS IS GOOD CAUSE TO CONTINUE THIS CRIMINAL CASE. THE TIME BETWEEN THE DATE OF THIS ORDER AND THE DATE OF THE NEXT SCHEDULED TRIAL DATE ARE EXCLUDED WHEN CALCULATING TIME FOR SPEEDY TRIAL. SEE R.C. 2945.72. THE COURT FURTHER ORDERS THAT UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, THIS COURT AFFIRMS THE STATE'S OBLIGATION TO PRODUCE ALL EXCULPATORY EVIDENCE TO THE DEFENDANT PURSUANT TO BRADY V. MARYLAND, 373 U.S. 83 (1963) AND ITS PROGENY, AND ORDERS IT TO DO SO. FAILING TO DO SO IN A TIMELY MANNER MAY RESULT IN CONSEQUENCES, INCLUDING, BUT NOT LIMITED TO, EXCLUSION OF |

| | | | | |
|---|---|---|---|---|
| | | | | EVIDENCE, ADVERSE JURY INSTRUCTIONS, DISMISSAL OF CHARGES, CONTEMPT PROCEEDINGS, OR SANCTIONS BY THE COURT. THE STATE IS TO CONTACT DEFENSE COUNSEL FOR THE TELECONFERENCE FINAL PRETRIAL AND CONTACT THE COURT AT 216-443-8686 FOR FURTHER SCHEDULING. DEFENDANT DOES NOT HAVE TO APPEAR AT SCHEDULED PRETRIAL. PRETRIAL HELD 01/13/2021. FINAL PRETRIAL SET FOR 02/08/2021 AT 09:00 AM . TRIAL PREVIOUSLY SET FOR 01/25/2021 AT 09:00AM IS RESET FOR 03/01/2021 AT 01:00PM PER COVID-19 COURT SCHEDULE, 03/01/21 IS FIRST AVAILABLE DATE FOR A JURY TRIAL. DEFENDANT'S MOTION TO MODIFY BOND CONDITIONS IS DENIED. DEFENDANT'S MOTION TO COMPEL DISCOVERY IS DENIED AS MOOT. 01/13/2021 CPTL2 01/14/2021 09:42:33 |
| 01/12/2021 | 01/12/2021 | D1 | MO | MOTION TO COMPEL DISCOVERY, FILED. 11/08/2021 - UNKNOWN |
| 01/06/2021 | 01/08/2021 | N/A | JE | PRETRIAL SET FOR 01/13/2021 AT 09:00 AM. VIA TELECONFERENCE. THE STATE IS TO CONTACT DEFENSE COUNSEL FOR THE TELECONFERENCE FINAL PRETRIAL AND CONTACT THE COURT AT 216-443-8686 FOR FURTHER SCHEDULING. 01/06/2021 CPTL2 01/06/2021 17:43:04 |
| 01/06/2021 | 01/06/2021 | P1 | BR | BRIEF IN OPPOSITION, FILED DEFENDANTS MOTION TO MODIFY BOND |
| 01/05/2021 | 01/05/2021 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 MOTION TO MODIFY BOND CONDITIONS 11/08/2021 - UNKNOWN |
| 01/05/2021 | 01/05/2021 | D1 | NT | NOTICE FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 NOTICE OF INVOCATION OF SPEEDY TRIAL RIGHTS |
| 12/02/2020 | 12/03/2020 | N/A | JE | DEFENDANT PERMITTED TO ATTEND MEDICAL APPOINTMENTS. MOTION DENIED. 12/02/2020 CPBWL 12/02/2020 10:34:59 |
| 12/01/2020 | 12/01/2020 | P1 | BR | BRIEF IN OPPOSITION, FILED BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO MODIFY BOND |
| 11/25/2020 | 11/25/2020 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS ATTORNEY MARCUS S SIDOTI 0077476 MOTION TO MODIFY CONDITIONS OF RELEASE 11/08/2021 - UNKNOWN |
| 10/01/2020 | 10/01/2020 | N/A | JE | THE COURT CONCLUDES THAT A CONTINUANCE OF THIS PRETRIAL IS REQUIRED IN THE ADMINISTRATION OF JUSTICE. THE COURT FINDS THAT AS OF MARCH 16, 2020, THERE IS A SERIOUS DANGER POSED BY THE COVID-19 VIRUS AND THAT THE DANGER TO PUBLIC HEALTH IS GOOD CAUSE TO CONTINUE THIS CRIMINAL JURY TRIAL. THIS ORDER CONSIDERS BOTH THE DEFENDANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL. BASED UPON THE COURT'S FINDING THAT THE SERIOUS DANGER POSED BY THE VIRUS IS GOOD CAUSE TO CONTINUE THIS CRIMINAL CASE, THE TIME BETWEEN THE DATE OF THIS ORDER AND THE DATE OF THE NEXT SCHEDULED TRIAL DATE ARE EXCLUDED WHEN CALCULATING TIME FOR TRIAL. SEE R.C. 2945.72. PRETRIAL HELD 10/01/2020. PRETRIAL CONTINUED TO 11/12/2020 AT 09:00 AM AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: ONGOING DISCUSSIONS BETWEEN DEFENSE COUNSEL AND THE STATE. TRIAL SET FOR 01/25/2021 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. 10/01/2020 CPBWL 10/01/2020 12:08:49 |
| 08/19/2020 | 08/19/2020 | N/A | JE | DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE ONLY ARE DENIED. 08/19/2020 CPBWL 08/19/2020 12:12:51 |
| 08/11/2020 | 08/11/2020 | D1 | MO | MOTION FILED BY D1 ISAIAH ANDREWS MOTION TO MODIFY CONDITIONS OF RELEASE 11/08/2021 - UNKNOWN |
| 07/27/2020 | 07/30/2020 | N/A | JE | DEFENDANT'S MOTION TO RECONSIDER BOND CONDITIONS IS DENIED. BOND CONDITIONS REMAIN THE SAME. 07/27/2020 CPBWL 07/27/2020 11:10:46 |
| 07/27/2020 | 07/27/2020 | P1 | BR | BRIEF IN OPPOSITION, FILED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY BOND |
| 07/23/2020 | 07/23/2020 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS MOTION TO MODIFY CONDITIONS OF RELEASE 11/08/2021 - UNKNOWN |
| 07/06/2020 | 07/06/2020 | D1 | NT | NOTICE FILED BY D1 ISIAH ANDREWS NOTICE OF APPEARANCE |
| 06/29/2020 | 06/29/2020 | N/A | JE | Sua sponte, this appeal is dismissed per entry 538840 dated June 29, 2020. |

| | | | | |
|---|---|---|---|---|
| | | | | Notice issued. |
| 06/25/2020 | 06/25/2020 | N/A | JE | THE BOND CONDITIONS ARE ONLY MODIFIED TO ALLOW ATTENDANCE AT RELIGIOUS SERVICES, MEDICAL APPOINTMENTS AND SHOPPING AS SCHEDULED WITH THE GPS MONITORING. 06/25/2020 CPBWL 06/25/2020 09:54:49 |
| 06/23/2020 | 06/23/2020 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO STATE'S OPPOSITION TO MODIFY BOND CONDITIONS 11/08/2021 - UNKNOWN |
| 06/23/2020 | 06/23/2020 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO STATE'S OPPOSITION TO MODIFY BOND CONDITIONS 11/08/2021 - UNKNOWN |
| 06/22/2020 | 06/22/2020 | D1 | MO | MOTION FOR BOND REDUCTION, FILED. MOTION TO MODIFY BOND 11/08/2021 - UNKNOWN |
| 05/27/2020 | 05/27/2020 | D1 | SR | APPEAL, PRCPE, & DCKTNG STMNT(41817578) SENT BY REGULAR MAIL SERVICE. TO: BRIAN HOWE UNIV OF CINCINNATI COLLEGE OF LAW PO BOX 210040 CINCINNATI, OH 45221-0000 |
| 05/27/2020 | 05/27/2020 | P1 | NT | NOTICE OF APPEAL WITH 9(B) PRAECIPE AND DOCKETING STATEMENT (REGULAR CALENDAR) FILED BY PLAINTIFF-APPELLANT // COURT OF APPEALS CASE NUMBER CA-20-109749 \\ |
| 05/27/2020 | 05/27/2020 | P1 | NT | NOTICE OF APPEAL FILED BY PLAINTIFF, STATE OF OHIO THROUGH CUYAHOGA COUNTY PROSECUTOR'S OFFICE. > ANTHONY T. MIRANDA (0090759) |
| 05/18/2020 | 05/18/2020 | N/A | CS | COURT REPORTER FEE |
| 05/05/2020 | 05/05/2020 | N/A | JE | DEFENDANT ORDERED RELEASED FROM RICHLAND CORRECTIONAL INSTITUTION AND IS TO REPORT TO THE CUYAHOGA COUNTY ADULT PROBATION DEPARTMENT GPS UNIT AT 1300 ONTARIO STREET, 2ND FLOOR, CLEVELAND OHIO 44113 TO BE FITTED WITH A GPS MONITOR NO LATER THAN 5/7/20 AT 4:30 PM. THIS IS PER THE CONDITIONS OF THE DEFENDANTS BOND. ALL OTHER TERMS AND CONDITIONS REMAIN. FIRST PRETRIAL PREVIOUSLY SCHEDULED FOR 06/04/2020 AT 10:00AM IS RESCHEDULED . 05/05/2020 CPBWL 05/05/2020 13:33:28 |
| 05/04/2020 | 05/04/2020 | D1 | SF | PAYMENT RECEIVED OF ISIAH ANDREWS |
| 05/04/2020 | 05/04/2020 | D1 | DR | REPARATION FEE RC 2743.70 ; 2937.22 ; 2949.091 $85.00 |
| 05/04/2020 | 05/04/2020 | N/A | JE | DEFENDANT IN COURT. COUNSEL BRIAN HOWE PRESENT. PROSECUTOR(S) ANTHONY MIRANDA PRESENT. COURT REPORTER PRESENT. PRETRIAL SET FOR 06/04/2020 AT 10:00 AM. AT THE REQUEST OF DEFENDANT. BOND HEARING HELD 05/04/2020. BOND SET AT $50,000.00. BOND TYPE: CASH/SUR/PROP/10% BOND TERMS: GPS HOME DETENTION MONITORING . GPS MONITORING TO BE ADMINISTERED BY THE COUNTY WHERE HE RESIDES. DEFENDANT PERMITTED TO BE RELEASED DIRECTLY FROM RICHLAND CORRECTIONAL INSTITUTION. 05/04/2020 CPBWL 05/04/2020 15:13:25 |
| 05/04/2020 | 05/04/2020 | NP1 | SR | ORDERED JE NOTICE(41704140) SENT BY CLERK ISSUED VIA HAND DELIVERY. TO: ANTHONY MIRANDA CLEVELAND, OH 44113-0000 |
| 05/04/2020 | 05/04/2020 | N/A | CS | TRANSFER FROM BOND |
| 05/04/2020 | 05/04/2020 | D1 | SF | PAYMENT RECEIVED OF ISIAH ANDREWS |
| 05/04/2020 | 05/04/2020 | N/A | BN | $50000 10% BOND POSTED ON 05/04/2020 BY DEFENDANT. BOND NO. 743855 RECEIPT NO. 208000000539 |
| 05/01/2020 | 05/01/2020 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS EMERGENCY MOTION FOR BOND HEARING 11/08/2021 - UNKNOWN |
| 04/30/2020 | 05/01/2020 | N/A | JE | RULING ON DEFENDANT'S MOTION FOR NEW TRIAL. O.S.J. 04/30/2020 CPMM1 04/30/2020 13:42:50 |
| 04/13/2020 | 04/13/2020 | P1 | NT | NOTICE FILED BY P1 STATE OF OHIO STATE'S NOTICE PURSUANT TO COURT'S APRIL 8, 2020 ORDER |
| 04/10/2020 | 04/10/2020 | D1 | BR | BRIEF NOTICE PURSUANT TO COURTS APRIL 8 2020 ENTRY |
| 04/08/2020 | 04/09/2020 | N/A | JE | PHONE CONFERENCE HELD. DISCOVERY MOTION MOOT. DEFENSE COUNSEL SUBMIT BRIEF TO THE COURT BY 4/10/20. STATE TO RESPOND BY 4/13/20. 04/08/2020 CPBWL 04/08/2020 15:30:49 |
| 04/07/2020 | 04/07/2020 | N/A | BR | BRIEF IN OPPOSITION, FILED REPLY OF NON-PARTY CITY OF CLEVELAND TO DEFENDANT'S EMERGENCY MOTION FOR HEARING |
| 04/07/2020 | 04/07/2020 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS EMERGENCY MOTION FOR HEARING 11/08/2021 - UNKNOWN |

| | | | | |
|---|---|---|---|---|
| 04/02/2020 | 04/02/2020 | N/A | BR | REPLY BRIEF FILED REPLY OF NON-PARTY CITY OF CLEVELAND IN SUPPORT OF MOTION FOR EXTENSION |
| 03/31/2020 | 03/31/2020 | D1 | BR | BRIEF IN OPPOSITION, FILED RESPONSE IN OPPOSITION TO CITY OF CLEVELAND'S REQUEST FOR EXTENSION OF TIME |
| 03/31/2020 | 03/31/2020 | N/A | MO | MOTION FILED BY MOTION FOR EXTENSION OF TIME FILED BY NON-PARTY CITY OF CLEVELAND 11/08/2021 - UNKNOWN |
| 03/27/2020 | 03/27/2020 | N/A | JE | AGREED ORDER, OSJ |
| 03/18/2020 | 03/18/2020 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS MOTION FOR DISCOVERY AND SCHEDULING ORDER 11/08/2021 - UNKNOWN |
| 02/19/2020 | 02/19/2020 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1330404, IN THE AMOUNT OF $11.50. |
| 02/13/2020 | 02/13/2020 | N/A | SB | DEFENSE SUBPOENA ISSUED (1330409) |
| 02/13/2020 | 02/13/2020 | N/A | SB | DEFENSE SUBPOENA ISSUED (1330404) |
| 02/13/2020 | 02/13/2020 | N/A | SB | DEFENSE SUBPOENA ISSUED (1330403) |
| 02/07/2020 | 02/07/2020 | D1 | BR | REPLY BRIEF FILED REPLY BRIEF IN SUPPORT OF DEFENDANTS MOTION FOR NEW TRIAL |
| 02/07/2020 | 02/07/2020 | P1 | NT | NOTICE FILED BY P1 STATE OF OHIO STATE'S NOTICE OF COMPLETE DNA RESULTS |
| 02/06/2020 | 02/06/2020 | N/A | SB | DEFENSE SUBPOENA ISSUED (1329352) |
| 01/31/2020 | 01/31/2020 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL |
| 01/24/2020 | 01/24/2020 | N/A | JE | DEFENDANT'S MOTION FOR LEAVE TO FILE FOR NEW TRIAL IS GRANTED. DEFENDANT'S MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT IS DEEMED FILED. STATE WILL FILE ITS BRIEF IN OPPOSITION WILL BE FILED WITHIN 7 DAYS OF THIS ORDER. HEARING SET FOR 02/27/2020 AT 01:30 PM. AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: HEARING ON MOTIONS WILL BE HELD 2/27/20 AT 1:30 PM. 01/24/2020 CPBWL 01/24/2020 11:07:03 |
| 11/21/2019 | 11/21/2019 | N/A | MO | MOTION FILED BY MOTION FOR LEAVE TO FILE REPLY BRIEFING 11/08/2021 - UNKNOWN |
| 11/08/2019 | 11/08/2019 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL |
| 11/08/2019 | 11/08/2019 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1308806, IN THE AMOUNT OF $16.50. |
| 10/28/2019 | 10/28/2019 | D1 | SH | LORAIN COUNTY SHERIFF DEPT SERVICE FEE $21.80: SS 1308837 |
| 10/09/2019 | 10/09/2019 | N/A | JE | OHIO STATE'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL IS GRANTED. 10/09/2019 CPBWL 10/09/2019 09:29:23 |
| 10/08/2019 | 10/08/2019 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO STATE'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL 11/08/2021 - UNKNOWN |
| 10/08/2019 | 10/08/2019 | N/A | SB | STATE SUBPOENA ISSUED (1308837) |
| 10/08/2019 | 10/08/2019 | N/A | SB | STATE SUBPOENA ISSUED (1308806) |
| 10/04/2019 | 10/04/2019 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS MOTION FOR NEW TRIAL INSTANTER 11/08/2021 - UNKNOWN |
| 10/04/2019 | 10/04/2019 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL 11/08/2021 - UNKNOWN |
| 10/04/2019 | 10/04/2019 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL 11/08/2021 - UNKNOWN |
| 07/29/2019 | 07/29/2019 | N/A | JE | HIV TEST ORDER. OSJ. |
| 07/25/2019 | 07/25/2019 | P1 | MO | MOTION FILED BY P1 STATE OF OHIO JOINT MOTION FOR AN ORDER OF DNA TESTING BY BCI 11/08/2021 - UNKNOWN |
| 07/01/2019 | 07/01/2019 | N/A | JE | BASED UPON THE DETERMINATION OF THE EIGHTH DISTRICT COURT OF APPEALS, DEFENDANT, ISIAH ANDREWS, APPLICATION FOR DNA TESTING IS GRANTED PURSUANT TO ORC 2953.71-2953.81. THE CUYAHOGA COUNTY MEDICAL EXAMINER'S OFFICE IS ORDERED TO CONDUCT DNA TESTING ON ALL THE BIOLOGICAL MATERIAL STILL IN ITS POSSESSION, INCLUDING FINGERNAIL SCRAPINGS AND THE THREE SETS OF ORAL, VAGINAL, AND RECTAL SLIDES. 07/01/2019 CPBWL 07/01/2019 15:09:55 |

| | | | | |
|---|---|---|---|---|
| 06/25/2019 | 06/25/2019 | N/A | JE | CAPTIONED CASE BEING REMANDED TO THE COURT OF COMMON PLEAS BY ORDER OF THE COURT OF APPEALS; THIS MATTER IS HEREBY RETURNED TO THE DOCKET OF JUDGE ROBERT C MCCLELLAND (360). ADMINISTRATIVE JUDGE JOHN J. RUSSO THIS ENTRY TAKEN BY JUDGE JOHN J RUSSO. 06/25/2019 CPJR1 06/25/2019 15:45:02 |
| 05/09/2019 | 05/09/2019 | N/A | JE | AS A RESULT OF THE ENTRY OF JUDGMENT BY THE 8TH DISTRICT COURT OF APPEALS DATED 05/09/2019, NO SUBSTANTIVE ACTION IS TO BE TAKEN IN THIS MATTER UNTIL THE TIME FOR FILING ANY REVIEWING MOTION TO THE 8TH DISTRICT AND/OR FOR FILING AN APPEAL TO THE OHIO SUPREME COURT HAS EXPIRED. APP. R. 25 & 26; LOC. APP. R. 26; S. CT. PRAC. R 7.01(A)(5) & (6). IF APPROPRIATE AND SUBSEQUENT TO THE APPELLATE PERIOD EXPIRING, THE CASE MAY BE RETURNED AS NECESSARY FOR FURTHER PROCEEDINGS TO THE DOCKET OF THE ORIGINATING COURT BY THE ADMINISTRATIVE JUDGE. UNLESS AS OTHERWISE AGREED UPON IN WRITING BY THE PARTIES, THE EARLIEST POSSIBLE DATE OF RE-INSTATEMENT IS 06/24/2019. THIS ENTRY TAKEN BY JUDGE JOHN J RUSSO. 05/09/2019 CPLAW 05/09/2019 14:43:44 |
| 05/09/2019 | 05/09/2019 | N/A | JE | Reversed and remanded.>Larry A. Jones, Sr., J., Mary Eileen Kilbane, A.J., and Raymond C. Headen, J., concur. Notice issued. |
| 07/26/2018 | 07/26/2018 | D1 | CL | RECORD ON APPEAL, PAGINATION SHEET AND CRIMINAL FILE SENT TO THE COURT OF APPEALS. |
| 06/22/2018 | 06/22/2018 | D1 | NT | NOTICE OF APPEAL FILED BY DEFENDANT'S COUNSEL. COURT OF APPEALS CASE NUMBER CA 18 107357. |
| 06/22/2018 | 06/22/2018 | D1 | NT | NOTICE OF APPEAL FILED NOTICE OF APPEAL |
| 05/23/2018 | 05/23/2018 | N/A | JE | ORDER ON DEFENDANT'S APPLICATION FOR DNA TESTING. O.S.J. 05/23/2018 CPMM1 05/23/2018 13:58:44 |
| 05/18/2018 | 05/18/2018 | P1 | BR | BRIEF IN OPPOSITION, FILED STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S APPLICATION FOR DNA TESTING |
| 05/18/2018 | 05/18/2018 | P1 | BR | BRIEF PROSECUTING ATTORNEY'S REPORT PURSUANT TO R.C. 2953.75 |
| 04/04/2018 | 04/04/2018 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS APPLICATION FOR DNA TESTING WITH MEMORANDUM (2 OF 2) 11/08/2021 - UNKNOWN |
| 04/04/2018 | 04/04/2018 | D1 | MO | MOTION FILED BY D1 ISIAH ANDREWS APPLICATION FOR DNA TESTING WITH MEMORANDUM (1 OF 2) 11/08/2021 - UNKNOWN |
| 04/04/2018 | 04/04/2018 | D1 | NT | NOTICE FILED BY D1 ISIAH ANDREWS NOTICE OF APPEARANCE OF COUNSEL |
| 10/22/1999 | | D | CV | SENT TO ADULT PAROLE AUTHORITY IN RESPONSE TO NOTICE OF HEARING ..JLS 10/22/99 13:09 |
| 01/14/1997 | | D | CV | MOTION TO VACATE SENTENCE IS DENIED. HEARD BY JUDGE EILEEN GALLAGHER. ..HEB 01/15/97 09:14 |
| 01/06/1997 | | D | CV | MOTION TO DISMISS PETITION TO VACATE OR SET ASIDE SENTENCE, GRANTED. ..DXR 01/06/97 15:27 |
| 06/24/1996 | | D | CV | CIVIL APPEAL IS AFFIRMED BY THE COURT OF APPEALS. ..RXS 07/02/96 14:28 |
| 10/20/1995 | | D | CV | RECORD ON APPEAL, PAGINATION SHEET AND CRIMINAL FILE SENT TO COURT OF APPEALS. ..RXS 10/20/95 09:51 |
| 10/20/1995 | | D | CV | COURT OF APPEALS NUMBER ASSIGNED IS 69702. ..RXS 10/20/95 09:51 |
| 10/19/1995 | | D | CV | NOTICE OF APPEAL, PRAECIPE, DOCKETING STATEMENT (REGULAR), MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, AFFIDAVIT OF INDIGENCY, JOURNAL ENTRY, FILED AND SENT TO THE COURT OF APPEALS WITH A COPY OF THE DOCKET SHEET. ..RXS 10/20/95 09:50 |
| 05/31/1995 | | D | CV | THE APPEAL IS DISMISSED BY THE SUPREME COURT. ..RXS 06/26/95 14:00 |
| 11/10/1994 | | D | CV | LETTER SENT TO ADULT PAROLE AUTHORITY IN RESPONSE TO NOTICE OF HEARING IN NOVEMBER OF 1994 - DME ..NM1 11/10/94 11:38 |
| 10/26/1989 | | D | CV | LETTER SENT IN RESPONSE TO NOTICE OF HEARING TO ADULT PAROLE AUTHORITY (SK) ..JC5710/26/89 09:58 |

Case: 1:22-cv-00250-JG Doc #: 98-1 Filed: 02/28/23 768 of 768. PageID #: 2503

| | | | |
|---|---|---|---|
| 04/03/1980 | D | | FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED W/THE CLERK THIS DATE. |
| 07/17/1978 | D | CV | DEFTS MTN DENIED. PROS. MTN GRANTED. |
| 07/17/1978 | D | CV | DEFT'S MOTION FOR POST CONVICTION RELIEF IS DENIED. PROSECUTOR'S MOTION FOR SUMMARY JUDGMENT IS GRANTED. |
| 07/13/1978 | D | CV | MEMORANDUM CONTRA TO STATE'S MOTION FOR SUMMARY JUDGEMENT W/AFFIDAVIT OF THEADORE HAMZA W/AFFIDAVIT OF J.C.WILLIAMS |
| 03/12/1975 | D | | CHARGE DISPOSITION PROCESS INSTITUTION SENTENCED: CHILLICOTHE CORR. CHARGE: 0340 AGGRAVATED MURDER DISPOSITION: BY JURY GUILTY ORIGINAL INDICTMENT: YES |
| 03/12/1975 | D | | HEARING AND CASE DISPOSITION PROCESS NARRATIVE: JURY VERD/G CCI FOR LIFE |
| 03/03/1975 | D | | HEARING AND CASE DISPOSITION PROCESS NARRATIVE: REFERRED TO PSY CLINIC |
| 01/24/1975 | D | | ARRAIGNMENT PROCESS ATTY: 000095 JOHN P HYLAND |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
Website Questions or Comments.
Copyright © 2022 PROWARE. All Rights Reserved. 1.1.266