# ORDERS AND PROCEDURES FOR ALL OFFICERS AND MEMBERS OF THE DETECTIVE DIVISION

## FORWARD

This manual contains the procedures to be followed by all persons connected with the Detective Division.

At times certain procedures will be amended or eliminated to conform with any new Court decisions or Chief's order.

The Detective Division order and Procedure Book shall implement this manual.

LAURENCE CHOURA
Chief of Detectives
July 1, 1970

EXHIBIT
4

SUPP.PROD000218

# TABLE OF CONTENTS

## Chapter 1 — General Procedures

| | |
|---|---|
| 1.01 | Introduction |
| 1.10 | Arresting Officers |
| 1.20 | Assignment by OiC-routine |
| 1.21 | Assignment by OinC-special |
| 1.30 | Big cases-administrative detail |
| 1.31 | Big cases-many leads involved |
| 1.32 | Big cases-series of similar crimes |
| 1.33 | Big cases-Summary report-daily |
| 1.34 | Big cases-use of mimeograph |
| 1.40 | Chain of command |
| 1.50 | Daily Duty report |
| 1.51 | Duty requirements |
| 1.60 | Federal Bureau of Investigation |
| 1.61 | Fugitives |
| 1.62 | Post Office Inspectors |
| 1.71 | Restrictions on detectives |
| 1.80 | Secret Service |
| 1.81 | Sergeants-resonsibilities |
| 1.91 | Special requirements |
| 1.99 | Welfare Fund |

## Chapter 2 — Arrests

| | |
|---|---|
| 2.00 | Arrests-general rules |
| 2.10 | Booking prisoners |
| 2.11 | Checking out prisoners |
| 2.12 | Disposition of prisoners |
| 2.13 | Fingerprinting and photographing prisoners |
| 2.20 | Interrogation-preparation for |
| 2.21 | Interrogation-psychology of |
| 2.30 | Prisoner's property held in evidence |
| 2.40 | Search of area, home and car |

# TABLE OF CONTENTS

## Chapter 2 — Arrests (Continued)

| | |
|---|---|
| 2.41 | Searching prisoners |
| 2.50 | Statements-Defendant's |
| 2.51 | Statement-use of |
| 2.60 | Visitors for prisoners |
| 2.70 | Who must be booked |

## Chapter 3 — Investigations

| | |
|---|---|
| 3.00 | Purpose of-general |
| 3.01 | Amount required |
| 3.02 | Complainant |
| 3.10 | File checks-departmental |
| 3.11 | File checks-public |
| 3.20 | Firearms |
| 3.30 | Modus operandi |
| 3.40 | Other Agencies interested |
| 3.41 | Other Agencies-list |
| 3.50 | Physical evidence |
| 3.60 | Property-description of |
| 3.62 | Property with criminal use |
| 3.70 | Safe involved |
| 3.80 | Sources of information |
| 3.86 | Suspects-identification of |
| 3.87 | Suspects-leads |
| 3.90 | Value of property |
| 3.92 | Vehicles |
| 3.93 | Vehicles-license errors |
| 3.94 | Vehicles seized |
| 3.95 | Witnesses-canvas for |
| 3.96 | Witnesses-interviewing |
| 3.97 | Witness-to view police photographs |

# TABLE OF CONTENTS

**Chapter 4 — Records and Reports**

| | |
|---|---|
| 4.00 | Purpose of |
| 4.10 | Use in investigation |
| 4.20 | Files-custody and handling |
| 4.21 | File system-general |
| 4.22 | File system-DATE |
| 4.23 | File system-NAME |
| 4.24 | File system-SUBJECTS |
| 4.30 | Indices-Detective Division |

**Reports**

| | |
|---|---|
| 4.40 | Check Out Arrest Card — Form 127 |
| 4.50 | Communications |
| 4.60 | Copies required |
| 4.70 | Firearm seized |
| 4.71 | Procedure for Quick Release of Firearm Seized |
| 4.80 | Format required |
| 4.91 | Lineups |
| 4.92 | Property tags, Form 60, 68 and 96 |
| 4.93 | Racket card Form 32-A |
| 4.94 | Safe involved |
| 4.95 | Series of Crimes |
| 4.96 | Vehicles-locates, pick-ups and towed. |

## APPENDIX

Check lists for Investigations and Reports

## GENERAL PROCEDURE

**1.03** Men assigned to the Division who fail to clear their assignments by arrests and clean-ups at the same rate as other detectives with similar assignments will be presumed to lack either ability or energy, and a request will be made to have them transferred to another Unit of the Department.

**1.04** Detectives must comply with Departmental Rule 93 which states: *"Officers and members shall accept every complaint made to them, and shall take necessary action, regardless of the District or Unit in which the complaint has occurred."* Although it is not specifically stated in the Book of Rules, it is apparent that if a crime has been committed the *"necessary action"* means a professional effort to apprehend and prosecute the perpetrator of the crime.

**1.10 ARRESTING OFFICERS** — An arresting officer is responsible for all further investigation of a crime in which an arrest is made, except in those cases where the arrest was made at the specific request of another investigating officer, in which case the requesting officer retains the investigative responsibility. The detectives and uniformed officers whose names appear on the arrest record are the arresting officers, and as such will be held responsible for the investigation and the processing of the prisoner. Uniform officers shall be credited for their part in an arrest both in the investigative reports and on the arrest record. An arrest is the turning point of any criminal investigation. Before the arrest most of the investigation was directed toward identifying and

2

## GENERAL PROCEDURE

(CANCEL SUSPECT WANTED) and shall include the following information:

   a. Crime or offense wanted for, location, date of crime, victim's name.
   b. Suspect's full name, aliases, age, address, police photo number.
   c. Reason for cancelling the pickup and arrest request.
   d. Name of officer requesting cancellation and his assignment.

Upon receipt of the report, the Record-Room Clerk shall immediately furnish a copy to the Warrant Unit Officer who shall remove the suspect card from the Want File.

A copy of this report shall be attached to the original crime file.

**1.30 BIG CASE – ADMINISTRATIVE DETAIL –** As soon as he realizes he is faced with a *"big case"*, the Officer-in-Charge shall detail a competent superior officer to take charge of the detectives engaged in the investigation. All personnel engaged in the investigation shall be assigned to work such hours as will enable them to conduct their investigation without working overtime unnecessarily. Normally the detail will work the first platoon, but may work any period in which the investigation can be done efficiently. It will be the responsibility of the superior officer in charge to assemble a file on the investigation, which normally involves setting up a folder in which *all* reports, communications and other information, can be assembled and bound permanently. In some cases it will be necessary to

7

## GENERAL PROCEDURE

number the pages of the file, and establish an index for the witnesses, suspects, communications or leads mentioned in the reports, and this step should be taken before the volume of data accumulated gets out of hand. In addition the superior officer in charge shall make certain that supplemental reports such as Auto Towed, Firearms Seized, Communications Requested, and RC-1 Juvenile Complaint and/or the three (3) part form, County Juvenile Court Police Complaint Forms are made as soon as required. Teletypes on pickups and suspects wanted must be made and cancelled and check out arrest card Form 127 made on all suspects handled. The superior officer in charge shall also make certain that the file is available to the Officers-in-Charge on all three platoons.

**1.31 BIG CASE – MANY LEADS INVOLVED –** If the investigation involves a great many leads which have to be checked out (like the Beverly Potts case), each lead should be set forth on a separate mimeographed 8½ x 11 sheet in duplicate, the copy going into the file with a number for page and index, and the original to the investigator assigned to check the lead. The investigator will add the results of his investigation to the lead sheet, and the returned sheet will then be placed in the file instead of the copy previously filed. Carbon copies in the file will then indicate incomplete investigations. This system applies only to multiple leads in a single investigation in which the Detective Division has complete control of the investigation. Information about the status of

SUPP.PROD000229

## GENERAL PROCEDURE

the investigation will be forwarded through normal channels to the Record Room by a daily Summary Report. cf 1.33

**1.32 BIG CASE — SERIES OF SIMILAR CRIMES** — The most common big case involves checking out a suspect in connection with a series of similar crimes. The first task of the superior officer in charge is to have the Detective Division file copies of the possible crimes involved pulled on some scientific basis, perhaps by making use of the IBM modus operandi index. These files should then be reviewed for modus operandi, description of suspects and property involved, any vehicles or weapons involved, and the availability of witnesses and physical evidence, particularly latent prints. Further investigation should begin with those crimes in which the leads seem most promising as several immediate cleanups will serve to break down the suspect and will indicate that the investigation is headed in the right direction. When it appears that the investigation is headed in the right direction, more emphasis should be given to modus operandi than physical description of suspects, because witnesses make serious errors in giving physical description of suspects. A crime should not be disregarded because the description of the property does not fit that of the recovered property, because the description of property stolen is often wrong. If a crime meets the *general pattern* of those cleaned up, the report requires further checking.

**1.33 BIG CASE — SUMMARY REPORT** — In a big case where several detectives are involved in one of the various types of multiple investigations, the

SUPP.PROD000230

## GENERAL PROCEDURE

superior officer in charge shall cause a DAILY SUMMARY REPORT to be made showing the status of the investigation and indicating the leads or crimes checked out that day, and the results of the checks. This summary Report shall be made on the same form, with the same heading, as the report which originated the *"big case"*; but reports about suspects wanted in specific crimes shall be made on RC-1 Suspect Wanted reports referring to the specific crime involved. This report is made instead of other official reports in order that the Officers-in-Charge and the Commanding Officer may know what is going on. It is the primary task of the superior officer in charge of a big case to maintain an orderly efficient investigation and to keep the Officers-in-Charge and the Commanding Officer informed of the status of the investigation by both written and verbal reports. Disposition and cleanup reports, when prepared in any quantity, may be mimeographed but the results of the current investigation shall be indicated in the Daily Summary Report, which shall be a coherent intelligible report of all of the activity of all the personnel involved in the investigation for the previous 24 hours. (cf 1.23)

**1.34 BIG CASE — USE OF MIMEOGRAPH AND/OR XEROX** — The mimeograph machine will save a great deal of time when it is necessary to write the same thing many times. A stencil is cut on a typewriter by moving a lever on the typewriter which moves the ribbon out of the way of the type bars. The type must be cleaned to remove the ink and dirt before typing the stencil in order to obtain a clear

SUPP.PROD000231

## GENERAL PROCEDURE

**1.40 CHAIN OF COMMAND** — It is desirable that every assignment of every type be forwarded to personnel of the Detective Division through their immediate superiors in order that the district detective sergeants or other superior officers of the Detective Division may have personal knowledge of the assignments and relative work load being carried under his supervision. The various Officers in Charge shall resolve among themselves, in accordance with the orders and suggestions of their superiors, any problems arising about investigative responsibility, and all problems in the Detective Division shall be handled through the normal chain of command. All superior officers of the Detective Division must be aware of the activity of the personnel supervised by them, even though detectives usually work without direct personal supervision. All members of the Detective Division shall keep the Officer-in-Charge informed by both written and verbal reports, in order that he may make the most efficient use of the facilities of the Department.

**1.50 DAILY DUTY REPORT** — Detectives not regularly assigned to office duty must make a daily duty report on the authorized form for that purpose. The daily duty report shall show the detective's assignment, partner's name, and day's activity including crimes investigated, arrests and CLEAN UPS. Detectives must also indicate in their duty report the time and reason for their official visits to any place under suspicion of being a vice resort or a hangout for thieves and hoodlums. Since this duty report is the same as a Form 1 duty report, it must be

12

SUPP.PROD000233

## ARRESTS

admissable in court. The defendant's statement is the most important to the case, and in EVERY case it must be obtained or an attempt made, to obtain this statement before the defendant is booked even though a felony warrant has been obtained on other evidence prior to the arrest. Detective(s) shall mention in their followup report whether a defendant statement was obtained or refused. A confession, as a record of admission against interest, may be presented in evidence through the witnessing officers. If an arresting officer is not present when the defendant's statement is taken, he must go over the essentials of the confession with the defendant prior to the trial. When a prisoner confesses to a crime, his statement must be taken as soon as possible. A confession can not be introduced in court until a prima facie case has been established. Therefore, investigators must have personal knowledge of all the facts which tend to prove the elements of the crime involved before the confession is of legal value. This means that the arresting officers must be able to prove the forcible entry, the assault, the property stolen or any other fact which is important to the prima facie case, even though a confession statement has been obtained.

**2.51 STATEMENTS, USE OF** — In preparing a felony case, written statements are taken from complainants, victims, witnesses and defendants as a permanent-record of their testimony. Such statements enable the prosecutor and the arresting officers to present an orderly case in court. All persons who will, or may, testify in court must make a statement, including the arresting and investigating officers, including the laboratory technicians whose findings are pertinent to the case. The arresting officers are

SUPP.PROD000250

## ARRESTS

responsible for the appearance of all of the witnesses at the Criminal Statement Section, and must also be familiar with all of the facts recorded in the statements. Prior to a trial, especially when some time has elapsed since the crime, all witnesses should be encouraged to review their statements, for the purpose of refreshing their memory. While written statements can be used to impeach a witness, statements are not evidence themselves. The arresting officers should review the statements in the case before testifying in Police Court, Criminal Court or before the Grand Jury.

**2.60 PRISONERS, VISITORS FOR** — The Officer-in-Charge issues passes to visit prisoners in jail at Central Station or confined to the Prison Ward at Metropolitan General Hospital. Bondsmen and other persons with no legal right of visitation shall not be issued passes. Attorneys have a legal right to visit any prisoner but the Officer-in-Charge shall grant all passes at his discretion, guided by the current laws, department rules and orders which set forth the regulations on visiting prisoner(s). Care must be exercised by all members of the Detective Division not to disclose information about prisoners to persons making inquiries in person or by telephone which might jeopardize the success of any pending investigation. Information should not be given out over the telephone about any prisoner except to known law enforcement agencies and recognized attorneys.

**2.70 PRISONERS, WHO MUST BE BOOKED** — ALL persons arrested by detectives, alone or in company with uniformed or foreign police officers,

SUPP.PROD000251

## INVESTIGATIONS

**3.00 INVESTIGATION, PURPOSE OF** — Complaints are investigated to determine if a crime has been committed, and to identify the persons, things and activities involved. Verbal testimony and physical evidence is collected to prove the legal elements of the crime, and to indicate the general pattern of the crime and the activities of the criminal. The Subject of an investigative report is based upon the information obtained and recorded in the report, but the actual investigation should be based upon the type of pattern the crime appears to follow. An official Petit Larceny report may be the start of a good Burglary and Larceny case, or an Assault and Battery or Property Lost investigation may lead to a wanted robber. The primary purpose of investigations prior to an arrest is to identify and apprehend the criminal suspect, and felons are often captured through the proper development of leads in minor cases. A routine is followed to ensure that ALL the physical evidence and ALL the pertinent and revelant testimony of witnesses is obtained.

**3.01 AMOUNT REQUIRED** — An investigation may be complete at the time of the original investigation, or it may never be completed due to the lack of witnesses, evidence or failure of the victim to cooperate. When detectives assume the responsibility for an investigation by assignment or otherwise, they shall complete the investigation, check out investigative leads and make a progress and/or disposition report (Form 10 — Form 1 or RC-1), except in complaints where the crime is cleaned up before that or the complainant clearly indicates that he wishes no

SUPP.PROD000253

## INVESTIGATIONS

In reporting such an identification, investigators should include the suspect's name, alias, CPD identification number, sex, race, physical description, residence, hangouts, associates, employment, relatives and relation to the victim, in as much detail as can be obtained. Description is generally expressed in letters and numbers, ie MC 30-5-10-180. Investigators must remember witnesses are notoriously poor in this phase of physical description and should always have the witness describe the suspect by comparison with some person whose age, height and weight are known. Physical peculiarites and manner of dress aid in identification, and some witnesses may know the suspect intimately enough to know his birthdate, birthplace, and special nicknames. Witnesses should always be asked to identify *"mug shots"* of the suspect even if they are able to provide more recent photographs of the suspect. The description of a suspect broadcast immediately after the commission of a crime is seldom accurate or comprehensive enough for a report, and the formal written description should be complete enough to permit identification of a suspect from the files or upon the occasion of his arrest in another city.

**3.87 SUSPECT — LEADS —** Since the purpose of the prearrest investigation is to learn something about a suspect, every investigative lead about a suspect must be followed until nothing further can be done, or the lead has been proved valueless. If the lead appears to be of value and an arrest is not made in the ordinary routine of the Detective Division, a *"wanted"* teletype should be requested and photo-

SUPP.PROD000265

## INVESTIGATIONS

graphs of the suspect should be distributed to the six district headquarters and the police vehicles most likely to come in contact with the suspect. In serious felonies, where the County Prosecutor will approve, a Federal Fugitive Flight warrant should be obtained. In any case the investigating officers should continue to make searches and inquires for the suspect until he is apprehended, especially later when the suspect may think he has *"cooled off"*. Having committed one crime, a suspect has nothing to lose by committing another one, and the violence and property loss resulting from his subsequent criminal activity should be regarded as an insult to organized law enforcement. When a warrant is obtained against a suspect wanted and this subject has a S.I.U. or other photograph available, a *"Suspect Wanted"* should be placed in the Detective Division Weekly Bulletin. This wanted bulletin should contain the subject's photo, description, last known address, C.P.D. Number, if any, and the Complaint Number of the crime involved.  cf 1.23

**3.90 STOLEN PROPERTY EVALUATION GUIDELINES** — Refer to the latest G.P.O. or Section 15.71 of the *Detective Division Orders & Procedure Book.*

**3.91 AUTO PARTS AND ACCESSORIES** — Refer to the latest G.P.O. for evaluation guidelines or Section 15.71 of the *Detective Division Orders & Procedure Book.*

**3.92 VEHICLES** — When a vehicle is stolen in a crime the investigators must verify the information obtained from the victim by checking official records

SUPP.PROD000266

## INVESTIGATIONS

interview at the scene of the crime. When no witnesses are found it may be necessary to institute a *"hit skip"* inquiry at the scene at the same hour of the day, same day of the week, or same date in the month to locate persons in the area at certain fixed intervals of time. After the prisoner is charged, the Grand Jury is to be notified of any change of address for any witness in the case.

**3.96 WITNESSES, INTERVIEWING** — Interviewing witnesses requires a different technique from that use in interrogating prisoners. The investigator must approach the witness in such a manner as to avoid creating any additional resentment toward the investigator or the Department. The purpose of the interview is to obtain all the testimony available, but the investigator must be careful not to suggest what he wants or expects the witness to say. All testimony involves the expression of observation and judgment of a witness, and is subject to errors of observation, expression, judgment or a combination of the three elements. Investigators must check witnesses for accuracy by determining if they could actually observe what they claim to have seen. A witness's judgment and observation can be checked by asking the witness to describe a known person or thing, or point out a similar car or color in the vicinity. Since words like rape, robbery and burglary often have a much different meaning to a witness than they do to a police investigator, a witness should give his story several times in different words so that his meaning is clearly understood. When a witness is checked for reliability, including lack of criminal record and

49

## RECORDS

**4.00 PURPOSE OF** — Official reports not only reveal the activity of the investigators to the reviewing superior officers, but also serve as a permanent file record of the facts and evidence obtained by the Department since the receipt of the complaint. Each file must be complete and up-to-date and for that reason reports on current investigations must be made before reporting off duty. Each file shall include the original and follow-up reports, the communications, requests for and results of night searches, suspects wanted or cleared, arrests, property recovered, special assignments, CLEANUPS and the final disposition of the persons charged. Detectives will also cause the necessary corrections to be made in reports when suspects are cleared or there is any other change in the complaint requiring an amendment of a previous report concerning the complaint. When an investigation involves more than one complaint, the reporting officer must provide enough copies of his report to permit filing a copy of his report with each of the crimes involved, and his report with the multiple connections must bear the proper file notations to show precisely which additional crimes are involved. To maintain complete files the arresting officer shall make either a CLEANUP or PARTIAL CLEANUP report when an arrest is made on a warrant.

**4.01** Whenever a person is arrested for whom there is one or more suspect cards on file, all of the other officers whose names appear on the Suspect Wanted Cards are to be notified of the arrest and these officers shall make one of the following reports:

51

## RECORDS

a. RC-1 Cancel Suspect Wanted.
b. CLEANUP OR PARTIAL CLEANUP — When authorized under the rules set down by Detective Division Orders and Procedures.

One of the above reports shall be made on each crime in which the prisoner is suspected so that each file will be complete.

**4.02** When a prisoner has been charged with a crime, a final Form 10 report must be written showing the disposition of the case by the court having final jurisdiction in the matter indicating the offense of which found guilty, the sentence, and the institution to which committed or the probation or parole office having control of the prisoner, and if the case is nolled, discharged, no billed or fails of prosecution for any reason whatsoever that fact and the reasons shall be set forth in a Form 10 report. Copies of this disposition Form 10 report are prepared for the Record Room, Criminal Statement Unit, SIU and the Detective Division files. Only by following this procedure will it be possible to have the complete story of the complaint in the Detective Division files.

**4.10 USE IN INVESTIGATION** — Conducting investigations without making use of all the file information available is wasteful of time and energy, since good investigators must have complete command of all the facts and information available in order to conduct a professional investigation. There are more things in the files than the criminal records

SUPP.PROD000272

## RECORDS

and arrest records maintained in the Record Room and the Scientific Identification Unit. Considerable effort has been expended to index and file all kinds of information, and investigators must be aware of the existence of these indices and how to use them. Filing reports and preparing the indices is a clerical task, but obtaining and reporting the information which is the basis of the files and indices is the responsibility of the investigating officers. It is not the responsibility of any clerk to conduct an investigation, but it is the responsibility of the investigating officer to examine the basic record or report indicated by an index card to determine the connection between the file information and his present investigation. This means that he must examine the record in SIU, the actual arrest card in the Record Room, or the original report in the Detective Division.

**4.20 FILES, CUSTODY AND HANDLING** — None of the index cards are to be removed from the files by anyone. When a report is removed from the file room, the officer receiving it shall leave a receipt for the report in its place in the files on the form available for that purpose. ALL reports must be returned to the file room before the borrowing officer reports off duty, but if his need for the report still continues he shall request the file clerk to place the report in the PENDING BASKET where it will be available for his next tour of duty. The Officer in Charge shall not permit anyone to keep any report of an active investigation in any place where it will not be readily

## RECORDS

available to others who may be working on another phase of the same complaint. Reports shall not be locked in drawers or lockers, or kept on the person of a detective except temporarily to expedite the preparation of a follow-up report or to interrogate a suspect, but these regulations apply only to FILE copies and do not apply to the assignment copies which are prepared for the use of investigating officers. Departmental Rule 4, Sec. 20 places the responsibility for the custody and control of the files upon the Officer in Charge, and reports are to be removed from the files only with his approval and then only by clerks detailed to that duty. The Officer in Charge shall keep in his active basket any report requiring some immediate action, and shall keep reports in which communications have been sent in the communications basket until the answer is received.

**4.21 FILE SYSTEM, GENERAL —** Investigation is a continuous activity which involves all crimes and all criminals, but most investigations result in a report about a specific complaint. Since every report of a further investigation of any complaint must be attached to the proper file, the report must contain a file reference to the original complaint in accordance with the file system used in the Detective Division. Complaints originate from two general sources: (1) in the City of Cleveland and (2) outside the city, and therefore, are filed in (1) a Local File or in (2) a Foreign File. The Foreign File is maintained by State, City and Date of origin regardless of the complaint involved or the period of time involved in the

SUPP.PROD000274