UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ISAIAH ANDREWS, | CASE NO. 1:22-cv-00250 |
| Plaintiff, | OPINION & ORDER |
| | [Resolving Doc. 119] |
| v. | |
| CITY OF CLEVELAND, et al., | |
| Defendants. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Estate of Isaiah Andrews sues the City of Cleveland, six Detectives, and four Sergeants ("Defendants").[1] Plaintiff alleges that Defendants violated his constitutional rights by failing to disclose exculpatory evidence and alleges that this failure caused Andrews' 1975 murder conviction.[2] Now Plaintiff files a motion for leave to file an amended complaint to add Carmen Marino, a prosecutor who worked on the Andrews case but did not try the case, and Cuyahoga County as new defendants.[3]

For the following reasons, this Court **DENIES** Plaintiff's motion for leave to amend its complaint.

## I. Background

From the start, Plaintiff alleged that a *Brady* failure occurred when Defendant police officers did not provide *Brady* materials to the Cuyahoga County Prosecutor's Office.[4] The

---

[1] Plaintiff substituted five deceased defendants with their estates. Estate defendants include the estates of Detective William Hubbard, Detective Ernest Rowell, Sergeant Peter Comodeca, and Sergeant Kevin Walsh. The remaining individual defendants are Detective Leo Allen, Detective David Lee Hicks, Detective J. Francis McCaffrey, Debra Dugan (guardian ad litem for Sergeant Walter Dugan), and Sergeant John Kaminski.
[2] Doc. 1.
[3] Doc. 119.
[4] Doc. 1 (PageID 10, 14).

Case No. 1:22-cv-00250
GWIN, J.

allegedly exculpatory evidence includes (1) reports and investigation relating to another suspect, Willie Watts, (2) initial witness statements by Linda Cloud and Betty Worthy that arguably differed from their subsequent trial testimonies, and (3) latent handprint results.[5]

With Plaintiff's original complaint, Plaintiff attached an affidavit by another prosecutor on the case, the Honorable Ronald Adrine. With the affidavit attached to the complaint, Adrine says:

> During the pendency of the investigation and during preparation and the trial of the case against Mr. Andrews, it is my present recollection that I was never made aware of the fact that anyone other than the defendant was investigated, arrested, or seriously considered as a potential suspect in this homicide, that recollection specifically includes Willie Watts; nor do I recall ever being given the opportunity by law enforcement to review the information which I now reference as it relates to the investigation and arrest of Willie Watts.[6]

Plaintiff used this testimony as central evidence to support its argument that police officers, and their supervisors, withheld exculpatory evidence from prosecutors.

Assistant prosecutor Adrine came to Andrews's case only six days before the trial. He sat second-chair to lead prosecutor Charles Laurie.[7] Before Adrine came to the Andrews case, Carmen Marino served as co-counsel to Laurie for the state.[8] Amid large felony case responsibilities, Marino worked on Andrews's case for only a short period before trial.[9] He did not try the case. By the time of Andrews's trial, Marino had rotated to different courtrooms under a Prosecutor's Office regular rotation.[10]

In Marino's recent deposition, Marino identified his handwriting in a time-verified version of the prosecutor's file. Marino testified that the prosecutor's file that he worked with

---

[5] *Id.* (PageID 8, 11).
[6] Doc. 1-1 (PageID 50, 51).
[7] Doc. 98 (PageID 1695).
[8] Doc. 118 (PageID 8494, 8495).
[9] *Id.* (PageID 8529, 8530).
[10] Doc. 105 (PageID 3747, 3748).

Case No. 1:22-cv-00250
GWIN, J.

contained the claimed exculpatory evidence and testified that he was aware of the evidence. Marino made handwritten notations and marks on the exculpatory police reports. Specifically, assistant prosecutor Marino made notations and marks on the pages that discuss the allegedly exculpatory evidence.[11]

On one of these pages with Marino's notations, the police officers described a different suspect, Willie Watts, as having been arrested for the Regina Andrews's murder and shared their opinion that Willie Watts committed the murder.[12] Other pages within the prosecutors' file included Marino's handwritten marks next to a summary of Linda Cloud and Betty Worthy's initial statements—the same statements the Plaintiff says Defendant police officers never gave to the prosecutor's office.[13] One page contains handprint results and Marino's handwritten summary of them.[14]

With his deposition testimony, Marino confirmed that the prosecution knew about the prosecutor file evidence before Andrews' 1975 trial.[15] The prosecution file and former prosecutor Marino's testimony undercut Plaintiff's claim that Defendants failed to comply with their *Brady* obligations by not disclosing any of the above exculpatory evidence to prosecutors.

One exception may exist. As found in the police investigatory file—but not found in the prosecutor's file—Detectives Hubbard and Rowell reported discovering a bloody pillow case with "Howard Johnson's Motor Lodge, University Circle, Cleveland, Ohio" markings at the crime scene and near Regina Andrews's body.[16] They went to Howard Johnson's Motor

---

[11] Doc. 105 (PageID 3633, 3648-3650, 3656-3657).
[12] *Id.* (PageID 3648-3650); 105-1 (PageID 3800, 3801).
[13] Doc. 105 (PageID 3656, 3657); 105-1 (PageID 3805, 3806).
[14] Doc. 105 (PageID 3633); 105-1 (PageID 3801).
[15] Doc. 105 (PageID 3633, 3648-3650, 3656-3657).
[16] Doc. 109-1 (SUPP PROD000040).

Case No. 1:22-cv-00250
GWIN, J.

Lodge, spoke with a clerk and were told that alternative suspect Willie Watts had stayed at the motel and that linen bed materials were missing from Watts's room.

While the Hubbard and Rowell Howard Johnson report was in the police investigatory file, the Court has not found the same page in the prosecutor's file.

Marino also testified that he and lead prosecutor Laurie followed a consistent policy of reading all police reports to defense counsel.[17] He remembered reading the police reports to Andrews' defense counsel, Bill Summers, but could not specifically recall the discussion from the more than 40 years earlier conference.[18]

Despite a long-controlling case management order that controlled complaint amendments and controlled any effort to add parties,[19] on February 27, 2023, Plaintiff filed a motion to extend the case schedule.[20] Plaintiff justifies its effort to change the schedule with an argument that it only recently learned of Marino and Cuyahoga County's case roles. On March 2, 2023, this Court denied Plaintiff's motion to extend the case schedule[21] and did not change the March 6, 2023, dispositive motion deadline.[22]

On March 3, 2023, Plaintiff filed a motion for leave to file an amended complaint.[23] The proffered proposed amended complaint repeats most of the same claims but asks to sue Marino and Cuyahoga County.

Defendants oppose Plaintiff's effort to amend the complaint.[24] In their oppositions, Defendants say Plaintiff shows no good-cause justification to amend the earlier scheduling

---

[17] Doc. 105 (PageID 3710-3711, 3737-3745).
[18] *Id.*
[19] Doc. 86.
[20] Doc. 96.
[21] Doc. 114.
[22] Docket, Minutes of January 5, 2023 Status Conference.
[23] Doc. 119.
[24] Docs. 125, 130.

- 4 -

Case No. 1:22-cv-00250
GWIN, J.

order. More importantly, Defendants say the amendment would otherwise be futile as Marino has absolute immunity for judicial and quasi-judicial functions.

### I. Legal Standard

When a plaintiff seeks to amend the complaint after the case management order cut-off for amending pleadings, two rules have a role: Rule 16, which addresses case schedule modifications, and Rule 15, which addresses amended pleadings.[25] In considering a motion to late amend a complaint, a court must first find that the scheduling order can be modified under Rule 16(b)(4).[26] If so, the court will then consider whether the proposed amendment is proper under Rule 15(a)(2).[27]

Under Rule 16(b)(4), the court deadline for amending pleadings "may be modified . . . for good cause and with the judge's consent."[28] "In order to demonstrate good cause, the plaintiff must show that the [plaintiff could not meet the] original deadline despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment."[29]

If the court finds good cause under Rule 16, the court should then conduct Rule 15 analysis. Under Rule 15, the court should freely grant a plaintiff's motion for leave to amend their complaint "when justice so requires."[30] But the court may deny leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant"[31] or if "the amendment would be futile."[32] An amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss.[33]

---

[25] Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 15(a)(2).
[26] *Leary v. Daeschner*, 349 F.3d 888, 906, 909 (6th Cir. 2003).
[27] *Id.*
[28] Fed. R. Civ. P. 16(b)(4).
[29] *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary*, 349 F.3d at 906).
[30] Fed. R. Civ. P. 15(a)(2).
[31] *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).
[32] *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (citing *Foman*, 371 U.S. at 182 (1962)).
[33] *Rose v. Hartford Underwrites Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Case No. 1:22-cv-00250
GWIN, J.

## II. Discussion

### I. Modification of the case schedule under Rule 16(b)(4)

In this case, Court early established October 18, 2022, as the deadline for amending pleadings.[34] With the current motion, Plaintiff seeks leave to amend more than four months late.[35] This Court finds Plaintiff does not show good cause for Plaintiff's failure to file a motion to amend before the deadline.

Plaintiff tries to demonstrate good cause for not earlier filing a motion to amend by claiming it had no reason to know about Carmen Marino and Cuyahoga County's role until after Marino's February 25 and 28, 2023 deposition.[36]

This does not seem true. The March 3, 1975 trial includes a discussion of the letter that Andrews seemingly wrote to assistant prosecutor Marino about Andrews's case before the trial.[37] The letter discusses the case and is addressed to "Mr. Marino" and signed by "Isaiah Andrews."[38] The trial transcript shows that Marino's name was raised during the trial when the court discussed the letter.[39] This letter addressed to Marino was also in the prosecutor's file given to Plaintiff in May 2022.[40]

Early in this case and in May 2022, Defendants produced a time-verified copy of the prosecutor's file, which contained handwritten notations and marks.[41] That file showed Marino had been involved in the prosecution and had directed his assistant to set the case for a March 3, 1975 trial:

---

[34] Doc. 86.
[35] Doc. 119.
[36] *Id.* (PageID 8711).
[37] Doc. 98-1 (PageID 1855, 1856).
[38] Doc. 105-1 (PageID 3812, 3814).
[39] Doc. 98-1 (PageID 1855, 1856).
[40] Doc. 105 (PageID 3668, 3669).
[41] Doc. 97-1.

- 6 -

Case No. 1:22-cv-00250
GWIN, J.

> Pat, set the murder case for trial
> March 3, 1975 — if wits. show
> try the case, if not, take the
> plea to Nobley.
> This guy is guilty but I don't
> know if we can prove it.
> Carmen [42]

Marino's other notation in the file is signed "C. Marino":

> Return these files to
> P. Lazzaro — Lakeside.
> C. Marino [43]

To repeat, Plaintiff sued the Defendant police officers with the claim that the Defendant police officers had not given exculpatory evidence to the prosecutors. Plaintiff presented an affidavit from assistant prosecutor Adrine who testified that he did not recall seeing the exculpatory evidence when he was on the case forty years before.[44]

But in May 2022, Defendants provided an archived copy of the prosecutor's file that included the evidence that Plaintiff said had never been given to prosecutors.[45] As Marino's

---

[42] Doc. 98-1 (PageID 2099).
[43] *Id.*
[44] Doc. 1-1 (PageID 50, 51).
[45] Doc. 97-1.

- 7 -

Case No. 1:22-cv-00250
GWIN, J.

signatures, notations, and marks were in the file, Plaintiff should have inferred some Marino involvement. From at least May 2022, Plaintiffs knew, or should have known, that Marino had been involved with Andrews's case before the trial. If Plaintiff acted with due diligence, Plaintiff would have known and could have timely filed a motion to amend the complaint.

If Plaintiff could not get additional information on Marino or other potential parties in time, Plaintiff could still have told this Court about the possible need to amend the complaint and asked for a later amendment deadline. At the case management conference, this Court asked Plaintiff if it envisioned any other parties or claims.[46] Plaintiff did not, so this Court set the amendment deadline and told Plaintiff the longer it delayed any future requested amendment, the greater showing would be needed.[47]

Additionally, Defendants would suffer prejudice from Plaintiff's proposed amendment. Plaintiff filed its motion for leave to amend close to the dispositive motion deadline. Defendants have now filed their summary judgment motions. The trial is currently set for June 5, 2023.[48] The grant of Plaintiff's motion to amend and the addition of new defendants would delay the proceedings of this case significantly and, as a result, incur more Defendant costs.

Despite Plaintiff's likely knowledge that Marino was involved with post-indictment and pre-trial portions of Andrews's case, Plaintiff never earlier joined Marino as a defendant. As discussed below, Plaintiff likely did not sue Marino because Marino is almost certainly immune from suit for *Brady* violations.

---

[46] P. 21 of the Case Management Conference Transcript (October 18. 2022) (court copy).
[47] *Id.*
[48] Doc. 86.

- 8 -

Case No. 1:22-cv-00250
GWIN, J.

If Plaintiff is convinced that it has some argument that can pierce Marino's prosecutorial immunity or pierce Cuyahoga County's Eleventh Amendment immunity, Plaintiff can bring a separate action against Marino and Cuyahoga County.[49]

This Court rejects Plaintiff's argument that the denial of its motion to amend "would prejudicially deprive Plaintiff the opportunity to litigate Defendants' key defense" that Cuyahoga County had received the Andrews's police files.[50] Plaintiff has not shown why it needs to add Marino and Cuyahoga County to contest current Defendants' defense against *Brady* allegations. Plaintiff can still conduct discovery after Marino's deposition, even if it cannot add new defendants.

In the end, the standard for modifying the deadline is whether Defendants would suffer prejudice from the amendment, *not* whether Plaintiff would suffer prejudice from the denial of the amendment. For this reason alone, all of Plaintiff's arguments regarding why the denial would be prejudicial to Plaintiff fail.

## II. Whether the proposed amendment is proper under Rule 15(a)(2)

This Court does not find good cause for Plaintiff's failure to earlier file a motion to amend, so the amendment deadline cannot be modified under Rule 16(b)(4). The analysis ends here. There is no need to conduct Rule 15(a)(2) analysis.

However, even if the amendment deadline could be modified, Plaintiff's amendment would not be proper under Rule 15(a)(2) because the proposed claims against Marino and Cuyahoga County would be futile.

In ruling upon a motion to amend a complaint, courts typically limit their

---

[49] Plaintiff's proposed claims are subject to two-year statutes of limitations that have not yet passed. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10").

[50] Doc. 127 (PageID 9078, 9080).

Case No. 1:22-cv-00250
GWIN, J.

consideration to the allegations within the four corners of the proposed complaint. But as described in Wright and Miller, "several courts have held that if a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile."[51]

Consideration of evidence beyond the proposed complaint seems especially proper here. Plaintiff seeks to make *Brady* and *Monell* claims for events that occurred in 1975. Most of the witnesses with personal knowledge have died. After extensive discovery, the parties have seemingly obtained relevant discovery from all available witnesses. The parties have exchanged still-available documentary evidence.

With the proposed amended complaint against Marino, Plaintiff alleges that "Marino also worked with and directed Cleveland police detectives and officers to gather information and evidence in his investigation of the murder . . ."[52] But all produced evidence shows that Marino had no contact with the case until after indictment and arraignment, and after the case was assigned to the judge and courtroom that Marino was then covering. None of the deposed Defendant officers testified to any pre-indictment contact with Marino.

Marino's absolute immunity would bar Plaintiff's proposed claims against him. Prosecutors have absolute immunity when they act within the scope of their duties in initiating and pursuing a criminal prosecution.[53] Prosecutors do not receive absolute immunity when they perform investigative functions normally performed by a detective or police officer.[54]

---

[51] § 1487 Amendments With Leave of Court—When Leave to Amend May Be Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.). *See also Sound of Music Co. v. Minnesota Min. & Mfg. Co.,* 477 F.3d 910 (7th Cir. 2007).
[52] Doc. 119-1 (PageID 8726).
[53] *Imbler v. Pachtman,* 424 U.S. 409 (1976).
[54] *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).

Case No. 1:22-cv-00250
GWIN, J.

Disingenuously, Plaintiff claims it has made allegations sufficient to overcome absolute immunity because it has alleged that Marino "acted not as a prosecutor but as an investigator in causing the violations against Plaintiff."[55]

But when Plaintiff alleges Marino acted as an investigator, it ignores the following part of Marino's testimony that it had already obtained:

> Q. Okay. I want to keep our focus though on the 1974-1975 time period. Back at that time, when you received a criminal file to prosecute, what type of interaction did prosecutors typically have with the Cleveland Police Department, or specifically, homicide detectives?
>
> A. Nothing until we got the case [after the Grand Jury indictment].[56]

Marino testified that he did not have any contact with the case before or at the Grand Jury.[57] Marino said that after the indictment he would have briefly reviewed the case for the pretrial conference and would not have touched it again until soon before the trial. In his words, it was "two weeks in advance at most."[58] Marino also said that he gathered all the information from the police reports and that he did not "go out and do any investigation on [his] own."[59] In general, he rarely asked the police officers to conduct follow-up investigations, and did not recall doing that in the Andrews case.[60] While he contacted some witnesses and other people, it was done as part of trial preparation.[61]

At the time of Andrews's trial, the Cuyahoga County's Prosecutor Office operated on a rotation system with three prosecutors assigned to work on all matters before two common

---

[55] Doc. 127 (PageID 9082).
[56] Doc. 105 (PageID 3609, 3610).
[57] *Id.* (PageID 3605, 3606); Doc. 118 (PageID 8581).
[58] *Id.* (PageID 8529, 8530).
[59] *Id.* (PageID 8576).
[60] Doc. 105 (PageID 3720, 3721).
[61] Doc. 118. (PageID 8576, 8577).

Case No. 1:22-cv-00250
GWIN, J.

pleas judges.[62] Prosecutors rotated to new judges every three to six months.[63] And the reassignments happened at the end of the month.[64] Marino stopped working on the Andrews case about a week before the trial when he was reassigned to different courtrooms.[65]

No evidence supports Plaintiff's allegation that Marino was involved in the police investigation. Plaintiff has not specified when Marino's violations occurred. Nor did it share any details surrounding the violations. Plaintiff has only made conclusory statements. Without more, Plaintiff's proposed claims against Marino would not survive a 12(b)(6) motion to dismiss.

Sovereign immunity under the Eleventh Amendment would similarly stop Plaintiff's proposed claims against Cuyahoga County. Generally, counties can be held liable for a county prosecutor's constitutional violations pursuant to a policy, practice, or custom of the county.[66] But a county prosecutor's actions cannot be attributed to the county if he was acting as a state agent rather than a county agent.[67] A county prosecutor is a state agent when prosecuting state criminal charges.[68] Because Marino was prosecuting state criminal charges and acting as a state agent, Cuyahoga County cannot be held liable for his violations related to the prosecution itself.

Plaintiff does not sufficiently allege any violations by Marino that can be attributed to the county. Instead, Plaintiff only alleges that:

> [Cuyahoga County did not] implement sufficient policies or training on reliance on profoundly flawed investigations, fabricated and suppressed evidence, engaging in unconstitutional investigatory, non-advocacy functions, and overlooking and acting

---

[62] Doc. 105 (PageID 3731, 3732).
[63] *Id.*
[64] Doc. 105 (PageID 3669, 3671).
[65] *Id.*
[66] *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978).
[67] *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009).
[68] *Id.* at 342-43; *Pusey v. City of Youngstown*, 11 F.3d 652, 657–58 (6th Cir. 1993).

Case No. 1:22-cv-00250
GWIN, J.

in concert and conspiracy with police misconduct, even though the need for such policies and training was obvious.[69]

Like with its proposed claims against Marino, Plaintiff does not provide any details surrounding the alleged violations or show how they are connected to the policies or training that Cuyahoga County arguably failed to implement. For this reason, Plaintiff's proposed claims against Cuyahoga County would also not survive a 12(b)(6) motion to dismiss and would be futile.

### III. Conclusion

For the foregoing reasons, this Court **DENIES** Plaintiff's motion for leave to amend the complaint.

IT IS SO ORDERED.

Dated: March 23, 2023                    *s/ James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[69] Doc. 119-1 (PageID #: 8774).

- 13 -