UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

| | | |
|---|---|---|
| | : | |
| ISAIAH ANDREWS'S ESTATE ADMINISTRATOR, | : | CASE NO. 1:22-cv-00250 |
| | : | |
| | : | ORDER |
| Plaintiff, | : | [Resolving Doc. 124] |
| | : | |
| v. | : | |
| | : | |
| CITY OF CLEVELAND, et al., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

This case comes back after the Sixth Circuit Court of Appeals remanded the case after Plaintiff Isaiah Andrews's appeal. Previously, this Court granted summary judgment to Defendant City of Cleveland without addressing whether sufficient evidence existed to support Plaintiff's claims under a *Monell* theory of municipal liability. The Sixth Circuit's September 4, 2024, opinion reversed in part, holding that genuine issues of material fact existed with respect to certain aspects of Plaintiff's *Monell* claims.

In this case the Plaintiff alleges that the City of Cleveland is liable for the suppression of an exculpatory police report page, a Brady violation. Plaintiff contends that the City is responsible for this constitutional violation due to a policy, practice, or custom that allowed the suppression of exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

With the Sixth Circuit's remand, this Court now considers anew the Defendant City of Cleveland's motion for summary judgment.

Case No. 1:22-cv-00250
GWIN, J.

Considering the Sixth Circuit September 4, 2024, opinion, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant City's motion for summary judgment.  Plaintiff Andrews's *Monell* claim proceeds on theories of (1) an official policy, (2) inadequate training, and (3) deliberate indifference.

## I.    BACKGROUND

The Court incorporates the background facts and procedural discussion from its earlier April 20, 2023, opinion and order that granted the Defendants' motion for summary judgment,[3] Except to the extent different than the Sixth Circuit's September 4, 2024 opinion.

This case arises out of Plaintiff Isaiah Andrews's wrongful conviction for the 1975 murder of his wife, Regina Andrews. Plaintiff served 45 years in prison before a jury acquitted him in a 2021 retrial. Plaintiff contends that Cleveland Police Officers violated his constitutional rights by withholding exculpatory evidence from prosecutors, and maliciously prosecuting him. Plaintiff sues under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment's Due Process Clause, among other claims.

A summary of relevant background follows:

Plaintiff Andrews primarily contended that the Defendant Officers (1) failed to give police reports to responsible prosecutors.  The police reports contained incriminating information about another suspect, Willie Watts; and (2) failed to give the defense attorney handwritten prosecution notes about a bloody palm print found at the crime scene.  Plaintiff Andrews made *Brady* claims against the individual Defendant Officers for failure to turn this exculpatory evidence over to prosecutors.

---

[3] Doc. 157.

Case No. 1:22-cv-00250
GWIN, J.

Plaintiff Andrews also sought to impose liability for the *Brady* violations onto Defendant City of Cleveland. With this *Monell* claim, Plaintiff Andrews principally says that a Defendant City official policy caused the *Brady* violations.

Two Defendant Officers, who were deceased and represented by their estate administrators (the Estate Defendants) moved to dismiss Plaintiff Andrews' claims as untimely. The Court granted the Estate Defendants' motions to dismiss.

The remaining individual Defendants and the Defendant City moved for summary judgment. The individual Defendants argued that Cleveland gave the complete investigatory file to the Cuyahoga County Prosecutors Office and that any failure to share that file with Andrews's attorneys was the Prosecutor's failure, not Cleveland's or its officers' failure.

In a summary judgment ruling on the Defendant Officer's motion, this Court found that Plaintiff did not provide evidence showing that the *Brady* materials were not given to the prosecutors before Andrews' original trial, and that there was otherwise no evidence of constitutional violations.

The City Defendant made the same argument-- that admissible evidence showed that the evidence incriminating the other suspect, Willie Watts, and the evidence regarding the palm print was in the file given to the Cuyahoga County Prosecutor's Office. Cleveland also argued that even if there had been evidence of police officer constitutional violations, Plaintiff Andrews could not show that a City policy caused any such violation, that City training did not cause any such violation, that Cleveland did not ratify any violation, and that Cleveland was not indifferent to the violation.

The Court agreed with the individual Defendants and granted summary judgment on all of Plaintiff's claims. Specifically, the Court found that Plaintiff did not provide evidence

Case No. 1:22-cv-00250
GWIN, J.

that the Defendant Officers failed to give the Cuyahoga County Prosecutor's Office the handwritten handprint notes or the police report with notes about physical evidence connecting Watts to the crime.  In effect, this Court found that Andrews may not have received the exculpatory evidence but that the Prosecutor's Office, not the Cleveland Police Department or its officers, was responsible.

Because the Court found that there was no evidence that the individual Defendant Officers had committed *Brady* violations, the Court did not reach whether a Defendant City policy or procedure had caused the *Brady* violations.

Plaintiff Andrews appealed.

On September 4, 2024, the Sixth Circuit affirmed  in part and reversed in part.[4]  The Sixth Circuit affirmed the Court's dismissal of individual detectives as untimely.  The Sixth Circuit also affirmed the Court's summary judgment grant on the *Brady* claim based on the handprint notes.[5]

The Sixth Circuit reversed the Court's summary judgment grant as to the *Brady* claim based on the missing police report page.  The Sixth Circuit found that record evidence could allow a reasonable jury to conclude that the police withheld exculpatory police report page 3 from prosecutors.[6]  But as described, the Sixth Circuit had also found that Plaintiff's claim against the responsible officers ended because the Plaintiff had failed to timely present a claim against the deceased officers' estates.

Police Report page 3 includes discussion implicating alternative perpetrator Willie Watts.  In a later-scanned record of the prosecution file, the file does include a blurred page

---

[4] *See Estate of Andrews v. City of Cleveland, Ohio*, 112 F.4th 436, 443 (6th Cir. 2024).
[5] *Id.* at 443-44.
[6] *Id.* at 444.

Case No. 1:22-cv-00250
GWIN, J.

3 but it is not easily legible.  The Sixth Circuit found insufficient evidence that blurred page 3 was in the police investigatory file given to the Prosecutors Office.  The Sixth Circuit remanded the case for the Court to consider whether page 3 was included in the police investigatory file given to prosecutors and to consider whether Cleveland was liable under *Monell* for any *Brady* violation.[7]

The Court now reconsiders Defendant City of Cleveland's original motion for summary judgment, which focuses on the City's *Monell* liability, as well as the Plaintiff's brief in opposition.

## II.   LEGAL STANDARD

Rule 56 allows courts to grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law."[8]  There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

Courts decide whether there is a genuine factual dispute by applying a burden-shifting framework.  The moving party has the initial burden of production.[10]  When the nonmoving party bears the ultimate burden of proof at trial, the moving party can meet its initial burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."[11]  The moving party "[need] not itself come forward with evidence affirmatively negating the disputed" claims.[12]

---

[7] *Id.* at 445.
[8] Fed. R. Civ. P. 56(a).
[9] *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[10] *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[12] *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citing *Celotex*, 477 U.S. at 323).

Case No. 1:22-cv-00250
GWIN, J.

After the moving party meets its initial burden to show that there is no genuine factual

dispute, it is up to the nonmoving party to rebut that showing.  To do so, "the nonmoving

party must go beyond the pleadings and . . . designate specific facts showing that there is a

genuine issue for trial."[13]  If the nonmoving party fails to show that there is a genuine trial

issue, the moving party wins summary judgment.

When applying this burden-shifting approach, courts "draw [] all justifiable inferences in the

light most favorable to the nonmoving party."[14]  Summary judgment may be granted "[i]f the

evidence is merely colorable . . . or is not significantly probative."[15]

## III.     DISCUSSION

Defendant City of Cleveland moved for summary judgment on Plaintiff's 42 U.S.C. §

1983 claims.  Municipalities become liable for employees' constitutional violations, when

the allegedly unconstitutional municipal action "implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's

officers,' or where such actions emanate from informal government custom."[16]

To raise a claim against a municipality for a constitutional violation under § 1983, a

plaintiff must establish that the municipality was the "moving force" by "showing that the

municipality had a 'policy or custom' that caused the violation of his rights."[17]

A plaintiff can show a policy or custom by proving: "(1) the existence of an illegal

official policy or legislative enactment;(2) that an official with final decision-making authority

---

[13] *Horton*, 369 F.3d at 909 (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 324).
[14] *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[15] *Anderson*, 477 U.S. 250–51.
[16] *Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ).
[17] *Monell*, 436 U.S. at 694.

Case No. 1:22-cv-00250
GWIN, J.

ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."[18]

As described above, for the purposes of summary judgment, the Sixth Circuit has found that Plaintiff Andrews shows sufficient evidence of a *Brady* violation based on the missing police report page.  So, for his claim against the City Defendant to survive summary judgment, Andrews must provide evidence from which a reasonable jury could conclude that the Defendant City was responsible for any failure to give the exculpatory evidence to prosecutors.

Andrews advances arguments under all four *Monell* theories.  First, Plaintiff says that the City had an official, written policy, GPO 19-73, that was inconsistent with the Defendants Officers' constitutional requirement to disclose exculpatory evidence.[19]  Second, the Plaintiff says that Cleveland Police Department Chief of Police ratified the Defendant Officers' illegal actions.  Third, the Plaintiff says that the Defendant City lacked adequate training and supervision of its police force and provided no training on officers' constitutional duties to disclose exculpatory evidence.  Fourth, the Plaintiff says that the Defendant City maintained not just a custom of constitutional violations, but a custom of actively covering them up as well.

The Court finds that Plaintiff Andrews has established a genuine issue of fact as to the policy theory, the training theory and the deliberate indifference theory but insufficient evidence as to the ratification theory.

---

[18] Jackson v. Cleveland, 925 F.3d 793, 828 (6th Cir. 2019)
[19] Doc. 145, PageID #: 12989-90.

Case No. 1:22-cv-00250
GWIN, J.

### A. Official Policy or Legislation

"[T]o satisfy the *Monell* requirements [,] a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'"[20]

When proceeding under this theory, the plaintiff must show that there were "formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently over time."[21]

Plaintiff Andrews argues that there is evidence that the Defendant City had an official, written policy, documented in its GPO 19-73, that prohibited disclosure of internal police reports.[22]

In effect in 1974, GPO 19-73 stated that defense counsel *may* request "[e]vidence favorable to the defendant" from prosecutors and courts.[23] However, GPO 19-73 did not explain what favorable evidence entails. It did, however, expressly limited officers' obligation to produce "reports, memoranda, or other internal documents made by . . . police departments . . . in connection with the investigation or prosecution of the case."

\-      In *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019), the Sixth Circuit examined GPO 19-73. The Sixth Circuit held that "one reasonable reading of GPO 19-73 is that it (1) spoke to police officers about their disclosure obligations and (2) informed them that they did not need to disclose exculpatory witness statements to the Prosecutor's Office."

---

[20] *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).
[21] *Pembour v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).
[22] Doc. 106-1, PageID #: 4428-30.
[23] *Id.*

Case No. 1:22-cv-00250
GWIN, J.

Id. at 831.  The Sixth Circuit also found that GPO 19-73 has language that positions exculpatory police reports as the same as exculpatory witness statements.[24]

In its essence, a reasonable juror could interpret GPO 19-73 as directing a disclosure exception that stopped disclosure of "reports, memoranda, or other internal documents made by . . . [police departments] in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."

Defendant Cleveland tries to distinguish *Jackson*'s read of GPO 19-73 from this case. Specifically, the City says that there are different Division of Police Manual Rules that, when read in conjunction with GPO 19-73, do not support an interpretation condoning withholding exculpatory evidence.

However, "one reasonable reading of GPO 19-73 is that it (1) spoke to police officers about their disclosure obligations and (2) informed them that they did not need to disclose exculpatory witness statements to the Prosecutor's Office."[25]

---

[24] In pertinent part, GPO 19-73, incorporated directions from the Cuyahoga County Prosecutor discussing police and prosecutor disclosures:

> The Ohio Supreme Court has recently promulgated Criminal Rules of Procedure .... Particularly, Rule 16 is going to be the concern of police departments and prosecutors.

....

> NO POLICE DEPARTMENT IS REQUIRED OR SHALL GIVE TO DEFENSE COUNSEL AND/OR ANY COURT ANY RECORD, PAPER, STATEMENT, REPORT OR TANGIBLE OBJECT OF A CRIMINAL CASE.

> Under proper circumstances under this rule, by application to the Prosecuting Attorney and/or the court, the defense counsel may be entitled to the following:
>
> . . .
>
> 6. Evidence favorable to the defendant.

> EXCEPTION TO THE FOREGOING:

> The *foregoing does not authorize the discovery, or the inspection of reports, memoranda, or other internal documents made by the Prosecuting Attorney or his agents (police departments are his agents) in connection with the investigation or prosecution of the case*, or of statements made by witnesses or prospective witnesses to state agents. (Emphasis added.)

*Jackson v. City of Cleveland*, 925 F.3d 793, 829–30 (6th Cir. 2019)
[25] *Jackson v. City of Cleveland*, 925 F.3d 793, 831 (6th Cir. 2019)

Case No. 1:22-cv-00250
GWIN, J.

Cleveland may succeed in convincing a jury that other Cleveland rules, especially internal rules requiring preservation, undercut the Plaintiff's claim that Cleveland had a policy forbidding Brady disclosure.  But Cleveland moves for summary judgment and shoulders the burden of showing no material factual issues.  Factual issues exist regarding whether Cleveland had a policy forbidding disclosure.

So, Plaintiff Andrew's *Monell* claim based on an official policy of the Defendant City survives summary judgment.

### B. Authorization by Decision Maker

In support of *Monell* liability Plaintiff Andrews alternatively argues that the Cleveland Chief of Police was the final policymaker and argues that the Chief of Police ratified withholding exculpatory evidence.

When a "plaintiff alleges that an unconstitutional municipal policy is evinced by a single decision by a municipal official, 'only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability' and that state law determines whether a municipal official has "final policymaking authority."[27]

Plaintiff Andrews argues that there is evidence that Cleveland's Chief of Police was the final policymaker for the CPD's policies and training.  Andrews says that evidence shows that the Chief of Police ratified officers' unconstitutional conduct in withholding evidence. Plaintiff offers little evidence that the Cleveland Mayor delegated final decisions regarding CPD policies, procedures, training, and supervision to the Chief of Police.  But more important, Plaintiff shows no Police Chief involvement with Andrews's case.  The Plaintiff doesn't show evidence of the Chief of Police's identity, who ratified the Officers' arguably

---

[27]

Case No. 1:22-cv-00250
GWIN, J.

illegal Andrews's investigation conduct, or the dates. Andrews also does not show evidence that the Chief knew of the illegal acts. Plaintiff offers insufficient evidence to proceed to establish *Monell* liability based upon ratification.

### C. Failure to Train or Supervise

Next, Plaintiff Andrews argues that evidence supports that the Defendant City failed to train the Defendant Officers on their constitutional duties under *Brady* and that this failure to train caused the police report to be withheld from prosecutors.

To defeat summary judgment on a failure-to-train claim, Plaintiff Andrews must show or create genuine dispute of material fact that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [municipal entity's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."[28] The question is whether the officers' training was adequate, not whether they had any training.

Plaintiff has raised a genuine issue of material fact as to whether the Defendant City adequately trained the Defendant Officers on their obligation to turn over exculpatory evidence.

The Plaintiff shows evidence that the only training Cleveland police officers received after the police academy was on-the-job-training. This training was "absolutely" dependent on who the new officer was paired with as a training officer." The training officers typically had worked for fifteen to twenty years before training new officers, meaning that some training officers joined the department before Brady was decided.

---

[28] *Winkler v. Madison Cty.,* 893 F.3d 877, 902 (6th Cir. 2018) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006)).

Case No. 1:22-cv-00250
GWIN, J.

The Defendant does not show specific standard, written training materials on Brady.

In response, Cleveland shows evidence that Cleveland required all officers receive 1974 training on the newly enacted Ohio Criminal Rules that included provisions requiring disclosure of exculpatory evidence.  Understandably, defendants show no evidence that the investigating officers in Alexander's case had any specific amount of training.

A jury could find that this on-the-job training did not adequately address how to preserve or disclose exculpatory evidence.

### D.  Custom of Acquiescence

To survive summary judgment on a custom-of-acquiescence theory, Plaintiff Andrews must put forth evidence from which a reasonably jury could find that the City Defendant had "(1) an unwritten custom (2) of remaining deliberately indifferent; (3) to a clear and consistent pattern [of unconstitutional violations] (4) that it knew or should have known about."[29]

The "pattern" requirement implies repetition of similar events.[30]  The Sixth Circuit has held that "[t]wo incidents of unconstitutional searches over the course of five months does not demonstrate behavior 'so permanent and well settled as to constitute a custom or usage with the force of law.'"[31]

Predating Andrews case, Plaintiff offers only evidence of the Jackson case.  But in *Jackson,* the Sixth Circuit found that a lack of training could support a deliberate indifference theory: "Plaintiffs have provided testimony sufficient for a jury to find that Cleveland did not in fact train its officers in their disclosure obligations. *Gregory*[32] therefore controls, and there

---

[29]

[30] *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

[31] *Beard v. Whitmore Lake Sch. Distr.*, 244 F. App'x 607, 61 n.3 (6th Cir. 2007 (quoting *Monell*, 436 U.S. at 691).

[32] *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)

- 12 -

Case No. 1:22-cv-00250
GWIN, J.

is sufficient evidence for a reasonable jury to find that Cleveland was deliberately indifferent

to the risk of Brady violations."[33]

Because the *Jackson* case deals with such similar evidence, its decision to allow the

deliberate indifference theory controls. [34]

o

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment to the Defendant

City on Plaintiff Andrews's *Monell* claim based on an official policymaker's ratification

theory.   The Court **DENIES** summary judgment on the *Monell* claim based on the official

policy theory, the inadequate training theory and the deliberate indifference theory.


IT IS SO ORDERED.


Dated: September 30, 2024                        s/      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[33] *Jackson v. City of Cleveland*, 925 F.3d 793, 837 (6th Cir. 2019)
[34] *Id.*